UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                        )

**CAPITOL HILL GROUP,**                         )

                **Plaintiff,**             )

                        )    Civil No. 07-1936 (RCL)

    v.                        )

**PILLSBURY WINTHROP SHAW PITTMAN, LLP,** )
**SHAW PITTMAN, LLP,**          )
**PAUL A. TUMMONDS, JR., AND**    )
**PATRICK J. POTTER,**          )
                **Defendants.**    )
_____)

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to LCvR 7(h), Defendants Pillsbury Winthrop Shaw Pittman, LLP ("PWSP"), Shaw Pittman, LLP ("Shaw Pittman"), Paul A. Tummonds, Jr. ("Tummonds"), and Patrick J. Potter ("Potter") (collectively, "Defendants"), through undersigned counsel, respectfully submit this Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (the "Motion").

**Undisputed Facts Taken From The Complaint**

1.      Defendants represented CHG in the bankruptcy proceedings. <u>See</u> Complaint ¶10.

2.      Plaintiff Capitol Hill Group's ("CHG") real estate was the subject of its bankruptcy reorganization. <u>See</u> Complaint ¶11.

3.      Defendants' retention was approved by the bankruptcy court. <u>See</u> Complaint ¶12.

4.      The D.C. Department of Consumer and Regulatory Affairs ("DCRA") issued a citation to CHG during its bankruptcy proceeding. <u>See</u> Complaint ¶13.

5.  Shaw Pittman represented CHG before the Board of Zoning Adjustment ("BZA") during CHG's bankruptcy reorganization. See Complaint ¶14.

6.  The BZA's January 6, 2004 decision affirmed the Zoning Administrator. See Complaint ¶15.

7.  The BZA's written decision is dated September 9, 2004 and reflects its decision of February 24, 2004. See Complaint ¶16.

8.  CHG claims to have learned of the BZA's written decision in the spring of 2005. See Complaint ¶17.

9.  The alleged results of the BZA's decision occurred upon the BZA's oral decision of February 24, 2004 or its written decision of September 9, 2004. See Complaint ¶18.

**Additional Facts Not Subject to Dispute**

10. On February 22, 2002, CHG filed its chapter 11 bankruptcy petition. See Affidavit of Patrick J. Potter ("PP-Aff") at ¶4.

11. On June 20, 2002, the bankruptcy court approved CHG's retention of Shaw Pittman. PP-Aff ¶6.

12. During CHG's chapter 11 proceeding, the District of Columbia Zoning Administrator issued CHG a citation requiring it to provide 225 parking spaces to its tenants. Consequently, on November 2002, Shaw Pittman began providing real estate zoning services (the "Zoning Services") to CHG in order to enable CHG to satisfy 11 U.S.C. §1129(a)(3) and 28 U.S.C. § 959(b), and to successfully reorganize. See e.g., PP-Aff ¶¶8, 10; Affidavit of Paul A. Tummonds, Jr. ("PT-Aff") at ¶2.

13. After CHG was unable to negotiate a consensual resolution regarding the citation, CHG commenced suit in bankruptcy court against the District of Columbia Department of Consumer and Regulatory Affairs. On March 18, 2003, Shaw Pittman obtained a bench decision

2

from the bankruptcy court on summary judgment with respect to the ongoing zoning disputes.  PT-Aff ¶9.

15. On March 26, 2003, the District of Columbia Zoning Administrator issued certain Certificates of Occupancy providing that CHG was in compliance with applicable zoning regulations with respect to the amount of parking it was providing to its tenants.  The Certificates required CHG to provide a total of 85 parking spaces to its tenants; well within the 177 parking spaces already available to CHG's tenants.  On the same day the prior citation issued to CHG for failing to provide sufficient parking to its tenants was dismissed.  PT-Aff ¶10,12.

15. On December 15, 2003, CHG's Plan became effective (CHG I, at 347-48), and the Retention Agreement was rejected pursuant to the terms of the Plan.  PP-Aff ¶11.

16. On January 6, 2004, the BZA orally affirmed the Zoning Administrator's issuance of the Certificates of Occupancy.  PT-Aff ¶15.

17. On January 1, 2004, Shaw Pittman filed its motion seeking to terminate its engagement with CHG based upon financial and other reasons, including CHG's transfer of substantial sums without bankruptcy court approval.  On January 7, 2004, the bankruptcy court approved Shaw Pittman's request to terminate the retention with CHG on all matters.  Mr. Hartman appeared at the hearing as counsel for CHG.  The order terminating the Shaw Pittman engagement was never appealed.  Shaw Pittman provided no further legal services to CHG.  PP-Aff ¶¶12-15.

18. On January 13, 2004, Mr. Hartman, of behalf of CHG, requested that Shaw Pittman turn over all BZA files in order to retain substitute zoning counsel.  PP-Aff ¶16; PT-Aff ¶16.

19. On January 15, 2004, Shaw Pittman transferred the BZA files to Mr. Hartman and CHG.  PT-Aff ¶17.

20. By happenstance, defendant Tummonds learned that on February 10, 2004, the BZA decided, without notice or warning, it would reconsider its January 6, 2004 decision affirming the

3

Zoning Administrator's Certificates of Occupancy.  On February 11, 2004, defendant Tummonds sent a letter to CHG's counsel, Mr. Hartman, advising him that the BZA "will take this matter up at a special public meeting on February 24, 2004 at 9:00 AM."  In addition, Mr. Tummonds provided Mr. Hartman with the name and number of specific personnel at the BZA whom he could contact.  Mr. Tummonds also pointed out to Mr. Hartman that Shaw Pittman had not notified the BZA of Shaw Pittman's withdrawal, and that there was no practical way to do so.  PT-Aff ¶19.

21.    On February 12, 2004, Peter Shin, CHG's sole principal, emailed defendant Tummonds to thank him for alerting CHG of the February 24, 2004 BZA hearing.  PT-Aff ¶20.

22.    Between January 30, 2004 and April 20, 2004, CHG engaged new outside counsel, Armstrong Donohue.  CHG engaged in extensive written and oral discovery on Shaw Pittman.  CHG raised numerous objections to Shaw Pittman's fees, including alleged malpractice relating to the Cassidy & Pinkard Matter.  CHG's objections were raised in writing and at hearings by CHG.  PP-Aff ¶19.

23.    After a number of hearings, on April 20, 2004, the First Fee Judgment on the First Fee Application (relating to services provided by Shaw Pittman to CHG) was entered by the bankruptcy court in favor of Shaw Pittman.  The bankruptcy court overruled CHG's objections.  PP-Aff ¶18-28.  This Court, in CHG I, rejected CHG's arguments, including certain breach-of-duty arguments, and affirmed the First Fee Judgment.  The Court also remanded with instructions that the bankruptcy court award Shaw Pittman its fees incurred defending the Fee Application.  Id.  See also CHG I.

24.    On December 1, 2004, after an October 21, 2004 trial and an October 22, 2004 extensive bench ruling, the Second Fee Judgment (relating to the fees incurred defending Shaw Pittman's First Fee Application) was entered in favor of Shaw Pittman over CHG's voluminous written and oral objections.  CHG was represented by Mr. Hartman and its outside counsel at the

4

October 21, 2004 trial. Mr. Potter was extensively cross-examined by CHG at this trial. PP-Aff ¶18-28.

 25. On April 19, 2005, Mr. Hartman emailed defendant Potter, inquiring as to whether Shaw Pittman filed a notice of withdrawal with the BZA and regarding the BZA's September 9, 2004 written decision. See PP-Aff ¶30. Mr. Hartman initiated the correspondence, stating:

> Patrick - I was reviewing the BZA file that your firm delivered to CHG last year. Unfortunately, I can't locate a copy of any correspondence that Shaw Pittman might have sent to the BZA withdrawing as counsel to CHG in that matter. Please fax a copy of the correspondence to BZA wherein Shaw Pittman withdrew as CHG's counsel in this matter at your earliest convenience. Thank you. Donald

Mr. Potter immediately responded by email stating:

> Donald: I don't know which matter you are referring to. Was there a pending, ongoing matter at the BZA when Judge Teel signed his order (in early January 2004) authorizing Shaw Pittman to withdrew as counsel to CHG? If so, perhaps you can tell me what it was (with some specificity), and then I can try to follow up in further response to your question. Furthermore, before I spend my time (or the time of others) tracking down old documents, I would appreciate an explanation of your need/desire for such correspondence.

In turn, Mr. Hartman immediately responded by email as follows:

> Patrick - Thank you for your prompt response. As you may recall, Paul Tummonds was representing CHG before the BZA regarding appeal number 17043. Apparently, BZA sent some correspondence to Shaw Pittman in September 2004 regarding this matter that CHG never received and CHG would like to be able to demonstrate to BZA that this missive should have been sent directly to CHG rather than Shaw Pittman.

> See PP-Aff ¶30.

 26. On August 2, 2005, after an August 1, 2005 trial, the Third Fee Judgment (relating to fees incurred defending Shaw Pittman's First and Second Fee Applications) was entered in favor of Shaw Pittman over CHG's numerous written and oral objections, which objections did not include any of the allegations in the Complaint. CHG was represented by Mr. Hartman and its outside

5

counsel at the August 1, 2005 trial. Mr. Potter was extensively cross-examined by CHG at this trial. PP-Aff ¶¶30-35.

27.     Subsequently, fourth and fifth fee judgments, to bring Shaw Pittman current on fees incurred litigating the foregoing disputes with CHG, were entered into by CHG. PP-Aff¶37.

28.     CHG was warned by the bankruptcy court that a claim of malpractice brought after that court had acted on CHG's objections to Shaw Pittman's fee applications would be sanctionable. At a bankruptcy court hearing on April 12, 2006, the issue of whether CHG believed it possessed unasserted claims against Shaw Pittman was specifically addressed, as was the issue of whether such claims would be barred because they had not been raised by CHG. Judge Teel stated:

> The fact is [CHG] could have raised the issue. They didn't. They're barred, as you say, by res judicata, from pursuing it. If I understand the law correctly. There's no need to bring a declaratory judgment proceeding to get a declaration to that effect[.]
>
> If they want to pursue claims against you after this adversary proceeding is dismissed, you've got the defense of res judicata, you can file your Rule 11 motion, file a motion to extend the time to answer, and if they don't dismiss in the face of a valid defense of res judicata, then you're back in the sanctions business.

See PP-Aff¶38.

29.     During the course of the April 12, 2006 hearing the bankruptcy court asked Mr. Hartman a number of times whether CHG believed it held claims against Shaw Pittman and Mr. Hartman did not candidly state that CHG believed that it held any such claims. See PP-Aff¶38.

6

30. In a pleading filed with the bankruptcy court on May 14, 2007, CHG stated "Shaw Pittman bases its argument on an unsupported notion that CHG, like the proverbial Phoenix, might one day arise from the ashes and somehow wreak havoc upon Shaw Pittman." PP-Aff¶40.

Dated: October 29, 2007

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN, LLP

By: /s/ Jack McKay
  Jack McKay (No. 159335)
  2300 N Street, N.W.
  Washington, D.C. 20037-1128
  Tel: (202) 663-8000
  Fax: (202) 663-8000