**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **CAPITOL HILL GROUP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil No. 07-1936 (RCL)** |
| | ) | |
| **PILLSBURY WINTHROP** | ) | |
| **SHAW PITTMAN, LLP, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

**PLAINTIFF'S MOTION FOR REMAND PURSUANT TO**
**28 U.S.C. § 1447(c) AND § 1452(b), OR IN THE ALTERNATIVE,**
**ABSTENTION PURSUANT TO 28 U.S.C. § 1334(c)**

Plaintiff Capitol Hill Group ("CHG"), by and through its undersigned counsel, hereby files this Motion for Remand Pursuant to 28 U.S.C. § 1447(c) and § 1452(b), or in the alternative abstention pursuant to § 1334(c). In support of the instant Motion, CHG submits the attached Memorandum of Points and Authorities, which is hereby incorporated by reference.

Dated: November 9, 2007

Respectfully submitted,

By: _____/s/ Emil Hirsch_____
Emil Hirsch (D.C. Bar No. 930478)
Tamir Damari (D.C. Bar No. 455744)
O'CONNOR & HANNAN, L.L.P.
1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
Email:ehirsch@oconnorhannan.com
 tdamari@oconnorhannan.com
Phone: (202) 887-1400
Attorneys for Plaintiff

CERTIFICATE REGARDING CONSENT UNDER LOCAL RULE 7.1

I hereby certify that I attempted in good faith to obtain the consent of opposing counsel to the relief sought in this Motion, but was unable to do so. Specifically, on November 9, 2007, I telephoned Jack McKay, Esq., counsel for Defendants, requesting that he consent to the instant Motion. Later on November 9, I received an e-mail from Mr. McKay indicating that he did not so consent.

_____/s/Emil Hirsch_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
CAPITOL HILL GROUP,                     )
                                        )
            Plaintiff,                  )
                                        )
      vs.                               )      **Civil No. 07-1936 (RCL)**
                                        )
PILLSBURY WINTHROP                      )
SHAW PITTMAN, LLP, et al.               )
                                        )
            Defendants.                 )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND**
**PURSUANT TO 28 U.S.C. § 1447(c) AND 1452(b),**
**OR IN THE ALTERNATIVE ABSTENTION PURSUANT TO 1334(c)**

### I. INTRODUCTION

In this Memorandum, Plaintiff will demonstrate that it is entitled to a remand on the following grounds: (i) this Court does not have subject matter jurisdiction over this matter under 28 U.S.C. § 1334(b), since Plaintiff's claims, as alleged in the Complaint, arise entirely out of state law, and neither "arise in", "arise under" or "relate to" any proceeding under Title 11; and (ii) remand is proper as an equitable matter under § 1452(b), on the grounds, inter alia, that issues of District of Columbia local law (as opposed to federal law) are overwhelmingly predominant in this case, comity militates in favor of equitable remand and denial of a remand may jeopardize the jury trial right to which Plaintiff is otherwise entitled in the local court . In the alternative, Plaintiff maintains, and will demonstrate herein, that this Court should abstain from adjudicating this action as a matter of right and as a matter of discretion.

## II. FACTS

The instant case is a legal malpractice action brought by CHG against the law firms of Pillsbury Winthrop Shaw Pittman, LLP and Shaw Pittman, LLP ("Shaw Pittman"), and two of their partners, Paul Tummonds ("Tummonds") and Patrick Potter ("Potter").[1]  CHG is the owner of commercial real estate located at 700 Constitution Avenue N.E., Washington, D.C. (the "Property"), which is improved by three buildings.[2]  Buildings A and B (the "Non-Leased Premises") are, for the most part, unoccupied, whereas, during the time relevant to this case, Building C (the "Leased Premises") was leased to Capitol Hill Community Hospital and Capitol Hill Healthcare Corporation, which operated a 60 bed long-term acute care hospital (the "Hospital") and a 117 bed skilled nursing facility (the "Nursing Center"), respectively.[3]

The malpractice alleged in this case arises out of Shaw Pittman's, Tummonds' and Potter's substandard representation of CHG in a series of zoning matters (collectively, the "Zoning Representation").  In the course of the Zoning Representation, Shaw Pittman represented CHG before the D.C. Zoning Administrator (the "ZA") in order to obtain Certificates of Occupancy for the Hospital and Nursing Center located upon the Property.[4]  During this representation, on March 26, 2003, the ZA issued Certificate of Occupancy 51290 for the Hospital, authorizing a "Hospital and 60 Parking Spaces" and Certificate of Occupancy,

---

[1] See, generally,  Complaint at ¶¶ 1-5.

[2] Id., at ¶ 11.

[3] Id.

[4] Id., at ¶ ¶ 13-14.

CO 51289, for the Nursing Center, authorizing a "Community Based Residential Facility-Health Care Facility That Provides Housing For The Handicapped. 25 Parking Spaces and 117 Beds."[5]

In response to the issuance of these Certificates of Occupancy, the Stanton Park Neighborhood Association filed Appeal No. 17043 (the "Appeal") with the D.C. Board of Zoning Adjustment (the "BZA").[6] Shaw Pittman, Tummonds and Potter also represented CHG in the Appeal.[7] On January 6, 2004, the Appeal was initially denied by the BZA by a vote of 3-2.[8] However, shortly thereafter, on February 10, 2004, the BZA, sua sponte, voted 5-0 in a closed session to reconsider a portion of the denial.[9] Upon reconsideration, on February 24, 2004, the BZA, in a closed session, voted 5-0 to partially grant the Appeal, determining that the ZA had imposed incorrect parking requirements with regard to CO 51289 and ordering that CO 51289 "be reformed to reflect a parking requirement of one off-street parking space for each bed."[10] Thus, as a result of the BZA's disposition of the Appeal, CHG was required to provide its tenants with 177 combined parking spaces, 92 more parking spaces than the combined 85 parking spaces CHG was required to provide under CO 51290 and the original CO 51289.[11] However, as discussed more fully below, the BZA's ruling granting the Appeal was not released and published by the BZA until nearly seven months after the putative date of its February 24 decision. In January, 2004, Shaw Pittman, Potter and Tummonds ceased representing CHG.

---

[5] Id., at ¶ 13.

[6] Id., at ¶ 14.

[7] Id.

[8] Id., at ¶ 15.

[9] Id.

[10] Id.

[11] Id.

The BZA issued a final order on September 9, 2004 (the "Final Order"), which memorialized its decision to grant the Appeal.[12]  The Final Order also included a certificate of service dated September 9, 2004 stating that it was being sent on that date to:

> Paul A. Tummonds, Esq.
> For Capitol Hill Healthcare Group
> Shaw Pittman
> 2300 N Street, N.W.
> Washington, D.C. 20037[13]

Notwithstanding that the Certificate of Service indicated that the Final Order was being sent to Tummonds on September 9, the earliest record of anyone receiving a copy of the Final Order was September 29, 2004, the date upon which the Final Order was stamped as received by Shaw Pittman.  Moreover, despite the fact that the face of the Final Order's Certificate of Service indicated that it was not being transmitted to anyone associated with Plaintiff other than Tummonds, Defendants did not notify CHG of the issuance of the Final Order, nor did they forward a copy of the Final Order to CHG.[14]  Accordingly, CHG did not learn of the existence of the Final Order until the spring of 2005, long after the time for filing an appeal of the Final Order to the District of Columbia Court of Appeals had expired.[15]

As a result of the issuance of the Final Order, and the expiration of the period within which CHG could appeal the Final Order, CHG is now required to provide its tenants with 177 combined parking spaces, per the unreviewable disposition of the Appeal.  This parking

---

[12] Id., at ¶ 16.

[13] Id.

[14] Id., at ¶ 17.

[15] Id.

requirement effectively precludes CHG from either utilizing the Non-Leased Premises itself or leasing the Non-Leased Premises to others.[16]   As a result, CHG has been significantly damaged.

As alleged in the Complaint, Defendants' malpractice in this case is two-fold.  Firstly, Defendants failed to forward the Final Order to CHG or to notify CHG of the issuance of the Final Order, and, as a result, the period within which CHG could otherwise have appealed the Final Order to the District of Columbia Court of Appeals lapsed.  Additionally, throughout the course of Defendants' representation of CHG, Defendants failed to assert the existence of certain municipal regulations and longstanding administrative interpretations thereof pertaining to historic landmarks and buildings contributing to the character of historic districts which, had they been asserted, would have prevented the imposition of any requirement to provide parking beyond that then-available on the Property (given the prior designation of one of the Property's buildings by the District of Columbia as a historic landmark and a building contributing to the character of a historic district).[17]   Had these regulations and their applicability to the Property been asserted in a timely fashion, the basis upon which the BZA reversed the ZA would not have existed in that CHG could not have been required to provide more parking spaces than it had available to provide.[18]   As a result of Defendants' malpractice, this lawsuit ensued.   In its Complaint, Plaintiff seeks compensatory damages.  Plaintiff does not, however, make any claim whatsoever for recoupement or disgorgement of any attorneys' fees paid by Plaintiff to Defendant.

---

[16]  Id., at ¶ 18.

[17]  Id., at ¶ 21.

[18]  Id.

**ARGUMENT**

By virtue of this Motion, Plaintiff respectfully requests that the instant case be remanded on jurisdictional grounds under §1447(c), as well as on equitable grounds pursuant to § 1452(b). In the alternative, Plaintiff requests that this Court abstain from hearing this matter under § 1334(c). Each of these grounds is addressed in turn below.

**I.     This Case Must Be Remanded Under 28 U.S.C. § 1447(c) For Lack Of Subject Matter Jurisdiction**

Title 28, Section 1447 governs the remand of cases removed to federal courts and states in pertinent part that: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case <u>shall</u> be remanded." (emphasis supplied). Thus, this Section, by its terms, is mandatory, leaving a Court with no discretion but to remand a case where subject matter jurisdiction does not exist. <u>D.C. v. 109,205.5 Feet of Land</u>, 2005 U.S. Dist. LEXIS 7990, *6 (D.D.C. April 25, 2005); <u>Julien v. CCA of Tennessee, Inc.</u>, 268 F.Supp. 2d 19, 21 (D.D.C. 2003).

**A.     Standard Of Determination And Related Analytical Framework**

In their Notice of Removal, Defendants claim that federal subject matter jurisdiction exists in this case under 28 U.S.C. § 1334, which delineates this Court's jurisdiction over bankruptcy matters.[19] In assessing Defendants' claim of subject matter jurisdiction, the nature and scope of this Court's analysis are guided by a number of applicable doctrines well established by, among other authorities, the United States Supreme Court. These doctrines are mandatory in nature and their application to this case compels the conclusion that this Court

---

[19] <u>See</u>, <u>e.g.</u>, Paragraph 4 of Defendants' Notice of Removal.

lacks subject matter jurisdiction over this case and must therefore remand this case to the D.C. Superior Court.

1.    **For District Court Jurisdiction To Exist, The Basis Thereof Must Be Present On The Face Of The Plaintiff's Complaint, And Cannot Be Grounded On Federal Defenses That Are Asserted By The Defendant**

In determining whether a case raises a federal question for purposes of supporting removal (whether under § 1334 or any other statute establishing jurisdiction over federal questions) federal courts are required to apply the so-called "well-pleaded complaint" rule, which holds that a cause of action arises under federal law to establish removal when the basis of the federal claim can be found on the face of the complaint and only on the face of the complaint. Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998) ("We have long held that 'the presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only, when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)); Int'l Union of Brickworkers and Allied Craftworkers v. Ins. Co. of the West, 366 F.Supp. 2d 33, 36 (D.D.C. 2005); Strategic Lien Acquisitions, LLC v. Republic of Zaire, 344 F. Supp. 2d 145, 148 (D.D.C. 2004) (citing Zuuribier v. MedStar Health, Inc., 306 F. Supp. 2d 1, 4 (D.D.C. 2004)). The rationale underlying the well-pleaded complaint rule is that "the party bringing suit 'is master to decide what law he will rely upon.'" Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC, 357 F. Supp. 2d 529, 534 (E.D.N.Y. 2005) (citing, The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913)). Thus, federal question jurisdiction simply does not exist where a complaint between non-diverse parties states claims which arise exclusively under state law. See, e.g., Rivet, at 475.

A well-settled corollary to the "well-pleaded complaint" rule is the axiom that where the basis for federal question jurisdiction is *not* presented on the face of the plaintiff's complaint, it cannot be established on the basis of defenses to the plaintiff's complaint (whether asserted or unasserted) which may arise under federal law. This principle was established by the United States Supreme Court in <u>Rivet</u> itself.

Where, as here, the basis for the exercise of federal subject matter jurisdiction is plainly not apparent on the face of Plaintiff's Complaint which states only "garden variety" local law causes of action, <u>Rivet</u> mandates remand to the original non-federal forum. Indeed, the facts of <u>Rivet</u> are strikingly similar to those of the case <u>sub judice</u>, since in both cases the defendants/removing parties' purported basis for federal subject matter jurisdiction is grounded entirely upon an alleged federal <u>res judicata</u> defense. <u>Rivet</u>, which controls here, expressly rejects such an argument and mandates remand for lack of subject matter jurisdiction.

<u>Rivet</u> involved a lawsuit under state law brought by mortgagees against mortgagors in the state court of Louisiana, in which the mortgagees sought to enforce their mortgage, or in the alternative, an award of damages. The mortgagors removed the case to the United States District Court for the Eastern District of Louisiana, alleging, in support of removal, that a prior Bankruptcy Court order extinguished the mortgagees' rights under their mortgage, and that this order both precluded the mortgagees' claims and formed the basis for federal question jurisdiction under 28 U.S.C. 1441(b). The mortgagees then filed a motion to remand the case to the Louisiana state court, which was denied by the District Court, which held that removal was properly predicated upon the alleged <u>res judicata</u> effect of the Bankruptcy Court's order. Following an affirmance by the United States Court of Appeals for the Fifth Circuit, the mortgagees sought and obtained <u>certiorari</u> from the United States Supreme Court.

The Supreme Court reversed. It held, <u>inter alia</u>, that the mortgagors' alleged <u>res judicata</u> defense under federal law was insufficient to establish federal question jurisdiction over the mortgagees' cause of action which was otherwise pled under state law:

> [T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint… **A defense is not part of the plaintiff's properly pleaded statement of his or her claims. ...Thus, a case may not be removed to federal court on the basis of a federal defense, ...even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case**...**Respondents defended their removal of the case from state court to federal court on the ground that petitioners' action was precluded, as a matter of federal law, by the earlier Bankruptcy Court orders**...A case blocked by the claim preclusive effect of a prior federal judgment differs from the standard case governed by a completely preemptive federal statute in this critical respect: The prior federal judgment does not transform the plaintiff's state-law claims into federal claims but rather extinguishes them altogether**...Under the well-pleaded complaint rule, preclusion thus remains a defensive plea involving no recasting of the plaintiff's complaint, and is therefore not a proper basis for removal**.

<u>Rivet</u>, at pages 475-477 (emphasis added, internal citations omitted).

The Rivet Doctrine is not merely a technical rule of pleading divorced from the realities of real life litigation. It reflects the Supreme Court's fashioning of a bright-line rule allocating and delineating the respective parameters of federal and state courts' jurisdiction, when federal <u>res judicata</u>, albeit purely a defense, is asserted as the basis for federal removal jurisdiction. It unequivocally states that where a plaintiff's claim is properly founded in state law, it is within the state courts' <u>exclusive</u> province (subject to ultimate U.S. Supreme Court review) to resolve federal-law defenses to such claims, including federal <u>res judicata</u> defenses. <u>Id</u>., at 478. ("In sum, claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the state proceedings, and the state courts' disposition of it is subject to this Court's ultimate review."). Conversely, <u>Rivet</u> conclusively holds that the federal courts have no jurisdiction and no discretion to adjudicate

such defenses or the state law causes of action to which such federal defenses are interposed Id., at pages 475-477.  In these regards, the doctrine admits of no exceptions.  In short, it mandates remand.

The holding of Rivet has also been uniformly extended to cases such as the instant case where the asserted basis for removal was 28 U.S.C §§ 1334(b) and 1452 (rather than § 1441). Transouth Financial Corp. v. Murry, 311 B.R. 99 (M.D. Ala 2004) was a case brought under Alabama lender liability law by Murry against Transouth, in which Murry alleged that as a result of Transouth's failure to properly file a release of a home mortgage that Murry had paid in full, Murry was unable to obtain new financing to prevent foreclosure.  Prior to the foreclosure, Murry had filed a Chapter 13 bankruptcy petition in which he failed to list any potential cause of action against Transouth as an asset in his bankruptcy schedules, as he believed at that time that Transouth's mortgage had been released.  Murry's Chapter 13 plan was confirmed, and his case was later dismissed.

Upon receipt of Murry's state court complaint, Transouth removed the case to the Middle District of Alabama.  Murry then sought to remand the case to the Alabama state court. The Bankruptcy Court remanded the case to the Alabama state court, prompting Transouth's appeal.

On appeal, the United States District Court for the Middle District of Alabama, relying on Rivet, affirmed the Bankruptcy Court's remand, rejecting Transouth's contention that subject matter jurisdiction existed under § 1334(b).  In reaching this conclusion, the court noted that the only alleged federal nexus to the case was Transouth's asserted defense of the res judicata effect of the confirmed bankruptcy plan:

a

[T]he creditors contend that seeking to enforce their rights under 11 U.S.C. § 1327[20] is the invocation of a substantive right under the Bankruptcy Code, hence arising under title 11. . . [T]he Eleventh Circuit has stated that it is "§1327 [that] gives res judicata effect to confirmed Chapter 11 plan" . . . The problem with the Creditors' argument that § 1327 confers jurisdiction is that the Supreme Court has held that "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under [28 U.S.C.] § 1441(b)". . . .Thus § 1327 cannot provide a basis for removal jurisdiction.

Id., at 105.  (internal citations omitted).

See also, In Re: Conseco, Inc., 318 B.R. 425, 428-429 (Bankr. N.D. Ill. 2004); Studebaker-Worthington Leasing Corp., supra, 357 F. Supp. 2d, at 529 (Applying the well-pleaded complaint rule in a bankruptcy context and determining that alleged federal jurisdiction based upon a counterclaim which raises federal issues is insufficient to confer subject matter jurisdiction under § 1334(b)).

Courts in the District of Columbia have also applied the Rivet Doctrine and the well-pleaded complaint rule.  See, e.g., Strategic Lien Acquisitions LLC, supra, 344 F.Supp. 2d  at 148 ("To determine whether a case raises a federal question for purposes of removal jurisdiction, this court applies the "well-pleaded complaint" rule, which holds that a cause of action arises under federal law only when the federal claim can be found "on the face of the complaint and only the face of the complaint" . . . a defense is insufficient to confer jurisdiction on a federal court…") (internal citations omitted); Van Allen v. Bell Atlantic – Washington, D.C., Inc., 921 F. Supp. 830, 832 (D.D.C. 1996) ("A case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.") (internal citations and quotations omitted).

---

[20] 11 U.S.C. § 1327 is the statute that gives res judicata effect to a confirmed Chapter 13 plan.

For all of these reasons, the plain and undisputed absence of any federal causes of action on the face of the Complaint is fatal to removal. <u>Rivet</u> and its progeny mandate remand for lack of subject matter jurisdiction.

**2.      The Burden Is Upon Defendants To Establish Federal<br>        <u>Subject Matter Jurisdiction</u>**

In construing 28 U.S.C. § 1447, this Court has noted that federal courts have limited jurisdiction and therefore that the law presumes that a cause of action lies outside of the court's limited jurisdiction. <u>Julien</u>, <u>supra</u>, 268 F.Supp. 2d at page 21  (citing  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994)); <u>D.C. v. 109,205.5 Feet of Land</u>, 2005 U.S. Dist. LEXIS 7990, *3 (D.D.C. April 25, 2005).  Accordingly, courts must strictly construe removal statutes and *must resolve any ambiguities concerning the propriety of removal in favor of remand*.  <u>Id.</u>, <u>citing</u> <u>Williams v. Howard University</u>, 984 F.Supp. 27, 29 (D.D.C. 1997) and <u>Univ. v. S. Ala. v. Am. Tobbaco Co.</u>, 168 F.3d 405, 411 (11th Cir. 1999);  <u>see</u> <u>also</u>, <u>Int'l Union of Brickworkers and Allied Craftworkers v. Ins. Co. of the West</u>, 366 F.Supp. 2d 33, 36 (D.D.C. 2005).  Therefore, when a plaintiff moves to remand a case removed to a federal court by a defendant, the <u>defendant</u> bears the burden of proving federal jurisdiction.  <u>Julien</u>, <u>supra</u>, at 21 citing <u>Kokkonen</u>, <u>supra</u>, at 377; <u>Strategic Lien Acquisitions LLC</u>, at 148; <u>Int'l Union of Brickworkers and Allied Craftworkers</u>, 366 F.Supp. 2d at 36.

To summarize the foregoing principles set forth in I.A(1) and I.A(2) above, <u>Defendants</u> have the burden of proving, <u>solely</u> on the basis of Plaintiff's Complaint, that federal subject matter jurisdiction exists in this case, with any uncertainty regarding the propriety of removal to be resolved in favor of Plaintiff and the instant Motion to Remand.  As demonstrated below, Defendants fall far short of meeting their burden.  Hence, remand should be ordered.

**B.    Defendants Have Not Met And Cannot Meet Their Burden Of Proving That Federal Subject Matter Jurisdiction Exists In This Case**

**1.    There Is No Basis Whatsoever For Federal Jurisdiction Alleged On The Face Of The Plaintiff's Complaint**

Under the "well-pleaded complaint" rule and the "Rivet Doctrine," Defendants' endeavor to remove this case fails at the outset.  As discussed, this Court, in determining whether federal jurisdiction exists, must restrict its analysis to the face of the Plaintiff's Complaint alone.  Plaintiff's Complaint does not allege diversity of citizenship between the parties, and does not allege any substantive federal cause of action against Defendants.  To the contrary, the causes of action asserted by Plaintiff against Defendants for breach of contract, breach of fiduciary duty and negligence arise entirely under District of Columbia law.

Defendants claim to have a res judicata defense in this case that somehow arises under federal law (based on certain rulings in a (now closed) bankruptcy case styled In re Capitol Hill Group, Debtor, Case No. 02-0359 the "Bankruptcy Case").   In any event, this defense is irrelevant to the jurisdictional analysis required to be performed when remand is sought for lack of subject matter jurisdiction.  See, Section I.A.(1) , supra.[21]  As discussed above, Rivet and its progeny expressly hold that where the complaint at issue alleges only state law claims, the defendant's res judicata defense purportedly arising under federal law cannot confer jurisdiction upon a federal court.  Rivet, supra, at 475-477; Transouth, supra, at 105.   Such is precisely the situation in the case sub judice.  On this basis alone, Defendants cannot establish federal subject matter jurisdiction as a matter of law and this case must be remanded immediately to the District of Columbia Superior Court.

---

[21] Plaintiff disputes Defendants' claim that any ruling in the Bankruptcy Proceedings has res judicata  effect in the instant case.  However, the merit (or lack thereof) of Defendants' putative res judicata defense is not material to the adjudication of the instant Motion and, as such, Plaintiff will not proffer their substantive rebuttal to Defendants' res judicata argument herein.

## 2.     There Is No Basis Whatsoever For Federal Jurisdiction In This Case

As shown, application of the "well pleaded complaint" rule and the "Rivet Doctrine" dooms Defendants' assertion of federal jurisdiction at the outset, and, ipso facto, mandates the remand of this case.[22]   Moreover, even if this Court were to go beyond the four corners of Plaintiff's Complaint, which it is not authorized to do under the Rivet Doctrine, and assess Defendants' assertion of subject matter jurisdiction on substantive grounds, remand would still be required.

As discussed, Defendants' asserted basis for federal subject matter jurisdiction is 28 U.S.C. § 1334.  This statute, relating to federal jurisdiction over bankruptcy matters, states, in pertinent part:

(a)   Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b)  Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Defendants do not specify in their Petition for Removal the precise statutory rubric for this Court's alleged subject matter jurisdiction under §1334(b).   Obviously, Plaintiff is not seeking bankruptcy protection in this case, and, as such, § 1334(a) is plainly inapplicable.

Defendants will likely claim that there exists a supposed nexus between the legal malpractice alleged in the Plaintiff's Complaint and Defendants' simultaneous representation of CHG as a debtor in the Bankruptcy Case.[23]   Plaintiff disputes that any jurisdictionally relevant

---

[22] Notably, the Rivet Doctrine is not even mentioned, let alone addressed, in Defendants' Petition for Removal and Motion for Summary Judgment.

[23] See, e.g., Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment (the "Summary Judgment Memo"), at page 2.  In support of this contention, Defendants on page 2 of the Summary Judgment Memo, cite to a number of decisions from other jurisdictions. However, each of these cases is easily distinguishable from the case sub judice, as discussed below.

nexus between the Zoning Representation and the Bankruptcy Case exists.  Nor do Defendants specify whether the alleged nexus gives rise to either "arising under," "arising in" or "related to" jurisdiction under § 1334.  Whatever the claimed basis for federal subject matter jurisdiction, Defendants' allegation to this effect must be rejected.  In short, the Plaintiff's causes of action, as alleged in the Complaint, neither "arise under", "arise in", or are "related to" a case under Title 11.

> a.    **Defendants Cannot Meet Their Burden Of Showing That This Action Relates To A Case Under Title 11**

"Related to" subject matter jurisdiction is the "broadest of the potential paths to bankruptcy jurisdiction."  In Re Resorts Int'l, Inc., 372 F.3d 154, 163 (3rd Cir. 2004) (citing Donaldson v. Bernstein, 104 F.3d 547, 552 (3rd Cir. 1997).  Stated in other words, in order for a party to establish § 1334 jurisdiction, the party must, at a minimum, establish "related to" jurisdiction.  In Re Resorts Int'l, Inc., at page 163 (Since related to jurisdiction is the broadest possible jurisdictional basis, a court, in determining whether § 1334 jurisdiction exists, "need only determine whether a matter is at least 'related' to the bankruptcy.").  Accordingly, it follows, a fortiori, that if this Court does *not* have "related to" jurisdiction, it cannot have "arising in" or "arising under" jurisdiction.  See, e.g., In Re: Banks, 233 Fed. Appx. 143 (3rd Cir. 2007) (Upon concluding that the Bankruptcy Court did not have related to jurisdiction over the debtor's adversary proceedings stemming from post-petition acts unrelated to the debtor's bankruptcy, the Bankruptcy Court's dismissal of the proceedings, on the grounds that § 1334 jurisdiction could not exist was affirmed).  In this case, Defendants are unable to make a jurisdictional showing even under this broadest standard.

A court has "related to" jurisdiction over a civil claim where the outcome of the claim could conceivably have an effect on the estate being administered in bankruptcy.  See, e.g.,

Atkinson v. Kestell, 954 F. Supp. 14, 16 (D.D.C. 1997), a'ffd. sub nom., 156 F. 3d 1335 (D.C. Cr. 1998) (citing Pacor v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984); In Re: Barnes, 365 B.R. 1, 4 (Bankr. D.D.C 2007) (concluding that "related to" jurisdiction did not exist where the debtor examination sought "will not lead to any proceeding having an impact on the administration of the bankruptcy estate: the recoveries would not be by the estate, and the claims are not against the estate.")

Courts in this jurisdiction and elsewhere have expressly held that "related to" jurisdiction does **not** exist where the bankruptcy estate to which the claim purportedly relates has closed, or where the bankruptcy case to which the claim allegedly pertains has been dismissed.  See, e.g., Atkinson, supra, 954 F. Supp., at page 16 (There  is no "related to" § 1334(b)  jurisdiction over an action brought by a judgment creditor against a judgment debtor, where the judgment debtor's bankruptcy petition had previously been dismissed, in that: "Without the existence of an estate in bankruptcy, there is nothing for Plaintiff's current action to be related to or to arise in ...***This court cannot possibly have jurisdiction 'related to' a non-existent bankruptcy proceeding.***"); Transouth, supra, 311 B.R. at page 106  (court determines that "related to" jurisdiction did not exist, where: "First, the plan had already been dismissed; therefore, there is no reorganization effort to protect.. . . Even if Murry prevails, the awarded damages in this suit cannot become part of the bankruptcy estate, because the estate ceased to exist when the Chapter 13 case was dismissed."); (emphasis added).[24]

---

[24]  See also, in this regard,  In Re: Conseco, Inc., 318 B.R. at 432 ("The extent of related jurisdiction is even more limited after confirmation of a Chapter 11 plan . . . Post confirmation related jurisdiction exists primarily to ensure that reorganization plans are implemented and to protect estate assets devoted to implement the confirmed plan . . . In addition, once property of the estate is sold or otherwise transferred out of the estate, the bankruptcy court's jurisdiction to determine disputes regarding that property lapses.")

This Court has likewise held that "related to" jurisdiction, <u>ipso</u> <u>facto</u>, does not exist, where the adjudication of the asserted causes of action would not even affect an extant bankruptcy estate. For example, <u>Abbey v. Modern Africa One, LLC</u>, 305 B.R. 594 (D.D.C. 2004) involved an action brought by the minority shareholders of a bankrupt corporation (Warsun), against the majority shareholders of the corporation, alleging breach of fiduciary duty, conversion and other commercial torts. Specifically, the minority shareholders alleged that the majority shareholders acted unlawfully by engaging in certain transactions during the course of Warsun's bankruptcy, including entering into an asset purchase agreement which was approved by the Bankruptcy Court for the Eastern District of Virginia.

The majority shareholders moved under 28 U.S.C. § 1404(a) and § 1412 to transfer venue of the case to the Virginia Bankruptcy Court, where Warsun's bankruptcy was pending. In the course of determining whether grounds to transfer existed under § 1404(a), this Court assessed whether the Bankruptcy Court would have "related to" jurisdiction. This Court concluded that such jurisdiction would <u>not</u> exist, notwithstanding the fact that the Bankruptcy Court played a direct role in approving the very transaction from which the minority shareholders' claim arose:

> The usual articulation of the test for determining whether a claim is "related to" a bankruptcy case is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy"…<u>While plaintiff's claims *are* factually related to the bankruptcy case, this is not enough to justify a finding of subject matter jurisdiction in the Bankruptcy Court, for common issues of fact will not automatically render a civil proceeding "related to" the bankruptcy proceeding. Although plaintiffs' claims may be "related to" debtor's bankruptcy proceeding in a colloquial sense, in a legal sense, they are not</u>. … Because plaintiffs seek monetary damages only from [the named defendants] any recovery would not infringe upon Warsun's property or assets or those of the bankruptcy estate. Moreover, plaintiffs' recovery will have no impact on Warsun's rights, liabilities, options or freedom of action . . . Accordingly, because plaintiffs' claims (with the exception to their claim to ownership of Warsun Nigeria) in this case are not predominantly related to the bankruptcy action, the Bankruptcy Court would lack subject matter jurisdiction under 28 U.S.C. § 1334(b), and therefore, this case cannot be transferred.

Id., at pages 601, 602-603 (emphasis added).

In view of the foregoing authorities, "related to" jurisdiction cannot exist in this case on the basic grounds that the Bankruptcy Case has been terminated and the Plaintiff's bankruptcy estate has been closed.  Plaintiff's Chapter 11 Plan was confirmed in the Bankruptcy Case on July 17, 2003 and Judge Teel issued a Final Decree in the Bankruptcy Case on January 21, 2004.[25]  This Final Decree, by its express terms, closed the Bankruptcy Case with the exception of filing fee applications and the litigation of an unrelated adversary proceeding.  The Bankruptcy Case was itself closed by order of the Bankruptcy Court on June 19, 2007.[26]

Indeed, Judge Teel, through his prior rulings, has already signaled to this Court that in his view, the Bankruptcy Court does not have §1334(b) "related to" jurisdiction in this malpractice case.  Well before this case was filed, Defendant Potter, anticipating a malpractice claim by Plaintiff, sought to delay the closing of the Bankruptcy Case for the express purpose of having any malpractice case which Plaintiff might have against Defendants adjudicated by the Bankruptcy Court.[27]  Indeed, Defendant Potter filed his motion in the Bankruptcy Case on May 4, 2007 seeking to keep the Bankruptcy Case open for this express purpose. This Motion was denied by Judge Teel in a Memorandum Order and Decision dated June 19, 2007 (the "June 19 Decision").[28]

---

[25] A copy of this Final Decree is attached hereto as Exhibit 1.

[26] A copy of this Order is attached hereto as Exhibit 2.

[27] Presumably, this was done to attempt to deprive Plaintiff of the jury trial right to which it is entitled under District of Columbia law.

[28] A copy of the June 19 Decision is attached hereto as Exhibit 3.

In the June 19 Decision, Judge Teel expressly held that, in light of the closing of the Bankruptcy Case, the Bankruptcy Court *no longer had the jurisdiction to adjudicate a malpractice claim between Plaintiff and Defendant Potter*:

> The Final Decree entered on January 21, 2004, directed that the case is closed, but directed that the closing did not bar the filing of fee applications and the continued litigation of the objection to the Newmark claim…The matters that were allowed to be pursued despite the general closing of the case have been concluded…**The litigation that Potter envisions as possibly eventuating does not come within the limited matters that the Final Decree permitted to be pursued in this court despite the general closing of the case. Nor do the issues of res judicata and fee-shifting that Potter anticipates he would raise with respect to such possible litigation…** Accordingly, this case is already closed with respect to the pursuit of the litigation Potter fears may ensue or the removal of any such litigation to this court. The case would have to be reopened to entertain such matters, and currently, there is no matter pending to be removed to this court.

Id., at pages 1-3.[29]

Judge Teel's June 19 Decision echoes the rationale of the courts in the above-cited cases, which have routinely concluded that they could not exercise "related to" § 1334(b) jurisdiction over civil actions brought or maintained after the closing of a bankruptcy case. The common rationale of these decisions is uniform and unambiguous: Once a bankruptcy debtor's plan has been confirmed a final decree has been entered and its case has been closed, a dispute between the debtor and another party which gives rise to a state law cause of action cannot implicate the "related to" jurisdiction of a bankruptcy court because the cause of action no longer has any relevant nexus with the administration of a bankruptcy estate. Stated in another fashion: upon the closing of the Bankruptcy Case, neither the Plaintiff's estate (which no longer existed) nor the erstwhile creditors to this estate, had any legally-cognizable interest in the subject matter of this case. For each of the foregoing reasons, this Court does not have "related to" jurisdiction over this case.

---

[29] Judge Teel's June 19 Decision is being quoted herein and is therefore attached hereto only for its import on the issue of this Court's subject matter jurisdiction under § 1334(b).

As discussed, since "related to" jurisdiction constitutes the outer limit of a bankruptcy court's jurisdiction under § 1334(b) (In Re Resorts Int'l, Inc., supra, 372 F.3d at 163), it follows, a fortiori, that if this Court does not have "related to" jurisdiction, it cannot have "arising in" or "arising under" jurisdiction.  See, In Re: Banks, 233 Fed. Appx. 144.  Therefore, since Plaintiff has demonstrated that "related to" jurisdiction cannot be exercised by this Court, it is arguable whether an analysis of "arising in" or "arising under" jurisdiction is even necessary. Nonetheless, Plaintiff will establish below that Defendants cannot demonstrate subject matter jurisdiction based upon these alternative §1334(b) statutory rubrics.

**b.    Defendants Cannot Meet Their Burden Of Showing That This Matter "Arises Under" Title 11**

Defendants cannot meet their burden of showing that this matter "arises under" title 11. A case "arises under" Title 11 where the claim is made pursuant to a provision in the bankruptcy code.  See, e.g., In Re: U.S. Office Products Co. Securities Litigation, 313 B.R. 73, 79 (D.D.C. 2004).  It is obvious that the claims asserted by Plaintiff in its Complaint do not arise under Title 11 since they are based upon theories of common law negligence, breach of fiduciary duty and breach of contract under District of Columbia law, rather than upon any provision of the Bankruptcy Code.  Accordingly, there is no "arising under" jurisdiction in this case.

**c.    Defendants Cannot Meet Their Burden Of Showing That This Matter "Arises In" A Case Under Title 11**

A civil proceeding "arises in" a bankruptcy case only where it is of a nature that could arise only in a bankruptcy case and could have no existence outside of the bankruptcy proceeding.  In Re: U.S. Office Products Co. Securities Litigation, 313 B.R. 73, at 79; Atkinson, supra, 954 F. Supp. at page 16 .  Applying this standard, the United States Bankruptcy Court for the District of Columbia recently held in Barnes, 365 B.R., at page 3 :

> The meaning of "arising in" proceedings … seems to be a reference to those "administrative" matters that arise only in bankruptcy cases.  In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless **would have no existence outside of the bankruptcy**.

citing <u>Wood v. Wood</u>, 825 F.2d 90, 97 (5th Cir. 1987).

The United States Court of Appeals for the Third Circuit has similarly concluded that "claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case."  <u>Stoe v. Flaherty</u>, 436 F.3d 209, 218 (3rd Cir. 2006).

The District of Columbia Bankruptcy Court has likewise mandated the demonstration of an intimate nexus between the civil proceeding at issue and an underlying bankruptcy case as a precondition for finding "arising in" jurisdiction.  In <u>Barnes</u>, <u>supra</u>, the Bankruptcy Court denied a creditor's motion for a Bankruptcy Rule 2004 examination of a debtor with whom the creditor had entered into a post-petition settlement agreement (approved by the Bankruptcy Court) which resolved the creditor's adversary proceeding against the debtor.  Although the basis for the proposed examination was the debtor's default under the bankruptcy court-approved settlement agreement, the court rejected the contention that "arising in" jurisdiction existed, noting that "The claim must have something to do with concluding the administration of the case if it is to be one 'arising in' the case, and the debtor's performance of the contract here had nothing to do with concluding the administration of the case." <u>Id</u>., at page 5.  In this regard, the Court in <u>Barnes</u> further stated that:

> [T]hat the debtor's breaches occurred while the bankruptcy case was still pending is irrelevant.  The debtor's alleged breaches of the parties' contract just as easily could have arisen long after the bankruptcy case was closed.  It is only a fortuity that the bankruptcy trustee had not yet completed the administration of the estate and requested the entry of an order closing the case when the breaches occurred.

<u>Id</u>., at page 4

Therefore, under the <u>Barnes</u> holding, "arising in" jurisdiction cannot be found to exist simply because the cause of action arose subsequent to the claimant seeking bankruptcy protection, or because there may be some attenuated connection between the claim and the claimant's bankruptcy case.   <u>See also</u>, <u>Transouth</u>, <u>supra</u>, 311 B.R. 99, at 105 (arising in jurisdiction does not exist simply because of the alleged claim-preclusive effect of a confirmed Chapter 13 plan, where the plaintiff's claims otherwise sounded in state law).  Rather, the claim at issue must be inextricable from the claimant's bankruptcy, such that the claim could not have arisen without the bankruptcy.  <u>Barnes</u>, at page 3.

Applying the foregoing test, it is clear that "arising in" jurisdiction does not lie in this case.  Firstly, as reflected in the allegations of Plaintiff's Complaint, the legal representation from which the Plaintiff's claims arose, was the Zoning Representation, <u>not</u> the Bankruptcy Case.  Specifically, the nucleus of operative facts underlying the Plaintiff's Complaint pertain exclusively to Defendants' representation of the Plaintiff before the ZA and BZA, administrative bodies of the District of Columbia government with no relationship whatsoever to this Court or to the Bankruptcy Court.  There are <u>no</u> allegations in the Complaint indicating or suggesting that Defendants' malpractice arose, in whole or in part, from Defendants' simultaneous representation of Plaintiff in the Bankruptcy Case.  Moreover, the legal theories upon which Plaintiff bases its claims are common law theories of breach of contract,  professional negligence and breach of fiduciary duty (<u>not</u> federal bankruptcy law).

These fundamental facts distinguish this case from the cases relied upon by Defendants on page 2 of their Summary Judgment Memo (to which Defendants cite in support of their contention that this Court has jurisdiction over this case); i.e., <u>Grausz v. Englander</u>, 321 F.3d 467, 471 (4th Cir. 2003), <u>Iannochino v. Rodolakis</u>, 242 F.3d 36 (1st Cir. 2001) and <u>Southmark</u>

Corp. v. Coopers & Lybrand, 163 F.3d 925, 931 (5th Cir. 1999), cert. denied, 527 U.S. 1004 (1999).[30]

Preliminarily, it should be noted that in none of Grausz, Iannochino and Southmark Corp. was the Rivet Doctrine applied, or even addressed.   This point is essential, because, as demonstrated above, the Rivet Doctrine, in and of itself, mandates the remand of the case at bar.[31]   On this basis alone, these cases are inapposite and Defendants' reliance upon them is misplaced.

There is also a basic substantive difference between this case and Grausz, Iannochino and Southmark .   In all three of these cases, the malpractice claims asserted against the professionals over which the trial court exercised bankruptcy jurisdiction, arose *out of the professionals' actions as bankruptcy professionals in the bankruptcy cases themselves*.   (See, e.g., Iannochino, at page 41 ("The Iannochinos' complaint was *grounded upon the legal services the defendants had provided during the bankruptcy* and alleged that, through those services [the defendants] had committed professional malpractice.") (emphasis added); Grausz, at page 471 ("Grausz filed this legal malpractice action against the Linowes firm . . . He alleges that the Linowes firm (1) negligently failed to advise him to list his community property interests on his

---

[30]   As discussed above, since Defendants' Motion for Summary Judgment is extrinsic to the Plaintiff's Complaint, it cannot be considered by this Court in making a jurisdictional determination under the Rivet Doctrine and the well-pleaded complaint rule.   Nonetheless, since the precise basis upon which Defendants rely in asserting that this Court has subject matter jurisdiction is impossible to ascertain on the face of  the Notice of Removal itself, (where Defendants state generally that they purport to remove this action under "§§ 1334, 1441, 1446, and 1452 "), and since the above cited cases are relied upon by Defendants to purportedly support this Court's subject matter jurisdiction, Plaintiff will proceed to demonstrate that these cases are unavailing to Defendants.

[31]   Indeed, none of the courts in these cases addressed the crucial question, decided in Rivet, as to the portions of the record a court may consider in determining whether § 1334(b) jurisdiction exists. Indeed, Iannochino did not even involve a jurisdictional challenge, but rather, an analysis of res judicata.

amended Schedule B and (2) negligently failed to advise him to verify the accuracy of the packing list that was attached to the schedule.")).[32]

It is patently obvious from the reasoning of these cases that their conclusions regarding the existence of federal subject matter jurisdiction were premised upon the intimate nexus between the acts allegedly constituting malpractice and the claimant's underlying bankruptcy cases.  (See, Grausz, supra, at page 471-472 ("'[A]rising in' jurisdiction surely means that jurisdiction exists over a malpractice claim against a lawyer for providing negligent advice to a debtor *in a bankruptcy case*.") (emphasis added); Southmark Corp., at 931 ("In this case, *the professional malpractice claims alleged against Coopers are inseparable from the bankruptcy context* . . . the claim against Coopers is not just for malpractice, but for the value of the asset which Coopers was to assist Southmark in recovering...") (emphasis added)).[33]  Viewed in this context, the holdings of these cases are hardly surprising: a malpractice claim stemming from the manner in which a bankruptcy professional discharged his duties *during the course of the bankruptcy*, is, by its very nature, the type of claim that cannot exist in the absence of a bankruptcy.  This is not the situation in the instant case, where the asserted malpractice is not alleged to have stemmed from Defendants' representation of Plaintiff in the Bankruptcy Case, but, instead, from Defendants' Zoning Representation of Plaintiff before the Zoning Administrator and the Board of Zoning Adjustment, as to matters involving peculiarly local law issues of zoning and parking ratios.

---

[32] Similarly, in Southmark the malpractice defendant (the accounting firm of Cooper's & Lybrand) had been retained by the plaintiff following its bankruptcy, and was expressly directed by the bankruptcy court to investigate the propriety and practicality of pursuing litigation against third-parties. Id., at page 928.

[33] In Iannochino no challenge was made to the jurisdiction of the Court.

Indeed, subsequent courts have distinguished their holdings from the cases relied upon by Defendants on these very grounds. For example, in Re Gulf Coast Orthopedic Center, 261 B.R. 707 (Bankr. M.D. Fla. 2000), the court granted a motion for remand in a legal malpractice claim brought by the plaintiff/debtor against defendants, attorneys who had represented the plaintiff in a defamation action unrelated to the plaintiff's bankruptcy. In reaching its decision, the court distinguished its case from Southmark, on the express grounds that the alleged malpractice in Gulf Coast did not relate to the debtor's bankruptcy. Id., at 709.

Likewise, in In re Resorts Int'l Inc., supra, 372 F.3d at 154, the Court likewise found Southmark to be inapposite where the malpractice, while admittedly stemming from a bankruptcy, did not pervade the bankruptcy or affect the estate's assets. This case involved a professional malpractice claim brought by a U.S. Trustee against an accounting firm for negligence and breach of contract in connection with accounting services performed on behalf of a litigation trust to which a bankruptcy debtor had assigned its assets. Notwithstanding that the bankruptcy court had already confirmed the debtor's reorganization plan, the trustee maintained that the bankruptcy court maintained jurisdiction over the case, on the grounds that the litigation trust was effectively a continuation of the debtor's bankruptcy. The United States Court of Appeals for the Third Circuit disagreed. In course of holding that the case was not a "core" proceeding (and thus, by clear implication, that "arising in" jurisdiction did not exist), the Court distinguished its case from Southmark:

> Unlike in *Southmark*, this claim arose post-plan confirmation. It does not directly affect the debtor or the liquidation of the estate's assets. Furthermore, the accounting firm's alleged malpractice in *Southmark* implicated the integrity of the entire bankruptcy process . . . Its alleged malpractice was inseparable from the bankruptcy context. Here, Price Waterhouse's alleged malpractice, erroneously reporting that certain accrued interest belonged to one entity rather than another . . . even if true, is not a proceeding that could arise only in the bankruptcy context.

Id., at page 163.

The fact that the Zoning Representation in this case happened to occur during the course of Plaintiff's bankruptcy is merely fortuitous. It is insufficient to create "arising in" jurisdiction under § 1334(b). Barnes, supra, at page 2. In the instant case, as in Barnes, "It is only a fortuity that the bankruptcy trustee had not yet completed the administration of the estate and requested the entry of an order closing the case when the breaches occurred." Id. at p. 4. Viewed from another perspective, the Zoning Representation could have (and likely would have) occurred even if Plaintiff had never filed for bankruptcy protection. Even according to Defendants, the Zoning Representation was prompted by the ZA issuing a citation to Plaintiff requiring it to provide 225 parking spaces to its tenants. Defendants do not claim, nor could they credibly maintain, that the ZA's issuance of a citation to Plaintiff, or the Zoning Representation itself, were prompted by Plaintiff's bankruptcy. Thus, the conclusion is inescapable that the ZA's issuance of a citation to Plaintiff, and thus the commencement of the Zoning Representation, were nothing more than fortuitously simultaneous with Plaintiff's bankruptcy. As such, this case presents a paradigmatic instance where the claim at issue would have an existence outside of the plaintiff/debtor's bankruptcy. As established above, in such cases "arising in" jurisdiction cannot exist.[34]

---

[34]  Defendants will likely argue in response that on December 16, 2003, the Court in the Bankruptcy Proceeding approved certain fees charged by Defendants to Plaintiff in the course of administrating Plaintiff's bankruptcy estate, including fees (representing approximately 6.7% of the total fees approved) relating to the Zoning Representation. Such an argument would be a red herring. Firstly, these fees were awarded at a time when Plaintiff did not even know of, or have reason to know of, Defendants' malpractice, as the adverse decision by the BZA was not even rendered until September 9, 2004. As the holding in Barnes makes abundantly clear, the mere fact that a bankruptcy court has some attenuated relationship to a claim (in that case, by approving the settlement agreement from which an alleged cause of action arose, or, as in our case, by approving a petition for attorneys' fees which includes (as a de minimus percentage) fees reflecting the legal services giving rise to attorney malpractice) does not create "arising in" jurisdiction under § 1334(b). Moreover, Plaintiff does not seek in its Complaint a disgorgement of attorneys' fees paid during the Zoning Representation, which further attenuates the link between this case and the Bankruptcy Proceeding to the point of destroying it.

Finally, case law suggests that "arising in" jurisdiction cannot exist where the Plaintiff's bankruptcy estate has been closed and its bankruptcy case dismissed.  (See, Atkinson, supra, at page 16: "Without the existence of an estate in bankruptcy, there is nothing for Plaintiff's current action to be related to or to arise in.") (emphasis added).

For each of the foregoing reasons, and particularly in view of the fact that, in adjudicating the instant Motion, all doubts are to be resolved in favor of remand.[35] this Court should hold that § 1334(b) jurisdiction is lacking in this case.  In addition, Plaintiff respectfully requests that it be awarded its costs and expenses, including attorneys' fees, incurred by Plaintiff as a result of Defendants' removal of this case, as expressly warranted under § 1447(c).  Without engaging in needless polemics, Plaintiff submits that the non-removability of this case was, or should have been, evident to Defendants and their counsel, and that Defendants attempt to do so was in derogation of well-settled precedent from this Court and from the United States Supreme Court, as outlined above.  Plaintiff should not bear the cost of this completely unjustified removal.

## II.    Remand Is Appropriate In This Case As An Equitable Matter Under 28 U.S.C. § 1452(b)

Alternatively, even assuming, arguendo, that this Court determines that federal subject matter jurisdiction exists in this case under § 1334(b), remand is nevertheless appropriate under 28 U.S.C. §1452(b).  This Section states, in pertinent part, that "the court to which [a] claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

While there does not appear to be any reported case from this Court setting forth the precise standard for adjudicating a request for equitable remand under §1452(b), and while the standard articulated in other federal districts differs somewhat from district to district, courts have typically focused on the following factors: (i) the effect of remand on the efficient

---

[35]  See, Williams, supra, 984 F.Supp. at page 29.

administration of the bankruptcy estate (with a lesser or non-existent effect militating in favor of remand); (ii) the extent to which issues of state law predominate (a greater extent supporting remand); (iii) the difficulty or unsettled nature of applicable state law (with greater difficulty or uncertainty supporting remand); (iv) principles of comity; (v) the existence of the right to jury trial (in which case, jeopardizing such right by removal weighs in favor of remand); (vi) the degree of relatedness or remoteness to the proceedings in the main bankruptcy case (with greater remoteness supporting remand); ; and (vii) prejudice to the involuntarily removed defendants.  In Re Merry-Go-Round Enterprises, Inc., 222 B.R. 254, 257 (D. Md. 1998) (citing Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407 (S.D.N.Y. 1991).  These factors are discussed in turn below.

### A.    The Effect Of Remand On The Efficient Administration Of The Bankruptcy Estate

Remand will have no effect whatsoever on the administration of Plaintiff's bankruptcy estate, since, as discussed supra, this estate has closed and therefore no longer exists.  As such, this factor clearly favors Plaintiff.

### B.    The Extent To Which Issues Of State Law Predominate

Issues of state law clearly predominate.  As noted above, each of the Plaintiff's claims for breach of contract, breach of fiduciary duty and negligence arises exclusively under District of Columbia law.  Defendants have asserted in their Motion for Summary Judgment two defenses, expiration of the statute of limitations and res judicata.  Defendants' statute of limitations defense arises under local law and will be adjudicated solely under District of Columbia law; specifically D.C. Code §12-301 and its interpretive case law,  which govern the statute of limitations for common law tort and contract actions.  While issues of federal law may arguably be pertinent to Defendants' alleged res judicata defense, it is submitted that this limited nexus to

federal law is plainly insufficient to warrant the denial of equitable remand.  As previously discussed, the U.S. Supreme Court held in <u>Rivet</u> that that a defendant's putative federal-law defense of <u>res judicata</u> was <u>ipso</u> <u>facto</u> insufficient to even confer subject matter *jurisdiction* upon a federal court.  It follows, a <u>fortiori</u>, that an alleged federal-law <u>res judicata</u> defense to an otherwise state law claim has minimal, if any, bearing upon a remand analysis under § 1452(b).  To the contrary, <u>Rivet's</u> allocation of federal <u>res judicata</u> defenses to the province of state courts (except for U.S. Supreme Court review) militates decisively in favor of equitable remand.

### C.    The Difficulty Or Unsettled Nature Of Applicable State Law

There may be certain unsettled issues of state law in this case.  For example, as noted in footnote 3 of the Memorandum Decision in <u>Havens v. Patton Boggs, LLP et al.</u>, Case No. 05-014549 HHK, 2006 WL 1773473 (D.D.C. June 26, 2006), <u>a'ffd.</u>, 2007 WL 1549030 (D.C. Cir. May 17, 2007) (upon which Defendants significantly rely in their Motion for Summary Judgment) there may be doubt in the District of Columbia as to whether the "discovery rule" tolling the statute of limitations applies to legal malpractice claims sounding in contract law.  To the extent there are any unresolved issues of state law which arise in this case, Plaintiff submits that the D.C. Superior Court is the more appropriate forum to adjudicate such issues.  <u>See</u>, e.g., <u>In re Merry-Go-Round Enterprises, Inc.</u>, at page 258 (Affirming a §1452(b) remand, in part, on the ground that "Significant issues [of state law] are raised which Judge Derby could properly find can be more appropriately resolved by state courts who have day-to-day familiarity with Maryland tort law and who are experienced in adjudicating common law claims.").  Hence, this factor militates in favor of remand.

### D.    Principles Of Comity

Considerations of comity with the local court system also strongly militate in favor of remand.  This case has obvious and pervasive links to the District of Columbia, including, inter alia, the facts that Plaintiff and Defendants Shaw Pittman and Pillsbury Winthrop are each domiciled in the District of Columbia, and all of the parties regularly transact business in the District of Columbia.  The Defendants' tortious actions/omissions and the breaches of contract alleged in the Plaintiff's Complaint occurred in the District of Columbia, and the damages suffered by Plaintiff were sustained in the District of Columbia.  As discussed supra, the law that will be applied to this case is D.C. local law.  Finally, given that matters of attorney professional responsibility are at issue, and in light of the interest of the courts of the District of Columbia in regulating the conduct of attorneys practicing before it, it is submitted that the Superior Court is the only appropriate forum to litigate this case.

### E.    Plaintiff's Jury Trial Right

In applying the Merry-Go-Round factors, courts have often focused upon safeguarding any right a plaintiff may have to a jury trial as to its state law claims, and have determined, in the specific context of professional malpractice cases, that where the denial of remand would result in the deprivation of a jury trial right to which the plaintiff would otherwise be entitled under state law, equitable remand is appropriate.  In Merry-Go-Round, for example, the claims at issue were professional negligence and malpractice claims filed in the Circuit Court for Baltimore City by the Chapter 7 Trustee for Merry-Go-Round against the accounting firm of Ernst & Young.  The complaint alleged that Ernst & Young had: (i) concealed the fact that Merry-Go-Round's bankruptcy counsel was, at the time of Merry-Go-Round's bankruptcy, also representing Ernst &

Young in an unrelated matter; and (ii) negligently provided advisory services to Merry-Go-Round which resulted in Merry-Go-Round's failure to reorganize successfully under Chapter 11. Following Ernst & Young's removal of the action to the United States Bankruptcy Court for the District of Maryland, Merry-Go-Round successfully moved for remand under § 1452(b).

The U.S. District Court, through Judge Motz upheld the Bankruptcy Court's decision to remand. The Court emphasized that Merry-Go-Round would unquestionably have a jury trial right in a state court but that such right would not necessarily exist before the bankruptcy court:

> Assuming that Congress has abrogated the right to a jury trial in cases related to bankruptcy proceedings in federal court and that it is constitutional for it to have done so . . .it is not at all clear that Congress intended further to abrogate the right by prohibiting a federal court from remanding to state court a case where a jury trial was prayed. Traditionally, a jury trial right has attached to tort claims such as those asserted by the Trustee, and presumably Congress understood that judges would consider the preservation of the right to a jury trial to be an "equitable ground" for remand.

Id., at page 258.

Importantly, the Merry-Go-Round Court upheld the §1452(b) remand notwithstanding its acknowledgement that there was a "federal color" to Merry-Go-Round's claims. Specifically, the court noted that "The alleged misrepresentations were made during the course of the bankruptcy proceedings themselves," and that "Issues relating to whether Ernst & Young's alleged malpractice caused the failure of the reorganization will be complex and difficult." Id., at page 259.

The reasoning of the District Court in Merry-Go-Round applies with even greater force to the case sub judice, particularly since there is no "federal color" to Plaintiff's claims, either legally or factually. Plaintiff would undisputedly have a right to a jury trial before the Superior Court of the District of Columbia on its damages claims against Defendants. See, e.g., D.C. Sup. Ct. Civ. R. 38. On the other hand, in the event this case is not remanded, Plaintiff anticipates

that Defendants may vigorously dispute Plaintiff's entitlement to a jury trial before this Court, thereby engendering needless and expensive collateral litigation before this Court and thereby wasting judicial resources.[36] As such, in light of the holding in Merry-Go-Round, this factor likewise favors Plaintiff.

### F.    The Degree Of Relatedness Or Remoteness To The Proceedings In The Main Bankruptcy Case

The relationship between the case sub judice and the now-closed Bankruptcy Case is at best remote and at worst (for Defendants) completely severed due to the closing of that case. Unlike the Merry-Go-Round case, the case at bar does not arise out of alleged negligence committed by bankruptcy professionals during the course of bankruptcy proceedings. Rather, as Plaintiff has already proven, the facts underlying the causes of action asserted by Plaintiff occurred solely within the context of the Zoning Proceedings. As such, in this case, the link between the malpractice at issue and the underlying bankruptcy case is considerably more remote and attenuated than in Merry-Go-Round (where the Court nonetheless held that § 1452(b) remand was proper). The remoteness between this case and the Bankruptcy Case further strengthens the argument in favor of equitable remand.

Finally, there are no involuntarily-removed Defendants in the instant case. Accordingly, the final Merry-Go-Round factor is inapplicable.

As established above, each of the relevant factors for assessing the propriety of § 1452(b) remand decisively favors Plaintiff. Only the last factor is inapplicable. No factor militates against remand. Accordingly, in the event this Court determines that it has subject matter

---

[36] As previously discussed, Plaintiff surmises that Defendants' attempt to remove this case is itself principally motivated by forum-shopping in an effort to deprive Plaintiff of a jury trial. Plaintiff by no means concedes that it is not entitled to a jury trial in the District Court if this case is not remanded. It posits, however, that Defendants could challenge that right albeit without adequate legal justification, thus causing delay, unecessary expense and waste of scarce judicial resources.

jurisdiction over the case <u>sub judice</u>, it should nevertheless remand this case on equitable grounds under § 1452(b).

**III.     <u>This Court Should Abstain From Adjudicating This Matter Under § 1334(c)</u>**

28 U.S.C. Section 1334(c) sets forth the conditions under which a court may, and is required to, abstain from hearing a bankruptcy-related case, under circumstances where it otherwise has jurisdiction under § 1334(b).  This provision states, in pertinent part:

> (c)(1)  Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under the section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Stated in simplified form, §1334(c)(1) offers a court the discretion to abstain from hearing a case where the court has either "arising under," "arising in" or "related to" jurisdiction (i.e., it is a permissive abstention statute).  By contrast, §1334(c)(2) states that a district court "shall abstain" where it has "related to" jurisdiction alone, if: (i) a timely motion is filed seeking abstention; (ii) the cause of action is based upon state law; (iii) 1334 is the sole basis for federal subject matter jurisdiction; and (iv) a cause of action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.   In other words, §1334(c)(2) is a mandatory abstention statute.  <u>See</u>, <u>e.g.</u> 1 <u>Collier's</u> <u>On</u> <u>Bankruptcy</u>, ¶ 3.05[2] (15th Edit. 2007).

**A.    If This Court's Basis For Subject Matter Jurisdiction Is "Related To" Jurisdiction Under 1334(b) Alone, It Must Abstain From Hearing This Case Under § 1334(c)(2)**

If this Court disagrees with Plaintiff's arguments as to the absence of "related to" jurisdiction and concludes that it has "related to" subject matter jurisdiction under § 1334(b) (but not "arising in" or "arising under" jurisdiction), it would be <u>required</u> to abstain from adjudicating this matter under §1334(c)(2). Firstly, Plaintiff has timely filed a Motion seeking abstention within fourteen days of Defendants' removal of this case to this Court. <u>See</u>, <u>e.g.</u>, <u>Allen v. J.K. Harris & Co.</u>, 331 B.R. 634 (E.D. Pa. 2005) (A motion for mandatory abstention is considered timely when it is filed within 30 days of the removal of the proceeding from state court)). Secondly, as previously discussed, Plaintiff's causes of action for negligence, breach of fiduciary duty and breach of contract are based solely upon District of Columbia law. Thirdly, it is undisputed that § 1334 forms the only alleged basis for federal subject matter jurisdiction in this case (there is no diversity of citizenship in this case, as both Plaintiff and one or more Defendants are citizens of the District of Columbia, nor is there any basis for federal question jurisdiction other than under Title 11).[37] Finally, a cause of action pertaining to this matter has been commenced in the District of Columbia Superior Court (i.e., the Complaint filed in the Superior Court which commenced this removed action) and can be timely adjudicated in the D.C. Superior Court. Accordingly, under §1334(c)(2)'s mandatory abstention provision, if the sole basis for this Court's assertion of subject matter jurisdiction is "related to" jurisdiction, this Court has no discretion but to abstain from adjudicating this case.

**B.    If This Court Has § 1334(b) Subject Matter Jurisdiction On Grounds Other Than "Related To" Jurisdiction, Discretionary Abstention Is Appropriate Under § 1334(c)(1)**

---

[37] <u>See</u>, in this regard, Defendants' Notice of Removal, at Paragraph 4, where Defendants assert §1334 as the sole statutory basis for subject matter jurisdiction in this case.

If this Court concludes that it has § 1334(b) bankruptcy jurisdiction which is not founded entirely upon the "related to" rubric, Plaintiff nevertheless submits that discretionary abstention would be appropriate and highly warranted here under § 1334(c)(1). The factors used for assessing permissive abstention under § 1334(c)(1) are similar, if not identical, to those used for assessing remand under § 1452(b). See, In Re Merry-Go-Round Enterprises, Inc., 222 B.R. at page 256. Those factors include: (1) the effect or lack thereof on the efficient administration of the estate if the court abstains; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding in state court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters; (9) the burden on the court's remaining docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties. See, e.g., In Re: Allied Sign Co., Inc., 280 B.R. 688, 693 (Bankr. S.D. Ala. 2001); In Re: Dierkes, 2007 Bankr. LEXIS 1565 *22 (Bankr. N.D. Ga. Mar. 22, 2007).

Plaintiff has already demonstrated in Section II. supra, that factor Nos. 1, 2, 3, 6 and 11 unequivocally favor Plaintiff. Factor No. 4 also favors Plaintiff, since the Plaintiff's claims, and the Defendants' defenses, can be efficiently adjudicated in the underlying action before the D.C. Superior Court without further jurisdictional "squabbles". Factor No. 5 favors Plaintiff, since Defendants have not asserted that this Court's jurisdiction is founded on any basis other than §1334. Factor No. 7 favors Plaintiff, since this case is based exclusively on state law causes of action. As discussed, the nucleus of operative facts from which this case arises has no relevant

nexus to the Bankruptcy Case and the law to be applied to this case will be the District of Columbia common law of negligence, breach of fiduciary duty and breach of contract. It is submitted that factor Nos. 8 and 12 are inapplicable to the instant case. With respect to factor No. 9, it is anticipated that this fact-intensive and legally complex case will be vigorously litigated by the parties, and may thereby burden this Court's docket. Finally, as to factor No. 10, Plaintiff submits that the circumstances of Defendants' removal of the instant case to this Court suggests an attempt by Defendants to forum shop; in particular, an effort to deprive Plaintiff of the jury trial to which it would otherwise be entitled under District of Columbia law. Defendants would be hard-pressed to provide a cogent alternative explanation for their removal of this fundamentally state-law rooted case to this Court, followed, in rapid succession, by their filing of a Motion for Summary Judgment.

An additional factor unique to this case which further militates in favor of abstention is the fact that the Bankruptcy Case and Plaintiff's estate therein are now closed. In similar cases, courts have abstained pursuant to §1334(c)(1), relying, in significant part, upon the terminated administration of the debtor's bankruptcy estate. For example, in In re Robinson, 2007 Bankr. LEXIS 227 (Bankr. S.D. Tex. Jan. 11, 2007), the plaintiffs, debtors in an Chapter 7 bankruptcy case, filed an adversary proceeding against their bankruptcy counsel, alleging that their counsel committed fraud and legal malpractice in advising them during the course of their bankruptcy. The Bankruptcy Court abstained from hearing the adversary proceeding, concluding that:

> In the above captioned Chapter 7 case, nearly all of the proceedings directly affecting the collection and distribution of estate funds  are complete, despite the continuation of compounding convoluted issues in the Chapter 7 case . . . A state court, which routinely determines matters of professional malpractice, is a better forum for resolution of the remaining issue.  The court concludes that the interest of justice is best served by allowing the above captioned Chapter 7 case to be completed, without further intricacies regarding the instant adversary proceeding.

<u>Id</u>., at pages *4-5.

The logic of <u>Robinson</u> applies with even greater force to the case <u>sub judice</u>, where Plaintiff's bankruptcy case and estate have closed.  <u>See</u>, <u>In re: Dierkes</u>, 2007 Bankr. LEXIS 1565 *24 (Bankr. N.D. Ga. Mar. 22, 2007) (the Bankruptcy Court exercised its discretionary abstention power under § 1334(c)(1), holding, <u>inter alia</u>, that "there is no reason to allow these state law claims to proceed in this court where Debtor's estate has been fully administered and his bankruptcy case is closed.").

For each of the foregoing reasons, in the event this Court declines to remand this case pursuant to §1447(c) and §1452(b), it should nevertheless abstain from hearing this case pursuant to § 1334(c).

## IV.    CONCLUSION

While Plaintiff has exhaustively demonstrated in this Memorandum that remand is appropriate in this matter, this Motion can actually be conclusively adjudicated on the basis of another (much shorter) document: the Plaintiff's Complaint.  As noted in <u>Rivet</u>  and the other authorities upon which Plaintiff relies, the Rivet Doctrine and the well-pleaded complaint rule require that this Court narrow its focus to the four corners of the Complaint to determine whether the Plaintiff's claims sound in federal law.   If not, the Court is obligated to remand this case. When viewed within this narrow framework, the disposition of this Motion becomes a foregone conclusion: remand is necessary for lack of subject matter jurisdiction.

Plaintiff's claims for breach of contract, negligence and breach of fiduciary duty are based strictly on District of Columbia common law – no federal causes of action are alleged in Plaintiff's Complaint.  Additionally, Defendants' asserted federal law defenses (whatever their merit) do not support Defendants' claim for, or this Court's exercise of, federal jurisdiction.

Indeed, the <u>Rivet</u> line of case law expressly holds that, *for jurisdictional purposes, these defenses are no different than the Plaintiff's claims* – they are <u>both</u> the jurisdictional responsibility of the state courts alone.  On this fundamental basis, as well as each of the other legal and equitable grounds set forth in this Memorandum, Plaintiff respectfully requests that the instant Motion be granted, and that Plaintiff be awarded the attorneys' fees and costs it has incurred in connection with this Motion, in view of Defendants' unjustifiable removal of this action.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on the 9th day of November, 2007, via hand delivery and this Court's Notice of Electronic Filing, upon:

Jack McKay, Esq.
PILLSBURY WINTHROP SHAW PITTMAN, LLP
2300 N Street, N.W.
Washington, D.C.  20037

_____/s/_ Emil Hirsch_____
Emil Hirsch

151411_1.DOC

# EXHIBIT 1

ORIGINAL

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

FILED AND ENTERED

JAN 2 1 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

IN RE:

CAPITOL HILL GROUP,

        Debtor.

)
)
)
)
)
)
)

Case Number 02-0359
Chapter 11

## FINAL DECREE

WHEREAS, Capitol Hill Group ("**CHG**"), the debtor, filed a voluntary petition under title 1 , Chapter 11 in the United States Bankruptcy Court for the District of Columbia on February 21, 2002; and

WHEREAS, a Plan of reorganization was proposed to the creditors and was confirmed by Order of this Court on July 15, 2003; and

WHEREAS, CHG has reported to this Court that the Plan of Reorganization has been substantially consummated; and

WHEREAS, FRBP 3022 provides for the entry of a final decree; it is therefore

ORDERED, that the Final Report of the Debtor is approved, the Motion for Final Decree is granted, and the case is closed; provided, however, that nothing contained herein shall prevent the filing of fee applications in accordance with the terms of the Plan, and nothing contained herein shall affect the rights of the relevant parties to continue litigating CHG's objection to the proof of claim of Newmark.

S. Martin Teel, Jr.
United States Bankruptcy Judge

EXHIBIT 2

The order below is signed (and the hearing of July 18, 2007, relating to the Motion canceled).  Dated: June 19, 2007.



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | Case No. 02-00359 |
| | ) | (Chapter 11) |
| Debtor. | ) | |

ORDER DENYING MOTION TO DELAY CLOSING OF THE
CASE AND DIRECTING CLERK TO TREAT THE CASE AS CLOSED

Pursuant to a Memorandum Decision of this date, it is

ORDERED that the Motion to Delay Closing of the Case (Docket Entry No. 963) is DENIED.  It is further

ORDERED that the request of the debtor for attorney's fees incurred in preparing a response to the Motion is DENIED.  It is further

ORDERED that the clerk shall treat this case as closed as to all matters, the court having disposed of the matters that the Final Decree entered on January 21, 2004, allowed to be litigated despite the general closing of the case.

[Signed and dated above.]

Copies to: Debtor; Patrick Potter, Esq.; Donald R. Hartman, Esq.; Daniel M. Litt, Esq.; Office of United States Trustee.

O:\Judge Teel Docs\Capitol Hill Group Memorandum Order re Motion to Close Case.wpd

# EXHIBIT 3

The decision below is signed as a decision of the court.

Signed: June 19, 2007.



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | Case No. 02-00359 |
| | ) | (Chapter 11) **Not for** |
| Debtor. | ) | **Publication in West's** |
| | ) | **Bankruptcy Reporter** |

MEMORANDUM DECISION RE
<u>MOTION TO DELAY CLOSING OF THE CASE</u>

Patrick Potter has filed a Motion to Delay Closing of the Case, seeking to delay the closing of the case for at least six months. However, the Final Decree entered in 2004 closed the case in general, and the court has disposed of all matters that were allowed to be pursued before it despite the general closing of the case. Accordingly, Potter's motion will be denied.

I

The Final Decree entered on January 21, 2004, directed that the case is closed, but directed that the closing did not bar the filing of fee applications and the continued litigation of the objection to the Newmark claim. For that reason, the clerk did not send the files to the Archives.

The matters that were allowed to be pursued despite the general closing of the case have been concluded.  All fee applications have been resolved.  The objection to the Newmark claim entailed an appeal which was resolved in late 2006.  To be absolutely certain that the Newmark litigation had no life left to it, the court recently directed Newmark to show cause why the case ought not be closed (meaning why the clerk ought not treat as concluded the limited matters for which the court continued to permit ongoing filings and litigation despite the closing of the case in general).  Newmark did not respond to the order to show cause, and the court views that as a concession by Newmark that the Newmark litigation is concluded.

II

Potter and his law firm acted as the initial law firm representing the debtor in this case (with Potter acting as the debtor's initial lead counsel).  After they withdrew from such representation, they pursued prolonged litigation regarding fee amounts owed the law firm for such representation and fees owed for being forced to pursue payment of those amounts.  Potter conducted much of the litigation on behalf of the law firm. Potter's motion alleges in pertinent part:

> 5.  Upon very recent information and belief, CHG is contemplating further litigation with the undersigned regarding the [parties' involvement in the case].
> 6.  Furthermore, the undersigned believes that CHG is waiting until the Court enters the order closing

2

these proceeds [sic], on some theory that this Court
would be stripped of jurisdiction to address the res
judicata and fee-shifting issues that the undersigned
will certainly raise.
        7.   However, this case has been open since
February 2002.  No harm will come from postponing the
closing of the case for another six months (at least).
Keeping the case open will avoid the necessity of the
undersigned moving to re-open the case to effectuate a
removal and transfer to this Court of any litigation
commenced against the undersigned.

The litigation that Potter envisions as possibly eventuating does

not come within the limited matters that the Final Decree

permitted to be pursued in this court despite the general closing

of the case.  Nor do the issues of res judicata and fee-shifting

that Potter anticipates he would raise with respect to such

possible litigation.

                              III

    Accordingly, this case is already closed with respect to the

pursuit of the litigation Potter fears may ensue or the removal

of any such litigation to this court.  The case would have to be

reopened to entertain such matters, and, currently, there is no

matter pending to be removed to this court.  In any event, Potter

has not filed a motion to reopen the case.  Without any reopened

case, there is no closing to be delayed.  In any event, even if

the case were still open, the court generally would not keep a

case open simply because of an indefinite prospect of forthcoming

litigation.

    However, attorney's fees ought not be awarded to the debtor

                               3

for opposing the Motion.  The recent order to show cause directed to Newmark erroneously suggested that the court was treating the case as still open, and Potter's request to delay the closing of the case (if it were, indeed, still open) was not frivolous.

IV

An order follows denying the Motion to Delay Closing the Case, and denying the debtor's request for attorney's fees.

[Signed and dated above.]

Copies to: Debtor; Patrick Potter, Esq.; Donald R. Hartman, Esq.; Daniel M. Litt, Esq.; Office of United States Trustee.

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAPITOL HILL GROUP,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil No. 07-1936 (RCL)** |
| ) | |
| **PILLSBURY WINTHROP** ) | |
| **SHAW PITTMAN, LLP, et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>ORDER</u>

**UPON CONSIDERATION**, of Plaintiff's Motion to Remand Pursuant to 28 U.S.C. 1447(c) and § 1452(b), or in the alternative abstention pursuant to § 1334(c)., Points and Authorities in support thereof and any Opposition Thereto, it is, this _____ day of _____, 200    ; hereby

**ORDERED**, that such Motion is **GRANTED**; and further

**ORDERED**, that Plaintiff is awarded the attorneys' fees and costs it has incurred in preparing and filing the instant Motion and Memoranda in support thereof; and further

**ORDERED**, that Plaintiff shall submit an accounting of the attorneys' fees and costs it has incurred in preparing and filing the instant Motion and Memoranda in support thereof, for this Court's consideration and approval; and further

**ORDERED**, that the case <u>sub judice</u> is remanded  to the District of Columbia Superior Court.

_____
UNITED STATES DISTRICT JUDGE

151587_1.DOC