## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**CAPITOL HILL GROUP,**                     )
                                            )
                         **Plaintiff,**     )
                                            )         **Civil No. 07-1936 (RCL)**
         **v.**                             )
                                            )
**PILLSBURY WINTHROP SHAW PITTMAN, LLP,**    )
**SHAW PITTMAN, LLP,**                       )
**PAUL A. TUMMONDS, JR., AND**              )
**PATRICK J. POTTER,**                       )
                         **Defendants.**     )
_____)


## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND OR ABSTENTION


**Jack McKay (159335)**
**Pillsbury Winthrop Shaw Pittman LLP**
**2300 N Street, N.W.**
**Washington, D.C. 20037**
**Tel: 202-663-8000**
**Fax: 202-663-8007**
**Email: jack.mckay@pillsburylaw.com**
**For Defendants**

**November 20, 2007**

## TABLE OF CONTENTS

I.    Relief Requested.................................................................................................1

II.   Statement of Facts.............................................................................................1

III.  Argument ..........................................................................................................2

    A.  The Court Has Subject Matter Jurisdiction With Respect to Both the
        Argument Omission and the Delivery Omission ...........................................2

        1.  All Courts of Appeals Decisions Hold That Arising In Jurisdiction Exists
            With Respect to Malpractice Claims Asserted Against Court-Approved
            Professionals ........................................................................................2

        2.  Shaw Pittman's Services Were Rendered In And For The CHG
            Bankruptcy .........................................................................................6

        3.  CHG's Arguments to the Contrary Should be Rejected .........................9

        4.  The Court's "Arising In" Jurisdiction is not Limited to the Argument
            Omission but Also Covers the Delivery Omission ...............................13

    B.  The Face of CHG's Complaint Presents 11 U.S.C. § 1334(b)
        Jurisdiction In Compliance With Rivet ........................................................14

    C.  The Court Should Reject CHG's Request for Discretionary
        Abstention and Equitable Remand ..............................................................16

IV.  Conclusion.......................................................................................................22

# TABLE OF AUTHORITIES

## CASES                                                      PAGE

Abbey v. Modern Africa One, LLC, 305 B.R. 594 (D.D.C. 2004) ....................................9

In re Aiello, 231 B.R. 693 (Bank. N.D.Ill. 1999), aff'd, 257 B.R. 245 (N.D.Ill. 2000), aff'd, 239 F.3d 876 (7th Cir. 2001)....................................................13

Atkinson v. Kestell, 954 F.Supp. 14 (D.D.C. 1997), a'ffd. sub nom., 156 F.3d 1335 (D.C. Cir. 1998) ....................................................................................9

In re Barnes, 365 B.R. 1 (Bankr. D.D.C. 2007).............................................................9

In re Dierkes, 2007 Bankr. LEXIS 1565 (Bankr. N.D.Ga. Mar. 22, 2007) .....................17

Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case), 483 F.3d 292 (5th Cir. 2007) .........................................................14

\* Geruschat v. Ernst Young LLP, No. 06-3658 ___ F.3d ___, 2007 WL 3085905 (3d Cir. Oct. 24, 2007) .......................................................3, 4, 5, 6, 9, 11, 12, 13, 16, 19

\* Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003) ......................3, 5, 9, 10, 11, 16, 17, 21

In re Gulf Coast Orthopedic Ctr. – Alfred O. Bonati, M.D., 261 B.R. 707 (Bankr. M.D.Fla. 2000).......................................................................................11

\* Iannochino v. Rodolakis, 242 F.3d 36 (1st Cir. 2001)..................................3, 9, 10, 11, 16

Mackey v. M.C. Investments (In re Martinez), No. 00-40412, 2000 WL 34508398 (5th Cir. Oct. 5, 2000) ...................................................................................12

In re Merry-Go-Round, 222 B.R. 254 (D.Md. 1998) ........................................................21

Publicker Indus. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110 (2d Cir. 1992).................................................................................................14

Resorts Int'l, Inc. Litig. Trust v. Price Waterhouse & Co., LLP, 372 F.3d 154 (3d Cir. 2004) ...................................................................................................5, 12

Rivet v. Regions Bank of Louisiana, 522 U.S. 470 (1998) ............................14, 15, 16, 21

In re Robinson, 2007 LEXIS 227 (Bankr. S.D. Tex. Jan. 11, 2007) ................................17

\* Sanders Confectionary Prod., Inc. v Heller Fin., Inc., 973.F2d 474 (6th Cir. 1992).....3, 16

In re Singleton, 269 B.R. 270 (Bankr. D.R.I. 2001) ............................................................12

In re Shenango Group, Inc., 501 F.3d 338 (3d Cir. 2007)............................................5, 13

\* Southmark Corporation v. Coopers & Lybrand, 163 F.3d 925 (5th Cir. 1999)....................
...........................................................................3, 4, 5, 6, 7, 9, 10, 11, 16, 18, 19, 20, 21

Stoe v. Flaherty, 436 F.3d 209 (3d Cir. 2006) ...................................................................16

In re Talon Holdings, Inc., 221 B.R. 214 (Bankr. N.D. Ill. 1998)....................................16

In re Taylor, 216 B.R. 515 (Bankr. E.D.Pa. 1998) ...........................................................13

In re U.S. Office Prod. Co. Sec. Lit., 313 B.R. 73 (D.D.C. 2004)......................................9

\* Walsh v. Northwestern Nat'l Ins. Co. of Milwaukee, Wis., 51 F.3d 1473 (9th Cir. 1995) ....................................................................................................3, 5, 16, 19

## FEDERAL STATUTES                PAGE

11 U.S.C. §330(a) (2007)...............................................................................................6, 11

11 U.S.C. §365(i) (2007) ...................................................................................................8

11 U.S.C. §1112 (2007) ...................................................................................................10

11 U.S.C. § 1123 (2007) ...................................................................................................10

11 U.S.C. § 1129(a)(1) (2007)........................................................................................10

28 U.S.C. § 157 (2007) ....................................................................................................21

28 U.S.C. § 959 (2007) ....................................................................................................10

28 U.S.C. § 1334 (2007) ........................................................................................... passim

28 U.S.C. § 1367 (2007) ..................................................................................................14

28 U.S.C. § 1452 (2007) ..........................................................................................1, 16, 22

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
CAPITOL HILL GROUP,                         )
                                            )
                    Plaintiff,              )
                                            )         Civil No. 07-1936 (RCL)
        v.                                  )
                                            )
PILLSBURY WINTHROP SHAW PITTMAN, LLP,       )
SHAW PITTMAN, LLP,                          )
PAUL A. TUMMONDS, JR., AND                  )
PATRICK J. POTTER,                          )
                    Defendants.             )
_____)

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND OR ABSTENTION

Pursuant to L. Civ. R 7(b), Defendants Pillsbury Winthrop Shaw Pittman, LLP ("PWSP"),

Shaw Pittman, LLP ("Shaw Pittman"), Paul A. Tummonds, Jr. ("Tummonds"), and Patrick J. Potter

("Potter") (collectively, "Defendants"), through undersigned counsel, respectfully submit this

Memorandum of Points and Authorities in Opposition to Plaintiff's Motion (the "Motion") for

Remand or Abstention.

### I.      Relief Requested

Defendants urge the Court to hold that the Complaint is subject to the Court's "arising in"

jurisdiction under 28 U.S.C. § 1334(b) and to reject CHG's request that the Court exercise its

discretion to abstain under 28 U.S.C. § 1334(c)(1) or remand under 28 U.S.C. § 1452(b).

### II.  Statement of Facts

Defendants incorporate by reference the Statement of Undisputed Material Facts filed in

support of their Summary Judgment Motion ("Statement"), including the affidavits, transcripts and

exhibits referenced therein.  See Docket Entry No. 5.  Defendants also incorporate the Statement of

Historical Background contained in their Memorandum in Support of their Summary Judgment

Motion (the "SJ Memorandum").  See Docket Entry No. 6.  Unless otherwise indicated, defined

terms shall have the same meanings ascribed them in the  SJ Memorandum.

## III.    Argument

### A.    The Court Has Subject Matter Jurisdiction With Respect to Both the Argument Omission and the Delivery Omission

CHG states that "a malpractice claim stemming from the manner in which a bankruptcy

professional discharged his duties during the course of the bankruptcy is, by its very nature, the

type of claim that cannot exist in the absence of a bankruptcy."  CHG Memorandum at 26.  The

case law uniformly provides, and CHG repeatedly acknowledges (id. at 22, 23, 24), that claims that

cannot exist in the absence of a bankruptcy are subject to the "arising in" jurisdiction of the district

court under 28 U.S.C. § 1334.  CHG, therefore, has conceded that "arising in" jurisdiction exists

with respect to malpractice claims asserted against such professionals with respect to services

provided pursuant to the court-approved retention.  As will be shown below, the Bankruptcy Court-

approved services rendered by Shaw Pittman to CHG during its bankruptcy, including those

underlying the Argument Omission and the Delivery Omission, are within this Court's "arising in"

jurisdiction.[1]

### 1.    All Courts of Appeals Decisions Hold That Arising In Jurisdiction Exists With Respect to Malpractice Claims Asserted Against Court-Approved Professionals

Six United States Court of Appeals have held that "arising in" jurisdiction exists under 28

U.S.C. § 1334(b) with respect to malpractice actions filed against professionals whose retentions

---

[1]    The Argument Omission involves CHG's allegation that when Shaw Pittman made zoning arguments to the Bankruptcy Court (in connection with its lawsuit against the Zoning Administrator) in January – March of 2003, and to the BZA in July and November of 2003 (see Tummonds Affidavit ¶¶ 7-9, 14), Shaw Pittman failed to make an argument that CHG was not required to provide parking spaces "beyond [the 177 spaces] then-available on the Property."  CHG Memorandum at 7.  The Delivery Omission involves the alleged failure by Shaw Pittman to file a notice of withdrawal with the BZA and deliver to CHG the BZA's final written decision, dated September 9, 2004, even though the Bankruptcy Court had terminated the CHG-Shaw Pittman client relationship on January 7, 2004.

were approved and monitored by the bankruptcy court during the bankruptcy proceeding.

Geruschat v. Ernst Young LLP, No. 06-3658 ___ F.3d ___, 2007 WL 3085905 (3d Cir. Oct. 24,

2007); Grausz v. Englander, 321 F.3d 467, 471 (4th Cir. 2003); Iannochino v. Rodolakis, 242 F.3d

36 (1st Cir. 2001); Southmark Corp. v. Coopers & Lybrand, 163 F.3d 925, 931 (5th Cir. 1999);

Walsh v. Northwestern Nat'l Ins. Co. of Milwaukee, Wis., 51 F.3d 1473 (9th Cir. 1995); Sanders

Confectionary Prod., Inc. v Heller Fin., Inc., 973 F.2d 474, 483 n. 4 (6th Cir. 1992).  No Circuit

Court has reached a contrary decision.  The issue has not been addressed in cases published by

courts in the D.C. Circuit.

Southmark is frequently relied upon by courts deciding issues of jurisdiction under 28

U.S.C. § 1334.  See e.g., Geruschat at *12; Grausz at 475.  In Southmark, the Bankruptcy Court

approved the application to employ the accounting firm of Coopers & Lybrand L.L.P. ("Coopers")

to examine transactions previously entered into between the debtor (i.e., Southmark), and Drexel

Burnham Lambert, Inc. ("Drexel"), for purposes of determining whether claims could be asserted,

*outside* of Southmark's bankruptcy case, against Drexel.  Based on the analysis performed by

Coopers, Southmark did not file claims against Drexel.  Subsequently, Southmark sued Coopers for

malpractice in state court, asserting, *inter alia*, that Cooper's professional relationships with Drexel

affected its analysis and recommendations.  Coopers removed the action to federal court based upon

"arising in" jurisdiction under 28 U.S.C. § 1334(b), and Southmark moved to remand.

In a thoroughly-reasoned decision, the Fifth Circuit found core (i.e. "arising in")

jurisdiction and affirmed denial of the motion to remand, stating, in part, as follows:

> In this case, the professional malpractice claims alleged against Coopers are
> inseparable from the bankruptcy context.  A *sine qua non* in restructuring the
> debtor-creditor relationship is the court's ability to police the fiduciaries, whether
> trustees or debtors-in-possession and other court-appointed professionals, who are
> responsible for managing the debtor's estate in the best interest of creditors.  The
> bankruptcy court must be able to assure itself and the creditors who rely on the
> process that court-approved managers of the debtor's estate are performing their
> work, conscientiously and cost-effectively.  Bankruptcy Code provisions describe

the basis for compensation, appointment and removal of court-appointed professionals, their conflict-of-interest standards, and the duties they must perform. *See generally* 11 U.S.C. §§ 321, 322, 324, 326-331. Although standards for the conduct of court-appointed professionals, the breach of which may constitute bankruptcy malpractice, are not comprehensively expressed in the statute, the Code need not duplicate relevant, also-applicable state law. It is evident that a court-appointed professional's dereliction of duty could transgress both explicit Code responsibilities and applicable professional malpractice standards. For instance, in *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242 (3d Cir.1994), the professional malpractice allegations included the attorneys' failure to comply with court orders and to submit a plan of reorganization to the bankruptcy court. Award of the professionals' fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.

Supervising the court-appointed professionals also bears directly on the distribution of the debtor's estate. If the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims. Excessive professional fees or fees charged for mediocre or, worse, phantom work also cause the estate and the creditors to suffer. Southlend [sic] might retort that this concern for the general well-being of the debtor's estate is over-played-technically, the liquidation of any claim that the debtor holds against third parties would enhance the debtor's estate as much as collection on a malpractice claim against court-appointed professionals. *Marathon* held, in fact, that a debtor's contract claim against a third party (which had not filed a claim in bankruptcy) was not within the bankruptcy court jurisdiction, even though successful prosecution of the action would enrich the debtor's estate. And in *Wood,* a dispute over shares of stock acquired by the debtor postpetition fell only within the related-to jurisdiction but not core bankruptcy jurisdiction. These cases are, however, distinguishable from a malpractice claim involving court-appointed professionals. In the *Marathon* and *Wood* situations, the claims that were being prosecuted could stand alone from the bankruptcy case. A malpractice claim like the present one inevitably involves the nature of the services performed for the debtor's estate and the fees awarded under superintendence of the bankruptcy court; it cannot stand alone.

163 F.3d at 931.

Three weeks ago, the Third Circuit adopted the jurisdictional reasoning and conclusion of Southmark in Geruschat. In Geruschat, the bankruptcy court approved the retention of the accounting firm Ernst & Young LLP ("E&Y") in 1986. E&Y provided analyses and opinions during the bankruptcy proceeding relating to the debtors' solvency, which served to support confirmation of the debtors' plan on October 21, 1987. The bankruptcy case was *closed* on May

14, 1996.  Eight years later, on September 29, 2004, shareholders of the debtor sued E&Y in state court for, *inter alia*, malpractice purportedly arising out of E&Y's court-approved retention.  E&Y promptly removed the case to federal bankruptcy court (where the bankruptcy court *sua sponte* re-opened the chapter 11) and the shareholders moved to remand.[2]  Both the bankruptcy court and the district court on appeal found the existence of "arising in" jurisdiction and denied the shareholders' remand motion.  The Third Circuit affirmed.  It agreed with the lower courts' reasoning that plaintiffs' "claims of professional negligence were based on services provided during the bankruptcy, under the supervision of, and subject to the approval of the bankruptcy court," and that as such "they implicate the integrity of the bankruptcy process" 2007 WL 3085905, at * 19.  In reaching its conclusion, the Third Circuit quoted approvingly from the <u>Southmark</u> decision, and also cited approvingly the Fourth Circuit's decision in <u>Grausz</u> and the Ninth Circuit's decision in <u>Walsh</u> (<u>In re Ferrante</u>).

Significantly, the Third Circuit in <u>Geruschat</u> distinguished its earlier decision in <u>Resorts Int'l, Inc. Litig. Trust v. Price Waterhouse & Co., LLP</u>, 372 F.3d 154 (3d Cir. 2004), upon which CHG principally relies, on the basis that the accounting firm that was the target of the malpractice action in <u>Resorts</u> was hired by a *post* bankruptcy trust, and, therefore, neither its retention nor its services were ever approved by the bankruptcy court.[3]

---

[2]    As discussed in greater detail below at pages 12-13, <u>Geruschat</u> demonstrates that Section 1334 jurisdiction (whether arising under, arising in or related to) is a function of the subject matter of the dispute and not of the procedural status of a bankruptcy case remaining open or having been closed.  <u>See also</u> <u>In re Shenango Group, Inc.</u>, 501 F.3d 338 (3d Cir. 2007).

[3]    Accordingly, the Court concluded that conducting the so-called "close nexus" test, *applicable to determining "related to" jurisdiction*, was unnecessary.  <u>Geruschat</u> at *20 ("The bankruptcy court and district courts were not required to address the 'close nexus' test because the test was not applicable in this 'arising in' proceeding.").  Likewise, because "arising in" jurisdiction exists in this case, the Court need not examine the "close nexus" test nor "related to" jurisdiction.

### 2.    Shaw Pittman's Services Were Rendered In And For The CHG Bankruptcy

As with the professionals in <u>Southmark,</u> <u>Geruschat,</u> and the other similar decisions, Shaw Pittman filed an application and verified statement requesting that the Bankruptcy Court approve its retention (<u>see</u> <u>e.g.</u> Complaint ¶¶12, 29).[4]    Moreover, all of Shaw Pittman's services, including the zoning services were supervised by the Bankruptcy Court, in part, through the fee application submission and approval process.    For example, as correctly noted in the Complaint at ¶14, Shaw Pittman billed for its zoning work "as a distinct matter under the said bankruptcy case."    In November 2002, a new billing matter (number "**0019**") was established by Shaw Pittman to account for and bill CHG for the zoning work.    <u>See</u> Exhibit 6 to the Potter Affidavit.    Shaw Pittman was required to specifically describe in its bills how the zoning work benefited the CHG bankruptcy estate.[5]    That information enabled the Bankruptcy Court to supervise Shaw Pittman's activities and assess, as a matter of bankruptcy law, whether Shaw Pittman should be compensated for those services.    In its fee applications, Shaw Pittman explained to the Bankruptcy Court how the zoning services were necessary to the administration and completion of CHG's bankruptcy case:

> A dispute appeared to exist between CHG and the District with respect to whether CHG provides sufficient parking to the Nursing Center and as to whether the Nursing Center is a facility that provides housing to the handicapped (the "Zoning Dispute").    The Zoning Dispute presented a potential cloud in CHG's efforts to reorganize and decide what it would do with its Property.    Holladay had already stated on the record that the Zoning Dispute could prevent confirmation of CHG's Plan.

---

[4]    Shaw Pittman's employment application documents are located at Exhibits 3-4 to the Potter Affidavit.    The Bankruptcy Court's order approving Shaw Pittman's retention is located at Exhibit 5 to the Potter Affidavit.    All services of Shaw Pittman that are the subject of this action were provided pursuant to these documents.

[5]    For example, 11 U.S.C. § 330(a)(3) (2007) required that Shaw Pittman demonstrate that all of its services, including the zoning services, "were *necessary to the administration of*, or beneficial at the time at which the service was rendered *toward the completion of, a case under this title*." (emphasis supplied).    As a matter of record, including in connection with this Court's decision in <u>CHG I</u> (313 B.R. 344), all of Shaw Pittman's services, including the zoning services, were approved, and therefore, conclusively determined to have satisfied 11 U.S.C. § 330(a)(3).

See page 25 of Exhibit 6 attached to the Potter Affidavit located at Docket Entry No. 7. Furthermore, Shaw Pittman explained the precise nature of the zoning services that it provided to CHG and attached detailed time descriptions in the bills referenced by CHG in its Complaint.  Id.

As described in the SJ Memorandum, the zoning services were rendered by Shaw Pittman, in the first instance, in the Bankruptcy Court where Shaw Pittman filed and litigated a complaint against the Zoning Administrator/District of Columbia.  Id.[6]  In fact, the Shaw Pittman billings referenced in CHG's Complaint reveal that 63% of the total fees and expenses incurred for all zoning work involved Shaw Pittman's litigation of the zoning dispute in front of Judge Teel.  Id. By defining "Zoning Representation" as covering all of the services reflected in the bills attached at the end of Exhibit 6 to the Potter Affidavit, CHG's Complaint expressly implicates the zoning dispute litigated by Shaw Pittman in front of the Bankruptcy Court.  See e.g. Complaint ¶ 14.

As stated by the Fifth Circuit in Southmark, "A malpractice claim like the present one inevitably involves the nature of the services performed for the debtor's estate and the fees awarded under superintendence of the Bankruptcy Court; it cannot stand alone."  163 F.3d at 931.  All of Shaw Pittman's zoning work was on behalf of CHG's bankruptcy estate and all of Shaw Pittman's fees for that work were paid from CHG's bankruptcy estate upon the order of the Bankruptcy Court, as affirmed by this Court.

Additional evidence supports the conclusion that the Zoning Representation by Shaw Pittman would not have occurred outside of CHG's bankruptcy.  First, prior to CHG's bankruptcy Shaw Pittman performed no zoning work for CHG.  See e.g., ¶2 of the Tummonds Affidavit located at Docket Entry No. 8.  CHG expressly acknowledges that there was no pre-bankruptcy retainer agreement for zoning work.  Complaint ¶14.  In fact, the bankruptcy record reflects that

---

[6]     The zoning complaint filed with the Bankruptcy Court is attached as Exhibit 4 to the Tummonds Affidavit.  The transcript of the Bankruptcy Court hearing on the summary judgment motion argued by Defendant Tummonds is attached as Exhibit 5 to the Tummonds Affidavit.

CHG's long-standing pre-bankruptcy zoning counsel was the law firm of Robins, Kaplan, Miller & Ciresi.  See e.g., pp 6-7 (footnotes) of Exhibit 4 to the Tummonds Affidavit.[7]

Second, prior to its bankruptcy filing, CHG had entered into a written contract to sell the subject real estate to Holladay.  See e.g., pp. 4, 6 of Exhibit 7 to the Potter Affidavit.  Outside of bankruptcy, Holladay possessed state law specific performance rights and would have compelled CHG to convey the property to Holladay.  However, bankruptcy law does not recognize such specific performance rights.[8]  The primary objective in CHG's bankruptcy was to reject the asset purchase agreement so that CHG could avoid Holladay's specific enforcement rights under D.C. law and CHG could retain ownership of the real estate.  See e.g. pp. 19-23 of Exhibit 7 to the Potter Affidavit.  Thus, CHG's statement that its zoning disputes would have existed outside and independent of its bankruptcy proceeding is plainly incorrect.  Outside of the bankruptcy CHG would have been required to convey the property to Holladay and would have had no zoning disputes for any legal counsel to address and resolve.

In light of the foregoing, the Court should find that Shaw Pittman's zoning work is inseparable from, and would not exist but for, CHG's bankruptcy proceeding.  Based upon the authorities cited above, the Complaint, which attacks the very quality of Shaw Pittman's court-supervised services, by definition, triggers arising in jurisdiction under 28 U.S.C. § 1334(b).

---

[7]    Notably, prior to CHG's bankruptcy, Robins Kaplan and CHG petitioned the zoning authorities for an order requiring CHG to provide *200* parking spaces to its tenants, 23 *more* parking spaces than the 177 spaces that now serve as the basis for its current Complaint against Shaw Pittman.  See e.g. ¶39 on page 7 of Exhibit 4 to the Tummonds Affidavit.

[8]    11 U.S.C. § 365(i) (2007) provides that only a purchaser in possession can compel specific performance of real estate sale agreements.

**3.    CHG's Arguments to the Contrary Should be Rejected**

To support its argument that this Court lacks jurisdiction over its Complaint, CHG relies upon certain cases,[9] including decisions from the Third and Fifth Circuits where <u>Geruschat</u> and <u>Southmark</u> are the controlling authorities on this issue.  However, none of these cases involved claims against court-approved professionals for services rendered during the bankruptcy.  For example, the <u>Atkinson</u> Case involved enforcement of a divorce judgment by Janet Atkinson against her once-bankrupt former husband, and the <u>Barnes</u> Case involved a creditor's request to conduct a Bankruptcy Rule 2004 examination (similar to a deposition) in connection with the debtor's breach of a settlement agreement.  None of these cases, nor any others relied upon by CHG, involved challenges to services rendered by court-approved professionals and the associated bankruptcy considerations identified by <u>Southmark</u>, <u>Geruschat</u>, and similar authorities.  The cases cited by CHG are inapplicable to this dispute.

CHG's current argument that Shaw Pittman's zoning services were unrelated and merely coincidental ("fortuitous") to CHG's bankruptcy, and are somehow different than the services rendered by the accounting and law firms in the <u>Southmark</u>, <u>Grausz</u>, and <u>Iannochino</u> line of cases should be rejected for several reasons.

First, CHG is now telling this Court a dramatically different story about the impact of zoning issues on its bankruptcy proceeding than the story CHG previously told the Bankruptcy Court.  In its May 23, 2003 Disclosure Statement, executed by CHG and Peter Shin (CHG's principal), the Bankruptcy Court was told:

> An issue regarding the number of parking spaces that CHG makes available to the Hospital and Nursing Center arose in October 2002.  CHG believed that Holladay was at least partially responsible for creating or enhancing this

---

[9]    The jurisdictional decisions from this circuit relied upon by CHG are <u>In re U.S. Office Prod. Co. Sec. Lit.</u>, 313 B.R. 73 (D.D.C. 2004); <u>Atkinson v. Kestell</u>, 954 F. Supp. 14 (D.D.C. 1997), <u>a'ffd. sub nom.</u>, 156 F.3d 1335 (D.C. Cir. 1998); <u>In re Barnes</u>, 365 B.R. 1 (Bankr. D.D.C. 2007); and <u>Abbey v. Modern Africa One, LLC</u>, 305 B.R. 594 (D.D.C. 2004).

dispute.  Holladay has repeatedly stated that CHG will have difficulties with its reorganization efforts due to CHG's alleged violation of applicable zoning due to the alleged failure by CHG to provide sufficient parking to the Nursing Center.

See pages 28-29 of Exhibit 7 to the Potter Affidavit.  After describing, in two pages, the substantial efforts undertaken by Shaw Pittman to address this issue, including the extensive zoning litigation prosecuted before the Bankruptcy Court, CHG states:

> In light of the issuance of the Certificate of Occupancy in connection with the Nursing Center, an argument no longer exists (nor did it ever legitimately exist) that CHG is not in compliance with applicable zoning laws (vis-à-vis the ration of parking spaces to beds).  In short, the zoning issues previously raised by Holliday will not serve as an impediment to confirmation of the Plan.

See id at page 31.[10]

The foregoing demonstrates that resolving the zoning issues was necessary for CHG to accomplish its bankruptcy objectives and to confirm its Plan.  Furthermore, as a matter of federal law, CHG, as a debtor-in-possession in bankruptcy, was required to remain in compliance with the District's zoning laws and regulations.  See e.g. 28 U.S.C. § 959(b) (2007).  Failure to comply with the Zoning Administrator's demands could have resulted in sanctions by the Bankruptcy Court, including dismissal of CHG's bankruptcy proceeding or conversion to chapter 7.  See e.g. 11 U.S.C. § 1112 (2007).  In light of the record before the Bankruptcy Court, CHG's current argument that resolving the zoning issues was unimportant or "fortuitous" to resolving its bankruptcy proceeding is misleading at best.

Second, CHG asserts that Southmark, Grausz, and Iannochino based their "arising in" jurisdiction holdings on the type of services rendered (specifically, that the services must be "bankruptcy" in nature, such as drafting a plan of reorganization or filling out a debtor's

---

[10]    Absent compliance with the District's zoning laws by the time of confirmation, CHG's Plan could not have been confirmed.  See e.g. 11 U.S.C. §§ 1123, 1129(a)(1)-(3) (2007).

schedules), rather than on the fact that the services were rendered by a court-approved professional supervised by the bankruptcy court. CHG is incorrect. In fact, there is neither support in case law, nor logic, for the distinction that CHG artificially creates. Furthermore, Southmark and Geruschat involved large, national accounting firms providing accounting, not "bankruptcy" services, and Iannochino involved advice given to the debtors (i.e., that they should default) in connection with a state-court contract action. The cases, therefore, demonstrate that the key to determining whether "arising in" jurisdiction exists is whether the professional (whether a "bankruptcy professional" or not) rendered services pursuant to a court-approved retention, subject to the supervision of the bankruptcy court, including review of the services for purposes of approving fees in accordance with 11 U.S.C. § 330(a)(3) (2007).

Furthermore, CHG's argument that "subsequent courts have distinguished their holdings . . . on these very grounds" is incorrect and misleading. Its lead case for this proposition, In re Gulf Coast Orthopedic Ctr. – Alfred O. Bonati, M.D., 261 B.R. 707 (Bankr. M.D. Fla. 2000), was in fact decided years before, not after, Grausz and Iannochino, and could not have distinguished those cases. Indeed, the bankruptcy court's Gulf Coast decision is best read as embracing, rather than distinguishing, the Fifth Circuit's decision in Southmark. There, the court appears to find that because attorney Johnson had not been retained by order of the bankruptcy court, "arising in" jurisdiction did not exist as to malpractice claims alleged against him. In contrast, attorney Lubell and his firm were retained by order of the bankruptcy court and such jurisdiction did exist. However, the court reasoned that the conduct of the non-court-appointed and court-appointed attorneys/defendants giving rise to the alleged malpractice was "inextricably interwoven" and could

not be separated, and refused "bifurcation"[11] because of the possibility of creating "absurd, conflicting results."

The second "subsequent" decision cited by CHG that allegedly distinguishes its holding "on these very grounds" is the Third Circuit's decision in Resorts.  However, as demonstrated by the Third Circuit's Geruschat decision and as discussed supra, Resorts plainly did not involve a claim against a court-approved professional with respect to services rendered during the debtor's bankruptcy proceeding.  Rather, Resorts involved a post-confirmation retention of accountants, which retention was expressly not court approved, by a trust that was created entirely outside of the confirmed plan.  372 F.3d at 157-58.  In fact, if Resorts stood for CHG's alleged proposition, then Geruschat would not have been able to find jurisdiction (as it did) without overruling Resorts.[12]

Finally, the closing of a chapter 11 proceeding is procedural in nature, not substantive, and is not a basis for finding that Section 1334 jurisdiction does not exist, as CHG argues.  See e.g. Mackey v. M.C. Investments (In re Martinez), No. 00-40412, 2000 WL 34508398 (5th Cir. Oct. 5, 2000) (jurisdiction exists in 1999 despite chapter 11 case having been closed in 1997); In re Singleton, 269 B.R. 270, 276 (Bankr. D.R.I. 2001)("Most courts, and now this one, hold that 'the closing of a bankruptcy case does not affect the court's jurisdiction to determine matters relevant to the case.'")(citations omitted), vacated on other grounds by 284 B.R. 322 (D.R.I. 2002); In re

---

[11]    Logically, the court must have meant trying the case against the court-approved professionals (Lubell and his firm) in federal court and trying the case against the non-court-approved professional (Johnson) in state court.

[12]    CHG incorrectly speculates that in his June 19, 2007 order closing CHG's chapter 11 proceeding, Judge Teel indicated that he would find that Section 1334 jurisdiction would be lacking over this suit. Neither the word nor the concept of jurisdiction is mentioned in either the pleadings filed by the parties or Judge Teel's order.  In fact, on its face, Judge Teel's order supports removal and recognizes the existence of "arising in" jurisdiction because he states that "the case *would have to be reopened* to entertain such matters." (emphasis supplied)  He was merely observing that "currently there is no matter pending to be removed to this court."

Shaw Pittman's interpretation is entirely consistent with Judge Teel's statements at the April 12, 2006 hearing where he stated that if CHG pursues Shaw Pittman, then Shaw Pittman "can file your Rule 11

<u>Taylor</u>, 216 B.R. 515, 521 (Bankr. E.D.Pa. 1998) ("the fact that a case is or is not closed merely relates to its administrative status, which does not affect a bankruptcy court's jurisdiction to determine matters relevant to the case."); <u>In re Aiello</u>, 231 B.R. 693, 706 (Bankr. N.D. Ill. 1999) ("[T]he closing of a bankruptcy case does not affect the court's jurisdiction to determine matters relevant to the case."), <u>aff'd</u>, 257 B.R. 245 (N.D.Ill. 2000), <u>aff'd</u>, 239 F.3d 876 (7th Cir. 2001). Indeed, as indicated above in footnote 2, the Third Circuit in both <u>Geruschat</u>, <u>supra</u>, and <u>Shenango</u>, <u>supra</u>, found Section 1334(b) jurisdiction to exist despite the prior closing of the bankruptcy case; in <u>Geruschat</u> the chapter 11 case had been closed for more than eight years, and was reopened for prosecution of a professional malpractice claim under Section 1334(b). The cases cited by CHG for the alleged contrary position (CHG Memorandum at 18) in fact address *dismissal* of a bankruptcy proceeding, which, unlike closing, effectively deems the case as never having been filed. They are simply inapplicable to this dispute.

### 4. The Court's "Arising In" Jurisdiction is not Limited to the Argument Omission but Also Covers the Delivery Omission

As argued above, both the Argument Omission and the Delivery Omission fall squarely within the Court's "arising in" jurisdiction under Section 1334. Shaw Pittman anticipates that in its reply, CHG will argue that the Court lacks "arising in" jurisdiction over Delivery Omission on a theory that the Delivery Omission occurred eight months after the Bankruptcy Court ordered the termination of the CHG-Shaw Pittman relationship.

It is beyond reasonable dispute, however, that the Argument Omission and the Delivery Omission are so related as to form part of the same case or controversy. Defendants' alleged omissions arise out a single bankruptcy court-approved retention pursuant to which all of Shaw Pittman's services were rendered.

---

motion, file a motion to extend the time to answer, and if they don't dismiss in the face of a valid defense of res judicata, then you're back in the sanctions business." <u>See</u> Exhibit 32 to the Potter Affidavit.

Both alleged omissions directly relate to the BZA determination that CHG must have 177 parking spaces. CHG contends in its Complaint that Defendants failed to make an appropriate argument to avoid some aspect of the BZA ruling, and then failed to deliver the BZA ruling to CHG in time for CHG to appeal. See Complaint at ¶ 21.

CHG contends that both omissions were breaches of the same "Contract." See id. at ¶¶ 29-30. Similarly, CHG contends that both omissions were breaches of the same duty arising out of Defendants' representation of CHG in CHG's bankruptcy. See id. at ¶¶ 12, 17, 21. Indeed, almost as if to emphasize the point, CHG's malpractice claim alleges both omissions in a single paragraph. See id. at ¶ 21. Each of CHG's causes of action flow from this core of facts. As a result, the Court should reject any argument by CHG that "arising in" jurisdiction does not exist with respect to the Delivery Omission based upon timing.[13]

### B.    The Face of CHG's Complaint Presents 11 U.S.C. § 1334(b) Jurisdiction In Compliance With Rivet

In an effort to force the proverbial square peg of the instant case into the proverbial round hole of Rivet v. Regions Bank of Louisiana, 522 U.S. 470 (1998), CHG relies on a plainly false assertion: "in both cases the defendant/removing parties' purported basis for federal subject matter jurisdiction is grounded entirely upon an alleged federal res judicata defense." See CHG Memorandum at page 10. It is true that the defendant/removing party in Rivet attempted to rely

---

[13]    Furthermore, district courts may exercise supplemental jurisdiction over claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2007). When a district court has jurisdiction over a claim pursuant to Section 1334, it may also assert jurisdiction over related claims pursuant to Section 1367. See e.g., Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case), 483 F.3d 292 (5th Cir. 2007); Publicker Indus. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114-15 (2d Cir.1992). Therefore, supplemental jurisdiction would exist over the Delivery Omission even if it were not within the court's "arising in" jurisdiction, and none of the bases permitting a court to decline supplemental jurisdiction would apply to the instant case. The state law issues are not novel or complex. See 28 U.S.C. § 1367(c)(1) (2007). The Delivery Omission does not substantially predominate over the Argument Omission. See 28 U.S.C. § 1367(c)(2) (2007). The Court has not dismissed any claims. See 28 U.S.C. § 1367(c)(3) (2007). And the circumstances here, if they are exceptional (e.g., this Court has

solely upon a defense to obtain federal jurisdiction; nowhere does the Supreme Court state that removal was based upon arising under or arising in jurisdiction under 28 U.S.C. § 1334(b) or that the facts would support such jurisdiction.  However, the same cannot be said of this case.

Defendants' Notice of Removal expressly cites and relies upon Section 1334.  For example, in paragraphs 3 and 4 of their Notice of Removal, Defendants state "The Complaint alleged various breaches by Defendants purportedly arising in connection with Defendants' bankruptcy court-approved representation of CHG during its chapter 11 bankruptcy court proceeding," and "The Superior Court Action is an action over which the United States District Court for the District of Columbia (the "District Court") has original jurisdiction pursuant to 28 U.S.C. § 1334 . . ." Furthermore, in the jurisdiction section of their SJ Memorandum, Defendants cite three of the six circuit court decisions holding that Section 1334(b) "arising in" jurisdiction exists with respect to malpractice actions against bankruptcy court-approved professionals.  <u>Rivet</u> does not apply to Defendants' Notice of Removal.

Moreover, unlike the complaint in <u>Rivet</u>, CHG's Complaint, on its face, implicates "arising in" jurisdiction.  CHG's Complaint asserts that CHG filed for bankruptcy in Case No. 02-0359 and that Shaw Pittman filed a retention application approved by the Bankruptcy Court.  Complaint ¶¶12, 29.  CHG's Complaint alleges that in the course of such court-approved retention, Shaw Pittman performed the subject zoning work and that Shaw Pittman billed for said services "as a distinct matter under said bankruptcy case."  Complaint ¶14.  Then, in each Count of the Complaint, CHG alleges that in performing its work, Shaw Pittman committed tortious and contractual breaches.  Stated otherwise, the Complaint plainly asserts that Shaw Pittman was a Bankruptcy Court-approved professional in CHG's chapter 11 case, that Shaw Pittman rendered

---

issued several opinions regarding directly related matters concerning the same parties), clearly warrant retaining jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c)(4) (2007).

services to CHG during its bankruptcy case pursuant to said retention, and that Shaw Pittman

allegedly committed malpractice in connection with the services it rendered to CHG under its

Bankruptcy Court-approved retention.  These allegations alone are sufficient to create the "arising

in" jurisdiction under Section 1334(b) found to exist in Southmark, Geruschat, Grausz, Iannochino,

Walsh, and Sanders.[14]

Finally, CHG's repetitive argument that its assertion of state law causes of action against

Defendants destroys federal jurisdiction is squarely rejected by the same cases.  See e.g. Southmark,

at 930-31 ("To begin with, the state law origin of Southmark's claims is not dispositive. . . . That

Southmark's claims against the court-appointed accountant for its examiner arose under state law

does not prevent them from involving core jurisdiction.").

C.    **The Court Should Reject CHG's Request for Discretionary Abstention and Equitable Remand.**

This Court has jurisdiction and should not hesitate from ruling on the motions and claims

before it.  The court should not abstain from hearing this case pursuant to 28 U.S.C. § 1334(c)(1)

(2007),[15] or remand this case on any alleged equitable ground pursuant to 28 U.S.C. § 1452(b)

(2007).  The factors courts consider for discretionary abstention and equitable remand are nearly

identical, see Stoe v. Flaherty, 436 F.3d 209, 214-15 (3d Cir. 2006); In re Talon Holdings, Inc., 221

B.R. 214, 220 n.4 (Bank. N.D. Ill. 1998), and will be discussed only once here.  They include: (1)

the effect on administration of bankruptcy estate; (2) the extent to which state law issues

predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of related

proceedings in state court; (5) any jurisdictional basis other than 28 U.S.C. § 1334; (6) the

---

[14]    This, too, is the answer to the question raised in CHG's Memorandum as to why Southmark, Grausz, and Iannochino did not address Rivet - - there was no need to do so because, unlike Rivet, the complaints on their faces implicated "arising in" jurisdiction under Section 1334(b).

[15]    Having shown that Shaw Pittman's representation of CHG, as well as CHG's claims, are subject to the Court's "arising in" jurisdiction, the Court's decision to abstain is discretionary under 1334(c)(1), rather

relatedness to the main bankruptcy case; (7) the substance rather than form of "core" proceeding;

(8) the separation of state law claims from bankruptcy matters; (9) the burden on court's docket;

(10) the likelihood of forum shopping; (11) the right to a jury trial; and (12) the presence of non-

debtor parties.

### 1.    Effect on Administration of Bankruptcy Estate

CHG argues that its claims have no effect on the bankruptcy estate because the bankruptcy

case has closed.  CHG Memorandum at 30, 38-39.  As demonstrated above, however, closure of a

bankruptcy case, however, does not deny the court power to hear claims that arise from that case.

Furthermore, CHG inappropriately cites to two unpublished chapter 7 cases, In re Robinson,

2007 Bankr. LEXIS 227 (Bankr. S.D. Tex. Jan. 11, 2007) and In re Dierkes, 2007 Bankr. LEXIS

1565 (Bankr. N.D.Ga. Mar. 22, 2007).  A reading of Robinson, for example, demonstrates these

cases are in applicable and unhelpful "Because the professionals of a Chapter 7 debtor are not

compensated from the bankruptcy estate . . . the court's core jurisdiction is not implicated to the

same extent as in matters involving the estate's professionals."  Robinson at * 4.

Also, where "arising in" jurisdiction exists, courts will decide disputes raised by former

debtors against third parties, even though the only potential beneficiary of the action is the former

debtor.  See e.g., Taylor, supra (only beneficiary of debtor-finder dispute was the debtor himself);

see also Grausz, supra (debtor argued "his malpractice claims is personal to him and is not property

of his bankruptcy estate").

Moreover, to the extent that this Court is asked by CHG to revisit the propriety of Shaw

Pittman's advice which, as a matter of record, was reviewed and approved by the Bankruptcy Court

---

than mandatory under 1334(c)(2).  Although CHG argues for mandatory abstention, this option is not
available because CHG's claims trigger "arising in" jurisdiction.

(and affirmed by this Court on appeal), this dispute necessarily affects aspects the prior administration of CHG's bankruptcy proceeding.

Not only can this Court decide issues arising from CHG's closed bankruptcy case, it is best positioned to do so given its familiarity with the facts, disputes and parties.

### 2.    Extent to Which State Law Issues Predominate

CHG mischaracterizes its claims by saying the alleged breach of contract, breach of fiduciary duty, and negligence arise exclusively under D.C. law with a "limited nexus to federal law." CHG Memorandum at 30. In fact, the alleged facts occurred during CHG's bankruptcy, and all of its claims arise in the bankruptcy context because all relate to services provided to a debtor by a court-appointed professional, an area of law over which this Court has original jurisdiction under 28 U.S.C. § 1334(b). All of Shaw Pittman's work on behalf of CHG, including work on zoning matters, was in furtherance of successfully completing CHG's bankruptcy case. The only contract, fee agreement, and retainer capable of being breached was the retention application approved by the Bankruptcy Court. It is inaccurate, therefore, to say that state law issues predominate. See e.g. Southmark, at 930-31 ("To begin with, the state law origin of Southmark's claims is not dispositive. . . . That Southmark's claims against the court-appointed accountant for its examiner arose under state law does not prevent them from involving core jurisdiction.").

### 3.    Difficulty or Unsettled Nature of Applicable State Law

No citations are necessary to establish that this Court hears claims of professional malpractice under D.C. law on a routine basis. The issues of state law are familiar to the Court.

### 4.    Presence of Related Proceeding in State Court

There are no related proceedings in Superior Court. There have been several related proceedings before this Court (i.e., CHG I, CHG II and CHG III).

**5.    Jurisdictional Basis Other than 28 U.S.C. § 1334**

There is no jurisdictional basis other than 28 U.S.C. § 1334.

**6.    Relatedness to Main Bankruptcy Case**

The claims presented here arise directly from the main bankruptcy case. The Bankruptcy Court approved all of the fees and the retention application in this case, with no separate fee arrangement or retainer for the zoning work that was part of CHG's Chapter 11 proceedings. CHG acknowledges this. Complaint ¶ 14. As the courts in Southmark and Geruschat have stated, claims such as the current claims of CHG are not merely related to the main bankruptcy case, they are inseparable from it. See e.g. Southmark, supra, at 193 ("In this case, the professional malpractice claims alleged against Coopers are inseparable from the bankruptcy context. . . . Award of the professionals' fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts. . . . A malpractice claim like the present one inevitably involves the nature of the services performed for the debtor's estate and the fees awarded under superintendence of the bankruptcy court; it cannot stand alone."); Geruschat, supra (agreeing that malpractice claims against bankruptcy court-approved professionals implicate the integrity of the bankruptcy process).

**7.    Substance Rather than Form of "Core" Proceeding**

Substantively, this case involves Shaw Pittman's court-approved retention, and the zoning work performed pursuant thereto. CHG's Complaint therefore raises significant substantive matters for the Court to resolve. See e.g. Southmark, supra at 193 (challenges to such services implicate a "sine qua non in restructuring the debtor-creditor relationship," i.e., "the court's ability to police the fiduciaries."); Walsh, supra, at 1476, ("Nothing could be more important to the handling of a bankruptcy estate than the fidelity of those who are entrusted with its assets.").

8.      **Separation of State Law Claims from Bankruptcy Matters**

All the claims in this case involve facts occurring during CHG bankruptcy proceeding and

arise in CHG's bankruptcy case.  As mentioned above, the Bankruptcy Court approved Shaw

Pittman's representation of CHG in its bankruptcy proceeding, which included the essential zoning

services.  It also reviewed and approved the billings referenced in CHG's Complaint.  For these

reasons and those discussed above, CHG's state law claims are "inseparable" from its bankruptcy

proceeding.  See e.g. Southmark, supra, at 193.

9.      **Burden on Court's Remaining Docket**

This Court is already well versed with many of the facts and legal issues of this case.  See

CHG I, CHG II and CHG III.  The case presents no unusual burden to the Court.

10.      **Likelihood of Forum Shopping**

Shaw Pittman removed this case because of the Court's familiarity of the facts and legal

issues specific to the case and because the allegedly defective professional services were rendered

in the Bankruptcy Court, pursuant a Bankruptcy Court-approved engagement and wholly under the

supervision and policing powers of the Bankruptcy Court.  If there is any forum shopping, it was

done by CHG.  As demonstrated with greater particularity in Defendants' SJ Memorandum, CHG,

with knowledge of all facts alleged in the Complaint, misrepresented to the Bankruptcy Court its

intentions to bring this lawsuit; undoubtedly, to escape this Court's rulings and those of the

Bankruptcy Court.  See e.g., SJ Memorandum at 12.  See also Exhibits 32 & 35 to Potter Affidavit.

Then, as demonstrated herein, CHG omitted from its Complaint a number of facts that would have

made federal jurisdiction even clearer.  For example, CHG intentionally fails to mention that zoning

issues were heard before the Bankruptcy Court as part of CHG's bankruptcy case.  It calls the

Zoning Representation merely "fortuitous" in timing when in fact that work was critical to Shaw

Pittman's bankruptcy work and CHG's successful reorganization.  Furthermore, CHG admits that it

is not seeking disgorgement of attorneys' fees, an otherwise common remedy in this type of case.

This conduct is the type of "artful pleading" that would be an exception to the "face of the

complaint" rule of <u>Rivet</u>, if one were needed.  522 U.S. at 475 ("[A] plaintiff may not defeat

removal by omitting to plead necessary federal questions.").  Had CHG approached this matter

forthrightly, it would have filed suit years ago, and it would have done so in either the Bankruptcy

Court or this Court.

       **11.**      **Right to a Jury Trial**

      CHG relies on <u>In re Merry-Go-Round</u>, 222 B.R. 254 (D.Md. 1998), for the proposition that

denying remand might deprive CHG of a jury trial right it would otherwise have under D.C. law.

CHG Memorandum at 32.  <u>Merry-Go-Round</u> involved discretionary remand by a bankruptcy judge,

who, unlike a district court judge, does not regularly conduct jury trials.[16]  Moreover, <u>Merry-Go-</u>

<u>Round</u>, on its face, involved matters giving rise to concerns that this case does not and made no

determination regarding a party's right to jury trial.

      Cases decided since <u>In re Merry-Go-Round</u>, in the context of the instant dispute, have

recognized the availability of a jury trial in identical situations.  <u>Grausz</u>, 321 F.3d at 475 ("Such a

case may be tried before a bankruptcy judge and a jury with the authorization of the district court

and the consent of the parties. . . . In any event, an adversary proceeding may be transferred to the

district court if a jury trial is required."); <u>Southmark</u>, 163 F.3d at 935 n.16.  CHG will not lose its

jury trial rights before this Court, which has always conducted jury trials.

      The right to a jury trial, therefore, is not a consideration for determining remand or

abstention.

---

[16]    28 U.S.C. § 157(e) (2007) governs jury trials conducted by bankruptcy judges.

**12.      Presence of Nondebtor Parties**

The lack of nondebtor parties weighs against abstention and equitable remand.

**13.      Additional Factors Weighing Against Abstention and Remand**

An overarching theme to the aforementioned factors is the concept of equity.  Indeed, the rules specify that remand may be granted on "any equitable ground."  28 U.S.C. § 1452(b) (2007). The court should consider, therefore, CHG's clear effort to distort the history of this case before the Bankruptcy Court in order to argue that federal jurisdiction was not apparent on the face of its Complaint as discussed above.  CHG's inequitable conducts prevents it from seeking remand under 28 U.S.C. § 1452(b).

## IV.     Conclusion

For the foregoing reasons, and for such other reasons as the Court deems appropriate, Defendants request that the Court enter an order, in the form submitted herewith, denying the Motion to Remand.


Dated:  November  20, 2007                  Respectfully submitted,

                                            PILLSBURY WINTHROP SHAW PITTMAN, LLP

                                            By:      /s/ Jack McKay_____
                                                     Jack McKay (No. 159335)
                                                     2300 N Street, N.W.
                                                     Washington, D.C. 20037-1128
                                                     Tel:   (202) 663-8000
                                                     Fax:  (202) 663-8007

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
**CAPITOL HILL GROUP,**                         )
                                                )
                              **Plaintiff,**    )
                                                )        **Civil No. 07-1936 (RCL)**
              **v.**                            )
                                                )
**PILLSBURY WINTHROP SHAW PITTMAN, LLP,**        )
**SHAW PITTMAN, LLP,**                           )
**PAUL A. TUMMONDS, JR., AND**                   )
**PATRICK J. POTTER,**                           )
                              **Defendants.**    )
_____)

## ORDER

       Upon consideration of Plaintiff's Motion for Remand pursuant to 28 U.S.C. §§ 1447(c)

and 1452(b), or Abstention pursuant to 28 U.S.C. § 1334(c), Defendants' Memorandum in

Opposition, Plaintiff's Reply Memorandum, and the pleadings in this matter, it is hereby

       ORDERED, that Plaintiff's Motion for Remand or Abstention, and all relief requested

therein, is hereby DENIED.


                                        _____
                                        The Honorable Royce C. Lamberth
                                        United States District Judge

Dated: _____

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CAPITOL HILL GROUP,                          )
                                             )
                           Plaintiff,        )
                                             )                 Civil No. 07-1936 (RCL)
          v.                                 )
                                             )
PILLSBURY WINTHROP SHAW PITTMAN, LLP,        )
SHAW PITTMAN, LLP,                           )
PAUL A. TUMMONDS, JR., AND                   )
PATRICK J. POTTER,                           )
                           Defendants.       )
_____)

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2007, I caused the following documents, filed by Defendants in the above-captioned proceeding, to be served by hand on Emil Hirsch, O'Connor & Hannan, L.L.P., 1666 K Street, N.W., Suite 500, Washington, D.C. 20006-2803:

1.    Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Remand or Abstention; and

2.    Proposed Order.

Dated:  November 20, 2007              /s/ Jack McKay_____
                                       Jack McKay (No. 159335)
                                       Pillsbury Winthrop Shaw Pittman LLP
                                       2300 N Street, N.W.
                                       Washington, D.C. 20037-1128
                                       Tel:  (202) 663-8000
                                       Fax:  (202) 663-8000