**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| CAPITOL HILL GROUP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    **Civil No. 07-1936 (RCL)** |
| | ) |
| PILLSBURY WINTHROP | ) |
| SHAW PITTMAN, LLP, et al. | ) |
| | ) |
| Defendants. | ) |

_____

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND**
**PURSUANT TO 28 U.S.C. § 1447(c) AND 1452(b),**
<u>**OR IN THE ALTERNATIVE ABSTENTION PURSUANT TO 1334(c)**</u>

**ARGUMENT**

**I. This Court Does Not Have "Arising In" Jurisdiction Under § 1334(b)**

**A. Introduction**

As noted in the Motion for Remand (the "Motion") and Brief filed in support of it (the "Opening Brief"), federal courts have <u>limited</u> and non-exclusive original jurisdiction and the law therefore presumes that a cause of action lies outside of this court's limited jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Julien v. CCA of Tennessee, Inc.</u>, 268 F. Supp. 2d 19, 21 (D.D.C. 2003); <u>D.C. v. 109,205.5 Feet of Land</u>, 2005 U.S. Dist. LEXIS 7990 *3 (D.D.C. April 25, 2005). However, in their Opposition (the "Opposition") to the Motion, Defendants not only ignore this fundamental jurisdictional principle, they espouse a theory of "arising in" jurisdiction under § 1334(b) which is legally unfounded and, if applied by this Court, would vastly expand the parameters of bankruptcy jurisdiction to encompass <u>all</u> cases where professional malpractice is alleged to have occurred during the time a debtor is in bankruptcy, regardless of the nature of the claim. Defendants are unable to cite to any authority supporting this radical premise. Nor do they identify any precedent with facts on "all fours" to

those of the instant case where the court has exercised § 1334(b) jurisdiction (i.e., cases where the alleged professional malpractice stems from legal services <u>unrelated</u> to the administration of a debtor's bankruptcy estate).

As discussed in the Opening Brief, CHG asserts three <u>state law</u> causes of action against Defendants, each arising out of Defendants' representation of CHG in <u>zoning</u> matters before the D.C. Zoning Administrator and the D.C. Board of Zoning Adjustment (collectively, the "Zoning Representation"). It is this Zoning Representation <u>alone</u> which forms the factual predicate and gravamen upon which CHG's claims are based. Defendants argue that because: (i) the Zoning Representation occurred at a time CHG was involved in a bankruptcy case (the "Bankruptcy Case"); and (ii) the professional services encompassed by the Zoning Representation were authorized in the Bankruptcy Case, it follows, <u>ipso facto</u>, that § 1334(b) "airing in" jurisdiction exists. Defendants maintain this position notwithstanding that the four corners of CHG's Complaint do not allege <u>any</u> causes of action based upon Defendants' administration of CHG's bankruptcy estate, or their substantive bankruptcy work. Nor does such Complaint seek disgorgement of <u>any</u> fees awarded during the Bankruptcy Case. For the reasons set forth below, Defendants' arguments should be rejected.

### B. The Case <u>Sub Judice</u> Could Have Arisen Outside Of The Bankruptcy Case

The only basis upon which Defendants maintain that this Court has subject matter jurisdiction is "arising in" jurisdiction under § 1334(b). As noted in the Opening Brief, the well-established standard for determining whether "arising in" jurisdiction exists is whether the claim at issue is of a nature that could arise "only in bankruptcy cases and have no existence outside of the bankruptcy proceeding." <u>In Re: U.S. Office Products Co. Securities Litigation</u>, 313 B.R. 73, 79 (D.D.C. 2004); <u>see also</u>, <u>Atkinson v. Kestell</u>, 954 F. Supp. 14, 16 (D.D.C. 1997), <u>aff'd. sub nom.</u>;

156 F. 3d 1335 (D.C. Cir. 1998); In Re: Barnes, 365 B.R. 1, 3 (Bankr. D.D.C. 2007); Opening Brief, at pages 22-29.

In their Opposition, Defendants for the most part ignore this standard. Moreover, to the extent this standard is obliquely referenced by Defendants, it is distorted to suit Defendants' ends. For example, on page 7 of the Opposition, Defendants, in the course of arguing that "arising in" jurisdiction exists in this case, state that the "Zoning Representation by Shaw Pittman *would* not have occurred outside of CHG's bankruptcy" (emphasis added). Defendants then cite to a wealth of "evidence" wholly extrinsic to CHG's Complaint, and argue, in effect, that had the Bankruptcy Case not been filed, the Zoning Representation would not have occurred.[1] This is precisely the type of post hoc reasoning which has been uniformly rejected by authorities discussing "arising in" jurisdiction.

As discussed in the Opening Brief, "claims that 'arise in' a bankruptcy case are claims that by their nature, ___*not their particular factual circumstance*___, could only arise in the context of a bankruptcy case." Stoe v. Flaherty, 436 F.3d 209, 218 (3rd Cir. 2006) (emphasis added). Accordingly, after the fact arguments (such as Defendants') to the effect that a malpractice claim would not have arisen "but for" the filing of a bankruptcy case are unavailing. Id. This critical distinction between the "nature" of a claim, and the "factual circumstance" within which the claim arises, is also recognized by courts in this jurisdiction, which have repeatedly framed the "arising in" analysis as whether the claims **"could"** have arisen outside of a bankruptcy, and not (as Defendants misleadingly suggest) whether the claims **"would"** have arisen outside of a bankruptcy. See, e.g., Barnes, at page 4 ("This demonstrates that the Bank's claims for breach of the contract

---

[1] See, e.g., Opposition, at pages 7-8 ("First, prior to CHG's bankruptcy Shaw Pittman performed no zoning work for CHG . . . Second, prior to its bankruptcy filing, CHG had entered into a written contract to sell the subject real estate to Holladay.")

exist outside of the bankruptcy case, and thus do not 'arise in' the bankruptcy case. They are not of a nature that could arise only in the bankruptcy case.")

Since it is <u>Defendants</u>' burden to establish the jurisdiction of this Court,[2] and since their assertion of jurisdiction admittedly rests exclusively on the "arising in" rubric of § 1334(b), it is <u>their</u> obligation under the foregoing authorities to demonstrate that the malpractice claims at issue herein, are, ***by their very nature***, claims that *could only* have arisen within the context of an underlying bankruptcy case. However, Defendants cannot (and do not attempt to) make such a showing. Indeed, it would be absurd for Defendants to argue that CHG's claims stemming from Defendants' acts and omissions before the Zoning Administrator and the Board of Zoning Adjustment (local administrative bodies completely unrelated to the Bankruptcy Court) are claims that, ***by their very nature***, *could* not have arisen outside of a bankruptcy context. Defendants ostensibly recognize the absurdity of such an argument, and therefore attempt to obfuscate the relevant standard by arguing that CHG's claims "*would* not have occurred outside of CHG's bankruptcy." Opposition, at page 7. On this basis alone, Defendants' claim of "arising in" jurisdiction is legally unsustainable and should be rejected.

Moreover, as discussed above, Defendants' assertion that the claims at issue are of the nature that "*would* not have occurred outside of CHG's bankruptcy" is based entirely upon evidence extrinsic to the Plaintiff's Complaint. By directing the Court to consider such evidence, Defendants repeatedly and consistently violate the well-pleaded complaint rule. As noted on pages 9-14 of the Opening Brief, this rule provides that a cause of action arises under federal law to establish removal jurisdiction when the basis of the federal claim can be found on the face of the complaint and only on the face of the complaint. <u>See</u>, e.g., <u>Strategic Lien Acquisitions, LLC</u> at 148; <u>Van Allen v. Bell</u>

---

[2] <u>See</u>, e.g., <u>Julien v. CCA of Tennessee, Inc.</u>, 268 F. Supp. 2d 19, 21 (D.D.C. 2003); <u>Strategic Lien Acquisitions, LLC v. Republic of Zaire</u>, 344 F. Supp. 2d 145, 148 (D.D.C. 2004); <u>Int'l Union of Brickworkers and Allied Craftworkers v. Ins. Co. of the West</u>, 366 F. Supp. 2d 33, 36 (D.D.C. 2005).

Atlantic – Washington, D.C., Inc., 921 F.Supp. 830, 832 (D.D.C. 1996); Int'l Union of Brickworkers, 366 F. Supp. 2d, at 36. All of the "evidence" cited by Defendants on pages 7-8 of the Opposition in support of their claim of "arising in" jurisdiction is extrinsic to CHG's Complaint and, as such, is precisely the type of evidence that cannot be considered under the well-pleaded complaint rule.[3] As noted on pages 12-13 of the Opening Brief, the well-pleaded complaint rule has also been applied to removal under 28 U.S.C. § 1334.[4]

Defendants' wholesale disregard of the well-pleaded complaint rule, by citing to and "incorporating by reference" literally hundreds of pages of documents in its Opposition, is nothing more than a transparent attempt to litigate substantive aspects of this case (including material issues of disputed fact) before this Court's subject matter jurisdiction is even established. This sort of jurisdictional "bootstrapping" is precisely what the well-pleaded complaint rule is designed to prevent. CHG respectfully requests that this Court decline to take Defendants' bait. Therefore, all of Defendants' references in the Opposition to any materials extrinsic to the Plaintiff's Complaint should be disregarded completely in determining whether there is "arising in" jurisdiction.

As previously discussed in the Opening Brief, when CHG's claims are *appropriately* assessed under the well-pleaded complaint rule (with reference to the four corners of CHG's Complaint, rather than extrinsic evidence), there is no basis upon which this Court can discern "arising in" jurisdiction, let alone conclude that it exists. The only reference in the Complaint to the

---

[3] Indeed, from the very outset of their Opposition, Defendants attempt to circumvent the well-pleaded complaint rule by purporting to incorporate their Summary Judgment Motion "including the affidavits, transcripts and exhibits referenced therein."

[4] See, e.g., Transouth Financial Corp. v. Murry, 311 B.R. 99 (M.D. Ala. 2004); Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC, 357 F. Supp. 2d 529 (E.D.N.Y. 2005); In Re: Conseco, Inc., 318 B.R. 425, 428-29 (Bankr. N.D. Ill. 2004); see also, Yangming Marine Transp. Corp. v. Electri-Flex Co., 682 F. Supp. 368, 370 (N.D. Ill. 1987) ("[t]here is no bankruptcy exception to the well-pleaded complaint rule."); Poplar Run Five Ltd. Partnership v. Virginia Elec. & Power Co., 192 B.R. 848, 855-56 (Bankr. E.D. Va. 1995). On page 15 of their Opposition, Defendants suggest that the well-pleaded complaint rule is inapplicable to cases involving removal under § 1334. However, Defendants do not cite any authority in support of this assertion, nor do they address (let alone distinguish) the foregoing cases which have applied the well-pleaded complaint rule to Section 1334 removals.

Bankruptcy Case is found in Paragraph 12, which states: "On or about February 21, 2002, Shaw Pittman undertook to represent CHG before the United States Bankruptcy Court for the District of Columbia, Case No. 02-0359, in a case under Chapter 11 of the federal Bankruptcy Code."  The remaining factual averments of the Complaint describe Defendants' representation of CHG in unrelated administrative zoning proceedings before the D.C. Zoning Administrator and Board of Zoning Adjustment.  It is therefore absurd for Defendants to intimate or to suggest that the four corners of CHG's Complaint establish that Plaintiff's zoning malpractice claims, *by their nature*, are of a species that cannot arise in the absence of an underlying bankruptcy case.

A particularly well-reasoned case applying the "nature" versus "factual circumstance" test in determining whether "arising in" jurisdiction exists, is the Third Circuit's decision in Torkelsen v. Maggio, 72 F.3d 1171 (3d. Cir. 1996).  In Torkelsen the Plaintiff (Torkelsen) delivered several paintings to an art gallery for storage under a bailment contract.  Subsequently, the gallery filed for bankruptcy protection.  When Torkelsen demanded return of the paintings, the bankruptcy trustee appointed to the case (Maggio) was unable to locate one of the paintings.  Accordingly, Torkelsen filed an adversary proceeding against Maggio in the Bankruptcy Court, alleging a number of state common law theories of liability against Maggio in his personal capacity (including, inter alia, negligence, conversion and breach of warranty), each arising out of Maggio's actions and omissions as a bankruptcy trustee.  After a judgment was rendered for Maggio on the merits, and the District Court affirmed such ruling, Torkelsen sought review before the Third Circuit.  The Third Circuit reversed and remanded with instructions to dismiss the case, on the grounds that the case was not one over which the Bankruptcy Court could exercise subject matter jurisdiction in the first instance:

> Our circuit precedents have held that a proceeding is core under
> section 157 if it invokes a substantive right provided by title 11 or if
> it is a proceeding that, by its nature, could only arise in the context
> of a bankruptcy case . . . The claims that Torkelsen raises against
> the trustee need not arise only in bankruptcy.  Torkelsen's state law
> claims are not comparable to the filing of a proof of claim or raising

> an objection to a discharge of a particular debt . . . Moreover, Torkelsen's claims certainly could exist outside of bankruptcy; they could all be filed in a state court . . . This case is not a core proceeding because Torkelsen's claims neither invoke a substantive right provided by title 11, nor could this action arise only in the context of a bankruptcy case.

Id., at 1178 (internal citations and quotations omitted).

Torkelsen is highly instructive in that it shows how the "nature" versus "factual circumstance" distinction is applied with strict literalism by courts. Thus, in Torkelsen, the Third Circuit held that subject matter jurisdiction did not exist even though the claims at issue were against a *bankruptcy trustee who allegedly engaged in misfeasance while acting in his capacity as bankruptcy trustee*, because the *nature* of the claims involved only state common law theories of negligence, conversion and breach of warranty. Only several months ago, the holding and logic of Torkelsen were cited with approval by the District of Columbia Bankruptcy Court in In Re Barnes, 365 B.R. 1, 5 n. 1 (Bankr. D.D.C. 2007) (in the course of rejecting the existence of "arising in" jurisdiction), for the proposition that "The claim must have something to do with concluding the administration of the case if it is to be one 'arising in' the case." Id., at 5. (The facts of Barnes are discussed in greater detail on page 23 of the Opening Brief).[5]

To summarize, Defendants' Opposition distorts the relevant standard for assessing when claims fall within the "arising in" jurisdiction of this Court, and completely ignores the well-pleaded complaint rule, in an effort to concoct a basis for alleging this Court's jurisdiction under § 1334(b). Thus, Defendants' jurisdictional arguments should be rejected in their entirety.

---

[5] See also, Transouth Financial Corp., 311 B.R. at 105, wherein the District Court rejected the existence of "arising in" jurisdiction in a case brought under state lender liability law by a borrower/debtor against a prior lender, in which the borrower alleged that as a result of the lender's failure to properly file the release of a home mortgage, the borrower was unable to obtain new financing to prevent foreclosure. The Court declined to assert such jurisdiction notwithstanding the purported connection of the claim to the administration of the debtor's prior bankruptcy estate based on: (i) the alleged post-petition failure by the lender to honor a request to file the release in the correct court; and (ii) the omission of the claim from the debtor's bankruptcy schedules.

**C. The Cases Cited By Defendants In The Opposition Are Inapposite**

On pages 2-3 of the Opposition, Defendants cite to six appellate decisions from other federal circuits in support of their contention that "arising in" jurisdiction exists in this case. Defendants maintain that an analogy can be drawn between these cases and the case <u>sub judice</u>. However, each of these cases is inapposite, as demonstrated below.

**1. In None Of The Cases Relied Upon By Defendants Was The Well Pleaded Complaint Rule At Issue**

As noted above, it is beyond peradventure that the well-pleaded complaint rule extends to § 1334(b) removals. <u>See</u>, footnote 4, <u>supra</u>. In this case, as discussed, application of the well-pleaded complaint rule is dispositive of Defendants' attempt to establish removal jurisdiction. As noted, the face of CHG's Complaint does not set forth a basis upon which this Court can assert federal subject matter jurisdiction. By contrast, in **<u>none</u>** of the six decisions upon which Defendants rely, was the basis for removal jurisdiction attacked on the grounds of the well-pleaded complaint rule. This fact <u>alone</u> distinguishes this case from the cases to which Defendants cite. Indeed, CHG submits that the application of the well-pleaded complaint rule to this case *precludes* consideration of the alleged factual similarities between this case and the six authorities to which Defendants cite, since these supposed factual similarities can only be discerned by reference to "facts" extrinsic to CHG's Complaint (e.g., the litany of extrinsic facts recited on pages 7-8 of the Opposition). Accordingly, the authorities upon which Defendants seek to rely are simply unavailing to Defendants.

**2. Each Of The Cases Relied Upon By Defendants Is Factually Dissimilar To The Instant Case**

Moreover, each of the six authorities relied upon by Defendants is factually dissimilar to the instant case, as demonstrated below.

**a. <u>Geruschat</u>**

Geruschat v. Ernst Young LLP, 2007 WL 3085905 (3d. Cir. October 24, 2007) is distinguishable on multiple grounds.  Firstly, and most importantly, the accounting malpractice at issue in Geruschat arose out of services Ernst & Young provided *in connection with the administration of the debtor's bankruptcy from a substantive bankruptcy law standpoint*.  Indeed, it was this inextricable connection between the alleged malpractice and the substantive administration of the debtor's bankruptcy estate that formed the basis of the Third Circuit's decision to affirm the District Court's exercise of "arising in" jurisdiction:

> Ernst & Young's alleged malpractice . . . ***implicated the integrity of the entire bankruptcy process*** and the alleged malpractice was inseparable from the bankruptcy context . . . The bankruptcy Court appointed Ernst & Young to ***review the Debtors' financial records and prepare the financial schedules needed for the bankruptcy***. According to appellants' allegations in their complaint, as a result of the work that Ernst & Young performed during the bankruptcy proceedings and its representations to the bankruptcy court, the bankruptcy court deemed the Debtors to be insolvent. . . In sum, it is clear to us that a malpractice action against an accountant for misconduct during the bankruptcy ***on which the bankruptcy judge relied in confirming the plan of reorganization  . . .and on which appellants' representatives relied to their detriment in selling the assets to pay their claims, in a manner that contravenes the terms of the reorganization plan, constitutes***  . . . a proceeding arising in the bankruptcy.

Id., at pages *20, *22 (internal citations and quotations omitted).

By contrast, in this case, a cursory glance at CHG's Complaint reveals that the Defendants' malpractice does not arise, in any respect, out of services provided in connection with *administering* CHG's bankruptcy, but stems instead from malpractice committed in the course of the freestanding Zoning Representation.  Furthermore, the assertions in CHG's Complaint plainly do not "implicate the integrity of the ***entire*** bankruptcy process."  As previously discussed, the Complaint does not contain any allegation that Defendants committed malpractice with respect to the manner in which they represented CHG *in the Bankruptcy Case* as to substantive or procedural bankruptcy matters, and, as such, CHG does not claim that Defendants' malpractice affected CHG's (now closed)

bankruptcy estate, nor payments to creditors thereunder.  In a similar vein, CHG does <u>not</u> seek a disgorgement of any fees awarded by the Bankruptcy Court during the Bankruptcy Case (including the <u>de minimus</u> portion of the awarded fees stemming from the Zoning Representation), nor does it seek an abrogation, let alone a retroactive modification, of any order of the Bankruptcy Court.

Simply stated, while CHG does not concede that <u>Geruschat</u> is apposite here, its holding is not inconsistent with the holdings of this Court in <u>Atkinson</u> and Judge Teel's in  <u>Barnes</u>, <u>supra</u>, or CHG's argument that under these authorities, "arising in" jurisdiction cannot be found to exist in this case.  This is because in <u>Geruschat</u>, unlike the instant case, the malpractice at issue *could not have occurred* absent the underlying Chapter 11 bankruptcy case (i.e., the <u>Geruschat</u> defendant's appointment to prepare bankruptcy schedules, ***necessarily*** entailed the existence of a bankruptcy case).  Finally, <u>Geruschat</u> is also distinguishable since the requisite "arising in" connection to the underlying bankruptcy case was discernable from the face of the complaint, to which the Third Circuit quoted generously.[6]  For these reasons, <u>Geruschat</u> is inapposite.

### b. <u>Southmark</u>

In <u>Southmark v. Coopers & Lybrand</u>, 163 F.3d 925 (5th Cir. 1999), <u>cert. denied</u>, 527 U.S. 1004 (1999) as in <u>Geruschat</u>, the professional malpractice at issue stemmed from the manner in which the defendant discharged its obligations *in connection with the administration of a pending bankruptcy case*.  In <u>Southmark</u>, the malpractice defendant (the accounting firm of Cooper's & Lybrand) had been retained by the plaintiff following its bankruptcy, and was expressly directed by the bankruptcy court to investigate the propriety and practicality of pursuing litigation against third-parties ***for the benefit of the debtor's estate***.  <u>Id</u>., at 928.  Cooper's & Lybrand was alleged to have

---

[6] Indeed, on page *3 of its decision, the Court noted that "the precise allegations in the complaint are significant in determining . . . the jurisdiction of the bankruptcy court over appellants' state law causes of action," and then proceeded to quote in their entirety seven separate paragraphs from the plaintiff's complaint which ultimately established the basis for the court's determination that "arising in" jurisdiction existed.  In short, unlike here, the Complaint in <u>Geruschat</u> seems to have passed muster, absent extrinsic aid, to establish § 1334(b) jurisdiction.  This explains why the compliance <u>vel non</u> with the well pleaded complaint rule was not an issue in the <u>Geruschat</u> appeal.

committed professional malpractice and breaches of its fiduciary duties in the course of rendering these bankruptcy-related services, by failing to adequately investigate potential claims and by making misrepresentation to the debtor. In its complaint originally brought in a Texas state court, the debtor sought, inter alia, an award of damages **and a disgorgement of all fees** it had paid to Cooper's & Lybrand. Id., at 431 ("Southmark prays for actual damages including return of the entire $4 million fee it paid Coopers from money belonging to the debtor's estate."). In the instant case, as discussed, CHG is not seeking disgorgement of any fees awarded during the Bankruptcy Case. On this basis alone, Southmark is distinguishable.

Furthermore, in Southmark, the Court based its decision, in significant part, upon the bankruptcy court's interest in monitoring professionals entrusted with *managing bankruptcy estates for the interest of creditors*:

> A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries . . . who are responsible **for managing the debtor's estate in the best interest of creditors . . . Supervising the court-appointed professionals also bears directly on the distribution of the debtor's estate**. If the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims . . . the claim against Coopers is not just for malpractice, but for the value of the asset which Coopers was to assist Southmark in recovering . . . **If Coopers had done the job for which it was retained . . . Southmark would . . . have recovered a substantial sum for creditors. The claim against Coopers may therefore be viewed as one to recover an asset of Southmark's estate that Coopers let slip away**.

Id., at 931. (emphasis added).

In the instant case, CHG does not allege that its erstwhile bankruptcy *estate* was damaged by Defendants' professional malpractice, nor does CHG allege that "but for" this malpractice, its creditors in the Bankruptcy Case would have received greater distributions from CHG's estate. Indeed, by the time CHG sustained the damage occasioned by Defendants' malpractice (when the BZA issued its adverse ruling on September 9, 2004), CHG's reorganization plan had already been

confirmed by the Bankruptcy Court.  In short, the interest of the Bankruptcy Court in monitoring bankruptcy process fiduciaries for the purpose of protecting the interests of bankruptcy *creditors*, as expressed by the Fifth Circuit in Southmark, simply does not exist in this case.  Southmark is plainly inapposite.

### c. Grausz

In Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003) the malpractice at issue once again related to the manner in which professionals discharged their duties in the course of administering a bankruptcy estate.  The Court, at page 471, noted that:

> Grausz filed this legal malpractice action against the Linowes firm . . . He alleges that the Linowes firm (1) negligently failed to advise him to list his community property interests on his amended Schedule B and (2) negligently failed to advise him to verify the accuracy of the packing list that was attached to the schedule.

Furthermore, the Court relied upon this intimate connection between the asserted malpractice and the underlying bankruptcy case in determining that "arising in" jurisdiction existed: (See, Grausz, supra, at page 471-472 ("'[A]rising in' jurisdiction surely means that jurisdiction exists over a malpractice claim against a lawyer for providing negligent advice to a debtor ***in a bankruptcy case***.") (emphasis added).  In this case, as mentioned, the alleged malpractice stems entirely from the Zoning Representation, not the Bankruptcy Case.

### d.  Iannochino

While Defendants cite to Iannochino v. Rodolakis, 242 F.3d 36 (1st Cir. 2001) as holding that "arising in" jurisdiction exists over professional malpractice cases such as the case sub judice, Iannochino did not involve a challenge to subject matter jurisdiction.  As such, its holding is inapplicable from the outset.[7]

---

[7]    In any event, to the extent Iannochino might be stretched to have implicitly held that "arising in" jurisdiction existed, the case is again distinguishable from the instant case on the basic grounds that the representation at issue therein was substantive bankruptcy representation. Iannochino, at 41 ("The Iannochinos' complaint was ***grounded upon***

### e. **Walsh**

In Walsh v. Northwestern Nat'l Ins. Co. of Milwaukee, Wis., 51 F.3d 1473 (9th Cir. 1995), the principal issue was the scope of personal liability of a bankruptcy trustee for misappropriating funds belonging to a debtor's estate, not the conditions under which "arising in" jurisdiction may be found to exist under §1334(b).  While the decision includes a cursory determination by the Ninth Circuit that the Bankruptcy Court had subject matter jurisdiction over the claim at issue, it is once again clear that this jurisdictional determination was premised upon the intimate connection between the claim at issue and the underlying bankruptcy case.  Id., at 1476 ("The bankruptcy court did have jurisdiction because this case involves a core proceeding . . . Because this case evokes the Bankruptcy Act's imposition of duties on trustees to administer estate property . . . It is also particularly germane to the bankruptcy proceeding context, for it involves the very bankruptcy process itself.  Nothing could be more important to the handling of a bankruptcy estate than the fidelity of those who are entrusted with its assets.").  Walsh is inapposite to our case since (for the reasons previously discussed) this case does not involve the manner in which a professional handled a bankruptcy estate or administered its assets.

### f. **Sanders**

For similar reasons as the foregoing cases, Sanders Confectionary Prod., Inc. v. Heller Fin., Inc., 973 F.2d 474 (6th Cir. 1992), cert. denied, 506 U.S. 1079 (1993) is not on point.  Sanders was brought by a bankruptcy debtor against its creditor, the creditor's attorneys and the bankruptcy trustee, alleging claims for common law fraud and RICO and securities violations.  The portion of Sanders cited by Defendants in support of their argument that "arising in" jurisdiction exists (footnote 4) is unavailing to Defendants, as it pertained strictly to the claims brought against the bankruptcy trustee (Alix) *arising out of the trustee's administration of the bankruptcy estate.*  Id., at

_____

*the legal services the defendants had provided during the bankruptcy* and alleged that, through those services [the defendants] had committed professional malpractice.") (emphasis added).

page 483, fn. 4 ("The claims against the trustee Alix…would be core proceedings. While the specific causes of action, such as RICO, exist independently of bankruptcy cases, an action ***against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not***.") (emphasis added). Moreover, Defendants fail to mention that, in this same footnote, the Court also contrasted the claims brought against the trustee against the claims brought against the creditor and the creditor's attorneys, noting that the latter class did <u>not</u> "arise in" the underlying bankruptcy because "they could arise in cases other than bankruptcy proceedings . . . Therefore, despite their possible affect on the bankruptcy estate . . .the district court incorrectly classified them as core proceedings." <u>Id</u>. In the instant case, as in <u>Sanders</u>, the claims brought against Defendants arising out of the Zoning Representation are free-standing claims which could exist in the absence of an underlying bankruptcy, for the reasons discussed above.

In short, all six professional malpractice cases relied upon by Defendants in their Opposition stem from malpractice arising ***in the course of rendering the actual bankruptcy services*** which are performed by either a debtor's counsel, an accounting firm or financial consultant to a bankruptcy estate, or a bankruptcy trustee. Moreover, in each of these cases, the adjudicating court specifically cited to the nature of these bankruptcy-related services, and the relationship between these services and the integrity of an underlying bankruptcy estate (including creditors' rights to distributions from such estates), in concluding that there existed a sufficiently intimate connection between the underlying bankruptcy and the state-law causes of action, to give rise to "arising in" subject matter jurisdiction under § 1334(b).

By contrast, Defendants have been <u>unable</u> to identify a <u>single</u> professional malpractice case, from <u>any</u> jurisdiction in the country, with facts "on all fours" to those of the instant case; i.e., a case where a court exercised "arising in" subject matter jurisdiction under § 1334(b) over a claim in which the alleged malpractice was committed by professionals rendering services *unrelated* to the

administration of a debtor's bankruptcy estate. This inability is fatal to Defendants, who have the burden to establish jurisdiction.

Defendants, ostensibly aware of this weakness in their position, self-servingly conclude (on page 11 of the Opposition) that there is no logical support for the supposedly "artificial" distinction between professional services related to the administration of a bankruptcy estate and those which are not. CHG respectfully submits that it is Defendants' position on this issue which is patently illogical, as already demonstrated in this Reply Brief.

According to Defendants, a bankruptcy court would have "arising in" jurisdiction over *any* malpractice claim, regardless of its nature, asserted by a former bankruptcy debtor against a defendant rendering professional services, so long as: (i) the services were originally authorized by the bankruptcy court;[8] and (ii) such claim, or a portion thereof, is alleged to have arisen during the time the debtor was in bankruptcy. Moreover, pursuant to Defendants' logic, such "arising in" jurisdiction would exist *regardless* of the substantive connection (or lack thereof) between the professional services and the administration of the debtor's bankruptcy estate.

Moreover, in Defendants' view, once the bankruptcy court is vested with "arising in" jurisdiction over a professional malpractice claim unrelated to the administration of the debtor's estate, it would *retain* such jurisdiction *indefinitely*, even long after the bankruptcy case and the estate have closed. Simply stated, Defendants maintain that *any* professional malpractice claim based on an error or omission which happens to occur at the time a debtor is in bankruptcy is granted a special status whereby it is ipso facto considered to have "arisen in" a bankruptcy case for purposes of § 1334(b). Such a result would, by necessity, exponentially expand a District Court's limited and non-exclusive original bankruptcy jurisdiction, to include a vast array of claims with no substantive relationship whatsoever to bankruptcy law. For example, in Defendants' view, if CHG

---

[8] Presumably, this would include all post-petition professional services, since all such professional services must be authorized under 11 U.S.C. §§ 327 and 330.

had retained an architect to construct a new structure upon its real property during the time period CHG was in bankruptcy, and the Bankruptcy Court had authorized such retention, if, in the course of such retention, the architect had committed professional malpractice, then the District Court would have core "arising in" jurisdiction.  To state such a jurisdictional theory is to refute it, as it is wholly non-sensical.

The obvious problem with this argument (which is not even supported by the very authorities upon which Defendants rely) is that it ignores the relevant legal standard.  To reiterate, "arising in" jurisdiction exists only when the claim at issue is of a nature that **could** arise "only in bankruptcy cases and have no existence outside of the bankruptcy proceeding."  In Re: U.S. Office Products Co. Securities Litigation, 313 B.R., at 79 (emphasis added); see also, Atkinson, 954 F. Supp., at 16; In Re: Barnes, 365 B.R., at 3.  Defendants' jurisdictional argument self-servingly eliminates the word "only" from this well-settled standard.  According to Defendants, the mere fact that a malpractice claim fortuitously occurred at the time a debtor was in bankruptcy automatically generates § 1334 jurisdiction over the claim, regardless of whether the malpractice is of a type that could have (or even would have) arisen in the absence of a bankruptcy filing.  As demonstrated herein, Defendants have yet to cite to any authority supporting this radical position, which is contrary to precedent both from this and other jurisdictions.  As such, Defendants have failed to meet their burden to establish the existence of removal jurisdiction.

Finally, to the extent that this Court may conclude that the law in this jurisdiction is unsettled as to the scope of § 1334(b) "arising in" jurisdiction under the particular factual context presented, it is required to resolve any ambiguities concerning the propriety of removal in favor of remand.  D.C. v. 109,205.5 Feet of Land, at *3 citing Williams v. Howard University, 984 F.Supp. 27, 29 (D.D.C. 1997);   Int'l Union of Brickworkers and Allied Craftworkers, supra, at 36.

Accordingly, for each of the reasons set forth herein and in the Opening Brief, CHG respectfully submits that this Court should remand this case under 28 U.S.C. § 1447(b).

## II. Both Equitable Remand Under §1452(b), And Abstention Under § 1334(c) Are Appropriate In This Case

On pages 29-39 of its Opening Brief, CHG demonstrated that, in the event this Court determines that federal subject matter jurisdiction exists in this case under § 1334(b), remand of this case would nevertheless be appropriate, under both the doctrine of equitable remand under § 1452(b), and the permissive abstention doctrine under § 1334(c).  In their Opposition, Defendants address these two bases for remand together in Section III C. of their Brief.  Since CHG acknowledges that the factors for equitable remand and permissive abstention are similar (compare the equitable remand factors set forth in In Re Merry-Go-Round Enterprises, Inc., 222 B.R. 254, 257 (D. Md. 1998) with the permissive abstention factors set forth in In Re: Allied Sign Co., Inc., 280 B.R. 688, 693 (Bankr. S.D. Ala. 2001)), it will likewise address the relevant factors for these two doctrines conjunctively to demonstrate that the contentions proffered by Defendants in the Opposition fail to convincingly rebut CHG's arguments in favor of equitable remand and permissive abstention.

### A. The Effect On The Administration Of A Bankruptcy Estate

On page 30 of the Opening Brief, CHG asserted that remand would not have any effect on an existing bankruptcy estate (since CHG's bankruptcy estate has now closed), which therefore militates decisively in favor of remand.  On page 17 of the Opposition, Defendants respond by arguing that "closure of a bankruptcy case . . . does not deny the court power to hear claims that arise from that case."  This argument fundamentally misses the point.  Equitable remand and discretionary abstention are not founded upon a court not having subject matter jurisdiction or the power to hear a matter.  Indeed, resorting to equitable remand and discretionary abstention necessarily assumes that a court does have such jurisdiction and power.  As such, Defendants'

argument on this point fails at the outset.  Notably, Defendants do not (and cannot) deny in their Opposition either: (i) that the absence of any potential effect on an existing bankruptcy estate decisively favors remand under the relevant standards of equitable remand and discretionary abstention; or (ii) that in this particular case, no such potential effect can exist, since CHG's bankruptcy estate has closed and therefore no longer exists.  Accordingly, Defendants essentially concede that this factor favors CHG.[9]

**B. The Extent To Which Issues Of State Law Predominate**

On pages 30-31 of the Opening Brief, CHG demonstrates that issues of state law predominate in this case, noting, inter alia, that each of CHG's claims for breach of contract, breach of fiduciary duty and negligence, as well as Defendants' anticipated statute of limitations defense, arises exclusively under District of Columbia local law.  On page 18 of their Opposition, Defendants contend that "It is inaccurate . . . to say that state law issues predominate," since (according to Defendants) "the alleged facts occurred during CHG's bankruptcy," and "all of [CHG's] claims arise in the bankruptcy context."

Defendants' response is notable in what it *doesn't* say.  Defendants do not (and cannot) dispute CHG's basic point that District of Columbia law applies exclusively to each of CHG's claims, and to Defendants' statute of limitations defense.  Moreover, Defendants fail to explain how (if at all) the assertion that CHG's "claims arise in the bankruptcy context" has any bearing whatsoever on the incontrovertible reality that the District of Columbia substantive law controls all of the Plaintiff's causes of action.  The relevant issue for this factor is not the "context" or environment within which a claim arises (whatever that is supposed to mean), but rather the law

---

[9] On page 17 of the Opposition, Defendants also cite to Grausz  supra and In re: Taylor, 216 B.R. 515 (Bankr. E.D. Pa. 1998), ostensibly in support of the contention that the "effect on bankruptcy estate" factor favors Defendants. This argument is utterly misplaced, as  Taylor and Grausz involved jurisdictional issues, rather than issues of equitable remand or abstention.

applicable to the matters at issue. Since Defendants do not dispute that District of Columbia law applies to the claims at issue, their conclusory statement that "It is inaccurate, therefore, to say that state law issues predominate" is nothing more than a conclusory statement bereft of an underlying factual basis. Thus, Defendants essentially concede that this factor favors CHG.[10]

### C. The Difficulty Or Unsettled Nature Of State Law

On page 31 of the Opening Brief, CHG demonstrates that there may be certain unsettled issues of state law pertaining, <u>inter alia</u>, to whether, under District of Columbia law, the "discovery rule" tolling the statute of limitations applies to legal malpractice cases sounding in contract law. On page 18 of their Opposition, Defendants decline to address this factor. Therefore, that this factor militates in favor of CHG has basically been conceded by Defendants.

### D. Principles Of Comity

On page 32 of the Opening Brief, CHG established that principles of comity weigh in favor of equitable remand. In their Opposition, Defendants fail to address this factor to any extent whatsoever. Accordingly, this factor has likewise been conceded by Defendants.

Defendants' silence on this factor is notable, given that the comity factor weighs so heavily in favor of CHG. <u>See</u>, <u>Wilson v. Alfa Companies</u>, 207 B.R. 241, 1996 Bankr. LEXIS 1871 at *27 (Bankr. N.D. Ala. 1996) (In a post bankruptcy petition lender liability case brought under state law theories by borrowers/debtors against a lender/creditor, arising out of a pre-petition credit transaction, the Bankruptcy Court remanded the case to its initial state-court forum on §1452(b) grounds. The Court specifically determined that the comity factor weighed in favor of remand,

---

[10] In support of their argument that issues of state law are not predominant, Defendants cite to pages 930-31 of the <u>Southmark</u> decision wherein the Court held that "That Southmark's claims . . . arose under state law does not prevent them from involving core jurisdiction." Defendants once again fail to recognize the distinction between a lack of subject matter jurisdiction under § 1334(b), and the non-jurisdictional doctrines of equitable remand and permissive abstention. To reiterate, equitable remand and abstention do not require a determination by the adjudicating court that it is lacking in §1334(b) subject matter jurisdiction (indeed, if a court lacks §1334(b) subject matter jurisdiction, it would have no need to resort to equitable remand or abstention). Accordingly, the foregoing statement from <u>Southmark</u> simply has no bearing on the pertinent analysis.

noting that "But for the Wilsons' closed Chapter 7 bankruptcy, this lawsuit could not have found its way into the federal court system. It involves only claims under state law and there is no base of federal subject matter jurisdiction independent of the bankruptcy case. Bankruptcy courts as a rule should use restraint in retaining such lawsuits…").[11]

As demonstrated throughout the Opening Brief and in this Reply, the case at bar is, in all fundamental respects, a local District of Columbia case involving local zoning law and practice. All substantive aspects of this case will be decided under District of Columbia local law, with the possible exception of Defendants' res judicata defense (the alleged existence of which is, under the Supreme Court's express holding in Rivet, a per se insufficient basis for a federal court to exercise jurisdiction over a case). CHG maintains its principal place of business in the District of Columbia. So do each of the Defendants. The claims at issue relate to the professional responsibility of attorneys practicing zoning law in the District of Columbia, and their adjudication will undoubtedly require interpretation of both the D.C. Rules of Professional Responsibility and the D.C. zoning regulations. Simply stated, if ever there were a case in which comity and the principles of federalism which undergird it weighed heavily in favor of equitable remand, the instant case is it.

**E. Plaintiff's Jury Trial Right**

On pages 33-34 of the Opening Brief, CHG established that in applying the factors relevant to equitable remand, courts have often focused upon safeguarding any right a plaintiff may have to a jury trial as to state law claims, and have determined, in the specific context of professional malpractice claims, that where the denial of remand would result in the deprivation of a jury trial right to which the plaintiff would otherwise be entitled under state law, equitable remand is

---

[11] See also, Poole v. American Intern. Group, Inc., 414 F.Supp. 2d 1111, 1114 (M.D. Ala. 2006), in which the Court held (albeit in the context of rejecting "related to" jurisdiction under § 1334(b)), that "A federal court may hear a case only if it is authorized to do so by federal law . . . The removal statute must be strictly construed because it raises **significant federalism concerns**.") (emphasis added).

appropriate.  <u>See</u>, e.g., <u>In Re: Merry-Go-Round</u>, at page 258.  CHG also noted that Defendants are expected to dispute Plaintiff's entitlement to a jury trial before this Court.

In response, on page 21 of the Opposition, Defendants gingerly avoid the issue of whether they will or will not contest CHG's right to a jury trial.  Accordingly, in the absence of Defendants' unambiguous assertion that they would consent to a jury trial before this Court, the interest in preserving CHG's jury trial right remains extant and militates decisively in favor of remand or discretionary abstention.

### F. The Degree Of Relatedness To The Proceedings In The Main Bankruptcy Case

As discussed on page 34 of the Opening Brief, this factor also supports CHG, since, among other things: (i) CHG's bankruptcy estate has closed due to the closing of the underlying Bankruptcy Case; and (ii) Defendants' malpractice is alleged to have occurred in the course of the Zoning Representation, <u>not</u> the Bankruptcy Case.  In response, Defendants, on page 19 of their Opposition: (i) maintain that "The Bankruptcy Court approved all of the fees and the retention application in this case"; and (ii) cite once again to <u>Southmark</u> and <u>Geruschat</u>.  In rebuttal, CHG reiterates that it is <u>not</u> seeking disgorgement of any fees awarded to Defendants in the Bankruptcy Case (which is evident upon a cursory glance at CHG's Complaint).  With respect to Defendants' reliance upon <u>Southmark</u> and <u>Geruschat</u>, CHG notes that these decisions principally involved an assessment of § 1334(b) jurisdiction, <u>not</u> considerations of the factors supporting equitable remand or mandatory abstention.[12]  CHG also refers the Court to its earlier discussion at Sections I.C.2.a. and C.2.b. <u>supra</u>, where it has thoroughly distinguished <u>Southmark</u>  and <u>Geruschat</u> on their facts.

### G. The Presence Of Related Proceedings In State Court

---

[12] While <u>Geruschat</u> contained some discussion of these doctrines, this discussion was strictly in the context of determining the scope of appellate review.

As noted on page 37 of the Opening Brief, but for its removal to this Court, the case <u>sub judice</u> would presently be adjudicated in the underlying action before the D.C. Superior Court. It is undisputed that both CHG's claims, and Defendants' defenses, could be efficiently litigated before the Superior Court. As such, this factor favors CHG.

### H. Jurisdictional Basis Other Than 28 U.S.C. § 1334

Defendants, on page 19 of their Opposition, concede that there is no basis for this Court to retain jurisdiction apart from 28 U.S.C. § 1334.

### I. Substance Rather Than Form Of An Asserted Core Proceeding

On page 37 of the Opening Brief, CHG maintained that this case is substantively a state law proceeding, since it is based exclusively on state law causes of action (as further discussed above). On page 19 of the Opposition, Defendants note that their retention was "court approved", but fail to explain how this fact, *in and of itself*, is sufficient to outweigh the (uncontested) fact that the vast majority of the issues relevant to this case will be decided under District of Columbia local law, insofar as CHG has pleaded only local law causes of action.

Defendants also quote to <u>Southmark</u> and <u>Walsh</u> in support of the claim that this case is substantively a bankruptcy matter. Once again, Defendants' reliance upon <u>Southmark</u> and <u>Walsh</u> is misplaced, as the portions of these opinions to which Defendants cite related to the adjudicating court's *jurisdiction*, <u>not</u> the propriety of equitable remand under §1452(b) or abstention under § 1334(c). Additionally, there are fundamental and pervasive factual distinctions between this case and <u>Southmark</u> and <u>Walsh</u>, as discussed in Sections I.C.2.b. and e., <u>supra</u>.

### J. Severing State Law Claims From Core Bankruptcy Matters

On page 20 of their Opposition, Defendants argue that "CHG's state law claims are 'inseparable' from its bankruptcy proceeding." However, the only fact cited in support of this

conclusion is the Bankruptcy Court's approval of Defendants' retention *in the Bankruptcy Case*. While CHG concedes that such approval authorized Defendants to likewise represent CHG in the Zoning Representation, this fact, by itself, falls far short of demonstrating that CHG's state law claims are *inseparable* from core bankruptcy mattes, as Defendants contend. In fact, nothing can be more utterly attenuated from a "core" bankruptcy matter than a civil action brought long after a bankruptcy plan is confirmed, a final decree is entered and the Chapter 11 case is closed.

### K. Burden On This Court's Remaining Docket

On page 20 of the Opposition, Defendants claim that this case will not place any "unusual burden" on this Court's docket, because this Court previously adjudicated fee disputes between CHG and Defendants during the course of the Bankruptcy Case. This argument is misleading. The prior dispute between CHG and Defendants before this Court related principally to the question of whether Defendants and CHG had entered into a binding settlement and compromise with respect to the amount of fees allegedly owed by CHG to Defendants, the issue of Defendants' malpractice in the Zoning Representation was not litigated in any respect (indeed, CHG was not even aware of any of the facts underlying Defendants' malpractice until the Spring of 2005, long after the settlement issue had been conclusively litigated). Accordingly, despite Defendants' contention to the contrary, this Court is not already familiar with the pertinent facts and legal issues in this case, which relate to the Zoning Representation. Moreover, as noted on page 38 of the Opening Brief, it is anticipated that this complex case (involving, among other things, technical issues of zoning and professional responsibility) will be vigorously litigated by the parties (which has already been borne out by the procedural history of this case to date). For each of these reasons, the instant case may impose a burden on this Court's docket.

### L. Likelihood Of Forum Shopping

As noted on page 38 of the Opening Brief, CHG believes that Defendants removed this case from the D.C. Superior Court to this Court in an effort to deprive CHG of the jury trial to which it would be entitled as a matter of course under D.C. law.  On page 20 of their Opposition, Defendants respond that they removed this case: (i) "because of the Court's familiarity of [sic.] the facts and legal issues specific to the case;" and (ii) "because the allegedly defective professional services were rendered in the Bankruptcy Court, pursuant to a Bankruptcy-Court approved engagement"  With respect to the first point, CHG reiterates that because this case involves malpractice committed by Defendants *in the course of the Zoning Representation, not the Bankruptcy Case*, and since this Court has <u>not</u> previously adjudicated <u>any</u> legal <u>or</u> factual issue relating to malpractice arising out of the Zoning Representation, this Court has not been familiarized with the legal and factual issues pertinent to this case.  With respect to the second point, it appears that Defendants are "re-hashing" their <u>res</u> <u>judicata</u> argument.  Nonetheless, to the extent Defendants maintain that any prior decision of the Bankruptcy Court has <u>res</u> <u>judicata</u>  effect on the case <u>sub</u> <u>judice</u>, they would have ample opportunity to litigate this issue before the Superior Court, which is more than equipped to adjudicate such matters.[13]

Indeed, the competency of state courts to adjudicate federal <u>res</u> <u>judicata</u> defenses was the gravamen of the holding of the United States Supreme Court in <u>Rivet</u>.  <u>Id</u>., at page 478 ("In sum, claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b).  ***Such a defense is properly made in the state proceedings***, and the state courts' disposition of it is subject to this Court's ultimate review.") (emphasis added).  While the

---

[13] On page 20 of their Opposition, Defendants cite to a litany of "facts" extrinsic to the Complaint, in claiming that CHG's filing of this case with the D.C. Superior Court was itself motivated by forum-shopping.  For the reasons set forth in Section IB. above, CHG submits that it would be premature to address these extrinsic facts unless and until this Court determines that it has subject matter jurisdiction over this action.  This is not to say that CHG accepts the truth of Defendants' assertions.  In fact, CHG vehemently denies many of them.  These assertions will be rebutted in due course at the appropriate time.

<u>Rivet</u> decision was rendered in a jurisdictional context, its logic has equal force (if not more force) in the context of equitable remand/permissive abstention.

Accordingly, if this Court determines that subject matter jurisdiction exists in this case under § 1334(b), remand of this case would nevertheless be appropriate, under both the doctrine of equitable remand under § 1452(b), and the permissive abstention doctrine under § 1334(c).

## CONCLUSION

For each of the reasons set forth herein and in the Opening Brief, CHG respectfully requests that the instant Motion be granted under the remand provisions of 28 U.S.C. §§ 1447(c) and 1452(b), and/or under the discretionary abstention provision of § 1334 (c)(1) .  Alternatively, for the reasons set forth in page 36 of the Opening Brief, in the event this Court determines that its sole basis for subject matter jurisdiction is "related to" jurisdiction, mandatory abstention would be proper under § 1334(c)2.

Respectfully submitted,


By: _____/s/  Emil Hirsch_____
   Emil Hirsch (D.C. Bar No. 930478)
   Tamir Damari (D.C. Bar No. 455744)
   O'CONNOR & HANNAN, L.L.P.
   1666 K Street, N.W., Suite 500
   Washington, D.C.  20006-2803
   Email:ehirsch@oconnorhannan.com
    tdamari@oconnorhannan.com
   Phone:  (202) 887-1400
   Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on the 30th day of

November, 2007, via this Court's Notice of Electronic Filing, upon:

Jack McKay, Esq.
PILLSBURY WINTHROP SHAW PITTMAN, LLP
2300 N Street, N.W.
Washington, D.C.  20037

_____/s/_ Emil Hirsch_____

151782_1.DOC