## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITOL HILL GROUP,      ) | |
|      ) | |
| Plaintiff,      ) | |
|      ) | |
| vs.      ) | Civil No. 07-1936 (RCL) |
|      ) | |
| PILLSBURY WINTHROP      ) | |
| SHAW PITTMAN, LLP, et al.      ) | |
|      ) | |
| Defendants.      ) | |

**SUPPLEMENT TO PLAINTIFF'S MOTION FOR REMAND
PURSUANT TO 28 U.S.C. § 1447(c) AND 1452(b),
OR IN THE ALTERNATIVE ABSTENTION PURSUANT TO 1334(c)**

Plaintiff Capitol Hill Group ("Plaintiff"), by and through its undersigned counsel, hereby

files this Supplement to its Motion for Remand Pursuant to 28 U.S.C. § 1447(c) and 1452(b),

or in the Alternative Abstention Pursuant to 1334(c) (the "Motion"), and states as follows:

In connection with the Motion, Plaintiff respectfully requests that this Court consider the

following documents relating to the premises at issue herein, 700 Constitution Avenue NW,

Washington, DC (the "Premises"): (i) Order No. 15542 of the District of Columbia Board of Zoning

Adjustment (the "BZA"), dated August 16, 1991; and (ii) Order No. 16407 of the BZA, dated

October 21, 1999 and Amended BZA Order No. 16407, dated September 8, 2000.   These

documents (attached hereto as Exhibits 1 and 2 respectively), describe the history of the zoning

dispute between Plaintiff and the zoning authorities of the District of Columbia with regard to the

parking requirements for the Premises, and establish that the gravamen of this dispute *preceded* the

filing of Plaintiff's bankruptcy in February 2002 (the "Bankruptcy Case") by several years.

With respect to this same issue, Plaintiff also attaches as Exhibit 3 hereto BZA Order No.

17043; i.e., the Order dated February 24, 2004 and served upon Plaintiff on September 9, 2004, out

of which Plaintiff's claims arise in significant part.  (See, Plaintiff's Complaint, at ¶¶ 15-18 and

21).  In particular, Plaintiff directs the Court's attention to pages 1, 3, 4 and 6 of this Order, wherein

the BZA discussed the pre-existing zoning dispute between the D.C. government and the Plaintiff,

and specifically references BZA Order Nos. 15542 and 16407.

　　　These facts are directly pertinent to the Motion.  As noted in Plaintiff's Complaint, the

instant case stems from legal malpractice committed by Defendants during the course of their

representation of Plaintiff before the BZA in 2003-2004.   As discussed more fully in the parties'

memoranda relating to the Motion, Defendants' Opposition to the Motion is essentially rooted in the

contention that the instant zoning malpractice case "arises in" the Bankruptcy Case under 28 U.S.C.

§1334(b) because of the alleged interrelationship between these two cases.  However, the fact that

the zoning dispute between Plaintiff and the District of Columbia (ultimately culminating in

Defendants' malpractice) actually long preceded the filing of the Bankruptcy Case (as evidenced by

BZA Order Nos. 15542 and 16407) strongly militates against this contention. [1] Plaintiff submits that

when this fact is viewed in conjunction with the other facts and arguments proffered in Plaintiff's

Motion and Reply Memoranda, it follows, as a matter of course, that §1334(b) "arising in"

jurisdiction does not exist in this case.

　　　The submission of the foregoing documents should not be construed as a limitation or

waiver of any other arguments asserted in the Motion, including, but not limited to, the argument

that the four corners of the Plaintiff's Complaint do not set forth a basis for removal jurisdiction

under the so-called "well pleaded complaint rule."

---

[1] As noted in the Motion and Reply, the standard for determining whether "arising in" jurisdiction exists is whether the claim at issue is of a nature that could arise "only in bankruptcy cases and have no existence outside of the bankruptcy proceeding."  In Re: U.S. Office Products Co. Securities Litigation, 313 B.R. 73, 79 (D.D.C. 2004); see also, Atkinson v. Kestell, 954 F. Supp. 14, 16 (D.D.C. 1997), aff'd. sub nom.; 156 F. 3d 1335 (D.C. Cir. 1998); In Re: Barnes, 365 B.R. 1, 3 (Bankr. D.D.C. 2007); See also, Opening Brief, at pages 22-29; Reply Brief, at pages 2-7.

Respectfully submitted,

By: _____/s/ Emil Hirsch_____
Emil Hirsch (D.C. Bar No. 930478)
Tamir Damari (D.C. Bar No. 455744)
O'CONNOR & HANNAN, L.L.P.
1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
Email:ehirsch@oconnorhannan.com
tdamari@oconnorhannan.com
Phone: (202) 887-1400
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on the 20th day of

February, 2008, via this Court's Notice of Electronic Filing, upon:

Jack McKay, Esq.
PILLSBURY WINTHROP SHAW PITTMAN, LLP
2300 N Street, N.W.
Washington, D.C. 20037

_____/s/  Tamir Damari_____

151782_1.DOC

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



Application No. 15542 of Capitol Hill Hospital, pursuant to 11 DCMR 3108.1, for a special exception under Section 359 to establish a health care facility with 130 beds and 250 full-time staff, basement through sixth floors, in an R-5-C District at premises 708 Massachusetts Avenue, N.E. (Square 895, Lot 76).

HEARING DATE:      July 24, 1991
DECISION DATE:     July 24, 1991     (Bench Decision)

DISPOSITION:     The Board **GRANTED** the application by a vote of 3-0 (Charles R. Norris, Paula L. Jewell, and Carrie L. Thornhill to grant; Sheri M. Pruitt and William L. Ensign not present, not voting).

FINAL DATE OF ORDER:      August 16, 1991

ORDER

The Board granted the application by its order dated August 16, 1991, subject to five conditions. By letter dated February 14, 1992, counsel for the applicant filed a timely motion requesting the Board to approve modifications to the previously approved plans.

At its public meeting of March 4, 1992, the Board deferred consideration of the motion to afford Board members Pruitt and Clarens an opportunity to read the record and participate in the decision on the requirement for modification of plans.

The plans originally approved by the Board included the conversion of the dock which formerly provided ambulance access to the emergency room into an 800 square-foot enclosed solarium with ground level access to approximately 1,000 square feet of outdoor recreation space. The requested modification of plans is proposed to improve the design and appearance of the solarium and provide for handicapped access and flexibility in the use of space. The proposed modification of plans is summarized as follows:

1.   Delete the proposed greenhouse enclosure illustrated in the original concept sketches. Provide skylights.

2.   Provide for 800 square feet of enclosed lounge area for long term care patient use.

3.   Maintain a minimum clear width of 20 feet for two ambulance docks.

BZA APPLICATION NO.   15542
PAGE NO.   2

4.   Provide an enclosed outdoor deck of approximately 400 square feet adjacent to the patient lounge area.

5.   Provide for handicapped accessibility to all areas.

6.   Maintain existing canopy details in extension of canopy.

7.   Consider operable skylights with screens and remote controls.

8.   Provide for flexible use of space, one large group or two smaller groups, re-arrangable seating, etc.

9.   Consider sliding window units for summer operation.

The requested modification of plans does not alter the zoning relief originally granted by the Board.  There was no opposition to the proposed modification of plans.

Upon consideration of the motion, the record in the case, and its final order, the Board concludes that the proposed modifications are minor in nature and do not substantially alter the overall project as approved by the Board.  No additional zoning relief is required.  The material facts relied upon by the Board in approving the application are still relevant.  It is therefore ORDERED that the **MODIFICATION** of **PLANS** is hereby **APPROVED, SUBJECT** to the **CONDITION** that construction shall be modified as shown on the revised plans marked as Exhibit No. 32A of the record.  In all other respects the order of the Board dated March 8, 1992 shall remain in full force and effect.

DECISION DATE:      April 8, 1992


VOTE:     4-0   (Sheri M. Pruitt, Paula L. Jewell and Angel Clarens to approve; Carrie L. Thornhill to approve by proxy).


BY ORDER OF THE D.C. BOARD OF ZONING ADJUSTMENT

ATTESTED BY:    MADELIENE H. ROBINSON
                Acting Director


FINAL DATE OF ORDER:      APR 2 4 1992

BZA APPLICATION NO.  15542
PAGE NO.  3


PURSUANT TO D.C. CODE SEC. 1-2531 (1987), SECTION 267 OF D.C. LAW
2-38, THE HUMAN RIGHTS ACT OF 1977, THE APPLICANT IS REQUIRED TO
COMPLY FULLY WITH THE PROVISIONS OF D.C. LAW 2-38, AS AMENDED,
CODIFIED AS D.C. CODE, TITLE 1, CHAPTER  25 (1987), AND THIS ORDER
IS CONDITIONED UPON FULL COMPLIANCE WITH THOSE PROVISIONS.   THE
FAILURE OR REFUSAL OF APPLICANT TO COMPLY WITH ANY PROVISIONS OF
D.C. LAW 2-38, AS AMENDED, SHALL BE A PROPER BASIS FOR THE
REVOCATION OF THIS ORDER.

UNDER 11 DCMR 3103.1, "NO DECISION OR ORDER OF THE BOARD SHALL TAKE
EFFECT UNTIL TEN DAYS AFTER HAVING BECOME FINAL PURSUANT TO THE
SUPPLEMENTAL RULES OF PRACTICE AND PROCEDURE BEFORE THE BOARD OF
ZONING ADJUSTMENT."

THIS ORDER OF THE BOARD IS VALID FOR A PERIOD OF SIX MONTHS AFTER
THE EFFECTIVE DATE OF THIS ORDER, UNLESS WITHIN SUCH PERIOD AN
APPLICATION FOR A BUILDING PERMIT OR CERTIFICATE OF OCCUPANCY IS
FILED WITH THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.


15542Order/bhs

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



BZA APPLICATION NO.  15542

    As Acting Director of the Board of Zoning Adjustment, I hereby certify and attest to the fact that on ___APR 2 4 1992___ a copy of the order entered on that date in this matter was mailed postage prepaid to each party who appeared and participated in the public hearing concerning this matter, and who is listed below:

Phil Feola, Esquire
Linowes & Blocher
800 K Street, N.W.
Suite  840
Washington, D.C.  20001

Craig Lisk, Chairperson
Advisory Neighborhood Commission 6A
Maury School
13th & Constituation Avenue
Washington, D.C.  20002

MADELIENE H. ROBINSON
Acting Director

DATE: ___APR 2 4 1992___

15542Att/bhs

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



**Application No. 16407 of Capitol Hill Group** pursuant to 11 D.C.M.R.§ 3108.1 for a special exception under Section 359 for opening an additional 32 beds in an existing nursing facility at 700 Constitution Avenue, N.E. (Square 865, Lot 76).

**HEARING DATE:**  January 6, 1999
**DECISION DATE:**  February 3, 1999

### ORDER

### STATEMENT OF PROCEEDINGS AND EVIDENCE:

1.      The property that is the subject of this application is located at 700 Constitution Avenue, N.E. and fills most of square 865. The lot number is 76. The site is bounded by Constitution Avenue and Massachusetts Avenue on the south, 7th Street on the west, C Street on the north and 8th Street on the east. It immediately abuts St. James Church. The site is zoned R-5-D.

2.      The subject application was filed on September 23, 1998, on behalf of Capitol Hill Group d/b/a MedLINK Nursing Center at Capitol Hill ("Applicant" or "MedLINK") for a special exception pursuant to 11 D.C.M.R. § 3108.1. Specifically, Applicant requests approval under Section 359 for opening an additional 32 beds at its existing nursing facility located at the subject premises. On July 24, 1991, the Board of Zoning Adjustment ("Board" or "BZA"), in Application No. 15542, granted a special exception for the operation of 130 beds currently in service.[1] This application seeks a modification of that order, to permit an additional 32 beds.

3.      Under Section 359 of the Zoning Regulations (11 D.C.M.R.), the Board may approve a special exception for an additional 32 beds at Applicant's facility provided that Applicant meets the conditions specified at Section 3108 and Sections 358.2 through 358.7.

4.      Section 3108 provides that a special exception should be granted if the proposed project is in harmony with the Zone Plan and Zone Maps and is not likely to adversely affect the use of neighboring property.

5.      Sections 358.2 through 358.7 provide that a special exception should be granted if (1) no other property in the same square contains a community based residential facility for seven or more persons, (2) no other property within a radius of five hundred feet from any portion of the subject property contains a community based residential facility for seven or more persons, (3) adequate, appropriately located and screened off-street parking is provided to meet the needs of

---

[1]      The previous BZA case listed the facility's address as 708 Massachusetts Avenue.

BZA ORDER NO. 16407
PAGE NO. 2

occupants, employees and visitors to the facility, (4) Applicant's facility meets all applicable code and licensing requirements and (5) Applicant's facility will not have an adverse impact on the neighborhood due to traffic, noise, operations or the number of similar facilities in the area. Additionally, the Board may approve more than one community based residential facility in a square or within five hundred feet if the Board finds that the cumulative effect of the facilities will not have an adverse impact on the neighborhood because of traffic, noise or operations.

6.      A hearing on this matter was held on January 6, 1999. At the hearing, Ms. Linda Grigsby, Applicant's Director of External Affairs, testified that the subject site has long been used as a site for medical facilities, including the Capitol Hill Hospital, which operated with approximately 250 beds. Ms. Grigsby also explained that Applicant provides many community services, including flu shots, health screenings, wellness programs, healthy lifestyle courses and exercise classes. Ms. Grigsby stated that Applicant notifies area residents about the services through the MedLINK Newsletter which is sent to all mailing addresses within zip codes 20001, 20002 and 20003. The newsletter is also inserted into copies of the Washington Post. Ms. Grigsby further explained that Applicant's property is monitored daily to ensure that it is free of litter and Applicant's security personnel patrol the site every hour and a half.

7.      Additionally, Ms. Grigsby testified that Applicant permits parishioners from three nearby churches to park in Applicant's parking lots when parishioners attend church services or events. This includes parishioners from neighboring St. James Church with whom Applicant's predecessor entered into an agreement to provide parking in return for the closing of the alley that was located between the two properties. She testified that the hospital had been unaware of any dissatisfaction with the parking arrangement until immediately before a December 14, 1998, meeting of the Advisory Neighborhood Commission, when the pastor of St. James Church had sent a letter to that effect. Ms. Grigsby indicated that, since that time, the Chief Executive Officer of MedLINK had been attempting to set up a meeting to resolve the matter, but despite such efforts, had not been able to contact the pastor. Ms. Grigsby also stated that many of Applicant's employees rely on public transportation rather than drive vehicles to work.

8.      Mr. John Lunsford, Applicant's General Counsel, testified that adding 32 beds to Applicant's operations would bring the total up to 162 beds, which is the number permitted by Applicant's Certificate of Need as issued by the State Health Planning and Development Agency ("SHPDA"). Additionally, Mr. Lunsford stated that Applicant currently has a waiting list of patients seeking care from its facility and that many of its patients rely on Medicare and Medicaid to obtain such care.

9.      Mr. Lunsford further testified that Applicant anticipates hiring only 40 additional employees, spread out over three shifts per day, to accommodate patients assigned to the additional 32 beds. This increase in employees is small compared to the existing staff of 302 employees at the facility, the majority of which are residents of the District of Columbia. Additionally, since many of the employees rely on public transportation, there should not be any adverse impact on traffic.

BZA ORDER NO. 16407
PAGE NO. 3

10.    Mr. Lunsford also stated that Applicant planned to open an underground garage that will add 144 parking spaces to the existing 132 for a total of 276, which will be more than enough parking spaces to serve employees, doctors and visitors.[2]

11.    Ms. Ellen McCarthy, an expert in land use and urban planning, testified on behalf of Applicant. Ms. McCarthy explained that an increase of 32 beds at Applicant's facility constituted a minor change and would meet an important community need for long-term care services. In fact, Ms. McCarthy pointed out that a change from 130 to 162 beds represented less than a 25% increase in patients and is consistent with Applicant's Certificate of Need. Ms. McCarthy also stated that a large percent of the individuals receiving health care from Applicant depend on Medicare and Medicaid in order to obtain such care.

12.    According to Ms. McCarthy, adding 32 beds to Applicant's facility would not adversely impact adjacent property owners. Specifically, there is a long history of hospital use at the subject site. Moreover, Capitol Hill Hospital, the previous hospital at the site, involved a greater intensity of use than that proposed by Applicant, since it had operated with up to 250 beds and was an acute care facility. Ms. McCarthy also testified that adding 32 beds would have no impact on the residential character of the neighborhood since Applicant's proposal required no increase in the physical size of the facility or modification to the exterior of the structure. Moreover, the proposed use is, in fact, a residential use of the property.

13.    Additionally, Ms. McCarthy stated that adding 32 beds to the facility would not adversely impact traffic or parking in the neighborhood. According to Ms. McCarthy, skilled nursing care facilities generate low amounts of traffic, and with the increase in staff at only 40 positions spread over three shifts per day there would only be 140 to 150 employees at the site at any given time. Ms. McCarthy concluded that the 276 parking spaces would be more than enough to accommodate the facility's employees and visitors. Ms. McCarthy also explained that the underground parking facility had not been used to date because there had been no requirement for the additional parking spaces. She stated that ample parking had been provided continuously for Applicant's employees and visitors and that area residents had never complained about such employees or visitors parking on the street or using scarce public parking spaces.

---

[2]    Mr. Lunsford also explained that even though Applicant has not complied with the Board's 1991 order directing Applicant to provide 176 parking spaces, Applicant has continuously provided ample parking to serve the needs of employees, residents, visitors and parishioners. Mr. Lunsford further stated that the underground garage would be open by February 1, 1999. Additionally, in accordance with the Board's request, a certificate of occupancy for the garage was filed with the Office of the Board of Zoning Adjustment on January 15, 1999. Prior to that date, Applicant had no authorization from the District of Columbia Government to utilize the garage.

14.    Ms. McCarthy also testified that adding 32 beds to Applicant's facility would not adversely impact the integrity of the Zone Plan.  She pointed out that, under the Zoning Regulations, a hospital, sanitarium or clinic is permitted as a matter of right in more restrictive R-4 zones.  Ms. McCarthy added that a special exception will not even be required for a community based residential facility if a proposed Zoning Commission rule is approved and adopted. Additionally, there are no other residential uses on Square 865.  Ms. McCarthy further testified that the Generalized Land Use Map designates the subject site as moderate density residential and it is immediately adjacent to a mixed-use, moderate density residential / low density commercial area along 8th Street, N.E.

15.    Ms. McCarthy also outlined Applicant's efforts to discuss any concerns that area residents may have had regarding Applicant's request for a special exception.  For instance, Ms. McCarthy explained that Applicant's representatives addressed three meetings held by Advisory Neighborhood Commission ("ANC") 6A.  These meetings were held on November 5, December 3 and December 14, 1998.  Ms. McCarthy also described Applicant's efforts to share information regarding the proposal with the Stanton Park community organization and Ward 6 Council member, Ms. Ambrose.

16.    ANC 6A submitted a letter to the Board which indicated that its Zoning and Licensing Committee had unanimously agreed to support the application, with three conditions, at its December 14 meeting.  Because the ANC had no quorum, it could not officially adopt the committee's recommendation.

17.    At the hearing, commissioners from ANC 6A testified that the ANC supported the Application.  Its conditions included continued availability of parking spaces for St. James parishioners and assurances that Applicant would continue to empty its exterior trash barrels regularly. Commissioners Daniel Pernell and Gregory Ferrell acknowledged that they were present at a December 14, 1998, meeting held by the ANC 6A Zoning and Licensing Committee and that during the meeting the committee unanimously approved Commissioner Pernell's motion  to endorse Applicant's request for a special exception.

18.    Ms. Karen Wirt, a neighborhood resident and former Commissioner of ANC 6A, testified in support of Applicant.  Ms. Wirt stated that Applicant has been a good neighbor to the area residents, provided many services to the community and maintained its property.  She also stated that Applicant provided a vital service by operating a long-term care facility and should be allowed to add 32 beds to its operations.

19.    Two neighbors appeared in opposition to the application.  Although he did not complain specifically about any litter or unsafe conditions at the subject site, Mr. Ronald Nelson stated that he has never personally witnessed trash pick-up or security patrols.  Mr. Nelson also stated that he has never seen any publications regarding the exercise and health programs that Applicant

BZA ORDER NO. 16407
PAGE NO. 5

offers to area residents. Mr. William Silagi was concerned that Applicant had not provided the number of parking spaces required under the 1991 Board order and that Applicant had inadvertently operated for a short period with a few more beds than was permitted under the 1991 order.

## PROPOSED FINDINGS OF FACT:

1.  Applicant has previously been granted a special exception under Section 359 to establish a health care facility with 130 beds at the subject premises.

2.  Applicant must obtain a special exception to add 32 beds to its existing health care facility.

3.  Increasing the number of beds will not require any changes to the exterior of the structure or increase the physical size of the facility.

4.  No other property in the same square as Applicant's facility contains a community based residential facility of seven or more persons.

5.  No known property within a radius of five hundred feet from any portion of Applicant's facility contains a community based residential facility for seven or more persons.

6.  Applicant is providing adequate, appropriately located and screened off-street parking for the needs of occupants, employees and visitors to the facility.

7.  Applicant's facility meets all applicable code and licensing requirements.

8.  Applicant's facility will not have an adverse impact on the neighborhood due to traffic, noise, operations or the number of similar facilities in the area.

9.  The addition of 32 beds to Applicant's facility is in harmony with the Zone Plan and Zone Maps and is not likely to adversely affect the use of neighboring property.

## CONCLUSIONS OF LAW AND OPINION:

Applicant seeks a special exception in order to add 32 beds to its existing nursing facility at 700 Constitution Avenue, N.E. The Zoning Regulations provide that the Board may grant special exceptions as follows:

Pursuant to authority contained in the Zoning Act of June 20, 1938 (52 Stat. 797), as amended, the Board is authorized to grant special exceptions, as provided in this title where, in the judgement of the Board, those special exceptions will be in harmony with the general

BZA ORDER NO. 16407
PAGE NO. 6

purpose and intent of the Zoning Regulations and Maps and will not tend to affect adversely the use of neighboring property in accordance with the Zoning Regulations and Zoning Maps, subject in each case to the special conditions specified in title 11 D.C.M.R. § 3108.1

Therefore, the Board's discretion in deciding Applicant's request for a special exception is limited to determining whether Applicant's request complies with the requirements enumerated in the particular regulation pursuant to which the exception is sought. If Applicant has met its burden, the Board ordinarily must grant the application. *First Baptist Church of Washington v. District of Columbia Board of Zoning Adjustment*, 432 A.2d 695, 698 (D.C. 1981); *Stewart v. District of Columbia Board of Zoning Adjustment*, 305 A.2d 516, 518 (D.C. 1973).

MedLINK thus has the burden of demonstrating that its request addresses the issues set forth at sections 359 and 3108.1 of the Zoning Regulations. Generally, MedLINK must show that (1) the use, height, bulk, and design are in harmony with existing uses and structures on neighboring property; (2) ample parking space is provided; and (3) the use will not create dangerous or other objectionable traffic conditions.

Based on the testimony and evidence presented at the hearing, MedLINK has met its burden. Adding 32 beds at its nursing facility will not change the use, height, bulk or design of the structure, which was previously approved by the Board in 1991. Moreover, Applicant's parking facilities provide ample parking spaces for occupants, employees and visitors and the proposal will not create dangerous or other objectionable traffic conditions. The Board has further determined that Applicant's request complies with the requirements enumerated at section 359.

The proposed expansion of the facility is also consistent with the Zoning Regulations and the Zoning Map. Hospitals are permitted as a matter of right, not only in R-5-D districts, but in more restrictive R-4 districts as well. It is only because the nursing facility in this matter is considered a community-based residential facility that a special exception is required. More importantly, however, Applicant's proposed use is a residential use and it is consistent with the site's zoning. Additionally, the increase in the number of nursing facility beds meets an important need in the District as it provides long-term care to those who require it. The facility is also accessible to those who must depend financially on either Medicare or Medicaid, and as there is a waiting list at the facility, the expansion will enable Applicant to serve those who are waiting for such care.

The Applicant has also demonstrated that the increase in beds will not adversely affect the neighborhood. Special exceptions are expressly provided for in the Zoning Regulations, *see Stewart, supra*, 305 A.2d at 518, and the Board's function in this instance is simply to determine whether a reasonable accommodation has been made between Applicant and the neighbors, which does not interfere with the legitimate interests of the latter. *Glenbrook Road v. District of Columbia Board of Zoning Adjustment*, 605 A.2d 22, 32 (D.C. 1992), *citing Cornell University v. Bagnardi*, 68 N.Y.2d 583, 589, 503 N.E.2d 509, 511, 510 N.Y.S.2d 861, 866 (1986).

BZA ORDER NO. 16407
PAGE NO. 7

The Zoning Regulations require only that Applicant demonstrate that it is not *likely* that the proposed expansion of service will make the facility objectionable to neighboring properties. Further, the Board may grant a special exception for health care facilities in residential and special purpose districts "where in the judgment of the Board, those special exceptions will be in harmony with the general purpose and intent of the zoning regulations and maps and will not tend to affect adversely the use of neighboring property...." *Levy v. Board of Zoning Adjustment,* 570 A.2d 739, 742 (D.C. 1990) (quoting 11 D.C.M.R. § 3108.1). *See Rose Lees Hardy Home and School Association v. District of Columbia Board of Zoning Adjustment,* 324 A.2d 701, 706 (D.C. 1974). "[T]he applicant is not charged with considering every option that any party in opposition might conceptualize...." *Don't Tear It Down, Inc. v. District of Columbia Dept. of Housing and Community Dev.,* 428 A.2d 369, 379 (D.C. 1981).

The proposal by MedLINK accommodates the reasonable concerns of the residents and otherwise meets the requirements for a special exception. Many or most of those who own property neighboring the facility agree with MedLINK.

The only areas which might have the potential to provide an adverse impact are parking and traffic disruption. No increase in the physical size of the facility and no modification to the exterior of the structure will occur. As to the issue of traffic, since all of the increased beds are nursing facility beds the patients are not expected to be driving motor vehicles. Moreover, the addition of 40 full-time employees will generate only a nominal increase in traffic, especially since a large number of employees use public transportation.

With regard to parking, MedLINK's parking facilities, providing a total of 276 parking spaces, is more than adequate to serve the needs of the facility's occupants, employees and visitors.

Based upon the record before the Board, the Board finds that Applicant has met the burden of proof, pursuant to 11 D.C.M.R. 3108, and that the requested relief can be granted as being in harmony with the general purpose and intent of the Zoning Regulations and Zoning Map. The Board further finds that granting the requested relief will not tend to affect adversely the use of neighboring property in accordance with the Zoning Regulations and Zoning Map. It is therefore **ORDERED** that the application be **GRANTED, SUBJECT** to the following **CONDITIONS:**

1.    Approval shall be for a period of ten years from the final date of this order.

2.    The Applicant must provide 162 beds.

3.    The number of employees shall not exceed 340.

4.    The Applicant must provide 276 off-street parking spaces.

BZA ORDER NO. 16407
PAGE NO. 8

    5.     The Applicant must meet four (4) times per year with ANC 6A and other concerned neighbors.

    6.     The Applicant must keep the subject site and surrounding property clear of trash as needed.

**VOTE:**    **3-0**    (Betty King, Sheila Cross Reid and Jerry Gilreath to grant).

**BY ORDER OF THE D.C. BOARD OF ZONING ADJUSTMENT**

ATTESTED BY:

JERRILY R. KRESS, FAIA
Director

Final Date of Order:    OCT 2 1 1999

PURSUANT TO D.C. CODE SEC. 1-2531 (1987), SECTION 267 OF D.C. LAW 2-38, THE HUMAN RIGHTS ACT OF 1977, THE APPLICANT IS REQUIRED TO COMPLY FULLY WITH THE PROVISIONS OF D.C. LAW 2-38, AS AMENDED, CODIFIED AS D.C. CODE, TITLE 1, CHAPTER 25 (1987), AND THIS ORDER IS CONDITIONED UPON FULL COMPLIANCE WITH THOSE PROVISIONS. THE FAILURE OR REFUSAL OF APPLICANT TO COMPLY WITH ANY PROVISIONS OF D.C. LAW 2-38, AS AMENDED, SHALL BE A PROPER BASIS FOR THE REVOCATION OF THIS ORDER.

UNDER 11 DCMR SUBSECTION 3103.1, "NO DECISION OR ORDER OF THE BOARD SHALL TAKE EFFECT UNTIL TEN DAYS AFTER HAVING BECOME FINAL PURSUANT TO THE SUPPLEMENTAL RULES OF PRACTICE AND PROCEDURE BEFORE THE BOARD OF ZONING ADJUSTMENT.

THIS ORDER OF THE BOARD IS VALID FOR A PERIOD OF TWO YEARS AFTER THE EFFECTIVE DATE OF THIS ORDER, UNLESS WITHIN SUCH PERIOD AN APPLICATION FOR A BUILDING PERMIT OR CERTIFICATE OF OCCUPANCY IS FILED WITH THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.

ord16407/POH

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



**BZA APPLICATION NO.: 16407**

As Director of the Office of Zoning, I certify and attest that on ___OCT 2 1 1999___ a copy of the order entered on that date in this matter was mailed first class, postage prepaid to each party who appeared and participated in the public hearing concerning this matter, and who is listed below:

Richard B. Nettler, Esquire
1801 K Street, NW, Suite 1200
Washington. D.C. 20006

Daniel M. Pernell, III, Chairperson
Advisory Neighborhood Commission 6A
St. James Parish Church
1132 4th Street, NE
Washington, D.C. 20002

Linda M. Grigsby, Director of External Affairs
MedLINK Nursing Center at Capitol Hill
700 Constitution Avenue, NE
Washington, D.C. 20002

Attested by: _____

JERRILY R. KRESS, FAIA
Director

Date: ___OCT 2 1 1999___

Attest/O-16407 /POH

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



**Application No. 16407 of Capitol Hill Group** pursuant to 11 D.C.M.R.§ 3108.1 (new 3104.1) for a special exception under Section 359 for opening an additional 32 beds in an existing nursing facility at 700 Constitution Avenue, N.E. (Square 865, Lot 76).

**HEARING DATE:**   January 6, 1999

**DECISION DATE:**   February 3,1999

**DISPOSITION:**   The Board granted the Application for an additional 32 beds with conditions for an existing nursing facility at 700 Constitution Avenue, N.E. (Square 865, Lot 76) by a vote of 5-0 (~~Carol J. Mitten, Robert N. Sockwell, Rodney L. Moulden, and Anne M. Renshaw, to grant, and Sheila Cross Reid~~, to grant, ~~by proxy~~). *TO GRANT.*
BETTY KING, JERRY GILRETTH AND SHEILA CROSS REID

**FINAL DATE OF ORDER:**  October 21, 1999.

## ORDER ON REQUEST FOR MODIFICATION

This Decision and Order arises from a request from the Capitol Hill Group for a Modification of the Board of Zoning Adjustment (BZA) Order No. 16407.

## PROCEDURAL MATTERS

The property that is the subject of this application is Lot 76, in Square 865, located at 700 Constitution Avenue, N.E. The subject lot occupies most of Square 865. The site is bounded by Constitution and Massachusetts Avenues on the south, 7th Street on the west, C Street on the north, and 8th Street on the east. It abuts St. James Church. It is zoned R-5-D.

On July 24, 1991, BZA, in Application No. 15542 granted a special exception for the operation of a 130 bed nursing facility. On September 23, 1998, the applicant, Capitol Hill Group, d/b/a MedLINK Nursing Center at Capitol Hill, filed an Application for a special exception pursuant to 11 DCMR § 3108.1. The Application requested approval under Section 359 for an additional 32 beds at its existing nursing facility located at the subject premises.

By BZA Order No. 16407, which became final on October 21, 1999, the Board granted approval for the additional 32 beds for the nursing facility bringing the total number of

BZA ORDER NO. 16407-A
APPLICATION NO. 16407
PAGE NO. 2

beds for the facility from 130 to 162 beds. The approval was subject to the following
conditions:

1.    Approval shall be for a period of ten years from the final date of this Order;

2.    The Applicant must provide 162 beds;

3.    The number of employees shall not exceed 340;

4.    The Applicant must provide 276 off-street parking spaces;

5.    The Applicant must meet four (4) times per year with ANC 6A and other
      concerned neighbors; and

6.    The Applicant must keep the subject site and surrounding property clear of
      trash as needed.

In a letter dated April 21, 2000, the Applicant requested a modification to Condition No.
4 of BZA Order No.16407 and the legal description of the subject site. The requested
modification sought to reduce the number of parking spaces approved in Condition No. 4
from 276 off-street parking spaces to 200 off-street parking spaces and to reflect that the
Square for which the relief was sought was Square 895, not, Square 865.

At its public meeting on June 7, 2000, the Board reviewed and discussed the record of the
case and the modification request. The Board finds as follows:

1.    The 276 off- street parking spaces provided were actually greater than the
      number of parking spaces required for the facility.

2.    The actual number of parking spaces required for a 162-bed nursing facility is
      162 parking spaces. The Applicant far exceeded the requirement.

3.    Advisory Neighborhood Commission (ANC) 6A, which testified at the initial
      public hearing in Case No. 16407 and supported the application with three
      conditions which included availability of parking spaces for St. James
      parishioners and assurances that the Applicant would continue to empty its
      exterior trash containers regularly was notified of the modification request.
      The ANC has not indicated that it has any issue with this modification request.

4.    The Board noted that the use of the facility is far less intensive than the
      original hospital use, which had over 700 patients and other issues that would
      have made it more active and that would have had an intrusive impact on the
      community around it.

BZA ORDER NO. 16407-A
APPLICATION NO. 16407
PAGE NO. 3

Based on the above findings the Board concludes that granting the modification is in harmony with the general purpose of the Zoning Regulations and Zoning Map. The Board also finds that the modification will not adversely affect the neighboring or adjacent properties or change the material facts the Board relied upon in approving the application subject to conditions. Accordingly, the Board **ORDERED** that the **Parking Space** requirement in BZA Order No. 16407, be reduced from **276 spaces to 200**, and the legal description of the **site** to reflect **Square 895**, instead of Square 865.

**VOTE:**     5-0     (Carol J. Mitten, Robert N. Sockwell, Rodney L. Moulden, and Anne M. Renshaw, to grant, and Sheila Cross Reid, to grant, by proxy).

**BY ORDER OF THE D.C. BOARD OF ZONING ADJUSTMENT.**

Attested By: _Jerrily R. Kress_
Jerrily R. Kress, Director

**FINAL DATE OF ORDER:** ___SEP   8 2000___

PURSUANT TO D.C. CODE SEC. 1-2531 (1999), SECTION 267 OF D.C. LAW 2-38, THE HUMAN RIGHTS ACT OF 1977, THE APPLICANT IS REQUIRED TO COMPLY FULLY WITH THE PROVISIONS OF D.C. LAW 2-38, AS AMENDED, CODIFIED AS D.C. CODE, TITLE 1, CHAPTER 25 (1999), AND THIS ORDER IS CONDITIONED UPON FULL COMPLIANCE WITH THOSE PROVISIONS. THE FAILURE OR REFUSAL OF APPLICANT TO COMPLY WITH ANY PROVISIONS OF D.C. LAW 2-38, AS AMENDED, SHALL BE A PROPER BASIS FOR THE REVOCATION OF THIS ORDER.

UNDER 11 DCMR 3103.1 (new subsection 3125.9) NO DECISION OR ORDER OF THE BOARD SHALL TAKE EFFECT UNTIL TEN DAYS AFTER HAVING BECOMES FINAL PURSUANT SUBSECTION 3125.6.

THIS ORDER OF THE BOARD IS VALID FOR A PERIOD OF SIX MONTHS AFTER THE EFFECTIVE DATE OF THIS ORDER, UNLESS THE USE IS ESTABLISHED WITHIN SUCH PERIOD.

BZA16407-A/VCE

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



## BZA APPLICATION NO. 16407-A

SEP 8 2000 As Director of the Office of Zoning, I hereby certify and attest that on _____ a copy of the order (No. 16407-A) entered on that date in this matter before the Board of Zoning Adjustment was mailed first class, postage prepaid, to each party who appeared and participated in the public hearing concerning this matter, and who is listed below:

Daniel M. Pernell, III, Chairperson
Advisory Neighborhood Commission 6A
St. James Parish Church
1132 4th Street, N.E.
Washington, D. C. 20002

Linda M. Grigsby, Director of External Affairs
MedLINK Nursing Center at Capitol Hill
700 Constitution Avenue, NE
Washington, D.C. 20002

Richard B. Nettler, Esquire
Robins, Kaplan, Miller, & Ciresi, LLP, Suite 1200
1801 K Street, N.W,
Washington, D.C. 20006 - 1301

Michael Johnson, Zoning Administrator
Department of Consumer & Regulatory Affairs
941 North Capitol Street, N.E., Suite 2000
Washington, D. C. 20002

ATTESTED BY: _____
JERRILY R. KRESS, FAIA
Director

441 4th Street, N.W.,  Suite 210-S, Washington, DC 20001  (202) 727-6311

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



**Appeal No. 17043 of the Stanton Park Neighborhood Association,** pursuant to 11 DCMR §§ 3100 and 3101, from the administrative decision of the Zoning Administrator in the issuance of Certificate of Occupancy Permit Nos. CO51298 and CO51290, to Capitol Hill Healthcare Group, dated March 26, 2003, for a community residence facility and hospital (60 beds and 60 parking spaces) respectively. The R-5-D zoned subject premise is located at 700 Constitution Avenue, N.E. (Square 875, Lot 76).

| | |
|---|---|
| **HEARING DATES:** | July 29, 2003, November 4, 2003, November 18, 2003, November 25, 2003 |
| **DECISION DATE:** | January 6, 2004 |

**DATE OF DECISION ON RECONSIDERATION:** February 24, 2004

### ORDER

**PRELIMINARY MATTERS**

On May 23, 2003, appellant Stanton Park Neighborhood Association ("Appellant") filed this appeal with the Board of Zoning Adjustment ("Board") alleging error in the Zoning Administrator's ("ZA") March 26, 2003 issuance of two Certificates of Occupancy, Nos. 51289 and 51290. Certificate of Occupancy No. 51289 was issued to Capitol Hill Healthcare Group for a "Community Based Residential Facility-Health Care Facility That Provides Housing For The Handicapped. 25 Parking Spaces & 117 Beds." Certificate of Occupancy No. 51289 described the use as a "Health Care Facility," which is a specific type of community-based residential facility ("CBRF") under the Zoning Regulations, but then, in the same C of O, also characterized the use as a "Community Residence Facility," which is a different type of CBRF. Certificate of Occupancy No. 51290 was issued to Capitol Hill Community Hospital for a "Hospital 60 Beds & 60 Parking Spaces."

There were two earlier Board Orders with respect to the property that is the subject of the two Certificates of Occupancy. In 1991, Board Order No. 15542 granted a special exception pursuant to § 359 of the Zoning Regulations to Capitol Hill Hospital to operate a health care facility with 130 beds, 250 employees, and 176 off-street parking spaces. This Order was modified by Order No. 16407, issued to the Capitol Hill Group, and dated February 3, 1999, which permitted an expansion of the CBRF use to 162 beds and 340 employees with 276 off-street parking spaces. Order No. 16407 was never implemented and so lapsed after two years from its effective date.

On April 30, 1999, the Zoning Regulations were amended to make CBRFs housing handicapped individuals a matter-of-right use in all residential zones. Based on this regulatory amendment,

---

BZA APPEAL NO. 17043
*PAGE NO. 2*

the ZA issued Certificates of Occupancy Nos. 51289 and 51290 as matter-of-right uses. The Zoning Regulations specify a parking ratio of one off-street parking space per bed for a hospital. Therefore the ZA required the hospital, with 60 beds, to provide 60 spaces. There was, however, no parking schedule in the Zoning Regulations for the health care facility, covered by the 1999 zoning amendments. Therefore, the ZA looked to the parking schedule in the Zoning Regulations and applied the ratio applicable to what he determined was the most comparable facility set forth therein - a rooming house. Accordingly, he reduced the required off-street parking to 25 spaces for the health care facility.

In this appeal, Appellant claims that the ZA disregarded the two previous Board Orders in issuing the matter-of-right certificates of occupancy and that he was without authority to do so. In the alternative, the Appellant claims that, even if the certificates of occupancy were properly issued, the ZA was without authority to determine parking requirements under them, as that authority is expressly given to the Board by the Zoning Regulations.

The Board did not hear this appeal on the originally scheduled hearing dates of July 29, 2003, and November 4, 2003. A public hearing was held on November 18, 2003, and continued and concluded on November 25, 2003. At the hearing, ANC 6C was automatically a party. The Board granted party status to ANC 6A, which is located across the street from the subject property, and to Father Richard Downing, pastor of St. James Parish, which is located in the same square as the subject property.

At its January 6, 2004 public decision meeting, the Board denied the appeal by a vote of 3-2-0. On February 10, 2004, however, the Board, on its own motion, voted 5-0-0 to reconsider part of the denial. On February 24, 2004, the Board voted 5-0-0 to partially deny and partially grant the appeal.

## FINDINGS OF FACT

The Subject Property and its Use

1.    The subject property is located in an R-5-D zone district at 708 Massachusetts Avenue, N.E. (a.k.a. 708 Constitution Avenue, N.E.) and 700 Constitution Avenue, N.E., in Square 895, Lot 76.[1]

2.    The subject property is owned by the Capitol Hill Group ("CHG"), which leases portions of the property for use as a hospital and a health care facility.

3.    Certificate of Occupancy No. 51289 refers to the nursing center[2] as both a "health care facility that provides housing for the handicapped" and a "community residence facility."

---

[1] The advertisement for this appeal refers to Square 875, Lot 76, however, when the case was announced at the November 18, 2003 hearing, it was announced as Square 895, Lot 76. The first pair of certificates of occupancy (Nos. 51289 and 51290) issued on March 26, 2003 refer to Square 865, Lot 862, while the second pair, issued under the same numbers and on the same date, refer to Square 895, Lot 76. The Board need not resolve this discrepancy, since the material facts of this case are not altered and there is no prejudice as there is no question as to what facility or what issues are involved in this appeal.

BZA APPEAL NO. 17043
*PAGE NO. 3*

4.    These two types of facilities are not interchangeable, but are two distinct types of CBRF uses. The Zoning Regulations definitions (11 DCMR § 199.1) for both these types of CBRFs refer to their respective (and now superseded) definitions in the public health regulations at 22 DCMR § 3099.1. Based upon the definitions at 22 DCMR § 3099.1, all the evidence in the record, and the two prior Orders that treat the same use at the same facility as a health care facility under § 359 of the Zoning Regulations, the Board finds that the nursing facility is a health care facility.

6.    The health care facility is operated by the Capitol Hill Healthcare Group and is located at address 708 Massachusetts Avenue, N.E. The hospital is operated by Capitol Hill Community Hospital and is located at address 700 Constitution Avenue, N.E. The hospital occupies the basement, part of the first floor, and the second and third floors of the building on the subject property. The health care facility occupies part of the first floor, and the fourth, fifth, and sixth floors of the building. The hospital is permitted as a matter-of-right in the R-5-D district. 11 DCMR §§ 350.4(a) and 330.5(f).

History

7.    Prior to April 30, 1999, the date of enactment of 11 DCMR § 330.5(i), all health care facilities for 16 or more residents in an R-5 zone, whether providing housing for the handicapped or not, required special exception approval under § 359 and required that the number of parking spaces be determined by the Board of Zoning Adjustment. 11 DCMR § 2101.1.

8.    Board Order No. 15542, dated August 16, 1991, granted a special exception under § 359 to Capitol Hill Hospital, for the establishment of a health care facility with 130 beds and 250 full-time staff at 708 Massachusetts Avenue, N.E. (Square 895, Lot 76). Exhibit No. 76, Attachment B.

9.    Order No. 15442 mandated that the health care facility provide 176 on-site screened parking spaces for employees, residents and visitors. *Id.*

10.   Board Order No. 16407, dated October 21, 1999, granted a special exception under § 359 to the Capitol Hill Group "for opening an additional 32 beds in an existing nursing facility at 700 Constitution Avenue, N.E." Order No. 16407 conditioned the special exception with a 10-year term and further required that the health care facility have a maximum of 340 staff, no more than 162 beds, and 276 off-street parking spaces. Exhibit No. 76, Attachment C.

11.   CHG never added the 32 beds or 100 more parking spaces authorized by Order No. 16407. Because the Order was not implemented within the necessary 2-year period from its effective date, it lapsed. *See,* November 25, 2003 hearing transcript at 145, lines 4-12 and at 154, lines 2-15.

---

[2] In the record, the hospital and health care facility are sometimes collectively referred to as "MedLink" and the latter is sometimes referred to as the "nursing center."

BZA APPEAL NO. 17043
PAGE NO. 4

12.   In Order No. 869, the Zoning Commission amended the Zoning Regulations to add a new
      section 330.5(i), effective April 30, 1999, which states:

      The following uses shall be permitted as a matter of right in an R-4 District:

         (i)     Community-based residential facility; provided that, notwithstanding
                 any provision in this title to the contrary, the Zoning Administrator
                 has determined that such community-based residential facility, that
                 otherwise complies with the zoning requirements of this title that are
                 of general and uniform applicability to all matter-of-right uses in an
                 R-4 District, is intended to be operated as housing for persons with
                 handicaps. For purposes of this subsection, a "handicap" means, with
                 respect to a person, a physical or mental impairment which substantially
                 limits one or more of such person's major life activities, or a record of
                 having, or being regarded as having, such an impairment, but such item
                 does not include current, illegal use of, or addiction to, a controlled
                 substance.

13.   A health care facility is a type of CBRF. 11 DCMR § 199.1 (definition of Community-
      based residential facility).

14.   The definition of "handicap" in § 330.5(i) contains the same language as that found in the
      definition of "handicap" in the Fair Housing Act, as amended, 42 U.S.C. § 3602(h).

15.   Subsection 330.5(i) applies in R-5-D zone districts by virtue of § 350.4(a), which states:
      "[t]he following uses shall be permitted as a matter of right in an R-5 District: ... (a) Any
      use permitted in the R-4 District" subject to certain requirements not relevant here.

16.   On November 5, 2002, Denzil Noble, Acting Administrator of the Building and Land
      Regulation Administration ("BLRA") of DCRA, and therefore, the supervisor of the ZA,
      sent a letter to CHG pointing out that there were several certificates of occupancy for the
      subject property. Mr. Noble requested that CHG consolidate the multiple certificates of
      occupancy into one for the entire building to ensure compliance with the two previous
      Board Orders and to reflect the requirements of Board Order No. 16407.

17.   In response, CHG requested new matter-of-right certificates of occupancy for the health
      care facility and the hospital, pursuant to the change in the regulations brought about by §
      330.5(i). *See*, November 25, 2003 hearing transcript at 157, lines 19-24.

18.   On March 18, 2003, then-ZA Robert Kelly sent a letter to CHG's attorney indicating that
      CHG had not submitted any information to verify that it was providing housing for
      handicapped persons, and he requested this information. Exhibit No. 91, Attachment B.

19.   CHG submitted to DCRA the appropriate information verifying its provision of housing
      for the handicapped at the health care facility. *See*, Exhibit No. 91; *see also*, hearing

BZA APPEAL NO. 17043
PAGE NO. 5

transcript of November 18, 2003, at 310-311, lines 21-25 & 1-12. Specifically, CHG submitted to DCRA a copy of its application for a license for a health care facility, its certificate of licensure, its long term facility application for Medicare and Medicaid, and an affidavit of its Chief Financial Officer. *See,* Exhibit No. 91, Attachment C, and Exhibit No. 76, Attachment F.

20. Based on its review of this information, DCRA found that the health care facility provides housing for the handicapped.

21. DCRA also found that the health care facility complies with the zoning requirements of general and uniform applicability to all matter-of-right uses in an R-5-D zone district.

22. Therefore, on March 26, 2003, DCRA issued Certificate of Occupancy No. 51289 for a matter-of-right "Community-Based Residential Facility-Health Care Facility That Provides Housing For The Handicapped. 25 Parking Spaces & 117 Beds."

23. Also on March 26, 2003, DCRA issued Certificate of Occupancy No. 51290 for a "Hospital 60 Beds & 60 Parking Spaces," pursuant to § 2101.1 of the Zoning Regulations, which requires a hospital in an R-5-D district to provide one off-street parking space per hospital bed.

24. The Zoning Regulations state that the number of parking spaces required by a CBRF with more than 16 residents in all zones other than C-3, C-4, and C-5, is to be determined by the Board. 11 DCMR § 2101.1.

25. When the Zoning Commission amended the Zoning Regulations to permit a health care facility housing the handicapped as a matter of right, it did not amend the parking schedule set forth at 2101.1 that provides for the BZA to determine the number of parking spaces for CBRF's with 16 or more residents, nor did the Commission establish a separate parking ratio for a matter-of-right health care facility with 16 or more residents in zones other than C-3, C-4, and C-5.

26. Because the Zoning Administrator determined that the health care facility was matter-of-right and there was no established parking ratio for that specific matter-of-right use, he chose the parking schedule for what he determined to be the most analogous matter-of-right use in the same (R-5) zone.

27. The Zoning Administrator limited his review of comparable facilities to residential uses.

28. The ZA deemed the use in § 2101.1 entitled "rooming or boarding house: All districts" to be the most analogous residential use. He therefore applied its parking schedule of "1 plus 1 for each 5 rooming units" to the health care facility. This resulted in the ZA requiring the health care facility to provide 25 off-street parking spaces.

**CONCLUSIONS OF LAW**

BZA APPEAL NO. 17043
PAGE NO. 6

An appeal may be taken by a person aggrieved by, or District agency affected by, any decision of a District official in the administration and enforcement of the Zoning Regulations, including the issuance of a certificate of occupancy. D.C. Official Code § 6-641.07(f) (2001). Appellant timely appealed DCRA's March 26, 2003 issuance of two certificates of occupancy, numbers 51289 and 51290. Appellant sets forth two issues on appeal: (1) the ZA was without authority to issue a matter-of-right certificate of occupancy for the health care facility use so long as the Board Order granting a special exception was in place,[3] and (2) alternatively, even if the certificates of occupancy were properly issued, the ZA was without authority to set the parking requirement for the health care facility as only the Board has the authority to do so.[4] Although the Board finds both arguments unpersuasive, the Board nevertheless grants the appeal because the Zoning Administrator erred by limiting himself to residential uses when determining the parking requirement. Rather than remand the appeal to the Zoning Administrator, the Board finds that the most analogous matter-of-right use would be that of a hospital, and therefore reforms the certificate of occupancy to reflect a parking requirement of one off-street parking space for each bed. 11 DCMR § 2101.1 (parking requirement for hospital).

Appellant's two issues actually subsume the following questions within them. First, after the enactment of § 330.5(i), was the health care facility still subject to the special exception order previously issued by the Board, and, in particular, the parking requirements set forth therein? Second, if the health care facility were no longer subject to the special exception order, would the Board still have jurisdiction to determine the parking requirement pursuant to § 2101.1? Lastly, if the Board was without jurisdiction to determine the parking requirements, then did the ZA properly determine them? Each of these questions will be answered in turn.

1. The Zoning Commission's enactment of 330.5(i) on April 30, 1999 changed the status of health care facilities housing the handicapped from special exception to matter-of-right use and thereby removed them from the jurisdiction of the Board.

Prior to April 30, 1999, the health care facility was subject to special exception approval pursuant to § 359 of the Zoning Regulations. A special exception for the health care facility was first approved in 1991 by Board Order No. 15542. Order No. 15442 imposed no temporal condition on the use, but required the provision of 176 off-street parking spaces.

Effective April 30, 1999, the Zoning Commission, in Order No. 869, made CBRFs located in R-4 and the less restrictive residential and commercial zones, that provided housing for the handicapped, matter-of-right uses, provided they comply with the "zoning requirements of … general and uniform applicability to matter-of-right uses" in the district in which the CBRF is

---

[3]Only Order No. 15542 is actually in question. See, Finding of Fact No. 11.
[4]Although the Appellant appealed the issuance of the certificates of occupancy for both the health care facility and the hospital, the certificate of occupancy for the hospital was never seriously challenged and was properly issued as a matter-of-right use with 60 beds and 60 off-street parking spaces. See, 11 DCMR §§ 350.4(a) and 330.5(f), and § 2101.1. During the hearing, the Appellant stated that it was not disputing "the hospital portion" of the parking required by the ZA. See, November 18, 2003 hearing transcript at 344, lines 2-3. Therefore, only the certificate of occupancy and the parking requirement for the health care facility are actually in question here.

BZA APPEAL NO. 17043
PAGE NO. 7

located.[5] "Zoning requirements of general and uniform applicability" mean basic area requirements for matter-of-right development in that zone, such as maximum height or lot occupancy. Under § 330.5(i), therefore, a CBRF in an R-5 zone district which provides housing for the handicapped and meets the generally and uniformly applicable Zoning Regulations for that zone district is a matter-of-right use and not a special exception.

Section 330.5(i) defines "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities...." The Affidavit of the health care facility's Chief Financial Officer, which was submitted to the ZA, states that "[a]ll of the ... residents require assistance in performing one or more of their major life activities, including, but not limited to, eating, bathing, dressing, getting out of bed, taking medication, etc." Exhibit No. 76, Attachment F. These residents suffer mental and/or physical disabilities caused by strokes, respiratory problems, Alzheimer's disease, or the like. *Id.* The health care facility provides residential and 24-hour medical care to its residents. *Id.* Based on these facts, the ZA found, and the Board concurs, that the health care facility provides housing for the handicapped as "handicapped" is defined in § 330.5(i).

The Appellant does not contest the ZA's determination that the health care facility complies with the requirements of general and uniform applicability to matter-of-right uses in an R-5-D zone. Accordingly, the Board finds that the ZA correctly determined that the health care facility housed the handicapped and complied with the applicable general and uniform zoning requirements. It therefore falls squarely within § 330.5(i) and is no longer a special exception use. The enactment of § 330.5(i) removed this use from the category of special exceptions and placed it in the category of matter-of-right uses.

Because the health care facility is a matter-of-right use, it is no longer subject to the earlier Board Order. It is axiomatic that matter-of-right uses are not subject to Board approval. Pursuant to § 330.5(i), CBRFs housing handicapped persons are a matter-of-right use in an R-5-D zone. They are not subject to a greater level of regulation than that applicable to a row dwelling or a multiple dwelling and so, cannot be made to come before the Board for a special exception or be subject to Board conditions. This is borne out by Zoning Commission Order No. 869, which enacted § 330.5(i). Part of the impetus for the enactment of § 330.5(i) was the determination by the Department of Justice that the Zoning Regulations did not provide equal housing opportunity for handicapped persons in multifamily zones. One of the inequities cited was that CBRFs housing handicapped persons required Board approval, while multifamily housing not specifically designated to serve handicapped persons did not. *See,* Exhibit No. 96, Zoning Commission Order No. 869 (1999), at 1. Section 330.5(i) was enacted to remove the requirement of Board approval for multifamily handicapped housing, thus making it no more regulated than other matter-of-right multifamily housing.

Section 330.5(i) must be construed to cause the least restriction necessary on the use of the land. *See,* Rathkopf's *The Law of Zoning and Planning,* 4th ed., § 5:13 (2001). The enactment of § 330.5(i) changed the status of this health care facility from a special exception to a matter-of-

---

[5]Although § 330.5(i) only refers to the R-4 District, § 350.4 provides that the same uses permitted as a matter of right in the R-4 District shall be permitted as a matter of right in an R-5 District subject to conditions not relevant here.

BZA APPEAL NO. 17043
*PAGE NO. 8*

right use and terminated the special exception just as if the Order had had a termination date. Given the fact that the Commission understood that subjecting these uses to special exception review was discriminatory, it is unlikely that the Commission intended to maintain in place orders that would continue such disparate treatment. Therefore, the health care facility is no longer subject to Order No. 15542.

2. Because the health care facility is no longer a special exception, the Board does not determine its parking requirement.

The Appellant argues that because the health care facility houses more than 16 persons, its parking requirement must be determined by the Board, whether or not it is still treated as a special exception, pursuant to the specified parking requirement set forth in § 2101.1. Although § 2101.1 provides that the number of parking spaces required for a CBRF housing 16 or more persons shall be determined by the BZA, the Board concludes that the Appellant's argument runs counter to the general scheme of the Zoning Regulations and the language of § 330.5(i).

Section 2101.1 sets forth the parking schedule for all uses and includes a provision setting forth parking requirements for CBRFs. This provision specifies a parking requirement for CBRFs in C-3, C-4, and C-5 districts, all of which are a matter-of-right. It also specifies a parking requirement for all CBRFs in all other zones which house between 1 and 8 residents. These, too, are all matter-of-right uses in their respective zones. It also specifies a parking ratio for all CBRFs with up to 15 residents, some of which are matter-of-right. *See, e.g.,* 11 DCMR § 350.4(f). Therefore, all matter-of-right CBRFs have parking requirements set out in the Zoning Regulations. No matter-of-right CBRFs have their parking requirement left to the determination of the Board.

The only CBRFs whose parking requirement is left to the Board are those in zones other than C-3, C-4, and C-5, which house 16 or more persons. These CBRF's are all special exceptions, not matter-of-right uses. A careful reading of § 2101.1 then shows that only CBRF's which are special exceptions have their parking determined by the Board.

Prior to § 330.5(i), all CBRFs in residential zones for 16 or more persons, whether handicapped or not, were special exceptions, so it made sense for the Board to determine their parking. That changed with the enactment of § 330.5(i), but no new parking ratio for an over-16-person matter-of-right CBRF housing handicapped persons was added to the Zoning Regulations. Until this lack of a parking ratio is rectified, there is a gap in the regulations, but the general scheme of the regulations is clear – special exception CBRFs go to the Board for parking, while matter-of-right CBRF's do not.

The wording of § 330.5(i) also undermines the Appellant's position. It states that a CBRF housing the handicapped is a matter-of-right use "notwithstanding any provision in this title to the contrary."(Emphasis added). To the extent that 2101.1's provision that CBRFs for more than 16 persons shall have their parking determined by the Board conflicts with the matter-of-right status conferred by § 330.5(i), § 2101.1 must fail. Section 2101.1's provision would apply to a CBRF in an R-5-D district with more than 16 residents, none of whom are handicapped, because

BZA APPEAL NO. 17043
PAGE NO. 9

this would not be a matter-of-right use. However, § 2101.1's provision does not apply to the same CBRF with handicapped residents, as here, because it is a matter-of-right use.

Finally, this Board concludes that the Zoning Commission intended to eliminate all discrimination between CBRFs housing the handicapped and in compliance with the applicable general and uniform zoning requirements and other multi-family dwellings. This would include a requirement for these CBRFs to come to the BZA to determine their parking, when there is no such requirement for all other matter-of-right uses.

3.  Because the Zoning Regulations do not specify a parking ratio for this matter-of-right use and § 2101.1's requirement of parking determination by the Board applies only to special exceptions, the ZA had the authority to determine parking for the health care facility. The issue then before the Board is whether the ZA properly determined the parking requirement for health care facilities where no specific ratio is designated in the regulations.

Since the enactment of § 330.5(i), the ZA has properly interpreted § 2101.1's provision regarding parking for CBRFs housing 16 or more persons as applying only where Board approval is required for a special exception, not where the CBRF is established as a matter-of-right. When, as here, the ZA is presented with a matter-of-right use for which no parking ratio is set forth in the Zoning Regulations, he applies the parking ratio for the most analogous use for which such a ratio is specified. The ZA's action falls within his authority to administer the Zoning Regulations and was recently upheld by the Board in Order No. 16716A. *See,* Reorganization Plan No. 1, 1982, Subchapter V, Part II (e) and Reorganization Plan No. 1, 1983, Subchapter VI, Part III (B)(1).

Case No. 16716A, *Appeal of Nebraska Avenue Neighborhood Association*, (the *Sunrise* Case), is, in this respect, analogous to the instant situation. In Case No. 16716A, the applicant was constructing a CBRF/community residence facility, not a CBRF/health care facility, but the *Sunrise* facility was determined to be a matter-of-right facility under § 330.5(i). The ZA in that case was presented with the same lack of a specific parking ratio for the matter-of-right facility, and so, looking to the most analogous use, he applied the parking ratio for a rooming and boarding house. The Board upheld the ZA's action, concluding that, "a ruling from the Zoning Administrator was *necessary* because the regulations do not set forth specific parking ... ratios for a community residence facility in the R-5-D zone." (Emphasis added.) *See,* Exhibit No. 76, Attachment E, Order No. 16716A, at 15. Similarly, the regulations do not set forth a parking ratio for a matter-of-right health care facility in an R-5-D zone. Therefore the Board concludes that a parking determination from the ZA was also necessary here.

Although the Board concludes that the ZA had to determine parking for the health care facility, the Board further concludes that he erred in the determination he made. The ZA erred in limiting his parking determination to just residential uses and therefore did not choose the proper most analogous use. Because he chose the incorrect most analogous use, he applied the incorrect parking ratio.

The ZA chose a "rooming or boarding house" as the use most similar to the health care facility for which a parking ratio is set forth in § 2101.1. The parking ratio for a rooming or boarding

BZA APPEAL NO. 17043
*PAGE NO. 10*

house in all zone districts is "1 plus 1 for each 5 rooming units." Thus the ZA concluded that the health care facility required 25 parking spaces. 11 DCMR § 2101.1. The Chief of BLRA's Zoning Review Branch testified that, in making this choice, the BLRA looked only at residential uses because it considered the health care facility a residential use. *See,* November 18, 2003 transcript, at 354-355, lines 6-25 & 1-5. She also testified that BLRA relied on the decision in the *Sunrise* Case, because the choice of rooming or boarding house was upheld there. *See, Id.,* at 318, lines 18-24.

Neither the Chief of the Zoning Review Branch nor counsel for DCRA could point to any authority for the proposition that the ZA was constrained to look only at residential uses. This may have been DCRA's past practice, but the Board is not persuaded that it is a sound one, particularly here, where the health care facility is operated as a commercial enterprise. *Accord.,* 11 DCMR § 801.2.

The fact that a CBRF is listed as a residential use in the parking table set forth in 2101.1 does not necessarily mean that the parking requirement for a health care facility should be compared only to other residential uses. A large health care facility such as this has different parking needs from the average residential use. It must provide parking not only for visitors and possibly residents, but also for a large staff coming and going in shifts, 24 hours a day. It has 117 beds, 29 of which are deemed for "skilled care," the highest level of care under the definition of health care facility at 22 DCMR § 3099.1. On the other hand, a rooming or boarding house provides accommodations and possibly housekeeping services, but it does not provide any specialized supervision, therapeutic services, or medical care. It would likely have no staff other than perhaps a manager and/or a housekeeper/janitor. *See, e.g., Hooker v. Edes Home,* 579 A.2d 608 (D.C. 1990). Its parking needs would therefore be significantly less than the health care facility here.

The ZA's reliance on the *Sunrise* decision (Order No. 16716A) was also misplaced here. The use at issue in *Sunrise* was a community residence facility, not a health care facility. Both the Zoning Regulations and the Department of Health regulations at 22 DCMR § 3099.1 make a clear distinction between the two types of uses. CHG's health care facility provides 24-hour medical care and continuous nursing coverage under the supervision of physicians to residents with physical or mental impairments which substantially limit one or more of their major life activities. By contrast, a community residence facility, such as the one in *Sunrise,* provides a much lower level of care. It provides a safe, hygienic, sheltered living arrangement for residents who "are ambulatory and able to perform the activities of daily living with minimal assistance." 22 DCMR § 3099.1 (definition of community residence facility). During the hearing, DCRA conceded that the facility in *Sunrise* does not provide the level of medical care that CHG's health care facility does. *See,* November 18, 2003 transcript, at 341, lines 14-19.

There are significant differences in resident population, level of care provided, and size of staff between a community residence facility and a health care facility. These differences dictate a difference in parking requirements. Therefore, the *Sunrise* case is not helpful in determining the use in the Zoning Regulations most analogous to a health care facility in order to determine the correct parking ratio for such a facility.

BZA APPEAL NO. 17043
PAGE NO. 11

The services provided by the health care facility and the staffing necessary to provide them are most analogous to a hospital. A hospital is a "place where sick or injured persons are given medical or surgical care." *Webster's Third New International Dictionary* (Unabridged), 1986. Analogously, a health care facility is a place where sick or disabled persons are given medical and residential care. A hospital is listed as an "institutional" use in the § 2101.1 parking schedule, but may also be considered a residential use. *See, e.g.,* 11 DCMR §§ 634.3, 636.6, 638.3 and discussion in W*allick v. Board of Zoning Adjustment,* 468 A.2d 1183, 1186 (D.C. 1985). This hybrid nature is similar to the commercial/residential nature of the health care facility. The Board therefore concludes that the ZA should have looked beyond uses categorized as "residential" in § 2101.1 and should have applied the parking ratio for a hospital -- 1 space for each bed. The ZA erred in requiring the health care facility to provide 25 off-street parking spaces. Instead, the health care facility must provide 1 off-street parking space for each bed in the facility.

For the reasons stated above, the Board **denies the appeal in part** with respect to Appellant's claims that the ZA lacked authority to issue Certificates of Occupancy No's. 51289 and 51290 and to determine the parking requirements for the uses in those Certificates of Occupancy. The Board **grants the appeal in part** in concluding that the ZA imposed the incorrect parking requirement on the health care facility use for which Certificate of Occupancy No. 51289 was issued. Therefore, it is hereby **ORDERED** that this appeal be **DENIED IN PART AND GRANTED IN PART.** It is further **ORDERED** that Certificate of Occupancy No. 51289 be reformed to reflect a parking requirement of one off-street parking space for each bed.

VOTE:       5-0-0                    (Geoffrey H. Griffis, Ruthanne G. Miller,
                                     Curtis L. Etherly, Jr., David A. Zaidain, and
                                     Anthony J. Hood, to deny in part and grant
                                     in part.)

**BY ORDER OF THE D.C. BOARD OF ZONING ADJUSTMENT.**

Each concurring member has approved the issuance of this Decision and Order and authorized the undersigned to execute the Decision and Order on his or her behalf.

ATTESTED BY: _____

                **JERRILY R. KRESS, FAIA**
                **Director, Office of Zoning**

**FINAL DATE OF ORDER:** September 9, 2004

PURSUANT TO 11 DCMR § 3125.6, THIS ORDER WILL BECOME FINAL UPON ITS FILING IN THE RECORD AND SERVICE UPON THE PARTIES. UNDER 11 DCMR § 3125.9, THIS ORDER WILL BECOME EFFECTIVE TEN DAYS AFTER IT BECOMES FINAL.LM/rsn

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



## BZA APPEAL NO. 17043

As Director of the Office of Zoning, I hereby certify and attest that on ___SEP 0 9 2004___ a copy of the order entered on that date in this matter was mailed first class, postage prepaid or delivered via inter-agency mail, to each party and public agency who appeared and participated in the public hearing concerning the matter, and who is listed below:

Monte Edwards
Stanton Park Neighborhood Association
330 E Street, N.E.
Washington, D.C. 20002

The Reverend Richard E. Downing, Rector
St. James Episcopal Church
222 8th Street, N.E.
Washington, D.C. 20002

Paul A. Tummonds, Jr., Esq.
for Capitol Hill Healthcare Group
Shaw Pittman
2300 N Street, N.W.
Washington, D.C. 20037

Laura Gisolfi Gilbert, Esq.
Department of Consumer and Regulatory Affairs
941 North Capitol Street, N.E.
Washington, D.C. 20002

Robert Hall, Chairperson
Advisory Neighborhood Commission 6A
815 F Street, N.E.
Washington, D.C. 20002

Cody Rice, Commissioner 6A
Advisory Neighborhood Commission 6A03
815 F Street, N.E.
Washington, D.C. 20002

**BZA APPLICATION NO. 17043**
**PAGE 2**

Sharon Ambrose, City Councilmember
Ward Six
1350 Pennsylvania Avenue, N.W., Suite 102
Washington, D.C. 20004

Denzil Noble, Acting Zoning Administrator
Building and Land Regulation Administration
Department of Consumer and Regulatory Affairs
941 N. Capitol Street, N.E.
Washington, D.C. 20002

Ellen McCarthy, Deputy Director
Office of Planning
801 North Capitol Street, N.E.
4th Floor
Washington, D.C. 20002

Alan Bergstein, Esq.
Office of the Attorney General
441 4th Street, N.W., 6th Floor
Washington, D.C. 20001

rsn

ATTESTED BY:

**JERRILY R. KRESS, FAIA**
**Director, Office of Zoning**