DRAFT OF 2/29/08

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAPITOL HILL GROUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 07-1936 (RCL) |
| v. ) | |
| ) | |
| PILLSBURY WINTHROP SHAW PITTMAN, LLP, ) | |
| SHAW PITTMAN, LLP, ) | |
| PAUL A. TUMMONDS, JR., AND ) | |
| PATRICK J. POTTER, ) | |
| Defendants. ) | |

### SHAW PITTMAN'S RESPONSE TO CHG'S SUPPLEMENT

Shaw Pittman hereby responds to the Supplement filed by CHG on February 20, 2008 (the "Supplement"). The Supplement includes materials that could have been cited in CHG's complaint or other prior pleadings and should be rejected for that and the following reasons.

CHG uses its Supplement to argue that prior to its federal bankruptcy filing it encountered zoning issues with respect to its real property; that those zoning issues are "the gravamen" of the dispute in this case; and that the existence of pre-bankruptcy zoning issues somehow takes this case out of the scope of the six Court of Appeals decisions relied upon by Shaw Pittman for its "arising in" jurisdiction argument.[1] However, CHG's Supplement represents another in its string of pleadings designed to mislead the Court by omission, mischaracterization, and presumption that this Court does not understand bankruptcy law issues. Moreover, CHG's Supplement manifestly

---

[1] Those six decisions are Geruschat v. Ernst & Young LLP, 505 F.3d 237 (3d Cir. Oct. 24, 2007); Grausz v. Englander, 321 F.3d 467, 471 (4th Cir. 2003); Iannochino v. Rodolakis, 242 F.3d 36 (1st Cir. 2001); Southmark Corp. v. Coopers & Lybrand, 163 F.3d 925, 931 (5th Cir. 1999); Walsh v. Northwestern

1

takes the legally unwarranted position that CHG is free to cite materials outside of its Complaint, yet Shaw Pittman cannot, even if the materials upon which Shaw Pittman relies are personally known to this Court through <u>CHG I</u> and <u>CHG II</u> or are otherwise susceptible to judicial notice of CHG's chapter 11 bankruptcy proceeding.

    1.    CHG attaches to its Supplement what it claims are zoning orders entered prior to CHG's bankruptcy filing and suggests that somehow the disputes addressed therein have some relationship to Shaw Pittman or any issues currently before the Court. However, Shaw Pittman has already established by uncontroverted evidence that:

(A) Shaw Pittman did not provide any zoning services to CHG prior to CHG's bankruptcy (rather, CHG relied upon another law firm). <u>See</u>, <u>e.g.</u>, Memorandum in Opposition to CHG's Motion to Remand (Docket No. 14) ("Opposition to Remand") at 7-8.

(B) Shaw Pittman was retained in the bankruptcy case by Court order pursuant to Section 327 of the Bankruptcy Code (the "Code"). <u>See</u>, <u>e.g.</u>, Memorandum in Support of Shaw Pittman's Motion for Summary Judgment ("SJ Memo") at 5; <u>see also</u> Exhibit 3 of Patrick Potter's Supporting Affidavit to the SJ Memo.

(C) Several months into the bankruptcy proceeding, the District issued zoning citations to CHG for parking-space violations. <u>See</u>, SJ Memo at 5.

(D) CHG, as chapter 11 debtor-in-possession, requested Shaw Pittman to represent CHG with respect to the citations in order to ensure that CHG could comply with Bankruptcy Code Section 1129 and thereby emerge from chapter 11. <u>See</u>, <u>e.g.</u>, Opposition to Remand at 10.

---

Nat'l Ins. Co. of Milwaukee, Wis., 51 F.3d 1473 (9th Cir. 1995); <u>Sanders Confectionary Prod., Inc. v Heller Fin., Inc.</u>, 973 F.2d 474, 483 n. 4 (6th Cir. 1992).

(E)  Shaw Pittman, during the course of and in furtherance of its Bankruptcy Code Section 327 representation of CHG, provided zoning services (in front of the bankruptcy court and in front of the BZA) to successfully address the citations.  <u>See</u>, <u>e.g.</u>, Opposition to Remand at 7; SJ Memo 5-6.

(F)  Shaw Pittman requested that the bankruptcy court approve all of its fees for providing the zoning services.  <u>See</u>, <u>e.g.</u>, Opposition to Remand at 6, 19; SJ Memo at 6-7.

(G)  The bankruptcy court applied Bankruptcy Code Section 330(a)(3(C) - - which required a finding that the zoning services "were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of [the chapter 11 case]" - - in order to approve Shaw Pittman's fees for the zoning services.  <u>See</u>, <u>e.g.</u>, Opposition to Remand at 6 n.5.

By omission in its Supplement (as well as its Complaint and in its briefs), CHG ignores these facts as though they did not occur and hopes the Court will do the same.  Nevertheless, these facts - - not the orders attached as Exhibits 1 and 2 to the CHG Supplement, which Shaw Pittman had nothing to do with and which pre-date Shaw Pittman's Code Section 327 engagement - - are the relevant facts against which both Section 1334 jurisdiction and ultimate resolution of this case should be adjudicated.

2.  CHG's statement that the orders attached as Exhibits 1 and 2 to its Supplement establish the "gravamen of this dispute" mischaracterizes the disputes before the Court.  Shaw Pittman had nothing to do with those orders, and is not being sued for malpractice by CHG with respect to those orders.  Instead, Shaw Pittman is being sued by CHG in connection with the zoning services Shaw Pittman rendered exclusively pursuant to its Code Section 327 retention, which gave rise to wholly different decisions from the bankruptcy court, the District of Columbia and the BZA.

The gravamen of the instant dispute - - alleged malpractice during a Code Section 327 engagement - - could not have "preceded" the filing of CHG's bankruptcy case because there was no such Section 327 (or zoning-related) engagement by Shaw Pittman that preceded the filing of CHG's bankruptcy case.

      3.      CHG's suggestion that zoning disputes can occur outside of bankruptcy, therefore this Court lacks jurisdiction, continues to miss the point and ignores the unanimous decisions of the Courts of Appeals previously cited by Shaw Pittman. See n. 1 above. Under CHG's theory a bankruptcy lawyer who advises a debtor not to defend a pre-bankruptcy lawsuit, and who subsequently has a fee application approved by the bankruptcy court would not be able to adjudicate a malpractice suit to federal court. That, however, is precisely what happened in Iannochino, where the First Circuit exercised jurisdiction and applied *res judicata* to the Iannochinos' malpractice claims against their prior attorney. See Iannochino, 242 F.3d at 39-41, 49. Under CHG's theory the First Circuit would have rejected jurisdiction because the subject contract action existed prior to the debtor's bankruptcy. CHG's theory not only defies the case law, it defies logic, as one can imagine other absurd results. For example, under CHG's theory, malpractice committed by a Section 327 professional who refinanced a loan during bankruptcy, would not be subject to federal court jurisdiction because the debtor had the loan prior to bankruptcy. Rare would be the situation where the underlying subject matter of the action did not exist in some form prior to the bankruptcy case.

However, nothing in the case law suggests that 1334 jurisdiction turns on either the pre-bankruptcy *existence* of the subject matter of the Section 327 representation (e.g., pre-existing zoning issues, real estate, loans, or claims) or the expertise of the professional employed pursuant to Section 327. Indeed, the unique factor that gives this Court Section 1334 jurisdiction over this dispute is *not* the substantive nature of the services rendered by Shaw Pittman, but the fact that the

4

services were rendered pursuant to Shaw Pittman's Code Section 327 engagement and approved by the bankruptcy court pursuant to Code Section 330(a)(3)(C). In the instant case, all of Shaw Pittman's zoning services were subject to both Section 327 and 330(a)(3)(C), and as such "arising in" jurisdiction under Section 1334 exists.[2]

4.      Finally, CHG seeks to "have its cake and eat it too" by asserting that this Court must ignore CHG I and CHG II, as well as the record in the bankruptcy case, and yet CHG dredges up and suggests that the Court should consider two orders that pre-date CHG's bankruptcy, two orders having nothing to do with Shaw Pittman or its Code Section 327 engagement. The Court should allow neither of CHG's strategies. In ruling on the remand request, the Court can take judicial notice of the documents, events and rulings that took place in CHG I, CHG II and the CHG chapter 11 bankruptcy proceedings. See e.g., Fed. R. Evid. 201(f) and Advisory Committee Note ("judicial notice may be taken at *any* stage of the proceedings"). Furthermore, CHG cannot rely upon the two pre-bankruptcy orders attached to its Supplement for any purpose at this juncture, as they have nothing to do with the malpractice allegedly committed by Shaw Pittman pursuant to its subsequent engagement by CHG.

---

[2]     In fact, after the 2005 amendments to Section 1334, discretionary remand is not an option in this case. See 28 U.S.C. § 1334(c)(2) (which provides for exclusive federal jurisdiction with respect to Section 327 matters). See also H.R. Report of the Committee on the Judiciary to accompany S. 256, page 589 (page 53 of the dissent) (the "Judiciary Committee Report"), a copy of which is attached as **Exhibit 1**. The Judiciary Report makes clear that the case upon which CHG so heavily relies, In Merry-Go-Round Enterprises, Inc., 222 B.R. 254, 259 (D. Md. 1998), was overturned by 28 U.S.C. § 1334(e)(2); see also, Winkelman, Amending the Bankruptcy Code: Why Bankruptcy Courts Should Adjudicate Legal Malpractice Claims Against Professionals Employed by the Chapter 11 Debtor's Estate, 32 Ariz. St. L.J. 1087, 1103 (Fall 2000). Furthermore, by making jurisdiction over issues arising out of Code Section 327 professional retentions in bankruptcy cases exclusive in the district court (and bankruptcy court), the 2005 amendments to Section 1334 support, reinforce, and as a practical matter, codify, the holdings of the six Court of Appeals jurisdiction opinions relied upon by Shaw Pittman.

WHEREFORE, for the reasons stated in Shaw Pittman's initial Memorandum, for the reasons stated herein, and for such other reasons as the Court deems appropriate, Shaw Pittman requests that the Court enter an order denying CHG's request to remand.

Dated: March 3, 2008                                Respectfully submitted,

                                                        PILLSBURY WINTHROP SHAW PITTMAN, LLP

                                                        By:    /s/ Jack McKay_____
                                                               Jack McKay (No. 159335)
                                                               2300 N Street, N.W.
                                                               Washington, D.C. 20037-1128
                                                               Tel:  (202) 663-8000
                                                               Fax:  (202) 663-8007

Union Calendar No. 14

| 109TH CONGRESS 1st Session | HOUSE OF REPRESENTATIVES | REPT. 109–31 Part 1 |

# BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005

## REPORT

OF THE

## COMMITTEE ON THE JUDICIARY HOUSE OF REPRESENTATIVES

TO ACCOMPANY

## S. 256

together with

DISSENTING, ADDITIONAL DISSENTING, AND ADDITIONAL MINORITY VIEWS



APRIL 8, 2005.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

589

now requires "a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interest in the case." The use of a vague term such as "discussion" – although an improvement over the requirement in the earlier version of a "*full* discussion" – will likely lead to extensive litigation as these statements are scrutinized. In some instances, the precise tax consequences of a plan at all levels of government, and for a "typical" holder of claim, may be difficult to produce with great precision.[210]

Finally, section 718 requires that a debtor actually have commenced an action against the taxing authority to determine the amount of a disputed tax before a setoff can be prevented. Absent such an action by the debtor, a governmental entity generally is free to "setoff" any pre-petition refund with a liability. The Advisory Committee had recommended that such setoff should only be permitted in cases where the liability was undisputed. The bill goes much further and to the disadvantage of the debtor and other, non-governmental creditors.

V.   CORRUPTION OF THE BANKRUPTCY SYSTEM

Although the legislation purports to wring fraud and abuse from the bankruptcy system, there are a number of provisions that will open the door to further abuse by certain parties.

Section 324 of the bill would overturn the result in the *Merry-go-Round* case in which the accounting firm of Ernst and Young was held liable for fraud, fraudulent concealment, and negligence/malpractice for its conduct while serving as restructuring accountants and business advisors in the Merry-go-Round bankruptcy. The suit was brought in the Circuit Court for Baltimore City, but Ernst & Young attempted to move the case to the bankruptcy court. The case was remanded back to state court and the remand was ultimately upheld by the District Court.[211] Faced with a jury trial in state court, Ernst & Young ultimately settled the case with the trustee for $185 million.

The import of the *Merry-Go-Round* case is the issue of holding professionals, such as accounting firms, accountable for their actions in a bankruptcy case. As professionals, they are paid by funds from the estate before other creditors. They have a duty to the estate and the creditors. When they violate that duty, they can be denied fees by the bankruptcy court, or they may face an action for damages. Damages paid to the trustee are made available to the creditors.

This change in the law was inserted for the express purpose of insulating accountants and other professionals from facing the consequences of their wrongdoing. At a time when public policy is moving in the direction of greater accountability, there is no excuse for this change.

Section 414 would relieve investment bankers of the duty of being disinterested persons before they can be retained as professionals by the trustee. The disinterestedness standard,

---

[210] *Id.* at 5–6.
[211] In re: Merry-Go-Round Enterprises, Inc. (Ernst & Young, LLP v. Devan), 222 B.R. 254, 259 (D. Md. 1998).

590

which has been in existence since 1938, protects the estate from conflicts of interest by professionals in the case. Judge Edith Jones of the U.S. Court of Appeals for the Fifth Circuit has written, "such a standard can alone protect integrity in the bankruptcy process. If professionals who have previously been associated with the debtor continue to work for the debtor during a bankruptcy case, they will often be subject to conflicting loyalties that undermine their foremost fiduciary duty to the creditors. Strict disinterestedness, required by current law, eliminates such conflicts or potential conflicts.... Section 414, in removing investment bankers from a rigorous standard of disinterestedness, is out of character with the rest of this important legislation, however, and it should be eliminated."[212]

Section 102 relieves certain creditors and their attorneys from penalties prescribed in the bill even if they violate Bankruptcy Rule 9011. As discussed earlier, there is never a justification for violating Bankruptcy Rule 9011. Granting such an exception would only encourage inexcusable abuse of the process. Moreover, because this exception is embedded in the attorney sanctions portion of the individual debtor provisions of this bill, it would open the door to creditors abusing the most vulnerable debtors with impunity. There are many instances in which this legislation makes such abuse possible. Enshrining this sort of exemption in the law exemplifies the dangerous distortion of the bankruptcy system this bill represents.

## CONCLUSION

The Bankruptcy Code has proven to be a model of pragmatism and equity at law. The proposed legislation would undermine both of those important principles. It may well be that, in the years to come, many of the same interest groups now clamoring for this legislation will come to regret the inefficiencies, uncertainties, and distortions it will inflict on the bankruptcy system. While the Bankruptcy Code could clearly benefit from reforms and modernization, indeed this legislation contains many provisions that are both beneficial and uncontroversial, much if it is unnecessary and harmful to debtors, creditors, and the economy.

We respectfully dissent, and urge our colleagues to reject S. 256.

> JOHN CONYERS, JR.
> HOWARD L. BERMAN.
> JERROLD NADLER.
> ROBERT C. SCOTT.
> MELVIN L. WATT.
> ZOE LOFGREN.
> SHEILA JACKSON LEE.
> MAXINE WATERS.
> MARTIN T. MEEHAN.
> WILLIAM D. DELAHUNT.
> ANTHONY D. WEINER.
> LINDA T. SÁNCHEZ.
> CHRIS VAN HOLLEN.

---

[212] Letter from the Hon. Edith H. Jones, Judge for the Fifth Circuit Court of Appeals, to Hon. F. James Sensenbrenner, Chairman, House Judiciary Committee (Hon. Edith H. Jones) (March 11, 2003).

54