UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAPITOL HILL GROUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 07-1936 (RCL) |
| v. | ) | |
| | ) | |
| PILLSBURY WINTHROP SHAW PITTMAN, LLP, | ) | |
| SHAW PITTMAN, LLP, | ) | |
| PAUL A. TUMMONDS, JR., AND | ) | |
| PATRICK J. POTTER, | ) | |
| Defendants. | ) | |

**MEMORANDUM**

**DEFENDANTS' (I) SUPPLEMENT DESCRIBING SIGNIFICANT RECENT AUTHORITY
AND (II) RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENT**

June 20, 2008

Jack McKay (No. 159335)
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037-1128
Tel: 202-663-8000
Fax: 202-663-8007
Email: jack.mckay@pillsburylaw.com
For Defendants

# TABLE OF CONTENTS

**Page**

I.     RECENT SUPPLEMENTAL AUTHORITY IN OPPOSITION TO REMAND ............... 1

II.    RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENT ............................................. 4

  A.  CHG Mischaracterizes Defendants' Jurisdiction Argument ................................ 4
  B.  Collateral Estoppel Does Not Apply ..................................................................... 6

      1.    Introduction ................................................................................................. 6
      2.    The Facts And Holding In <u>Shin</u> ................................................................. 6
      3.    The Elements Of Collateral Estoppel .......................................................... 8
      4.    CHG Fails To Establish Any Of The Elements Of Collateral Estoppel ................ 8

          a.    The Issue Raised Here Is Not "The Same" And Was Not "Contested By The Parties" Or "Submitted For Judicial Determination" In <u>Shin</u> ............. 8

              (i)  The Jurisdiction Issue In The Instant Case Is Not The Same Issue As The Jurisdiction Issue In <u>Shin</u> ................................................. 8
              (ii) The Jurisdiction Issue In This Case Was Never Contested By The Parties Or Submitted For Judicial Determination In <u>Shin</u> ........... 10

          b.    CHG Has Failed To Prove That The Issue Presented Here Was Both Actually And Necessarily Determined By The Court In <u>Shin</u> ....................... 11

              (i)  The Jurisdiction Issue Presented Here Was Not Actually Decided In <u>Shin</u> ................................................................................. 11
              (ii) The Jurisdiction Issue Presented Here Was Not Necessarily Decided In <u>Shin</u> ................................................................................. 12

          c.    Preventing Defendants From Litigating The Jurisdiction Issue Found In Southmark And Its Progeny Would Work A Basic Unfairness ................ 13

              (i)  Unfairness With Respect To Defendant Shaw Pittman ..................... 13
              (ii) Unfairness With Respect To Defendants Potter And Tummonds ...................................................................................... 15

      5.    Even If Plaintiff Satisfied The Elements Of Collateral Estoppel, Exceptions Apply ......................................................................................... 16

          a.    The "Unmixed Question Of Law" Exception Applies .................................... 16
          b.    There Have Been Significant Changes In The Legal Context Since <u>Shin</u> ......................................................................................................... 18

III.    CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

### CASES

*Ass'n of Bituminous Contractors, Inc. v. Andrus, 581 F.2d 853 (D.C. Cir. 1978) .........12

Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971), cert. denied, 409 U.S. 1061 (1972) ......................................................................................15

Consumer Prod. Safety Comm'n v. Anaconda Co., 593 F.2d 1314 (D.C. Cir. 1979) ............................................................................................................................12

*Croskey v. U.S. Office of Special Counsel, No. 96-5114, 1997 WL 702364 (D.C. Cir. Oct. 17, 1997) ...........................................................................................13

*D.A. Elia Constr. Corp. v. Damon & Morey, LLP, No. 07-143A, 2008 U.S. Dist. LEXIS 25496 (W.D.N.Y. Mar. 31, 2008) ......................................................... passim

Epstein v. Visher, No. C-95-4167, 1997 WL 231108 (N.D. Cal. Mar. 24, 1997)............6

*GAF Corp. v. U.S., 818 F.2d 901 (D.C. Cir. 1987).................................................. 10-11

*Geruschat v. Ernst & Young LLP, 505 F.3d 237 (3d Cir. 2007)..............................1,9,13

*Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003)..................................................1,9,13

*High Plains Wireless, L.P. v. FCC, 276 F.3d 599 (D.C. Cir. 2002)................................15

*Iannochino v. Rodolakis, 242 F.3d 36 (1st Cir. 2001)...................................................1,6

In re Complaint of McCarthy Bros. Co./Clark Bridge, 83 F.3d 821 (7th Cir.), cert. denied sub nom., 519 U.S. 950 (1996) ................................................................12

*In re D.A. Elia Constr. Corp., No. 94-10866 (Bankr. W.D.N.Y.) .....................................2

In re Intelogic Tracing, Inc., 200 F.3d 382 (5th Cir. 2000) ..............................................6

*Jack Faucett Assocs., Inc. v. America Tel. & Tel. Co., 744 F.2d 118 (D.C. Cir. 1984), cert. denied, 469 U.S. 1196 (1985)   .........................................................8,16

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates, 506 F.Supp.2d 30 (D.D.C. 2007) .......................................................................................................12

*Johnson v. D.C., No.04-936, 2005 WL 1903551 (D.D.C. July 20, 2005)......................16

Leisure Corp. v. Prochnow, No. C-03-03012, 2007 WL 607696 (N.D. Cal. Feb. 23, 2000) .....................................................................................................................6

*Martin v. Dep't of Justice, 488 F.3d 446 (D.C. Cir. 2007)...............................................8

Murray v. Gilmore, 406 F.3d 708 (D.C. Cir. 2005)..........................................................15

*Pharm. Care Mgmt. Ass'n v. D.C., 522 F.3d 443 (D.C. Cir. 2008) ...............................15

Resorts Int'l Inc. Litig. Trust v. Price Waterhouse, 372 F.3d 154 (3d Cir. 2004).............9

*S. Union Co. v. FERC, 857 F.2d 812 (D.C. Cir. 1988), cert. denied sub nom., 493 U.S. 1072 (1990)....................................................................................15

*Sanders Confectionary Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474 (6th Cir. 1992) .........................................................................................................1

Shaw v. Replogle, No. C-00-2720, 2000 WL 1897344 (N.D. Cal. Dec. 22, 2000) .........6

Shaw Pittman v. Shin, No. 02-00357, 2004 Bankr. LEXIS 2262 (Bankr. D.C. Sept. 22, 2004) ...................................................................................... passim

*Southmark Corp. v. Coopers & Lybrand, 163 F.3d 925 (5th Cir.), cert. denied, 527 U.S. 1004 (1999)................................................................................ passim

Stoe v. Flaherty, 436 F.3d 209 (3d Cir. 2006) ................................................9

*Tutt v. Doby, 459 F.2d 1195 (D.C. Cir. 1972) ...............................................14

*U.S. v. Hooker-Hankerson, 511 F.3d 164 (D.C. Cir. 2007) ................................8

Vehicle Removal Corp. v. Lopez, 269 B.R. 607 (Bankr. N.D. Tex. 2001)....................13

Walsh v. Nw. Nat'l Ins. Co. of Milwaukee, 51 F.3d 1473 (9th Cir. 1995) ......................1

Wood v. Wood, 825 F.2d 90 (5th Cir. 1987)............................................3,9,12

## STATUTES

11 U.S.C. § 327.................................................................................. passim

11 U.S.C. § 330(a)(3)..............................................................................5

28 U.S.C. § 1334(b) ........................................................................... passim

28 U.S.C. § 1452 ..................................................................................3

## MISCELLANEOUS

Restatement (Second) of Judgments ("Restatement")

    *Restatement § 27(i) .......................................................................13

    *Restatement § 27 comment (h) .......................................................13

    *Restatement § 27 comment (i) ........................................................13

    *Restatement § 27(c) ..................................................................8,13

    *Restatement § 27(f) .......................................................................8

    *Restatement § 28(i) ..................................................................13, 14

    *Restatement § 28(j) ......................................................................13

    *Restatement § 28(1) ......................................................................15

    *Restatement § 28(5) ......................................................................16

*Restatement § 28(5) ...............................................................................................16

*Restatement § 36.....................................................................................................16

*Restatement § 34(3) ...............................................................................................15

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                             |     |                          |
|---------------------------------------------|-----|--------------------------|
| **CAPITOL HILL GROUP,**                     | )   |                          |
|                                             | )   |                          |
|                       **Plaintiff,**        | )   |                          |
|                                             | )   | **Civil No. 07-1936 (RCL)** |
| **v.**                                      | )   |                          |
|                                             | )   |                          |
| **PILLSBURY WINTHROP SHAW PITTMAN, LLP,**   | )   |                          |
| **SHAW PITTMAN, LLP,**                      | )   |                          |
| **PAUL A. TUMMONDS, JR., AND**              | )   |                          |
| **PATRICK J. POTTER,**                      | )   |                          |
|                       **Defendants.**       | )   |                          |

_____

**DEFENDANTS' (I) SUPPLEMENT DESCRIBING SIGNIFICANT RECENT AUTHORITY
AND (II) RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENT**

Defendants respectfully submit this Memorandum to provide the Court with recent authority

directly on point on the remand issue and to respond to Plaintiff's Second Supplement.

**I.      RECENT SUPPLEMENTAL AUTHORITY IN OPPOSITION TO REMAND**

Defendants draw the Court's attention to D.A. Elia Construction Corp. v. Damon & Morey,

LLP, No. 07-143A, U.S. Dist LEXIS 25496 (W.D.N.Y. March 31, 2008), attached as **Exhibit 1**.

Elia is on all fours with the facts of this case and is entirely consistent with the jurisdiction (and _res_

_judicata_) principles of the case law that Defendants have cited,[1] which hold that "arising in"

jurisdiction under 28 U.S.C. §1334(b) exists over lawsuits claiming deficiencies in professional

services rendered pursuant to 11 U.S.C. § 327, regardless of their nature.

D.A. Elia Construction filed for bankruptcy on March 30, 1994, confirmed its chapter 11

plan on June 3, 1996, and had paid all creditors in full by no later than February 2004.  Elia, supra,

_____

[1]      Southmark Corp. v. Coopers & Lybrand, 163 F.3d 925 (5th Cir.), cert. denied U.S. 1044 (1999).
The other Circuit Court jurisdiction decisions relied upon by Defendants are Geruschat v. Ernst & Young
LLP, 505 F.3d 237 (3d Cir. 2007); Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003); Iannochino v.
Rodolakis, 242 F.3d 36 (1st Cir. 2001); Walsh v. Nw. Nat'l Ins. Co. of Milwaukee, 51 F.3d 1473 (9th Cir.
1995); and Sanders Confectionary Prods., Inc. v Heller Fin., Inc., 973 F.2d 474 (6th Cir. 1992).

at *2-3.[2]  At the commencement of Elia's bankruptcy case, the bankruptcy court approved the law

firm of Damon & Morey ("Damon") as Elia's Section 327 counsel.  The services rendered by

Damon to Elia are described generally as follows:

> Damon & Morey's representation of Elia in connection with the Chapter 11
> matter was extensive and spanned over 10 years.  The firm also represented Elia
> in numerous other related federal and state court lawsuits, including over
> eight federal court actions and a bench trial before the New York Court of Claims.

Elia, supra, at * 2.  These non-bankruptcy-court lawsuits involved a broad variety of state law

construction and insurance disputes between Elia and third-parties, and Damon's fees for such

services were included in its chapter 11 fee applications.[3]

On October 19, 2004 (more than 8 years after confirmation of the plan), the bankruptcy

court entered an order, over the objections of Elia, approving all of the services and fees incurred by

Damon, totaling approximately $359,000.  The bankruptcy court's fee order was affirmed on appeal

by Chief District Judge Arcara, and summarily affirmed by the U.S. Court of Appeals for the

Second Circuit.

On February 14, 2007, Elia filed a complaint against Damon in Erie County, alleging a

series of state law causes of action, including malpractice and breach of contract, seeking to recover

several million dollars from Damon, including treble damages, interest and legal fees.  The

complaint arose from the services rendered during Damon's Section 327 engagement, including the

non-bankruptcy litigation.[4]  Pursuant to, inter alia, 28 U.S.C. § 1334(b), Damon removed the case

---

[2]    See also In re Elia, No. 94-10866 (Bankr. W.D.N.Y. Feb. 12, 2004), docket entry 706 (Statement That Plan Has Been Substantially Consummated & Motion for Final Decree), available on Pacer at https://ecf.nywb.uscourts.gov.

[3]    See, e.g., In re Elia, supra, No. 94-10866, docket entry 713 at p. 5 (Damon's Final Fee Application) and docket entry 728 at pp. 17-28 (Elia's Objection to Damon's Final Fee Application), available on Pacer at https://ecf.nywb.uscourts.gov.

[4]    Elia supra U.S. Dist Lexis 25496 at 17. See also Elia's Verified Complaint p. 9, attached as Exhibit 3 to Damon's Notice of Removal in Elia v. Damon & Morey, LLP, District Case No. 07-143 (W.D.N.Y. Mar. 8, 2007), Docket Entry #1, available on Pacer at https://ecf.nywd.uscourts.gov.

from Erie County to the U.S. District Court for the Western District of New York. Elia filed a

motion to remand to the Erie County court arguing, inter alia, lack of Section 1334(b) jurisdiction.

The District Court (Arcara, J.) found Section 1334 jurisdiction and denied Elia's remand

motion. It reasoned, in part, as follows:

> There can be no doubt that all of Elia's state law claims "arise in" the bankruptcy
> proceeding within the meaning of 28 U.S.C. § 1334. The gravamen of each cause
> of action is that Damon & Morey provided substandard legal services in the
> course of representing Elia in the Chapter 11 and related legal proceedings. But
> for Damon & Morey's representation of Elia in the bankruptcy case, there would
> be no cause of action. Since all of the state law claims "would have no existence
> outside of the bankruptcy," *see Matter of Wood*, 825 F.2d 97, the "arise in"
> requirement is clearly met. Therefore, removal of this action was proper under 28
> U.S.C. § 1452(a) and the motion to remand is denied.

Elia, supra, at *8 (footnote omitted). The court then proceeded to determine that Elia's

complaint was barred by the doctrine of *res judicata*, precisely as Defendants herein have

requested the Court to rule in their Motion for Summary Judgment.

Furthermore, the District Court found Elia's positions on the jurisdiction and *res judicata*

issues to be meritless and lacking in good faith:

> As is readily apparent from this Decision and Order, the Court finds Elia's
> arguments in favor or [sic] remand and against the motion for summary judgment
> to be completely without merit . . . [and] it is difficult to believe that the state
> court action was filed by Elia in good faith. . . . The foregoing certainly provides
> sufficient evidence for this Court to conclude that the instant action was brought
> in bad faith and for the purpose of harassment and delay.

> Id. at *19-21.

Setting aside (for now) Elia's statements regarding *res judicata* and bad faith, Elia reaffirms

the jurisdiction cases previously cited for the Court by Defendants in this case and further renders

meritless the only argument made by CHG (which was never supported by any legal authority) - -

that Section 1334(b) jurisdiction exists only for claims of malpractice by Section 327 professionals

rendering services before the bankruptcy court, but not for malpractice attacks on Section 327

professionals rendering services before a non-bankruptcy court. Elia's malpractice complaint

asserted four state-law causes of action allegedly arising out of the broad range of construction and insurance litigation services rendered by Damon in cases handled by non-bankruptcy courts. Nevertheless, because the services were rendered by Damon during its Section 327 engagement and reviewed by the bankruptcy court (and eventually the district and circuit courts) for quality and necessity under Section 330(a)(3), the malpractice attack was subject to Section 1334(b) jurisdiction. Moreover, neither the fact that Elia's complaint was filed 11 years after confirmation of its plan, nor the fact that the complaint was filed at least 3 years after all of Elia's creditors were paid in full, deprived the District Court of its Section 1334(b) jurisdiction.

Elia is significant in part because of the ease with which the District Court reaches its conclusions. Elia merely applies the established legal principles upon which Defendants have consistently relied to a fact pattern that is precisely the same as the one presented to this Court. And, far from finding Damon's jurisdiction argument "radical" (to use CHG's description), it determined that the debtor's position lacked both merit and good faith. This Court should reach the same conclusions with respect to CHG's positions in this case.

## II.     RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENT

### A.     CHG Mischaracterizes Defendants' Jurisdiction Argument

CHG's Second Supplement begins by attempting to mischaracterize Defendants' jurisdiction argument and the facts in this case. This is apparently an effort to set up the argument that Shin affects this case.

Contrary to CHG's assertions, Defendants do not argue that jurisdiction exists "because the zoning malpractice underlying this case occurred fortuitously during a time when Plaintiff was in bankruptcy." Page 1 of Second Supplement. Nor does Defendants' interpretation of Section 1334 jurisdiction "focus principally upon the time the events giving rise to a cause of action occurred . . .

while ignoring the context within which the underlying claim arose." Page 2 of Second Supplement.[5] Quite the opposite - - context very much matters and the period within which the zoning services were rendered was not fortuitous.[6]

Moreover, Defendants have consistently argued that the important context for Section 1334(b) purposes, according to six U.S. Courts of Appeal, is that the services alleged to have constituted malpractice were rendered by a professional approved by the bankruptcy court pursuant to 11 U.S.C. § 327 during the course of the court-approved engagement. Here, Shaw Pittman's zoning services at issue were authorized under Section 327, its engagement for zoning services was approved by the bankruptcy court, its zoning services were rendered to administer (i.e., to benefit) the bankruptcy estate, and its zoning services were reviewed for quality and necessity and approved by the bankruptcy court in an order that this Court affirmed in CHG I.[7] In situations precisely like the present, "the professional malpractice claims alleged against [the Section 327 professional] are inseparable from the bankruptcy context," and it is "somewhat disingenuous for [the malpractice plaintiff] to attempt to pry these claims out of their bankruptcy setting." Southmark, 163 F.3d at

---

[5]    CHG persists in arguing that because some of the zoning services were rendered in connection with a dispute before the BZA, this somehow takes this case out of the scope of the overwhelming body of law cited by Defendants. The case law nowhere limits Section 1334(b) jurisdiction to some sliver of a Section 327 professional's services. The bankruptcy court is responsible for authorizing and reviewing 100% of the Section 327 professional's services, regardless of the subject matter and the forum (if any) to which the services may relate, for purposes of necessity and quality under 11 U.S.C. § 330(a)(3). This is most recently demonstrated in Elia. In this case the bankruptcy court reviewed and approved 100% of Shaw Pittman's zoning services. Moreover, CHG also ignores the fact that 63% of Shaw Pittman's zoning services at issue in this case were actually incurred for litigation directly in front of Judge Teel rather than the BZA. See Potter Affidavit [Docket Entry 7], Exhibit 6, p. 25. See also Tummonds Affidavit [Docket Entry 8], Exhibits 4 and 5.

[6]    Absent CHG's bankruptcy case the zoning issue never would have arisen in the way it did, and Defendants never would have provided the zoning services. See Memorandum in Opposition to Remand pp. 6-8, 10; Potter Affidavit [Docket Number 7], Exhibit 7 at pp 28-31; Tummonds Affidavit [Docket Number 8], Exhibit 4 pp 6-7.

[7]    Bankruptcy court approval of the necessity and quality of Shaw Pittman's zoning services was required by 11 U.S.C. § 330(a)(3).

931.[8]  Based on this context, the Court should ignore CHG's mischaracterization of Defendants'

jurisdiction argument.

**B.      Collateral Estoppel Does Not Apply**

**1.      Introduction**

CHG states that the jurisdiction issue litigated in <u>Shaw Pittman v. Peter Shin</u>, 2004 Bankr.

Lexis 2262 (Bankr. D.C. 2004) and the jurisdiction issue being litigated in this case are "identical,"

and that collateral estoppel applies to prevent Defendants from now arguing jurisdiction based on

<u>Southmark</u> and its progeny.  For the reasons set forth below, the Court should reject CHG's

collateral estoppel argument as frivolous.

**2.      The Facts And Holding In <u>Shin</u>**

<u>Shin</u> was a chapter 11 case where Peter Shin himself was the sole debtor.  Shin's chapter 11

case was completely separate from CHG's chapter 11 case – <u>i.e.</u>, wholly different bankruptcy

estates, different sets of assets, different sets of creditors, and different Section 327 legal counsel.

To be clear, in the <u>CHG</u> chapter 11, Shaw Pittman served as debtor's counsel to CHG pursuant to

Section 327.  In the <u>Shin</u> dispute, however, Shaw Pittman was *not* counsel to Peter Shin.  As the

<u>Shin</u> decision itself reflects, Stephen Nichols of the Deckelbaum law firm served as Peter Shin's

Section 327 bankruptcy attorney.[9]  Furthermore, Shaw Pittman did not sue Peter Shin (in the <u>Shin</u>

---

[8]        Courts routinely refuse to separate malpractice claims from their bankruptcy context.  <u>See</u> <u>e.g.</u>, <u>In re Intelogic Trace, Inc.</u>, 200 F.3d 382, 388 (5th Cir. 2000) (finding "an identity of claims between the fee application hearing and this malpractice suit"); <u>Leisure Corp. v. Prochnow</u>, No. C-03-03012, 2007 WL 607696, *9 (N.D. Cal. Feb. 23, 2007) (agreeing with opinions in <u>Intelogic</u> and <u>Iannochino</u> that professional fee award and malpractice claim involve "same cause of action"); <u>Shaw v. Replogle</u>, No. C-00-2820, 2000 WL 1897344, at *5 (N.D. Cal. Dec. 22, 2000), <u>cert. denied</u>, 537 U.S. 990 (2002) (concluding that "malpractice claim is the same claim that [Shaw] made when objecting to Replogle's fees"); <u>Epstein v. Visher</u>, No. C-95-4167, 1997 WL 231108, *5 (N.D. Cal. Mar. 24, 1997) (unreported) (holding that malpractice claim should have been brought when fees were awarded because, among other reasons, malpractice claim arose out of a common nucleus of operative facts).

[9]        Thus, the intellectually honest analogy would involve a breach of contract and malpractice action by Peter Shin against Mr. Nichols for services rendered by him under the umbrella of his Section 327/330 engagement in <u>Shin</u>.  That issue, however, was not remotely addressed by Judge Teel in <u>Shin</u> or any other written decision.

chapter 11) to recover for services rendered to Peter Shin, but rather on fraud, negligence and other theories with respect to his role in hiring Shaw Pittman to provide legal services to his wife and his mother; services that were wholly unrelated to either of the Peter Shin or CHG chapter 11 cases. Thus, the services were not rendered by Shaw Pittman pursuant to a court-approved Section 327 engagement. Consequently, those services were never subject to review by the bankruptcy court under Section 330.[10] These are the critical facts missing in the <u>Shin</u> case; the <u>Shin</u> dispute did not involve Section 327 professionals, court-approved retention, court review and approval of services and fee applications or malpractice claims. There is no dispute that all of the factors before this Court were absent from <u>Shin</u>.

Moreover, <u>Shin</u> did not turn on a determination of the bankruptcy court's post-confirmation jurisdiction. The events giving rise to Shaw Pittman's claims against Peter Shin occurred after his bankruptcy filing and prior to confirmation of his plan. Shaw Pittman believed that this gave rise to bankruptcy-estate liability. The bankruptcy court disagreed and found it "plain" that Shaw Pittman's "claims are not based on Dr. Shin's conduct as a debtor-in-possession in administering the estate prior to confirmation," and found that jurisdiction was lacking even pre-confirmation. <u>Id</u> at *4, 6. The bankruptcy court rejected Shaw Pittman's sole basis for alleging jurisdiction in <u>Shin</u> -- i.e., that jurisdiction was retained by the express terms of Shin's confirmed plan -- because there was never jurisdiction over the claim. <u>Id</u>. at *7. Retained jurisdiction under CHG's plan is not the issue presented in this case, and it is not the issue addressed in <u>Southmark</u> and its progeny. For this reason, and for the additional reasons set forth below, CHG' collateral estoppel argument should be rejected.

---

[10]    While Shaw Pittman sent an engagement letter to Mrs. Shin and Mrs. Shin covering the services to be provided to them, it was subsequently discovered that Peter Shin intercepted their mail (including copies of invoices) and prevented them from executing the letter; though both Mrs. Shins regularly worked cooperatively with Shaw Pittman lawyers during the engagement and prior to the Shins' refusal to pay any of Shaw Pittman's invoices.

3.        **The Elements Of Collateral Estoppel**

The equitable doctrine of collateral estoppel requires the following elements:

(1), the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2), the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3), preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

See U.S. v. Hooker-Hankerson, 511 F.3d 164, 171 (D.C. Cir. 2007) (refusing to apply collateral estoppel where the "same issue" element was not satisfied); see also Martin v. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007); Restatement § 27(c).  In this case, where CHG states that is using "offensive collateral estoppel," the fairness element is afforded greater emphasis.  Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co., 744 F.2d 118, 125 (D.C. Cir. 1984), cert. denied, 469 U.S. 1196 (1988) ("Where offensive estoppel is involved, the element of 'fairness' gains special importance. . . . 'Fairness to the defendant' thus is a critical finding necessary for the application of offensive estoppel.").  Furthermore, the party contending that an issue has been conclusively litigated and determined in a prior action has the burden of proving that contention.  Restatement (Second) of Judgments ("Restatement") § 27(f).  CHG cannot meet its burden here.

4.        **CHG Fails To Establish Any Of The Elements Of Collateral Estoppel**

a.        **The Issue Raised Here Is Not "The Same" And Was Not "Contested By The Parties" Or "Submitted For Judicial Determination" In Shin**

(i)        **The Jurisdiction Issue In The Instant Case Is Not The Same Issue As The Jurisdiction Issue In Shin**

The jurisdiction issue being contested here is distinct from the jurisdiction issue contested in Shin.  The issue presented here is whether the Court possess subject matter jurisdiction over a cause of action alleging that the services of a Section 327 court-appointed professional, rendered within

the scope of the professional's duties, fell below the applicable standard of care (thus constituting legal malpractice).[11]

In contrast, neither party in <u>Shin</u> was a Section 327 professional. Therefore, no party alleged that bankruptcy-court-approved Section 327 services constituted malpractice, and no party alleged that a bankruptcy-court-approved engagement constituted a breach of contract. Instead, the sole issue in <u>Shin</u> was whether the court possessed jurisdiction over a fraud-based cause of action against Shin premised upon pre-confirmation conduct that the court found was unrelated to his bankruptcy-related duties.

This very distinction was expressly addressed by two Circuit Courts, each finding Section 1334(b) jurisdiction in malpractice cases against Section 327 professions, as compared to their own earlier decisions, <u>not</u> involving Section 327 professionals where such jurisdiction was found lacking. <u>See</u> <u>Southmark</u>, 163 F.3d at 931-32 (Fifth Circuit extensively distinguishes <u>Southmark</u>, which involved a Section 327 professional, from its earlier decision in <u>Wood v. Wood</u>, 825 F.2d 90 (5th Cir. 1987), which did not); <u>Geruschat</u>, 505 F.3d at 260-65 (Third Circuit extensively distinguishes <u>Geruschat</u>, which involved a challenge to Section 327 professional services, from its earlier decisions in <u>Stoe v. Flaherty</u>, 436 F.3d 209 (3d Cir. 2006) and <u>Resorts Int'l Inc. Litig. Trust v. Price Waterhouse</u>, 372 F.3d 154 (3d Cir. 2004), neither of which involved a challenge to Section 327 professional services). Plainly, the "same issue" requirement is not satisfied.

---

[11]    For descriptions of the issue, <u>see</u> <u>e.g.</u> <u>Geruschat</u>, 505 F.3d at 243 ("Does the bankruptcy court have subject matter jurisdiction to adjudicate a [malpractice] case removed from state court . . ."); <u>Grausz</u>, 321 F.3d at 469 (considering whether "the district court had bankruptcy jurisdiction over this action under 28 U.S.C. § 1334 because the malpractice claim arose in the bankruptcy case"); <u>Southmark</u>, 163 F.3d 925, 927 (5th Cir. 1999) (considering whether "the state-law malpractice claim is a 'core proceeding' in bankruptcy").

      **(ii)**      **The Jurisdiction Issue In This Case Was Never Contested By The Parties Or Submitted For Judicial Determination In <u>Shin</u>**

The sole jurisdiction argument made by Shaw Pittman in <u>Shin</u> was that the court retained its pre-confirmation jurisdiction pursuant to Shin's confirmed plan. Shaw Pittman did not cite to or make any arguments based upon the decisions, including the six Courts of Appeals decisions, that it submits are relevant to the instant jurisdiction dispute. Peter Shin also did not cite to or make any arguments based upon these legal authorities, and the Court did not address them. Thus, the jurisdiction issue presented in the instant case was neither contested by the parties in <u>Shin</u> nor was it presented to the bankruptcy court for judicial determination in <u>Shin</u>.

This element of estoppel was addressed in <u>GAF Corp. v. United States</u>, 818 F.2d 901, 915 n. 81 (D.C. Cir. 1987). While CHG relies primarily on <u>GAF</u> to support its argument, a reading of the decision reveals that it actually undermines CHG's position. <u>GAF</u> involved a lawsuit by Keene against the United States that was dismissed by the U.S. District Court for the Southern District of New York, which dismissal was affirmed based upon "three legal issues decided by the Second Circuit." <u>Id</u>. at 911. Subsequently, Keene sued the United States a second time on the very same facts in the U.S. District Court for the District of Columbia, attempting to "relitigate" one or more of those "precise" issues previously decided by the Second Circuit. In the D.C. action, both the District Court and Court of Appeals applied estoppel to prevent Keene from relitigating those precise issues. This aspect of <u>GAF</u> is legally unremarkable, and contrary to CHG's argument, has no bearing on the instant case. Shaw Pittman and CHG are not relitigating the "precise" jurisdiction issue previously litigated by both or either of them.

Highly relevant to the instant dispute, however, is the holding in <u>GAF</u> (omitted in CHG's Second Supplement) that collateral estoppel does not foreclose a legal argument not presented by a party in prior litigation. <u>GAF</u>, 818 F.2d at 915 n.81. Applying this principle, the <u>GAF</u> court

refused to apply estoppel to prevent Keene from raising a new argument that Keene had not previously presented for determination. "In this case, Keene asserts that federal courts have jurisdiction to hear its complaint on one other ground, neither argued nor addressed in *Keene I*." Id. at 915. "The judgment in *Keene I* thus exerts no preclusive effect as to this claim of jurisdiction." Id. at n.81. The Court then proceeded to thoroughly analyze the new legal issue raised by Keene. Id. at 915-16.

The only similarity between GAF and the instant dispute is that Keene sought, and Shaw Pittman seeks, judicial review of an argument not presented to the court in the prior case. In Shin, Shaw Pittman did not present a jurisdiction argument based on Southmark and its progeny, and Peter Shin did not argue against jurisdiction based on Southmark and its progeny. According to GAF, the judgment in Shin "thus exerts no preclusive effect as to this claim of jurisdiction." GAF 818 F.2d at 915 n.81.

> **b.    CHG Has Failed To Prove That The Issue Presented Here Was Both Actually And Necessarily Determined By The Court In Shin**
>
> > **(i)    The Jurisdiction Issue Presented Here Was Not Actually Decided In Shin**

As indicated above, the jurisdiction issue decided in Shin was whether pre-confirmation jurisdiction existed such that the plan could then be relied upon as a basis for retained jurisdiction. Judge Teel did not address the issue of whether Section 1334(b) jurisdiction exists over a challenge to any legal services, let alone zoning services rendered completely within the scope of a Section

327 professional's bankruptcy-court-supervised retention.[12]  He did not analyze, discuss, or even

cite to the four then-published U.S. Court of Appeals decisions governing such jurisdiction.[13]

      (ii)      **The Jurisdiction Issue Presented Here Was Not Necessarily Decided In <u>Shin</u>**

Once the court, in <u>Shin,</u> rejected post-plan retained jurisdiction because there was no pre-

plan jurisdiction, that ended the jurisdiction inquiry.  However, CHG argues that <u>Shin</u> went farther,

and somehow set a jurisdictional standard for all post-plan cases, regardless of the facts and

circumstances.  While Shaw Pittman disagrees, it does not matter because any ruling by Judge Teel

beyond the scope of plan-retained jurisdiction issue would have been either unnecessary (<u>i.e.</u>, dicta)

or an alternative holding, neither of which support an application of collateral estoppel.  <u>See</u> <u>e.g.</u>,

<u>Consumer Prod. Safety Comm'n v. Anaconda Co.</u>, 593 F.2d 1314, 1322 (D.C. Cir. 1979) ("The

dicta relating to aluminum branch circuit wiring systems were unnecessary to the judgment in the

Delaware case.  For the same reason, the Third Circuit's ruling on appeal . . . is not entitled to effect

on the basis of collateral estoppel in this case.");  <u>Ass'n of Bituminous Contractors, Inc. v. Andrus</u>,

581 F.2d 853, 860 (D.C. Cir. 1978) (holding that an issue was not necessarily determined, and the

elements of collateral estoppel were thus not met, where the court's decision in the first case was

broader than necessary for the outcome reached); <u>In re Complaint of McCarthy Bros. Co./Clark</u>

<u>Bridge</u>, 83 F.3d 821, 833 (7th Cir.), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u>, 519 U.S. 950 (1996) ("The law is replete

with examples of the unreliability of unnecessary findings, such as the law of collateral and the

principle that dicta is not binding in subsequent cases.").  <u>See</u> <u>also</u> <u>Jewish War Veterans of the U.S.</u>

<u>of Am., Inc. v. Gates</u>, 506 F.Supp. 2d 30, 40-41 (D.D.C. 2007) (declining to apply collateral

---

[12]      In the 2004 <u>Shin</u> decision, Judge Teel cited, on his own, the Fifth Circuit's 1987 <u>Wood</u> case, as neither Peter Shin nor Shaw Pittman cited <u>Wood</u> in their papers.  However, in <u>Shin</u> Judge Teel did not cite to the Fifth Circuit's 1999 <u>Southmark</u> decision, even though <u>Southmark</u> discusses <u>Wood</u> at substantial length.  This was not an oversight by Judge Teel, but rather a conscious decision not to address - - because he need not address - - the jurisdiction issue addressed and resolved in <u>Southmark</u>.

estoppel, in part, because the first determination was based on alternate grounds and included an

unnecessary ruling); <u>Vehicle Removal Corp. v. Lopez</u>, 269 B.R. 607, 612 (Bankr. N.D. Tex. 2001)

(applying Restatement § 27(i) and refusing to apply collateral estoppel); Restatement § 27

comments (h) and (i) ("If a judgment of a court of first instance is based on determinations of two

issues, either of which standing independently would be sufficient to support the result, then

judgment is not conclusive with respect to either issue standing alone") and Illustration 13.

<b>c.     Preventing Defendants From Litigating The Jurisdiction Issue Found In<br/><u>Southmark</u> And Its Progeny Would Work A Basic Unfairness</b>

Applying collateral estoppel to bar litigation over the jurisdiction issue here would be unfair

to all Defendants because, for the reasons explained above, the issue and argument presented to this

Court by Defendants were neither previously presented by Shaw Pittman nor ruled upon by the

bankruptcy court in <u>Shin</u>.  Moreover, the facts of <u>Shin</u> are so different than those presented here that

it would have made no sense for Shaw Pittman, Peter Shin or Judge Teel to address the jurisdiction

raised here.  Defendants have a right to be heard on their argument, and the equitable doctrine of

collateral estoppel and its policies[14] are not to the contrary.

<b>(i)     Unfairness With Respect To Defendant Shaw Pittman</b>

Even if the first two elements of collateral estoppel were somehow present (which they are

not), it would be unfair to bar defendant Shaw Pittman from litigating jurisdiction in this case.  First,

where the amount in controversy in the first action may have been so small in relation to the amount

in controversy in the second, preclusion would be plainly unfair.  <u>Croskey v. U.S. Office of Special</u>

<u>Counsel</u>, No. 96-5114, 1997 WL 702364, at *4 (D.C. Cir. Oct. 17, 1997) (where a losing party

---

[13]     Two significant Section 327/330(a)(3) jurisdiction cases were published by Circuit Courts after <u>Shin</u>
- - the Fourth Circuit's decision 2003 in <u>Grausz</u> and the Third Circuit's 2007 decision in <u>Geruschat</u>.

[14]     The Restatement describes the policies of collateral estoppel as "a desire to prevent repetitious
litigation of what is essentially the same dispute."  Restatement § 27(c).  There is nothing repetitious about
the arguments being made by Shaw Pittman to this Court.

lacked incentive to litigate an issue in the first case, but the stakes of the second trial are of a vastly

greater magnitude, there exists a basic unfairness barring the application of collateral estoppel);

Restatement § 28(j).  CHG now sues Shaw Pittman for at least $50 million, whereas the amount in

controversy in <u>Shin</u> was approximately $140,000.[15]  The financial stakes at issue in <u>Shin</u> pale in

comparison to the alleged liability in this case, and given the dramatically different circumstances

presented in each case, it would be unfair to collaterally estop Shaw Pittman from making its

jurisdiction argument here.

      Second, preclusion does not foreclose redetermination of an issue if it was unforeseeable

when the first action was litigated that the issue would arise in the context of the second action, and

if that lack of foreseeability may have contributed to the losing party's failure to litigate the issue

fully.[16]  <u>Tutt v. Doby</u>, 459 F.2d 1195, 1200 n.5 (D.C. Cir. 1972) ("Even where issues have been

fully litigated, the criterion of foreseeability serves to limit the estoppel effect of the first

judgment"); Restatement § 28(i).  Here, Shaw Pittman had no reason to believe that the <u>Shin</u>

decision would adversely impact unrelated jurisdiction issues not then before the court, such as the

one presented here.  In fact, in September 2004 when <u>Shin</u> was decided, Shaw Pittman and CHG

were actively engaged in litigation before the bankruptcy court and this Court (in <u>CHG I</u>) concerning

what Shaw Pittman believed to be all conceivable issues relating to its Section 327 services

(including the zoning services) rendered in CHG's separate chapter 11 case.  In September 2004

(when <u>Shin</u> was decided), Shaw Pittman had no reason to anticipate that CHG (in its chapter 11

case) was lying in wait until it believed federal jurisdiction vanished before bringing a lawsuit

against Shaw Pittman arising out of the very same facts and circumstances reviewed by the

---

[15]     Also, in <u>Shin</u> Shaw Pittman had alternative sources of repayment (<u>e.g.</u>, Mrs. Shin and Mrs. Shin, the clients and beneficiaries of Shaw Pittman's services).  In any event, shortly after issuance of the <u>Shin</u> decision, the matter favorably settled.

[16]     To be clear, Shaw Pittman is not seeking a "redetermination" of any issues it previously presented.

bankruptcy court and this Court in <u>CHG I</u>.  <u>See</u> Potter Affidavit [Docket Number 7], pp. 4-7 and cited Exhibits.

(ii)    <b>Unfairness With Respect To Defendants Potter And Tummonds</b>

Barring Defendants' jurisdiction arguments would be even more unfair to defendants Potter and Tummonds, who were not parties in <u>Shin</u>.  Each is now being sued, personally, by CHG for more than $50 million.

First, it would be a denial of due process, as neither would have their day in court.  <u>See</u> <u>e.g.</u>, <u>Blonder-Tongue Labs, Inc. v. Univ. of Ill.</u>, 402 U.S. 313, 329 (1971), cert. denied, 409 U.S. 1061 (1972) ("Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. . . .  Due process prohibits estopping them . . .."); <u>Pharm. Care Mgmt. Assoc. v. D.C.</u>, 522 F.3d 443, 446 (D.C. Cir. 2008) (enforcing a decision against the District in a case where it was not a party "would be to deprive the District of due process – it would not have had its day in court.").

Second, just as members of a trade association are not bound by decisions entered against the association (<u>see</u> <u>id.</u> at 447), defendants Potter and Tummonds, as employees of Shaw Pittman, are not bound by decisions entered against Shaw Pittman.

Third, collateral estoppel does not apply to someone who, as a matter of law, could not have obtained review of the judgment in the initial action.  <u>See</u> <u>High Plains Wireless, L.P. v. FCC</u>, 276 F.3d 599, 606 (D.C. Cir. 2002); <u>S. Union Co v. FERC</u>, 857 F.2d 812, 815-16 (D.C. Cir. 1988), <u>cert. denied</u>, <u>sub nom.</u>, 493 U.S. 1072 (1990); Restatement §§ 28(1), 34(3).  Neither Potter nor Tummonds had a legal right to take an appeal of the <u>Shin</u> decision.

Fourth, collateral estoppel does not apply to someone lacking adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.  <u>See</u> <u>Murray v. Gilmore</u>, 406 F.3d 708, 714 (D.C. Cir. 2005) (declining to apply collateral estoppel due, in part, to inadequate

incentive to litigate the first case fully); <u>Jack Faucett Assocs.</u>, supra, at 126 ("issue preclusion cannot be invoked against a party who did not have a 'full and fair' opportunity to litigate the issue to be precluded"); Restatement § 28(5).  Potter's role in <u>Shin</u> was exclusively limited to serving as Shaw Pittman's counsel.[17]  In addition to not being a party, he lacked opportunity or incentive to pursue some personal course of action in <u>Shin</u>.  Tummonds, like the approximately 30 other Shaw Pittman lawyers[18] who served as Section 327 professionals in CHG's bankruptcy case, was not even aware of the jurisdictional dispute in <u>Shin</u>.

For these reasons, regardless of the issue raised and addressed in <u>Shin</u>, neither Potter nor Tummonds are bound in any way by the decision.  Moreover, it would be wholly unfair, in the face of an alleged $50 million or more in personal liability, to use <u>Shin</u> as a basis for preventing either of them from making every legitimate argument in order to vindicate themselves and to promptly remove the cloud that this case places over their personal lives and careers.

> **5.      Even If Plaintiff Satisfied The Elements Of Collateral Estoppel, Exceptions Apply**
>
> **a.      The "Unmixed Question Of Law" Exception Applies**

Even if one accepted CHG's assertion that <u>Shin</u> actually resolved the legal issue presented by Defendants to this Court, then the D.C. Circuit's recent <u>Pharmaceutical</u> decision establishes that collateral estoppel still would not apply.  There, a Maine statute challenged by the Pharmaceutical Care Management Association ("Association") as violating ERISA was upheld by the First Circuit. When the Association sought to invalidate the same type of statute enacted in the District of

---

[17]      <u>See also</u> <u>Johnson v. D.C.</u>, No. 04-936, 2005 WL 1903551, at *6 (D.D.C. July 20, 2005) (declining to apply collateral estoppel against party in his individual capacity in a second action because his personal liability was never decided on the merits in the first action); Restatement § 36(2) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.").  Collateral estoppel has a "lesser preclusive effect" than res judicata.  <u>GAF</u>, 818 F.2d at 911.

[18]      <u>See</u> Potter Affidavit [Docket Entry 7], Exhibit Tab 6, p. 7 and Exhibit Tab 15, p. 5.

Columbia, based upon the same legal theory asserted in the Main litigation, the District of

Columbia, which was not a party in the prior action, sought to invoke collateral estoppel to prevent

the Association from relitigating the issue.  However, the Court rejected the District's argument

based on its application, in a "non-mutual case,"[19] of the "unmixed question of law" exception to

collateral estoppel, stating:

> In a non-mutual case, "an issue is not precluded if it is 'one of law and treating it
> as conclusively determined would inappropriately foreclose opportunities for
> obtaining reconsideration of the legal rule upon which it was based.'" . . . To
> apply collateral estoppel under these circumstances would prevent the court from
> performing its function of developing the law. . . .

> We do not believe collateral estoppel bars the Association's claims.  Both parties
> agree that the issues presented here are legal.  To foreclose our reconsideration of
> the legal issues would not aid judicial economy. . . . Applying collateral estoppel
> here would also freeze the development of the law in an area of substantial public
> interest.

> Pharmaceutical, 522 F.3d at 446-47 (citations omitted).

As in Pharmaceutical, the collateral estoppel issue presented to this Court by CHG involves

solely a legal issue - - CHG's allegation that Shin's resolution of pre-confirmation/plan-retention

jurisdiction necessarily extends to exclude the jurisdiction found to exist in the decisions, including

the six Circuit Court cases, upon which Defendants rely.  CHG repeatedly states that its collateral

estoppel argument does not turn on the facts.  See e.g. Second Supplement p. 1; CHG Reply

[Docket 27], page 2.  "Rather, Plaintiff [CHG] contends only that this Court is bound by the legal

standard articulated in the Memorandum Decision [Shin] for assessing § 1334(b) jurisdiction."  Id.

What CHG seeks is to apply collateral estoppel to prevent the Court from performing its function of

developing the law - - to prevent this Court from ruling consistently with the Courts of Appeals in

six other Circuits and the recent Elia decision.  Pharmaceutical, however, stands for the proposition

---

[19]     GAF was a "mutual" case – the parties to the earlier action in New York were the same as the parties
to the D.C. action.  The instant case is a "non-mutual case," as CHG, Potter or Tummonds were not parties in
Shin.

that even if the jurisdictional/legal issue decided in <u>Shin</u> were the same as the jurisdictional/legal issue presented here, collateral estoppel would not prevent the Court from so ruling.

### b.    There Have Been Significant Changes In The Legal Context Since <u>Shin</u>

As a separate basis for its ruling, the D.C. Circuit in <u>Pharmaceutical</u> refused to apply collateral estoppel because of significant changes in the law after the First Circuit's decision. <u>Pharmaceutical</u>, 522 F.3d at 447.  Again, if one accepts CHG's assertion that <u>Shin</u> actually resolved the legal issue presented by Defendants to this Court, collateral estoppel should not be applied for this reason as well.  First, at least three significant jurisdiction cases on point with the present case were published after <u>Shin</u> - - the Fourth Circuit's decision in <u>Grausz</u>, the Third Circuit's recent decision in <u>Geruschat</u>, and the even more recent decision by the Western District of New York in <u>Elia</u>.  Assuming <u>arguendo</u> the bankruptcy court in <u>Shin</u> believed that it was considering and addressing the jurisdiction issue raised in <u>Southmark</u> and its progeny, this Court should have the benefit of considering these decisions.  Second, as set forth in Defendants' Response to CHG's First Supplement [Docket Number 24], n. 2, Section 1334 was amended in 2005, a year after <u>Shin</u>, and this Court should have the benefit of considering such amendment.

[Remainder of page is intentionally blank]

**III.    CONCLUSION**

For the reasons stated in Defendants' Memorandum in Opposition to CHG's Motion for Leave to File Second Supplemental Brief [Docket Number 26], and for the reasons stated herein, Defendants request that the Court conclude that <u>Shin</u> does not collaterally estop Defendants from presenting their jurisdiction claim and deny CHG's request to remand.

Dated:  June 20, 2008                                Respectfully submitted,

                                                                PILLSBURY WINTHROP SHAW PITTMAN, LLP

                                                                By:      /s/ Jack McKay_____
                                                                          Jack McKay (No. 159335)
                                                                          2300 N Street, N.W.
                                                                          Washington, D.C. 20037-1128
                                                                          (202) 663-8000
                                                                          For Defendants

1 of 3 DOCUMENTS

**In re D.A. ELIA CONSTRUCTION CORP., Plaintiff, v. DAMON & MOREY, LLP, Defendant.**

07-CV-143A

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

*2008 U.S. Dist. LEXIS 25496*

March 31, 2008, Decided
March 31, 2008, Filed

**PRIOR HISTORY:** *In re D. A. Elia Constr. Corp., 2007 U.S. Dist. LEXIS 47682 (W.D.N.Y., July 2, 2007)*

**COUNSEL:** [*1] For D.A. Elia Construction Corp., Plaintiff: David B. Smith, LEAD ATTORNEY, Feuerstein & Smith, LLP, Buffalo, NY.

For Damon & Morey LLP, Defendant: Daniel F. Brown, LEAD ATTORNEY, Damon & Morey LLP, Buffalo, NY.

**JUDGES:** HONORABLE RICHARD J. ARCARA, CHIEF JUDGE.

**OPINION BY:** RICHARD J. ARCARA

**OPINION**

DECISION AND ORDER

**INTRODUCTION**

On February 14, 2007, plaintiff D.A. Elia Construction Corp. ("Elia") commenced an action in New York State Supreme Court against defendant Damon & Morey LLP, the law firm that represented Elia as debtor in connection with a massive Chapter 11 reorganization. The state law complaint asserted claims of legal malpractice, breach of contract, conversion and attorney misconduct in violation of *§ 487* of New York State Judiciary Law.

Damon & Morey removed the action to federal court under *28 U.S.C. § 1452(a)*, asserting that the state law claims "arise in" or are "related to" Elia's Chapter 11 petition within the meaning of *28 U.S.C. § 1334*. Damon & Morey moved for dismissal and/or summary judgment under principles of *res judicata* and sought monetary

sanctions and injunctive relief against Elia. Elia opposed the motion and moved to remand.

For the reasons stated below, the Court: (1) denies Elia's [*2] motion to remand; (2) grants summary judgment because all of the state law claims are barred by *res judicata;* and (3) denies the motion for sanctions and injunctive relief without prejudice.

**BACKGROUND**

**A. Elia's Chapter 11 Bankruptcy and the Related Attorneys' Fee Dispute**

In order to fully address the issues relevant to this case it is necessary to summarize briefly the relationship and prior proceedings between the parties. [1]

> 1   The Court takes judicial notice of the proceedings discussed herein and the legal documents filed in connection with those proceedings.

On March 30, 1994, Elia filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. Shortly thereafter, Elia moved to employ Damon & Morey as its counsel. The bankruptcy court granted that motion in June 1994.

Damon & Morey's representation of Elia in connection with the Chapter 11 matter was extensive and spanned over 10 years. The firm also represented Elia in numerous other related federal and state court lawsuits, including over eight federal court actions and a bench trial before the New York Court of Claims. Damon & Morey acted at the direction of the debtor and its principal, David A. Elia, [*3] who is also an attorney.

Damon & Morey obtained favorable results in many of the proceedings. The firm, working at times in conjunction with other counsel, obtained various judgments

and settlements that benefitted the estate. The firm also successfully objected to numerous claims on Elia's behalf, which led to expungement of almost $ 1 million in claims against the bankruptcy estate. In the end, the bankruptcy was quite successful. The total funds collected through the various litigation and settlement proceedings ultimately exceeded the total amount of creditor claims, thereby leaving a surplus in the estate.

Following payment in full of all creditors, Damon & Morey moved in bankruptcy court for an award of attorneys fees under *11 U.S.C. § 330*. The bankruptcy court had granted several interim fee applications throughout the course of the bankruptcy and in June 2004 Damon & Morey filed its final fee application seeking $ 358,756.62 in attorneys fees and disbursements. Elia strenuously opposed the final fee application asserting, among other things, that the firm had committed legal malpractice and had labored under various conflicts of interest.

On October 19, 2004, the bankruptcy judge [*4] presiding over the Elia's Chapter 11 proceeding granted Damon & Morey's final fee application in full and rejected Elia's objections as simply a "gambit" to avoid paying counsel fees. The bankruptcy judge also found that Elia's allegations of malpractice lacked credibility and were belied by the record.

Elia appealed the bankruptcy court's ruling on the attorneys' fees issue to this Court. On June 19, 2006, this Court issued a Decision and Order affirming the bankruptcy court's October 19, 2004 award of attorneys' fees. *See* Decision and Order dated June 19, 2006, in *In re Elia*, 04-CV-975, Dkt. No. 21 (affirming the bankruptcy court's award of *11 U.S.C. § 330* fees and outlining the bankruptcy court proceedings relating thereto).

Elia then appealed this Court's Decision and Order to the United States Court of Appeals for the Second Circuit. On June 28, 2007, the Second Circuit issued a Summary Order affirming this Court's judgment. *See* Summary Order in *In re Elia*, 04-CV-975, Dkt. No. 33.

**B. Filing of the State Court Action and Removal**

While the matter was on appeal to the Second Circuit, Elia filed a complaint against Damon & Morey on February 14, 2007 in New York State Supreme Court asserting [*5] various state law causes of action relating to the firm's legal representation of Elia during the Chapter 11 proceeding. Specifically, the complaint alleges breach of a legal retainer agreement (first cause of action); legal malpractice (second cause of action); conversion (third cause of action) and attorney misconduct in violation of *§ 487* of the New York State Judiciary Law (fourth cause of action).

Damon & Morey promptly removed the action to this Court asserting that all of Elia's state law claims ei-ther "arise in" or are "related to" the Chapter 11 proceeding, and as such, this Court has original jurisdiction over those claims under *28 U.S.C. § 1452(a)*. Damon & Morey then moved for dismissal and/or summary judgment asserting that all of the state law claims are barred by *res judicata*. Elia opposed the motion and moved to remand the case back to state court. This Court heard argument on February 7, 2008, at which point the matter was deemed submitted.

**DISCUSSION**

**A. Motion to Remand**

Damon & Morey removed the action to this Court asserting jurisdiction under *28 U.S.C. § 1334(b)* which provides:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers [*6] exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

*See 28 U.S.C. § 1334(b)*. Damon & Morey asserts that all of Elia's state law claims "arise in" or are "related to" the Chapter 11 proceeding. If Damon & Morey is correct, removal was proper under *28 U.S.C. § 1452(a)* (permitting a party to remove a cause of action to district court where the district court has jurisdiction of the claim under *28 U.S.C. § 1334*).

A cause of action "arises under" Title 11 when the relief sought is based on a right created by Title 11. A matter "arises in" Title 11 when "the gravamen of the proceeding arises in the particular bankruptcy case and would have no existence outside of bankruptcy." *See Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., 357 F. Supp.2d 529, 535 (E.D.N.Y. 2004); Pinnacle Corp. v. Long-term Capital Mgmt., 237 B.R. 240, 242 (D. Conn. 1999)*. The Fifth Circuit explained the difference between "arising under" and "arising in" jurisdiction as follows:

> Congress used the phrase "arising under [*7] title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. Apparently, the phrase was taken from *28 U.S.C. § 1331*, conferring federal question jurisdiction in which it carries a similar and well-accepted meaning. The

meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

*See Matter of Wood, 825 F.2d 90, 96-97 (5th Cir. 1987)*(footnotes and citations omitted)(emphasis in original).

Elia's complaint raises four causes of action: (1) a breach of contract action alleging that Damon & Morey breached its retainer agreement with Elia by "failing to provide adequate legal representation" in connection with the Chapter 11 and related proceedings, *see* Verified Compl, Dkt 1, Ex. C, at P 15; (2) a negligence action alleging that Damon & Morey committed legal malpractice in connection with the legal services rendered during those proceedings; (3) a claim [*8] for conversion of funds belonging to the bankruptcy estate; and (4) an allegation of attorney misconduct committed during the bankruptcy proceedings, which Elia claims violated § 487 of the New York State Judiciary Law.

There can be no doubt that all of Elia's state law claims "arise in" the bankruptcy proceeding within the meaning of *28 U.S.C. § 1334*. The gravamen of each cause of action is that Damon & Morey provided substandard legal services in the course of representing Elia in the Chapter 11 and related legal proceedings. But for Damon & Morey's representation of Elia in the bankruptcy case, there would be no cause of action. Since all of the state law claims "would have no existence outside of the bankruptcy," *see Matter of Wood, 825 F.2d at 97*, the "arise in" requirement is clearly met. Therefore, removal of this action was proper under *28 U.S.C. § 1452(a)* and the motion to remand is denied. [2]

> 2  Alternatively, Elia argues that even if removal was proper, remand should be granted on equitable grounds. As will be made clear below, remand on equitable grounds is inappropriate since all of the state law claims are barred by *res judicata.*

**B. Motion for Summary Judgment on *Res Judicata* [*9] Grounds**

Following removal, Damon & Morey moved to dismiss plaintiff's state law causes of action, or alternatively moved for summary judgment, arguing that all of Elia's claims are barred by the doctrine of *res judicata.* For the reasons stated, the Court agrees.

In considering a motion for summary judgment, this Court draws all factual inferences in favor of the non-moving party. *See Davis v. Blige, 505 F.3d 90, 97 (2d Cir. 2007)*. Summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Under the doctrine of *res judicata,* "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981); see Brown v. Felsen, 442 U.S. 127, 131, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979); NLRB v. United Technologies Corp., 706 F.2d 1254, 1259 (2d Cir. 1983)*. To determine whether the doctrine of *res judicata* bars a subsequent action, the Court considers whether: (1) the prior decision was a final judgment on the merits; (2) the litigants were the same parties; (3) the prior court was [*10] of competent jurisdiction; and (4) the causes of action were the same. *See In re Layo, 460 F.3d 289, 291 (2d Cir. 2006); Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 87-88 (2d Cir. 1997)*. In the bankruptcy context, the Court also considers whether an independent judgment in a separate proceedings would impair, destroy, challenge, or invalidate the enforceability or effectiveness of a reorganization plan. *In re Layo, 460 F.3d at 292; Corbett, 124 F.3d at 87-88.*

As to the first factor, the bankruptcy court's prior decision awarding attorneys' fees to Damon & Morey under *11 U.S.C. § 330* was clearly a final judgment on the merits. Indeed, it was appealed as a final judgment by Elia to this Court and, after this Court entered judgment on the appeal against Elia, Elia appealed this Court's final judgment to the Second Circuit. The Second Circuit then issued its own judgment rejecting Elia's objections to the award of the attorneys' fees.

As to the second factor, the parties to this action and the prior fee dispute are identical. As to the third factor, the bankruptcy court was a court of competent jurisdiction with authority under *11 U.S.C. § 330* adjudicate the fee dispute.

As to [*11] the fourth factor, identity of claims for *res judicata* purposes exists when the second cause of action involves the same "claim" or "nucleus of operative fact" as the first. *See In re Layo, 460 F.3d at 292* (citing *Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997)*). The "nucleus of operative facts" in both proceedings - this action and the bankruptcy fee application - are the same. Both actions challenge the quality of legal services rendered by Damon & Morey as debtor's counsel in the bankruptcy and related proceedings. All four state law claims are premised upon some

2008 U.S. Dist. LEXIS 25496, *

allegation that the firm committed malpractice in rendering those legal services. [3]

    3  It is of no consequence that Elia attempts to characterize some of its state law claims as breach of contract, conversion and judiciary law violations because it is clear that all of those state law claims are founded upon some complaint about the quality of legal services provided by the firm in connection with the Chapter 11 proceeding. *See In re Teltronics Inc., 762 F.2d 185, 192 (2d Cir. 1985)* ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res* [*12] *judicata*."). Further, to the extent that Elia now claims that some of its malpractice actions relate to pre-petition malpractice, that allegation is belied by the allegations in the complaint itself, which outlines malpractice and other misconduct alleged to have been committed in connection with the bankruptcy and related proceedings.

    In *Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003),* the Fourth Circuit addressed whether a legal malpractice claim brought after the entry of a final order approving fees under *11 U.S.C. § 330* was barred by the doctrine of *res judicata.* The Court held that it was because the "legal malpractice claim [was] rooted in the same cause of action as the earlier claim for [attorneys'] fees." *Id. at 473.* Likewise, the First and Fifth Circuits have also considered this issue and held that state law malpractice claims brought after the entry of a final order approving *11 U.S.C. § 330* fees are barred by the doctrine of *res judicata. See In re Iannochino, 242 F.3d 36 (1st Cir. 2001); In re Intelogic Trace, Inc., 200 F.3d 382 (5th Cir. 2000); see also In re Robotic Vision Sys., Inc., 343 B.R. 393 (D.N.H. 2005); In re Blair, 319 B.R. 420 (D. Md. 2005)* In so ruling, [*13] the Circuits considered whether the plaintiff knew or should have known about the basis of its malpractice claim at the time that attorneys fees were approved and whether the bankruptcy court provided an effective forum to litigate those claims. *See Grausz, 321 F.3d at 473-74; In re Intelogic Trace, 200 F.3d at 388.*

    As in *Grausz* and *Intelogic,* all of the misconduct alleged to have been committed by Damon & Morey was known to Elia at the time that the bankruptcy court approved the final fee application. In fact, many of the same allegations made by Elia in its state law complaint were previously made by Elia in its objections to Damon & Morey's final fee application. Specifically, Elia argued to the bankruptcy court that the firm had labored under a conflict of interest, had committed legal malpractice and had failed to turn over money owed to the estate. The bankruptcy court provided Elia with ample opportunity

raise those claims, but ultimately rejected them as meritless. Both this Court and the Second Circuit have expressly determined that the bankruptcy court gave adequate consideration to Elia's allegations of malpractice. *See In re Elia,* 04-cv 975, Dkt. No. 21 (this Court's order [*14] affirming bankruptcy court's award of *§ 330* fees and finding that bankruptcy court considered but rejected the malpractice allegations); and *id.* at Dkt. No. 33, at 3 and 4 (Second Circuit's Summary Order determining that the bankruptcy court gave Elia "more than ample opportunity to present its arguments" regarding its claims of "conflicted and negligent representation"). As such, it cannot be said that Elia was denied the opportunity to raise these claims in the prior action. [4]

    4  Elia's claim that the bankruptcy court "explicitly refused to hear any allegations related to attorney malpractice" *see* Dkt. 12, at P 24, is simply inaccurate and distorts the bankruptcy court's ruling. The bankruptcy judge explicitly refused to hear Elia's claim that the firm had committed *prepetition* malpractice (i.e. malpractice before the firm was appointed as debtor's counsel in 1994). Elia had argued to the bankruptcy court that it had an oral agreement with the firm to permit Elia to raise its pre-petition malpractice claims in connection with the firm's application for fees under *11 U.S.C. § 330.* Damon & Morey denied the existence of any such oral agreement and the bankruptcy judge scoffed at the notion, [*15] indicating that any such oral agreement would be improper because the bankruptcy court lacked jurisdiction to adjudicate pre--petition malpractice claims. The bankruptcy judge also suggested that any pre-petition malpractice claim should have been timely pursued in state court. However, as to Elia's claims of post-petition malpractice (which comprised the majority of its objections to the *§ 330* application), the bankruptcy judge fully considered - but rejected - Elia's allegations.

    In making its determination as to whether Damon & Morey's fee application should be granted, the bankruptcy court was required to consider "the nature, the extent, and the value of such services." *See 11 U.S.C. § 330(a)(3).* Its approval of Damon & Morey's fees necessarily involved an assessment of the quality of work performed by the firm and a rejection of Elia's allegations of misconduct. Indeed, as this Court stated in connection with its Decision and Order affirming the bankruptcy court:

    The bankruptcy court fully considered [Elia's] allegations of misconduct but found them to be without merit. As is evident from the record, [Bankruptcy] Judge Kaplan was nothing short of astounded by those allega-

tions. [*16] So much so that, after hearing argument on the objections, he gave the debtor an opportunity to submit further evidence and briefing in support of its position. After reviewing those supplemental submissions, [Bankruptcy] Judge Kaplan found that the allegations of malpractice and misconduct lacked credibility and were belied by the record.

> *See* Decision and Order dated June 19, 2006, at 20, in *In re Elia*, 04-cv 975, Dkt. No. 21 (affirming bankruptcy court's award of *§ 330* fees). This Court further observed that:

>> having presided over this massive reorganization for nearly ten years, Judge Kaplan was in the best position to evaluate the value of the services performed by Damon & Morey, the extent to which those services benefitted the estate, and the extent to which any of the alleged conflicts may have caused [Elia] prejudice.

*Id.* at 21. The present action is nothing more than an attempt by Elia to relitigate issues that were previously decided against it by the bankruptcy court, this Court and the Second Circuit. Such conduct represents the very essence of what the *res judicata* doctrine was designed to foreclose - the relitigation of previously decided issues in a subsequent action. In [*17] accordance with *Grausz, Intelogic Trace* and *Iannochino*, this Court finds that Elia's state law claims are barred by *res judicata*.

## C. Motion for Sanctions and Injunctive Relief

In its motion, Damon & Morey also requests that the Court impose monetary sanctions and that it enjoin Elia from "commencing further proceedings before any court, tribunal, governmental or regulatory body regarding any of those matters which are the subject of the lawsuit or which were the subject of the [bankruptcy fee dispute]." *See* Dkt. 9, at 20. The firm cites *28 U.S.C. § 1927* and this Court's inherent power to sanction as authority for its request. [5]

> 5 Damon & Morey also cites *Fed. R. Civ. P. 11* as a basis for imposing sanctions. However, because *§ 1927* and this Court's inherent power provide adequate authority for the imposition of sanctions and appear to speak more directly to the conduct in this case, the Court finds it unnecessary to address whether sanctions could also be imposed under *Rule 11*.

*Section 1927* provides that sanctions may be imposed upon a party who intentionally and unreasonably delays or multiplies legal proceedings. The statute provides:

> Any attorney or other person admitted to conduct cases [*18] in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*See 28 U.S.C. § 1927*. The statute authorizes the imposition of sanctions only "when there is a finding of conduct constituting or akin to bad faith." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004), cert. denied, 543 U.S. 1177, 125 S. Ct. 1309, 161 L. Ed. 2d 161 (2005); Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997).* The Second Circuit has held that an award of sanctions under *§ 1927* is permissible only "'when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *State Street Bank, 374 F.3d at 180* (quoting *In re 60 East 80th Street Equities, 218 F.3d 109, 115 (2d Cir. 2000)*).

This Court also has the inherent power to sanction parties and their attorneys, which is derived from the Court's authority to manage its own affairs to achieve the orderly and expeditious disposition of cases. *See* [*19] *Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000)* (citing *Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*). The Second Circuit has cautioned that a decision to impose sanctions under either *§ 1927* or the Court's inherent power should be made "with restraint" and may not be imposed unless the Court finds clear evidence that: "'(1) the offending party's claims were entirely meritless; and (2) the party acted for improper purposes.'" *Id.* (quoting *Agee v. Paramount Communications Inc., 114 F.3d 395, 398 (2d Cir. 1997)*).

As is readily apparent from this Decision and Order, the Court finds Elia's arguments in favor or remand and against the motion for summary judgment to be completely without merit. In opposing the motion to dismiss on *res judicata* grounds, Elia did not even attempt to distinguish the most obviously relevant case law against it - the First, Fourth and Fifth Circuit rulings holding that a bankruptcy court's grant of fees under *11 U.S.C. § 330* bars any subsequent malpractice claims premised upon those same services. *See Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003); In re Iannochino, 242 F.3d 36 (1st*

Cir. 2001); *In re Intelogic Trace, Inc., 200 F.3d 382 (5th Cir. 2000)*. [*20] [6] Instead, Elia attempts to mischaracterize the record by suggesting that the bankruptcy court never considered its claims of malpractice and attorney misconduct. Both this Court and the Second Circuit have expressly rejected that argument and have found that the bankruptcy court gave adequate consideration to Elia's claims of post-petition malpractice. *See In re Elia,* 04-CV-975, Dkt. No. 21, at 20 (this Court's Decision and Order stating that "[t]he bankruptcy court fully considered [Elia's] allegations of misconduct but found them to be without merit"); and *id.* at Dkt. No. 33, at 3 and 4 (Second Circuit Summary Order stating that the bankruptcy court gave Elia "more than ample opportunity to present its arguments" regarding its claims of "conflicted and negligent representation").

> [6] Of course, the Court recognizes that those Circuit decisions provided only persuasive and not binding legal authority. However, in the absence of any Second Circuit authority to the contrary, the Court finds Elia's failure to even address or distinguish those cases troublesome.

In light of those express findings, it is difficult to believe that the state court action was filed by Elia in good faith. Even [*21] if Elia did have some good faith basis for initially filing its state court claims, it should have been clear that its position was meritless upon reviewing the cases cited in Damon & Morey's motion to dismiss. This is particularly true where, as here, Elia's principal is also an attorney and therefore presumably understood the *res judicata* arguments being raised. Nevertheless, Elia chose to oppose the motion and filed its own motion to remand.

The foregoing certainly provides sufficient evidence for this Court to conclude that the instant action was brought in bad faith and for the purpose of harassment and delay. The Court also notes that Elia has filed two separate bankruptcy appeals and both of those appeals are currently pending before this Court. *See In re D.A. Elia Constr. Corp.,* 07-CV-754, and *In re D.A. Elia*

*Constr. Corp.,* 08-CV-103. The Court has not yet had a full opportunity to consider the merits of those appeals. [7]

> [7] One of the appeals was dismissed on procedural grounds and a motion by Elia to reinstate the appeal is currently pending.

At this juncture the Court finds it prudent to heed the Circuit's admonition to exercise restraint and denies Damon & Morey's motion for [*22] sanctions and injunctive relief without prejudice. If, upon consideration of the pending bankruptcy appeals, it is determined that those appeals are frivolous and were brought for the purpose of harassment and delay, the Court will entertain a renewed motion by Damon & Morey for monetary sanctions and/or injunctive relief. In the interim, Elia is forewarned that any subsequent attempts to relitigate issues that have been finally adjudicated in connection with the attorney fee dispute will be deemed to be brought in bad faith and may provide the basis for imposing sanctions and/or injunctive relief. Elia also would be well advised to consider voluntarily withdrawing any of the pending bankruptcy appeals if it now knows or should know that the appeal is without merit.

## CONCLUSION

For the reasons stated, the Court hereby: (1) denies Elia's motion to remand; (2) grants Damon & Morey's motion for summary judgment on *res judicata* grounds; and (3) denies the motion for sanctions and injunctive relief without prejudice.

SO ORDERED.

s/ *Richard J. Arcara*

HONORABLE RICHARD J. ARCARA

CHIEF JUDGE

UNITED STATES DISTRICT COURT

DATED: March 31, 2008