## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____
                                             )
**CAPITOL HILL GROUP,**                      )
                                             )
            **Plaintiff**                    )
                                             )
        **v.**                               )        **Civil Action No. 07-1936 (RCL)**
                                             )
**PILLSBURY WINTHROP**                       )
**SHAW PITTMAN LLP,** *et al.*               )
                                             )
            **Defendants.**                  )
_____)

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................4

FACTS.............................................................................................................5

    I.    Facts Relevant to CHG's Malpractice Claims ...............................5

    II.   Facts Relevant To The Bankruptcy Fee Disputes Between CHG
        And Defendants..........................................................................8

    A.  Fee Dispute Unit  No. 1 (January 12, 2004 – April 20, 2004).................9

    B.  Fee Dispute Unit No. 2 (April 19, 2004 – August 20, 2004).................9

    C.  Fee Dispute Unit No. 3 (September 23, 2004 – December 2, 2004) ........9

    D.  Fee Dispute Unit No. 4 (December 7, 2004 – June 22, 2005)................10

    E.  Fee Dispute Unit No. 5 (June 24, 2005 – August 1, 2005).................10

    F.  Subsequent Fee Disputes and Appeals Resolved By Consent Of The Parties......10

ARGUMENT ...................................................................................................11

    I.    Summary of Argument..............................................................11

    II.   Standard Of Adjudication ..........................................................13

    III.  There Exist Genuine Issues Of Material Fact As To Whether The Statute Of
        Limitations Bars Plaintiff's Claims........................................................14

    A.  In Light Of The Discovery Rule, Summary Judgment On Statute Of
        Limitations Grounds Is Unwarranted With Regard To CHG's Claims
        Premised Upon The Argument Omission................................................15

    1.  Knowledge Of The Injury ................................................................16

    2.  Knowledge Of The Cause In Fact Of The Putative Injury.................17

    3.  Knowledge Of "Some Evidence Of Wrongdoing CHG Did Not
        Have Actual Or Constructive Knowledge Of The Delivery Omission
        During Any Of Fee Disputes Nos. 1-3, Or Of The Argument
        Omission During Any Of Fee Disputes Nos. 1-5 .....................................19

**IV.  Plaintiff's Claims Stemming From The Delivery Omission Are Not Precluded By An Asserted Lack Of Duty By Defendants To Forward Relevant Communications to CHG After January 7, 2004** .................................................**22**

**V.  There Exist Genuine Issues Of Material Fact As To Whether The Doctrine Of Res Judicata Bars Plaintiff's Claims** ..................................................**27**

**A.  Introduction** ...........................................................................................**28**

**1  Neither The Delivery Omission, Nor The Argument Omission, Could Have Beenm Raised In Fee Dispute Unit Nos. 1-5** ...........................................**28**

**2  There Existed Numerous Procedural And Jurisdictional Bars Which Precluded CHG From Asserting The Delivery Omission In The Parties' Fee Dispute** ..............................................................................**34**

**a.  CHG Would Have Been Jurisdictionally Foreclosed From Asserting The Delivery Omission Or The Argument Omission In Fee Dispute Unit Nos. 4-5, In Light Of The Finality Of The Decisions Rendered In Fee Dispute Unit Nos. 1-2** .....................................................................**34**

**b.  CHG Could Not Have Asserted The Delivery Omission Or The Argument Omission In Fee Dispute Unit No. 4, Because, In Adjudicating This Appeal, CHG Was Limited To The Record Established In Fee Dsipute Unit No. 3** .........**38**

**C.  Since Fee Dispute Unit Nos. 1-5 Arose Out Of A Different Nucleus Of Facts Than The Case Sub Judice, This Case Is Based Upon A Different Transaction And Occurrence Than The Parties' Prior Fee Dispute Units** ..........**40**

**D.  The Doctrine of *Res Judicata* Is Inapplicable Because None Of The Fee Awards Rendered In Fee Dispute Unit Nos. 1-5 Was Based On A "Performance Driven Fee"** ........................................................................**45**

**VI.  The Entry of Summary Judgment Must Be Deferred Pursuant To Rule 56(f), Fed. R. Civ. P.** ...............................................................................................**46**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____
                                           )
**CAPITOL HILL GROUP,**                    )
                                           )
            **Plaintiff**                  )
                                           )
        **v.**                             )        Civil Action No. 07-1936 (RCL)
                                           )
**PILLSBURY WINTHROP**                     )
**SHAW PITTMAN LLP,** *et al.*             )
                                           )
            **Defendants.**                )
_____)

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Capitol Hill Group ("CHG"), through its undersigned counsel, hereby files this Opposition to Defendants' Motion for Summary Judgment, and in support thereof states as follows.

### INTRODUCTION

This action commenced on September 7, 2007 in the Superior Court of the District of Columbia. It was removed to this Court by Defendants on October 26, 2007. CHG filed a Motion to Remand this case back to the Superior Court on November 9, 2007. CHG's Motion for Remand was denied by this Court in an order entered on July 2, 2008.

On October 29, 2007, only days after the removal of this action, Defendants filed their Motion For Summary Judgment ("SJ Motion"). The SJ Motion was filed before the commencement of any discovery whatsoever. The SJ Motion is predicated upon the following three arguments:

1.    That the applicable District of Columbia statute of limitations bars the so-called "Argument Omission."[1]

_____

[1] The "Argument Omission," as mentioned herein, refers to CHG's allegation that during the pendency of Defendants' representation of CHG before the Zoning Administrator ("ZA") and the District of Columbia Board of Zoning Adjustment (the "BZA"), the Defendants failed to assert on behalf of CHG certain

2.    That the so-called Delivery Omission[2] fails as a matter of law because Defendants purportedly did not owe Plaintiff any duty to deliver pleadings or other papers, subsequent to their withdrawal as counsel for Plaintiff in Plaintiff's bankruptcy case (In Re Capitol Hill Group, Bankr. D.D.C. Case No. 02-359, hereinafter the "Bankruptcy Case") on January 7, 2004; and

3.    That all three counts of the Complaint are barred by *res judicata*.

The Plaintiff will demonstrate below that there exist genuine disputes of material fact with regard to all three of the foregoing contentions and, therefore, that Defendants are not entitled to summary judgment.

## **FACTS**

In light of this Court's prior familiarity with this case, what follows below is an abbreviated recitation of the core facts most directly relevant to the SJ Motion. To the extent the facts below are in dispute, CHG supports these facts with citations to the several Affidavits being filed contemporaneously herewith.

I.    Facts Relevant to CHG's Malpractice Claims

CHG is the owner of commercial real estate located at 700 Constitution Avenue N.E., Washington, D.C. (the "Property"). A portion of the Property was leased to Capitol Hill Community Hospital and Capitol Hill Healthcare Corporation, which operated a 60 bed long-term acute care hospital (the "Hospital") and a 117 bed skilled nursing facility (the "Nursing Center"), respectively.

---

municipal regulations pertaining to historic landmarks and buildings contributing to the character of historic districts, as discussed more fully *infra*.

[2] The "Delivery Omission," as mentioned herein, refers to CHG's allegation that Defendants committed professional malpractice and a breach of fiduciary duty by failing to transmit the September 9, 2004 Order of the BZA to CHG in a prompt and timely manner upon its receipt by Defendants on or about September 28, 2004.

The malpractice alleged by CHG arises out of Defendants' substandard representation of CHG in certain zoning matters (collectively, the "Zoning Representation"). In the course of the Zoning Representation, Shaw Pittman represented CHG before the D.C. Zoning Administrator (the "ZA") in order to obtain Certificates of Occupancy for the Hospital and Nursing Center located upon the Property. During this representation, on March 26, 2003, the ZA issued Certificate of Occupancy 51290 for the Hospital, authorizing a "Hospital and 60 Parking Spaces" and Certificate of Occupancy, CO 51289, for the Nursing Center, authorizing a "Community Based Residential Facility-Health Care Facility That Provides Housing For The Handicapped. 25 Parking Spaces and 117 Beds."

In response to the issuance of these Certificates of Occupancy, the Stanton Park Neighborhood Association filed Appeal No. 17043 (the "Appeal") with the D.C. Board of Zoning Adjustment (the "BZA"). Defendants Shaw Pittman, Tummonds and Potter also represented CHG in the Appeal. On January 6, 2004, the Appeal was initially denied by the BZA by a vote of 3-2. However, shortly thereafter, on February 10, 2004, the BZA, *sua sponte*, voted 5-0 in a closed session to reconsider a portion of the denial. Upon reconsideration, on February 24, 2004, the BZA voted 5-0 to partially grant the Appeal, determining that the ZA had imposed incorrect parking requirements with regard to CO 51289 and ordering that CO 51289 be reformed to reflect a parking requirement of one off-street parking space for each bed. Thus, as a result of the BZA's disposition of the Appeal, CHG was required to provide its tenants with 177 combined parking spaces, 92 more parking spaces than the combined 85 parking spaces CHG was required to provide under CO 51290 and the original CO 51289. However, the BZA's written ruling granting the Appeal was not issued, released and published by the BZA until nearly seven months after the putative date of its February 24 decision. On January 7, 2004, the Bankruptcy Court issued an Order granting Defendants' motion to withdraw their representation of CHG before the Bankruptcy Court. This withdrawal stemmed from a fee dispute

between CHG and Defendants which was entirely unrelated to the quality of the services performed by Shaw Pittman on behalf of CHG.[3]

The BZA issued a final order on September 9, 2004 (the BZA Order"), which memorialized its decision to grant the Appeal in part.[4]   The BZA Order also included a certificate of service dated September 9, 2004 stating that it was being sent on that date to:

> Paul A. Tummonds, Esq.
> For Capitol Hill Healthcare Group
> Shaw Pittman
> 2300 N Street, N.W.
> Washington, D.C. 20037[5]

Notwithstanding that the Certificate of Service indicated that the BZA Order was being sent to Tummonds on September 9, 2004, Defendants did not transmit a copy of the BZA Order to CHG.[6] Moreover, despite the fact that the face of the BZA Order's Certificate of Service indicated that it was not being transmitted to anyone associated with Plaintiff other than Tummonds, Defendants did not notify CHG of the issuance of the BZA Order.[7]   Accordingly, CHG did not learn of the existence of the BZA Order until late-March 2005, long after the time for filing an appeal of the BZA Order to the District of Columbia Court of Appeals had expired.[8]

As a result of the issuance of the BZA Order, and the expiration of the period within which CHG could appeal the BZA Order, CHG is now required to provide its tenants with 177 combined parking spaces, per the unreviewable disposition of the BZA Appeal.   This parking requirement

---

[3] *See* Hartman Affidavit ("Hartman Aff.") ¶ 40, page 10.

[4] *See* Hartman Aff. Exhibit 1

[5] *Id.*

[6] *See* Hartman Aff., ¶ 4, pages 1-2; Affidavit of Peter Shin ("Shin Aff.") ¶ 4, pages 1-2.

[7] Hartman Aff. , ¶ 4, pages 1-2; Shin Aff. ¶ 4, pages 1-2.

[8] *See*, Shin Aff. ¶ 4-5, pages 1-2;  Hartman Aff., ¶ 4-5, pages 1-2

effectively precludes CHG from either utilizing the Non-Leased Premises itself or leasing the Non-Leased Premises to others.[9]  As a result, CHG has been significantly damaged.[10]

As alleged in the Complaint, Defendants' malpractice in this case is two-fold.  Firstly, Defendants failed to timely forward the BZA Order to CHG or to notify CHG of the issuance of the BZA Order, and, as a result, the period within which CHG could otherwise have appealed the BZA Order to the District of Columbia Court of Appeals lapsed.  Additionally, throughout the course of Defendants' representation of CHG, Defendants failed to assert the existence of certain municipal regulations and longstanding administrative interpretations thereof pertaining to historic landmarks and buildings contributing to the character of historic districts which, had they been asserted, would have prevented the imposition of any requirement to provide parking beyond that then-available on the Property (given the prior designation of a portion  of the  building on the Property by the District of Columbia as a historic landmark and a building contributing to the character of a historic district) (hereinafter the "Historic Contribution Exemption").  Had these regulations and their applicability to the Property been asserted in a timely fashion, the basis upon which the BZA reversed the ZA would not have existed in that CHG would not have been required to provide more parking spaces than it had available to provide.  As a result of Defendants' malpractice, this lawsuit ensued.

II.    Facts Relevant To The Bankruptcy Fee Disputes Between CHG And Defendants

As this Court is undoubtedly aware, the parties hereto were involved in a series of fee disputes related to Defendant Shaw Pittman's entitlement to attorneys' fees as counsel for CHG in the Bankruptcy Case.  In light of Defendants' claim  that the resolution of one or more of these fee disputes has *res judicata* effect in the instant case, below is a succinct summary of the complex history of fee litigation between the parties.

---

[9]  Shin Aff. ¶ 11,  page 3.

[10] *Id*

A.    Fee Dispute Unit   No. 1 (January 12, 2004 – April 20, 2004)

The first contested fee dispute between the parties ("Fee Dispute Unit No. 1") stemmed from Shaw Pittman's "Second Interim and Final Application for Compensation," filed with the Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") on January 12, 2004 (*See* Hartman Aff., Exhibit 2).  Fee Dispute Unit No. 1 related to Shaw Pittman's fee request for legal services rendered to CHG's Chapter 11 bankruptcy estate through January 7, 2004 (the date the Bankruptcy Court granted Shaw Pittman's Motion to Withdraw as counsel for CHG).  CHG filed its objection to Shaw Pittman's request for fees in Fee Dispute Unit No. 1 on  January 30, 2004.  (*See* Hartman Aff. Exhibit 3).  On March 2, 2004, April 2, 2004, April 9, 2004 and April 20, 2004, the Bankruptcy Court issued Orders resolving Fee Dispute Unit No. 1 in favor of Shaw Pittman (to the extent it pertained to fees billed as of December 15, 2003).  (*See* Hartman Aff., Exhibits 4, 5, 6, and 7)  The Bankruptcy Court's sole basis underlying its resolution of Fee Dispute Unit No. 1 in favor of Shaw Pittman was its finding that CHG and Shaw Pittman had entered into a binding agreement *via* e-mail on December 15, 2003 (the "No Contest Agreement") regarding the amount of fees due Shaw Pittman for the time period at issue.  *Id.*

B.    Fee Dispute Unit No. 2 (April 19, 2004 – August 20, 2004)

Fee Dispute Unit No. 2 stemmed from an appeal to this Court filed by CHG on April 19, 2004, wherein  CHG challenged the Bankruptcy Court's aforesaid rulings in favor of Shaw Pittman in connection with Fee Dispute Unit No. 1.  On August 20, 2004, this Court issued a Memorandum Opinion and Order affirming the Bankruptcy Court's ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 2.  (*See* Hartman Aff., Exhibit 8).  This Court's ruling based upon its review of the record before the Bankruptcy Court was also based solely on the enforceability of the No Contest Agreement.  *Id.*

C.    Fee Dispute Unit No. 3 (September 23, 2004 – December 2, 2004)

Fee Dispute Unit No. 3 commenced on September 23, 2004, when Shaw Pittman filed a request for an award of attorneys' fees and costs incurred in connection with litigating Fee Dispute Unit Nos. 1

and 2 (i.e., for the period between January 9, 2004 and August 31, 2004) (*See* Hartman Aff. Exhibit 9).

Shaw Pittman claimed it was entitled to such fees because it was the prevailing party in Fee Dispute

Unit Nos. 1-2 and was therefore entitled to an ancillary award of fees under the No Contest

Agreement.  *Id*.  On December 2, 2004, the Bankruptcy Court issued a Memorandum Decision and

Order ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 3.  (*See* Hartman Aff.

Exhibit 10).

        D.      Fee Dispute Unit No. 4 (December 7, 2004 – June 22, 2005)

Fee Dispute Unit No. 4 stemmed from an appeal filed by CHG on December 7, 2004, wherein

CHG challenged the Bankruptcy Court's ruling in favor of Shaw Pittman in connection with Fee

Dispute Unit No. 3.  On June 22, 2005, this Court issued a Memorandum Opinion and Order affirming

the Bankruptcy Court's ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 3,

thereby resolving Fee Dispute Unit No. 4 (*See* Hartman Aff. Exhibit 11).

        E.      Fee Dispute Unit No. 5 (June 24, 2005 – August 1, 2005)

Fee Dispute Unit No. 5 commenced on June 24, 2005, when Shaw Pittman filed a request for

an award of attorneys' fees and costs incurred in connection with litigating Fee Dispute Unit Nos. 3

and 4 (i.e., for the period between September, 2004 and May, 2005) (*See* Hartman Aff. Exhibit 12)).

The asserted basis for Shaw Pittman's entitlement to such fees was that it was the prevailing party in

Fee Dispute Unit Nos. 3-4, and was therefore entitled to an ancillary award of fees under the December

15, 2003 e-mail No Contest Agreement. (*Id*.).  CHG objected to the fees sought in Fee Dispute Unit

Nos. 5, by Opposition dated July 26, 2005.  (*See* Hartman Aff. Exhibit 13).  On August 1, 2005, the

Bankruptcy Court issued a ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 5.

(*See* Hartman Aff. Exhibit 14).

        F.      Subsequent Fee Disputes and Appeals Resolved By Consent Of The Parties

On August 4, 2005, Shaw Pittman filed a request for an award of attorneys' fees incurred

during June and July, 2005 stemming from Fee Dispute Unit No. 5. (*See* Hartman Aff. Exhibit 15).  On

155944_1.DOC

September 13, 2005, CHG and Shaw Pittman filed a Stipulated Judgment resolving this fee request by consent.  (*See* Hartman Aff. <u>Exhibit</u> <u>16</u>).   On August 11, 2005, CHG appealed to this Court the Bankruptcy Court's August 1, 2005 ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 5.  (*See* Hartman Aff. <u>Exhibit</u> <u>17</u>).   On September 21, 2005, CHG voluntarily dismissed its August 11, 2005 appeal.  (*See* Hartman Aff. <u>Exhibit</u> <u>18</u>).   On September 16, 2005, Shaw Pittman filed a request for an award of attorneys' fees incurred during August and September, 2005. (*See* Hartman Aff. <u>Exhibit</u> <u>19</u>).   On October 4, 2005, CHG and Shaw Pittman filed a Stipulated Judgment resolving this fee request by consent.  (*See* Hartman Aff. <u>Exhibit</u> <u>20</u>).

## <u>ARGUMENT</u>

I.     Summary of Argument

The most remarkable aspect of Defendants' SJ Motion (notwithstanding its polemic and voluminous attachments and exhibits), is its utter failure to adduce specific facts necessary for serious consideration of their statute of limitations and *res judicata* affirmative defenses.  For example, Defendants maintain that they are entitled to judgment as a matter of law on statute of limitations grounds as to the Argument Omission.   Yet, at no point in the SJ Motion, do Defendants even posit a *single* discrete event, occurrence or circumstance, transpiring more than three years prior to the filing of this case,[11] which could be found to trigger CHG's actual or constructive knowledge of: (i) the injury associated Argument Omission; (ii) the causal relationship between the Argument Omission and such injury; and (iii) the possibility that the Argument Omission might constitute professional malpractice.[12]   It belabors the obvious to note that the identification of such a "Limitations Trigger" is

---

[11] The instant action was filed on September 7, 2007.  Accordingly, under the relevant portion of the District of Columbia Code pertaining to the statute of limitations (D.C. Ann. Code Section 12-301(7)-(8)) Defendants must demonstrate that CHG's causes of actions accrued on or before September 7, 2004, subject to the so-called discovery rule applicable to malpractice actions, which is discussed in greater detail below.

[12] As discussed more fully <u>infra</u>, in order to prevail on summary judgment, Defendants must prove the absence of an issue of fact as to *each* of these three elements of awareness.

a precondition to prevailing on a statute of limitations argument. Stated in simplified form, Defendants' conclusory argument that CHG had "knowledge" of the Argument Omission is empty and self-serving, in the absence of any demonstrable showing *via* admissible evidence, as to *how* and *when* CHG acquired such knowledge.

Likewise, Defendants contend that *res judicata* bars both the Argument Omission and the Delivery Omission, by claiming that these omissions "should have been asserted" in the parties' prior fee disputes. Ignoring, for the time being, the fact that CHG was not even *aware* of the Argument Omission during the entirety of Fee Dispute Unit Nos. 1-5 (as shall be demonstrated below), Defendants' *res judicata* argument fails to specify in *which* of Fee Dispute Unit Nos. 1-5, the Argument Omission and Delivery Omission could and should have been raised. This omission is not simply academic. As will be discussed, each of Fee Dispute Unit Nos. 1-5 constituted a discrete "unit in litigation" with the binding force of a final order. As such, these units must be evaluated *separately* for *res judicata* purposes. CHG submits that Defendants' failure to make any distinction between these litigation units in their *res judicata* argument is a calculated ploy to obfuscate the inherent weaknesses in this argument. As CHG will demonstrate hereinafter, when each of Fee Dispute Unit Nos. 1-5 is properly treated separately, it becomes apparent that CHG could *not* have asserted the Argument Omission or the Delivery Omission in any of these Fee Disputes.

In connection with the *res judicata* issue, CHG will further show that Defendants' arguments fail for the following additional reasons: (i) the instant case does not arise out of the same transaction or occurrence as Fee Dispute Unit Nos. 1-5; (ii) CHG's malpractice claims in the instant case could not have been brought in Fee Dispute Unit Nos. 1-5 due to jurisdictional and procedural bars; and (iii) the resolution of Fee Dispute Unit Nos. 1-5 does not have preclusive effect over this case, since these fee awards were not "performance driven." Finally, CHG will rebut, both legally and factually, Defendants' assertion that they did not have any duty to forward the BZA Order to CHG.

## II.     Standard Of Adjudication

As the moving parties for summary judgment, the Defendants are required to satisfy an initial burden of coming forward with sufficient admissible evidence to show "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c).  Moreover, adjudication of the instant Motion should be viewed in light of the fact that the Motion is primarily founded upon theories of *res judicata* and statute of limitations, each of which is an affirmative defense on which *Defendants* have the burden of persuasion. *See, e.g., Taylor v. Sturgell,* 128 S. Ct. 2161, 2179-2180 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense. . . Ordinarily, it is incumbent on the defendant to plead and prove such a defense. . . and we have never recognized claim preclusion as an exception to that general rule.")

Indeed, federal courts from across the country have been particularly reluctant to grant summary judgment, where the moving party has the ultimate burden of persuasion at trial.  *See, e.g., Fara Estates Homeowners Assnv,*v. Fara Estates 1998 U.S. App. LEXIS 481 (9th Cir., 1998) (summary judgment vacated, due to moving party's failure to meet its initial Rule 56(c) burden, when the moving party had the burden of proof at trial); *Vasquez v. City of Bell Gardens*, 938 F. Supp. 1487, 1494 (C.D. Cal. 1996) (summary judgment denied).   *Vasquez* aptly describes the moving party's summary judgment burden under such circumstances:

> If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.  This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in that party's favor. Furthermore, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden."
>
> *Id.* at 1494 quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (citations omitted).

Defendants cannot possibly meet their summary judgment burden of demonstrating that there are no genuine disputes of material fact in this case.  Among other things, there are a myriad of disputes of fact as to when CHG had actual or constructive knowledge of the Delivery Omission and the Argument Omission, and the existence of these disputes precludes summary judgment both with respect to statute of limitations, and with respect to *res judicata*.  For example, Defendants' failure to identify a Limitations Trigger (as defined above) is fatal to their statute of limitations argument, because absent Defendants' identification *via* admissible evidence of a specific date at which CHG knew of should have known of the Argument Omission and the Delivery Omission, Defendants are unable to establish the date upon which CHG's causes of action accrued, let alone establish, as a matter of law, the date upon which the statute of limitations expired. In light of the foregoing standard, and the myriad of factual disputes in this case which are material to Defendants' affirmative defenses of statute of limitations and *res judicata* (as will be established below), summary judgment must be denied .

III.   There Exist Genuine Issues Of Material Fact As To Whether The Statute Of Limitations Bars Plaintiff's Claims

The Defendants' statute of limitations argument is directed only to the Argument Omission.[13] It is essentially reducible to the following argument: (i) for statute of limitations purposes, malpractice actions sounding in contract (unlike those sounding in tort) accrue at the time of the allegedly wrongful act, rather than at the time the alleged injury is suffered;[14] (ii) any errors during Defendants' Zoning Representation necessarily occurred on or before January 7, 2004, the date the Bankruptcy Court authorized Defendants to withdraw their appearance in the Bankruptcy Case;[15] therefore (iii) the

---

[13] *See*, *Defendants' Memorandum of Points And Authorities In Support Of Motion For Summary Judgment* ("Defendants' Memo") p. 18

[14] *Defendant's Memo*, p. 18.

[15] *Id*.

Argument Omission is time-barred.[16]    For the reasons discussed below, this Court should reject Defendants' statute of limitations argument.

> A.    In Light Of The Discovery Rule, Summary Judgment On Statute Of Limitations Grounds Is Unwarranted With Regard To CHG's Claims Premised Upon The Argument Omission

Defendants' statute of limitations argument, which is premised upon a January 7, 2004 commencement date for the three-year limitations period, is fundamentally flawed at the very outset, because it completely ignores the well-recognized "discovery rule" applicable to malpractice actions. By virtue of the discovery rule, a malpractice claim does not accrue, and consequently the running of the statute of limitations is tolled, until the plaintiff knows or by exercise of reasonable due diligence should know: (1) of the injury, (2) its cause in fact and (3) of some evidence of wrongdoing.  *Ray v. Queen*, 747 1137, 1137, (D.C. 2000); see also *Bussineau v. President & Directors of Georgetown College*, 518 A2d. 423, 425 (D.C. 1986).

Crucially, courts in the District of Columbia have also consistently recognized that the tolling mechanism of the discovery rule applies to malpractice claims regardless of their nature; i.e., whether they sound in tort or contract.  Even the very authorities upon which Defendants rely recognize this fact.  For example, in *Havens v. Patton Boggs, LLP,* Case No. 05-01454 (HHK) Memorandum Decision at 5 n. 3 (D.D.C. June 26, 2006), the court cited to *Woodruff v. McConkey*, 524 A2d 722, 727 (D.C. 1987) in support of the proposition that the discovery rule applied in "cases of professional malpractice, *regardless of whether* the *action* is expressed in terms of contract or tort." *See also, Ehrenhaft v. Malcolm Price, Inc*., 483  1192, 1198 (D.C. 1984); *Ezra Co. v. Psychiatric Institute of D.C.,* 687  587, 591 n.7 (D.C. 1996)  As such, for purposes of evaluating the applicability of the discovery rule, CHG's tort and contract claims are governed by the same discovery rule standard.

---

[16] Presumably, it is Defendants' position that the Argument Omission should have been asserted on or before January 7, 2007.

It is also well-settled, that as a general matter, cases involving application of the discovery rule are particularly unsuited to resolution via summary judgment. *See*, e.g. *Byers v. Burleson*, 713 F.2d 856, 862 (D.C. Cir. 1983) (District Court's granting of summary judgment based on the statute of limitations in a legal malpractice case reversed). The stringency of the summary judgment standard when applied in a discovery rule context was succinctly stated by the District of Columbia Circuit as follows:

> In sum, there are genuine issues of material fact to be resolved regarding the point at which Byers or her attorney discovered or should have discovered the essential facts necessary to a malpractice action. This is particularly so because application of the discovery rule invariably involves questions of knowledge and judgment, questions that should not generally be decided as a matter of law if there is any doubt as to the inferences to be drawn from the underlying facts.

> *Id.* at 862. (citations omitted; emphasis added).

*See also*, *Ezra Co.*, 687 at 592 (D.C. 1996) ("[I]n all cases to which the discovery rule applies the inquiry is highly fact-bound and requires an evaluation of all the plaintiff's circumstances."). This "fact laden" inquiry must also "be made to determine whether a plaintiff had ***inquiry*** notice." *Ezra Co.*, at 593. If there exists a material dispute of fact as to what constituted a Limitations Trigger (i.e., when the plaintiff had actual or constructive notice of his cause of action), summary judgment is inappropriate. *Id.*, at pages 592-593.

In short, "[i]t is proper for a trial court in a jury case to rule on the application of the statute of limitations only if it determines that, viewing the facts in the light most favorable to the plaintiff, no reasonable jury could find that the statute of limitations did not bar the action and thus, under the oft-stated and well-established standards for the entry of summary judgment, enter summary judgment for the defendant properly raising the bar of the statute of limitations." *Brin v. S.E.W. Investors*, 902 784, 801 (D.C. 2006).[17]  Measured against this exacting standard, Defendants, by not identifying and

---

[17] *See also, Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3rd Cir. 1976), *cert denied*, 429 U.S. 1038 (1977) (summary judgment on when the decedent and her spouse discovered they had a claim precluded as

establishing the existence of a Limitation Trigger, fall far short of demonstrating, as matter of law, that the Argument Omission is barred by the statute limitations.

    1.   Knowledge of the injury

There is, *at a minimum*, a genuine issue of material fact as to whether CHG knew of the injury associated with the Argument Omission more than three years before the September 7, 2007 filing of the instant case. As recounted in the Affidavit of Peter Shin filed contemporaneously herewith, it is CHG's factually supported contention that it first learned of the ***injury associated with the Argument Omission*** (to be distinguished from the Argument Omission itself), at some point during the end of March, 2005, when Dr. Shin attended a community meeting at which he was first informed of the issuance of the BZA Order .[18] This allegation alone creates a material issue of fact as to whether CHG had knowledge of the injury associated with the Argument Omission by September 7, 2004 (as Defendants claim), and thereby in and of itself, warrants denial of summary judgment.

Defendants endeavor to side-step the discovery rule by contending that "CHG's alleged injuries were publicly manifested when the BZA, on January 6, 2004 affirmed the Certificates of Occupancy requiring CHG to provide 85 parking spaces." Presumably, Defendants are attempting to argue that CHG had constructive knowledge of the injury associated with the Argument Omission as of January 6, 2004. Nonetheless, this argument completely mischaracterizes the injury alleged in CHG's Complaint. CHG's injury obviously did not result from the BZA's January 6, 2004 "affirmance" of the ZA's issuance of the Certificates of Occupancy, but rather from the BZA's *reversal* of this ZA decision, which imposed additional parking requirements upon the Premises over

---

"inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion."); *Williams v. Borden*, 637 F.2d 731, 738 (10th Cir. 1980) ("the movant must demonstrate entitlement beyond a reasonable doubt and if an inference can be deduced from the facts whereby the nonmovant might recover, summary judgment is inappropriate."); *Burns v. Bell*, 409 614 (D.C. 1978) (medical malpractice action).

[18] *See*, Shin Aff., ¶ 4 pages 1-2.

and above those set forth in the original Certificates of Occupancy.[19]  As such, Defendants' contention that CHG knew of the injury associated with the Argument Omission as of January 6, 2004 is demonstrably false, for the simple reason that CHG's claimed injury *had not even occurred* as of that date.[20]  In short, Defendants cannot show that CHG had knowledge of its claimed injury more than three years prior to the filing of this case.  Accordingly, Defendants' statute of limitations argument necessarily fails.

Moreover, Defendants in their SJ Motion fail to even *address* the latter two elements of the discovery rule (i.e., knowledge of the cause in fact of the asserted injury and knowledge of evidence of wrongdoing committed by the defendant).  Nevertheless, CHG shall demonstrate below that, as to both of these elements, there exist genuine disputes of material facts which preclude the granting of summary judgment.

### 2.   Knowledge of The "Cause In Fact" Of The Putative Injury

It is axiomatic that the mere fact that an injury has been suffered by a client does not lead inexorably to the conclusion that the attorney for the client was a cause in fact of that injury.  *See*, e.g. *Byers*, 713 F.2d at 863; *Pinkerton v. West*, 353 So.2d 102, 103 (Fla. Dist. Ct. App. 1977) (when an attorney's alleged act of negligence became known to the client determines the applicability of the statute of limitations to plaintiff's cause of action for malpractice and is a question of fact to be decided by the trier of fact and not by the court in a summary proceeding.).  In other words, in order for Defendants to meet their burden of demonstrating that the discovery rule is inapplicable as a matter of

---

[19] *See*, Shin Aff. ¶ 4 pages 1-2; Hartman Aff.  ¶ 10 page 3.  *See also*  Complaint, at ¶ 12 ("On January 6, 2004, the Appeal was denied by the BZA by a vote of 3-2.  On February 10, 2004, the BZA voted 5-0 to reconsider a portion of the denial.  On February 24, 2004, the BZA voted 5-0 to partially grant the Appeal.  In its partial granting of the Appeal, the BZA determined that the ZA had imposed incorrect parking requirements with regard to CO 51289 and ordered that CO 51289 "be reformed to reflect a parking requirement of one off-street parking space for each bed."  Thus, CHG was required to provide its tenants with 177 combined parking spaces, 92 more parking spaces than the combined 85 parking spaces CHG was required to provide under CO 51290 and the original CO 51289.")

[20] *See*, Plaintiff's Stmt.,  ¶ 18, 19, 21, 22, 23 and 26, pages 4-6.

law, Defendants must establish, *inter alia*, that there is no material issue of fact as to CHG's awareness prior to September 7, 2004 of the **causal nexus** between the Argument Omission and its claimed injury. Defendants do not even assert such causal awareness, let alone prove it.

By contrast, the Hartman and Shin Affidavits filed herewith demonstrate that CHG was not made aware of the potential applicability of the Historic Contribution Exemption underlying the Argument Omission until their Spring, 2006 meeting with Mr. Glasgow.[21]   Defendants have adduced no evidence whatsoever indicating, suggesting or even supporting the inference that CHG was actually aware of the Historic Contribution Exemption at any point prior to this meeting.   Likewise, Defendants have presented no evidence (or even an argument) indicating, suggesting or even supporting the inference that CHG *should have been aware of* (i.e., had constructive knowledge of) the Historic Contribution Exemption at any point prior to their Spring, 2006 meeting with Mr. Glasgow.   In this regard, courts applying the District of Columbia discovery rule have been particularly reluctant to impute constructive knowledge upon a party in a professional malpractice case, since, in such cases, the causal linkage between the plaintiff's injury and the defendant's actions may be difficult to discern. *Brin*, *supra*, at pages 793-794 ("Since patients must rely on their doctors, a person cannot reasonably be expected or required to act until that person has some medical advice to support a linkage between a known injury and wrongdoing of which the person has some evidence...a medical opinion that the wrongdoing is a plausible cause of known injuries will trigger the running of the statute of limitations, just as is the case with 'some evidence of wrongdoing'")

Accordingly, this Court must conclude that, at a minimum, there exists a genuine dispute of material fact as to when CHG first learned (or in the exercise of reasonable diligence could have learned) that Defendants' Argument Omission might be a cause in fact of CHG's claimed injury. The

---

[21] *See* Shin Affidavit ¶ 9-10, pages 2-3; Hartman Affidavit ¶ 9, page 3. *See also* Plaintiff Stmt ¶ 18, 19, 21, 22, 23 and 26, p. 4-6.

existence of this question of fact constitutes additional grounds to preclude summary judgment based on the statute of limitations defense.

### 3.   Knowledge of "Some Evidence Of Wrongdoing"

In order to prevail on summary judgment with regard to the third necessary element of the discovery rule, Defendants must prove not only that there is no dispute of material fact as to CHG's knowledge of the causal nexus between the Argument Omission and its claimed injury, but also that there is no dispute of material fact as to CHG's knowledge (actual or constructive) that the Argument Omission might constitute professional malpractice. *Ray*, supra, at page 1141; *Busineau, supra*, at page 425. For the reasons previously set forth above, Defendants cannot make such a showing.   As discussed, CHG first had reason to know of the causal nexus between the Argument Omission and its claimed injury during the Spring of 2006, when they were first informed by Norman Glasgow of the existence of certain DCMR regulations which (had they been timely asserted) would have precluded the BZA from imposing additional parking requirements upon the Property.[22]   As mentioned, Defendants do not (and cannot) dispute CHG's assertions on this point.  It follows inexorably that if CHG was not aware of the causal nexus between the Argument Omission and its injury until the Spring of 2006 (i.e., less than three years before the filing of this case), it could not have become aware of the "possible wrongdoing" associated with the Argument Omission until at least that date.

Finally, District of Columbia law also recognizes a so-called" fraudulent concealment" principle as a tolling rule pertaining to the running of the statute of limitations.  See, *Diamond v. Davis*, 680  364, (D.C. 1996) (legal malpractice action).  There are two types of fraudulent concealment which are cognizable under the District of Columbia's tolling of limitations law.  "(1) when the defendant has taken affirmative steps to prevent discovery of the claim or its underlying facts, or (2) when the defendant, acting as a fiduciary, has failed to speak about a matter to its principal while having a duty

---

`[22] *See*, Shin Affidavit  ¶ 9-10, Hartman Affidavit ¶ 9; Plaintiff Stmt ¶ 18, 19, 21, 22, 23 and 26, p. 4-6.

to do. *Diamond*, 680 at 380.[23] CHG submits that the second variant of the fraudulent concealment doctrine applies to the instant case. Where, as here, CHG and the Defendants were in a fiduciary relationship, which included a duty to disclose information, failure to do so constitutes fraudulent concealment. See, *Riddell v. Riddell Washington, Corp.*, 866 F.2d 1480, 1495-96 (D.C. Cir. 1989); *General Aircraft Corp. v. Air America, Inc.*, 482 F. Supp. 3, 8 (D.D.C. 1979). On this record, there exists a genuine dispute of material fact as to whether Defendants' fiduciary duty to CHG continued beyond the January 7, 2004 withdrawal of their representation from the Bankruptcy Case. See, ¶'s Stmt. ¶ 1-2, p. 1 *Webster* Aff. ¶ 5-8, p. 2-3. To the extent there exists an underlying dispute as to the continued duty beyond that date to disclose to CHG the Argument Omission, there is record evidence of fraudulent concealment by silence when there exists a duty to speak. *See, Riddell*, 866 F.2d at 1495-96 (summary judgment based on statute of limitations as bar to certain claims, including breach of fiduciary duty reversed on appeal, due to existence of factual disputes regarding fraudulent concealment by defendants). This is in and of itself sufficient to warrant denial of summary judgment on the limitations defense. As discussed *infra*, the same fraudulent concealment rationale applies with equal force to warrant denial of summary judgment on *res judicata*.[24]

As established above, Defendants cannot meet their summary judgment burden of demonstrating that there is no genuine issue of material fact on each of the three necessary elements of the discovery rule. Accordingly, Defendants are not entitled to summary judgment based upon application of the statute of limitations. *See*, *Byers, supra*, at page 862 (summary judgment reversed where a material issue of fact existed as to whether the plaintiff/appellant discovered, or should have discovered, the essential facts necessary to a legal malpractice claim, more than three years prior to the filing of such claim); *Ray, supra*, at page 1144 (D.C. Court of Appeals reverses trial court grant of

---

[23]  See, *Searl v. Earll*, 221 F.2d 24, 27-29 (D.C. Cir. 1954).

[24]  Fraudulent concealment constitutes an exception to the applicability of the *res judicata* defense. See, e.g. *Guerrero v. Katzen* 774 F.2d 506, 508 (D.C. Cir. 1985).

summary judgment where there existed a material issue of fact as to whether the plaintiff had "knowledge of some wrongdoing" more than three years before the filing of his legal malpractice lawsuit, rejecting, (in light of the parties' possible fiduciary relationship) the contention that plaintiff was on inquiry notice that the defendant's actions contravened a local intestacy statute).[25]   Indeed, as CHG will establish *infra*, the genuine issues of material fact which exist with regard to the time at which CHG became aware of the Delivery Omission and the Argument Omission, also foreclose Defendants' entitlement to summary judgment on *res judicata* grounds.

> IV.    Plaintiff's Claims Stemming From The Delivery Omission Are Not Precluded By An Asserted Lack Of Duty By Defendants To Forward Relevant Communications to CHG After January 7, 2004

On pages 19-20 of the Defendants' Memo, Defendants maintain that, as a matter of law, they owed no duty whatsoever to CHG as of September 9, 2004, and therefore that they would have been *ipso facto* justified in failing to forward the BZA Order to CHG upon their receipt of this Order.  For the following reasons, the Court should reject this contention by Defendants.

Firstly, Defendants cite to no apposite authority in support of this argument, and the authorities to which they do cite are each readily distinguishable.  For example, in *Taylor v. Akin, Gump, Strauss, Hauer & Feld*, 859  142 (D.C. 2004), the Court predicated its holding that no duty was owed to the plaintiff/appellant upon the fact that there had *never* been an attorney-client relationship between the plaintiff and the defendant.[26]  *Fuchs v. Aronoff*, 46  701(D.C. 1946) is also completely inapposite.  In

---

[25]  *See also*,  *Ezra Co.*, *supra*, at page 593 (summary judgment reversed where there existed "a factual issue about whether Ezra had actual notice of its breach of contract and tortious interference with contract claims before January, 1994," and where the Court of Appeals could not "say as a matter of law that Ezra failed to exercise reasonable diligence in investigating its potential claims."); *Brin supra*, at pages 800-802.

[26]  *See*, e.g., *Taylor*, 859 A.2d at page 147 ("[A] professional malpractice claim depends upon the existence of a duty.  Absent duty, there can be no breach and no negligence . . . With rare exceptions, a legal malpractice claim against an attorney cannot withstand a summary judgment motion unless there is evidence showing the existence of an attorney-client relationship.  *It is on this point that any malpractice claim must fail, because Ms. Taylor has not shown that she was ever Akin Gump's client*".  (emphasis added, internal citations and quotations omitted).

*Fuchs*, the relevant issue was whether an attorney's false testimony during the course of a trial relating to unpaid attorneys' fees *ipso facto* vitiated the attorney's claim for such fees. In neither *Taylor* nor *Fuchs* did the D.C. Court of Appeals purport to delineate the extent of an attorney's duty to forward time-sensitive court or administrative agency communications to a former client (let alone, to decide that no such duty exists).[27] On this basis alone, the argument on pages 19-20 of the Defendants' Memo should be summarily rejected by this Court.

Moreover, there are a plethora of authorities which hold that an attorney *does* have a duty to forward time-sensitive court communications to a former client. For example, *The Restatement (Third) of the Law Governing Lawyers* states, at § 33:

> (2) Following termination of a representation, a lawyer must:
>
> \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*
>
> (c) take reasonable steps to convey to the former client any material communication the lawyer receives relating to the matter involved in the representation.[28]

---

[27] The non-binding out-of-state authorities to which Defendants cite are no less inapposite. In *Lundberg v. Backman*, 358 P.2d 987, 989 (1961), the Court held that an attorney representing a client in trial court litigation could not be liable for failing to file an appeal on behalf of such client, where, *inter alia*, the client had indicated her desire to be represented by a different counsel in such appeal. In *Dolce v. Gamberdino*, 376 N.E. 2d. 273, 275 (Ill. App. 3d 1978), the issue was the effective termination date of an attorney's representation of a client for purposes of calculating the commencement of Illinois' five-year statute of limitations in a malpractice action stemming from the attorney's failure to file a worker's compensation claim. In Estate of *Mitchell v. Dougherty*, 644 N.W.2d 391, 398-401 (Mich. App. 2002), the principal issue was the extent to which a law firm could be liable for its former partners' failure to file a medical malpractice claim within the applicable statute of limitations period where, prior to the expiration of the statute of limitations, the former partners formed a new law firm, and continued to represent the plaintiff through such firm, without the clients' objection. In <u>none</u> of these cases did the Court determine (expressly or by implication) whether and to what extent an attorney had a duty to forward a time-sensitive court communication to a former client, where the attorney has reason to know that the client would not otherwise be apprised of the communication. As such, these cases are plainly not on point. In fact they are entirely inapposite.

[28] Although the District of Columbia courts have yet to cite to this particular section of *The Restatement of the Law Governing Lawyers*, this Court, the District of Columbia Court of Appeals and the District of Columbia Circuit have each repeatedly cited to other sections of *The Restatement* as highly persuasive authority on the law of malpractice and professional conduct. *See*, e.g., *Sims v. Johnson*, 505 F.3d 1301, 1305 (D.C. Cir. 2007); *Koch v. Cox*, 489 F.3d 384, 389 (D.C. Cir. 2007).

In the case *sub judice*, there is, at a minimum, an issue of fact as to whether Defendants received the BZA Order on or about September 28, 2004.[29]  Moreover, it is self-evident that the BZA Order, which substantially affected CHG's obligations to provide parking at the Premises, was "material."  Accordingly, it follows as a matter of course that there is an issue of fact as to whether Defendants breached their professional obligations by failing to transmit the BZA Order to CHG upon its receipt by Defendants. See, *Plaintiff's Stmt* ¶ 1-2, p. 1, Webster Aff. ¶ 5-8, p. 2-3.[30]

*Strauss v. Fost*, 507 1189 (N.J. Super. Ct. App. Div. 1986) is particularly instructive on the scope of an attorney's duty to forward material communications to a former client.  In *Strauss*, the defendant attorney was initially retained to represent the plaintiff in a personal injury civil action arising out of an automobile accident.  He subsequently had discussions with the plaintiff regarding the possibility of also representing the plaintiff in a $3,600 property damage claim arising out of the same accident, and transmitted a letter to the plaintiff setting forth the terms under which the defendant would agree to commence such representation.  When the defendant did not receive a response to his initial letter, he filed a cross-claim for property damage in the pending civil action, and also wrote a follow-up letter to the plaintiff stating that the plaintiff should make arrangements for another attorney to represent him in connection with the property damage claim.  During the interim, interrogatories were propounded to defendant in connection with the plaintiff's property damage claim.  Two weeks later, the plaintiff responded in writing to the defendant's letter, indicating that he had in fact "made other arrangements to collect property damages" and therefore would "not require [defendant's] services regarding this matter."  *Id.*, at page 1191.[31]

---

[29]    See Hartman Affidavit, <u>Exhibit 1</u> (which includes a date-stamp indicating receipt by the DCRA of the BZA Order as of that date).

[30]    Mr. Webster is one of CHG's proposed experts on the duty of care owed by Defendants to CHG.

[31] The defendant interpreted this letter to mean that the plaintiff has settled his property damage claim out of court.  In point of fact, the plaintiff had been erroneously advised by other attorneys that he could pursue his property damage claim after his personal injury claim had been concluded.  *Id.*

Shortly thereafter, opposing counsel contacted the defendant attorney to inquire regarding the status of the outstanding interrogatories relating to the property damage issue. Upon being apprised by defendant that the plaintiff's property damage claim had been resolved, opposing counsel moved to dismiss the property damage claim with prejudice. Defendant did not respond to the motion, nor did he inform plaintiff of the pendency of the motion. Additionally, defendant did not "inform the court . . .that he no longer represented plaintiff with respect to the matter encompassed by the motion so that the judge would have known that there had been no service of the notice of motion upon either plaintiff or an attorney representing him with respect to the claim." *Id.*, at pages 1191-92. The property damage claim was dismissed and plaintiff filed suit against defendant for malpractice. The trial court found in favor of defendant, and plaintiff appealed.

On appeal, the issue subject to resolution was "whether defendant owed any duty to plaintiff following plaintiff's unqualified rejection of defendant's representation of him concerning Plaintiff affirmative cross-claim." *Id.*, at page 1192. The appellate court, reversing the decision of the trial court, held that such a duty existed as a matter of law:

> [D]efendant remained Plaintiff's attorney of record in the cause . . . for the assertion of the cross-claim. Although defendant assumed that plaintiff had separately adjusted his affirmative claim, defendant did not verify this fact, and the language of Plaintiff's letter that he had "made other arrangements to collect property damages" did not definitively indicate that plaintiff's claim had been satisfactorily adjusted. Thus when defendant received the notice of motion to dismiss plaintiff's claim with prejudice, defendant's decision to do nothing was palpably incorrect. He could not simply abandon his client with respect to the cross-claim . . . There was no indication that plaintiff . . . was served personally so that he would have an opportunity to appear *pro se* . . .by neglecting his client whom he was defending against related claims, defendant was negligent as a matter of law. Even more importantly, defendant remained as plaintiff's attorney of record concerning the cross-claim and in that capacity received the notice of motion… without indicating to the court, opposing counsel, or his client that the service upon defendant was other than effective.

*Id.*, at pages 1192-1193.[32]

---

[32] *See also, Griffith v. Griffith*, 247 S.E.2d. 30, 33 (N.C. App. 1978) (Service of a motion upon a client's former attorney is equivalent to service upon such client, so long as the attorney remains the attorney of record in the relevant court proceeding and has not withdrawn his appearance).

Likewise, in the instant case, Defendants remained CHG's attorneys of record in the BZA Appeal up until and including the date of the issuance of the BZA Order. Notwithstanding the Bankruptcy Court's January 7, 2004 Order authorizing Defendants to cease representing CHG in the *Bankruptcy Case*, Defendants never sought similar relief before the BZA, nor did they even inform the BZA that they were no longer representing CHG in the BZA Appeal. Although Defendants now vaguely and self-servingly claim that it was "not practicable as matters stood" to inform the BZA that they were no longer representing CHG,[33] they fail to cite to any law or fact whatsoever to explain why they could not have simply written the BZA a letter requesting that the BZA transmit material communications regarding the BZA Appeal directly to CHG. In any event, this contention by Defendants is disputed by CHG's proposed zoning expert Michael McGovern. See, *McGovern Aff.*, ¶ 3, p. 1-2; *Affidavit of David Webster* ("Webster Aff.) ¶ 5-8, p. 2-3 *Plaintiff's Stmt.*, ¶ 3, p. 2.

Defendants' legally and factually unsupported contention that they could not have informed the BZA of the cessation of their representation of CHG also flies in the face of the express obligations of D.C. Rule of Professional Conduct 1.16(d), which states that: "In connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests." Defendants would apparently have this Court believe that they could not have even taken the *de minimus* step of sending a cursory letter to the BZA informing it that they no longer represented CHG in the BZA Appeal. This contention, in sum and substance, amounts to an assertion that Defendants need not have done *anything* to apprise the BZA of the termination of their representation of CHG. However, Defendants do not, and cannot, explain how this complete inaction can possibly constitute a "reasonable" effort to protect CHG interests, as required by Rule 1.16(d). At a minimum, the reasonableness of the inaction gives rise to a triable question of fact. *See Webster Aff.* ¶ 5-8, p. 2-3; ¶'s Stmt, ¶ 1-2, p. 1.

---

[33] *See*, e.g., Defendants' SJ Motion, at page 19, Section 2.a.

Defendants' neglect in failing to apprise the BZA of their cessation of CHG's representation was compounded by their undisputed failure to forward the BZA Order to CHG. Defendants knew full well that this inaction on their part would likely and indeed foreseeably prejudice CHG. By virtue of the Certificate of Service affixed to the BZA Order, Defendants were plainly aware that this Order, which substantially affected the Premises and which was subject to a very specific thirty day appeal deadline, was not being sent by the BZA to CHG, or to any representative thereof. Nonetheless, Defendants (much like the defendant in *Strauss*) did not even attempt to verify whether CHG had otherwise been made aware of the BZA Order; instead they simply did nothing. David Webster, Plaintiff proposed expert on the standard of care due from an attorney to a former client, has opined that an attorney has a duty to forward time-sensitive court communications to a former client. *See Webster Aff.* ¶ 5-8, pages 2-3; Plaintiff's Stmt, ¶ 1-2, p. 1 .

In short, for the foregoing reasons, Defendants have fallen far short of meeting their burden as Rule 56 movants to demonstrate, as a matter of law, that they had no duty to forward the BZA Order to CHG.

V.    There Exist Genuine Issues Of Material Fact As To Whether The Doctrine Of Res Judicata Bars Plaintiff's Claims

In the SJ Motion, Defendants pose the alternative argument that all of the claims asserted in the Complaint (whether sounding in contract or tort, and whether based on the Delivery Omission, or the Argument Omission) are barred by the doctrine of *res judicata*.[34]   Specifically, Defendants maintain that that *res judicata* "bars litigation of the Argument Omission and the Delivery Omission because CHG was aware of and could have raised the alleged facts in connection with the fee litigation with Shaw Pittman, but failed to do so." *Id.*, p. 15. This sweeping generalization fails because there exist genuine disputes of material facts as to (i) when CHG became aware of the Argument Omission and the Delivery Omission respectively; and (ii) whether CHG, upon becoming aware of the Argument

---

[34] *See, Defendants' Memo*, p. 13.

Omission and the Delivery Omission, could have effectively litigated these omissions before the Bankruptcy Court or this Court in light of, *inter alia*, the substantive basis on which Fee Dispute Unit Nos. 1-5 were decided.

A. <u>Introduction</u>

The federal common law doctrine of *res judicata* holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action. *Apotex v. FDA*, 393 F. 3d. 210, 217 (D.C. Cir. 2004), citing *Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002)*. Whether two cases implicate the same cause of action turns on whether they share the same nucleus of facts. *Id*., citing *Drake, 291 F.3d at 66* (quoting *Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984))*. In pursuing this inquiry, the court will consider "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id*., citing *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)* However, *res judicata* only bars claims that "could have been" asserted in a prior action. *Wemhoff v. Floria*, 1992 U.S. App. LEXIS 11718 **at** *3 (D.C. Cir. April 14, 1992); *North v. Walsh*, 881 F.2d 1088, 1093(D.C. Cir. 1989); *Velikonja v. Ashcroft*, 355 F. Supp. 2d. 197, 201 (D.D.C. 2005). This principle, in particular, is crucial in adjudicating the *res judicata* arguments posed in the SJ Motion (for reasons discussed more fully below).

There is also a well developed body of case law discussing the amenability of the summary judgment procedure to resolve questions pertaining to *res judicata*. Among other things, these cases have delineated the circumstances under which a *res judicata* defense is not amenable to disposition <u>via</u> summary judgment (or otherwise). The principles on which the results in these cases turn include:

▪ **Firstly**, the preclusive *res judicata* effect of a bankruptcy court fee application ruling over a subsequent legal malpractice action is not amenable to disposition via summary judgment, where (as here) the plaintiff has raised a factual issue as to whether the alleged error or omission was discovered

or was discoverable at the time of the relevant fee litigation unit. *See In re: R&C Petroleum*, 236 B.R. 355, 359-60 (Bankr. E.D. Texas 1999)(summary judgment denied based on existence of a factual dispute as to whether the malpractice claim was not discoverable until after the conclusion of the underlying fee allowance litigation); *see also*, *Himel v. Continental Ill. Nat. Bank and Trust Co.*, 596 F.2d 205, 210 (7th Cir. 1979); *Doe v. Allied Signal, Inc.,* 985 F.2d 908, 914-915 (7th Cir. 1993).[35]

▪    **Secondly**, *res judicata* is inapplicable where (as here) the cause of action sought to be precluded arises out of a different transaction or occurrence than the earlier action alleged to have the preclusive effect. *Drake*, 291 F.3d at 66; *Page*, 729 F.2d at 820; *Kronish, Lieb Weiner and Hallman v. Fort*, 197 Fed. Appx. 261, 264-265(4th Cir. 2006).

▪    **Thirdly**, a claim is not barred by *res judicata* where (as here) the claim could not have been asserted in the earlier action alleged to have preclusive effect, due to jurisdictional or procedural bars. See, *North*, 881 F.2d at 1093-1095; *Velikonja*, 355 F. Supp. 2d at 201-202; *Grimes v. Miller*, 448 F. Supp. 664, 669-670 (D. Md. 2006); *Doe,* 985 F.2d at 915.

▪    **Finally**, summary judgment on *res judicata* grounds is not warranted where the bankruptcy court's fee award is based on criteria other than "a performance driven fee." *Magee v. Charmoy*, 2000 Conn. Super. LEXIS 234, *7-8 (2000).

For the reasons articulated below, each of these principles is applicable to this case and warrants the denial of summary judgment.

         B.    Neither The Delivery Omission, Nor The Argument Omission, Could Have Been Raised In Fee Dispute Unit Nos. 1-5

The most surprising aspect of Defendants' *res judicata* argument is Defendants' complete failure to draw any distinction whatsoever between each of the relevant Fee Dispute Units. It belabors the obvious to note that when a defendant relies upon the purportedly preclusive effect of a failure to

---

[35] In a matter such as the instant case, the *res judicata* effect of a federal judgment is determined by federal common law. *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001). Accordingly, federal precedent from outside this jurisdiction constitutes persuasive authority in this case.

assert a claim in an "earlier litigation," it must, at a minimum, specifically identify the litigation in which the claim should have originally been raised. Defendants fail to do this, and this failure is by no means coincidental. As demonstrated below, when the relevant Fee Dispute Units are properly evaluated and subjected to scrutiny separately, in their procedural context, and with reference to CHG's knowledge (actual and constructive) of the Delivery Omission and the Argument Omission, it becomes clear that these Omissions could not have been raised in Fee Dispute Unit Nos. 1-5, for a variety of reasons, outlined below.

> 1.        CHG Did Not Have Actual Or Constructive Knowledge Of The Delivery Omission During Any Of Fee Disputes Nos. 1-3, Or Of The Argument Omission During Any Of Fee Disputes Nos. 1-5

As noted above, the doctrine of *res judicata* only bars claims that "could have been raised" in a prior action. In addressing the issue of whether a claim "could have been raised" in a prior proceeding for *res judicata* purposes, courts have utilized a similar analysis to that utilized under the discovery rule for statute of limitations purposes. *See*, e.g. *Law Offices Of Jerris Leonard v. Mideast Systems, Ltd.*, 111 F.R.D. 359, 362-63 (D.D.C. 1986); *Role Models Am., Inc. v. Penmar Dev. Corp.*, 394 F. Supp. 2d 121, 136 (D.D.C. 2005) *aff'd*, 216 Fed. Hppx 5 (D.C. Cir. 2007); *Short v. Department of Empl. Servs.*, 723 845, 849 (D.C. 1998) ("Further, *res judicata* does not apply to a situation where the basis for a second claim could not have been discovered with due diligence"). In other words, a party is not barred by the *res judicata* doctrine for failing to assert a claim in an earlier litigation, if the party did not have actual or constructive knowledge of the claim at the time of the earlier litigation.

While the *Jerris Leonard* case dealt specifically with  the *res judicata* effect of a failure to assert a compulsory counterclaim under F.R.C.P. 13(a), its logic is equally applicable to any case where the relevant issue is whether a party attempting to assert a claim had actual or constructive knowledge of the claim at the time of an earlier litigation, such that the failure to assert the claim in the earlier litigation bars its assertion in a subsequent litigation under *res judicata* principles. In *Jerris*

*Leonard*, Judge Gasch's determination that a legal malpractice claim was barred by *res judicata* was based fundamentally upon the conclusion that the claimant had knowledge of the alleged malpractice at the time the earlier case was filed:

> There can be no question that MS/CCC [the client] was aware . . . that it was injured in the course of [the attorneys'] representation….In fact Mr. Abrahams' [attorney for the client in the malpractice action] response states that Mr. Consentino, as president of MS/CCC, constantly complained to him that the lawyers had told Mr. Consentino MS/CCC had an excellent claim in the government contracts litigation, but that the claim was nonetheless dismissed. . . <u>In light of Mr. Cosentino's suspicions about the quality of the legal service rendered</u>, MS/CCC should have discovered then that the lawyers' work had been actionably negligent. Instead, MS/CCC chose not to appear and suffer a default judgment. Thus, the Court finds that MS/CCC's legal malpractice claim, as framed in the New York complaint, accrued at the earliest <u>when summary judgment was entered against it</u> or at the latest, when an answer was due from MS/CCC on the Jerris Leonard litigation [the prior litigation]. By that time, MS/CCC <u>should have known, or should have diligently taken steps to discover</u>, the existence of a legal malpractice claim.

*Id* at 362-363 (emphasis added); *see also, Klein v. Toupin*, 2006 U.S. Dist. LEXIS 32478 at *9 (D.D.C. May 24, 2006) *aff'd* 208 Fed. App. 906 (Fed. Cir. 2006(granting dismissal on the grounds of *res judicata* where the plaintiff was aware of the existence of the document upon which he based his claim during the pendency of an earlier proceeding).

The instant case is clearly distinguishable factually from *Jerris Leonard* and *Klein*. In order to more easily demonstrate why, CHG directs the Court to the demonstrative timeline attached hereto as *Exhibit* 1. As discussed above, it is CHG's factually supported contention that it first became aware of the Delivery Omission in late-March, 2005, when Dr. Shin was informed at a community meeting of the issuance of the BZA Order.[36] Defendants do not dispute this contention, let alone prove as matter of law that no reasonable trier of fact could accept CHG's version of this critical fact. Moreover, Defendants do not demonstrate (as a matter of law or otherwise) that CHG could have, in the exercise of reasonable diligence, learned of the Delivery Omission at any point prior to late-March, 2005.

---

[36]  See  Shin Aff. ¶ 4, p. 1-2; Plaintiff's Stmt ¶ 6-7, p. 2.

However, by March, 2005, each of Fee Disputes Unit Nos. 1-3 had already been conclusively resolved, and, as such, the Delivery Omission could not have been raised in these Fee Dispute Units.[37]

Likewise, CHG first became aware of the Argument Omission at its meeting with Mr. Glasgow during the Spring of 2006, when Mr. Glasgow first informed CHG that had the Historic Contribution Exemption been timely asserted, it could have been utilized by CHG to avoid the adverse parking effects of the BZA Order.[38] Once again, Defendants do not dispute this contention, let alone prove as a matter of law that no reasonable trier of fact could accept this factually supported contention. Additionally, Defendants present no admissible evidence that CHG could have, in the exercise of reasonable diligence, learned of the Argument Omission at any point prior to the Spring of 2006. However, as of the Spring of 2006, each of Fee Disputes Unit Nos. 1-5 had been conclusively resolved and, as such, the Argument Omission could not have been raised in these Fee Dispute Units.[39]

Since CHG was not actually or constructively aware of the Argument Omission during Fee Dispute Units Nos. 1-5, it follows as a matter of course that CHG's failure to assert the Argument Omission during these Fee Dispute Units does not constitute a *res judicata* bar to the assertion of CHG's claims based upon this Omission. There exists ample authority in support of this contention. For example in *Himel v. Continental Ill. Nat. Bank and Trust Co.*, 596 F.2d 205 (7th Cir. 1979), the trial court granted a *res judicata* summary judgment in favor of the defendant, on the grounds that the events giving rise to the claim (a bank's mismanagement of a trust) should have been litigated by the plaintiff in an earlier civil action seeking modification of the trust, since the alleged mismanagement had already taken place by the time the first suit was instituted. Nonetheless, the Seventh Circuit reversed the trial court's summary judgment ruling, holding that the plaintiffs' assertion that they were

---

[37] *See* Hartman Aff. ¶ 17, 20 and 24, p. 5-7. Indeed, during the pendency of these Fee Disputes, the Delivery Omission had yet to even occur. *Id.*

[38] *See* Shin Aff. ¶ 9-10, p. 2-3; Hartman Aff. ¶ 9-10, p. 3; Plaintiff's Stmt ¶ 18-24, p. 4-5.

[39] *See* Hartman Aff. ¶ 18, 21, 25, 28 and 33, p. 5-8.

unaware of the bank mismanagement at the time of the first suit, gave rise to an issue of fact sufficient

to preclude summary judgment:

> [P]laintiffs contended in their affidavits that they did not know in 1961 of the Bank's alleged misconduct. The district court's determination that plaintiffs have suggested no substantial reason and have presented no evidence for their failure (to allege the present claims)…was in error. It is true that a claim may be barred where with diligence it could have been litigated in the first suit…The record would appear to raise at least a material fact question, however, respecting the knowledge and diligence of plaintiffs regarding the alleged facts on which the present claims rest. The Bank alleged in its pleadings that it supplied regular reports to Mora. Mora denied that allegation in her affidavit. On appeal, the Bank relies on periodic financial reports made not to Mora but to Mary. However, plaintiffs allege in their affidavits that Mary did not ordinarily provide her children with information supplied by the Bank, or with copies of the principal and income statements, nor did she discuss the trust with them. Further there is no evidence that the Bank's alleged misconduct was discoverable from its reports to Mary, nor is there a basis for imputing Mary's knowledge (whatever it may have been) to plaintiffs.…On the present record, it cannot be said that plaintiffs knew or should have known in 1961 of the alleged earlier misconduct on which the involved portion of the present cause of action rests.

> *Id.*, at page 210.

> The Court went on to note:

> Nor is it required, in forestalling summary judgment on the basis of *res judicata*, that plaintiffs allege or evidence active concealment by the Bank. The existence or nonexistence of active concealment from the pre-1961 beneficiary (Mary) may have an effect upon the Court's eventual determination of whether the present plaintiffs knew, or with diligence could or should have known, of the alleged misconduct of the Bank. At this preliminary stage, and in the state of the present record, a grant of summary judgment for failure to allege or submit evidence of active concealment by the Bank was premature.

> *See also Doe,* 985 F.2d at 914-915 (The United States Court of Appeals for the Seventh Circuit

reverses a trial court ruling dismissing a plaintiff's breach of contract and fraud claims on *res judicata*

grounds, concluding that "if the plaintiff is unaware of facts when filing a complaint, res judicata will

not bar subsequent litigation.. . . [unless] by exercising due diligence, he or she could have discovered

the relevant information before filing the initial suit." The Seventh Circuit further rejects defendant's

contention that the plaintiff should have amended her complaint in an earlier litigation once she

became aware of the grounds for her cause of action during the pendency of such litigation, noting

"plaintiffs need not amend filings to include issues that arise after the original suit is lodged.").

These principles have also been extended to bankruptcy contexts analogous to the case *sub judice*. In *In Re: R&C Petroleum, Inc.*, *supra*, , a debtor (R&C) filed for Chapter 11 bankruptcy and retained an accountant (Geese) for the debtor-in-possession during the pendency of such bankruptcy. Thereafter, the trustee of the unsecured creditors' trust (Pipkin) filed suit against Geese, alleging, *inter alia*, breach of fiduciary duty and professional negligence.[40]  In response, Geese maintained (among other things) that the value to the estate of his services had already been adjudicated on October 10, 1995 in connection with his final fee application, which operated as a *res judicata* bar to Pipkin's claims.  The trial court rejected Geese's *res judicata*  (and associated compulsory counterclaim) argument:

> Pipkin's response to the Motion for Summary Judgment raised a fact issue which requires denial of the relief sought, i.e., whether the malpractice claim was not discoverable until the end of 1995 . .. the Affidavit of Jason Searcy . . .states that the malpractice was not discoverable until the end of 1995, after the confirmation and fee application hearings.  The testimony in Searcy's Affidavit is contradicted by Pipkin's own pleadings and the record of this case. . . The difference between the statement in Searcy's Affidavit and those in the Trustee's Objection requires a fact determination . . .of whether the malpractice, if any, was discoverable . . .

*Id*., at pages 359-361.

It is this lack of actual or constructive knowledge by CHG which distinguishes the case sub judice from the  precedent to which Defendants cite in support of their *res judicata* argument.  For example, in *In re Iannochino 242 F.3d 36 (1ˢᵗ Cir. 2001)*, the *res judicata* dismissal of the plaintiff/debtor's malpractice claims was premised upon the determination that "they knew all the facts necessary for bringing their malpractice claim at the time of the fee application."  *Id*., at page 49 (internal citations omitted).  Likewise, in *Grausz v. Englander*, 321 F.3d 467, 474 (4ᵗʰ Cir. 2003), the Court noted that "by the time the bankruptcy court entered the final fee order for the Linowes firm,

---

[40]  Specifically, Pipkin alleged that Geese had violated his ethical obligations as an accountant by failing to withdraw from his representation of R&C, upon learning that R&C had failed to be forthcoming with information material to the financial statements and monthly operating reports Geese was entrusted with preparing.

Grausz knew or should have known there was a real likelihood that he had a malpractice claim against the firm."    Finally, in *Interlogic Trace, Inc.*, 200 F.3d 382, 384, 391 (5th Cir. 2000) the Court determined not only that the plaintiff (a former debtor) was aware of its potential malpractice claim against the defendant (Ernst & Young) during the pendency of Ernst & Young's fee application, but also that it had made a "deliberate choice" not to assert these malpractice claims at the fee hearing.

In view of *R&C Petroleum*, *Doe* and *Himel*, Defendants' *res judicata* argument can be controverted in short order with respect to the Argument Omission.  Assuming (as this Court must on summary judgment) the truth of CHG's contention (supported by numerous Affidavits) that it first learned of the Argument Omission during the Spring of 2006, and in light of the fact that Fee Dispute Unit Nos. 1-5 were no longer pending as of the Spring of 2006, it inevitably follows that the Argument Omission could not have been raised in any of Fee Dispute Unit Nos. 1-5.   Moreover, to the extent there is an issue of fact as to Defendants' fraudulent concealment of the Argument Omission (or for that matter the Delivery Omission), such an issue would likewise preclude summary judgment. *Guerrero, supra*, at page 508.

The analysis with regard to the Delivery Omission is slightly more complicated, but leads inexorably to the same result.  As of March, 2005, Fee Dispute Unit Nos. 1-3 had been conclusively resolved , whereas Fee Dispute Unit Nos. 4-5 had yet to be concluded. *See Exhibit 1*.  However, any assertion by Defendants that the Delivery Omission could have been litigated in Fee Dispute Unit Nos. 4-5 would fail at the outset, because (as shown below) there existed numerous insurmountable procedural and jurisdictional obstacles which would have prevented CHG from asserting the Delivery Omission (and for that matter the Argument Omission) in these Fee Dispute Units.[41]

1. There Existed Numerous Procedural And Jurisdictional Bars Which Precluded CHG From Asserting The Delivery Omission Or The Argument Omission In The Parties' Fee Disputes

---

[41] It should also be noted, however, that many of the arguments which follow below are equally applicable to Fee Disputes Nos. 1-3.

a. CHG Would Have Been Jurisdictionally Foreclosed From Asserting
The Delivery Omission Or The Argument Omission In Fee Dispute Unit
Nos. 4-5, In Light Of The Finality Of The Decisions Rendered In Fee
Dispute Unit Nos. 1-2

Firstly, and perhaps most importantly, CHG would have been jurisdictionally foreclosed from asserting the Delivery Omission or the Argument Omission in Fee Dispute Unit Nos. 4-5, because of the finality of Fee Dispute Unit Nos. 1-2 as discrete "units in litigation". As previously discussed, Shaw Pittman's claimed fee entitlement in Fee Dispute Unit Nos. 4-5 stemmed from the final decisions rendered in Fee Dispute Unit Nos. 1-2, in which the Bankruptcy Court and this Court determined that the parties had entered into a December 15, 2003 No Contest Agreement.[42] Accordingly, the adjudication of these Fee Dispute Units turned <u>entirely</u> upon the existence of the No Contest Agreement, and **not** upon any determination as to the quality of the work performed by Shaw Pittman through January 7, 2004.[43] As such, any assertions CHG might have made as to the quality of the

---

[42] *See* e.g., Hartman Aff. <u>Exhibit</u> 6, page 1 (resolving Fee Dispute Unit No. 1) ("At the hearing on the second motion for summary judgment, the court determined that the agreement between the parties for CHG not to object to Shaw Pittman's fees extended to all fees and expenses for which bills had been submitted by Shaw Pittman prior to the agreement being reached."); Exhibit 8, page 11 (resolving Fee Dispute Unit No. 2 ("only one reasonable interpretation is possible. The pending fee application, CHG's agreement to the term in its next e-mail, and its simultaneous failure to question the meaning or purpose of the no objection term before acceptance results in only one possible interpretation – that CHG would not contest Shaw Pittman's fee applications for fees billed up to that point." ); <u>Exhibit</u> 10, page 3 (resolving Fee Dispute Unit No. 3) ("If the issue is one of state law *arising under the parties' agreements, and not as an incident of the award of fees under the Bankruptcy Code*, District of Columbia law similarly requires that fees be reasonable as determined by using the Johnson factors. This Court had the Johnson factors in mind in its oral decision addressing the fees to be awarded here.") (emphasis added).

[43] *See* e.g., Hartman Aff. <u>Exhibit</u> 11, pages 2-3, 5 (resolving Fee Dispute Unit No. 4) ("In its 2004, this Court concluded that **the Section 1129 Agreement made on December 15 included the term that CHG would not object to Shaw Pittman's fee application. As part of this agreement, Shaw Pittman received an immediate partial payment of fees, CHG's promise that it would not object to Shaw Pittman's fee application (and that it would pay Shaw Pittman if they did object), and the grant of a lien on accounts receivable** . . . CHG . . . argue that Shaw Pittman must submit a detailed fee application for their April 22 Motion, in compliance with 11 U.S.C. 330, 331 and Local Rule 2016. Simply stated, **neither of these two provisions apply to the case at bar. These sections of the Code and Local Rules address fees and costs for counsel of a party during a bankruptcy proceeding. The subject of Shaw Pittman's April 22, 2004 Fee Application was the costs and fees they incurred in litigating the breach of contract issue. When CHG objected to the initial fee application . . .they breached their agreement not to**

work performed by Shaw Pittman (including the Delivery and Argument Omissions) could not have had any bearing whatsoever on the resolution of Fee Dispute Unit Nos. 4-5, since the resolution of these Fee Dispute Units was necessarily founded on the No Contest Agreement which was binding upon the parties notwithstanding  the substantive quality of Shaw Pittman's work.  In fact, this Court and the Bankruptcy Court expressly upheld Defendants' position that CHG struck a bargain which precluded it from filing fee objections to the amount set forth in the No Contest Agreement.

Moreover, any collateral attack by CHG in Fee Dispute Unit Nos. 4-5 as to the binding effect of the No Contest Agreement (whether based on the Delivery Omission or the Argument Omission) would have been an utterly fruitless endeavor, because of the finality of the decisions issued in Fee Dispute Unit Nos. 1-2, pursuant to which the existence of the No Contest Agreement was conclusively established.  In this regard, it is well-recognized that a non-interim fee award (such as the Bankruptcy Court's orders resolving Fee Dispute Unit No. 1) is considered a final fee award under 28 U.S.C. 158(a).  *See, e.g., In Re: Computer Learning Centers,* 404 F.3d 656, 660 (4th Cir. 2005); *In re: Dow Corning Corp.*  237 B.R. 380, 387-88 (Bankr. E.D. Mich. 1999).  Indeed, this Court's jurisdictional authority to entertain an appeal from Fee Dispute Unit No. 1 (via Fee Dispute Unit No.. 2) was premised upon such finality.  See, *In re: Dow Corning Corp.*, at 387.

Accordingly, once the decision in Fee Dispute Unit No. 1 was affirmed by this Court (via its August 20, 2004 ruling in Fee Dispute Unit No. 2), both the Bankruptcy Court and this Court lost any revisory power in might have previously had with respect to Fee Dispute Unit No. 1 (including, but not limited to, revisory power to abrogate the prevailing party clause in the No Contest Agreement). *See*, e.g., *In re Wiersma*, 483 F.3d 933, 939-940 (9th Cir. 2007) (The United States Court of Appeals for the Ninth Circuit concludes that the Bankruptcy Appellate Panel (BAP) did not have revisory power to vacate its prior dismissal of the debtors' appeal, noting that "Under the "law of the case doctrine," a

---

**object to any fees . . . the April 22 motion was one made for attorney costs under the Federal Rules of Bankruptcy Procedure 7054 and the Federal Rules of Civil Procedure 54 . . ."** (emphasis added).

court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Id*. at 941. The Court further held that the BAP only had the authority to correct its own mistakes or fact, or its own clerical errors). [44]

In light of the foregoing, any effort by CHG to raise the Delivery Omission or the Argument Omission (or any other allegation of malpractice) as an objection to the fees requested in Fee Dispute Unit Nos. 4-5 would have been an exercise in legal futility, because such allegations of malpractice (regardless of their nature) would have had no bearing upon the No Contest Agreement, *from which Shaw Pittman's claims for attorneys' fees arose*. In other words, the *res judicata* effect of the decisions in Fee Dispute Unit Nos. 1-2 *as to the existence and terms of the No Contest Agreement* would have precluded CHG from asserting malpractice allegations in subsequent Fee Disputes to collaterally attack the No Contest Agreement's prevailing party provision. Stated in another fashion, Defendants on one hand argue that CHG's malpractice claims are barred by *res judicata* on the grounds that they supposedly should have been asserted in the parties' prior Fee Dispute Units, disingenuously ignoring the fact that these claims **could not have** been asserted in Fee Dispute Unit Nos. 4-5, precisely *because* of the *res judicata* effect of earlier rulings as to the formation, scope and enforceability of the No Contest Agreement.[45]

---

[44] *See also, In Re Transtexas Gas Corp.*, 303 F.3d 571, 578-579 (5th Cir. 2002) ("It is a fundamental tenet of civil procedure that . . . the filing of a notice of appeal from the final judgment of a trial court divests the trial court of jurisdiction and confers jurisdiction upon the appellate court . . . This rule applies with equal force to bankruptcy cases."); *The Horn & Hardart Co., v. Ntn'l Railroad Passenger Corp.*, 659 F. Supp. 1258, 1261 (D.D.C. 1987), *affd.* 843 F.2d 546 (D.C. Cir. 1988) ("It is irrefutable that an appellate mandate is completely controlling as to all matters decided and disposed of by the decree. . . The district court obviously cannot flout matters addressed by an appellate mandate."); *McManus v. D.C.*, 545 F. Supp. 2d. 129, 133 (D.D.C. 2008) (Once a final order of the District Court is appealed to the Court of Appeals, the district court does not have jurisdiction to grant relief from a judgment pursuant to F.R.C.P. 60(b)).

[45] Defendants' argument, if accepted by this Court would present litigants such as CHG with an untenable "Hobson's Choice," forcing them to either assert a malpractice claim knowing that the claim does not constitute a *bona fide* defense to a fee petition in light of a pre-existing settlement agreement (and thereby risk Rule 11 sanctions), or risk losing the claim on preclusion grounds. Such a result is manifestly unfair and is not supported by any of the authorities to which Defendants cite.

The doctrine of *res judicata* does not require a party to assert a cause of action in an earlier litigation, if such an assertion would be a legally futile endeavor.  See, e.g., *North*, 881 F.2d at 1093-1095  (District of Columbia Circuit reverses a trial court summary judgment ruling in favor of the defendant on *res judicata* grounds, noting "Even assuming *arguendo* that North's demand for documents under FOIA and his subpoena for the same documents during the grand jury proceeding comprise the same claim, claim preclusion does not bar North's present FOIA action because he could not have invoked FOIA during the grand jury proceeding.") *Id.* at 1093; *U.S. Industries, Inc. v. Blake Construction Co.*, 765 F.2d 195, 205 n. 21 (D.C. Cir. 1985)("Of course, nothing in the rule against splitting a cause of action prevents a plaintiff from later bringing claims that  either could not have been anticipated when the first suit was filed or would have been utterly impracticable to join at that time."); *Velikonja*, 355 F. Supp. 2d. at 201-202 (D. D.C. 2005) ("For the plaintiff to be precluded from again raising [a] claim, he must have previously received a 'full and fair opportunity to litigate it.") (quoting *Kremer v. Chemical Construction Co.*, 456 U.S. 461, 481 n. 22 (1982); *Doe*, *supra*, at (plaintiff was not required to amend her complaint in an earlier litigation to assert a claim that had yet to ripen, where, in light of such prematurity, she would have been "booted out of court for lack of damages, and probably sanctioned in the bargain."); *Grimes v. Miller*, 448 F. Supp. 664, 669-670 (D. Md. 2006) ("[T]he ordinary rules of claim preclusion do not apply where 'the plaintiff was unable to . . . seek a certain remedy or form of relief in the first action because of the limitations on the subject matter of the courts . . . and the plaintiff desires in the second action to rely on that theory of form of relief'  In other words, 'where a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers . . . a subsequent action for damages will not normally be barred by *res judicata*. . . '"). (internal citations omitted).

For the reasons discussed above, any attempt by CHG to assert malpractice by Defendants in Fee Dispute Unit Nos. 4-5 would have been precisely such a futile endeavor.  For this additional reason, the *res judicata* doctrine is inapplicable to this case.

b. CHG Could Not Have Asserted The Delivery Omission Or The Argument Omission In Fee Dispute Unit No. 4, Because, In Adjudicating This Appeal, CHG Was Limited To The Record Established In Fee Dispute Unit No. 3

Moreover, with particular respect to the appeal comprising Fee Dispute Unit No. 4, there were additional insurmountable procedural barriers which would have precluded CHG from asserting the Delivery Omission or the Argument Omission during this Fee Dispute. In adjudicating Fee Dispute Unit No. 4, this Court was limited by Court Rule to the record established in Fee Dispute Unit No. 3. *See* Fed. R. Bankr. P. 8006. Since the record established in Fee Dispute Unit No. 3 did not include allegations, let alone evidence, with respect to the Delivery Omission or the Argument Omission (for the simple reason that CHG had yet to become aware of these omissions at the time Fee Dispute Unit No. 3 was conclusively resolved in December, 2004), any attempt by CHG to belatedly introduce evidence outside the Bankruptcy Court record with regard to the Delivery Omission or the Argument Omission during Fee Dispute Unit No. 4 would not, and could not have had, any material effect on the resolution of Fee Dispute No. 4. For this additional reason, CHG was procedurally foreclosed from asserting the Delivery Omission or The Argument Omission in Fee Dispute Unit No. 4

C.    Since Fee Dispute Unit Nos. 1-5 Arose Out Of A Different Nucleus Of Facts Than The Case Sub Judice, This Case Is Based Upon A Different Transaction And Occurrence Than The Parties' Prior Fee Dispute Units

As previously mentioned, the question of whether two cases implicate the same cause of action for *res judicata* purposes turns on whether they share the same nucleus of facts. *Drake*, 291 F.3d at 66 (quoting *Page* at 820). Applying this test, the disposition of Fee Dispute Unit Nos. 1-5 cannot bar CHG's claims on *res judicata* grounds because the claims at issue here arise out of a completely different nucleus of fact than the claims at issue in such Fee Dispute Units, as shall be demonstrated below.

The nucleus of fact relevant to this case is comprised of Defendants' actions and omissions in the Zoning Representation (including the Argument Omission and the Delivery Omission). By contrast, as discussed *supra*, Fee Dispute Unit Nos. 1-5 turned entirely on whether the parties had entered into a binding No Contest Agreement on December 15, 2003 (and what the terms of this No Contest Agreement comprised). Fee Dispute Unit Nos. 1-5 plainly did *not* turn on an assessment of the quality of the work performed by Shaw Pittman. Indeed, part of the bargain as found by the Bankruptcy Court and upheld by this Court is that CHG obligated itself not to file objections to Shaw Pittman's fee applications. As such, the instant case comprises a different "cause of action" than Fee Disputes Unit Nos. 1-5, rendering *res judicata* inapplicable.

On this point, *Iannochino* is instructive. The Court in *Iannochino* noted that, as a general matter, "the failure to interpose a counterclaim does not necessarily act as a bar to later action." *242 F.3d* at page 41. However, the Court stated that this general principle is subject to two exceptions:

> The first of these exceptions applies to compulsory counterclaims . . . If a counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, the counterclaim is compulsory and must be raised.

*Id*., at pages 41-42.[46]

When *Iannochino's* standard is applied to Defendants' *res judicata* defense, it becomes self-evident that this defense should be rejected. For the reasons previously discussed, the instant case, involving professional malpractice, plainly does not arise out of the same "transaction and occurrence" as Fee Dispute Unit Nos. 1-5, which turned exclusively on the events underlying the formation of the parties' No Contest Agreement, rather than upon an assessment of the quality of the work performed by Shaw Pittman. Accordingly, the first of the two *Iannochino* exceptions does not give rise to a *res judicata* bar in this case.

---

[46] In fact, the Court in *Iannochino* determined that this exception was inapplicable to the case before it, noting that the bankruptcy court never issued an order subjecting the case to the compulsory counterclaim provision of Fed. Bankr. R. 7013. 242 F.3d at 42.

This basic distinction renders *Southmark, Interlogic* and *Grausz* inapposite, since none of them involved an earlier fee award based on a *settlement agreement.  See,  Interlogic*, 200 F.3d at 387-388 ("The central transaction involved in both Ernst & Young's fee application and the Trustee's present claim was the provision of accounting services during the Chapter 11 reorganization . . .By granting Ernst and Young's fee application, the bankruptcy court implied a finding of quality and value in Ernst & Young's services.  Similarly, the Trustee's claims in the present suit arise from Ernst & Young's alleged omissions in rendering the very same services considered by the bankruptcy court in the fee application hearing . . . [these claims] challenging the sufficiency and value of Ernst & Young's services, inevitably involved the nature of the services performed for the debtor's estate . . they cannot stand alone.") (internal quotations omitted); *Grausz, supra* at page 473 ("The core of operative facts in the two actions here . . .are the same.  Both actions relate to the nature and quality of legal services the Linowes firm's provided to Grausz in connection with the bankruptcy proceeding . . . The fee application proceeding necessarily included an inquiry by the bankruptcy court into the quality of the professional services rendered by the Linowes firm. . .By granting the Linowes firm second and final fee application, the bankruptcy court impliedly found that the firm's services were acceptable throughout its representation of Grausz.").[47]  The second exception set forth in *Iannochino* applies where "the relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."  242 F.3d at page 42.  The quintessential example of such nullification occurs where the successful prosecution of the second action has the potential to require an attorney to disgorge fees already awarded to him.  *Id*, at page 43.  In this case, however, CHG is not seeking such

---

[47]  *See also, Southmark*, at pages 934-935 (affirming the bankruptcy court's holding that "the disgorgement proceeding and this action involved the same nucleus of operative fact indeed, this action was litigation resulting from a single transaction with different forms of relief being requested.") (internal quotations omitted).

disgorgement,[48] and, in any event, the Bankruptcy Case has already been administratively closed and no danger of such disgorgement therefore exists. Thus, the second of the *Iannochino* exceptions is inapplicable.

Indeed, in circumstances analogous to those of the case *sub judice*, courts have held that where a fee dispute between an attorney and a client has been conclusively resolved *via* a settlement agreement (as opposed to an adjudication on the merits), the doctrine of *res judicata* does not bar a subsequent malpractice claim by the client against the attorney, on the grounds that the two claims comprise different "transactions." In connection with this issue, *Kronish Lieb* is particularly instructive. In *Kronish Lieb*, a bankruptcy trustee (Fort) and a debtor's former counsel (Kronish) entered into a consent order pursuant to which Fort agreed to allow an administrative claim by Kronish in the amount of $13,000 in return for Kronish agreeing to lift a fee lien against the debtor's files and records. The $13,000 payment reflected fees alleged to be owed to Kronish on account of legal services rendered to the debtor. Following the entry of the consent order by the bankruptcy court, Fort filed a malpractice claim in the same court against Kronish on account of certain alleged pre-petition malpractice committed by Kronish. Kronish moved to dismiss the malpractice claim on the grounds of *res judicata*. The bankruptcy court concluded that the consent order did not bar the malpractice claim on *res judicata* grounds, and Kronish appealed. On appeal, the United States Court of Appeals for the Fourth Circuit affirmed the bankruptcy court's ruling, stating in pertinent part:

> Kronish contends that the Trustee is precluded from bringing a malpractice action because the quality of Kronish's legal services was necessarily at issue when the Consent Order was entered . . . We disagree . . . In evaluating whether . . . there is identity of claims, the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment . . . Where the same series of connected transactions is involved, and the same operative facts are at issue, the third res judicata factor is made out . . . In this case, it cannot fairly be said that the Consent Order and malpractice action involve the same operative facts. In approving the Consent Order, the court had no need to consider any facts pertaining to the nature, quality, or extent of Kronish's services to Spartan.

---

[48] *See* Shin Aff. at ¶ 13.

*Id.*, at pages 264-265 (internal citations and quotations omitted) (emphasis added).

The Fourth Circuit also expressly distinguished *Kronish* from *Grausz*:

Unlike here, that case involved an award of fees rendered by the bankruptcy court upon receipt of a professional fee application under 11 U.S.C. § 330. We concluded that the malpractice action and prior fee proceeding were based on the same cause of action, because [t]he fee application proceeding necessarily included an inquiry by the bankruptcy court into the quality of professional services rendered by the [law] firm. Pursuant to 11 U.S.C. § 330, [t]he court was required to 'consider the nature, the extent, and the value of such services' before awarding fees. By granting the [law] firm's second and final fee application, the bankruptcy court impliedly found that the firm's services were acceptable throughout its representation of Grausz.

*Id.* at footnote 2, internal citations and quotations omitted.

Likewise, with respect to this matter, once the Bankruptcy Court and this Court had each determined in Fee Dispute Unit Nos. 1-2 that the parties had entered into the No Contest Agreement (the terms of which included *inter alia* a prevailing party provision), the subsequent adjudications of Shaw Pittman's requests for "prevailing party" attorneys' fees in Fee Dispute Unit Nos. 3-5, did not (and could not have) taken into account the quality of Shaw Pittman's representation of CHG (in zoning matters, or otherwise), since Shaw Pittman's claim for fees in these litigation units stemmed *exclusively* from the No Contest Agreement, <u>not</u> from Shaw Pittman's performance of legal services on behalf of CHG's bankruptcy estate under 11 U.S.C. Section 330, or the quality of such performance.[49]

Nor could Defendants credibly claim that the No Contest Agreement constituted a global settlement of "any and all" potential claims that might have existed between CHG and Shaw Pittman; to the

---

[49] *See* e.g., Hartman Aff. <u>Exhibit</u> 11, pages 2-3, 5 (resolving Fee Dispute Unit No. 4) ("In its 2004, this Court concluded that **the Section 1129 Agreement made on December 15 included the term that CHG would not object to Shaw Pittman's fee application. As part of this agreement, Shaw Pittman received an immediate partial payment of fees, CHG's promise that it would not object to Shaw Pittman's fee application (and that it would pay Shaw Pittman if they did object), and the grant of a lien on accounts receivable** . . . CHG . . . argue that Shaw Pittman must submit a detailed fee application for their April 22 Motion, in compliance with 11 U.S.C. 330, 331 and Local Rule 2016. Simply stated, **neither of these two provisions apply to the case at bar. These sections of the Code and Local Rules address fees and costs for counsel of a party during a bankruptcy proceeding. The subject of Shaw Pittman's April 22, 2004 Fee Application was the costs and fees they incurred in litigating the breach of contract issue. When CHG objected to the initial fee application . . .they breached their agreement not to object to any fees . . . the April 22 motion was one made for attorney costs under the Federal Rules of Bankruptcy Procedure 7054 and the Federal Rules of Civil Procedure 54 . . .**") (emphasis added).

contrary, the No Contest Agreement expressly indicates that it did *not* have such omnibus effect.[50]  For

these additional reasons, summary judgment on the grounds of *res judicata* would be improper.

> D.  The Doctrine of *Res Judicata* Is Inapplicable Because None Of The Fee Awards
>      Rendered In Fee Dispute Unit Nos. 1-5 Were Based On A "Performance Driven Fee"

Courts have also held that an attorneys' fee award does not have *res judicata* effect upon a

subsequent malpractice action where the fee award is not "performance driven."  For example, in

*Magee v. Charmoy*, 2000 Conn. Super LEXIS 234 (2000) the plaintiff (Magee) filed a professional

malpractice claim against his former counsel (Charmoy) based upon Charmoy's purportedly sub-

standard representation in a Chapter 7 bankruptcy case.  In response, Charmoy filed a motion for

summary judgment, claiming that the bankruptcy court's fee award in Magee's Chapter 7 bankruptcy

barred his subsequent malpractice claim on *res judicata* grounds.  The trial court denied summary

judgment, because "the record demonstrates that the bankruptcy judge did not believe that an award of

fees was performance driven."  *Id*. at pages *1-2.  The Court went on to state:

> [R]es judicata is not applicable to bar the present claim because the plaintiff did not have an
> adequate opportunity to litigate the matter in the earlier proceeding. The defendants
> presented three separate applications for fees. The plaintiff attempted to argue many of the
> same issues that are before this court in contesting the defendants' third application for fees.
> However, the bankruptcy court expressly stated that this is not a "performance driven fee."
> The record indicates the possibility that the bankruptcy court may have awarded fees merely
> based upon the hours spent by the attorneys at their "acceptable hourly rate."  While the court
> acknowledges that the bankruptcy judge may have actually considered the performance of the
> defendants in awarding attorneys' fees, the record is unclear as to that point. . . Therefore, the
> defendants' motion for summary judgment based upon . . . . res judicata is denied.

*Id*., at pages *7-8.

The logic of the court in *Magee* applies with at least equal force to this case.  In the instant

case, as in *Magee*, the Bankruptcy Court's award of fees in connection with Fee Dispute Unit No. 1

---

[50] See Hartman Aff. Exhibit 6 (wherein the Bankruptcy Court, in its order of April 9, 2004, noted that
CHG was only prohibited, by virtue of such order, from "filing and prosecuting . . . objections to the
portion of the Shaw Pittman Fee Application covering the Pre-December 2003 fees and expenses" but not as
to "Post-November 2003 fees and expenses.")  As such the disposition of Fee Dispute Unit No. 1 did not
even purport to resolve all of the parties' then-pending fee disputes, let alone all potential malpractice
claims.  *See also*, Hartman Aff. ¶ 39, p. 10.

was clearly not "performance based," but was instead based upon the Bankruptcy Court's finding that the parties entered into an enforceable No Contest Agreement on December 15, 2003.[51] Having found that the parties entered into their December 15, 2003 No Contest Agreement, the Bankruptcy Court did not (and did not need to) assess Defendants' "performance" as counsel for CHG in the Bankruptcy Case, or in the Zoning Representation. Moreover, once the Bankruptcy Court and this Court had conclusively decided in Fee Dispute Unit Nos. 1-2 that the parties had agreed to a No Contest Agreement (which included, *inter alia*, a "prevailing party" provision with respect to any collateral disputes regarding the enforceability of such Agreement), their subsequent fee awards in Fee Dispute Unit Nos. 3-5 likewise were inevitably based upon the terms of the parties' No Contest Agreement, **not** an assessment of Shaw Pittman's performance as counsel for CHG.[52] Accordingly, for this additional reason, the dispositions of Fee Disputes Unit Nos. 1-5 do not have *res judicata* effect in this case.

## VI.   The Entry of Summary Judgment Must Be Deferred Pursuant To Rule 56(f), Fed. R. Civ. P.

Denial or deferral of summary judgment is highly warranted under Rule 56(f), Fed. R. Civ. P.,[53] insofar as discovery has yet to commence and Plaintiffs cannot furnish additional affidavits in opposition to the instant motion. *See*, Hirsch Affidavit, ¶ 5, p. 2. Nor can they buttress their opposition to Defendants' SJ Motion based upon material deposition testimony. Rule 56(f) clearly "permits a court to order a continuance pending discovery when a party opposing summary judgment shows in its

---

[51] *See*, Hartman Affidavit, <u>Exhibits</u>  4-7

[52] *See*, Hartman Affidavit, <u>Exhibits</u> 10, 11 and 14.

[53] Rule 56(f), Fed. R. Civ. P. provides as follows:

> (f) <u>When Affidavits are Unavailable</u>.  If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>     (1) deny the motion;
>     (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>     (3) issue any other just order.

affidavits that it cannot present facts essential to its opposition." *Sirmans v. Caldera*, 27 F. Supp. 2d 248, 250 (D.D.C. 1998) (Lamberth, J.). In *Sirmans* this Court has observed that in addition to serving the purpose of guarding "against the improvident granting of summary judgment," Rule 56(f) "is consequently applied with a spirit of liberality." *Id.; see also, First Chicago Int'l v. United Exchange Co.*, 836 F.2d. 1375, 1380 (D.C. Cir. 1988); *United States of America v. BCCI Holdings (Luxembourg), S.A.* 961 F. Supp. 282, 286 (D.D.C. 1997) ("BCCI")). Indeed, the application of Rule 56(f) for the benefit of the party opposing summary judgment is most appropriate, where as here, "no discovery has been ordered, and no discovery has been exchanged." *BCCI*, 961 F. Supp. at 286. The Plaintiffs further submit that the issues in this action, their complexity, and the reality that many of the critical facts are within the possession and control of the Defendants render any summary judgment prior to the taking of depositions improper. *See, Londrigan v. Federal Bureau of Investigation*, 670 F.2d. 1164, 1175 (D.C. Cir. 1981) (summary judgment granted after Rule 56(f) limited discovery was ordered was subsequently reversed to afford plaintiffs the opportunity to take depositions).

Measured against these Rule 56(f) standards, summary judgment must either be denied without prejudice or deferred until the completion of all discovery. The Rule 56(f) affidavit of Plaintiffs' counsel sets forth in specific detail the reasons why specific discovery is necessary and that the parties have failed to reach agreement on a discovery plan. In addition to denying summary judgment in order to allow Plaintiff to have meaningful discovery, this Court should also utilize the pendency of the Defendants' SJ Motion to set a discovery plan so that discovery can commence forthwith. In addition to the Hirsch Affidavit, Plaintiff has adduced even on the limited record here sufficient evidence to generate certain triable issues. *See, Plaintiff's Stmt* and exhibits attached thereto. In light of this evidence, the denial of summary judgment without prejudice is particularly appropriate, pending the completion of discovery.

Dated: July 25, 2008

155944_1.DOC

Respectfully submitted,


By: _____/s/  Emil Hirsch_____
     Emil Hirsch (D.C. Bar No. 930478)
     Tamir Damari (D.C. Bar No. 455744)
     NOSSAMAN L.L.P. O'CONNOR &
     HANNAN
     1666 K Street, N.W., Suite 500
     Washington, D.C.  20006-
     Email: ehirsch@nossaman.com
       tdamari@nossaman.com
     Phone:  (202) 887-1400

     Attorneys for Plaintiff

155944_1.DOC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on the 25th day of July, 2008,

via this Court's Notice of Electronic Filing, upon:

Jack McKay, Esq.
PILLSBURY WINTHROP SHAW PITTMAN, LLP
2300 N Street, N.W.
Washington, D.C.  20037

_____/s/  Emil Hirsch_____
            Emil Hirsch

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**CAPITOL HILL GROUP,**                              )
                                                     )
       **Plaintiff**                           )
                                                     )
     **v.**                                     )     **Civil Action No. 07-1936 (RCL)**
                                                     )
**PILLSBURY WINTHROP**                               )
**SHAW PITTMAN LLP,** *et al.*                       )
                                                     )
     **Defendants.**                            )
_____)

## ORDER

    **UPON CONSIDERATION,** of Defendants' Motion for Summary Judgment, points and authorities in support thereof and Plaintiff's Opposition thereto, it is, this _____ day of _____, 2008; hereby

    **ORDERED,** that such Motion is denied.

                                       _____
                                       UNITED STATES DISTRICT JUDGE

# EXHIBIT A





## ZONING TIMELINE

**March 26, 2003**
(Issuance of C of O)

**January 6, 2004**
(Initial Denial of Appeal No. 17043 by BZA)

**February 10, 2004**
(BZA Decides to Reconsider Appeal)

**February 24, 2004**
(BZA Orally Decides to Grant Appeal)

**September 9, 2004**
(BZA Issues Final Written Order Granting Appeal)

**September 29, 2004**
(September 9 Order of BZA Received by Shaw Pittman per date stamp)

**March 1, 2005**
(CHG Learns of the September 9 Order)

**Spring 2006**
(CHG Learns of the So-Called "Argument Omission")

## FEE DISPUTE TIMELINE

**January 12, 2004**
Beginning of Dispute No. 1

**FEE DISPUTE NO. 1**
(Relating to Fees Incurred between 11/1/03 and 1/7/04)

**April 9, 2004**
End of Dispute No. 1

**April 19, 2004**
Beginning of Dispute No. 2

**FEE DISPUTE NO. 2**
(Appeal from Fee Dispute No. 1)

**August 20, 2004**
End of Dispute No. 2

**September 23, 2004**
Beginning of Dispute No. 3

**FEE DISPUTE NO. 3**
(Relating to Fees Incurred in Connection with Fee Dispute Nos. 1-2)

**December 2, 2004**
End of Dispute No. 3

**December 7, 2004**
Beginning of Dispute No. 4

**FEE DISPUTE NO. 4**
(Appeal from Fee Dispute No. 3)

**June 22, 2005**
End of Dispute No. 4

**June 24, 2005**
Beginning of Dispute No. 5

**FEE DISPUTE NO. 5**
(Relating to Fees Incurred in Connection with Fee Dispites Nos. 3 -4)

**August 1, 2005**
End of Dispute No. 5

EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                                    |     |                           |
| ---------------------------------- | --- | ------------------------- |
| **CAPITOL HILL GROUP,**            | )   |                           |
|                                    | )   |                           |
| **Plaintiff,**                     | )   |                           |
|                                    | )   |                           |
| **vs.**                            | )   | **Civil No. 07-1936 (RCL)** |
|                                    | )   |                           |
| **PILLSBURY WINTHROP**             | )   |                           |
| **SHAW PITTMAN, LLP, et al.**      | )   |                           |
|                                    | )   |                           |
| **Defendants.**                    | )   |                           |

_____)

## PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS PURSUANT TO L. CIV. R. 7(h)

Plaintiff Capitol Hill Group ("CHG"), by and through its undersigned counsel, hereby submits this Statement of Disputed Material Facts Pursuant to L. Civ. R. 7(h), and states as follows:

I. As To The Delivery Omission[1]

1. Upon the termination of an attorney's representation of a client, does an attorney have a continuing duty to forward to the client time-sensitive pleadings, notices or court orders? [Declaration of David Webster ("Webster Affidavit"), ¶¶ 5-8 pages 2-3].

2. Upon the improper termination of an attorney's representation of a client, is the attorney's duty to forward to the client time-sensitive pleadings, notices or court orders (assuming it exists) curtailed ? [Webster Affidavit, ¶¶ 5-8 pages 2-3].

---

[1] The "Delivery Omission," as mentioned herein, refers to CHG's allegation that Defendants committed professional malpractice by failing to transmit the September 9, 2004 Order of the District of Columbia Board of Zoning Adjustment (the "BZA Order") to CHG in a prompt and timely manner upon its probable receipt by Defendants on or about September 28, 2004.

1

3.      Does the District of Columbia Board of Zoning Adjustment (the "BZA") preclude counsel appearing before it a means by which to notify the BZA of the cessation of counsel's representation of a litigant in a case before the BZA?   [Affidavit of Michael McGovern ("McGovern Affidavit"), ¶ 3 pages 1-2.]

4.      Did Defendants have the last clear chance to timely notify CHG of the issuance of the BZA Order, so as to prevent CHG from sustaining harm as a result of such Order becoming final and therefore unappealable? [Webster Aff. ¶ 5-8, pages 2-3.]

5.      Did any of the Defendants receive the BZA Order at any point prior to the date an appeal from such Order could have been timely taken to the District of Columbia Court of Appeals ? [Hartman Affidavit  ¶ 4-5 pages 1-2 and Exhibit 1 thereto; Shin Aff. ¶ 4-5, pages 1-2].

6.      When did CHG first learn of the issuance of the BZA Order?  [Hartman Affidavit, ¶ 4 pages 1-2; Shin Affidavit ¶ 4 pages 1-2].

7.      When did CHG first learn of the Delivery Omission? [Hartman Affidavit, ¶ 4 pages 1-2; Shin Affidavit, ¶ 4 pages 1-2].

8.      Did any of the Defendants at any time attempt to conceal from CHG by their silence their receipt of the BZA Order? [Webster Aff. ¶ 5-8, pages 2-3; Shin Aff. ¶ 4, pages 1-2; Hartman Aff. ¶ 4, pages 1-2]

9.      Did CHG have any reason to suspect at any point more than three years prior to the filing of the instant case that the Delivery Omission had occurred?  [Hartman Affidavit, ¶ 4 pages 1-2; Shin Affidavit, ¶ 4 pages 1-2].

10.      Could CHG, with the exercise of reasonable diligence, have learned at any point more than three years prior to the filing of the instant case of the existence of the Delivery Omission?  [Hartman Affidavit ¶ 4 pages 1-2; Shin Affidavit ¶ 4 pages 1-2].

11.    Did CHG actually litigate, as part of the so-called Fee Dispute Unit Nos. 1-5 [2] any of the following claims:

  a.    the harm/injury resulting to CHG from the Delivery Omission;

  b.    whether any of the Defendants had breached any contract with CHG, any fiduciary duty or any professional standard of care by failing to timely deliver to CHG the BZA Order;

  c.    whether as a result of a. and/or b. as stated above, the Defendants were not entitled to receive a fee compensation award (in whole or in part) for their representation of CHG before the District of Columbia Zoning Administrator (the "ZA") and the BZA.

[Hartman Affidavit ¶ 17, 20, 24, 27 and 32 pages 5-8].

12.    Was CHG actually aware of the Delivery Omission during the pendency of Fee Dispute Unit Nos. 1-3?    [Hartman Affidavit ¶ 4 pages 1-2; Shin Affidavit ¶ 4 pages 1-2].

13.    Could CHG, during the course of Fee Dispute Unit No. 1, have litigated the merits of the Delivery Omission?  [Hartman Affidavit ¶ 17 page 5; Shin Affidavit ¶ 4 pages 1-2].

14.    Could CHG, during the course of Fee Dispute Unit No. 2, have litigated the merits of the Delivery Omission?  [Hartman Affidavit ¶ 20 page 6; Shin Affidavit ¶ 4 pages 1-2].

15.    Could CHG, during the course of Fee Dispute Unit No. 3, have litigated the merits of the Delivery Omission?  [Hartman Affidavit ¶ 24 page 7; Shin Affidavit ¶ 4 pages 1-2].

---

[2] As used herein, each of the terms "Fee Dispute Unit No. 1," "Fee Dispute Unit No. 2," "Fee Dispute Unit No. 3," "Fee Dispute Unit No. 4" and "Fee Dispute Unit No. 5," shall have the meanings ascribed to them in CHG's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment.

16.     Could CHG, during the course of Fee Dispute Unit No. 4, have litigated the merits of the Delivery Omission?  [Hartman Affidavit ¶ 27 page 7.

17.     Could CHG, during the course of Fee Dispute Unit No. 5, have litigated the merits of the Delivery Omission?  [Hartman Affidavit ¶ 32 page 8.

II. <u>As To The Argument Omission</u>[3]

18.     When did CHG first learn that the Historic Property Exemption[4] could have been asserted by CHG before the ZA and BZA so as to relieve CHG of the adverse parking effect of the BZA Order (i.e., the  requirement to provide a 1:1 parking space/bed parking ratio for the Premises), had such claim been asserted in a timely manner? [Shin Affidavit ¶ 9-10, pages 2-3; Hartman Affidavit ¶ 9 page 3].

19.     Should CHG be deemed to have had constructive knowledge of the Historic Property Exemption prior to first being apprised of this claim by Mr. Glasgow during the Spring of 2006?  [Shin Affidavit ¶ 9-10, pages 2-3; Hartman Affidavit ¶ 9 page 3].

20.     When was the absolute last opportunity CHG would have had to assert the Historic Property Exemption before the BZA in BZA Appeal No. 17043 ? [Shin Affidavit at ¶ 5, page 2; Hartman Affidavit at ¶ 5, page 2]

---

[3] The "Argument Omission," as used herein, refers to CHG's allegation that Defendants committed professional malpractice by failing to timely assert the Historic Property Exemption (as this term is defined below).

[4] The "Historic Property Exemption," as mentioned herein, refers to CHG's allegation that during the pendency of Defendants' representation of CHG before the ZA and BZA, the Defendants failed to assert on behalf of CHG certain municipal regulations pertaining to historic landmarks and buildings contributing to the character of historic districts (and the long-standing and well-established administrative interpretations thereof) which, had they been asserted during the Zoning Representation, would have prevented the imposition of any requirement to provide parking beyond that then-available on the property at issue (the "Property"), given the prior designation of a portion of the Property's building by the District of Columbia as a historic landmark and a building contributing to the character of a historic district.

21.     When did CHG first learn of the harm it sustained as a proximate result of the Defendants' failure to assert the Historic Property Exemption? [Shin Affidavit¶ 9-10, pages 2-3; Hartman Affidavit ¶ 9, page 3].

22.     Did CHG have any reason to suspect at any point more than three years prior to the filing of the instant case that the Argument Omission had occurred? [Hartman Affidavit ¶ 9 page 3; Shin Affidavit ¶ 9-10 pages 2-3].

23.     Could CHG, with the exercise of reasonable diligence, have learned of the existence of the Argument Omission at any point more than three years prior to the filing of the instant case? [Hartman Affidavit ¶ 9 page 3; Shin Affidavit ¶ 9-10 pages 2-3].

24.     Did any of the Defendants at any time attempt to conceal from CHG by their silence the Argument Omission? [Webster Aff. ¶ 5-8, pages 2-3; Shin Aff. ¶ 9-10, pages 2-3; Hartman Aff. ¶ 9, page 3; Hirsch Aff. ¶ 5.

25.     Did CHG actually litigate, as part of the so-called Fee Dispute Unit Nos. 1, 2, 3, 4 and 5, any of the following claims:

    a.   the harm/injury resulting to CHG from Defendants' failure to raise the
         Historic Property Exemption before the ZA and BZA;

    b.   whether any of the Defendants had breached any contract with
         CHG, any fiduciary duty or any professional standard of care by failing to
         raise the Historic Property Exemption before the ZA and BZA;

    c.   whether as a result of a. and b. as stated above, the Defendants were not entitled
         to receive fee compensation (in whole or in part) for their representation of
         CHG before the ZA and the BZA..

[Hartman Affidavit ¶ 18, 21, 25, 28 and 33,  pages 5-8].

26.    Was CHG actually aware of the Argument Omission at any point during Fee Dispute Unit Nos. 1, 2, 3, 4 and 5? [Hartman Affidavit ¶ 9, 18, 21, 25, 28 and 33 pages 3, 5-8; Shin Affidavit ¶ 9-10 pages 2-3].

27.    Could CHG, as part of  Fee Dispute Unit No. 1, have litigated the merits of the Argument Omission?  [Hartman Affidavit ¶ 18 page 5; Shin Affidavit ¶ 9-10 pages 2-3].

28.    Could CHG, as part of Fee Dispute Unit No. 2, have litigated the merits of the Argument Omission?  [Hartman Affidavit ¶ 21 page 6; Shin Affidavit ¶ 9-10 pages 2-3].

29.    Could CHG, as part of  Fee Dispute Unit No. 3, have litigated the merits of the Argument Omission?  [Hartman Affidavit ¶ 25 page 7; Shin Affidavit ¶ 9-10 pages 2-3].

30.    Could CHG, as part of Fee Dispute Unit No. 4, have litigated the merits of the Argument Omission?  [Hartman Affidavit ¶ 28 page 7; Shin Affidavit ¶ 9-10 pages 2-3].

31.    Could CHG, as part of Fee Dispute Unit No. 5, have litigated the  merits of the Argument Omission?  [Hartman Affidavit¶ 33 page 8; Shin Affidavit ¶ 9-10 pages 2-3].

32.    Did Plaintiff and Defendants intend, by virtue of the December 10, 2003-December 15, 2003 course of e-mail communications comprising the settlement of their fee dispute before the Bankruptcy Court, to also reach a full and final settlement of any potential malpractice claims that CHG might have against Defendants, including but not limited to professional liability claims arising out of the Delivery Omission and the Argument Omission? [Hartman Affidavit¶ 39 pages 9-10].

33.    Was the termination of Defendants' representation of CHG engendered by CHG's dissatisfaction with the quality of the work performed by Defendants? [Hartman Affidavit¶ 40 page 10; Shin Affidavit ¶ 12 page 3].

Respectfully submitted,


By: _____/s/_Emil Hirsch_____
    Emil Hirsch (D.C. Bar No. 930478)
    Tamir Damari (D.C. Bar No. 455744)
    NOSSAMAN, L.L.P. O'CONNOR &
    HANNAN
    1666 K Street, N.W., Suite 500
    Washington, D.C.  20006-2803
    Email:ehirsch@nossaman.com
    tdamari@nossaman.com
    Phone:  (202) 887-1400

    Attorneys for Plaintiff

EXHIBIT C

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CAPITOL HILL GROUP,** | ) | |
| | ) | |
| **Plaintiff** | ) | **Civil Action No. 07-1936 (RCL)** |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PILLSBURY WINTHROP** | ) | |
| **SHAW PITTMAN LLP**, *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## AFFIDAVIT OF DONALD R. HARTMAN

I, Donald R. Hartman, hereby declare under penalty of perjury as follows:

1.      I am over 21 years of age and competent to testify as to the matters set forth herein.  This Affidavit is based upon my personal knowledge.

2.      I am an attorney admitted to practice in the District of Columbia since 1979. I am currently employed as General Counsel for Capitol Hill Group ("CHG"), the Plaintiff in this matter.  I have been employed in this capacity from November, 2005 through the present.

3.      Between 1992 and the present, CHG has been the fee simple title owner of certain real property located at 700 Constitution Avenue, NE, Washington, DC (the "Property").

4.      During the course of my representation of CHG, at some point during the last few days of March 2005, CHG's principal, Peter C. Shin ("Dr. Shin") brought to my attention an Order dated September 9, 2004 (the "BZA Order") issued by the District of Columbia Board of Zoning Adjustment (the "BZA") granting, in part, Appeal No. 17043 (the "Appeal"). (See Exhibit 1). Dr. Shin informed me that he had just learned for the first time of the existence of the

155935_1.DOC

BZA Order and requested my assistance regarding how to best deal with the implications of this Order. Prior to this conversation with Dr. Shin, I was not aware that the BZA Order had been issued by the BZA, nor was I aware, from any source whatsoever, that the BZA had taken any other action to grant the Appeal. The Certificate of Service attached to the BZA Order indicated that CHG's copy of the Order had been sent by the BZA to Paul Tummonds at Shaw Pittman at the time the BZA Order was formally issued on September 9, 2004. However, at no point prior to March 2005, did Shaw Pittman provide me or CHG with a copy of the BZA Order.

5.       Very shortly thereafter, CHG contacted Cynthia Giordano, a partner at the law firm of Arnold & Porter LLP, who was representing CHG at the time regarding several matters, including the potential down-zoning of the Property. Ms. Giordano informed Dr. Shin and me that since the BZA Order had been issued in September 2004, the time period for seeking appellate review of this Order had expired.

6.       Ms. Giordano then arranged a meeting with Mr. Toye Bello, who at the time was the Zoning Administrator of the District of Columbia Department of Consumer and Regulatory Affairs, the regulatory agency charged with enforcement of mandates such as the BZA Order.

7.       Ms. Giordano, Dr. Shin and I met in person with Mr. Bello on March 31, 2005 to discuss CHG's compliance with, and the implications of, the BZA Order and to determine whether any administrative relief from the BZA Order might be available.

8.       On February 27, 2006, CHG retained the law firm of Holland & Knight, LLP ("Holland & Knight") to represent its interests regarding the proposed down-zoning of the Property. The Holland & Knight partner responsible for this representation was Norman M. Glasgow, Jr. who practices in Holland & Knight's Washington, D.C. office.

155935_1.DOC

9.      During the Spring of 2006, I met with Mr. Glasgow at his office. Dr. Shin also attended this meeting. During this meeting, Mr. Glasgow informed Dr. Shin and me that, in light of the previous historic designation of a portion of the building on the Property by the D.C. Historic Preservation Review Board, the D.C. Code of Municipal Regulations (the "DCMR"), as they had been historically interpreted, would have relieved CHG of the BZA Order's requirement to provide a 1:1 parking space/bed parking requirement for the Property, had the relevant regulations regarding the Property's historic designation been asserted before the D.C. Zoning Administrator or the BZA. Mr. Glasgow also informed me during this meeting that CHG would no longer be able to rely upon the DCMR to avoid the parking implications of the BZA Order because the D.C. Zoning Commission was then considering amendments to the DCMR which would severely limit the then-existing parking exception as it would have applied to the Property at that time. Prior to my Spring, 2006 conversation with Mr. Glasgow, I was completely unaware that an exception existed within the DCMR which could have potentially relieved CHG from the obligation under the BZA Order to provide a 1:1 parking ratio/bed parking requirement for the Property.

10.     It is my understanding derived from Mr. Glasgow that the DCMR has subsequently been amended to significantly curtail the historic property parking exception that would have inured to CHG's benefit at the time the BZA Order was issued. As a result of this amendment, and the BZA Order, CHG is severely limited from either utilizing the Non-Leased Premises (as that term is defined in CHG's Opposition to Defendants' Motion for Summary Judgment (the "Opposition")) for itself, or leasing the Non-Leased Premises to others.

11.     I am aware that it is Defendants' contention that CHG could have raised its malpractice claims with the United States Bankruptcy Court for the District of Columbia or with

155935_1.DOC

this Court during the various bankruptcy fee disputes between CHG and Defendants occurring between January, 2004 and October, 2005. This is incorrect for the following reasons.

12.    Generally speaking, CHG's claims in this case arise out of two omissions by Defendants: (i) the "Delivery Omission" (which, as mentioned herein, refers to Defendants' failure to transmit the BZA Order to CHG in a prompt and timely manner upon its receipt by Defendants); and (ii) the "Argument Omission," (which, as mentioned herein, refers to Defendants' failure to assert on behalf of CHG the provisions of the DCMR pertaining to historic landmarks and buildings contributing to the character of historic districts which, had they been asserted during Defendants' representation of CHG before the D.C. Zoning Administrator and the BZA, would have prevented the imposition of any requirement to provide parking beyond that then-available on the Property, given the prior designation of a portion of the building on the Property by the District of Columbia as a historic landmark and a building contributing to the character of a historic district).

13.    As described below, neither the Delivery Omission, nor the Argument Omission, could have been litigated by CHG before the Bankruptcy Court or before this Court in any of the fee disputes between the parties hereto.

### Fee Dispute Unit No. 1  (January 12, 2004 – April 20, 2004)

14.    The first contested fee dispute between the parties ("Fee Dispute Unit  No. 1") stemmed from Shaw Pittman's "Second Interim and Final Application for Compensation," filed by Shaw Pittman with the Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") on January 12, 2004 (See Exhibit 2).    Fee Dispute Unit No. 1 related to Shaw Pittman's fee request for legal services rendered to CHG's Chapter 11 bankruptcy estate through January 7,

2004 (the date the Bankruptcy Court granted Shaw Pittman's Motion to Withdraw as counsel for CHG).

       15.     CHG filed its objection to Shaw Pittman's request for fees in Fee Dispute Unit No. 1 on January 30, 2004. (See Exhibit 3)

       16.     On March 2, 2004, April 2, 2004, April 9, 2004 and April 20, 2004 the Bankruptcy Court issued Orders resolving Fee Dispute Unit No. 1 in favor of Shaw Pittman (to the extent it pertained to fees billed as of December 15, 2003). (See Orders of March 2, 2004, April 2, 2004, April 9, 2004 and April 20, 2004 attached hereto as Exhibits 4, 5, 6, and 7). The basis for the Bankruptcy Court's resolution of Fee Dispute Unit No. 1 in favor of Shaw Pittman was its finding that CHG and Shaw Pittman had entered into a binding agreement via e-mail on December 15, 2003 regarding the amount of fees due Shaw Pittman for the time period at issue (the "No Contest Agreement"). Id.

       17.     CHG could not have asserted the Delivery Omission before the Bankruptcy Court during the pendency of Fee Dispute Unit No. 1 because the Delivery Omission had yet to occur during the pendency of this fee dispute (January 12, 2004 – April 20, 2004).

       18.     CHG could not have asserted the Argument Omission during the pendency of Fee Dispute Unit No. 1 because CHG had yet to become aware that it would have been entitled to the benefit of a reduced parking requirement on account of the historic status of the Property's building, and did not become aware for the first time of such entitlement until its meeting with Mr. Glasgow during the Spring of 2006.

      **Fee DisputeUnit No. 2 (April 19, 2004 – August 20, 2004)**

       19.     Fee Dispute Unit No. 2, filed by CHG on April 19, 2004, related to CHG's challenge of the Bankruptcy Court's ruling in favor of Shaw Pittman in connection with Fee

Dispute Unit No. 1. On August 20, 2004, this Court issued a Memorandum Opinion and Order affirming the Bankruptcy Court's ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 1, thereby resolving Fee Dispute Unit No. 2. (See Exhibit 8).

20.      CHG could not have asserted the Delivery Omission during the pendency of Fee Dispute Unit No. 2 because the Delivery Omission had not yet occurred during the pendency of this Fee Dispute. As discussed, the Appeal concluded on August 20, 2004, whereas the Delivery Omission did not occur until September, 2004 and was not discovered until late-March, 2005.

21.      CHG could not have asserted the Argument Omission during the pendency of Fee Dispute Unit No. 2 because CHG had yet to become aware that it would have been entitled to a reduced parking requirement on account of the historic status of the Property's building, and did not become aware of such entitlement until its meeting with Mr. Glasgow during the Spring of 2006.

### Fee Dispute Unit No. 3 (September 23, 2004 – December 2, 2004)

22.      Fee Dispute Unit No. 3 commenced on September 23, 2004, when Shaw Pittman filed a request for an award of attorneys' fees and costs incurred in connection with litigating Fee Dispute Nos. 1 and 2 (i.e., for the period between January 9, 2004 and August 31, 2004) (See Exhibit 9). Shaw Pittman claimed it was entitled to such fees because it was the prevailing party in Fee Dispute Unit Nos. 1-2 and was therefore entitled to an ancillary award of fees under the No Contest Agreement which the Bankruptcy Court found was entered into by the parties on December 15, 2003. (Id.).

23.      On December 2, 2004, the Bankruptcy Court issued a Memorandum Decision and Order ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 3. (See Exhibit 10).

155935_1.DOC

24.    CHG could not have asserted the Delivery Omission during the pendency of Fee Dispute Unit No. 3 because it was unaware of the Delivery Omission during this fee dispute, and did not become aware of the Delivery Omission until late March, 2005.

25.    CHG could not have asserted the Argument Omission during the pendency of Fee Dispute Unit No. 3 because CHG had yet to become aware that it would have been entitled to the benefit of the reduced parking requirement on account of the historic status of the Property's building, and did not first become aware of such entitlement until its meeting with Mr. Glasgow during the Spring of 2006.

### Fee Dispute Unit No. 4 (December 7, 2004 – June 22, 2005)

26.    Fee Dispute Unit No. 4, filed by CHG on December 7, 2004, stemmed from CHG's challenge of the Bankruptcy Court's ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 3. On June 22, 2005, this Court issued a Memorandum Opinion and Order affirming the Bankruptcy Court's ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 3, thereby resolving Fee Dispute Unit No. 4. (See Exhibit 11).

27.    CHG could not have effectively asserted the Delivery Omission during the pendency of Fee Dispute Unit No. 4 for the procedural and jurisdictional reasons set forth in CHG's Opposition, being filed contemporaneously herewith.

28.    CHG could not have asserted the Argument Omission during the pendency of Fee Dispute Unit No. 4 because CHG had yet to become aware that it would have been entitled to the benefit of the reduced parking requirement on account of the historic status of the Property's building, and did not become aware for the first time of such entitlement until its meeting with Mr. Glasgow during the Spring of 2006.

### Fee DisputeUnit No. 5 (June 24, 2005 – August 1, 2005)

29.    Fee Dispute Unit No. 5 commenced on June 24, 2005, when Shaw Pittman filed a request for an award of attorneys' fees and costs incurred in connection with litigating Fee Dispute Unit No. 3 and Fee Dispute Unit No. 4 (i.e., for the period between September, 2004 and May, 2005) (See Exhibit 12). The asserted basis for Shaw Pittman's entitlement to such fees was that it was the prevailing party in Fee Disputes Unit Nos. 3-4 and was therefore entitled to an ancillary award of fees under the December 15, 2003 No Contest Agreement. (Id.).

30.    CHG objected to the fees sought in Fee Dispute Unit No. 5, by Opposition dated July 26, 2005. (See Exhibit 13).

31.    On August 1, 2005, the Bankruptcy Court issued a ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 5. (See Exhibit 14).

32.    CHG could not have effectively asserted the Delivery Omission during the pendency of Fee Dispute Unit No. 5 for the procedural and jurisdictional reasons set forth in CHG's Opposition.

33.    CHG could not have asserted the  Argument Omission during the pendency of Fee Dispute Unit No. 5 because CHG had yet to become aware that it would have been entitled to the benefit of the reduced parking requirement on account of the historic status of the Property's building, and did not first become aware of such entitlement until its meeting with Norman Glasgow during the Spring of 2006.

**Subsequent Fee Disputes and Appeals Resolved By Consent Of The Parties**

34.    On August 4, 2005, Shaw Pittman filed a request for an award of attorneys' fees incurred during June and July, 2005 stemming from Fee Dispute Unit No. 5. (See Exhibit 15). On September 13, 2005, CHG and Shaw Pittman filed a Stipulated Judgment resolving this fee request by consent. (See Exhibit 16).

155935_1.DOC

35.      On August 11, 2005, CHG appealed the Bankruptcy Court's August 1, 2005 ruling in favor of Shaw Pittman in connection with Fee Dispute Unit No. 5. (See Exhibit 17). On September 21, 2005, CHG voluntarily dismissed its August 11, 2005 appeal. (See Exhibit 18).

36.      On September 16, 2005, Shaw Pittman filed a request for an award of attorneys' fees incurred during August and September, 2005. (See Exhibit 19). On October 4, 2005, CHG and Shaw Pittman filed a Stipulated Judgment resolving this fee request by consent. (See Exhibit 20).

37.      CHG could not have effectively asserted the Delivery Omission during the pendency of the foregoing fee disputes for the procedural and jurisdictional reasons set forth in CHG's Opposition.

38.      CHG could not have asserted the Argument Omission during the pendency of the foregoing fee disputes because CHG had yet to become aware that it would have been entitled to the benefit of the reduced parking requirement on account of the historic status of the Property's building, and did not first become aware of such entitlement until its meeting with Mr. Glasgow during the Spring of 2006.

39.      At no point during the December 10, 2003-December 15, 2003 course of e-mail settlement communications between Shaw Pittman and CHG, was it CHG's intention, via such negotiations, to reach a full and final settlement with Shaw Pittman of any potential malpractice claims that CHG might have against Shaw Pittman and its attorneys. Furthermore, at no point during the course of these settlement negotiations, did CHG, or any of its agents/representatives, say or do anything intended to make Shaw Pittman believe that it was CHG's intention via the foregoing negotiations to reach such a global or omnibus settlement with Shaw Pittman in

connection with potential malpractice claims. Rather, at all times during the course of such e-mail negotiations, it was CHG's sole intention to attempt to reach a settlement agreement only in connection with the amount of attorneys' fees and costs to be paid by CHG's bankruptcy estate to Shaw Pittman for legal services rendered in connection with the administration of CHG's bankruptcy.

40.    The fee dispute from which stemmed the termination of the attorney/client relationship between Defendant Shaw Pittman and CHG (i.e., Fee Dispute No. 1) was not engendered by CHG's dissatisfaction with the quality of the work performed by Shaw Pittman, but rather from the amount of fees charged by Shaw Pittman, which CHG claimed were unreasonable. (See Exhibit 3).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _24_ day of July, 2008.

Donald R. Hartman

# SUB-EXHIBIT 1

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



★ ★ ★

DCRA
OFFICE OF THE
GEI...

*2748*

2004 SEP 28  A 10: 54

**Appeal No. 17043 of the Stanton Park Neighborhood Association,** pursuant to 11 DCMR §§ 3100 and 3101, from the administrative decision of the Zoning Administrator in the issuance of Certificate of Occupancy Permit Nos. CO51298 and CO51290, to Capitol Hill Healthcare Group, dated March 26, 2003, for a community residence facility and hospital (60 beds and 60 parking spaces) respectively. The R-5-D zoned subject premise is located at 700 Constitution Avenue, N.E. (Square 875, Lot 76).

| | |
|---|---|
| **HEARING DATES:** | July 29, 2003, November 4, 2003, November 18, 2003, November 25, 2003 |
| **DECISION DATE:** | January 6, 2004 |

**DATE OF DECISION ON RECONSIDERATION:** February 24, 2004

**ORDER**

**PRELIMINARY MATTERS**

On May 23, 2003, appellant Stanton Park Neighborhood Association ("Appellant") filed this appeal with the Board of Zoning Adjustment ("Board") alleging error in the Zoning Administrator's ("ZA") March 26, 2003 issuance of two Certificates of Occupancy, Nos. 51289 and 51290. Certificate of Occupancy No. 51289 was issued to Capitol Hill Healthcare Group for a "Community Based Residential Facility-Health Care Facility That Provides Housing For The Handicapped. 25 Parking Spaces & 117 Beds." Certificate of Occupancy No. 51289 described the use as a "Health Care Facility," which is a specific type of community-based residential facility ("CBRF") under the Zoning Regulations, but then, in the same C of O, also characterized the use as a "Community Residence Facility," which is a different type of CBRF. Certificate of Occupancy No. 51290 was issued to Capitol Hill Community Hospital for a "Hospital 60 Beds & 60 Parking Spaces."

There were two earlier Board Orders with respect to the property that is the subject of the two Certificates of Occupancy. In 1991, Board Order No. 15542 granted a special exception pursuant to § 359 of the Zoning Regulations to Capitol Hill Hospital to operate a health care facility with 130 beds, 250 employees, and 176 off-street parking spaces. This Order was modified by Order No. 16407, issued to the Capitol Hill Group, and dated February 3, 1999, which permitted an expansion of the CBRF use to 162 beds and 340 employees with 276 off-street parking spaces. Order No. 16407 was never implemented and so lapsed after two years from its effective date.

On April 30, 1999, the Zoning Regulations were amended to make CBRFs housing handicapped individuals a matter-of-right use in all residential zones. Based on this regulatory amendment,

4. These two types of facilities are not interchangeable, but are two distinct types of CBRF uses. The Zoning Regulations definitions (11 DCMR § 199.1) for both these types of CBRFs refer to their respective (and now superseded) definitions in the public health regulations at 22 DCMR § 3099.1. Based upon the definitions at 22 DCMR § 3099.1, all the evidence in the record, and the two prior Orders that treat the same use at the same facility as a health care facility under § 359 of the Zoning Regulations, the Board finds that the nursing facility is a health care facility.

6. The health care facility is operated by the Capitol Hill Healthcare Group and is located at address 708 Massachusetts Avenue, N.E. The hospital is operated by Capitol Hill Community Hospital and is located at address 700 Constitution Avenue, N.E. The hospital occupies the basement, part of the first floor, and the second and third floors of the building on the subject property. The health care facility occupies part of the first floor, and the fourth, fifth, and sixth floors of the building. The hospital is permitted as a matter-of-right in the R-5-D district. 11 DCMR §§ 350.4(a) and 330.5(f).

History

7. Prior to April 30, 1999, the date of enactment of 11 DCMR § 330.5(i), all health care facilities for 16 or more residents in an R-5 zone, whether providing housing for the handicapped or not, required special exception approval under § 359 and required that the number of parking spaces be determined by the Board of Zoning Adjustment. 11 DCMR § 2101.1.

8. Board Order No. 15542, dated August 16, 1991, granted a special exception under § 359 to Capitol Hill Hospital, for the establishment of a health care facility with 130 beds and 250 full-time staff at 708 Massachusetts Avenue, N.E. (Square 895, Lot 76). Exhibit No. 76, Attachment B.

9. Order No. 15442 mandated that the health care facility provide 176 on-site screened parking spaces for employees, residents and visitors. *Id.*

10. Board Order No. 16407, dated October 21, 1999, granted a special exception under § 359 to the Capitol Hill Group "for opening an additional 32 beds in an existing nursing facility at 700 Constitution Avenue, N.E." Order No. 16407 conditioned the special exception with a 10-year term and further required that the health care facility have a maximum of 340 staff, no more than 162 beds, and 276 off-street parking spaces. Exhibit No. 76, Attachment C.

11. CHG never added the 32 beds or 100 more parking spaces authorized by Order No. 16407. Because the Order was not implemented within the necessary 2-year period from its effective date, it lapsed. *See,* November 25, 2003 hearing transcript at 145, lines 4-12 and at 154, lines 2-15.

---

[2] In the record, the hospital and health care facility are sometimes collectively referred to as "MedLink" and the latter is sometimes referred to as the "nursing center."



BZA APPEAL NO. 17043
PAGE NO. 5

transcript of November 18, 2003, at 310-311, lines 21-25 & 1-12. Specifically, CHG submitted to DCRA a copy of its application for a license for a health care facility, its certificate of licensure, its long term facility application for Medicare and Medicaid, and an affidavit of its Chief Financial Officer. *See,* Exhibit No. 91, Attachment C, and Exhibit No. 76, Attachment F.

20. Based on its review of this information, DCRA found that the health care facility provides housing for the handicapped.

21. DCRA also found that the health care facility complies with the zoning requirements of general and uniform applicability to all matter-of-right uses in an R-5-D zone district.

22. Therefore, on March 26, 2003, DCRA issued Certificate of Occupancy No. 51289 for a matter-of-right "Community-Based Residential Facility-Health Care Facility That Provides Housing For The Handicapped. 25 Parking Spaces & 117 Beds."

23. Also on March 26, 2003, DCRA issued Certificate of Occupancy No. 51290 for a "Hospital 60 Beds & 60 Parking Spaces," pursuant to § 2101.1 of the Zoning Regulations, which requires a hospital in an R-5-D district to provide one off-street parking space per hospital bed.

24. The Zoning Regulations state that the number of parking spaces required by a CBRF with more than 16 residents in all zones other than C-3, C-4, and C-5, is to be determined by the Board. 11 DCMR § 2101.1.

25. When the Zoning Commission amended the Zoning Regulations to permit a health care facility housing the handicapped as a matter of right, it did not amend the parking schedule set forth at 2101.1 that provides for the BZA to determine the number of parking spaces for CBRF's with 16 or more residents, nor did the Commission establish a separate parking ratio for a matter-of-right health care facility with 16 or more residents in zones other than C-3, C-4, and C-5.

26. Because the Zoning Administrator determined that the health care facility was matter-of-right and there was no established parking ratio for that specific matter-of-right use, he chose the parking schedule for what he determined to be the most analogous matter-of-right use in the same (R-5) zone.

27. The Zoning Administrator limited his review of comparable facilities to residential uses.

28. The ZA deemed the use in § 2101.1 entitled "rooming or boarding house: All districts" to be the most analogous residential use. He therefore applied its parking schedule of "1 plus 1 for each 5 rooming units" to the health care facility. This resulted in the ZA requiring the health care facility to provide 25 off-street parking spaces.

## CONCLUSIONS OF LAW



located.[5]  "Zoning requirements of general and uniform applicability" mean basic area requirements for matter-of-right development in that zone, such as maximum height or lot occupancy.  Under § 330.5(i), therefore, a CBRF in an R-5 zone district which provides housing for the handicapped and meets the generally and uniformly applicable Zoning Regulations for that zone district is a matter-of-right use and not a special exception.

Section 330.5(i) defines "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities...."  The Affidavit of the health care facility's Chief Financial Officer, which was submitted to the ZA, states that "[a]ll of the ... residents require assistance in performing one or more of their major life activities, including, but not limited to, eating, bathing, dressing, getting out of bed, taking medication, etc."  Exhibit No. 76, Attachment F.  These residents suffer mental and/or physical disabilities caused by strokes, respiratory problems, Alzheimer's disease, or the like.  *Id.*  The health care facility provides residential and 24-hour medical care to its residents.  *Id.*  Based on these facts, the ZA found, and the Board concurs, that the health care facility provides housing for the handicapped as "handicapped" is defined in § 330.5(i).

The Appellant does not contest the ZA's determination that the health care facility complies with the requirements of general and uniform applicability to matter-of-right uses in an R-5-D zone.  Accordingly, the Board finds that the ZA correctly determined that the health care facility housed the handicapped and complied with the applicable general and uniform zoning requirements.  It therefore falls squarely within § 330.5(i) and is no longer a special exception use.  The enactment of § 330.5(i) removed this use from the category of special exceptions and placed it in the category of matter-of-right uses.

Because the health care facility is a matter-of-right use, it is no longer subject to the earlier Board Order.  It is axiomatic that matter-of-right uses are not subject to Board approval.  Pursuant to § 330.5(i), CBRFs housing handicapped persons are a matter-of-right use in an R-5-D zone.  They are not subject to a greater level of regulation than that applicable to a row dwelling or a multiple dwelling and so, cannot be made to come before the Board for a special exception or be subject to Board conditions.  This is borne out by Zoning Commission Order No. 869, which enacted § 330.5(i).  Part of the impetus for the enactment of § 330.5(i) was the determination by the Department of Justice that the Zoning Regulations did not provide equal housing opportunity for handicapped persons in multifamily zones.  One of the inequities cited was that CBRFs housing handicapped persons required Board approval, while multifamily housing not specifically designated to serve handicapped persons did not.  *See,* Exhibit No. 96, Zoning Commission Order No. 869 (1999), at 1.  Section 330.5(i) was enacted to remove the requirement of Board approval for multifamily handicapped housing, thus making it no more regulated than other matter-of-right multifamily housing.

Section 330.5(i) must be construed to cause the least restriction necessary on the use of the land.  *See,* Rathkopf's *The Law of Zoning and Planning,* 4th ed., § 5:13 (2001).  The enactment of § 330.5(i) changed the status of this health care facility from a special exception to a matter-of-

---

[5]Although § 330.5(i) only refers to the R-4 District, § 350.4 provides that the same uses permitted as a matter of right in the R-4 District shall be permitted as a matter of right in an R-5 District subject to conditions not relevant here.



this would not be a matter-of-right use. However, § 2101.1's provision does not apply to the same CBRF with handicapped residents, as here, because it is a matter-of-right use.

Finally, this Board concludes that the Zoning Commission intended to eliminate all discrimination between CBRFs housing the handicapped and in compliance with the applicable general and uniform zoning requirements and other multi-family dwellings. This would include a requirement for these CBRFs to come to the BZA to determine their parking, when there is no such requirement for all other matter-of-right uses.

3. Because the Zoning Regulations do not specify a parking ratio for this matter-of-right use and § 2101.1's requirement of parking determination by the Board applies only to special exceptions, the ZA had the authority to determine parking for the health care facility. The issue then before the Board is whether the ZA properly determined the parking requirement for health care facilities where no specific ratio is designated in the regulations.

Since the enactment of § 330.5(i), the ZA has properly interpreted § 2101.1's provision regarding parking for CBRFs housing 16 or more persons as applying only where Board approval is required for a special exception, not where the CBRF is established as a matter-of-right. When, as here, the ZA is presented with a matter-of-right use for which no parking ratio is set forth in the Zoning Regulations, he applies the parking ratio for the most analogous use for which such a ratio is specified. The ZA's action falls within his authority to administer the Zoning Regulations and was recently upheld by the Board in Order No. 16716A. *See,* Reorganization Plan No. 1, 1982, Subchapter V, Part II (e) and Reorganization Plan No. 1, 1983, Subchapter VI, Part III (B)(1).

Case No. 16716A, *Appeal of Nebraska Avenue Neighborhood Association,* (the *Sunrise* Case), is, in this respect, analogous to the instant situation. In Case No. 16716A, the applicant was constructing a CBRF/community residence facility, not a CBRF/health care facility, but the *Sunrise* facility was determined to be a matter-of-right facility under § 330.5(i). The ZA in that case was presented with the same lack of a specific parking ratio for the matter-of-right facility, and so, looking to the most analogous use, he applied the parking ratio for a rooming and boarding house. The Board upheld the ZA's action, concluding that, "a ruling from the Zoning Administrator was *necessary* because the regulations do not set forth specific parking ... ratios for a community residence facility in the R-5-D zone." (Emphasis added.) *See,* Exhibit No. 76, Attachment E, Order No. 16716A, at 15. Similarly, the regulations do not set forth a parking ratio for a matter-of-right health care facility in an R-5-D zone. Therefore the Board concludes that a parking determination from the ZA was also necessary here.

Although the Board concludes that the ZA had to determine parking for the health care facility, the Board further concludes that he erred in the determination he made. The ZA erred in limiting his parking determination to just residential uses and therefore did not choose the proper most analogous use. Because he chose the incorrect most analogous use, he applied the incorrect parking ratio.

The ZA chose a "rooming or boarding house" as the use most similar to the health care facility for which a parking ratio is set forth in § 2101.1. The parking ratio for a rooming or boarding

BZA APPEAL NO. 17043
PAGE NO. 11

The services provided by the health care facility and the staffing necessary to provide them are most analogous to a hospital. A hospital is a "place where sick or injured persons are given medical or surgical care." *Webster's Third New International Dictionary* (Unabridged), 1986. Analogously, a health care facility is a place where sick or disabled persons are given medical and residential care. A hospital is listed as an "institutional" use in the § 2101.1 parking schedule, but may also be considered a residential use. *See, e.g.,* 11 DCMR §§ 634.3, 636.6, 638.3 and discussion in *Wallick v. Board of Zoning Adjustment,* 468 A.2d 1183, 1186 (D.C. 1985). This hybrid nature is similar to the commercial/residential nature of the health care facility. The Board therefore concludes that the ZA should have looked beyond uses categorized as "residential" in § 2101.1 and should have applied the parking ratio for a hospital -- 1 space for each bed. The ZA erred in requiring the health care facility to provide 25 off-street parking spaces. Instead, the health care facility must provide 1 off-street parking space for each bed in the facility.

For the reasons stated above, the Board **denies the appeal in part** with respect to Appellant's claims that the ZA lacked authority to issue Certificates of Occupancy No's. 51289 and 51290 and to determine the parking requirements for the uses in those Certificates of Occupancy. The Board **grants the appeal in part in** concluding that the ZA imposed the incorrect parking requirement on the health care facility use for which Certificate of Occupancy No. 51289 was issued. Therefore, it is hereby **ORDERED** that this appeal be **DENIED IN PART AND GRANTED IN PART.** It is further **ORDERED** that Certificate of Occupancy No. 51289 be reformed to reflect a parking requirement of one off-street parking space for each bed.

VOTE:     5-0-0          (Geoffrey H. Griffis, Ruthanne G. Miller, Curtis L. Etherly, Jr., David A. Zaidain, and Anthony J. Hood, to deny in part and grant in part.)

**BY ORDER OF THE D.C. BOARD OF ZONING ADJUSTMENT.**

Each concurring member has approved the issuance of this Decision and Order and authorized the undersigned to execute the Decision and Order on his or her behalf.

ATTESTED BY: _____

JERRILY R. KRESS, FAIA
Director, Office of Zoning

**FINAL DATE OF ORDER:** September 9, 2004

PURSUANT TO 11 DCMR § 3125.6, THIS ORDER WILL BECOME FINAL UPON ITS FILING IN THE RECORD AND SERVICE UPON THE PARTIES. UNDER 11 DCMR § 3125.9, THIS ORDER WILL BECOME EFFECTIVE TEN DAYS AFTER IT BECOMES FINAL.LM/rsn

**BZA APPLICATION NO. 17043**
**PAGE 2**

Sharon Ambrose, City Councilmember
Ward Six
1350 Pennsylvania Avenue, N.W., Suite 102
Washington, D.C. 20004

Denzil Noble, Acting Zoning Administrator
Building and Land Regulation Administration
Department of Consumer and Regulatory Affairs
941 N. Capitol Street, N.E.
Washington, D.C. 20002

Ellen McCarthy, Deputy Director
Office of Planning
801 North Capitol Street, N.E.
4th Floor
Washington, D.C. 20002

Alan Bergstein, Esq.
Office of the Attorney General
441 4th Street, N.W., 6th Floor
Washington, D.C. 20001

rsn

**ATTESTED BY:**

**JERRILY R. KRESS, FAIA**
**Director, Office of Zoning**

GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF ZONING ADJUSTMENT



## BZA APPEAL NO. 17043

As Director of the Office of Zoning, I hereby certify and attest that on
_____SEP 0 9 2004_____ a copy of the order entered on that date in this matter was
mailed first class, postage prepaid or delivered via inter-agency mail, to each party
and public agency who appeared and participated in the public hearing concerning
the matter, and who is listed below:

Monte Edwards
Stanton Park Neighborhood Association
330 E Street, N.E.
Washington, D.C. 20002

The Reverend Richard E. Downing, Rector
St. James Episcopal Church
222 8th Street, N.E.
Washington, D.C. 20002

Paul A. Tummonds, Jr., Esq.
for Capitol Hill Healthcare Group
Shaw Pittman
2300 N Street, N.W.
Washington, D.C. 20037

Laura Gisolfi Gilbert, Esq.
Department of Consumer and Regulatory Affairs
941 North Capitol Street, N.E.
Washington, D.C. 20002

Robert Hall, Chairperson
Advisory Neighborhood Commission 6A
815 F Street, N.E.
Washington, D.C. 20002

Cody Rice, Commissioner 6A
Advisory Neighborhood Commission 6A03
815 F Street, N.E.
Washington, D.C. 20002

DARD OF ZONING ADJUSTMENT
District of Columbia

ASE NO. 17043

(HIBIT NO. 118

441 4th Street, N.W.,  Suite 210-S, Washington, DC 20001   (202) 727-6311

**BZA APPLICATION NO. 17043**
**PAGE 2**

Sharon Ambrose, City Councilmember
Ward Six
1350 Pennsylvania Avenue, N.W., Suite 102
Washington, D.C. 20004

Denzil Noble, Acting Zoning Administrator
Building and Land Regulation Administration
Department of Consumer and Regulatory Affairs
941 N. Capitol Street, N.E.
Washington, D.C. 20002

Ellen McCarthy, Deputy Director
Office of Planning
801 North Capitol Street, N.E.
4th Floor
Washington, D.C. 20002

Alan Bergstein, Esq.
Office of the Attorney General
441 4th Street, N.W., 6th Floor
Washington, D.C. 20001

rsn

**ATTESTED BY:**

**JERRILY R. KRESS, FAIA**
**Director, Office of Zoning**

# SUB-EXHIBIT 2

ORIGINAL

FILED

JAN 1 2 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CAPITOL HILL GROUP,** | ) | **Case Number 02-0359** |
| | ) | **Chapter 11** |
| Debtor. | ) | |

## SECOND INTERIM AND FINAL FEE APPLICATION OF SHAW PITTMAN LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL FOR THE DEBTOR

Shaw Pittman LLP ("**Applicant**"), prior counsel to Capitol Hill Group (the "**Debtor**" or "**CHG**"), respectfully submits this Second Interim and Final Fee Application of Shaw Pittman LLP for Compensation and Reimbursement of Expenses as Counsel for CHG (the "**Application**") seeking: (A) allowance of compensation in the amount of $109,842 and out-of-pocket expenses in the amount of $1,805 for the period beginning November 1, 2003 through and including January 7, 2004 (the "**Second Application Period**"); and (B) seeking final allowance and payment of compensation in the amount of $1,204,710 and out-of-pocket expenses in the amount of $140,335 for the period beginning February 21, 2002 through and including January 7, 2004 (the "**Final Application Period**").

## PRELIMINARY STATEMENT

Through Applicant's efforts, CHG was able to, among other things, confirm a plan of reorganization that allowed CHG to retain ownership of its Property[1], allowed the Hospital and Nursing Center to continue their operations, and allowed all of CHG's creditors to be paid in full

---

[1]     Capitalized terms that are not immediately defined shall have the same meaning as that set forth where such term is defined in the Application.

pursuant to the terms of CHG's Plan. In addition to the confirmation of CHG's Plan, Applicant

has been key in negotiating, prosecuting and (where appropriate) settling actions that have

helped to maximize the value of CHG's estate, ensure a 100% payout to its creditors and

dramatically transformed CHG's economic picture from what existed prior to the Petition Date.

The results achieved by Applicant in this case have been summarized and explained in the First

Fee Application (Docket Entry No. 431), and Applicant refers the Court to such application for a

detailed description of the services rendered by Applicant. For all these reasons and the reasons

stated therein, the Court should approve the Application.

## BACKGROUND

1.      On February 21, 2002, CHG filed a voluntary petition under Chapter 11 of the

Bankruptcy Code (the "**Petition Date**").

2.      The Debtor owns, among other things, the real estate, and improvements thereon,

located at 700 Constitution Avenue, N.E., Washington, D.C. 20002 (the "**Property**"), and leases

the Property to Capitol Hill Community Hospital d/b/a MedLINK Hospital at Capitol Hill (the

"**Hospital**"), and Capitol Hill Healthcare Group d/b/a Capitol Hill Nursing Center (the "**Nursing**

**Center**")[2] pursuant to "triple net" lease terms. The Debtor's primary business activity involves

ownership, operation and leasing of real estate.

3.      On March 31, 2002, CHG filed its Application to Employ Shaw Pittman LLP as

Counsel (the "**Application to Employ**"), along with a verified statement in support of the

Application to Employ.

4.      Pursuant to an order entered by the Court on June 20, 2002, CHG was authorized

to employ Applicant.

---

[2]      The Hospital and Nursing Center, along with BHS Management, Inc. and Dr. Peter Shin, filed
their own, separate voluntary Chapter 11 petitions on the Petition Date.

5.      On November 19, 2002, the Court entered that certain Stipulated Order Between the United States Trustee, Heller Healthcare Finance, Inc., and Capitol Hill Group Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Debtor's Chapter 11 Counsel (the **"Procedures Order"**).

6.      Pursuant to the Procedures Order, Applicant filed several monthly fee statements covering the months of February 21, 2002 through October 31, 2002 (See Docket Entry Numbers 208 through 215). In 2002, Applicant was paid $249,000 pursuant to these fee statements.

7.      On March 24, 2003, after having obtained extensions of CHG's exclusive periods, CHG filed its Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as amended, **"CHG's Plan"**) and CHG's Disclosure Statement for Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as amended, the **"Disclosure Statement"**).

8.      On May 20, 2003, the Court approved the Disclosure Statement, over several objections. The Debtor, with Applicant's assistance, subsequently solicited votes for CHG's Plan.

9.      On July 15, 2003, after a hearing, the Court confirmed CHG's Plan.

10.     On November 14, 2003, Applicant filed its First Application for Compensation, seeking allowance of $1,094,868 in fees and $138,530 in expenses (the **"First Fee Application"**) (Docket Entry No. 431). The First Fee Application covered the period of February 21, 2002 through October 31, 2003.

11.     On December 15, 2003, the Debtor reached its effective date under the CHG Plan.

12.     On December 16, 2003, the Court entered an order approving Applicant's First Fee Application.

13.     Between December 15 and December 16, 2003, the Debtor paid all creditors (e.g., Heller, Centennial, Holladay, etc.), other than Shaw Pittman, in full. On December 16, 2003, CHG made a payment to Applicant in the amount of $850,000.

14.     On January 1, 2004, Applicant filed a motion to withdraw as attorney for the Debtor (the "**Motion to Withdraw**"). On January 7, 2004, the Court entered an order granting the Motion to Withdraw. At said hearing, CHG's substitute counsel acknowledged that Applicant is still owed almost $400,000 on its various claims.

## BRIEF SUMMARY OF CERTAIN SERVICES
## RENDERED DURING THE SECOND APPLICATION PERIOD

15.     During the Second Application Period, Applicant successfully represented CHG in connection with a variety of different matters. Most recently, Applicant represented CHG before the Board of Zoning Adjustment (the "**BZA**") with respect to an appeal (the "**BZA Appeal**") taken by CHG's neighbors (and others) of the Certificates of Occupancy (the "**COOs**") issued by the Zoning Administrator. The COOs are very valuable to CHG, if for no other reason than that they at least make possible additional alternative uses for the substantial unused portions of CHG's Property. Applicant argued the BZA Appeal, which occurred on a number of separate days. In addition, on January 7, 2004, Applicant represented CHG at the final regular BZA hearing on the appeal, where the BZA ruled (3 to 2) to affirm the Zoning Administrator's issuance of the COOs.

16.     Applicant also provided services critical to CHG hitting the effective date under the CHG Plan. Probably the most important of these was the issuance, on very little notice, of a legal opinion required by CHG's exit lender, Fremont. Applicant also provided other advice and services in connection with legal issues relating to Holladay and payment of the general unsecured creditors. Moreover, though better characterized as an accommodation than a service,

Applicant agreed to allow CHG to emerge from chapter 11 even though CHG failed to timely satisfy all of its lawful payment obligations to Applicant.

17.    Applicant provided a number of other services during the Second Application Period as described in the exhibits attached hereto.    For example, Applicant assisted with the certificate of need applications with the District of Columbia's Department of State Health Planning and Development Agency ("**SHPDA**"), including assisting with supplementing the application to SHPDA and conducting legal research and analysis with respect to the issue of substantial <u>additional</u> application fees being requested by SHPDA (which Applicant believes were not required to be paid).

## <u>ANALYSIS OF TIME BY TIMEKEEPER ONLY</u>

18.    Applicant's time records show that services were performed by the following individuals at the following rates during the Application Period:

| TOTAL FEES BY PROFESSIONAL | | | | |
|---|---|---|---|---|
| Professional | 2002 Rate | 2003 Rate | Time | Fees |
| John Harper - Partner | $450 | $475 | 1.7 | 807.5 |
| Sheldon Weisel - Partner | $425 | $450 | 1.3 | 585.0 |
| Patrick Potter - Partner | $350 | $425 | 183.2 | 78,016.0 |
| David Main - Partner | $400 | $415 | 0.5 | 207.5 |
| Thomas Petty - Counsel | $385 | $410 | 9.5 | 3,895.0 |
| William Horton - Associate | $300 | $325 | 1.2 | 390.0 |
| Paul Timmonds - Associate | $300 | $325 | 25.9 | 8,469.5 |
| Andrew Love - Associate | $255 | $285 | 0.1 | 28.5 |
| Anne Flam - Associate | n/a | $285 | 12.3 | 3,505.5 |
| Luis Marini - Associate | $170 | $200 | 62.7 | 12,552.0 |
| Amanda Jester - Associate | na | $185 | 5.9 | 1,091.5 |
| Donna Guihon - Legal Assistant | n/a | $140 | 2.1 | $294 |
| **Total** | | | 306.4 | $109,842 |
| **Blended Rate:** | | | $358 | |

19.    The blended hourly rate for professionals is approximately $358.

20.    Further, Applicant has been careful in staffing this case, and has attempted to be as cost effective as possible while rendering high quality services to CHG.

## ANALYSIS OF TIME BY TASKS PERFORMED

21.    The following is a description of (and time allocation for) the tasks performed by Applicant. Recognizing that many services could in fact be placed in two or more categories, Applicant advises the Court that it has used its best efforts to accurately categorize all time. Attached hereto and labeled as Exhibit A are Applicant's time records. All of the time expended and the nature of the services rendered were recorded on time sheets maintained by Applicant on a daily basis. Exhibit A is arranged chronologically, by category. Exhibit A sets forth the date of each service rendered, the individual rendering the service, a detailed description of the services rendered, the amount of time spent, and the charge for the service. Certain time entries have been redacted, as they contain privileged and confidential information.

22.    In addition, Exhibit B sets forth a summary of total fees and expenses incurred on a month-by-month.

23.    Though Applicant has broken down the fees for each of the below matters for the period covered in the Final Application Period, Applicant refers the Court to its First Fee Application for a description of the services provided on each matter.

## I.    CHAPTER 11 MATTERS

### A.    General Chapter 11 Administration

24.    Time and fees for this category are detailed in the chart that follows and in the attached Exhibit A-1.

| General Chapter 11 Administration (0002, 0009, 0013) | | | | |
|---|---|---|---|---|
| Professional | 2002 Rate | 2003 Rate | Time | Fees |

| | | | | |
|---|---|---|---|---|
| John Harper - Partner | $450 | $475 | 1.7 | $808 |
| Patrick Potter - Partner | $350 | $425 | 20.1 | $8,543 |
| Luis Marini - Associate | $170 | $200 | 13.5 | $2,712 |
| Donna Guihon - Legal Assistant | n/a | $140 | 2.1 | $294 |
| **Total** | | | **37.4** | **$12,356** |

**B.    Applications to Employ Professionals:**

25.    In addition to the matters described in the First Fee Application, during the Second Application Period, Applicant prepared fee applications for the Debtor's broker, Cassidy & Pickard, Inc., and for the Debtor's expert witness, Philip Mudd.  Time and fees for this category are detailed in the chart that follows and in the attached Exhibit A-2.

| Applications to Employ Professionals (0011) | | | | |
|---|---|---|---|---|
| **Professional** | **2002 Rate** | **2003 Rate** | **Time** | **Fees** |
| Patrick Potter - Partner | $350 | $425 | 22.7 | $9,763 |
| Andrew Love - Associate | $255 | $285 | 0.1 | $29 |
| Luis Marini - Associate | $170 | $200 | 25.8 | $5,160 |
| **Total** | | | **48.6** | **$14,952** |

**C.    Disclosure Statement and Plan Preparation, Prosecution and Consummation:**

26.    During the Second Application Period, Applicant continued to work diligently to ensure that the effective date under the CHG Plan occurred on or before December 15, 2003.  To that end, Applicant assisted with the certificate of needs applications to SHPDA.  In addition, Applicant rendered, with very short notice, a legal opinion which was required by CHG's lender and therefore necessary for CHG to consummate its Plan.  Applicant also sought an extension from the Court on the effective date under CHG's Plan.  Time and fees for this category are detailed in the chart that follows and in the attached Exhibit A-3.

| Plan of Reorganization, Disclosure Statement, and Exclusivity Matters (0008) | | | | |
|---|---|---|---|---|
| **Professional** | **2002 Rate** | **2003 Rate** | **Time** | **Fees** |

| Patrick Potter - Partner | $350 | $425 | 115.2 | $48,960 |
| Sheldon Weisel - Partner | $425 | $450 | 1.3 | $585 |
| David Main - Partner | $400 | $415 | 0.5 | $208 |
| William Horton - Associate | $300 | $325 | 1.2 | $390 |
| Anne Flam - Associate | n/a | $285 | 12.3 | $3,506 |
| Luis Marini - Associate | $170 | $200 | 11.1 | $2,220 |
| Amanda Jester - Associate | na | $185 | 5.9 | $1,092 |
| **Total** | | | **147.5** | **$56,960** |

### D.    Real Estate Financing Matters

27.    Time and fees for this category are detailed in the chart that follows and in the attached Exhibit A-4.

| Financing Matters (0020 & 0022) | | | | |
|---|---|---|---|---|
| **Professional** | **2002 Rate** | **2003 Rate** | **Time** | **Fees** |
| Patrick Potter - Partner | $350 | $425 | 10.4 | $4,420 |
| Thomas Petty - Counsel | $385 | $410 | 9.5 | $3,895 |
| Luis Marini - Associate | $170 | $200 | 0.2 | $40 |
| **Total** | | | **20.1** | **$8,355** |

## II.    CREDITOR DISPUTES

### A.    Zoning Dispute:

28.    During the Second Application Period, Applicant argued and won the BZA Appeal.  Time and fees for this category are detailed in the chart that follows and in the attached Exhibit A-5.

| Zoning Dispute (0019) | | | | |
|---|---|---|---|---|
| **Professional** | **2002 Rate** | **2003 Rate** | **Time** | **Fees** |
| Patrick Potter - Partner | $350 | $425 | 14.8 | $6,331 |
| Paul Tummonds - Associate | $300 | $325 | 25.9 | $8,470 |
| **Total** | | | **40.7** | **$14,800** |

## LEGAL STANDARD TO BE APPLIED

29.    The legal standard to be applied in reviewing fee applications under

Section 330(a) of the Bankruptcy Code has been interpreted by courts in, among other cases,

Harman v. Levin, 772 F.2d 1150, 1152 (4th Cir. 1985), Barber v. Kimbrell's Inc., 577 F.2d 216,

226 (4th Cir. 1978) and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

These cases have set out the following twelve factors (the "**Johnson Factors**") for the evaluation

of fee applications:

(1) The time and labor expended; (2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered; (4) the attorney's

opportunity costs in pressing the instant litigation; (5) the customary fee for like work;

(6) the attorney's expectations at the outset of the litigation; (7) the time limitations

imposed by the client or circumstances; (8) the amount in controversy and the results

obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability

of the case within the legal community in which the case arose; (11) the nature and length

of the professional relationship between attorney and client; and (12) attorney's fees

awards in similar cases.

30.    The fees for this Application were computed at the standard hourly rates charged

by Applicant to debtors and creditors.  The hourly rates vary by attorney depending on

experience, subject matter expertise, and seniority.  The hourly rates are within the customary

hourly rates of compensation in this geographic area for these services in cases of this

magnitude.  The total fees are reasonable under the circumstances.  Further, Applicant

historically increases its hourly rates at the beginning of every year, in keeping with the

customary hourly rates of compensation of Applicant's competitors.  Thus, Applicant increased

9

its hourly rates equally for all its clients effective January 1, 2003 (and on January 1, 2004), and

such potential yearly increases were agreed to by CHG in its retainer agreement, revealed in

Applicant's monthly invoices, and disclosed to the Court in the Application to Employ.

31.    The twelve <u>Johnson</u> Factors, as discussed below, support an award of

compensation in the amount requested.

## Time and Labor Expended

32.    As explained herein, and as evidenced by the time records attached hereto,

Applicant has rendered numerous, varied, and substantial professional services on behalf of CHG

during the Application Period.  Applicant has expended 306 hours of attorney and para-

professional time on this case during the Application Period.

## Novelty and Difficulty of the Issues

33.    This case has required Applicant to provide a number of varied and complex

services, many on an expedited basis.  Applicant has been active in moving this case towards a

prompt resolution in an efficient and cost-effective manner.

## Level of Skill Required

34.    A high level of skill by counsel experienced in such matters was required in

connection with the legal services provided by Applicant in this case.  Applicant has many years

of experience in complex Chapter 11 cases.

## Opportunity Costs

35.    Applicant was required to devote substantial amounts of time representing CHG's

interests and attending to this case, thus, by necessity requiring that less attention be paid to the

remainder of the Applicant's case load.

## Customary Fee

36.     As stated above, Applicant agreed to undertake representation of CHG at its standard hourly rates. The billing rates for individual attorneys are the normal and customary rates charged by the attorneys for their services. They are within the customary range in this area.

### Attorneys' Expectation at the Outset of Litigation

37.     Applicant anticipated (and anticipates) being compensated in accordance with its standard hourly rates.

### Time Limitations

38.     As stated above, many of the matters in this case (including but not limited to the disputes with Holladay, the zoning authorities and Newmark) required Applicant to respond on an expedited basis.

### The Results Obtained

39.     The results obtained in this case have been extremely positive. As stated above, Applicant has been instrumental in paving the way for CHG to emerge financially stronger from this bankruptcy case and to consummate its reorganization plan which provides, among other things, for payment in full to all creditors, for the continued operations of the Hospital and Nursing Center, and allows CHG to retain the Property.

### The Experience, Reputation and Ability of Counsel

40.     The attorneys are highly experienced and qualified in bankruptcy, real estate, corporate, and general matters.

### Undesirability of the Case

41.     This factor has no applicability in this case.

11

### Nature and Length of Professional Relationship with Debtor

42.    Over the course of this case, Applicant has developed its relationship with CHG and has developed a thorough understanding of CHG, its operations, and the facts and circumstances of this case.

### Attorneys' Fee Awards in Comparable Cases

43.    The fees in this case are comparable with the fees allowed or charged based on the time expended, customary hourly rates in this area, and the difficulty of the representation.

### OUT-OF-POCKET COSTS AND EXPENSES

44.    Applicant has incurred out-of-pocket expenses in the amount of $140,335. The nature of each disbursement is described in <u>Exhibit B</u>. Substantial out-of-pocket costs were incurred in connection with litigation with Holladay, Newmark, and the Zoning Dispute, such as copy costs and transcripts. Moreover, and as previously discussed, Applicant conducted substantial legal research in connection with the Holladay Dispute and the Newmark Dispute. The following is a summary by category of expenses incurred by the Applicant in connection with this case:

| TOTAL EXPENSES | |
|---|---|
| Type of Service | Amount Billed |
| Courier Service | $524.91 |
| Document Reproduction | $283.00 |
| In-house Catering | $2.92 |
| Lexis Research | $543.00 |
| Postage | $28.71 |
| Taxi/Subway | $115.00 |
| Telephone | $307.65 |
| Total | **$1,805.19** |

45.    No agreement or understanding exists between Applicant and any other person for the sharing of compensation to be received by them for services rendered in connection with this

case, and no agreement or understanding exists between Applicant and any other person rendering services in connection with this case for the sharing of compensation of such other person.

46.     Applicant's services and out-of-pocket expenses in connection with this case were reasonable and necessary, and based on the nature, extent and value of Applicant's services and the cost of comparable services, it is entitled to allowance of compensation in the amount of $109,342 and allowance of out-of-pocket expenses in the amount of $1,805 for the Second Application Period and final allowance of compensation in the amount of $1,204,710 and of out-of-pocket expenses in the amount of $140,335 for the Final Application Period.

WHEREFORE, in light of the foregoing, Applicant requests that the Court enter an Order approving Applicant's Second Interim Application (for fees in the amount of $109,842 and expenses of $1,805), and approve Applicant's Final Application (i.e. the sum of the First and Second Applications) for fees in the amount of $1,204,710 and expenses of $140,335. Shaw Pittman requests such other relief as the Court may deem just and proper.

Respectfully submitted,

SHAW PITTMAN LLP

Dated: January 12, 2004

_____
Patrick J. Potter (426514)
Luis Marini (479262)
2300 N Street, N.W.
Washington, D.C.  20037
Tel: (202) 663-8000
Fax: (202) 663-8007

Former Counsel to Capitol Hill Group

13

ORIGINAL

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

</div>

|  |  |
|---|---|
| IN RE: | ) |
| | ) |
| **CAPITOL HILL GROUP,** | )    **Case Number 02-0359** |
| | )    **Chapter 11** |
| Debtor. | ) |

<div align="center">

**ORDER GRANTING SECOND INTERIM AND FINAL FEE APPLICATION OF SHAW PITTMAN LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL FOR THE DEBTOR**

</div>

Upon consideration of the Second Interim and Final Fee Application of Shaw Pittman LLP for Compensation and Reimbursement of Expenses as Counsel for the Debtor (the "**Application**"), seeking: (A) allowance of compensation in the amount of $109,842 and out-of-pocket expenses in the amount of $1,805 for the period beginning November 1, 2003 through and including January 7, 2004 (the "**Second Application Period**"); and (B) seeking final allowance of previously-approved interim compensation in the amount of $1,204,710 and out-of-pocket expenses in the amount of $140,335 for the period beginning February 21, 2002 through and including January 7, 2004 (the "**Final Application Period**"); and

IT APPEARING TO THE COURT that the Application is proper and sufficient and that Applicant's fees and the costs incurred are reasonable and necessary and were incurred for the benefit of the Debtor and its estate; and

IT FURTHER APPEARING TO THE COURT that notice of the Application was sufficient and proper and any and all objections to the Application have been resolved or overruled; it is the 3rd day of February, 2004

ORDERED, ADJUDGED AND DECREED that the Application is approved and granted; and it is further

ORDERED that Applicant is allowed compensation in the amount of $109,842 and reimbursement of out-of-pocket expenses in the amount of $1,805 for the Second Application Period; and it is further

ORDERED that Applicant is allowed final compensation in the amount of $1,204,710 and reimbursement of out-of-pocket expenses in the amount of $140,335 for the Final Application Period (which represents the sum of the First and Second Fee Applications); and it is further

ORDERED that nothing contained herein shall prohibit Applicant from recovering out-of-pocket expenses incurred prior to January 7, 2004, but which are posted subsequent thereto and were consequently omitted from the Application.

Dated: February 3, 2004

                                                   _____
                                                   S. Martin Teel, Jr.
                                                   United States Bankruptcy Judge

cc:    Patrick J. Potter
       Donald Hartman
       CHG (Peter Shin)
       United States Trustee

SUB-EXHIBIT 3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

**FILED**

JAN 3 0 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

IN RE:                                    )
                                          )
CAPITOL HILL GROUP,                       )        CASE NO. 02-0359
                                          )        CHAPTER 11
                    Debtor.               )
                                          )

## DEBTOR'S OBJECTION TO THE SECOND INTERIM AND FINAL FEE APPLICATION OF SHAW PITTMAN LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL FOR THE DEBTOR

Debtor, Capitol Hill Group, hereby files an Objection to the Second Interim and Final Fee Application of Shaw Pittman LLP for Compensation and Reimbursement of Expenses as Counsel for the Debtor. It should be noted that Debtor is filing this Objection with regard to the totality of fees billed by Shaw Pittman in this matter.

The bases for Debtor's objections are set forth in Debtor's Motion for Order to Extend Time for Hearing on Second Interim and Final Fee Application of Shaw Pittman LLP for Compensation and Reimbursement of Expenses as Counsel for the Debtor.

Dated: January 30, 2004

Respectfully submitted,

Donald R. Hartman (Bar No. 291625)
700 Constitution Ave., N.E.
Washington, D.C. 20002
(202) 546-5700

*Counsel for the Capitol Hill Group*

# SUB-EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br><br>CAPITOL HILL GROUP,<br><br>Debtor | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case Number 02-0359
Chapter 11

**FILED AND ENTERED**

MAR - 2 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

**ORDER**

Upon consideration of the Motion for Summary Judgment filed on behalf

of Shaw Pittman LLP, the Opposition thereto filed on behalf of Capitol Hill Group,

the grounds and authorities recited therein, and after hearing oral argument

thereon, it is this 2d day of March, 2004

ORDERED, that the Motion for Summary Judgment be, and the same

hereby is, DENIED, *except that the silence of the debtor shall be deemed an acceptance of Shaw Pittman's offer to take only $850,000 on December 15, 2003 with (among other conditions)*

*S. Martin Teel Jr.*
The Honorable S. Martin Teel, Jr.,
United States Bankruptcy Judge

*Shaw Pittman's fee application not to be objected to, provided that the court determines that Mr. Hartman had apparent authority to act on the offer or otherwise determines that the debtor's silence was authorized by the corporation's decision maker or that such authorization was not required to make the silence an acceptance. kT.*

copies to:

Donald R. Hartman, Esquire
700 Constitution Avenue, N.E.
Washington, D.C. 20002

H. Patrick Donohue, Esquire
ARMSTRONG, DONOHUE, CEPPOS
& VAUGHAN, CHARTERED
204 Monroe Street, Suite 101
Rockville, Maryland 20850

Patrick J. Potter, Esquire
Luis Marini, Esquire
SHAW PITTMAN, LLP
2300 N Street, N.W.
Washington, D.C.  20037

SUB-EXHIBIT 5

# Related Proceedings Report

**FILED**

### Case Number: <u>2-359 Capitol Hill Group (docket entries only)</u>

APR - 2004

Denise H. Curtis *Clerk*
U.S. Bankruptcy Court DC

| Filing Date | # | Docket Text |
|---|---|---|
| 03/17/2004 | <u>546</u> | Second Motion For Summary Judgment Filed by Shaw Pittman LLP (Attachments: # (1) Exhibit) (mw) |

---

### Related Proceedings:

| Filing Date | # | Docket Text |
|---|---|---|
| 03/17/2004 | <u>547</u> | Notice of Opportunity to Object. Filed by Patrick J. Potter on behalf of Shaw Pittman LLP. (Re: Related Document(s) #:[546] Motion for Summary Judgment.) Objections due by 3/29/2004. (mw) |
| 03/17/2004 | <u>548</u> | Notice of Hearing Filed by Patrick J. Potter on behalf of Shaw Pittman LLP. (Re: Related Document(s) #:[546] Motion for Summary Judgment.) Hearing scheduled for 4/2/2004 at 09:30 AM Courtroom 24. (mw) |
| 03/17/2004 | <u>549</u> | Certificate of Service Filed by Shaw Pittman LLP. (Re: Related Document(s) #:[544] Motion, [546] Motion for Summary Judgment, [547] Notice of Opportunity to Object.) (mw) |

<u>572</u> Opposition ~~by CHG to~~ M. for Summary Judgmt.

**Calendar Text:** RE: Doc #546; Motion for Summary Judgment

550 Supplemental Opposition to SP's <u>First</u> M. for Summary Judgmt

<u>522</u> Order Denying Motion for Summary Judgmt

<u>575</u> Reply by SP to Opposition of CHG (DES 72)

<u>576</u> SP's Response to Statements made to the Court by Donald Hartman

CASE HEARING SUMMARY
HEARING DATE: *April 2, 2004*
========================

CASE NUMBER:  2 - 359                    CHAPTER:

IN RE:

1.  Nature of Matters(s) Heard:

2.  Other Pertinent Docket Entries:

    DE# _____ _____    DE# _____ _____
    DE# _____ _____    DE# _____ _____
    DE# _____ _____    DE# _____ _____
    DE# _____ _____    DE# _____ _____

3.  Appearances: _____ (for Debtor)

    _____(for U.S. Trustee) _____

    _____(for Movant) _____

    _____(Trustee) _____

4.  Outcome:

    _____ GRANTED _____ DENIED      ✓ _____ GRANTED W/ CHANGES
    _____ UNDER ADVISEMENT          _____ PARTIALLY TRIED
    _____ CONTINUED TO _____, 20___, AT ____:____ ___.M.
    _____ PROPOSED ORDER TO BE SUBMITTED BY _____ BY ___/___/___

    _____ *Granted except as to fees not*
    _____ *billed before 12/15/2003.*

    _____

    _____

    _____

    _____

NOTE: THIS IS NOT AN ORDER        _____
                                  S. Martin Teel, Jr.
                                  United States Bankruptcy Judge

# SUB-EXHIBIT 6

**FILED AND ENTERED**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

APR - 9 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

In re                              )
                                   )
CAPITOL HILL GROUP,                )        Case No. 02-00359
                                   )        (Chapter 11)
                    Debtor.        )

## DECISION RE MOTION OF CAPITOL HILL GROUP TO
## MODIFY THE PROPOSED FINAL ORDER AND JUDGMENT

The debtor, Capitol Hill Group ("CHG"), by way of a Motion
to Modify the Proposed Final Order and Judgment, has objected to
the form of proposed order submitted by Shaw Pittman LLP ("Shaw
Pittman") to reflect this court's rulings on two motions for
summary judgment.  CHG contends that the judgment ought not
preclude CHG from objecting to fees and expenses incurred on and
after November 1, 2003.

At the hearing on the second motion for summary judgment,
the court determined that the agreement between the parties for
CHG not to object to Shaw Pittman's fees extended to all fees and
expenses for which bills had been submitted by Shaw Pittman prior
to the agreement being reached.  CHG did not object to Shaw
Pittman's representation, nor to the court's conclusion, that CHG
had been apprised of Shaw Pittman's fee claims through the period
ending November 30, 2003.

Indeed, CHG's motion attaches a Statement of Services
Rendered and Expenses Incurred by Shaw Pittman LLP . . . Through
November 30, 2003.  The court's file reflects that this Statement
was filed on December 5, 2003, and served on that date on CHG's

principal, Peter Shin.  So when CHG accepted Shaw Pittman's counteroffer ten days later, thereby forming the agreement at issue here, it was well aware of the fees and expenses claimed by Shaw Pittman for November 2003.

It does not deny this, but only says it "is uncertain when in December 2003 it received the November 2003 Statement from Shaw Pittman, but it is certain that it did not do so in a time frame that permitted meaningful, if any, inquiry in to these bills prior to . . . December 15, 2003."  CHG had the bill in time to see the amount of fees and expenses claimed, namely, $62,516 in fees, and $3,974.93 in disbursements for expenses, and to see that the Statement based those amounts on five categories of services for which separate statements were attached showing the time spent.  The Statement, moreover, was not lengthy.  CHG readily could have reviewed the Statement.

Regardless, CHG agreed to the terms of the agreement, and it is too late now for it to urge that it ought to be allowed to review the fees and object to them when it waived that right under the agreement.  The court will sign the proposed final order and judgment as submitted.

Dated: April 8, 2004.

S. Martin Teel, Jr.
United States Bankruptcy Judge

2

Copies to:

Patrick Potter
Shaw  Pittman,
   Potts and Trowbridge
2300 N Street, NW
Washington, DC 20037

Donald R. Hartman
700 Constitution Avenue, N.E.
Washington, DC 20002

Office of the U.S. Trustee
115 South Union Street
Suite 210
Alexandria, VA 22314

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

**FILED AND ENTERED**

APR - 9 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | Case Number 02-0359 |
| | ) | Chapter 11 |
| Debtor. | ) | |

## FINAL ORDER AND JUDGMENT

WHEREAS, on January 12, 2004, Shaw Pittman LLP ("**Shaw Pittman**") filed that certain Second Interim and Final Fee Application of Shaw Pittman LLP for Compensation and Reimbursement of Expenses as Counsel for the Debtor (the "**Final Fee Application**");

WHEREAS, the Final Fee Application contained: (I) fees and expenses that had been billed by Shaw Pittman prior to December 15, 2003 (i.e. the fees and expenses incurred through November 30, 2003, referred to herein as the "**Pre-December 2003 Fees and Expenses**"); and (II) fees and expenses (i.e. covering December 1, 2003 through January 7, 2004) that had not been billed by Shaw Pittman as of December 15, 2003 (the "**Post-November 2003 Fees and Expenses**");

WHEREAS, on January 30, 2004, Capitol Hill Group ("**CHG**") filed its Objection to the Final Fee Application (the "**CHG Fee Application Objection**");

WHEREAS, on February 2, 2004, Shaw Pittman filed its Motion to Strike Objection of CHG to Shaw Pittman's Second Interim and Final Fee Application (the "**Motion to Strike**"), and on said date, the Court conducted a preliminary hearing on the Motion to Strike;

WHEREAS, on February 12, 2004, Shaw Pittman filed its Motion for Summary Judgment on the Motion to Strike (the "**First Summary Judgment Motion**"); CHG filed its Opposition (and Opposition Memorandum) to the First Summary Judgment Motion on February

1

23, 2004; Shaw Pittman filed its Reply on February 27, 2004; CHG filed its Hearing

Memorandum on March 2, 2004; and CHG filed a Supplemental Opposition to the First

Summary Judgment Motion on March 18, 2004 (as further supplemented by Supplemental Legal

Memorandum on April 1, 2004);

WHEREAS, on March 2, 2004, the Court conducted a hearing on the First Summary

Judgment Motion (and the oppositions and objections of CHG thereto), made findings of fact

and conclusions of law from the bench, and issued an Order on the First Summary Judgment

Motion (the "**March 2ⁿᵈ Order**");

WHEREAS, on March 17, 2004, Shaw Pittman filed Shaw Pittman LLP's Second

Motion for Summary Judgment (the "**Second Summary Judgment Motion**"); CHG filed its

Opposition (and Opposition Memorandum) to the Second Summary Judgment Motion on March

29, 2004 (as further supplemented by a Supplemental Legal Memorandum on April 1, 2004); and

WHEREAS, on April 2, 2004, the Court conducted a hearing on the Second Summary

Judgment Motion (and the oppositions and objections of CHG thereto).

WHEREFORE, for the reasons stated by the Court: (i) on the record at the March 2, 2004

hearing, (ii) in the Court's March 2ⁿᵈ Order, and (iii) on the record at the April 2, 2004 hearing, it

shall be and hereby is

ORDERED AND ADJUDICATED, that except with respect to the Post-November 2003

Fees and Expenses all oppositions and objections of CHG (including, but not limited to those

contained in the aforementioned Objections and Objection Memoranda) are denied and overruled

in their entirety; it is further

ORDERED AND ADJUDICATED, that summary judgment in favor of Shaw Pittman on

the First Summary Judgment Motion and the Second Summary Judgment Motion is granted as

2

provided by the Court at the March 2nd and April 2nd hearings and in the March 2nd Order and this Final Order and Judgment; and it is further

ORDERED AND ADJUDICATED, that on summary judgment, Shaw Pittman's Motion to Strike shall be and hereby is granted with respect to the Pre-December 2003 Fees and Expenses, and that on summary judgment, Shaw Pittman's Motion to Strike shall be and hereby is denied with respect to the Post-November 2003 Fees and Expenses; and it is further

ORDERED AND ADJUDICATED, that: (i) absent further order of the Court, CHG shall not be prohibited from filing and prosecuting objections to the portion of the Shaw Pittman Fee Application covering the Post-November 2003 fees and expenses, and (ii) CHG shall be and hereby is prohibited, stayed and enjoined from further filing and prosecuting (by way of examination, cross-examination, proffer, etc.) any objections to the portion of the Shaw Pittman Fee Application covering the Pre-December 2003 Fees and Expenses; and it is further

[remainder of page is intentionally blank]

ORDERED, that this Final Order and Judgment is entered without prejudice to Shaw Pittman's rights (without the Court hereby opining as to the existence or absence of any such rights), under applicable law (contract and/or otherwise), to seek and obtain further orders from the Court directing CHG to pay the additional fees and costs incurred by Shaw Pittman after January 7, 2004, and the rights (without the Court hereby opining as to the existence or absence of any such rights), under applicable law (contract or otherwise), of CHG to oppose such relief sought by Shaw Pittman.

IT IS SO ORDERED, AND JUDGMENT IS SO ENTERED.

Dated:
April 8, 2004.

S. Martin Teel, Jr.
United States Bankruptcy Judge

cc:    Patrick Potter
       Donald Hartman
       H. Patrick Donohue

Document #: 1387700 v.1

4

SUB-EXHIBIT 7

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

FILED AND ENTERED

APR 2 0 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

)
IN RE:                                          )
                                                )
CAPITOL HILL GROUP,                             )      Case Number 02-0359
                                                )      Chapter 11
          Debtor.                               )
                                                )
_____)

## ORDER AND JUDGMENT ON THE PORTION OF THE SHAW PITTMAN LLP FEE APPLICATION COVERING FEES AND EXPENSES BILLED PRIOR TO DECEMBER 15, 2003

On April 21, 2004, the Court conducted a hearing with respect to the portion of Shaw Pittman's pending fee application covering fees and expenses billed to Capitol Hill Group ("CHG") prior to December 15, 2003. Specifically, Shaw Pittman seeks final allowance of fees and expenses that total $1,299,960.43 (through November 30, 2003), and to recover the unpaid portion thereof, which equals $240,329.47 (the "**Subject Fees and Expenses**") for such time period. For the reasons stated on the record,

IT SHALL BE AND HEREBY IS

ORDERED AND ADJUDICATED, that the Subject Fees and Expenses in the amount of $1,299,960.43 (through November 30, 2003), shall be and hereby are allowed in full and on a final (non-interim) basis; and it is further

ORDERED AND ADJUDICATED, that CHG shall pay Shaw Pittman the unpaid portion of the Subject Fees and Expenses, which unpaid portion equals $240,329.47 by delivering a check to the attention of Mr. Patrick Potter no later than 12:00 noon on April 24, 2004.

Dated: April 20, 2004

S. Martin Teel, Jr.
United States Bankruptcy Judge

cc:    Patrick Potter
       Donald Hartman
       H. Patrick Donohue
       U.S. Trustee

SUB-EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In Re:                                    )
                                          )
CAPITOL HILL GROUP,                       )
                                          )        Bankruptcy Case No. 02-0359
                        Debtor,           )        Chapter 11
                                          )
_____)
                                          )
CAPITOL HILL GROUP                        )
                                          )
                        Appellant,        )
            v.                            )        Civil Action No. 04-750 (RCL)
                                          )                  04-751
SHAW PITTMAN LLP                          )
                                          )
                        Appellee.         )
_____)

## MEMORANDUM OPINION

This matter comes before the Court on appeal from the bankruptcy court of the District of

Columbia. Appellant Capitol Hill Group ("CHG") appeals three rulings of the bankruptcy court

in favor of Shaw Pittman, CHG's bankruptcy counsel in its Chapter 11 reorganization

proceedings. CHG appeals under Bankruptcy Rule 8001(a) and this Court has jurisdiction under

28 U.S.C. §158(a). Also before the Court is Shaw Pittman's motion for a hearing, Shaw

Pittman's motion for summary affirmance, and Shaw Pittman's motion to file excess pages.

Upon consideration of the appellate briefs of the parties, the joint appendix filed in support, the

law, and the facts of this case, the Court shall AFFIRM the decisions of the bankruptcy court.

The Court shall deny Shaw Pittman's motion for a hearing,[1] shall deny as moot Shaw Pittman's

motion for summary affirmance, and shall grant the motion to file excess pages.

---

[1] The Court has decided, in compliance with Bankruptcy Rule 8012, that oral argument is not needed and
that the Court is able to resolve the appeal upon consideration of the briefs of the parties and the record from the
court below.

1

CHG appeals three decisions of the bankruptcy court. It appeals a summary judgment decision of March 2, 2004,[2] a summary judgment decision of April 9, 2004, and an order awarding attorney's fees on April 20, 2004. In its appeal of these rulings, CHG brings four issues for consideration by this Court.

The four issues presented for appeal are 1) whether it was error to determine that Shaw Pittman did not breach its fiduciary duty to CHG; 2) whether it was error to determine that a reasonable jury could not conclude that an email offer from Shaw Pittman did not contain a no-contest provision and/or that a subsequent email offer did not reinstate a previous email offer from Shaw Pittman; 3) whether it was error to determine that the actions of CHG constituted acceptance by silence of the Shaw Pittman offer; 4) whether it was error to determine that a reasonable jury could not conclude that Shaw Pittman failed to object at CHG's confirmation hearing for reasons other than having negotiated a no-contest provision from CHG. Brief of CHG at 1-2.

## BACKGROUND

The uncontested facts of the case are straightforward. CHG filed for bankruptcy in February 2002. Shaw Pittman served as bankruptcy counsel to CHG upon commencement of its Chapter 11 case. From the period of February 2002 to November 2003, Shaw Pittman billed CHG approximately $1.1 million in fees but did not receive any payments. In December 2003, CHG needed to secure an extension of the December 15, 2003 deadline set by the bankruptcy court in order to obtain financing needed to allow CHG to comply with its plan and emerge from Chapter 11. The record indicates that parties and the bankruptcy court believed that the

---

[2] CHG appeals the bankruptcy court's March 2, 2004 order denying summary judgment but nevertheless making conclusions in favor of Shaw Pittman.

December 15, 2003 hearing served as a confirmation hearing in that CHG had to meet all the requirements for confirmation in order to obtain the extension.

CHG's problem as it approached the confirmation hearing was that CHG's anticipated financing was insufficient to pay all of its creditors. One of the creditors entitled by statute to receive full compensation on confirmation of the plan was Shaw Pittman, CHG's bankruptcy counsel. CHG approached Shaw Pittman in early December 2003 and asked the firm to accept less than the full amount owed on the confirmation date with the balance to be paid at a later date. Shaw Pittman declined CHG's initial offer and the parties commenced negotiations.

A series of negotiations ensued culminating in an email exchange on the morning of December 15, 2003. According to CHG's appellate brief and the uncontested record of the bankruptcy court, on the morning of December 15, Mr. Donald Hartman, an attorney and employee of CHG, sent an email to Mr. Potter, an attorney for Shaw Pittman and primary attorney for CHG's bankruptcy case, with a copy to the owner of CHG, Mr. Shin, stating:

> Dr. Shin is prepared to offer to pay Shaw Pittman $850,000 today from the Fremont proceeds and give SP [Shaw Pittman] a lien against the Accounts Receivable pending The HBCC closing which we anticipate will occur very soon.

Joint Appendix at 392 ("CHG Email 1"); Brief of Appellant CHG at 9.

Mr. Potter responded with an email sent to Mr. Hartman stating:

> Donald: My Management Team accepts the fee proposal on two caveats. One the UCC liens will be signed today. And, of course, I will not be fighting with CHG about my fee applications (trust me, not that I am concerned; and I am sure you probably know, any fights about fee applications would be an expense to be paid by CHG). Please confirm immediately.

Joint Appendix at 392 ("SP Email 2").

Mr. Hartman responded to Shaw Pittman's offer via email, this time with no copy being sent to Mr. Shin, stating "Patrick – It's a deal – this presupposes the (I believe) 5% discount you

3

offered Dr. Shin previously. I hope your firm can prepare the liens." Joint Appendix at 394

("CHG Email 3"). Mr. Potter responded to this email stating: "No it does not presuppose a 5%

deal. I did not offer it. That is a mischaracterization. Please confirm all fees will be paid. I will

consider a discount after my questions put to Dr. Shin on the issue have been answered." Joint

Appendix at 400 ("SP Email 4"). The parties sent no further emails.

　　　Shortly thereafter, Mr. Potter and Mr. Hartman attended the confirmation hearing before

the bankruptcy judge. The two spoke briefly prior to the hearing. The record reflects that at the

hearing, Mr. Potter, representing CHG as its bankruptcy counsel, did not inform the Court on

behalf of CHG that CHG would be unable to pay Shaw Pittman their attorney's fees or that CHG

could not meet that or any other requirement for confirmation found in 11 U.S.C. §1129. Joint

Appendix at 56. The bankruptcy court confirmed the plan, the post petition financing went

through hours later and CHG wired $850,000 to Shaw Pittman the morning of December 16,

2003. Brief of Appellee Shaw Pittman at 17. On January 12, 2004 Shaw Pittman filed its Second

Interim and Final Fee Application of Shaw Pittman LLP For Compensation and Reimbursement

of Expenses as Counsel for the Debtor in which Shaw Pittman requested court approval for all

fees still unapproved. On January 30, 2004, CHG filed a written objection to all fees billed by

Shaw Pittman in the case. A series of rulings then followed from which CHG now appeals.

## STANDARD OF REVIEW

　　　As a general rule, in an appeal from a decision of the bankruptcy court, the burden of

proof is on the party that seeks to reverse the Bankruptcy Court's holding. In re Johnson, 236

B.R. 510, 518 (D.D.C. 1999) (citing Anderson v. Bessemer City, 470 U.S. 564, 573-574 (1985)).

The standard of review appropriate to the issues raised on appeal depends on the context of the

decisions rendered and the nature of the decision. The Court reviews summary judgment

4

decisions de novo. U.S. v. Spicer, 57 F.3d 1152, 1159 (D.C. Cir. 1995) (citing In re Varrasso, 37

F.3d 760, 763 (1st Cir. 1994) (finding a district court reviews bankruptcy court's grant of

summary judgment de novo)). Bankruptcy Rule 7056, which incorporates the standard of Rule

56 of the Federal Rules of Civil Procedure, governs summary judgment in bankruptcy, i.e.,

summary judgment may be granted only if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Varrasso, 37 F.3d at 762-63. Material

facts are those "that might affect the outcome of the suit under the governing law," Anderson v.

Liberty Lobby, 477 U.S. 242, 248 (1986), and a genuine dispute about material facts exists "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

Furthermore, on a motion for summary judgment, "all inferences to be drawn ... must be viewed

in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Corp. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986). Even the bankruptcy court's purported factual

findings are reviewed de novo, since they constitute conclusions as a matter of law that no

genuine factual dispute exists to preclude summary judgment. Rosen v. Bezner, 996 F.2d 1527

(3rd Cir. 1993).[3]

In contrast, CHG's appeal of the April 20, 2004 decision of the bankruptcy court

awarding fees and expenses to Shaw Pittman is reviewed under the abuse of discretion standard.

In re Kenneth Leventhal & Co., 19 F.3d 1174, 1177 (7th Cir. 1994). To the extent the bankruptcy

court made any factual findings to support its award these are reviewed under the clearly

erroneous standard. Id.; Bankruptcy Rule 8013 (2004).

---

[3] Both parties incorrectly cited the standard of review for issues arising from a summary judgment ruling as clearly erroneous for any factual findings. But that is not the correct standard for review of summary judgment rulings. See Varasso, 37 F.3d at 763 (finding that "the district court applied the wrong standard of review" because "[t]he court refrained from drawing reasonable inferences in the debtors' favor. To the contrary, it ruled that the bankruptcy court's "findings" had to be upheld because they were not "clearly erroneous.""").

Lastly, the bankruptcy court's equitable determinations are also reviewed for abuse of

discretion. In re Behlke, 358 F.3d 429, 433 (6th Cir. 2004); In re I. Appel Corp., 300 B.R. 564

(Bankr. S.D.N.Y. 2003). The question of whether a bankruptcy court abused its discretion can

only be answered in the affirmative if the bankruptcy court "based its ruling on an erroneous

view of the law or a clearly erroneous assessment of the facts." In re Johnson, 236 B.R. 510, 518

(D.D.C. 1999) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)). The

burden of proof is on the party that seeks to reverse the Bankruptcy Court's holding. That party

must show that the court's holding was clearly erroneous as to the assessment of the facts or

erroneous in its interpretation of the law and not simply that another conclusion could have been

reached. Id.

<u>FIRST ISSUE ON APPEAL</u>

CHG's first argues that the "Bankruptcy Court improperly declined to consider CHG's

arguments regarding equitable considerations, namely Shaw Pittman's breach of the fiduciary

duty owed to its client, CHG." Brief of CHG at 11. CHG urges the Court to "reverse the

Bankruptcy Court by finding that, under equitable principles, Shaw Pittman should not be

permitted to reap the fruits of their ill-gained bounty by virtue of their breach of numerous Rules

and thus a breach of their fiduciary duty to CHG." Id. at 21.

It is a black letter principle of appellate review that "issues and legal theories not asserted

at the District Court level ordinarily will not be heard on appeal." District of Columbia v. Air

Florida, Inc., 750 F.2d 1077, 1084 (D.C. Cir. 1984). There is a consistent practice of "dismissing

appeals brought on grounds not asserted in the trial court." Id. Therefore, to the extent that CHG

did not raise this breach of fiduciary duty claim in the bankruptcy court, it is waived and will not

be heard for the first time on appeal.

6

CHG now attempts on appeal to make out a prima facie claim in tort for breach of fiduciary duty. Brief of CHG at 15-16 (setting forth elements of the claim). But CHG did not make this claim in front of the bankruptcy court. The sole reference in CHG's briefs to the bankruptcy court about these issues comes in a section entitled "Equitable Considerations." There CHG asserts that Shaw Pittman's conduct in negotiating the fee dispute was inappropriate and should serve as an equitable defense to enforcement of the contract prohibiting objection to Shaw Pittman's fees. Thus CHG at most is entitled to review of the bankruptcy court's decision, made pursuant to its powers in equity, to refuse to set aside the contract between CHG and Shaw Pittman over the latter's attorney's fees.

Any review of the bankruptcy court's equitable determinations takes place under an abuse of discretion standard. In re Behlke, 358 F.3d 429, 433 (6th Cir. 2004). CHG bears the burden of proving abuse of discretion by showing that the bankruptcy court "based its ruling on an erroneous view of the law or a clearly erroneous assessment of the facts." In re Johnson, 236 B.R. at 518. It is insufficient to show that another conclusion could have been reached. Id. CHG has failed to meet this burden. Neither side takes objection to the few facts offered by CHG in support of its argument. The Court therefore considers whether CHG proves the bankruptcy court based its ruling on an erroneous view of the law.

The crux of CHG's breach of fiduciary duty/breach of professional conduct argument is that Shaw Pittman, as counsel to CHG, is not permitted to negotiate the resolution of its fee dispute in the manner in which it did. The bankruptcy court found that no impropriety existed and that in this case "[t]here's nothing unfair about settling fee disputes between client and attorney." Joint Appendix at 952. The key incidents held out by CHG as proof of this improper conduct are statements by Mr. Potter of Shaw Pittman. CHG cites Mr. Potter's statement to the

7

bankruptcy court that had CHG and Shaw Pittman been unable to negotiate a fee arrangement that he would "have come back before Your Honor on some sort of expedited basis to prevent the closing from going forward for failure to comply with the terms of the plan and Section 1129 of the Code." Joint Appendix at 206. The Court finds that this statement does not undercut the bankruptcy court's ruling denying CHG's request for equitable relief.

11 U.S.C. §1129 creates two conflicting roles for debtor's counsel. First, section 1129 requires the debtor to prove by a preponderance of the evidence that its plan meets all elements required for confirmation. In re Trevarrow Lanes, Inc., 183 B.R. 475 (Bankr. E.D. Mich. 1995). In most cases, including this one, it will be the counsel for the debtor that stands before the bankruptcy court and argues that his client has met all the requirements for confirmation. Attorneys have a legal duty to argue truthfully before the Court. See Fed. R. Civ. P. 11. Thus as debtor's counsel, Shaw Pittman has a duty to inform the Court truthfully as to whether or not CHG met all the requirements for confirmation.

The complication arises because under section 1129(a)(9)(A), Shaw Pittman is also a creditor entitled to full payment of its fees on the date of confirmation. There is an obvious tension between Shaw Pittman's status as a creditor desiring full payment and its status as debtor's counsel representing its client's desire to achieve confirmation. The exact delineations of the role of an attorney placed in the situation of Shaw Pittman are thankfully beyond the requirements of this case. What is clear is that as counsel for the debtor, Shaw Pittman has an obligation to represent truthfully to the Court whether CHG's plan can be confirmed. To the extent that the only bar to confirmation is the payment of their own fees, this obligation is undiminished. Shaw Pittman does not have an obligation to accept less than full payment merely because they are counsel to the debtor. In their alternative capacity as holder of an administrative

8

expense, Shaw Pittman has the same statutory right of every other similarly situated

administrative creditor to object to confirmation if it is not going to receive full payment. 11

U.S.C. §1128(b) ("A party in interest may object to confirmation of a plan."). Thus Shaw

Pittman can come before the bankruptcy court and object to confirmation of its own client's plan

on grounds that the firm will not be paid as it is entitled to by statute and it can do so pursuant to

its role as counsel for the debtor or as administrative creditor. CHG cites no law to overcome this

conclusion. The bankruptcy court found that the negotiations undertaken by CHG and Shaw

Pittman were permissible. CHG has cited no law for the proposition that counsel to a Chapter 11

debtor cannot negotiate with its client over its fees in its capacity as administrative creditor in the

manner undertaken by Shaw Pittman. The Court finds that the bankruptcy court did not abuse its

discretion in rejecting CHG's equitable considerations and shall affirm that determination.

<u>SECOND ISSUE ON APPEAL</u>

CHG's second issue on appeal is whether it was error to determine that a reasonable jury

could not conclude that an email offer from Shaw Pittman did not contain a no-contest provision

and/or that a subsequent email offer did not reinstate a previous email offer from Shaw Pittman.

Brief of CHG at 2.[4] The bankruptcy court's findings that the term was unambiguous and that the

final email clarified and restated the prior offer from Shaw Pittman are reviewed de novo.

<u>Spicer</u>, 57 F.3d at 1159.

CHG first argues that the phrase "I will not be fighting with CHG about my fee

applications" is ambiguous and subject to alternative explanations. Brief of CHG at 23. The law

in the District of Columbia holds:

---

[4] The bankruptcy court's determination of this issue arose in the March 2, 2004 hearing on Shaw Pittman's motion for summary judgment. The bankruptcy court made determinations at the hearing and subsequently issued an order. Although the bankruptcy court denied Shaw Pittman's motion for summary judgment, it made findings in the March 2, 2004 order that narrowed the issues to be resolved in a subsequent summary judgment motion.

> a contract is ambiguous when, and only when, it is, or the
> provisions in controversy are, reasonably or fairly susceptible of
> different constructions or interpretations . . . and it is not
> ambiguous where the court can determine its meaning without any
> other guide than a knowledge of the simple facts on which, from
> the nature of language in general, its meaning depends . . .

Burbridge v. Howard Univ., 305 A.2d 245, 247 (D.C. 1973). Whether ambiguity exists is a

question of law to be decided by the court. Dixon v. Wilson, 192 A.2d 289, 291 (D.C. 1963).

Contract terms are not ambiguous merely because the parties disagree over the meaning. Id.;

Washington Prop. v. Chin, 760 A.2d 546 (D.C. 2000). Here the Court finds the meaning of the

phrase "I will not be fighting with CHG about my fee applications" to be unambiguous. The

plain meaning of the term is exactly as it appears; CHG cannot fight with Shaw Pittman over its

fee applications.

Even if the Court assumed some facial ambiguity and considered extrinsic evidence, the

extrinsic evidence supports the plain language of the email. "When the meaning of a contract

term is facially uncertain, a court may resort to an examination of extrinsic evidence, such as

statements, course of conduct, and contemporaneous correspondence, aimed at discerning the

intent of the parties." Farmland Indust., Inc. v. Grain Bd. of Iraq, 904 F.2d 732, 736 (D.C. Cir.

1990) (citing Sundown Inc. v. Canal Square Assoc., 390 A.2d 421, 432 (D.C. 1978).

The extrinsic evidence shows that at the time of the email exchange, CHG was aware that

the bankruptcy court was scheduled to decide Shaw Pittman's First Fee Application (filed Nov.

14, 2003) requesting approximately $1.1 million immediately after the confirmation hearing. In

fact the bankruptcy court did grant the first fee application by order dated December 16, 2003.

See Joint Appendix at 38 (showing docket entry 449: "Order Granting Application for

Compensation . . . Granting Patrick J. Potter, fees awarded: $1,094,868.00 . . ."). Second, the

evidence shows that Shaw Pittman had filed a Statement of Services Rendered . . . Through

November 30, 2003, Joint Appendix at 100, on December 5, 2003. And there is no fact question

that Shaw Pittman would at some point in the future submit those fees to the bankruptcy court

for approval via a fee application. Thus at the time of the negotiations, CHG was aware of all

fees incurred and billed through November 30, 2003 and that because CHG's Chapter 11 plan

was set for confirmation, Shaw Pittman would shortly be seeking bankruptcy court approval of

its fees as part of the resolution of the case. Third, considering the term in light of subsequent

emails shows it to be unambiguous. CHG's response to Shaw Pittman's SP Email 2 did not

question the no objection term. Instead, in its response, Mr. Hartman of CHG states: "Patrick –

It's a deal – this presupposes the (I believe) 5% discount you offered Dr. Shin previously. I hope

your firm can prepare the liens." Joint Appendix at 394. Thus, even when the Court considers

extrinsic evidence only one reasonable interpretation is possible. The pending fee application,

CHG's agreement to the term in its next email, and its simultaneous failure to question the

meaning or purpose of the no objection term before acceptance results in only one reasonable

interpretation—that CHG would not contest Shaw Pittman's fee applications for fees billed up to

that point.

CHG's assertions that Mr. Potter did not communicate the details of the no objection

provision to others casts no ambiguity on the terms of the offer. CHG has offered no alternative

explanation for the term and no reason why any communications by Mr. Potter to others should

have included the no objection term. Thus the Court finds that there is no issue of fact as to

whether or not the SP Email 2 offer included a no objection provision and that the email offer

did in fact include such a provision.

CHG also argues that a reasonable jury could conclude that final email from Shaw

Pittman did not reinstate the prior offer. However, CHG fails to cite a single legal authority for

the proposition that only the final email should set the terms of the contract, other than a vague reference to "the generally accepted law of contracts." In contrast, according to the Restatement (Second) of Contracts "[t]he terms of a promise or agreement are those expressed in the language of the parties or implied in fact from other conduct. Both language and conduct are to be understood in light of the circumstances." Restatement (Second) of Contracts §5 (1981). Understanding the final email in light of the circumstances shows that it restated the prior offer from Shaw Pittman.

The chain of emails is as follows: in CHG Email 1[5], CHG sets forth the initial offer, Shaw Pittman responds with SP Email 2,[6] which accepts the terms in CHG Email 1 and adds several new terms. CHG responds in CHG Email 3[7] and accepts all the terms in SP Email 2 without question but asks for clarification on whether SP Email 2 "presupposes" a 5% discount on the total amount of fees billed. Shaw Pittman responds to this email with SP Email 4[8] This email clarified SP Email 2 as not including any 5% discount on fees and requests that CHG confirm its prior statement in CHG Email 3 that "It's a deal." Properly viewed in their totality, and construed in the manner most favorable to CHG, the emails unambiguously show that final email from Shaw Pittman served to clarify the terms of SP Email 2 as not including any 5% discount and requesting confirmation from CHG that it in fact accepted Shaw Pittman's offer.

---

[5] The initial email from Mr. Hartman states as follows: "Dr. Shin is prepared to offer to pay Shaw Pittman $850,000 today from the Fremont proceeds and give SP [Shaw Pittman] a lien against the Accounts Receivable pending The HBCC closing which we anticipate will occur very soon." Joint Appendix at 392 ("CHG Email 1"); Brief of Appellant CHG at 9.

[6] SP Email 2 states: "Donald: My Management Team accepts the fee proposal on two caveats. One the UCC liens will be signed today. And, of course, I will not be fighting with CHG about my fee applications (trust me, not that I am concerned; and I am sure you probably know, any fights about fee applications would be an expense to be paid by CHG). Please confirm immediately." Joint Appendix at 392.

[7] CHG Email 3 states: "Patrick – It's a deal – this presupposes the (I believe) 5% discount you offered Dr. Shin previously. I hope your firm can prepare the liens." Joint Appendix at 394.

[8] SP Email 4 states: "No it does not presuppose a 5% deal. I did not offer it. That is a mischaracterization. Please confirm all fees will be paid. I will consider a discount after my questions put to Dr. Shin on the issue have been answered." Joint Appendix at 400.

CHG's failure to respond show that at the conclusion of the emails, Shaw Pittman had extended an offer to CHG but CHG had not accepted that offer.

The facts also support only one interpretation of the offer—that CHG understood the offer to include the terms of SP Email 2. At some point shortly after the December 15, 2003 hearing, CHG signed the liens on accounts receivable in favor of Shaw Pittman. Joint Appendix at 257. But there is no mention of liens in the final email. CHG's conduct in signing the liens contradicts its assertion that only the final email contained the terms of the offer. If CHG understood the final offer from Shaw Pittman as only including those terms in the final email then why did it subsequently sign the liens in favor of Shaw Pittman? The only reasonable explanation is that CHG understood the offer to include all the terms from SP Email 2 as clarified by SP Email 4.[9] CHG's act of signing the liens fatally contradicts its subsequent version of the contract as only including terms from the final email. If the final email incorporated the term regarding the liens, then there is no basis in law or in fact for excluding the other terms of SP Email 2, including the term prohibiting objections to Shaw Pittman's fee applications. The final offer from Shaw Pittman included the terms set forth in SP Email 2.

Having examined the facts and found no genuine issues, the Court finds that Shaw Pittman is entitled to summary judgment as a matter of law on the issue of whether Shaw Pittman's final offer included a requirement that CHG not object to any then pending fees and whether the final email reinstated and clarified the offer in SP Email 2.

<u>THIRD ISSUE ON APPEAL</u>

CHG's third issue on appeal is its contention that the bankruptcy court erred in concluding that 1) CHG accepted Shaw Pittman's offer by silence, and 2) CHG had a duty to

---

[9] CHG first mentioned liens on accounts receivable in CHG Email 1. Shaw Pittman mentioned the liens in SP Email 2 when it requested the liens be signed that day. CHG again confirmed its desire to sign the liens in CHG Email 3. The only email lacking a reference to the liens is the final email, SP Email 4.

speak if it planned to reject Shaw Pittman's offer. Brief of CHG at 26. This Court reviews de

novo the bankruptcy court's findings that CHG accepted Shaw Pittman's offer by silence and

that CHG had a duty to speak. Spicer, 57 F.3d at 1159.

CHG's legal duty to speak derives from the bankruptcy code. In order for a bankruptcy

court to confirm a plan of reorganization, the plan must meet the statutory requirements in 11

U.S.C. §1129. §1129(a)(9) states in pertinent part:

> Except to the extent that the holder of a particular claim has agreed
> to a different treatment of such claim, the plan provides that (A)
> with respect to a claim of a kind specified in section 507(a) or
> 507(a)(2) of this title, on the effective date of the plan, the holder
> of such claim will receive on account of such claim cash equal to
> the allowed amount of such claim;

11 U.S.C. §1129(a)(9).

Section 507 of the bankruptcy code provides first priority to "administrative expenses

allowed under section 503(b) of this title." 11 U.S.C. §507(a)(1). Section 503 states that

"reasonable compensation for professional services rendered by an attorney" are an

administrative expense. 11 U.S.C. §503(b)(4). Applying these sections to the facts at hand, the

following conclusions appear: 1) Shaw Pittman is a provider of legal services whose bills are

considered administrative expenses under §503(b); 2) Shaw Pittman's legal bills are first priority

expenses under §507(a)(1); and 3) under §1129(a)(9)(A) "except to the extent that [Shaw

Pittman] has agreed to different treatment" Shaw Pittman is entitled to full payment of their

claim for fees on the effective date of the plan. There is no indication in the briefs that the parties

dispute any of the aforementioned conclusions.

The rule in bankruptcy is that the proponent of the plan of reorganization, in this case

CHG, bears the burden of proving by a preponderance of the evidence that the plan complies

with all elements of 11 U.S.C. §1129. In re Trevarrow Lanes, Inc., 183 B.R. 475 (Bankr. E.D. Mich. 1995); In re Rivers End Apartments, Ltd., 167 B.R. 470 (Bankr. S.D. Ohio 1994).

As noted above, one such element is that an administrative creditor such as Shaw Pittman must be paid in full "[e]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim." 11 U.S.C. §1129(a)(9).

The default position of §1129(a)(9) is that Shaw Pittman receives full payment. In order to pay Shaw Pittman something less, CHG has an affirmative burden to secure Shaw Pittman's consent. CHG cannot simply remain silent in the face of its obligation. See In re Teligent, Inc., 282 B.R. 765, 767 (Bankr. S.D.N.Y. 2002) (finding that "[t]he debtors could not . . . satisfy §1129(a)(9) . . . except to the extent that a particular administrative creditor agreed to a different treatment."). The facts previously stated indicate that Shaw Pittman made an offer to CHG by email prior to the hearing. There is no evidence offered by CHG or Shaw Pittman to the effect that at any point prior to the hearing CHG advised Shaw Pittman, its bankruptcy counsel, that CHG was unable to comply with the provisions of §1129 as a result of CHG's inability to resolve its fee dispute with Shaw Pittman. See Joint Appendix at 471.

Having received no contradictory information, Mr. Potter then went before the bankruptcy court in his capacity as counsel for CHG and stated that the bankruptcy court should confirm the plan of reorganization. [10] The only way that CHG could allow Mr. Potter to proceed with the confirmation hearing was if in fact CHG had accepted Shaw Pittman's pending offer to accept less than full payment of their fees subject to the associated conditions. If CHG was not going accept Shaw Pittman's offer, it was bound by the bankruptcy code to inform the bankruptcy court, likely via Shaw Pittman as bankruptcy counsel, that it could not comply with

---

[10] Mr. Potter had an obligation under the Federal Rules of Civil Procedure to make truthful representations to the bankruptcy court. See Fed. R. Civ. P. 11 (2004).

§1129. To reject Shaw Pittman's offer but assert compliance to the bankruptcy court would have been to obtain confirmation by fraud. Therefore, this Court concludes that as a matter law, CHG had an obligation to speak up and inform Shaw Pittman if it did not plan to accept Shaw Pittman's offer so that Shaw Pittman could truthfully represent to the bankruptcy court that CHG had not complied with all the elements of §1129.[11]

CHG also argues that the bankruptcy court erred in determining that CHG's actions constituted an acceptance by silence of Shaw Pittman's offer. The District of Columbia has adopted the doctrine of acceptance by silence as set forth in the Restatement (Second) of Contracts. Klingensmith, Inc., v. District of Columbia, 370 A.2d 1341, 1343 (D.C. 1977) ("The Restatement (Second) of Contracts, to which we subscribe for resolution of this issues, states the general principle that an offeror ordinarily lacks power to make an offeree's silence result in an acceptance. . . . [but] carves out three exceptions to this general rule.") (citations omitted).

The Restatement (Second) of Contracts states in relevant part:

> Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only: . . .(b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer. (c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

Restatement (Second) Contracts §69(1)(c) (1981). The comments to the section clarify that one class of common cases is where the "offeree silently takes offered benefits." Restatement (Second) Contracts §69, cmt. A. The comments further note that "explicit statement by the offeree . . . may give the offeror reason to understand that silence will constitute acceptance". Id. at cmt. d.

---

[11] The Court's holding affirms the decision of the bankruptcy court that "Dr. Shin clearly recognized that Shaw Pittman's resolution of its fees was an element that had to be resolved before confirmation could be obtained." Joint Appendix at 474.

16

The facts in this case parallel the language of the restatement. As determined above, at the time of the confirmation hearing on December 15, 2003, Shaw Pittman had extended an offer to CHG to resolve the issue of payment of Shaw Pittman's fees. CHG had a duty to speak and inform Shaw Pittman of whether it accepted or rejected Shaw Pittman's offer. CHG failed to reply by either affirmation or rejection to Shaw Pittman's offer. CHG then accepted the benefits of the offer, i.e. confirmation. Under District of Columbia law, the legal consequence of this series of actions is that CHG accepted Shaw Pittman's offer by silence.

CHG does not raise any genuine issues of material fact arguments that contradict these findings. Indeed, the facts asserted by CHG further support a finding of acceptance by silence. CHG quotes a portion of Mr. Potter's deposition describing the conversation between Mr. Hartman of CHG and Mr. Potter. At his deposition Mr. Potter stated: "And he [Mr. Hartman] indicated words to the effect that either if we didn't hear back from him or from someone that [the offer] was unacceptable, that we should assume it's accepted, or . . . [s]omeone will be getting back to you to let you know if it's unacceptable." Brief of CHG at 29. These statements parallel the comment to the restatement providing that the offeree may give the offeror reason to understand that silence will constitute acceptance. Construing Mr. Potter's deposition in the light most favorable to CHG creates no factual issue and supports a finding of summary judgment for Shaw Pittman. Given that CHG never informed Shaw Pittman that it rejected its offer, CHG's silence under its own terms and applicable District of Columbia law constitutes acceptance.

## FOURTH ISSUE ON APPEAL

CHG argues that a reasonable jury could conclude that Shaw Pittman failed to object at the confirmation hearing for reasons other than that Shaw Pittman believed CHG had accepted its offer. Brief of CHG at 33. This argument is frivolous. As a threshold matter, CHG fails to cite

17

any location in the record where it brought this issue before the bankruptcy court and fails to connect its argument to any of the rulings or elements of the rulings of the bankruptcy court. CHG also fails to cite any factual support for its contention, instead resorting to references to "information and belief." Finally, CHG fails to cite any legal authority showing the legal relevance of its contention. Thus, even if Shaw Pittman had an alternative motivation for not objecting at the confirmation hearing, it is not relevant to any element of the law or any issue of fact under consideration. This argument for reversal is denied.

<u>April 2, 2004 Imputed Knowledge Ruling</u>

In the April 2, 2004 hearing on Shaw Pittman's second motion for summary judgment the bankruptcy court ruled for Shaw Pittman that the knowledge of Mr. Hartman be imputed to CHG. CHG appealed the April 9, 2004 Final Order and Judgment where the bankruptcy court granted Shaw Pittman's second motion for summary judgment. However, CHG has not appealed the issue of imputed knowledge in Shaw Pittman's second summary judgment motion.

Where a party appeals a judgment but fails to raise an issue on appeal the party abandons that issue and the Court will treat this issue as waived. <u>Carducci v. Regan</u>, 714 F.2d 171, 177 (D.C. Cir. 1983) ("The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued before them."); <u>Williams v. REP Corp.</u>, 302 F.3d 660, 665 (7th Cir. 2002) (finding that a party has waived any argument that it "raised in the district court, [but] fails to develop on appeal."); <u>Humble v. Boeing Co.</u>, 305 F.3d 1004, 1012 (9th Cir. 2002) ("Issues raised in a brief but not supported by argument are deemed abandoned absent manifest injustice.").

18

CHG's failed to present any discussion, argument, or citation of law or fact on the issue of imputed knowledge. Therefore the Court holds that CHG has waived its appeal of this issue and that the decision of the bankruptcy court on the issue is affirmed.

<u>April 20, 2004 Ruling on Shaw Pittman's Fee Application</u>

CHG's only objection to the April 20, 2004 hearing is that the bankruptcy court prohibited CHG from objecting to Shaw Pittman's fee application. <u>See</u> Reply Brief Appellant CHG at 3. CHG properly asserts that the bankruptcy court predicated its prohibition on prior rulings on summary judgment that a contract existed between Shaw Pittman and CHG that prohibited such objections. Therefore, because the Court affirms the summary judgment findings of the bankruptcy court on March 2, 2004 and April 9, 2004, the Court likewise affirms the bankruptcy court's ruling on April 20, 2004 that the previously adjudicated contract between CHG and Shaw Pittman precluded CHG from objecting to Shaw Pittman's fee application. As CHG lodges no other objection to the April 20, 2004 hearing, and because the Court's review of that hearing is for abuse of discretion, this Court affirms the decision of the bankruptcy court to award fees to Shaw Pittman.

<u>REMAND</u>

In construing the contract between CHG and Shaw Pittman de novo, this Court determined that the contract included the terms from SP Email 2. One of these terms required CHG to pay Shaw Pittman's expenses in the event that CHG attempted to object to any of Shaw Pittman's fee applications. CHG objected to Shaw Pittman's fees in violation of the contract. Therefore Shaw Pittman is entitled to its expenses for work performed in response to CHG's objections. This includes expenses incurred for proceedings in front of the bankruptcy court as well for proceedings in this Court. The Court shall remand the case to the bankruptcy court for a

determination of the amount of those expenses and an award of those expenses to Shaw Pittman. This award is addition to any fees already awarded by the bankruptcy court in its April 20, 2004 hearing.

<u>CONCLUSION</u>

Upon consideration of Appellant Capitol Hill Group's appeal of the decisions of the bankruptcy court, the Court hereby affirms in their entirety the March 2, 2004, April 9, 2004, and April 20, 2004 rulings, orders, and judgments of the bankruptcy court. The appeal of CHG shall be denied and dismissed. The Court shall remand the case to the bankruptcy court for execution of its prior award of attorney's fees and for an award of expenses to Shaw Pittman pursuant to the contract between the parties.

A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on August 17, 2004.

SUB-EXHIBIT 9

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

**FILED**

SEP 23 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

IN RE:                                    )
                                          )
CAPITOL HILL GROUP,                       )        CASE NO. 02-0359
                                          )        Chapter 11
                Debtor.                   )
                                          )

JUDGMENT AND ORDER (A) DIRECTING PAYMENT ON APRIL 23, 2004 WRIT OF
ATTACHMENT AND (B) ON APRIL 22, 2004 MOTION OF SHAW PITTMAN FOR
ATTORNEYS' FEES AND COSTS (TAKING INTO CONSIDERATION THE
DECISION/REMAND OF THE DISTRICT COURT)

Before the Court is the April 22, 2004 Motion for Attorneys' Fees and Costs filed by

Shaw Pittman LLP ("**Shaw Pittman**") in this case (the "**Motion**"), and the opposition to the

Motion filed by Capitol Hill Group ("**CHG**").[1]  The Court also addresses the issue of interest

that accrued on Shaw Pittman's April 20, 2004 Judgment in the case.

### A.    INTEREST ON MAY 20, 2004 JUDGMENT

1.    As indicated in that certain Writ of Attachment on Judgment Other Than Wages,

Salary and Commissions Owed by an Employer, entered by this Court on April 23, 2004 (the

"**Writ**"), Shaw Pittman is entitled to interest on $240,329.47 (the unpaid principal under the

Court's April 20, 2004 Judgment), at the rate of 1.40 percent per annum, from April 20, 2004

through the date of satisfaction of the Judgment.  A copy of the Writ is attached hereto as

**Exhibit 1**.

2.    Shaw Pittman has not been paid the Judgment Interest (defined in the following

paragraph).

3.      One Hundred Forty One (141) days passed from the date of entry of the Judgment through the date the Judgment was paid, Shaw Pittman is entitled to be paid interest of $1,299.75 (the "**Judgment Interest**").

## B.    **MOTION FOR ATTORNEYS' FEES AND COSTS**

4.      On April 22, 2004, Shaw Pittman filed the Motion.

5.      In the Motion, Shaw Pittman sought an order (or orders) from the Court directing CHG to pay Shaw Pittman's fees and expenses incurred in connection with with, inter alia, litigation arising from CHG's defaults under certain agreements, CHG's objection to Shaw Pittman's fee application, CHG's failure to pay Shaw Pittman its fees, and other related matters. Shaw Pittman's legal bases for recovering these fees included, but were not limited to:  (A) Shaw Pittman's right, as court-approved counsel, to be paid for fees and expenses incurred with preparing, filing and successfully prosecuting its fee applications, see e.g. Motion at paragraph 15 (the "**Fee Application Theory**)"; (B) Shaw Pittman's right to recover under the December 15, 2003 Security Agreement, see e.g. Motion at paragraph 13-14 (the "**Security Agreement Theory**"); and (C) Shaw Pittman's right to be paid pursuant to the December 15, 2003 agreement that was concluded between Shaw Pittman and CHG, see e.g. Motion at paragraph 12 (the "**December 2003 Agreement Theory**").

### **The Fee Application Theory**

6.      At the hearing on the Motion, Shaw Pittman sought **fees of $1,356** and **expenses of $70.70** for preparing and filing Shaw Pittman's final fee application (the "**Fee Application**

---

Footnote continued from previous page

[1]      Pursuant to separate order of this Court, the Court has deferred any ruling on the April 22, 2004 Bill of Costs filed by Shaw Pittman.

<u>**Preparation and Filing Fees and Expenses**</u>"). Shaw Pittman is entitled to be paid the Fee

Application Preparation and Filing Fees and Expenses.[2] <u>See</u> <u>**Exhibit 2**</u>.

<div align="center"><u>**The Security Agreement Theory**</u></div>

7.       At the hearing on the Motion, Shaw Pittman sought a determination that a default

occurred under the Security Agreement.  The Court hereby finds that such default did occur.

8.       At the hearing on the Motion, Shaw Pittman sought **fees incurred February 28,**

**2004 of $9,938 and expenses of $293.57** for prosecuting, under the Security Agreement, its

right to have CHG and the other parties to the Security Agreement sign a deposit account control

agreement (the "<u>**DACA Fees and Expenses**</u>").  <u>See</u> <u>**Exhibit 2**</u>.

9.       The Court ordered that CHG and the other parties to the Security Agreement sign

a deposit account control agreement, and they failed to comply with the terms of the Court's

order.  Subsequently, when CHG agreed and was ordered to post $285,000 cash with the Court,

Shaw Pittman, in order to reach a consensual resolution on the stay pending appeal, agreed that it

would at least temporarily forbear from exercising its rights under the Security Agreement to

obtain a fully-executed deposit account control agreement.

10.       The Court determines that Shaw Pittman is entitled to recover its fees and

expenses incurred with litigating this matter.  <u>See</u> Section 6.3.1 of the Security Agreement.

<div align="center"><u>**December 2003 Agreement Theory**</u></div>

11.       In the cases of <u>Capitol Hill Group v. Shaw Pittman, LLP</u>, 2004 U.S. Dist. LEXIS

16386 (D. D.C. August 17, 2004) (the "**District Court Decision**"), the United States District

Court for the District of Columbia (the "**District Court**") ruled that Shaw Pittman is entitled to

---

[2]       Shaw Pittman asserted in the Motion that its fees and expenses addressed under the
December 2003 Agreement Theory are also recoverable under the Fee Application Theory.

<div align="right">Footnote continued on next page</div>

recover its fees and expenses (with respect to "proceedings in front of the bankruptcy court as well as for proceedings in [the District] Court") for the litigation arising out of the January 30, 2004 objection filed by CHG to Shaw Pittman's fee application (the "**Fee Application Litigation**"). Id. at *34. The District Court's ruling on the December 2003 Agreement Theory (i.e. that CHG is liable to Shaw Pittman under such theory) is now law of the case, and is binding on this Court. The Court does find that Shaw Pittman has not waived any arguments it has made (or may make) for recovery of these fees and expenses.

12.    In the above-referenced decision, the District Court remanded the matter to this Court for a determination of the *amount* of fees and expenses incurred by Shaw Pittman in connection with the Fee Application Litigation.

13.    At the hearing on the Motion, this Court found and determined that through August 31, 2004, in connection with the Fee Application Litigation Shaw Pittman incurred **fees of $259,927** and **expenses of $49,310.46** (the "**Fee Application Litigation Fees and Expenses**").

<u>**Total Award Under Bankruptcy and District Court Rulings**</u>
**(Through August 31, 2004)**

| | | |
|---|---|---|
| 14. | Judgment Interest Per Existing Writ: | $1,299.75 |
| 15. | Fee Application Preparation and Filing Fees and Expenses | $1,426.70 |
| 16. | DACA Fees and Expenses | $10,231.57 |
| 17. | Fee Application Litigation Fees and Expenses | $309,237.46 |
| 18. | **Grand Total**: $322,195.48 | |

---

Footnote continued from previous page

Shaw Pittman is not deemed to have waived such argument.

## **Residual Registry Funds**

19.     Pursuant to prior orders of this Court, CHG had deposited $285,000 with the registry of this Court, $240,329.47 of which was paid to Shaw Pittman after entry of the District Court Decision.  The remaining $44,670.53 in the Court's registry is referred to as the "**Residual Registry Funds**".

## **Ordered Paragraphs**

WHEREFORE, it is hereby

### **(Award Per Bankruptcy Court)**

ADJUDICATED AND ORDERED, that CHG shall pay the Judgment Interest ($1,299.75), in accordance with the terms of this Judgment and Order; and it is further

ADJUDICATED AND ORDERED, that this Court awards Shaw Pittman:

- The Fee Application Preparation and Filing Fees and Expenses of $1,426.70; and

- The DACA Fees and Expenses of $10,231.57; and it is further

ADJUDICATED AND ORDERED, that in the absence of a stay issued by this Court, CHG shall immediately (per the terms of this Judgment and Order) pay Shaw Pittman the Fee Application Preparation and Filing Fees and Expenses and the DACA Fees and Expenses, which together total $11,658.27; and it is further

### **(Award Per District Court)**

ADJUDICATED AND ORDERED, that pursuant to the award ordered by the District Court, Shaw Pittman is entitled to fees and expenses of $309,237.46 (i.e., the Fee Application Litigation Fees and Expenses), and that in the absence of a stay issued by the District Court (or

the U.S. Court of Appeals or the U.S. Supreme Court) CHG is required to pay (per the terms of this Judgment and Order) the Fee Application Litigation Fees and Expenses; and it is further

### (Sources of Payment)

ADJUDICATED AND ORDERED, that to partially satisfy the foregoing sums owed to Shaw Pittman, the Clerk of the Court shall immediately release to Shaw Pittman the Residual Registry Funds; and it is further

ADJUDICATED AND ORDERED, that by 5:00 p.m on September 30, 2004, CHG shall deliver, by wire transfer or certified check (and not by any other means), the amount of **$277,524.95** - i.e. balance of the foregoing fees and expenses; and it is further

ADJUDICATED AND ORDERED, CHG shall be and hereby is obligated to pay Shaw Pittman interest on the unpaid portion of the total amount set forth herein (i.e. $322,195.48), in accordance with 28 U.S.C. § 1961, after September 22, 2004, at the current federal judgment rate of 2.09% percent per annum compounded annually, through the date this Judgment is satisfied; and it is further

ADJUDICATED AND ORDERED, that this Court shall conduct a hearing on October __, 2004 at _____ a.m./p.m., to determine the amount of any additional Fee Application Litigation Fees and Expenses incurred (or posted) after August 31, 2004.

It is so Adjudicated and Ordered.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

6

Copes to:

Office of the U.S. Trustee
115 South Union Street
Suite 210
Alexandria, Virginia  22314

Patrick Potter
Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037

Donald Hartman
General Counsel
Capitol Hill Group
700 Constitution Avenue, N.E.
Washington, D.C. 20002

EXHIBIT 1

# ORIGINAL

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

**FILED**

**APR 23 2004**

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

```
                                    )
IN RE:                              )
                                    )
CAPITOL HILL GROUP,                 )        CASE NO. 02-0359
                                    )        Chapter 11
              Debtor.               )
                                    )
```

## WRIT OF ATTACHMENT ON JUDGMENT
## OTHER THAN ON WAGES, SALARY AND COMMISSIONS
## OWED BY AN EMPLOYER

**FILED**

**APR 23 2004**

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

To:    **The National Capital Bank of Washington**
       316 Pennsylvania Avenue, SE
       Washington, D.C. 20003

       **Garnishee:**

You are hereby notified that any money, property or credits of Capitol Hill Group, are seized by this Writ of Attachment, and you are required to hold it and not to pay or surrender it to Capitol Hill Group or to anyone else without an order from this court.

The Judgment against Capitol Hill Group (entitled 'Order and Judgment on the Portion of the Shaw Pittman LLP Fee Application Covering Fees and Expenses Billed Prior to December 15, 2003') was entered in this case on April 20, 2004, in favor of Shaw Pittman LLP in the amount of $240,329.47, together with interest, in accordance with 28 U.S.C. § 1961, after April 20. 2004, at the rate of 1.40 percent per annum compounded annually, and with "no" credits having been received on the Judgment, the amount calculated by Shaw Pittman to be owed as of April 23, 2004, is $240,357.12, with additional interest accruing after that date, plus any further allowable costs.

Within ten (10) days after this writ is served upon you, you are required:

- to answer the attached interrogatories, **UNDER PENALTY OF PERJURY;**

- to serve copies of the answers to interrogatories, by mail (or other means permitted by applicable rules), upon the attorney(s) for Shaw Pittman LLP and upon Capitol Hill Group at their respective addresses noted below; and

- to file with the clerk of this court the original of the answers to the interrogatories, accompanied by a certificate reciting when and how service was made upon the attorney(s) for Shaw Pittman LLP and upon Capitol Hill Group.

**If you fail to take these steps within the 10 days, judgment may be entered against you for the entire amount of Shaw Pittman LLP's claims with interest and costs.**

Filing with the clerk is <u>not</u> complete upon mailing. Filing is only complete upon actual receipt:

- at the clerk's office (Room 4400 E. Barrett Prettyman United States Courthouse, 333 Constitution Avenue, N.W., Washington, DC 20001) during the hours it is open; or

- upon delivery to the drop box at the security desk at the John Marshall entrance to the courthouse as provided by Rule 5005-1 of this court's Local Bankruptcy Rules (available at the clerk's office and on the court's website (http://www.dcb.uscourts.gov/)).

In contrast, service <u>is</u> complete upon mailing, and for your convenience, the Interrogatories in Attachment are accompanied by a blank certificate of service by mail which may be filled out by you to reflect service by mail of your answers (once you have filled in answers to the Interrogatories and signed the answers).

If, within ten (10) days after service of the answers, or such later time as the Court may allow, Shaw Pittman LLP does not contest your answers pursuant to Title 16, Section 522, D.C. Code Ann., your obligations under the attachment shall be limited by your answers. <u>See</u> Superior Court Civil Procedure Rule 69-I(d), made applicable here by F.R. Civ. P. 69(a).

Pursuant to D.C. Superior Court Rule 69-I(e), made applicable here by F.R. Civ. P. 69(a), if Shaw Pittman LLP fails to file a motion for entry of judgment:

- within 28 days after answers to the interrogatories are due and not filed and served;

- within 28 days after you have timely filed and served answers to the interrogatories; or

- within such later time as may be authorized by the court upon a motion made within the applicable period

then the garnishment and attachment shall stand dismissed, unless a judgment has already been entered within the time provided above. Upon written request therefor, the clerk of this court

2

shall enter such dismissal of the garnishment and attachment and shall furnish a certificate of such dismissal to you as garnishee, to Capitol Hill Group, or any other person.

      Witness the Honorable Judge of said Court, this 23 day of April, 2004.

*Pursuant to direction of the court, this writ may not be served prior to 12:01 p.m. on April 24, 2004.*

Denise H. Curtis, Clerk
United States Bankruptcy Court
Room 4400
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue, N.W.
Washington, DC 20001

By: _____
Deputy Clerk

Copies to:

      Patrick J. Potter
      Luis C. Marini
      SHAW PITTMAN LLP
      2300 N Street, N.W.
      Washington, D.C. 20037
      Tel: (202) 663-8000
      Fax: (202) 663-8007
      Attorneys for Shaw Pittman LLP

      Donald R. Hartman
      700 Constitution Ave., N.E.
      Washington, D.C. 20002
      Attorney for Capitol Hill Group

EXHIBIT 2

# ShawPittman LLP

*A Limited Liability Partnership Including Professional Corporations*

Employer Identification Number
53-0233137

September 23, 2004
ID: 23954-0026

Invoice No. ******

**REGARDING:    Post Withdrawal Collection Efforts**

| | | |
|---|---|---|
| For Professional Services Through 08/31/2004 | $ | 271,221.00 |
| For Expenses Incurred Through 08/30/2004 | $ | 49,674.73 |
| **TOTAL AMOUNT DUE** | **$** | **320,895.73** |

2300 N Street, NW, Washington, DC 20037–1128    202.663.8000   Fax: 202.663.8007    www.shawpittman.com

London
New York
Northern California
Northern Virginia
Taipei
Washington, DC

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 2

## TASK SUMMARY

Fees:                                        $  271,221.00

Prepare/File Fee Application                        $       1,356.00
Security Agreement Breach                           $       9,938.00
Fee Application Litigation                          $     259,927.00

    Total                                    $     271,221.00

Costs:                                       $   49,674.73

Prepare/File Fee Application                        $          70.70
Security Agreement Breach                           $         293.57
Fee Application Litigation                          $      49,310.46
    Total                                    $      49,674.73

CAPITOL HILL GROUP
23954-0026
PAGE 3

September 23, 2004
Invoice No: ******

## ITEMIZED SERVICES

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|

**Prepare/File Fee Application:**

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 01/09/04 | Marini, L | Draft final fee application. | 2.90 |
| 01/12/04 | Potter, P | Fee Application. Analyze and drafting edits to Final Fee application, and discuss same with L. Marini, and ancillary papers, e.g. proposed order. | 1.50 |
| | | Subtotal For: Prepare/File Fee Application | 4.40 |

**Subtotal for Prepare/File Fee Application         4.40     $     1,356.00**

**Security Agreement Breach:**

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/06/04 | Potter, P | Drafting motion to comply with plans and security agreement, which to draft required, among other things, analyzing the plans and the materials referred to therein (1.50). Analyze motion to compel issues and discuss same with T. Catliota (.50). Revise motion (.40). Draft letter (.10). | 2.50 |
| 02/12/04 | Potter, P | Revising control agreement pleadings and exhibits for filing (1.70). | 2.70 |
| 02/20/04 | Potter, P | Review pleadings relative to Motion to Compel (.30). | 0.30 |
| 02/26/04 | Potter, P | Read and analyze D. Hartman's bond offer re control agreement (.10). | 0.10 |
| 02/27/04 | Jones, R | Review of deposit account control agreement; conference with P. Potter regarding same. | 1.00 |

CAPITOL HILL GROUP                                    September 23, 2004
23954-0026                                           Invoice No: ******
PAGE 4

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/01/04 | Potter, P | Analyze control agreement issues and related motion with T. Catliota (.50). Analyze opposition by Hartman/Litt to motion to compel (.50). Analyze correspondence with Hartman regarding several promises to sign control account agreement (.40). | 1.40 |
| 03/04/04 | Marini, L | Draft motion to withdraw a portion of relief requested in the motion to compel debtors to sign deposit account agreement. | 0.50 |
| 03/08/04 | Potter, P | Prepare for hearings on control account agreement and other matters, including extensive e-mail analyses (3.0). Travel to/from hearings, and participate in same, with primary focus on litigating the control account agreement (3.50). | 6.50 |
| 03/10/04 | Potter, P | Analyze, drafting, editing and circulate revised deposit account control agreement (1.50). | 1.50 |
| 03/29/04 | Marini, L | Draft opposition to CHG's motion to reconsider DAC Agreement order. | 2.90 |
| 03/29/04 | Potter, P | Review motion to reconsider filed by CHG re control account and outline response for L. Marini to draft (.40), and additional analysis re same re fact background (.50). | 0.90 |
| 03/30/04 | Marini, L | Finalize opposition to CHG's motion to reconsider order granting SP's motion to compel. | 1.30 |
| 04/07/04 | Potter, P | Letter to D. Litt on DAC Agreement (.20). | 0.20 |
| 04/26/04 | Potter, P | Analysis in connection with and drafting supplement on motion to compel (DACA) and motion to reconsider and file same (2.50). | 2.50 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 5

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/27/04 | Potter, P | Draft order on DACA matters, and cover letter, and edit and supervise sending (.40). | 0.40 |
| | | Subtotal For: Security Agreement Breach | 24.70 |

**Subtotal for Security Agreement Breach**          **24.70**    **$    9,938.00**

**Fee Application Litigation:**

| | | | |
|------|------|-----------|-------|
| 01/30/04 | Marini, L | Review CHG objection to SP fee application. Draft subpoena's and serve. Conference with P. Potter regarding strategy. | 1.20 |
| 01/30/04 | Potter, P | Legal analysis and strategy, including review of files, corresponence and pleadings that rebut assertions contained in CHG's objection/motion for continuance on SP Final Fee Application. | 3.00 |
| 01/31/04 | Potter, P | Teleconference with D. Hartman regarding stipulating to fact (.10). Additional analysis of files, correpondence and pleadings to rebut assertions and outlining issues relevant to litigation and witness examination (5.4). | 5.50 |
| 02/01/04 | Marini, L | Research cases in which there was a fee dispute and to what extent did the court allow the attorney to reveal information. Draft e-memo re same. | 5.00 |
| 02/02/04 | Marini, L | Telephonic hearing with Court regarding motion to strike CHG's objection. Analysis of pleadings, facts and strategy. Research cases where silence constitutes an acceptance of offer. | 4.60 |
| 02/02/04 | Marini, L | Review and analyze Jan. 7, 2004 hearing transcript. | 0.40 |

CAPITOL HILL GROUP                                    September 23, 2004
23954-0026                                           Invoice No: ******
PAGE 6

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/02/04 | Marini, L | Draft, revise, and file motion to compel compliance with a subpoena. | 1.40 |
| 02/02/04 | Marini, L | Review all time entries for DSMO and prepare chart with hearings on which several lawyers present--purpose: compare to CHG objections to SP Application. | 1.60 |
| 02/02/04 | Petty, T | Review Motion by CHG regarding objection to fees based in part on real estate services; conferences with P. Potter re Motion and review of leases, drafting of new leases; memorandum to P. Potter. | 0.60 |
| 02/02/04 | Potter, P | Telecons with J. Jarrell (Fremont) (.20); analysis, drafting, editing, preparing and finalizing pleadings (opposition to continuance and motion to strike) (4.50). Prepare witness questions and answers for 2/3/03 hearings (3.0). Brief preparation for telephonic hearing, and participate in telephonic hearing with Court and D. Hartman (2.0). Post hearing analysis of hearing, court's comments, etc. and strategy development (1.0). | 10.70 |
| 02/02/04 | Catliota, T | Attention to Capitol Hill Group; analysis with Patrick Potter; prepare for hearing and related issues. | 2.00 |
| 02/02/04 | Wagner, C | Coordinated the copying and receipt of a number of documents with the Bankruptcy Court and its document vendor regarding fee application dispute. | 0.40 |
| 02/03/04 | Marini, L | Draft scheduling order. | 0.50 |

CAPITOL HILL GROUP                              September 23, 2004
23954-0026                                      Invoice No: ******
PAGE 7

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/03/04 | Potter, P | Developing legal strategy in light of court hearing on 2/2, including outlining factual and legal issues and potential witness lists (2.70); analyze correspondence and documents relating to Fremont issues (.30); draft stipulation regarding Fremont facts (.30). | 3.30 |
| 02/03/04 | Catliota, T | Meeting with Patrick Potter to go over strategy and follow-up calls to Mayer Brown and parties; follow up matters re: strategy. | 4.40 |
| 02/03/04 | Marini, L | Research whether party can accept terms of offer when there is a failure to communicate a rejection; and the offeror detrimentally relies. Analysis of pleadings and strategy. | 6.10 |
| 02/04/04 | Love, A | Potential res judicata/collateral estoppel argument. Research regarding D.C. precedent language GSE fee orders regarding subsequent challenges to final fee application; legal research regarding challenges to final fee application in absence of objections to interim fee application and Laches in D.C. | 2.90 |
| 02/04/04 | Marini, L | Research on whether a party can accept a contract when there is a failure to communicate a rejection; and the other party relies to its detriment. | 6.00 |

CAPITOL HILL GROUP                                      September 23, 2004
23954-0026                                             Invoice No: ******
PAGE 8

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/04/04 | Potter, P | Analyze legal issues and developing potential strategy for making res judicata type arguments and in doing so, reviewed and analyzed cases and documents such as plans and correspondence (3.10). Analyze contract issues regarding CHG, and confer with L. Marini re same (.20). Factual development and analysis (.40). Analyze pleadings regarding chronological order, and regarding separate issues involving the documents (.70). | 4.40 |
| 02/05/04 | Marini, L | Research cases dealing with contract formation when offeree remains silent and the offeror detrimentally relies on the terms of the last offer. Draft summary judgment motion. Analysis of pleadings and strategy. | 3.90 |
| 02/05/04 | Marini, L | Research elements of "reformation" of contract and applicability to fee dispute. | 1.90 |
| 02/05/04 | Potter, P | Analyze case law on silence is acceptance (.80). Developing litigation strategy (3.1). Confer with T. Catliota regarding his call with C. Miles and analyze and develop strategy for dealing with Fremont (.40). Analyze my December 16, 2003 letter and impact on litigation (.20). | 4.50 |
| 02/05/04 | Catliota, T | Analysis of issues concerning Shaw Pittman fee applications; conference with Christian Miles and assessment of issues related thereto, etc. | 3.50 |
| 02/06/04 | Marini, L | Review transcript from Feb. 2, 2004 hearing. Draft motion for summary judgment. Analysis of pleadings and strategy. | 3.50 |
| 02/06/04 | Catliota, T | Review transcript of hearing and conference with Patrick Potter. | 0.70 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 9

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/07/04 | Marini, L | Research cases that stand for the proposition that a counter offer (or a reply to an offer which adds varying terms to the original offer) is a rejection. Draft motion for summary judgment. | 0.90 |
| 02/08/04 | Marini, L | Draft motion for summary judgment. | 2.00 |
| 02/09/04 | Marini, L | Continue draft of motion for summary judgment. Analysis of pleadings, facts and strategy. | 2.30 |
| 02/09/04 | Potter, P | Analyzing facts, law and reasoning for summary judgment. | 6.30 |
| 02/10/04 | Marini, L | Edit motion for summary judgment; draft order, notice, cos. Analysis of Joynt and Laredo decision. Long analysis of pleading and strategy for case. | 3.50 |
| 02/10/04 | Potter, P | Developing litigation strategy (.70). Developing litigation strategy with T. Catliota on summary judgment (.60). Revise summary judgment motion and analyze exhibits, pulling from e-mails the same (2.4). Review letter from Hartman (received by Pacer), call courtroom deputy, draft letter re same to J. Teel (.30). Draft letter to J. Jarrell re no response (.20). Additional analysis and drafting (bolstering) of arguments in summary judgment brief (1.4). | 5.60 |
| 02/10/04 | Catliota, T | Analysis re: Summary Judgment; analysis with Patrick Potter. | 1.70 |
| 02/11/04 | Marini, L | Draft and continue to revise and review of (several times) motion for summary judgment; review exhibits. | 4.60 |
| 02/11/04 | Potter, P | Correspondence to D. Hartman (.20). Analyze and revised, edit and add new text to summary judgment motion and analyze exhibits (2.9). | 3.10 |

CAPITOL HILL GROUP                                    September 23, 2004
23954-0026                                           Invoice No: ******
PAGE 10

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/12/04 | Marini, L | Detailed review of motion for summary judgment; finalize and file same. Draft revised scheduling order. Draft motion to revise scheduling order; edit, finalize and file same. | 5.20 |
| 02/17/04 | Potter, P | Extensive analysis of the 2/2 transcript and picking apart D. Hartman's and Court's statements for analysis, including comparing D. Hartman's statements to correspondence and pleadings for inconsistencies. | 6.00 |
| 02/18/04 | Catliota, T | Conference with Patrick Potter and analysis of Summary Judgment and related issues. | 0.70 |
| 02/18/04 | Potter, P | Calls from/to C. Miles and T. Catliota (.20); S. Nichols (.30) and L. Marini (.20). Call with C. Miles (.30), draft his affidavit, including review of e-mails and correspondence to/from C. Miles to prepare (1.70). Review and analyze and strategy re pleading filed by new counsel and review background of counsel (.30). Analyze CHG plan regarding liability and discharge issues (.20). Draft letter to S. Nichols regarding issues related to 2004 examination (1.6), and (in connection with the same) analyzing the pleadings filed by Shin in GSE that talk about putting up substantial funds, and incorporate into letter, calls regarding situation to/with N. Demchick - sole question is source of check (.20), B. Shumm voice (.10), T. Catliota (.40), L. Marini (.30), Fremont affidavit begin drafting (.20), analyze and outline strategies re getting paid (1.1), and confer with C. Miles re same (.20). | 7.30 |

CAPITOL HILL GROUP
23954-0026
PAGE 11

September 23, 2004
Invoice No: ******

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/18/04 | Marini, L | Research elements of "duress" under D.C. law. Analysis of objection filed by Hospital Holding Corporation to sale of GSE. | 4.50 |
| 02/19/04 | Catliota, T | Analysis of Summary Judgment and related issues with Patrick Potter. | 1.00 |
| 02/19/04 | Potter, P | Analyze order scheduling hearings and setting hearing on SJ and circulate to team, and sending to opposition and supervise pleadings, and analyzing strategy issues regarding the same (.50). Analyze Foothill in more detail than yesterday (.20), analyzing loan agreement with Fremont re permitted indebtedness (.20). Analyze and edit pleading and developing strategy regarding same (.50). Analyze D. Litt's plan regarding performance and impact on Shaw Pittman Fee Application issues (.90). Telecon with C. Miles re Foothill loan (.20). Analyze and edit, and break into 2 pleadings the 2004 application and develop separate and independent facts and arguments (1.8). Confer with L. Marini regarding strategy on Fremont regarding service of subpoenas, website and collection efforts (.30). Analyze Mayer Brown's Hadley pleading re impact on CHG strategy (.40). Analyze transcript from auction for facts (.30). Developing strategy on summary judgment (.30). Analyze money flow from Fremont closing and related issues of Medlink complying with plan (.60). Letter to Jarrel re subpoenas after reviewing voice mail from A. Sodie and considering response (.40). Analyze HCC corporate/organization documents and incorporate in history (.30) | 6.90 |

CAPITOL HILL GROUP                                September 23, 2004
23954-0026                                       Invoice No: ******
PAGE 12

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/19/04 | Marini, L | Draft motion to take 2004 examination of debtors; review and edit same. Analysis of pleadings filed by HHC in Greater Southeast. Research for articles of incorporation for Hospital Holding Corp. Analysis of pleadings and strategy. | 3.60 |
| 02/20/04 | Marini, L | Detailed review CHG's opposition (and memorandum and affidavit) to motion for summary judgment. Review transcript from Dec. 15, 2003 hearing. Analysis of pleadings with P. Potter. | 1.20 |
| 02/20/04 | Potter, P | Review correspondence re Jung (.20). Letter to D. Litt re pro rata payment (.40). Anticipate arguments by CHG and begin drafting SJ Reply (2.50). | 3.10 |
| 02/23/04 | Potter, P | Analyze GSE issues relative to sources and strategy for payment while waiting for hearing (1.0).  Extended analysis of CHG's opposition to SJ and D. Hartman affidavit and developing response strategy (3.4).  Call with Fremont counsel (.50). Call with C. Miles re affidavit (.20). Strategic response and letter to P. Donahue (.40).  Second call with Fremont counsel (.20); confer with T. Catliota re same and other litigation strategy issues (.30). | 6.00 |
| 02/23/04 | Catliota, T | Analysis of Debtor's Opposition to Shaw Pittman Summary Judgment Motion and Affidavit of Donald Hartman. | 2.30 |
| 02/24/04 | Marini, L | Research admissibility of offers/counteroffers made on 12/15 as exception to the hearsay rule. Draft e-memo re same.  Draft letter to D. Hartman re producing documents; edit, finalize and send out same. Review affidavit of A. Good. | 2.60 |

CAPITOL HILL GROUP                        September 23, 2004
23954-0026                                Invoice No: ******
PAGE 13

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/24/04 | Potter, P | Initial draft of A. Good affidavit and send to Fremont counsel (.70). Give research issues to L. Marini (.10).  Read opposition to SJ again and outline issue and read Haar (.80). Drafting Reply brief to SJ opposition (5.6). Confer with C. Miles re affidavit (.10). Letter to Hartman re his affidavit (.30). | 7.60 |
| 02/25/04 | Marini, L | Research several issues for reply, including (1) doctrine that offeror is master of his offer; (2) whether dispute as to understanding, not facts, doesn't preclude granting summary judgment; (3) whether even if there is a disagreement as to immaterial terms, formation of a contract still possible; (4) if testimony at hearing is different from that in affidavit, court doesn't give credence to testimony at hearing. Review profile of opposing firm. Draft motion to compel production of documents from D. Hartman / CHG. Analysis of communication exchanges with CHG; strategy for case and litigation. | 6.90 |
| 02/25/04 | Potter, P | Address correspondence from D. Hartman (.20); analyze same relative to SJ motion and Hartman affidavit (.60).  Legal analysis, editing and mostly new text drafting of Reply to SJ Opp., including efforts to shorten brief and changes in light of Hartman correspondence (5.4). Attention to draft of Good affidavit sent by counsel and respond (.40); letters and e-mails to parties regarding depositions of Fremont (.40). | 7.00 |
| 02/25/04 | Catliota, T | Review and revise draft of Reply Brief of Summary Judgment. | 1.10 |

CAPITOL HILL GROUP                         September 23, 2004
23954-0026                                 Invoice No: ******
PAGE 14

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 02/26/04 | Potter, P | Analyze and edit next version of reply (1.30). Legal analysis of plan issues and timing of payment (.20). Additional drafting and editing of Reply brief (3.70). | 5.20 |
| 02/26/04 | Catliota, T | Revise and edit Reply to Opposition of Shaw Pittman's Summary Motion. | 4.20 |
| 02/26/04 | Marini, L | Research treatment of affidavits where attorneys argue or advocate. Draft e-memo re same. Detailed review of draft of Reply. | 3.60 |
| 02/27/04 | Marini, L | Draft "event of default" letter under security agreement; review and analisis of security agreement. Research agency/authority issues raised by CHG in their opposition. Detailed reviews and edits (4x) of reply to CHG's opposition to the motion for summary judgment; finalize document for filing. Draft praecipe and certificate of service. Analysis of strategy for 3/2/03 hearing. | 5.60 |
| 02/27/04 | Potter, P | Review letter from D. Litt, markup and send back (.30) and telecon with D. Litt (1.50). Analyze, edit and finalizing for filing the Reply brief and exhibits (3.5). Prepare for hearings set for 3/2/04 (2.0). | 7.30 |
| 02/27/04 | Catliota, T | Review and revise brief and analysis of legal issues with Patrick Potter. | 1.80 |
| 02/29/04 | Marini, L | Research on elements of "apparent authority." Research whether D. Hartman has apparent authority to bind CHG to "Final Offer". Write e-memo on research. Prepare chart with summary of several research assignments for hearing on motion for summary judgment. Review fees and expenses incurred as of Dec. 15, 2003 and prepare chart of same. | 2.90 |

CAPITOL HILL GROUP                                September 23, 2004
23954-0026                                        Invoice No: ******
PAGE 15

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/01/04 | Catliota, T | Prepare for hearing on Summary Judgment Motion. | 1.50 |
| 03/01/04 | Marini, L | Research decisions regarding allowing party in interest to conduct Rule 2004 exam of debtor after hitting effective date under plan. | 0.50 |
| 03/01/04 | Marini, L | Research whether there is an implied duty of good faith read into contracts in D.C. | 0.50 |
| 03/01/04 | Marini, L | Draft order for summary judgment motion. Review cases cited by CHG and research issues regarding silence by acceptance cases. | 1.30 |
| 03/01/04 | Potter, P | Analyze Litt/client's opposition to 2004 of MedLink and draft reply (1.50).  Analyze research results regarding 97% of fees on by 12/15/03  and apparent authority (.40). Analysis of pleadings and preparation for hearings, including discussions with T. Catliota re same (1.30). | 3.20 |
| 03/01/04 | Catliota, T | Analysis of Summary Judgment issues and preparation of same with Patrick Potter. | 0.70 |
| 03/02/04 | Catliota, T | At court on hearing on Motion for Summary Judgment. | 6.00 |
| 03/02/04 | Potter, P | Prepare for Summary Judgment hearing (early am) (1.30).  Pre-hearing preparation (.40). To/from hearings (5.3); post-hearing strategy (.20). Letters to D. Litt (2 @ .80).  Default letter (1 @ .40). Review orders entered and attach to certain correspondence. | 8.40 |
| 03/02/04 | Marini, L | Prepare for (including, preparing exhibits and documents), travel to / from, and participate in summary judgment hearing. | 7.50 |

CAPITOL HILL GROUP                                September 23, 2004
23954-0026                                        Invoice No: ******
PAGE 16

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/02/04 | Marini, L | Research appealability of summary judgment orders. | 0.20 |
| 03/03/04 | Marini, L | Draft letter to Hartman regarding motion to compel turnover of funds. Review motion to compel. | 0.50 |
| 03/03/04 | Marini, L | Draft amended scheduling order; revise same as per P. Potter's comments. | 0.40 |
| 03/03/04 | Marini, L | Analysis of cases cited by CHG in memorandum handed out in court. Research issues regarding actual and apparent authority, ability of attorney to bind client; ability of agent to bind principal; and notice issues. | 3.10 |
| 03/03/04 | Potter, P | Discovery analysis and strategy (.10). Edit letter on discovery re notice issue (.40); analyze personal liability under California law re CHG distribution (.20); analyze and prepare draft of motion for authority to prosecute a 549 action (.40); analyze and edit letter to D. Harman (.10). | 1.20 |
| 03/03/04 | Marini, L | Draft informal document request to CHG; revise same as per P. Potter's and T. Catliota's edits. | 0.40 |
| 03/04/04 | Catliota, T | Analysis of strategy and issues regarding Summary Judgment; review correspondence and discussion with Patrick Potter. | 0.80 |
| 03/04/04 | Potter, P | Attention to $250,000 12/5 withdrawal issues, including correspondence from Litt re same (.50); attention to discovery (including e-mail discovery) issues and correspond with D. Hartman re same (.50); fact analysis/development (2.0). | 3.00 |
| 03/04/04 | Marini, L | Research notice issues and analysis of strategy. Research forensic technology issues. | 1.20 |

CAPITOL HILL GROUP                      September 23, 2004
23954-0026                              Invoice No: ******
PAGE 17

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/05/04 | Potter, P | Extended analysis of e-mails, correspondence, facts to develop impeachment of witness materials. | 5.00 |
| 03/05/04 | Marini, L | Analysis of issue regarding document production and access to e-mail accounts. Research notice and authority issues. | 1.40 |
| 03/08/04 | Potter, P | Rule 2004 including CHG. Discovery status conference, and   post hearing analysis and strategy development (1.40). Begin initial review of e-mails relative to D Hartman's comments in court (.50). | 1.90 |
| 03/08/04 | Marini, L | Finalize motion to supplement rule 2004 exam; motion to expedite; notice; order and cos. File pleadings. | 1.10 |
| 03/08/04 | Marini, L | Research notice and authority issues regarding Court's ruling on motion for summary judgment. | 1.90 |
| 03/08/04 | Catliota, T | Attention to discovery issues and analysis with Patrick Potter. | 0.70 |
| 03/09/04 | Marini, L | Review notice of deposition for P. Shin (GSE); calls with Weil Gotshal regarding attending deposition. Analysis of strategy. | 0.30 |
| 03/09/04 | Marini, L | Draft subpoena for CHG regarding $250,000 transfer (requesting documents). | 0.30 |
| 03/09/04 | Potter, P | Anticipated discovery production of e-mails from 10/1/03 - 1/7/04 (compile all relating to everything) (2.0).  Draft letter to Hartman and Donohue re new theories and locate/compile attachments, edit, finalize and send/file (3.0). Strategy development regarding depositions with T. Catliota (1.1), and draft letter in response to P. Donohue (.30). | 6.40 |

CAPITOL HILL GROUP                                      September 23, 2004
23954-0026                                             Invoice No: ******
PAGE 18

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/09/04 | Marini, L | Analysis of issues. Research issues regarding authority; notice; and acceptance of contract. | 2.90 |
| 03/10/04 | Potter, P | Address discovery letter from and to P. Donohue (.30). Analyze documents for depositions and potential impeachment (1.70). | 2.00 |
| 03/10/04 | Marini, L | Analysis of strategy. Review of decision on summary judgment by Judge Teel. Research issues outlined in decision. | 2.10 |
| 03/11/04 | Marini, L | Research on implications of P. Shin setting up D. Hartman as person to whom offers must be made to. Analysis of strategy. Research authority and agency issues. | 4.10 |
| 03/11/04 | Catliota, T | Review and analyze emails re: closing documents and issues. | 0.50 |
| 03/11/04 | Catliota, T | Analyze emails re: closing date, documents, issues and analysis with Patrick Potter re: same. | 1.20 |
| 03/11/04 | Potter, P | Attention to correspondence from/to D. Hartman (.50); analyze transcript of court's ruling from 3/2/04 (.70); analyze correspondence vis D. Hartman's comments re closing occurred for CHG purposes on 12/11/03 etc. and compile and analyze potential impeachment materials and draw up an initial draft of a time chart for 12/15/03 (2.50). | 3.70 |
| 03/11/04 | Marini, L | Review transcript from 3/2/04 summary judgment hearing. | 0.40 |
| 03/12/04 | Potter, P | Prepare materials/outline issues for depositions of CHG witnesses. | 1.70 |

CAPITOL HILL GROUP                                      September 23, 2004
23954-0026                                             Invoice No: ******
PAGE 19

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/12/04 | Marini, L | Research issues regarding imputed notice and apparent authority. Analysis of strategy. | 3.00 |
| 03/15/04 | Potter, P | Begin anticipated document production. | 5.70 |
| 03/15/04 | Marini, L | Review documents produced by CHG and P. Shin. Analysis of same. | 0.50 |
| 03/15/04 | Marini, L | Analysis of strategy and 2004 issues. | 0.30 |
| 03/15/04 | Marini, L | Research issues law on imputed notice; apparent authority; actual authority; and using a particular agent to send an offer. | 4.10 |
| 03/16/04 | Marini, L | Review documents produced by CHG and the other debtors; analysis of same; analyze whether debtors complied with orders. | 0.40 |
| 03/16/04 | Marini, L | Analysis of CHG's document request. Analysis of strategy. | 0.20 |
| 03/16/04 | Potter, P | Prepare filing (praecipe etc.) regarding deposit control account agreement (1.0). Rule 2004 order compliance - analyze order and correspond to Hartman and Nichols (.20). Analyze CHG transfers (1.0). Discovery and preparation for depositions (2.80). Analyze and begin responses to P. Donohue's discovery request (1.50). Analyze and develop case strategy re imputed notice and scope of authority to receive offers and summary judgment strategy (2.80). | 9.30 |
| 03/16/04 | Catliota, T | Analysis of legal summary judgment and deposition issues; analysis of summary judgment issues with Patrick Potter. | 2.70 |
| 03/16/04 | Marini, L | Draft 2004 supplement for P. Shin. | 1.90 |

CAPITOL HILL GROUP                                September 23, 2004
23954-0026                                        Invoice No: ******
PAGE 20

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/16/04 | Marini, L | Analysis of strategy regarding filing second motion for summary judgment. Continue and finalize research on imputed notice and applicability to case. Draft motion for summary judgment. | 4.80 |
| 03/17/04 | Marini, L | Finalize motion to modify scheduling order and file same. | 0.20 |
| 03/17/04 | Marini, L | Research whether offer must be accepted to the person who made it. | 0.70 |
| 03/17/04 | Marini, L | Analysis of strategy. | 0.30 |
| 03/17/04 | Marini, L | Analysis of CHG's opposition to motion for summary judgment. | 0.30 |
| 03/17/04 | Marini, L | Continue draft, revise, incorporate T. Catliota's edits, finalize and file second motion for summary judgment. Discrete research on imputed notice. | 4.00 |
| 03/17/04 | Potter, P | Drafting documents to be filed with second summary judgment motion (motion to modify schedule; motion for expedite treatment, etc.) (2.0). Correspond to P. Donohue re discovery (.30). Discovery production, review documents and determine responsiveness (2.70). Analyze supplemental opposition (1.0) | 6.00 |
| 03/17/04 | Catliota, T | Revise and edit motion for summary judgment; analysis of issues re: summary judgment and strategy with P. Potter | 3.40 |
| 03/17/04 | Marini, L | Review files for document production. Coordinate with staff. | 0.50 |
| 03/18/04 | Marini, L | Analysis of CHG's opposition to motion for summary judgment. | 0.80 |
| 03/18/04 | Marini, L | Organize and compile all files for CHG's document review. Coordinate with staff. | 0.70 |

CAPITOL HILL GROUP                                    September 23, 2004
23954-0026                                           Invoice No: ******
PAGE 21

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/18/04 | Marini, L | Draft motion to examine Hankook. Revise motion to examine P. Shin. Analysis of 2004 issues. | 1.90 |
| 03/18/04 | Marini, L | Draft, revise and file reply to CHG's opposition to modify scheduling order. | 0.90 |
| 03/18/04 | Marini, L | Analysis of timesheets regarding copyright dispute. | 0.30 |
| 03/18/04 | Potter, P | Telecons with S. Moore re producing MT minutes re CHG (.10); analyze discovery and SJ strategy (1.30); confer with T. Petty re his producing documents (.10). Document production (5.30); draft and file response to CHG's opposition to modify scheduling order (.50); strategy discussions with T. Catliota (.30) and L. Marini (.30). | 7.90 |
| 03/18/04 | Catliota, T | Analysis of pleadings and strategy and conference with Patrick Potter. | 0.90 |
| 03/18/04 | Marini, L | Draft letter to D. Hartman re P. Shin's deposition. | 0.30 |
| 03/18/04 | Marini, L | Research issues relative to CHG's opposition (waiver of rights and equitable defenses). | 2.80 |
| 03/19/04 | Catliota, T | Analysis of issues re: discovery and strategy with Patrick Potter. | 0.70 |
| 03/19/04 | Potter, P | Document production (3.50); analyze facts relating to phone bills, contacts to test validity of CHG assertions and review bank statements received (1.50); analyze and edit 2004 pleadings on Hankook and P. Shin/CHG (.40); letters to D. Hartman and P. Donohue (.30). | 5.70 |
| 03/19/04 | Marini, L | Revise, finalize and file Supplement to 2004 Motion for Shin; 2004 Motion for Hankook. | 2.10 |

CAPITOL HILL GROUP                            September 23, 2004
23954-0026                                    Invoice No: ******
PAGE 22

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/19/04 | Marini, L | Analysis of e-mails in database. Coordinate CHG's review of documents. | 1.00 |
| 03/19/04 | Marini, L | Analysis of strategy. | 0.60 |
| 03/22/04 | Marini, L | Oversee and coordinate CHG's document review. | 0.50 |
| 03/22/04 | Marini, L | Research agency issues: imputed notice; party that communicates offer gets response; method of acceptance. | 5.00 |
| 03/22/04 | Marini, L | Review and analyze documents selected by CHG. | 0.70 |
| 03/22/04 | Marini, L | Draft letter to Stephen Nichols. | 0.20 |
| 03/23/04 | Marini, L | Analysis of missing production from CHG. Discuss with D. Hartman and P. Potter. Contact (2x) Judge's chambers and coordinate status conference. Draft letter to D. Hartman. Analysis of orders entered by Court today. Review documents from CHG. | 1.50 |
| 03/23/04 | Marini, L | Analysis of transcripts from March 8, 2004 hearings. | 0.80 |
| 03/23/04 | Marini, L | Oversee and coordinate CHG's document review. | 0.40 |
| 03/24/04 | Marini, L | Assist with preparation for deposition of P. Potter. | 0.50 |
| 03/24/04 | Marini, L | Research Hankook's registered address. Calls with Peter Vay re same. | 0.20 |
| 03/24/04 | Potter, P | Prepare for deposition (1.30). Deposition (6.00). Post-deposition analyses and strategy (1.0). | 8.30 |
| 03/24/04 | Marini, L | Research "waiver" and "equity" issues raised in CHG's opposition. | 1.90 |
| 03/24/04 | Marini, L | Analysis of bank statements for CHG. | 0.70 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 23

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/24/04 | Vay, P | Per Luis Marini, sought company information regarding Hankook Verlag(e)s and their registered agent. Conducted searches in state secretary of state filings, news, fictitious business name, and other company databases. | 0.70 |
| 03/24/04 | Catliota, T | Prepare for and meet with Patrick Potter prior to deposition; attend and defend Patrick Potter deposition; conference with Patrick Potter after deposition. | 8.30 |
| 03/25/04 | Catliota, T | Give assignment to Luis Marini re: agency authority to accept counter offers. | 0.40 |
| 03/25/04 | Marini, L | Review bank statements produced by P. Shin. | 0.40 |
| 03/25/04 | Marini, L | Research cases where client waives certain rights in contract negotiations with attorney. | 1.00 |
| 03/26/04 | Marini, L | Review transcripts from March 2, 2004 hearings. | 1.10 |
| 03/26/04 | Marini, L | Draft and serve subpoena for Hankook. Draft and serve subpoena for CHG. | 1.20 |
| 03/26/04 | Marini, L | Research cases where client waives certain rights in contract negotiations with attorney. Research cases where client waives right to object to fee statements. Analysis of strategy. Review documents produced by CHG. | 2.50 |
| 03/26/04 | Potter, P | Analyze documents produced by MedLink, especially transfers by Medlink to CHG and additional analyses of cell phone records. | 3.20 |

CAPITOL HILL GROUP
23954-0026
PAGE 24

September 23, 2004
Invoice No: ******

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/29/04 | Potter, P | Analyze 3/2 and 3/8 transcripts (1.0). Analyze pleadings and legal issues in preparation for anticipated reply and for 4/2 hearing (1.60). Analyze transcript of deposition (1.3); and analyze opposition to second summary judgment (.70). | 4.60 |
| 03/29/04 | Marini, L | Analysis of transcript from P. Potter's deposition. | 1.40 |
| 03/29/04 | Marini, L | Analysis of memorandum supporting GSE's confirmation of its plan. FUCUs: impact on return of funds to CHG for payment to SP. | 0.70 |
| 03/29/04 | Marini, L | Research whether offeree must communicate acceptance of the offer to the person who made the offer. | 1.30 |
| 03/30/04 | Catliota, T | Review CHG pleading in opposition to summary judgment and affidavit; analysis of same with P. Potter. | 1.30 |
| 03/30/04 | Marini, L | Analysis of CHG's motion to reconsider 2004 order. Analysis of Fremont, Centennial and the title company's affidavit. Analysis of December 2003 e-mails. | 0.90 |
| 03/30/04 | Marini, L | Research standard courts use in evaluation contracts for legal services. | 1.00 |
| 03/30/04 | Marini, L | Research case law on whether doctrine of imputed notice applies to non-attorney-agents. Draft e-memo re same. | 1.50 |
| 03/30/04 | Potter, P | Analysis outlining ideas/response to opposition to second motion for summary judgment; telecons with J. Perras and M. Maloney and draft affidavits; begin drafting reply (cover CHG's argument #2 today). | 6.40 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 25

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 03/30/04 | Marini, L | Analysis of notices sent out to CHG regarding fee applications. Analysis of e-mails during copyright dispute. Analysis of timesheets during copyright dispute. | 1.00 |
| 03/31/04 | Marini, L | Analysis of CHG's cases, draft summary of same. | 0.90 |
| 03/31/04 | Marini, L | Review statement of additional facts, attacking inconsistencies in CHG's opposition. | 0.30 |
| 03/31/04 | Marini, L | Analysis of strategy for April 2, 2004 hearing. | 0.30 |
| 03/31/04 | Marini, L | Review, edit, and revise reply to CHG's opposition. Prepare exhibits. | 2.90 |
| 03/31/04 | Catliota, T | Edit Shaw Pittman reply brief. | 1.00 |
| 03/31/04 | Marini, L | Research whether, if principal gives agent task of making offer, offeree must communicate acceptance / rejection to that particular agent. | 1.00 |
| 03/31/04 | Potter, P | Drafting Reply brief (5.0); drafting and analyzing and editing Statement regarding Fremont closing and analyzing documents regarding same (4.0). | 9.00 |
| 03/31/04 | Marini, L | Research elements of defense for mistake of fact and mistake of law. Analysis of case law. | 1.00 |
| 03/31/04 | Marini, L | Draft opposition to motion to reconsider order allowing examination of P. Shin. | 0.70 |
| 03/31/04 | Marini, L | Research whether, after finding valid, binding contract, court can disregard immaterial terms. | 1.00 |
| 04/01/04 | Catliota, T | Edit Reply Brief for filing; analysis of Reply Brief issues with Patrick Potter. | 1.50 |

CAPITOL HILL GROUP                                September 23, 2004
23954-0026                                        Invoice No: ******
PAGE 26

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/01/04 | Potter, P | Drafting and finalizing 2 pleadings: reply and closing statement timing/misleading statements by D. Hartman (4.50). Prepare for April 2nd hearing on summary judgment (3.0). | 7.50 |
| 04/01/04 | Marini, L | Edit, revise and finalize reply to opposition to motion for summary judgment. Edit, revise and finalize statement of D. Hartman's representations. Prepare all exhibits. | 4.30 |
| 04/02/04 | Catliota, T | At court attending hearing on Summary Judgment. | 3.50 |
| 04/02/04 | Potter, P | Prepare for, travel to/from and argue second summary judgment motion (5.5). Letter to D. Hartman re documents not produced (.30); email to D. Hartman re $250k freeze (.20); analyze and develop ongoing/future strategy and to do items and (separately) call with S. Myers (2.0). | 8.00 |
| 04/02/04 | Marini, L | Prepare for (prepare exhibits, documents) travel to/from and attend summary judgment hearing. | 3.50 |
| 04/05/04 | Potter, P | Call from S. Myers re hearing on motions to reconsider and arrange notice (.10); attention to opposition to 2004 reconsideration (.10); and summary judgment order (.10). | 0.30 |
| 04/05/04 | Marini, L | Draft opposition to motion for reconsideration of Rule 2004 exam. | 0.50 |
| 04/06/04 | Marini, L | Analysis of strategy. | 0.30 |

CAPITOL HILL GROUP                                    September 23, 2004
23954-0026                                           Invoice No: ******
PAGE 27

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/06/04 | Potter, P | Draft and edit and finalize for filing opposition to motion for reconsideration on oral exam of Peter Shin and ancillary filing, and serve same (2.30). Telecons with S. Myers (.10) and S. Nichols (.10) re hearing schedules. Draft final order on summary judgment and analyze pleadings, procedures to incorporate into same, finalize and file, and correspondence/service fax and pdf e-mail of same (1.60).  Telecon with D. Early of U.S. Trustee (.10).  Begin breaking out pre December and post November bills for separate fee hearings, and analyze bill of cost rules (.70=1/2 of time spent). | 4.90 |
| 04/07/04 | Potter, P | Correspondence from/with D. Hartman (.10). Strategy on 2004 exam, subpoenas (.50). Letter to S. Nichols (.10). | 0.70 |
| 04/07/04 | Marini, L | Draft and serve subpoena on P. Shin. Research local rules on bill of costs. Analysis of strategy for case. | 0.70 |
| 04/08/04 | Marini, L | Discuss strategy with P. Potter.  Revise letter to judge. | 0.40 |
| 04/08/04 | Potter, P | Fee application:  preparing exhibits (1.0). Analyze CHG's motion on proposed order (.30). Letter to J. Teel re CHG's motion re proposed order (.40), and calls with clerks (.10). Draft notice and cos, finalize and file (.30). | 2.10 |
| 04/09/04 | Marini, L | Research whether motion for reconsideration provides a stay of order. | 0.50 |
| 04/09/04 | Potter, P | Analyze CHG's motion to quash, and begin outlining response (1.00); telecons with courtroom deputy (.10).  Analyze court's memorandum and order on final order re contract issues (.30). | 1.40 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 28

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/09/04 | Marini, L | Analysis of court's decision denying CHG's request to modify summary judgment order. | 0.30 |
| 04/11/04 | Marini, L | Research whether a motion for reconsideration serves as a stay of an order. | 1.10 |
| 04/12/04 | Potter, P | CHG/Emergency hearing by CHG. Prepare for hearing (1.0). Travel to/from hearing and participate in same (3.3). Correspondence to D. Hartman (.20). Developing and analyzing future collection strategy (1.0). Prepare hearing notice for May 4th and analyze fee application information for presentation to court (1.0). | 6.50 |
| 04/12/04 | Marini, L | Prepare bill of costs. Review Fed. R. Civ. P. 54. Analysis of pre-petition bills. | 0.40 |
| 04/13/04 | Potter, P | Analyzing bank statements between "Shin Entities" to assess potential recoveries and potential wrongfully removed funds, with focus on 11/25 $500k transfer to CHG. | 0.50 |
| 04/14/04 | Catliota, T | Analysis of expert witness issues and upcoming hearing and potential exclusion of report. | 0.40 |
| 04/14/04 | Marini, L | Draft motion for attorneys' fees. Revise research on cases where courts' award fees to party prevailing on attack on fee application. | 0.70 |
| 04/14/04 | Marini, L | Review notices for hearing and chart on fees. Analysis of strategy. | 0.20 |
| 04/14/04 | Marini, L | Analysis of settlement proposal and counteroffer from CHG. Analysis of strategy. | 0.30 |
| 04/14/04 | Marini, L | Draft bill of costs. | 0.10 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 29

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/14/04 | Potter, P | Drafting, editing and revising notices of fee hearings; drafting orders; calculating fees and expenses for notices and orders; analyze CHG settlement offer of 4/14/04, and develop strategy for response; draft chart for all CHG fees, expenses and payments; call with S. Myers re 4/20 hearing; supervise filing; execute service; draft, edit and send letter to D. Hartman rejecting CHG's offer; analyze issues on bill of costs and motion to recover fees under federal rules. | 5.00 |
| 04/14/04 | Marini, L | Reconciliation, with accounting, of pre-petition amounts due. | 0.10 |
| 04/15/04 | Marini, L | Prepare binder with all invoices and timesheets and coordinate with accounting and legal assistants. | 0.40 |
| 04/15/04 | Marini, L | Prepare all files and exhibits for hearing on 4/20. | 0.60 |
| 04/15/04 | Marini, L | Prepare chart with all fees per matter per month. Discuss with P. Potter. | 0.30 |
| 04/15/04 | Marini, L | Revise and edit notice of hearings (for fee applications) and fee chart. | 0.30 |
| 04/15/04 | Marini, L | Analysis of comparison of attorneys present at hearing between DSMO and SP. Discuss with P. Potter. | 0.20 |
| 04/15/04 | Marini, L | Reconcile accounting's report with fee applications. | 0.30 |

CAPITOL HILL GROUP                                  September 23, 2004
23954-0026                                          Invoice No: ******
PAGE 30

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/15/04 | Potter, P | Review pleadings received by e-mail (court's) (.40). Developing litigation strategy on fee application (.40). Revisions to proposed court orders to add language on other applications (.30). Analyze security agreement issues (.30). Review files and e-mails in light of D. Hartman's letter and complaints about SHPDA work (.90). Drafting proffers/testimony for fee application hearing on 4/20/04, and reviewing files to analyze and provide specific details (5.70). | 8.00 |
| 04/15/04 | Catliota, T | Attention to testimony of Patrick Potter at upcoming hearing including analysis potential proffers and/or affidavit. | 0.50 |
| 04/15/04 | Marini, L | Revise and edit P. Potter's proffer for fee application. | 0.60 |
| 04/16/04 | Potter, P | Prepare for fee application hearing by additional drafting of proffers, and analyzing, pulling exhibits, and analyzing rules on proffers versus affidavits (5.70), and by reviewing pleadings filed in connection with this litigation (.70). | 6.40 |
| 04/16/04 | Tapia, Z | Arriving early at 8am and printing out invoices and incorporating them into binder compiling years 2002 through 2003 by month and matter; replacing clean copies with manuscript copies in binder (for Bankrupcy practice group). | 3.00 |
| 04/19/04 | Catliota, T | Review and edit proffer of Patrick Potter. | 1.10 |

CAPITOL HILL GROUP
23954-0026
PAGE 31

September 23, 2004
Invoice No: ******

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/19/04 | Potter, P | Preparing for fee application hearing: Additional analysis, edits and drafting of provisions for proffers, compiling additional exhibits, and drafting ancillary filings (praecipes, etc.), finalize and supervising filing (5.0). Extended analysis of all bills through November 2003, compiling same and preparing analyses if required by court (charts, etc.) (5.0). | 10.00 |
| 04/19/04 | Wagner, C | Prepared binder containing case work related invoices for L. Marini and P. Potter | 4.50 |
| 04/19/04 | Tapia, Z | Printing out new invoices and passing on the information and the packets to project assistant Cecilia Wagner for completion of the project. | 1.00 |
| 04/20/04 | Potter, P | Prepare for fee application hearing by reviewing specific materials, time records, etc. (1.5). To bankruptcy court, review files while waiting for application to be called, argue matter, travel to office and post hearing analysis/strategy (2.80). Analyze files regarding issue that came up during hearing, including satisfaction of SP's pre-petition claim out of 12/16 funds (.30). Develop strategy for next fee application hearing (.30). Letter to D. Hartman and P. Donohue re settlement, additional edits and send (.70). Attention to files (.30). | 5.90 |
| 04/20/04 | Marini, L | Draft motion for attorneys' fees. Review case on award of attorneys' fees upon successful defense of fee application. | 1.20 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 32

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/20/04 | Marini, L | Analysis of hearing and strategy with P. Potter. Calls to D.C recorders' office. Research procedure for recording judgment. Calls to clerk to certify judgment. Coordinate with legal assistants. Record judgment. | 2.10 |
| 04/20/04 | Catliota, T | Attend court hearing on Shaw Pittman fee application. | 2.40 |
| 04/20/04 | Marini, L | Analysis of invoices and reconciliation of same with P. Potter.  Coordinate with accounting. | 1.30 |
| 04/21/04 | Marini, L | Discuss with P. Potter notes on statements made by P. Donohue regarding copyright dispute and write e-mail re same. | 0.20 |
| 04/21/04 | Potter, P | Attention to settlement received and call with C. Miles re demand for affidavit and threat of subpoena (.50).  Analyze garnishment options (.20). | 0.70 |
| 04/21/04 | Marini, L | Research process for taking a federal judgment and garnishing accounts in D.C. | 0.60 |
| 04/22/04 | Marini, L | Draft, revise and file bill of costs. | 0.80 |
| 04/22/04 | Potter, P | Collection analysis, including garnishment of accounts (substance and process), bill of costs review, review motion for fees, and initial analysis of stay issues (1.70). Analyze motion for stay pending appeal (.30). Draft opposition to stay pending appeal, edit and analyze and finalize with correspondence (2.0). | 4.00 |
| 04/22/04 | Marini, L | Draft, revise and file motion for attorneys fees. | 1.60 |
| 04/22/04 | Marini, L | Analysis of motion to stay filed by CHG and strategy. | 0.20 |

CAPITOL HILL GROUP                                  September 23, 2004
23954-0026                                          Invoice No: ******
PAGE 33

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/23/04 | Marini, L | Draft and file writ of attachment. Calls (3) to clerk regarding same. | 0.50 |
| 04/23/04 | Potter, P | Analyze court order/memo, calls and correspondence with L. Marini, D. Hartman and C. Miles. | 0.50 |
| 04/23/04 | Marini, L | Review decision entered by court on CHG's request for a stay. Discuss with P. Potter. Call from D. Hartman re same. | 0.40 |
| 04/23/04 | Marini, L | Draft letter to Cassidy with certain documents. | 0.20 |
| 04/23/04 | Nye, E | Research re: registered agent for The National Capital Bank of Washington for L. Marini. | 0.30 |
| 04/23/04 | Marini, L | Draft letter to S. Nichols re Shin's attendance. | 0.10 |
| 04/26/04 | Marini, L | Calls to court regarding writ of attachment. Calls to server regarding same. Issue writ and coordinate service on bank. Draft letter to bank. Discuss with P. Potter. | 0.80 |
| 04/26/04 | Marini, L | Draft letter to S. Nichols re withdrawal of trial subpoena. | 0.10 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 34

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/26/04 | Potter, P | Revise orders on fees. Organize settlement letters and prepare for hearing on fee application (1.0). Prepare for hearing on motion for reconsideration of DACA dispute (.30). Analyze law on stay denied appellate review - abuse of discretion (.20). Read and strategize re motion of CHG (filed today) on emergency motion to reconsider order denying stay pending appeal (.40). Analyze additional stay issues: rules and standard of review (.50), edit opposition to emergency motion for reconsideration (.30), and calls from/to S. Myers re hearings (.10). Compiling documents for hearing (.10). | 2.90 |
| 04/26/04 | Marini, L | Research standard for reviewing a bankruptcy court's order denying a stay. | 0.40 |
| 04/26/04 | Marini, L | Draft, revise and file opposition to CHG's motion to reconsider denial of stay. | 0.70 |
| 04/26/04 | Marini, L | Research issue of whether a stay pending appeal is discretionary or automatic upon the posting of a bond. | 0.40 |
| 04/27/04 | Marini, L | Draft letter to National Bank regarding garnishment. | 0.20 |
| 04/27/04 | Marini, L | Analysis of hearings to date and records from each. | 0.30 |

CAPITOL HILL GROUP                                September 23, 2004
23954-0026                                        Invoice No: ******
PAGE 35

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 04/27/04 | Potter, P | Prepare for hearings (1.0). To Court, prepare for hearing while in courtroom, argue hearings, draft order and go over with D. Hartman, put on record, present to court, return to office (6.30). Analyze results of hearings (.10); assign withdrawal of garnishment on bank (.10), voice mail from D. Hartman and analyze response (.10), attention to files (.10), developing immediate strategy (.10). Analyze 8000 rules on appeals (.30), and additional analysis of calendar deadlines for CHG and SP (.30). | 8.40 |
| 04/28/04 | Potter, P | Analyze legal issues on joint account; correspondence with D. Hartman and calls with Chevy Chase Bank general counsel. | 0.50 |
| 04/29/04 | Potter, P | Analyze D. Hartman's e-mails (to try to do deal with "escrow"), edit letter from NCB, draft exhibits, re-write the order (edit and send to D. Hartman), correspondence to D. Hartman, additional edits to NCB letter and send to D. Hartman. (1.60). Address account issues by calls with Chevy Chase Bank general counsel, call with J. Teel's law clerk re hearing, correspondence to D. Hartman on money market account (.30). | 1.90 |
| 04/30/04 | Marini, L | Analysis of strategy and review service issues re motion for attorneys' fees. | 0.30 |
| 04/30/04 | Potter, P | Analysis and edits to revised orders and various correspondence with D. Hartman. | 1.00 |
| 05/03/04 | Marini, L | Conference with D. Herndon re procedure for filing release of lien. Draft release of lien and coordinate filing. | 0.70 |

CAPITOL HILL GROUP                                      September 23, 2004
23954-0026                                             Invoice No: ******
PAGE 36

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 05/04/04 | Marini, L | Analysis of CHG's designation of record and issue for appeal. Draft supplemental designation of record. Revise and edit as per P. Potter's comments. | 1.50 |
| 05/04/04 | Larsen, V | Record Release of Judgment at DC Recorder of Deeds; obtain 1 certified copy of same; transmit to L. Marini | 2.00 |
| 05/04/04 | Marini, L | Research deference granted to bankruptcy judge when judge has been witness to almost all of the alleged facts. | 1.00 |
| 05/04/04 | Potter, P | CHG/Fees. Analyze CHG's designation, develop strategy for SP's counter designation and analyze what SP should include, and calls with clerk's office regarding trasmittal of record (2.3). Calls to NCB on joint account and e-mail D. Hartman regarding same (.20). | 2.50 |
| 05/04/04 | Marini, L | Analysis of Rule 8000s and local rules. Prepare all pleadings and files for designation of record. Call to transcript company. Call to court. | 1.20 |
| 05/05/04 | Potter, P | CHG/Fees. Begin working on appellate brief and background (standard of review etc) analysis. | 3.00 |
| 05/05/04 | Potter, P | CHG/Fees. Revise order (red-lined and clean) and send to D. Hartman, with calls to D. Hartman and S. Myers to set hearing if no agreement on placing funds back into court registry. | 0.50 |
| 05/05/04 | Marini, L | Finalize supplemental designation of record and file same. Calls to transcript company and court regarding transcripts and disks. | 0.30 |
| 05/05/04 | Marini, L | Analysis of strategy regarding appeal. | 0.30 |
| 05/05/04 | Marini, L | Research appeals on J. Teel's decision. | 0.20 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 37

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 05/06/04 | Potter, P | CHG/Fees. Continue working on appellate brief (1.2). Teleconferences with S. Myers and D. Hartman (and correspondence) on hearing regarding depositing funds to court, prepare outline of argument, travel to/from court, participate in hearing (1.10). | 2.30 |
| 05/06/04 | Marini, L | Draft and file notice of hearing for modification to the stay / bond order. | 0.30 |
| 05/07/04 | Potter, P | CHG/Fees. Continue working on appellate brief, and attention to docketing issues at District Court. | 2.00 |
| 05/07/04 | Marini, L | Calls (2x) to district court regarding status of appeals. | 0.20 |
| 05/07/04 | Marini, L | Review April 2nd hearing transcript. | 0.30 |
| 05/10/04 | Potter, P | CHG/Fees. Letter to D. Hartman. | 0.30 |
| 05/10/04 | Marini, L | Analysis of April 20th hearing transcript. | 0.40 |
| 05/12/04 | Marini, L | Prepare joint appendix. | 0.60 |
| 05/12/04 | Marini, L | Research and review cases decided by Judge Lamberth. Review appeals by Judge Lamberth. Analysis of judge's decisions. Analysis of strategy with P. potter. Revise motion to set hearing. | 2.90 |
| 05/12/04 | Potter, P | CHG/Fees/Appeal. Drafting appellate brief and developing appellate strategy including prompt hearing if necessary. | 7.50 |
| 05/13/04 | Potter, P | CHG/Fees. Drafting appellate brief for motion for summary affirmance. | 2.50 |
| 05/13/04 | Marini, L | Revise, edit, finalize and file motion to set oral argument. Draft order. Analysis of strategy. | 1.90 |
| 05/13/04 | Marini, L | Prepare joint appendix. | 1.00 |
| 05/14/04 | Marini, L | Analysis of settlement proposal. | 0.20 |

CAPITOL HILL GROUP                         September 23, 2004
23954-0026                                 Invoice No: ******
PAGE 38

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 05/14/04 | Marini, L | Draft supplement to motion to set hearing. Prepare joint appendix. Revise supplement, finalize and file (ECF). Analysis of strategy with P. Potter. | 2.70 |
| 05/14/04 | Potter, P | CHG/Fees. Analyses and drafting of summary affirmance papers. | 5.00 |
| 05/17/04 | Marini, L | Finalize joint appendix. | 0.40 |
| 05/17/04 | Potter, P | CHG/Fees. Drafting appellate brief and analyzing appeal strategy. | 6.30 |
| 05/18/04 | Marini, L | Research standard for summary affirmance. Review local district court rules. Analysis of strategy. | 0.80 |
| 05/18/04 | Potter, P | CHG/Fees. Drafting appellate brief, and analyzing the record to include in brief. | 5.00 |
| 05/19/04 | Potter, P | CHG/Fees. Analyses and drafting of appellate brief and summary affirmance papers. | 8.90 |
| 05/19/04 | Marini, L | Analysis of CHG's motion to extend time. Analysis of strategy with P. Potter. Draft opposition to CHG's motion. Revise same as per P. Potter's comments. Finalize and file (ECF). Research standard for reviewing bankruptcy court's exercise of independent duty to review fee applications. Review abuse of discretion standard. | 3.90 |
| 05/20/04 | Potter, P | CHG/Fees. Further analyses and drafting of appellate brief and summary affirmance papers. | 4.00 |

CAPITOL HILL GROUP                                  September 23, 2004
23954-0026                                          Invoice No: ******
PAGE 39

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 05/20/04 | Marini, L | Extensive review of brief and edit and revisions. Analysis of strategy with P. Potter. Research abuse of discretion issues and issues regarding bankruptcy court's (and trustee's) independent duty to review fee applications. Draft table of content and authorities. Prepare exhibits for brief. Revise motion for summary affirmance. | 5.80 |
| 05/21/04 | Potter, P | CHG/Fees. Analysis and edits of appellate brief. | 5.00 |
| 05/21/04 | Marini, L | Edit, revise and finalize memorandum (brief) and motion for summary judgment. File (ECF) same. Analysis of strategy. | 3.30 |
| 05/24/04 | Potter, P | CHG/Fees. Appeal status and developing strategy, review brief, analyze potential settlement, review appeal docket, review and analyze reply to opposition to motion to reset brief deadline. | 1.00 |
| 05/24/04 | Marini, L | Analysis of CHG's reply to Shaw Pittman's opposition to motion to enlarge. | 0.60 |
| 05/25/04 | Potter, P | CHG/Collection. Review bankruptcy and district court dockets. Review stay order for rights and calls to S. Myers and M. Wint regarding additional funds. Developing appeal strategy. Review minute order and develop and send response to D. Hartman. | 1.00 |
| 05/28/04 | Marini, L | Analysis of CHG's opposition to summary affirmance. Conference with P. Potter re same. | 0.80 |
| 05/28/04 | Potter, P | CHG/Fees. Review opposition to summary affirmance and outline points for response. | 0.50 |

CAPITOL HILL GROUP                           September 23, 2004
23954-0026                                   Invoice No: ******
PAGE 40

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 06/01/04 | Potter, P | CHG/Fees.  Legal analysis of arguments and drafting of Reply to Opposition to Summary Affirmance. | 3.30 |
| 06/01/04 | Marini, L | Edit and revise reply to CHG's opposition to motion for summary affirmance. Research decisions discussing delay tactics employed by appellee. Draft memorandum decision for court. Finalize and file (ECF) all. | 2.70 |
| 06/09/04 | Marini, L | Appeal.  Analysis of strategy regarding District Court appeal with P. Potter. | 0.20 |
| 06/09/04 | Marini, L | Appeal.  Analysis of CHG's Appellate Brief. | 1.00 |
| 06/10/04 | Marini, L | Appeal.  Detailed review of Shaw Pittman's brief. Edit, revise, finalize and file brief and exhibits (via ECF). Edit and finalize motion to exceed page limit. | 3.90 |
| 06/10/04 | Wagner, C | Reviewed Appellants Brief, printed out cases cited in such from Lexis, highlighted areas in cases that had been quoted in brief, photocopied and organized cases for L. Marini and P. Potter | 3.60 |
| 06/10/04 | Potter, P | CHG/Fees/Appeal.  Analyze appellate brief and other pleadings by CHG and work analysis and make outline of arguments and response (2.50); draft appellate brief inserts, edits, and anlayze current version of brief (7.1); draft motion for additional pages (.40). | 10.00 |
| 06/10/04 | Marini, L | Appeal.  Analysis of CHG's appellate brief. Conference with P. Potter regarding issues to be researched and strategy. | 1.50 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 41

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 06/10/04 | Marini, L | Appeal.  Research cases discusing the failure of appellant to cite to the record in its brief and actions taken by the court (.8). Research elements of economic duress, and defenses available (.6). Research scope of appellate reply and whether appellant can raise new arguments there (.8). Review all cases cited by CHG in its brief (1). Research cases refusing to consider argument not raised in the lower court (.5). Research cases discussing whether courts will scour the record when an appellant fails to cite to the record on its brief (.2). Research whether courts will impose sanctions on attorney for failure to cite to the record and make arguments for the first time on appeal (.2). | 4.10 |
| 06/11/04 | Marini, L | Appeal.  Draft reply to opposition to motion for summary affirmance. | 1.70 |
| 06/13/04 | Marini, L | Appeal.  Research cases on waiver of arguments not made to lower court. Research issues for reply. Draft reply to opposition to motion for summary judgment. | 1.60 |
| 06/14/04 | Marini, L | Appeal. Draft order for reply. | 0.20 |
| 06/14/04 | Marini, L | Appeal.  Draft reply to opposition to motion for summary affirmance. Discuss same with P. Potter, revise as per P. Potter's edits and file (ECF) same. | 4.40 |
| 06/17/04 | Marini, L | Appeal.  Analysis of reply brief and discuss with P. Potter. | 0.30 |
| 06/18/04 | Potter, P | Letter to D. Hartman on JA cites. | 0.10 |
| 06/18/04 | Marini, L | Appeal / CHG.  Discuss strategy with P. Potter. | 0.30 |

CAPITOL HILL GROUP                                        September 23, 2004
23954-0026                                               Invoice No: ******
PAGE 42

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 06/18/04 | Marini, L | Appeal.  Analysis of CHG's reply brief. Draft letter to D. Hartman regarding document cited in JA. Analysis of JA and documents and exchange e-mails with P. Potter regarding same. | 0.50 |
| 06/18/04 | Potter, P | Analyze Reply brief. | 0.50 |
| 06/21/04 | Potter, P | Additional/continued analysis and review of Reply Brief. | 0.30 |
| 06/30/04 | Marini, L | Analysis of strategy with P. Potter. | 0.30 |
| 08/03/04 | Marini, L | Detailed review of all invoices and bills. | 1.30 |
| 08/24/04 | Love, A | Review District Court opinion after conversation with L. Marini regarding emergency hearings. | 0.30 |
| 08/27/04 | Catliota, T | Analysis of cases and stay issues with L. Marini in preparation of anticipated hearing; emails with Patrick Potter re: same. | 1.20 |
| 08/30/04 | Catliota, T | Analysis of stay and related issues with Luis Marini in anticipation of hearing; review Motion to Reconsider; read Judge Teel's opinion re: Jurisdiction to Issue Stay and rules and related opinions concerning Rule 8015 and 8017; emails with Patrick Potter. | 2.10 |
| 08/30/04 | Marini, L | Calls to clerk (many) regarding payment of funds. Draft opposition to motion to stay (anticipated to be filed on emergency basis). | 0.90 |

CAPITOL HILL GROUP                          September 23, 2004
23954-0026                                  Invoice No: ******
PAGE 43

| Date | Name | Narrative | Hours |
|------|------|-----------|-------|
| 08/31/04 | Marini, L | Prepare for and travel to court for hearing (.5). Review motion for reconsideration and draft response (2). Conference with P. Potter regarding strategy (.5). | 3.00 |
| 08/31/04 | Catliota, T | Review documents prior to court hearing and go to court for hearing (that was canceled without prior notice); emails re: tactics and strategy. | 1.20 |
| | | Subtotal For: Fee Application Litigation | 721.10 |

| | | | |
|---|---|---|---|
| **Subtotal for Fee Application Litigation** | | **721.10** | **$ 259,927.00** |
| **Total Values** | | **750.20** | **$ 271,221.00** |

## TIME SUMMARY

| Name | Rate | Hours | Amount |
|------|------|-------|--------|
| Catliota, T | 475.00 | 67.40 | $ 32,015.00 |
| Potter, P | 440.00 | 384.50 | $ 169,180.00 |
| Petty, T | 435.00 | 0.60 | $ 261.00 |
| Jones, R | 450.00 | 1.00 | $ 450.00 |
| Love, A | 285.00 | 3.20 | $ 912.00 |
| Marini, L | 240.00 | 278.00 | $ 66,720.00 |
| Wagner, C | 110.00 | 8.50 | $ 935.00 |
| Tapia, Z | 90.00 | 4.00 | $ 360.00 |
| Nye, E | 85.00 | 0.30 | $ 25.50 |
| Larsen, V | 155.00 | 2.00 | $ 310.00 |
| Vay, P | 75.00 | 0.70 | $ 52.50 |
| Total for Professional Services | | 750.20 | $ 271,221.00 |

## EXPENSE SUMMARY

| Description | Amount |
|-------------|--------|
| Filing Fee | $ 51.50 |
| Court Costs | $ 3,054.98 |
| Courier | $ 1,760.94 |

CAPITOL HILL GROUP
23954-0026
PAGE 44

September 23, 2004
Invoice No: ******

| Description | | Amount |
|---|---|---|
| Air Express Delivery | $ | 30.58 |
| Outside Document Production | $ | 637.81 |
| Document Retrieval | $ | 596.12 |
| Local Transportation | $ | 192.00 |
| Real Property Costs | $ | 35.50 |
| Conducting Search | $ | 39.91 |
| Document Reproduction | $ | 6,329.40 |
| Long Distance Telephone | $ | 31.05 |
| Telecopier/Fax | $ | 486.00 |
| Postage | $ | 61.41 |
| Lexis Research | $ | 36,344.25 |
| In-house Catering | $ | 3.28 |
| Support Staff Overtime | $ | 20.00 |
| Total For Expenses | $ | 49,674.73 |

For Professional Services Through 08/31/2004          $  271,221.00

For Expenses Incurred Through 08/31/2004              $   49,674.73

**TOTAL AMOUNT DUE**                                  **$  320,895.73**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

ORIGINAL

IN RE: )
)
CAPITOL HILL GROUP, )
)
Debtor. )
)
_____)

Case Number 02-0359
Chapter 11

**FILED**

SEP 2 3 2004

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

PRAECIPE

**TO THE CLERK OF THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF COLUMBIA:**

The undersigned submits herein for filing in the above-captioned bankruptcy case and for the

delivery to the Court, the proposed Order (A) Directing Payment on April 23, 2004 Writ of

Attachment and (B) on April 22, 2004 Motion of Shaw Pittman for Attorneys' Fees and Costs

(taking into consideration the decision/remand of the District Court).

SHAW PITTMAN LLP

_____
Patrick J. Potter (DC Bar No. 426514)
Shaw Pittman LLP
2300 "N" Street, N.W.
Washington, D.C. 20037
(202) 663-8928

1

ORIGINAL

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

IN RE:                                                )
                                                      )
CAPITOL HILL GROUP,                                   )       Case Number 02-0359
                                                      )       Chapter 11
                          Debtor.                     )
                                                      )

**FILED**

**SEP 2 3 2004**

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

### Certificate of Service

I hereby certify that on September 23, 2004, a copy of (I) the Praecipe with the Proposed

Order (A) Directing Payment on April 23, 2004 Writ of Attachment and (B) on April 22, 2004

Motion of Shaw Pittman for Attorneys' Fees and Costs (taking into consideration the

decision/remand of the District Court) and a copy of (II) the Praecipe with the Proposed Order

Regarding Bill of Costs of Shaw Pittman LLP filed April 27, 2004 were delivered by facsimile,

pdf and regular mail to:

Donald R. Hartman
General Counsel
Capitol Hill Group
700 Constitution Ave., N.E.
Washington, D.C. 20002


                                        SHAW PITTMAN LLP


                                        _____
                                        Patrick J. Potter (DC Bar No. 426514)
                                        Shaw Pittman LLP
                                        2300 "N" Street, N.W.
                                        Washington, D.C.  20037
                                        (202) 663-8928

1

ORIGINAL

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

</div>

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAPITOL HILL GROUP, ) | **CASE NO. 02-0359** |
| ) | **Chapter 11** |
| Debtor. ) | |

<div align="center">

**ORDER REGARDING BILL OF COSTS OF**
**SHAW PITTMAN LLP FILED APRIL 27, 2004**

</div>

1.     On or about April 22, 2004, Shaw Pittman LLP ("**Shaw Pittman**") filed that certain Bill of Costs (Docket Entry No. 620) (the "**Bill of Costs**").

2.     No timely objection to the Bill of Costs was filed.

3.     Pursuant to the decision of the U.S. District Court in the cases of Capitol Hill Group v. Shaw Pittman, LLP, 2004 U.S. Dist. LEXIS 16386 (D. D.C. August 17, 2004), at *34-36, Shaw Pittman is entitled to recover its fees and expenses "for proceedings in front of the bankruptcy court as well as for proceedings in this Court." Id. at 34.  The foregoing is referred to herein as the "**Remand Ruling**."

4.     In the event that the costs contained in the Bill of Costs are awarded and paid to Shaw Pittman under the Remand Ruling or otherwise, then there is no need for the Court to rule on the Bill of Costs.

5.     Shaw Pittman, has requested that the Court enter this Order, and the Court finds good cause, including the interest of judicial economy, to enter this Order.

WHEREFORE, it is hereby

ORDERED, that, subject to the following ORDERED paragraph, this Court shall not take further action on the Bill of Costs pending a determination as to whether some or all of the costs

of Shaw Pittman contained in the Bill of Costs will be recovered by Shaw Pittman pursuant to

the Remand Order or otherwise; and it is further

  ORDERED, that notwithstanding the foregoing, paragraph, the Court may, sua sponte,

act upon the Bill of Costs, or Shaw Pittman may, on notice to Capitol Hill Group, request that the

Court rule on the Bill of Costs.

  It is so Ordered.

          _____
          S. Martin Teel, Jr.
          United States Bankruptcy Judge

Copes to:

Office of the U.S. Trustee
115 South Union Street
Suite 210
Alexandria, Virginia 22314

Patrick Potter
Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037

Donald Hartman
General Counsel
Capitol Hill Group
700 Constitution Avenue, N.E.
Washington, D.C. 20002

H. Patrick Donohue
204 Monroe Street, Suite 101
Rockville, Maryland 20850

# SUB-EXHIBIT 10

The decision below is signed as a decision of the court.

Signed: December 01, 2004.



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
CAPITOL HILL GROUP,            )     Case No. 02-00359
                               )     (Chapter 11)
                    Debtor.    )
                               )

SUPPLEMENTAL DECISION REGARDING
MOTION OF SHAW PITTMAN LLP FOR ATTORNEYS' FEES AND COSTS

In a prior oral decision of October 22, 2004, addressing the Motion of Shaw Pittman LLP for Attorneys' Fees and Costs, the court ruled that the debtor, Capitol Hill Group ("CHG"), owes Shaw Pittman LLP ("Shaw Pittman") $320,895.73 in attorney's fees and expenses. This decision supplements the court's prior oral decision.[1]

I

The parties are in agreement that only reasonable fees ought to be awarded Shaw Pittman. In the oral decision, the

---

[1] CHG objected to the form of judgment tendered by Shaw Pittman and tendered an alternative form of judgment. Shaw Pittman now acquiesces in CHG's form of judgment.

court failed to enunciate the test that guided the court's determination of the reasonableness of the fees to be awarded Shaw Pittman.  In <u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (D.C. Cir. 1980) the Court of Appeals set forth a "lodestar" approach for determining reasonable fees, which it has endorsed for use in bankruptcy matters.  <u>In re AOV Industries, Inc.</u>, 797 F.2d 1004 (D.C. Cir. 1986).  Under the lodestar method, the court multiplies the number of hours reasonably expended by a reasonable hourly rate.  The number of hours is determined by considering the total number of hours expended and disallowing unproductive time; the reasonable hourly rate is determined by determining the prevailing market rate in the relevant community.  <u>Murray v. Weinberger</u>, 741 F.2d 1423, 1427 (D.C. Cir. 1984).

The <u>Copeland</u> court recognized the twelve "lodestar" factors outlined in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), when determining the reasonableness of fees.  The factors are:

(1) time and labor required;

(2) novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the preclusion of other employment by the attorney

2

due to the acceptance of the case;

(5) the customary fee charged for like work;

(6) whether the fee sought is fixed or contingent;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship between the attorney and the client; and

(12) attorney fee award in similar cases.

Id. If the issue is one of state law arising under the parties' agreements, and not as an incident of the award of fees under the Bankruptcy Code, District of Columbia law similarly requires that fees be reasonable as determined by using the Johnson factors. See Ginberg v. Tauber, 678 A.2d 543, 551-52 (D.C. 1996), cert. denied, 519 U.S. 1077 (1997); Frazier v. Franklin Inv. Co., 468 A.2d 1338, 1341 n. 2 (D.C. 1983). This court had the Johnson factors in mind in its oral decision addressing the fees to be awarded here.

On the one factor upon which CHG appeared to focus the most, the court acknowledged that the fees awarded were

3

significant in relation to the amount at issue, and concluded

that, first, Shaw Pittman was entitled to legal representation

to enforce its contract rights even though such representation

might exceed the value of the contract, and, second, that CHG

was largely responsible--by raising defensive hurdles that

prolonged the litigation--for the extent of work required for

Shaw Pittman's attorneys to litigate the matter.

<div align="center">II</div>

CHG's objection that Shaw Pittman did not use billing

judgment deserves special consideration.  The court is

sensitive to the fact that Shaw Pittman's employment of itself

as counsel to pursue its claim presents a concern that Shaw

Pittman may not have exercised independent judgment in

pursuing its claims.  See Bond v. Blum, 317 F.3d 385, 400 (4th

Cir.), cert. denied, 540 U.S. 820 (2003) ("representation of a

law firm by one of its members presents an increased risk of

emotional involvement and loss of independence").  This is

particularly the case because Shaw Pittman was represented, in

significant part, by the same attorney who entered into the

contract with CHG for Shaw Pittman's fees not to be disputed.

Accordingly, the court has examined the filings by Shaw

Pittman for which it claims attorneys' fees.  As this court

acknowledged in addressing the likelihood of success on appeal

<div align="center">4</div>

in connection with CHG's motion for a stay pending appeal of the order ruling that a contract existed requiring CHG not to object to Shaw Pittman's fee applications, the law supporting the court's rulings "was extensively and convincingly briefed by Shaw Pittman in its motions for summary judgment." Even though Shaw Pittman's briefing of the issues was "extensive," the court, based on the following considerations, does not believe that Shaw Pittman, as counsel for itself, went overboard in litigating the matter.

Had Shaw Pittman, which was understandably irked by CHG's attempt to evade the contract not to contest the fee applications, employed outside counsel, it would have been entitled to demand zealous representation of its interests. In representing CHG during the case (on, for example, the Newmark and Holladay matters), Shaw Pittman filed similar extensive briefings of legal issues, and its filings here were no more zealously extensive. There is no evidence that Shaw Pittman attempted to run up fees. To the contrary, Shaw Pittman's attorneys pressed for a prompt resolution of the matter, and the blows they struck in attempting to arrive at that point were pressed fairly, albeit vigorously, within the permissible bounds of advocacy.

III

Working on this case prevented Shaw Pittman's attorneys from taking on or turning to work for other clients at its normal billing rates.  The proper measure of Shaw Pittman's attorneys' fees is thus properly based on its normal billing rates.

IV

In conclusion, the court will enter judgment in favor of Shaw Pittman as previously announced.

[Signed and dated above.]


Copies to:

Patrick J. Potter
Shaw, Pittman,
   Potts and Trowbridge
2300 N Street, NW
Washington, DC 20037

Donald R. Hartman
700 Constitution Avenue, N.E.
Washington, DC 20002

John Burns
6303 Ivy Lane
Suite 102
Greenbelt, MD 20770

Office of the U.S. Trustee
115 South Union Street
Suite 210
Alexandria, VA 22314

**FILED AND ENTERED**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA**

**DEC 2 – 2004**

Denise H. Curtis, Clerk
U. S. Bankruptcy Court for D.C.

IN RE:                                        )
                                              )
CAPITOL HILL GROUP,                           )          Case Number 02-0359
                                              )          Chapter 11
                                   Debtor.    )
                                              )

**ORDER GRANTING SHAW PITTMAN LLP'S MOTION SEEKING AN ORDER (I)
FINDING "EXCUSABLE NEGLECT" FOR SHAW PITTMAN'S FAILURE TO FILE A
CLAIM PRIOR TO THE PLAN DEADLINE AND (II) AUTHORIZING SHAW
PITTMAN LLP TO PURSUE ITS CLAIM OUT OF TIME PURSUANT TO THE
VEHICLE OF ADVERSARY PROCEEDING NUMBER 04-10069**

This matter came before the Court on Shaw Pittman LLP's Motion Seeking an Order (I)

Finding "Excusable Neglect" for Shaw Pittman's Failure to File a Claim Prior to the Plan

Deadline and (II) Authorizing Shaw Pittman LLP to Pursue its Claim Out of Time Pursuant to

the Vehicle of Adversary Proceeding Number 04-10069 (the "**Motion**").  Finding that Shaw

Pittman LLP ("**Shaw Pittman**") has demonstrated excusable neglect for its failure to file a claim

prior the bar date set in this bankruptcy case, and further finding good cause for approving the

Motion and the relief sought therein,

IT SHALL BE AND HEREBY IS

ORDERED, that the Motion is granted; and it is further

ORDERED, that Shaw Pittman LLP is authorized to prosecute Adversary Proceeding

Number 04-10069.

Dated: _December 1_, 2004          _S. Martin Teel_
                                   S. Martin Teel, Jr.
                                   United States Bankruptcy Judge

-1-

cc:    Patrick Potter
       Donald Hartman
       U.S. Trustee

Document #: 1434942 v.1

-2-

It is hereby
ORDERED that the Order set forth below is
hereby signed as an order of the court to be entered
by the clerk.



Signed: December 01, 2004.

_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
CAPITOL HILL GROUP,            )      Case No. 02-00359
                               )      (Chapter 11)
              Debtor.          )

JUDGMENT ON MOTION OF SHAW
PITTMAN LLP FOR ATTORNEYS' FEES AND COSTS

The court having heard the Motion of Shaw Pittman LLP for

Attorneys' Fees and Costs on October 21, 2004, and having

issued an oral decision from the bench on October 22, 2004,

which has been supplemented by a written decision of this

date, it is

ORDERED and ADJUDGED that Shaw Pittman LLP recover of the

debtor Capitol Hill Group $320,895.73 (consisting of $1,426.70

for fee application preparation and filing fees and expenses;

$10,231.57 for DACA fees and expenses; and $309,237.46 for fee

application litigation fees and expenses), with postjudgment

interest on the total judgment award as provided by 28 U.S.C.

§ 1961.  It is further

ORDERED and ADJUDGED that with respect to an earlier judgment entered on April 20, 2004 (awarding Shaw Pittman LLP fees as counsel for the debtor), the court declares that interest in the amount of $1,299.75 had been earned on that judgment prior to Shaw Pittman LLP receiving an amount equal to the principal amount of that judgment, and that Shaw Pittman LLP is entitled pursuant to that judgment to recover $1,299.75 in interest.

[Signed and dated above.]

Copies to:

Patrick J. Potter
Shaw, Pittman,
  Potts and Trowbridge
2300 N Street, NW
Washington, DC 20037

Donald R. Hartman
700 Constitution Avenue, N.E.
Washington, DC 20002

John Burns
6303 Ivy Lane
Suite 102
Greenbelt, MD 20770

Office of the U.S. Trustee
115 South Union Street
Suite 210
Alexandria, VA 22314

[End of Judgment]

SUB-EXHIBIT 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| CAPITOL HILL GROUP, | ) |
| | ) |
| Debtor. | ) |
| ———————————— | ) |
| | ) |
| CAPITOL HILL GROUP, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | )    Civil No. 05-97 (RCL) |
| | ) |
| SHAW PITTMAN LLP, | ) |
| | ) |
| Appellee. | ) |
| | ) |
| ———————————— | ) |

<u>MEMORANDUM OPINION</u>

        This matter comes before the Court on appeal from the bankruptcy court of the District of

Columbia.  Appellant Capitol Hill Group ("CHG") appeals the judgment on the motion of Shaw

Pittman for attorneys' fees and costs.  CHG appeals under Bankruptcy Rule 8001(a) and this

Court has jurisdiction under 28 U.S.C. § 158(a).  Also before the Court is Capitol Hill Group's

Motion For Extension of Time to File Appellant's Brief, Capitol Hill Group's Motion for

Extension to Time to File Brief to February 22, 2005 Based Upon Federal Holiday, Capitol Hill

Group's Motion for Extension of Time to File Reply Brief, and Shaw Pittman's Motion For

Leave to File Excess Pages in Connection With Appellee's Brief.  Upon consideration of the

appellate briefs of the parties, the appendix filed in support, the law, and the facts of this case, the

Court shall AFFIRM the judgment of the bankruptcy court.[1]  The Court shall GRANT Capitol

Hill Group's motions for an extension to file opening brief and reply brief, and shall grant Shaw

Pittman's motion to file excess pages.

CHG appeals the judgment ordering Shaw Pittman LLP's recovery from Capitol Hill

Group, of $320,895.73, with post judgment interest in the amount of $1299.75.  In its appeal of

this judgment, CHG brings one issue for consideration by this Court: whether the bankruptcy

court erred in declining to properly impose a lodestar analysis on the fees and costs sought by

appellee.  Brief for CHG at 5.


Background

Most of the relevant prior history of the two parties is set out in a August 17, 2004

decision by this Court.  Capitol Hill Group v. Shaw Pittman, 313 B.R. 344 (D.D.C. 2004).  CHG

filed for bankruptcy in February 2002.  Shaw Pittman served as bankruptcy counsel to CHG upon

commencement on its Chapter 11 case.  From the period of February 2002 to November 2003,

Shaw Pittman billed CHG approximately $1.1 million in fees but did not receive any payments.

A series of negotiations in regard to payment ensued culminating in an email exchange on the

morning of December 15, 2003.

In its 2004 decision, this Court concluded that the Section 1129 Agreement made on

December 15 included the term that CHG would not object to Shaw Pittman's fee application.

As part of this agreement Shaw Pittman received an immediate partial payment of the fees,

CHG's promise that it would not object to Shaw Pittman's fee application (and that it would pay

---

[1]The Court has decided, in compliance with Bankruptcy Rule 8012, that oral argument is not needed and that the Court is able to resolve the appeal upon consideration of the briefs of the parties and the record from the court below.

Shaw Pittman if they did object), and the grant of a lien against accounts receivable. On

December 17, CHG and Shaw Pittman signed a security agreement, as required by the Section

1129 Agreement, granting the lien against the accounts receivable.

On January 12, 2004 Shaw Pittman filed its Second Interim and Final Fee Application

For Compensation and Reimbursement of Expenses as Counsel for the Debtor in which Shaw

Pittman requested court approval for all fees still unapproved. CHG filed a written objection to

all fees billed by Shaw Pittman in the case on January 20. On April 20, 2004, the bankruptcy

court issued an order awarding attorneys fees and costs to Shaw Pittman, as requested in their

January 12 Fee Application. CHG filed a notice of appeal on April 22, contesting, *inter alia*, the

April 20 order. Also on the 22nd Shaw Pittman filed their second Motion for Attorneys' Fees

and Costs pursuant to FRCP 54(d)(2), which CHG opposed. This motion was for fees and costs

Shaw Pittman incurred in connection with its defense against CHG's opposition to the fee

applications in December, 2003. On September 23, Shaw Pitman supplemented this motion with

a detailed proposed judgment of fees and costs. This Court issued its memorandum opinion of

2004, affirming all decisions of the bankruptcy court as to the March 2, April 9 and April 20

rulings, orders and judgments. This Court also ordered that the case be remanded to the

bankruptcy court for further proceedings consistent with the opinion, including execution of the

bankruptcy court's April 20, 2004 award of attorney's fees and for a separate award of expenses

to Shaw Pittman pursuant to the contract between the parties and Shaw Pittman's April 22

motion. Capitol Hill Group, 313 B.R. at 357.

The bankruptcy court held hearings on September 29 and October 21 to determine

appropriate fees and costs. Mr. Patrick Potter of Shaw Pittman was the only witness to testify at

the October 21 hearings. During this hearing Shaw Pittman accounted the requested costs and

fees in their April 22 fee application and September 23 proposed judgment. CHG did not

provide any witnesses at trial. The next day the bankruptcy court issued a two hour bench

opinion, in which it both awarded Shaw Pittman its proposed judgment, as well as addressing

CHG's objections. The court also issued a supplemental written decision on December 1. The

bankruptcy court conducted a hearing on CHG's request for stay pending appeal on January 7.

The bankruptcy court issued its opinion as to the stay on January 19. CHG appeals the order

awarding costs and fees on their contention that the bankruptcy court erred in not using a proper

lodestar analysis.


Standard of Review

       As a general rule, in an appeal from a decision of the bankruptcy court, the burden of

proof is on the party that seeks to reverse the bankruptcy court's ruling, judgment or order. In re

Johnson, 236 B.R. 510, 518 (D.D.C.1999) (citing Anderson v. Bessemer City, 470 U.S. 564,

573-74, (1985)). The standard of review appropriate to the issues raised on appeal depends on the

context of the decisions rendered and the nature of the decision. CHG's appeal of the October 22

and Dec 1 order of the bankruptcy court awarding fees and expenses to Shaw Pittman is reviewed

under the abuse of discretion standard. See Capitol Hill Group v. Shaw Pittman LLP, 313 B.R.

344, 349 (D.D.C. 2004); In re AOV Industries, Inc., 797 F.2d 1004, 1010 (D.C. Cir. 1986). To

the extent the bankruptcy court made any factual findings to support its award these are reviewed

under the clearly erroneous standard. Id.; Bankruptcy Rule 8013 (2004).

       An appellate court defers to the trial court's judgment because an appellate court is not

"well situated to assess the course of litigation the quality of counsel." Copeland v. Marshall, 641

F.2d 880, 901 (D.C. Cir. 1980) (en banc); see also Founding Church of Scientology of

Washington, D.C., 802 F.2d 1448, 1457 (D.C. Cir.1986). This, of course, does not mean that

this Court will abandon its obligation to review fee awards. There are certainly some instances

when a remand would be necessary, such as when the trial court awards fees and costs without

adequately articulating underlying reasons, or bases its decision on improper factors. See, e.g.,

Evans v. Sheraton Park Hotel, 503 F.2d 177, 188 (D.C. Cir.1974); Lindy Bros. Builders, Inc. v.

American Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976) (en banc.).


Issue On Appeal

        CHG argues that the "Bankruptcy court erred in declining to properly impose a lodestar

analysis on the fees and costs sought by appellee." CHG Brief at 7. In their reply brief, CHG

changes the issue to "[w]hether Shaw Pittman is seeking to establish a lodestar basis on appeal,

rather than in their motion filed almost a year ago pursuant to Fed R. Bankr. P. 7054 in the

Bankruptcy Court" CHG Reply Brief at 4. CHG also addresses this issue in their opening brief,

where they argue that Shaw Pittman must submit a detailed fee application for their April 22

motion, in compliance with 11 U.S.C. § 330, 331 and Local Rule 2016. CHG Brief at 10; D.C.

LBR 2016-1. Simply stated, neither of these provisions apply to the case at bar. These sections

of the Code and Local Rules address fees and costs for counsel of a party during a bankruptcy

proceeding. The subject of Shaw Pittman's April 22, 2004 Fee Application was the costs and

fees they incurred in litigating the breach of contract issue. When CHG objected to the initial fee

application (made in December 2003), they breached their agreement not to object to any fees.

See Capitol Hill Group v. Shaw Pittman LLP, 313 B.R. 344 (D.D.C. 2004). Pursuant to this

Court's 2004 decision, Shaw Pittman had the legal right to litigate this issue, and did so, and the

April 22 motion was one made for attorney costs under the Federal Rules of Bankruptcy

Procedure 7054 and the Federal Rules of Civil Procedure 54, neither of which require any of the specificity which CHG contends.

CHG also contends that Shaw Pittman has never alleged a statutory provision for their recovery of attorneys' fees and costs. CHG Brief at 6. In the 2004 opinion, this Court affirmed the bankruptcy court's ruling that Shaw Pittman was entitled to collect fees, and this Court's opinion was not appealed. Capitol Hill Group, 313 B.R. at 358. The issue on appeal is not whether Shaw Pittman is entitled to costs and fees, but whether the lower court's judgment on those fees was within that court's discretion.

Under the lodestar analysis, the court considers the number of hours of service reasonably committed to the case multiplied by the attorney's reasonable rates. The product can be adjusted to reflect the degree of skill and difficulty involved in the case, the degree of its urgency, its novelty, and the reputation of the attorney. See Laffey v. Northwest Airlines, 572 F. Supp. 354, 361 (D.D.C. 1983). Often, in deciding what might be "reasonable", courts look to a set of factors set out in Johnson v. Georgia Highway Express Inc., 488 F.2d 714 (5th Cir. 1974). These factors include: the time and labor required, the novelty and difficulty of the questions, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases. Id. at 717-19. CHG contends that the lower court, neither provided a formal lodestar analysis nor addressed the Johnson factors in deciding the reasonableness of the fees and costs in Shaw Pittman's September 23 Proposed Judgment. CHG Brief at 4. CHG states the court failed to incorporate a lodestar analysis in its judgment, but

provides no binding authority which requires the court to do so. See CHG Brief at 9. The Court

of Appeals explained in Copeland, that not every piece of paper must be examined or addressed

when determining attorneys' fees. Copeland v. Marshall, 641 F.2d 880, 903 (D.C. Cir. 1980).

("[T]he en banc Court of Appeals for the Third Circuit observed that an appellate court does not

intend that a district court, in setting an attorneys' fee, become enmeshed in a meticulous analysis

of every detailed facet of the professional representation").

Although the bankruptcy court was not required to do an explicit lodestar analysis, this

formula clearly guided the court's decision. See Shaw Pittman Appendix (hereinafter "SPA-97")

at 425-29.  The proposed judgment submitted by Shaw Pittman on September 23, 2004

contained a detailed analysis of the fees and costs they were requesting, including details of work

performed by the attorneys and other staff, along with the rates charged for each person.  SPA-

97 at 35-78. CHG does not challenge the firms' rates for attorneys or other staff, contained in the

proposed judgment.  In addition to the proposed judgment, the bankruptcy court held a full day

evidentiary hearing on this matter in which Mr. Patrick Potter, lead counsel for Shaw Pittman

during the Capitol Hill Group case, testified as to how Shaw Pittman came to the proposed

judgment.  SPA-97 at 181-424.  The court issued a bench decision on October 22, and in its

supplemental decision regarding Shaw Pittman's motion for costs and fees, the court enunciated

that it was this lodestar analysis which guided it in its decision-making process.  The court

specifically addressed the "lumping" alleged by CHG, stating that the time entries were not

improper, because it could "get a feel from the time entries as to what essentially was being

done." SPA-97 at 150. Clearly, the bankruptcy court used a lodestar analysis to guide its

decision, and it was within the court's discretion to accept the majority of this proposed

judgment.

CHG also argues that the fees and costs awarded were unreasonable and excessive. CHG Brief at 13. CHG partially bases this argument on the assertion that they were only contesting the $240,000 amount in dispute in this phase of the litigation, and that Shaw Pittman's attempt to recover over $300,000 in fees is excessive in relation to this amount. CHG Brief at 7. Until a hearing on September 29, 2004, Shaw Pittman believed they were contesting the totality of fees (over $1.3 million). This Court agrees with the bankruptcy court's assessment that, concerning this appeal, the amount of fees at stake does not change the analysis. SPA-97 at 90-91. In its 2004 decision, this Court concluded that CHG and Shaw Pittman had entered into a contract that there would be no objections to Shaw Pittman's fee application. Capitol Hill Group, 313 B.R. at 354. The bankruptcy court's conclusion that it was the law of the case that Shaw Pittman was entitled to enforce this contract, and entitled to avoid any litigation costs incurred by CHG objections to their fee application, was not an abuse of discretion, nor legal error. See SPA-97 143-44.

CHG contends that the court also erred in not applying any of the aforementioned Johnson factors or any other specific factors in deciding whether the proposed costs and fees were reasonable. CHG Brief at 12. In Copeland, the court states the importance of the Johnson factors in assessing fees, but that appellate courts have recognized that the Johnson factors, also are imprecise. Copeland, 641 F.2d at 899. Additionally, the Fifth Circuit noted that a trial court's Johnson analysis does not need to be meticulously detailed. "If the district court has articulated and clearly applied the criteria ..., we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 331 (5th Cir.1995). While the bankruptcy court did not formally address each Johnson

factor individually, it certainly addressed many, if not all of the factors, in its October 22 bench decision.

While CHG objected to twenty nine points during the October 21 hearing, they chose not to bring in any witnesses to help further their objections. See, e.g., SPA-97 153-54. CHG argues that a senior partner such as Mr. Potter should not have performed all the tasks which he recorded, because a paralegal could have done similar work. In addition, CHG objects to the amount of time it took for the litigation to proceed, and consequently to Shaw Pittman's "racking up" attorney's fees over the course of many months. CHG also objects to LEXIS bills, as well as other costs such as photocopying and faxing documents. CHG Brief at 13-15.

In its bench decision, the bankruptcy court judge addressed each of CHG's twenty nine objections. The sole witness at trial was Mr. Potter, who testified the reason he did so much work on the case was that it was a complicated issue, one with which he was very familiar, and that it made sense for him to handle so much of this work. SPA-97 at 145-47. The court also addressed CHG's argument that the fees incurred by Shaw Pittman were too high when compared to CHG's counsel's fees. The court explained that it was Shaw Pittman, not CHG, which was forced to handle the numerous discovery fees and other hurdles CHG threw at them. SPA-97 at 147. CHG's other main objection in this area was that Shaw Pittman did not use billing judgment or any write-offs. The bankruptcy court explained that it paid special attention to the fact that Shaw Pittman was representing itself in this matter. The court found that there was some billing judgment because time entries of two minutes or less were not billed. There were also two occasions where Mr. Potter had done substantial work, but had not billed at all. SPA-97 at 154-56. The lower court did not abuse its discretion by stating that Shaw Pittman did not intentionally run up attorneys' fees in this matter.

The bankruptcy court also paid special attention to CHG's complaint about the amount of time that was necessary to resolve the disputes and this appeal. The court found that the lengthy hearings, and extensive research that lead to such high fees were the result of CHG's injecting "legal issues and factual arguments into these proceedings which turned out not to be the basis for not enforcing the oral agreement decided in the prior appeal." SPA-97 at 144. The bankruptcy court stated that CHG has itself to blame for the amount of time expended by this Court, the bankruptcy court, and Shaw Pittman. SPA-97 at 143-46. Nothing in the record shows that the lower court abused its discretion by finding that Shaw Pittman did not run up these fees intentionally, and that the fees incurred were not unreasonable or excessive considering the work that Shaw Pittman was forced to undertake.

CHG challenges the costs incurred as unreasonable. Most notably they argue that a LEXIS bill in the amount of $36,344.25 was excessive. Mr. Potter testified that Shaw Pittman charged CHG the same rate that it charged any other client for electronic research. CHG made no effort to subpoena Shaw Pittman's record to verify the time spent researching, nor anyone else at Shaw Pittman that could have testified to a contrary billing arrangement. SPA-97 153-54.

In examining the aforementioned Johnson factors, it is clear that the bankruptcy court addressed many of them when determining the reasonableness of attorneys' fees and costs. Although the court did not address each one specifically in turn, the court had them in mind during the issuing of its oral decision on Oct 22. This is not a case where the court based its award on improper factors or where the court did not articulate a reason for the awards. The bankruptcy court has examined every objection that CHG raised during the hearing, and has clearly articulated why it has awarded these fees and costs to Shaw Pittman. In no way did the bankruptcy court abuse its discretion.

Conclusion

Upon consideration of the Appellant Capitol Hill Group's appeal of the order of the bankruptcy

court, the Court hereby affirms the December 1, 2004 order of the bankruptcy court.  The appeal

shall be denied and dismissed.


Signed by Royce C. Lamberth, United States District Judge, on June 21, 2005.

SUB-EXHIBIT 12

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE:** ) | |
| ) | |
| ) | |
| **CAPITOL HILL GROUP,** ) | **CASE NO. 02-0359** |
| ) | **CHAPTER 11** |
| **Debtor.** ) | |
| ) | |

**STATEMENT OF FEES AND EXPENSES**
**(January 2005)**

1.    The undersigned respectfully submits this Statement of Fees and Expenses for

January 2005.

2.    The undersigned seeks, as contract damages, a recovery of the attached fees and

expenses pursuant to (among other things) the August 17, 2004 remand of the United States

District Court.

3.    This matter (together with additional fees and expenses incurred after September

1, 2004 until this matter is finally concluded) will be heard pursuant to further hearings

scheduled and noticed by the Court and/or the undersigned.

Dated:  June 24, 2005

/s/ Patrick J. Potter
Patrick J. Potter (426514)
Andrew J. Love (456227)
2300 N Street, N.W.
Washington, D.C.  20037
Tel: (202) 663-8000
Fax: (202) 663-8007



Pillsbury
Winthrop
Shaw
Pittman LLP

2300 N Street, N.W.
Washington, D.C. 20037-1128

Tel    202.663.8000
Fax    202.663.8007
www.pillsburylaw.com



ID: 23954-0026

Invoice No. ******

**REGARDING:    Post Withdrawal Collection Efforts**

| | | |
|---|---|---|
| For Professional Services Through 01/31/2005 | $ | 13,738.50 |
| For Expenses Incurred Through 01/31/2005 | $ | 917.24 |
| **TOTAL AMOUNT DUE** | **$** | **14,655.74** |

CAPITOL HILL GROUP
23954-0026
PAGE 2



Invoice No: ******

## ITEMIZED SERVICES

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 01/04/05 | Potter, P | CHG.  Analyze statements made in court (fully funded $336,000) compared to settlement letter of just a few days ago from CHG ("CHG doesn't have the money to pay Shaw Pittman so Shaw Pittman should accept only $130,000") and send D. Hartman e-letter that this was bad faith negotiating. | 0.40 |
| 01/04/05 | Potter, P | CHG.  Prepare for, to/from hearing and prevail on all aspects of motion to compel (and oppose motion to quash) supoenas. | 2.30 |
| 01/06/05 | Potter, P | CHG.  Begin review of bond documents received from CHG.  Send compromise re subpoena to Hartman. | 1.00 |
| 01/06/05 | Potter, P | CHG.  Additional review of bond documents produced and analysis of same. | 0.90 |
| 01/06/05 | Potter, P | CHG. Prepare for bond hearing. | 0.40 |
| 01/06/05 | Love, A | Review district court rules and website regarding form of supersedeas bond (.2); briefly review documents produced by CHG in connection with stay pending appeal (.2). | 0.40 |
| 01/07/05 | Potter, P | CHG. Prepare for hearing on stay and bond; travel to/from hearing; additional preparation at court (including review of bond documents dumped on me yesterday and comparing to credit agreement obligations and other problems with bond).  Argue stay and bond positions for Shaw Pittman, including introducing evidence and participate in hearing and Court's ruling.  Review notes from ruling and first draft of order. | 7.00 |

CAPITOL HILL GROUP
23954-0026
PAGE 3



Invoice No: ******

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 01/11/05 | Potter, P | CHG.  Analysis and revisions to stay order, draft letter to court and compile attachements. Appeal analysis and call to court clerk to determine status of transmitting record.  Draft 2 supplements to records on appeal to include materials since late December and into January, including January 6 & 7, 2005 materials. | 1.50 |
| 01/13/05 | Potter, P | CHG.  Analyze transcript received (from 1/4/05 hearing). | 0.30 |
| 01/13/05 | Potter, P | CHG.  Revisions to letter to court and order on appeal stays.  Review transmittal of records to District Court.  Additional revisions to letter & order on appeal stays. Draft letter to National Capitol Bank with writ of attachment. Analyze timing issues, including appeal (time between transmittal and receipt issued by D. Court). | 0.80 |
| 01/14/05 | Potter, P | CHG.  Call to D. Court re status of appeal docket; review web page on, among other things, emergency procedures if stay is taken in response to garnishments to be served today; supervise filing of stay order on 1/7 rulings. | 0.50 |
| 01/21/05 | Potter, P | CHG Appeal.  Analyze appeal issues; analyze standard of law/review for stay; develop strategy on litigating stay before the D. Court; respond to CHG's inquiry about settlement discussions and analyze statements made in D. Hartman's letter that I believe are false and misleading (in addition to the misleading statements made in prior letters). Correspondence re same with CHG.  Analyze various ECF filings received from the District Court.  Review motions of CHG to delay filing briefs. | 2.50 |

CAPITOL HILL GROUP
23954-0026
PAGE 4



Invoice No: ******

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 01/24/05 | Potter, P | CHG Appeal:  Drafting first opposition to additional time (12/1 judgment appeal); analyze and drafting opposition to stay motion filed with D. Court; additional analysis and drafting to include in pleadings; begin drafting opposition to more time re reconsideration motion. Additional read of stay motion. | 3.40 |
| 01/24/05 | Love, A | Review and revise 2 oppositions to motions for stay in 2 appellate cases, multiple discussions with P. Potter regarding applicable standards for review of stay pending appeal; draft orders denying stays and review local rules regarding same. | 2.80 |
| 01/25/05 | Potter, P | CHG Appeal.  Review pleadings as actually filed in opposition to stay pending appeal. Supervise very briefly the organization of appeal files (because there are 2 distinct appeals). Revising and finalizing opposition to 2 separate motions to extend time - separate arguments in each. Prepare to supplements (like a mini appendix) for each appeal (not identical) to be filed - called Supplements and discuss finalizing and filing with A. Love. | 1.50 |
| 01/25/05 | Potter, P | CHG-Appeal.   Attention to appendix issues for appeal; contact chambers to determine if new appendix required; advise of filings to date. | 0.40 |
| 01/25/05 | Love, A | Review, revise, finalize and file the following documents and exhibits thereto in connection with 2 appeals filed by CHG; (1) objection to additional time to file brief in Appeal No. 05-97; (2) objection to additional time to file brief in Appeal No. 05-98; (3) supplement in appeal no. 05-97 (with voluminous exhibits and (4) supplement in appeal no. 05-98 (with voluminous exhibits). | 2.50 |

CAPITOL HILL GROUP
23954-0026
PAGE 5



Invoice No: ******

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 01/26/05 | Potter, P | CHG. Analyze appeal issues: Bankruptcy judges as experts; and magnitude of review of fees. | 0.70 |
| 01/27/05 | Love, A | Review reply to SP opposition filed by CHG; re-read bankruptcy court's stay order referenced in reply. | 0.30 |
| 01/28/05 | Potter, P | CHG. Drafting and finalizing 2 supplemental designations of record and compiling materials for same. Analyze appeal issues, and review pleadings filed yesterday and today by CHG. Review orders entered by District Court granting stay and granting time to file briefs. | 1.20 |
| 01/31/05 | Potter, P | Review message from law clerk regarding appendix. Finalize and sign off on supplment to record. Recent filings to be filed. Review docket entries received by ECF. | 0.10 |
| | | Total Hours | 30.90 |

### TIME SUMMARY

| Name | Rate | Hours | | Amount |
|------|------|-------|---|--------|
| Potter, P | 465.00 | 24.90 | $ | 11,578.50 |
| Love, A | 360.00 | 6.00 | $ | 2,160.00 |
| | Total for Professional Services | 30.90 | $ | 13,738.50 |

### EXPENSE SUMMARY

| Description | | Amount |
|------------|---|--------|
| Transcripts | $ | 544.82 |
| Courier | $ | 47.05 |
| Local Transportation | $ | 29.85 |
| Conducting Search | $ | 7.92 |
| Document Reproduction | $ | 266.00 |
| Postage | $ | 0.60 |

CAPITOL HILL GROUP
23954-0026
PAGE 6

 Invoice No: ******

| Description | | Amount |
|---|---|---|
| Lexis Research | $ | 21.00 |
| Total For Expenses | $ | 917.24 |

For Professional Services Through 01/31/2005    $    13,738.50

For Expenses Incurred Through 01/31/2005    $    917.24

**TOTAL AMOUNT DUE**    $    **14,655.74**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

IN RE:                                    )
                                          )
CAPITOL HILL GROUP,                       )        CASE NO. 02-0359
                                          )        Chapter 11
                        Debtor.           )
                                          )

### CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2005 copies of the following

- Statement of Fees and Expenses (January 2005)

- Statement of Fees and Expenses (February 2005)

- Statement of Fees and Expenses (March 2005)

- Statement of Fees and Expenses (April 2005)

- Statement of Fees and Expenses (May 2005)

were served by pdf (e-mail) **and by first class mail** on the following:

Donald Hartman
700 Constitution Ave., N.E.
Washington, D.C. 20002

John Douglas Burns
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770

/s/ Andrew J. Love
Andrew J. Love

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:                                  ) | |
| ) | |
| CAPITOL HILL GROUP,          ) | CASE NO. 02-0359 |
| ) | CHAPTER 11 |
| Debtor.               ) | |
| ) | |

## STATEMENT OF FEES AND EXPENSES
### (February 2005)

1.    The undersigned respectfully submits this Statement of Fees and Expenses for February 2005.

2.    The undersigned seeks, as contract damages, a recovery of the attached fees and expenses pursuant to (among other things) the August 17, 2004 remand of the United States District Court.

3.    This matter (together with additional fees and expenses incurred after September 1, 2004 until this matter is finally concluded) will be heard pursuant to further hearings scheduled and noticed by the Court and/or the undersigned.

Dated:  June 24, 2005

/s/ Patrick J. Potter
Patrick J. Potter (426514)
Andrew J. Love (456227)
2300 N Street, N.W.
Washington, D.C.  20037
Tel: (202) 663-8000
Fax: (202) 663-8007



Pillsbury
Winthrop
Shaw
Pittman ᴸᴸᴾ

2300 N Street, N.W.
Washington, D.C. 20037-1128

Tel    202.663.8000
Fax    202.663.8007
www.pillsburylaw.com



ID: 23954-0026

Invoice No. ******

**REGARDING:    Post Withdrawal Collection Efforts**

For Professional Services Through 02/28/2005                    $     45,736.50

For Expenses Incurred Through 02/28/2005                         $      5,953.95

**TOTAL AMOUNT DUE**                                            **$     51,690.45**

CAPITOL HILL GROUP
23954-0026
PAGE 2



Invoice No: ******

### ITEMIZED SERVICES

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 02/07/05 | Potter, P | CHG. Teleconference with J. Burns regarding issues impacting appeal and his suggestion of dual track simultaneous appeal briefing and mediation (non-binding non-disclosed), and my belief that it would add expense with no benefit that he could explain other than to get the parties to compromise more than the offers that have been exchanged to date. | 0.20 |
| 02/08/05 | Potter, P | Teleconference with J. Burns regarding his request for more time to file brief and regarding mediation, which did not make sense given no stay of appeal, which will be done more quickly, etc. | 0.10 |
| 02/08/05 | Potter, P | Read J. Burns motion for more time to file brief in 05-0097, and put together preliminary draft of opposition (based on prior opposition, but edit in and out language). Read J. Burns e-mails. | 0.60 |
| 02/09/05 | Potter, P | CHG Appeal (05-97/Judgment). Additional drafting and editing to opposition to second motion to extend filing deadline. | 0.50 |
| 02/09/05 | Love, A | Review and revise opposition to second request for additional time to file appellants's brief. | 0.20 |

CAPITOL HILL GROUP
23954-0026
PAGE 3



Invoice No: ******

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 02/10/05 | Potter, P | CHG Appeal (focus - 05-98/reconsideration, anticipating brief will be filed on monday). Pull pleading we filed with cites to cases on discretionary nature and provide to assistant to pull and print. Thorough review of J. Lamberth's 2004 decision, especially the nuances of the standard of review and appeal proof (fact/law) requirements to analyze for our current brief, and outline issues/arguments (e.g. no consideration for inadvertent promise not to enforce no-objection term; no knowing waiver, etc.). Read and markup 12/17 transcript. | 2.20 |
| 02/11/05 | Potter, P | CHG/Appeal.  Reading and analyzing cases on reconsideration issues, including standard of review. | 3.00 |
| 02/12/05 | Love, A | Begin research and review of cases regarding standard of review of lower court's award of attorney's fees. | 1.50 |
| 02/14/05 | Potter, P | CHG/Appeal (05-98).  Read and begin to analyze CHG's brief filed today.  Outline (simplified) CHG's arguments and sub-arguments.  Outline issues to be researched. Read pleading filed in 05-97 (reply) and compare to our opposition for accuracy (which reply was not accurate). | 3.50 |
| 02/14/05 | Love, A | Continue research regarding standard of review in connection with fee applications and or award of attorneys fees using Lodestar(1.1); discuss and analyze appellate issues (Appeal 05-98) with P. Potter (.2) and begin research regarding standard of review on motions for reconsideration and whether any cases undertake de novo review (1.6); review reply to opposition for more time to file brief in appeal 05-97 (.1). | 3.00 |

CAPITOL HILL GROUP
23954-0026
PAGE 4



Invoice No: ******

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 02/15/05 | Potter, P | CHG/Appeal.  Drafting Appellate Brief on 05-98 (denial of reconsideration), including review of record to provide analysis and facts in the brief. | 8.80 |
| 02/15/05 | Love, A | Continue research regarding standard of review for motion for reconsideration, summary judgment denial nuance regarding standard of reveiw (2.8); research regarding interplay between Rule 60(b)(1) and (b)(2) and whether they are mutually exclusive in light of CHG's argument's on appeal regarding bankruptcy court's "blending" of standards (1.8); research regarding Rule 60 (b) cases with facts similar to ours (1.5) all in connection with appeal 05-98. | 6.10 |
| 02/16/05 | Potter, P | CHG/Appeal/05-98.  Reading reconsideration cases, and editing first rough draft of appellate brief. | 3.00 |
| 02/16/05 | Love, A | Continue research regarding various issues for appeal (05-98), including: research regarding cases with facts similar to ours under Rule 60 (b) where movant seeks reconsideration of order after such order is affirmed on appeal and number of months pass; research regarding cases distinguishing Pioneer policy from Rule 60(b) policy; research regarding whether bankruptcy court is bound by its prior decision in light of CHG's argument that granting SP relief under excusable neglect standard precluded denying CHG relief; research regarding whether courts are bound by party's characterization of its pleading in light of CHGs assertion that court erred in analyzing under Rule 60(b)(2); revise brief in connection with same. | 9.30 |

CAPITOL HILL GROUP
23954-0026
PAGE 5



Invoice No: ******

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 02/17/05 | Potter, P | CHG/Appeal/05-98. Drafting appellate brief and performing necessary case and fact analysis required to draft the brief. | 9.50 |
| 02/17/05 | Love, A | Continue researching issues in connection with appeal 05-98, including review of D.C. cases addressing Rule 60(b), Rule 60(b) cases disregarding Pioneer in different contexts; research regarding court holdings being limited to the law and facts upon which they are based; continue review of numerous cases with facts similar to ours in Rule 60(b) context and begin reviewing and revising appellate brief. | 7.80 |
| 02/18/05 | Potter, P | CHG/Appeal/05-98. Draft introduction to argument (statement). Prepare appendix. Start drafting additional arguments in support of affirming. | 2.70 |
| 02/18/05 | Potter, P | CHG/Appeal/05-98. Drafting additional arguments in support of affirmance & finish first draft of same: law of case and mootness (and analysis of fact and cases of same). Analyze case law in D.C. that says no legal issues for 60(b) and determine how that fits with appeal. Attention to appendix. | 4.00 |
| 02/18/05 | Love, A | Continue revisions to appellate brief (05-98) and incorporating and reviewing caselaw regarding similar case for analysis section, D.C. cases for excusable neglect and Rule 60(b) (6.2); research regarding Ward case regarding 60 (b) not being used to review errors of law (1.5); discuss and analyze same with P. Potter (.2); retrieve ALR and law review cites regarding Rule 60(b), Rule 9006 and excusable neglect (.2). | 8.10 |

CAPITOL HILL GROUP
23954-0026
PAGE 6



Invoice No: ******

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 02/22/05 | Potter, P | CHG/Appeal/05-98.  Brief (drafting, analysis and edit) and appendix (edits). NOTE:  not charged (yet) for edits and drafting of brief: (a) Friday 2/18 (2 addl hrs); Saturday 2/19 (3 hours); Sunday 2/19 (3 hours); Monday 2/21 (3.5 hours). | 2.40 |
| 02/22/05 | Potter, P | CHG/Appeal/05-97.  Initial reading of brief on this, the 4th appeal, and very preliminary outline of issues and strategy for response, and start to set up Shaw Pittman's opening brief. | 1.80 |
| 02/22/05 | Potter, P | CHG/Appeal 05-97.  Outline (6 hand written pages) of the sub-arguments made in the 97 brief filed today by CHG. | 1.50 |
| 02/22/05 | Love, A | Additional research for appellate brief (05-98) for the following issues: Rule 8020 and frivolous appeals; whether a party is bound by a contract that he does not read; whether appellate courts review abuse of discretion with hindsight or at time trial court decided issues and draft sections of brief regarding same. | 6.50 |
| 02/23/05 | Potter, P | CHG/Appeal/05-97 (Oct/Dec Judgment).  Drafting three sections of the opening brief: (i) section dealing with basis for obligation to pay; (ii) section dealing with CHG's failure to describe and recite the record and strategize on how to deal with it; (iii) first draft of section on the 10/21 testimony - direct and cross. And, identify the almost 30 objections of CHG disposed of by the Court in the 10/22 ruling, none described in opening brief of CHG. | 7.10 |
| 02/23/05 | Potter, P | CHG/Appeal/05-98.  Edit next version of appellate brief. | 1.00 |

CAPITOL HILL GROUP
23954-0026
PAGE 7



Invoice No: ******

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 02/23/05 | Love, A | Continue research and draft of brief (05-98) section regarding (Rule 8020 sanctions (1.5); research regarding mootness in connection with CHG's inability to obtain relief (05-98); (1.0); review and revise 05-98 brief (2.8); research regarding appellee's duty to go through record due to CHG's failure to do so in connection with 05-97 (.9); review 05-97 brief (.3); brief research regarding lumping in response to CHG's arguments in 05-97 (.5). | 7.00 |
| 02/24/05 | Potter, P | CHG/Appeal/05-98.  Befing final edits to brief to prepare for filing today or tomorrow. | 4.70 |
| 02/24/05 | Love, A | Continue research regarding appellee / appellant burden regarding transcript and record in light of CHG failure to aadequately cite to record and show abuse of discretion in 05-97 (.8); review several additional Rule 60 (b) cases regarding 05-98 (.3); review sanction section in light of additional case (.1) | 1.20 |
| 02/25/05 | Love, A | Final review of 05-98 brief and review of local district court rules regarding appendix. | 0.50 |
| 02/26/05 | Potter, P | CHG/Appeal/05-97.  Editing the first rough draft of the facts section of appellee brief. | 1.50 |
| 02/26/05 | Love, A | Continue review of cases regarding burden of appellee, appellant to cite to transcript. | 0.40 |
| 02/28/05 | Love, A | Telephone calls (2x) with clerk's office regarding appendix and correction to brief (.3); review appendix for electronic filing (.1). | 0.40 |

Total Hours                                                110.10

CAPITOL HILL GROUP
23954-0026
PAGE 8



Invoice No: ******

## TIME SUMMARY

| Name | Rate | Hours | | Amount |
|------|------|-------|---|--------|
| Potter, P | 465.00 | 58.10 | $ | 27,016.50 |
| Love, A | 360.00 | 52.00 | $ | 18,720.00 |
| Total for Professional Services | | 110.10 | $ | 45,736.50 |

## EXPENSE SUMMARY

| Description | | Amount |
|-------------|---|--------|
| Courier | $ | 29.61 |
| Conducting Search | $ | 0.80 |
| Document Reproduction | $ | 439.80 |
| Postage | $ | 5.99 |
| Lexis Research | $ | 5,477.75 |
| Total For Expenses | $ | 5,953.95 |

For Professional Services Through 02/28/2005      $   45,736.50

For Expenses Incurred Through 02/28/2005      $   5,953.95

**TOTAL AMOUNT DUE**      **$   51,690.45**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

IN RE:                          )

                           )

CAPITOL HILL GROUP,        )       CASE NO. 02-0359

                           )       Chapter 11

          Debtor.         )

                           )

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2005 copies of the following

- Statement of Fees and Expenses (January 2005)

- Statement of Fees and Expenses (February 2005)

- Statement of Fees and Expenses (March 2005)

- Statement of Fees and Expenses (April 2005)

- Statement of Fees and Expenses (May 2005)

were served by pdf (e-mail) **and by first class mail** on the following:

Donald Hartman
700 Constitution Ave., N.E.
Washington, D.C. 20002

John Douglas Burns
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770

                           /s/ Andrew J. Love
                           Andrew J. Love

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| | ) |
| CAPITOL HILL GROUP, | ) CASE NO. 02-0359 |
| | ) CHAPTER 11 |
| Debtor. | ) |
| | ) |

## STATEMENT OF FEES AND EXPENSES
### (March 2005)

1.      The undersigned respectfully submits this Statement of Fees and Expenses for March 2005.

2.      The undersigned seeks, as contract damages, a recovery of the attached fees and expenses pursuant to (among other things) the August 17, 2004 remand of the United States District Court.

3.      This matter (together with additional fees and expenses incurred after September 1, 2004 until this matter is finally concluded) will be heard pursuant to further hearings scheduled and noticed by the Court and/or the undersigned.

Dated:  June 24, 2005

/s/ Patrick J. Potter
Patrick J. Potter (426514)
Andrew J. Love (456227)
2300 N Street, N.W.
Washington, D.C.  20037
Tel: (202) 663-8000
Fax: (202) 663-8007

To accept charges shown below, click on the 'View Document' button, otherwise click the 'Back' button on your browser.

| Pacer Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| Thu Jul 24 14:57:09 EDT 2008 | | | |
| **Pacer Login:** | ng0004 | **Client Code:** | 34456-0001EH |
| **Description:** | Image854-1 | **Case Number:** | 02-00359 |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |

View Document

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

IN RE:                                  )
                                        )
CAPITOL HILL GROUP,                     )        CASE NO. 02-0359
                                        )        Chapter 11
            Debtor.                     )
                                        )

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2005 copies of the following

- Statement of Fees and Expenses (January 2005)

- Statement of Fees and Expenses (February 2005)

- Statement of Fees and Expenses (March 2005)

- Statement of Fees and Expenses (April 2005)

- Statement of Fees and Expenses (May 2005)

were served by pdf (e-mail) **and by first class mail** on the following:

Donald Hartman
700 Constitution Ave., N.E.
Washington, D.C. 20002

John Douglas Burns
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770

                              /s/ Andrew J. Love
                              Andrew J. Love

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

## STATEMENT OF FEES AND EXPENSES
### (April 2005)

1.     The undersigned respectfully submits this Statement of Fees and Expenses for April 2005.

2.     The undersigned seeks, as contract damages, a recovery of the attached fees and expenses pursuant to (among other things) the August 17, 2004 remand of the United States District Court.

3.     This matter (together with additional fees and expenses incurred after September 1, 2004 until this matter is finally concluded) will be heard pursuant to further hearings scheduled and noticed by the Court and/or the undersigned.

Dated:  June 24, 2005

/s/ Patrick J. Potter
Patrick J. Potter (426514)
Andrew J. Love (456227)
2300 N Street, N.W.
Washington, D.C.  20037
Tel: (202) 663-8000
Fax: (202) 663-8007



Pillsbury
Winthrop
Shaw
Pittman LLP

2300 N Street, N.W.          Tel   202.663.8000
Washington, D.C. 20037-1128  Fax   202.663.8007
                             www.pillsburylaw.com



ID: 23954-0026

Invoice No. ******

**REGARDING:** Post Withdrawal Collection Efforts



For Expenses Incurred Through 04/30/2005                     $         2.80

**TOTAL AMOUNT DUE**                                         $         2.80

CAPITOL HILL GROUP
23954-0026
PAGE 2

 Invoice No: ******

### EXPENSE SUMMARY

| Description | | Amount |
|---|---|---|
| Document Reproduction | $ | 2.80 |
| Total For Expenses | $ | 2.80 |

| | | |
|---|---|---|
| For Expenses Incurred Through 04/30/2005 | $ | 2.80 |
| **TOTAL AMOUNT DUE** | **$** | **2.80** |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | Chapter 11 |
| Debtor. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2005 copies of the following

- Statement of Fees and Expenses (January 2005)

- Statement of Fees and Expenses (February 2005)

- Statement of Fees and Expenses (March 2005)

- Statement of Fees and Expenses (April 2005)

- Statement of Fees and Expenses (May 2005)

were served by pdf (e-mail) **and by first class mail** on the following:

Donald Hartman
700 Constitution Ave., N.E.
Washington, D.C. 20002

John Douglas Burns
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770

/s/ Andrew J. Love
Andrew J. Love

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

IN RE:                                    )
                                          )
CAPITOL HILL GROUP,                       )          CASE NO. 02-0359
                                          )          CHAPTER 11
              Debtor.                     )
                                          )

## STATEMENT OF FEES AND EXPENSES
### (May 2005)

    1.      The undersigned respectfully submits this Statement of Fees and Expenses for May 2005.

    2.      The undersigned seeks, as contract damages, a recovery of the attached fees and expenses pursuant to (among other things) the August 17, 2004 remand of the United States District Court.

    3.      This matter (together with additional fees and expenses incurred after September 1, 2004 until this matter is finally concluded) will be heard pursuant to further hearings scheduled and noticed by the Court and/or the undersigned.

Dated:  June 24, 2005

/s/ Patrick J. Potter
Patrick J. Potter (426514)
Andrew J. Love (456227)
2300 N Street, N.W.
Washington, D.C.  20037
Tel: (202) 663-8000
Fax: (202) 663-8007



Pillsbury
Winthrop
Shaw
Pittman LLP

2300 N Street, N.W.
Washington, D.C. 20037-1128

Tel   202.663.8000
Fax   202.663.8007
www.pillsburylaw.com



ID: 23954-0026

**Invoice No. ******

**REGARDING:    Post Withdrawal Collection Efforts**

For Professional Services Through 05/31/2005                   $        325.50

For Expenses Incurred Through 05/31/2005                       $          0.40

        **TOTAL AMOUNT DUE**                                  $        325.90

CAPITOL HILL GROUP
23954-0026
PAGE 2



Invoice No: ******

### ITEMIZED SERVICES

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 05/24/05 | Potter, P | CHG/Post September Fees. Begin/renew filing for post September 2004 fees by analyzing and preparing filing (first draft revised). | 0.70 |
| | | Total Hours | 0.70 |

### TIME SUMMARY

| Name | Rate | Hours | | Amount |
|------|------|-------|---|--------|
| Potter, P | 465.00 | 0.70 | $ | 325.50 |
| | Total for Professional Services | 0.70 | $ | 325.50 |

### EXPENSE SUMMARY

| Description | | Amount |
|-------------|---|--------|
| Document Reproduction | $ | 0.40 |
| Total For Expenses | $ | 0.40 |

For Professional Services Through 05/31/2005                    $      325.50

For Expenses Incurred Through 05/31/2005                         $        0.40

**TOTAL AMOUNT DUE**                                             $      325.90

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CAPITOL HILL GROUP,** | ) | **CASE NO. 02-0359** |
| | ) | **Chapter 11** |
| Debtor. | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 24th day of June, 2005 copies of the following

- Statement of Fees and Expenses (January 2005)

- Statement of Fees and Expenses (February 2005)

- Statement of Fees and Expenses (March 2005)

- Statement of Fees and Expenses (April 2005)

- Statement of Fees and Expenses (May 2005)

were served by pdf (e-mail) <u>and by first class mail</u> on the following:

Donald Hartman
700 Constitution Ave., N.E.
Washington, D.C. 20002

John Douglas Burns
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770

<u>/s/ Andrew J. Love</u>
Andrew J. Love

SUB-EXHIBIT 13

FILED IN
JOHN MARSHALL DROP BOX

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

**FILED**

JUL 26 2005

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

**CAPITOL HILL GROUP'S OPPOSITION AND RESPONSE**
**TO SHAW PITTMAN LLP'S INVOICES**
**FOR SEPTEMBER, 2004 TO MAY, 2005**

Capitol Hill Group ("CHG"), by and through counsel, hereby submits Capitol

Hill Group's Opposition and Response to Pillsbury Madison Shaw Pittman LLP's

("Shaw Pittman") Invoices for September, 2004 to May, 2005 (the "Opposition"), and in

support of this Objection, CHG states:

**Background**

1.      On March 31, 2002, CHG filed an application with the Court to employ

Shaw Pittman as counsel regarding CHG's Chapter 11 filing and was authorized to do so

by an order of the Court entered on June 20, 2002.

2.      On January 2, 2004, Shaw Pittman filed a motion to withdraw as counsel

for CHG in this matter.  The Court granted this motion by an Order dated January 7,

2004.

3.      The Appellee received Bankruptcy Court approval of the sum of

$1,345,045 of which $250,000 was paid in December, 2002 and $850,000 was paid in

December, 2003, leaving a balance of $199,960.43 after a consensual resolution on the

December, 2003-January, 2004 bills.  On September 23, 2004, Shaw Pittman filed a

proposed Judgment and Order regarding its Motion seeking, among other relief,

attorneys' fees and costs for the period subsequent to Shaw Pittman's withdrawal as counsel to CHG seeking a total of $320,895.73.

4. On January 30, 2004, CHG filed an objection to Shaw Pittman's fee petition. Immediately thereafter, Shaw Pittman commenced extensive litigation claiming that CHG was contractually prohibited from challenging Shaw Pittman's fee application. This Court ruled in favor of Shaw Pittman in this regard on April 9, 2004. CHG appealed this ruling to the U.S. District Court. CHG's appeal was ultimately denied.

5. On October 21, 2004, the Bankruptcy Court heard testimony concerning the CHG objection to the fees and expenses of Shaw Pittman, and issued an oral ruling denying almost entirely the objections of CHG to Shaw Pittman. On December 1, 2004, a written ruling was issued by the Bankruptcy Court supplementing its oral decision.

6. These rulings were the subject of an appeal to the United States District Court which was denied on June 22, 2005, after briefing, but no oral argument. Almost immediately thereafter, Shaw Pittman sought payment on its subsequent bills from September, 2004 to May, 2005. This opposition is purposed at those bills, and the Court's scheduling Order, as amended by its Order of July 26, 2005.

7. On June 24, 2005, just two days after the issuance of a Memorandum of Decision denying the appeal, Shaw Pittman filed with this Court redacted invoices for the months of May, 2005, April, 2005, March, 2005, February, 2005, and January, 2005. These invoices, curiously, have their actual date of preparation apparently "blacked out" and were filed as in the case of the oldest, some odd 5 months after the supposed billing date. Why they were filed so late with the Court, and why the pertinent information concerning their billing date is redacted is unknown.

8.    On June 16, 2004, Shaw Pittman filed its invoices for December, 2004 and November, 2004, again redacted to avoid disclosure of the date of their issuance. On June 7, 2004, Shaw Pittman again issued invoices, again redacted as to their date, with the Bankruptcy Court for October, 2004 and September, 2004.

9.    These invoices are the subject of the current dispute.

## ARGUMENT

### The Fee Request is Punitive and Unreasonable

10.    CHG and Shaw Pittman have been engaged in a litigation of some immodest length, in which Shaw Pittman has been the victor thus far.   Shaw Pittman has received substantially all of its fees and expenses incurred, well in excess of $1,000,000.00.

11.    On September 23, 2004, Shaw Pittman filed a proposed Judgment and Order regarding its Motion seeking, among other relief, attorneys' fees and costs for the period subsequent to Shaw Pittman's withdrawal as counsel to CHG seeking a total of $320,895.73.  Now, having prevailed on at least its District Court appeal on the post-withdrawal fees, which enure only to Shaw Pittman's benefit, an additional amount is being sought from the September, 2004 to May, 2005 invoices of $193,297.12.  It is critical that this Court fully comprehend that this is nearly 75% of the very amount that Shaw Pittman was attempting to collect for their original fees to collect against the mere sum of $199,000.00 against the Debtor.

12.    The fees are punitive in nature at this point.  Although addressing consumption of assets from a discharge standpoint, the maxim ever present here is that "there is a principle of too much; phrased colloquially, when a pig becomes a hog it is slaughtered" . . . "As a finder of fact, the bankruptcy court has the primary duty to

distinguish hogs from pigs." In re Swift, 3 F.3d 929, 931 (5th Cir. 1993) (citations omitted). Shaw Pittman is a hog, charging well in excess of 100% of the collectible balance on the amount it claimed due. The fees incurred by CHG were a pittance of this amount, as easily discerned from the docket in this case.

13.    Shaw Pittman at this point is charging this former client the sum of $514,192.85 in order to collect the sum of $199,000.00. This is patently unreasonable, and the present fees should be denied.

*A*    ***The Invoices Are Neither Timely Under Fed. R. Civ. P. 54(d)(2), Nor Under Local Rules of this Court:***

14.    A judgment was issued on December 1, 2004 in the amount of $320,895.73 against CHG by the United States Bankruptcy Court in favor of Shaw Pittman. On December 13, 2004, CHG filed a Motion for Reconsideration of the decision and the judgment issued on December 1, 2004. On December 17, 2004, the Bankruptcy Court conducted a hearing on the Motion for Reconsideration and issued an Order denying the Motion for Reconsideration on December 17, 2004.

15.    As noted above, on June 7, 2005, June 16, 2005 and June 24, 2005, Shaw Pittman filed its present invoices, largely well in excess of 6 months after this Court's judgment and Order denying the Motion for Reconsideration.

16.    Federal Rule of Civil Procedure 54, as applied to bankruptcy cases, is not a model of clarity. In relevant part, it provides that:

> (A) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

> (B) Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of the judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and

> must state the amount or provide a fair estimate of the amount
> sought. If directed by the court, the motion shall also disclose
> the terms of any agreement with respect to fees to be paid for
> the services on which claim is made.

Fed. R. Civ. P. 54(d)(2) (2004).

17.     Local Rule 7054-1 provides in relevant part, by its commentary, that "F.R.

Civ. P. 54(d)(2), a 1993 F.R. Civ. P. amendment, is not incorporated by F.R. Bankr. P.

7054, but is the Rule that sets a deadline for seeking attorney's fees and nontaxable

expenses."

18.     The docket reflects no motion filed by Shaw Pittman to recover its

attorneys fees as required by Fed. R. Civ. P. 54(d)(2)(A) following the entry of a

judgment on its previous motion, on December 1, 2004. Simply filing invoices does not

meet the prerequisites of Fed. R. Civ. P. 54(d)(2), which on its face requires a motion.

Similarly, the Court on December 1, 2004 granted full and final relief to Shaw Pittman on

its September 23, 2004 motion to the bankruptcy court. Accordingly, there is no

presently pending contested matter cognizable under Fed. R. Civ. P. 54(d)(2) upon which

Shaw Pittman may seek to obtain approval of its attorneys fees.

19.     Similarly, the supplemental motion to approve the fees from September,

2004 to May, 2005 would have been necessarily filed within 14 days of the judgment

referenced in Fed. R. Civ. P. 54(d)(2). Neither these invoices, redacted to artificially

remove their dates, and submitted 6 months after the last ruling on the motion submitted

by Shaw Pittman, nor the absence of any new motion recognizable under Fed. R. Civ. P.

54(d)(2), gives Shaw Pittman a new day on their fees before this Court.

###     *B.     The Court has a Duty To Exercise Discretion Under Rule 54 In Approving Only Reasonable Fees:*

20.    The Court has full discretion to reduce fees requested in an application for fees under Fed. R. Civ. P. 54(d)(2), and should reduce them to avoid unreasonableness. See Double K Properties v. Aaron Rents, Inc., 2003 U.S. Dist. LEXIS 20441 (W.D. Va. 2003).

21.    For example, the court in In re: Leilani Taylor, 2003 WL 22281273 (Bankr.D.Vt. 2003) concluded, "This Court finds that attorneys' fees in excess of the amount in controversy is *prima facie* unreasonable. The burden is upon the creditor to demonstrate that extenuating circumstances warrant a finding of reasonableness." The Taylor court, citing Matter of Nicfur-Cruz Realty Corp., 50 B.R. 162, 169 (Bankr.S.D.N.Y. 1985) went on to state, "It is inherently unreasonable to ask a debtor to reimburse attorneys' fees that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved."  Shaw Pittman has completely failed to carry these burdens.  Shaw Pittman has not provided any explanation regarding why the amounts requested exceed (indeed they now triple) the amount in controversy or what, if any, extenuating circumstances exist to permit this Court to determine that the fees were reasonable.  The Court should disallow attorneys fees that are "grossly excessive in relation to the issue presented and the victory achieved."  See, David Danis v. USN Communications, 2000 U.S. Dist. LEXIS 16900, p. 161 (N.D. Ill. 2000).

**C    Basis For Fees Under Fed. R. Civ. P. 54(d)(2) Not Identified:**

22    Shaw Pittman has never established jurisdiction as to its statutory entitlement to fees under Fed. R. Civ. P. 54(d)(2).  No judgment, statute, rule or other grounds entitling the moving party to any award has ever been identified by Shaw

Pittman that would give a jurisdictional basis for this Court to approve their fees for September, 2004 to May, 2005. Simply reciting that this Court has entered a judgment on December 1, 2004, within its invoices (as to which prior fees Shaw Pittman likewise did not identify a statutory basis for fee shifting) does not create jurisdiction to impose such fee shifting as Fed. R. Civ. P. 54(d)(2) authorizes.

### D.    *Lodestar Analysis Not Met:*

23.    CHG recognizes that this Court's findings and conclusions previously, although on an active appeal, represent this Court's decisions on matters previously presented. Although offered herein in order to preserve the record, CHG does not intend to needlessly expend this Court's time presenting matters based upon the lodestar analysis, or the particulars argued extensively at the October 21, 2004 hearing. It is obvious that Shaw Pittman has made no greater effort in its presentation of bills from September, 2004 to May, 2005 to adopt a lodestar analysis as required by applicable case law. See generally, See, Teague v. Bakker, 213 F. Supp. 2d 571 (W.D.N.C. 2002) (Fees incurred under Fed. R. Bankr. P. 7054 need adhere to a lodestar analysis so that the Court may determine whether the fee was reasonable and necessary to the prosecution of the case); See In re Lickman, 297 B.R 162 (Bankr. M.D. Fla. 2003) (Where fee shifting is authorized by a statute of the United States (ie; Section 362), a lodestar analysis is required).

## CONCLUSION:

For all of the foregoing reasons, CHG respectfully requests that the Shaw Pittman invoices for September, 2004 to May, 2005 be disallowed.

Respectfully Submitted,

-----------/S/ John D. Burns---------

John D. Burns, Esquire (#22777)
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770
(301) 441-8780

Counsel for CHG

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on this 26th day of July, 2005, a copy of the foregoing pleading in the above captioned matter was served, by ECF, upon:

Patrick Potter, Esquire
Shaw Pittman, LLP
2300 N Street, NW
Washington DC  20037

Dennis Early, Esquire
Office of the United States Trustee
For the Eastern District of Virginia,
Alexandria Division
115 South Union Street; Suite #210
Alexandria, VA  22314

---------/S/ John D. Burns--------

John Douglas Burns

SUB-EXHIBIT 14

```
It is hereby
    ORDERED that the Order set forth below is
hereby signed as an order of the court to be entered
by the clerk.
```



Signed: August 01, 2005.

S. Martin Teel, Jr.
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: | ) |
| | ) |
| CAPITOL HILL GROUP, | )  CASE NO. 02-0359 |
| | )  Chapter 11 |
| Debtor. | ) |

### JUDGMENT (Second) PURSUANT TO THE AUGUST 17, 2004 REMAND OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

In connection with the fees and expenses of Shaw Pittman[1] as set forth in the filings with

the Court on June 7, 2005 [Docket Entries ("**DE**") 839, 840], June 16, 2005 [DE 848, 849], and

June 24, 2005 [DE 852-856] (collectively, the "**Shaw Pittman Statements**"), and after

reviewing Capitol Hill Group's Opposition and Response to Shaw Pittman LLP's Invoices for

September 2004 to May 2005, Shaw Pittman's reply and supplemental reply, and after a hearing

---

[1]    Now known as Pillsbury Winthrop Shaw Pittman LLP ("**Shaw Pittman**").

on the matter on August 1, 2005 and finding good cause for awarding fees and expenses to Shaw

Pittman in connection with the Shaw Pittman Statements, it is

ORDERED and ADJUDGED that Shaw Pittman recover of the debtor Capitol Hill Group

$209,952.86, with post judgment interest on the total judgment award as provided by 28 U.S.C. §

1961.

[Signed and dated above.]

Copes to:

Office of the U.S. Trustee
115 South Union Street, Suite 210
Alexandria, Virginia  22314

Patrick Potter
2300 N Street, N.W.
Washington, D.C. 20037

Donald Hartman
700 Constitution Avenue, N.E.
Washington, D.C. 20002

John Burns
6303 Ivy Lane, Suite 102
Greenbelt, Maryland 20770

Document #: 1492648 v.1

# SUB-EXHIBIT 15

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:                          ) | |
| )| |
| )| |
| CAPITOL HILL GROUP,             ) | CASE NO. 02-0359 |
| )| CHAPTER 11 |
| Debtor.              ) | |
| )| |

### STATEMENT OF FEES AND EXPENSES – JUNE 2005

1.      The undersigned respectfully submits this Statement of Fees and Expenses for June 2005.  As the attached reflects, during this month Shaw Pittman[1] was engaged in (i) defending/prosecuting issues in connection with the pending District Court appeals (Case Nos. 05-97 & 05-98); (ii) seeking payment from the Bankruptcy Court on the December 1, 2004 judgment; and (iii) prosecuting damages claims evidenced by post August 2004 fees and expenses.  All rights are reserved to supplement this statement with additional fees and expenses that post after the date hereof.

2.      The undersigned seeks, as contract damages, a recovery of the attached fees and expenses pursuant to (among other things) the August 17, 2004 remand of the United States District Court.

3.      This matter (together with additional fees and expenses incurred after May 31, 2005 until this matter is finally concluded) will be heard pursuant to further hearings scheduled and noticed by the Court and/or the undersigned.

Dated:  August 4, 2005

/s/ Patrick J. Potter
Patrick J. Potter (426514)
Andrew J. Love (456227)
2300 N Street, N.W.
Washington, D.C.  20037
Tel: (202) 663-8000

---

[1]      Now known as Pillsbury Winthrop Shaw Pittman LLP ("**Shaw Pittman**").



**Pillsbury
Winthrop
Shaw
Pittman** LLP



Tax ID No. 94-1311126

Invoice No. 7141555
Client No. 523954
Matter No. 0000026
P. J. Potter
(202) 663-8000

**For Professional Services Rendered And Disbursements Incurred Through July 31, 2005**

| Matter Name | Services | Disbursements | Balance Due |
|---|---|---|---|
| Post Withdrawal Collection Efforts | $6,942.00 | $117.18 | $7,059.18 |
| **Total This Invoice:** | **$6,942.00** | **$117.18** | **$7,059.18** |

*Current charges only. Time and disbursements not yet recorded will be included in future invoices.*



2300 N Street, NW • Washington, DC • 20037-1128

Remittance Address
Pillsbury Winthrop Shaw Pittman LLP • P.O. Box 601240 • Charlotte, NC 28260-1240

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 523954
Matter No. 0000026
P. J. Potter

Invoice No. 7141555
Page 2

**Post Withdrawal Collection Efforts**
For Professional Services Rendered And Disbursements Incurred Through July 31, 2005

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| P. J. Potter | 06/06/05 | CHG. Analyze backup materials for monthly filings (post 9/1/04). | 0.30 |
| P. J. Potter | 06/07/05 | CHG. Preparing and finalizing filings for September 2004 and October 2004 billings. Note: I have not included in this time .50 of additional time spent on this matter this day. | 0.40 |
| P. J. Potter | 06/07/05 | CHG. Analyze recent 5th Circuit decision and draft, edit and finalize letter to J. Lamberth. This has nothing to do with the bankruptcy filing today and time is completely separate. | 0.50 |
| A. J. Love | 06/07/05 | Review finalize and file Sept. 2004 statement, October 2004 statement and letter to J. Lamberth regarding 5th Circuit case. | 0.40 |
| A. J. Love | 06/09/05 | Draft and file notice of 5th Circuit case. | 0.10 |
| P. J. Potter | 06/10/05 | Prepare November and December fee statements for filing and correspond with A. Love on same. | 0.70 |
| A. J. Love | 06/16/05 | Review and file November and December statements. | 0.10 |
| P. J. Potter | 06/22/05 | CHG. Analyze decisions from D. Court on appeal. Developing strategy for bringing cases to conclusion. Review facts from prior hearings and orders to determine course of action for getting funds released. Drafting notice of hearing and call with clerk's office to schedule. Draft pleadings, proposed order and praecipe re terms and conditions/rights to release, referencing orders and pleadings pulled and reviewed. Calculating amounts owed. | 4.40 |
| A. J. Love | 06/22/05 | Research regarding judgment rate of interest. | 0.20 |
| P. J. Potter | 06/23/05 | CHG/Breach litigation. Analyze rules on stay, reconsideration and notices of appeal to USCA (.40). Re-read carefully the D. Court's 6/21 decisions (.50). Begin to prepare judgment for post 8/31/04 fees (.30). Prepare praecipe and proposed order on scheduling hearing (.70). Analyze fees for 1/1/05 through 5/05 (.40). Meeting with A. Love to go over strategy and filings (.20). | 2.50 |
| A. J. Love | 06/23/05 | Review Federal Rules and timeline regarding motions to stay and further appeals and retrieve 05-97 order regarding costs (.2); review, revise and file praecipe regarding scheduling and proposed order regarding same and voicemail to S. Myers regarding same (.8); draft statements of fee for Jan., Feb., March, April and May and certificate of service for same and prepare same for filing (.2). | 1.20 |
| P. J. Potter | 06/24/05 | CHG/Breach. Final review/edits to praecipe and order with backup orders and documents on release of funds from registry and go over with A. Love for filing. | 0.40 |
| A. J. Love | 06/24/05 | File fee statements (.3); draft bill of costs and review 05-98 and 05-97 dockets regarding commencement of appeals (.5); | 1.70 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 523954
Matter No. 0000026
P. J.Potter

Invoice No. 7141555
Page 3

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| | | review, revise and file praecipe with order releasing funds and 8 exhibits (.9). | |
| P. J. Potter | 06/28/05 | CHG.  Prepare for 7/5/05 hearings, review pleadings. | 0.50 |
| A. J. Love | 06/29/05 | Continue draft of bill of costs.` | 0.30 |
| P. J. Potter | 06/30/05 | CHG/Appeals (97 & 98).  Analyze motion by CHG to obtain stay pending appeal and draft responses and proposed orders for immediate filing.` | 1.90 |
| A. J. Love | 06/30/05 | Review and revise oppositions to motion for stay pending appeal in both 05-97 and 05-98. | 0.30 |

Total Hours: 15.90

**Total Fees:** **$6,942.00**

**Timekeeper Summary**

| Timekeeper | Hours | Rate | Value Billed |
|---|---|---|---|
| A. J. Love | 4.30 | $360.00 | $1,548.00 |
| P. J. Potter | 11.60 | 465.00 | $5,394.00 |
| **Total:** | **15.90** | | **$6,942.00** |

**Disbursement Summary**

| Type | Amount |
|---|---|
| Express Courier Service | 14.80 |
| Postage | 14.38 |
| Reproductions | 86.00 |
| Telephone/Telex/Telecopy | 2.00 |
| **Total:** | **$117.18** |

**Total Due For Matter 0000026:**     **$7,059.18**



Pillsbury
Winthrop
Shaw
Pittman LLP



Tax ID No. 94-1311126

Invoice No. 7141555
Client No. 523954
Matter No. 0000026
P. J. Potter
(202) 663-8000

## Remittance Advice

Please Remit to:    **Pillsbury Winthrop Shaw Pittman LLP**
**P.O. Box 601240**
**Charlotte**
**NC 28260-1240**
**Tax No. 94-1311126**

**Please enclose this remittance advice with your payment to ensure proper credit.**

| Matter Number | Services | Disbursements | Balance Due |
|---|---|---|---|
| 0000026 | $6,942.00 | $117.18 | $7,059.18 |
| **Total This Invoice:** | **$6,942.00** | **$117.18** | **$7,059.18** |

*Payable in U.S. Dollars upon receipt.*
*You may wire transfer your remittance to Wachovia Bank, ABA# 053000219 (S.W.I.F.T. Code*
*PNBPUS33) for credit to Pillsbury Winthrop Shaw Pittman LLP, Account Number 2000028308009*
*Please include our client, matter and invoice number(s) for proper identification.*
*Additional remittance information may also be forwarded to "accountsreceivable@pillsburylaw.com"*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | Chapter 11 |
| Debtor. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2005 copies of the following

- Statement of Fees and Expenses – June 2005

- Statement of Fees and Expenses – July 2005

were served by pdf (e-mail) **and by first class mail** on the following:

Donald Hartman
700 Constitution Ave., N.E.
Washington, D.C. 20002

John Douglas Burns
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770

_/s/ Andrew J. Love_
Andrew J. Love

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE:                              ) | |
|                                     ) | |
| CAPITOL HILL GROUP,                 ) | **CASE NO. 02-0359** |
|                                     ) | **CHAPTER 11** |
|               Debtor.               ) | |

## STATEMENT OF FEES AND EXPENSES – JULY 2005

    1.     The undersigned respectfully submits this Statement of Fees and Expenses for July 2005 (and with respect to Fiske & Ebersohl, August 1, 2005). As the attached reflects, during this month Shaw Pittman[1] was engaged in (i) defending/prosecuting issues in connection with the pending District Court appeals (Case Nos. 05-97 & 05-98); (ii) seeking payment from the Bankruptcy Court on the December 1, 2004 judgment; (iii) prosecuting damages claims evidenced by post August 2004 fees and expenses; and (iv) initial defense/prosecution of the appeals taken by Capitol Hill Group to the United States Court of Appeals for the District of Columbia Circuit. All rights are reserved to supplement this statement with additional fees and expenses that post after the date hereof.

    2.     The undersigned seeks, as contract damages, a recovery of the attached fees and expenses pursuant to (among other things) the August 17, 2004 remand of the United States District Court.

---

[1]    Now known as Pillsbury Winthrop Shaw Pittman LLP (“**Shaw Pittman**”).

3.    This matter (together with additional fees and expenses incurred after May 31, 2005 until this matter is finally concluded) will be heard pursuant to further hearings scheduled and noticed by the Court and/or the undersigned.

Dated:  August 4, 2005

/s/ Patrick J. Potter
Patrick J. Potter (426514)
Andrew J. Love (456227)
2300 N Street, N.W.
Washington, D.C.  20037
Tel: (202) 663-8000

Document #: 1493394 v.1

LAW OFFICES

## FISKE & EBERSOHL, PLLC
100 North Pitt Street, Suite 206
Alexandria, Virginia 22314

Telephone
703-518-9910

Facsimile
703-518-9931

EIN# 20-2148148



Pillsbury Winthrop Shaw Pittman

Invoice for Legal Services Rendered by Fiske & Ebersohl through August 3, 2005

See attached statement for detailed description of July and August charges

**Balance due**          **$11,757.50**

Please mail payment along with a copy of this page to:

Fiske & Ebersohl, PLLC
100 North Pitt Street, Suite 260
Alexandria, VA 22314

Thank you.

**Fiske & Ebersohl, PLLC**
**100 North Pitt Street, Suite 206**
**Alexandria, VA  22314**
**703-518-9910**

Invoice submitted to:

Pillsbury Winthrop Shaw Pittman

| Billing Date | Invoice Number | Last Bill Date |
|---|---|---|
|  | 10007 |  |

### Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 7/26/2005 LVE | Review/analyze background documents received from P. Potter; communications with same; preparation for trial. | 2.00 300.00/hr | 600.00 |
| 7/27/2005 LVE | Review/analyze documents and pleadings; communications with A. Love and P. Potter. | 5.00 300.00/hr | 1,500.00 |
| 7/28/2005 LVE | Review/analyze issues; review Love testimony; review research chart; briefly review Rule 54 issues; review orders; review transcripts. | 3.75 300.00/hr | 1,125.00 |
| 7/29/2005 LVE | Plan & Prepare for trial; review exhibits; analyze issues; telephone call with P. Potter; review email communications; review filings, pleadings, transcripts, and correspondence. | 5.25 300.00/hr | 1,575.00 |
| 7/30/2005 LVE | Review/analyze transcripts; review documents; preparation for trial on Monday. | 3.00 300.00/hr | 900.00 |
| 7/31/2005 LVE | Plan & Prepare for trial tomorrow; discuss issues with P. Potter; prepare testimony; review documents; prepare exhibit notes; analyze potential objections and cross; review transcripts; review legal issues. | 10.25 300.00/hr | 3,075.00 |
| 8/1/2005 LVE | Preparation for trial; meeting with P. Potter; conduct trial before J. Teel; Analyze issues post-trial with P. Potter. | 9.75 300.00/hr | 2,925.00 |
| | For professional services rendered | 39.00 | $11,700.00 |

Pillsbury Winthrop Shaw Pittman

Page  2

## Additional Charges

| | | Qty/Price | Amount |
|---|---|---|---|
| 7/29/2005 | Copying | 290 0.15 | 43.50 |
| 8/2/2005 | Parking | 1 14.00 | 14.00 |
| | Total additional charges | | $57.50 |
| | Total amount of this bill | | $11,757.50 |
| | Balance due | | $11,757.50 |

Payable upon receipt.  Thank you.

Please make checks payable to Fiske & Ebersohl, PLLC



**Pillsbury
Winthrop
Shaw
Pittman** LLP



Tax ID No. 94-1311126

Invoice No. 7141610
Client No. 523954
Matter No. 0000026
P. J. Potter
(202) 663-8000

**For Professional Services Rendered And Disbursements Incurred Through July 31, 2005**

| Matter Name | Services | Disbursements | Balance Due |
|---|---|---|---|
| Post Withdrawal Collection Efforts | $29,442.00 | $152.84 | $29,594.84 |
| **Total This Invoice:** | **$29,442.00** | **$152.84** | **$29,594.84** |

*Current charges only. Time and disbursements not yet recorded will be included in future invoices.*



2300 N Street, NW • Washington, DC • 20037-1128

Remittance Address
Pillsbury Winthrop Shaw Pittman LLP • P.O. Box 601240 • Charlotte, NC 28260-1240

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 523954
Matter No. 0000026
P. J. Potter



Invoice No. 7141610
Page 2

**Post Withdrawal Collection Efforts**
For Professional Services Rendered And Disbursements Incurred Through July 31, 2005

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| P. J. Potter | 07/01/05 | CHG. Prepare for 7/5 hearing. | 0.50 |
| P. J. Potter | 07/05/05 | CHG. To/from hearing at bankruptcy court on release of funds as well as status and scheduling hearing for August 1st trial. | 2.50 |
| P. J. Potter | 07/05/05 | CHG. Analyze "mandate" issue and develop/implement strategy for same. | 0.70 |
| A. J. Love | 07/05/05 | Review proposed amended orders regarding denial of motion to stay pending appeal in light of Kessel's ruling from the bench, prepare notices in connection with same and call to clerk's office regarding procedure for filing same. | 0.30 |
| A. J. Love | 07/12/05 | Research re bankruptcy appeals in DC and issuance of mandates (1.3); draft opposition to emergency motion to stay and review case cited by CHG (1.2); review scheduling order and calendar dates re additional fee hearing (.1); finalize bill of costs in 97 and 98 appeals (.1). | 2.70 |
| P. J. Potter | 07/13/05 | Appeal. Review and edit opposition to second stay motion (re-mandate). | 0.10 |
| A. J. Love | 07/13/05 | Revise and finalize oppositions to expedited stay motions in 05-97 and 05-98. | 0.60 |
| A. J. Love | 07/18/05 | Begin gathering documents in response to D. Hartman request for documents. | 0.10 |
| A. J. Love | 07/19/05 | Review responsive documents to CHG discovery requests, discussions with library re: obtaining Lexis contract per CHG discovery request, draft SP list of exhibits and witnesses. | 0.60 |
| P. J. Potter | 07/20/05 | CHG/August 1 Trial issues. Analyze scheduling order, strategy development (analyzing options due to CHG's default and failure to timely file); draft proposed judgment and application for entry of same, and forward to A. Love to finalize and file. | 1.00 |
| P. J. Potter | 07/20/05 | CHG/August 1 Trial issues. Analyze discovery request (of 7/15/05) from D. Hartman and analyze documents in order to respond, compiling same and reviewing, supervise bate stamping and send to D. Hartman with cover comments. | 1.10 |
| P. J. Potter | 07/20/05 | Several rounds of correspondence from/to J. Burns, and regarding J. Burns (with A. Love). | 0.40 |
| A. J. Love | 07/20/05 | Follow up with P. Potter regarding responding to CHG discovery requests and revise exhibit and witness list (.4 ); revise application for entry of judgment based on CHG's failure to respond by court deadline and call with clerk regarding filing of same (.4); review and respond to J. Burns email regarding filing of application, check docket based upon his assertions that pleadings had been filed (.1); begin | 1.00 |

# Pillsbury Winthrop Shaw Pittman LLP

Client No. 523954
Matter No. 0000026
P. J.Potter



Invoice No. 7141610
Page 3

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| | | revising complaint to force debtors to execute security agreement (.1). | |
| P. J. Potter | 07/21/05 | CHG. (a) draft letter (.20); (b) Lexis analyze and go over issues with S. Mills and attention to confidentiality issues (.50); (c) edit letter (.10); (d) review witness and exhibit list and discuss with A. Love and outline strategy and list of trial book (.70); corresponded to J. Burns (letter) and D. Hartman (letter and separate e-mail regarding confidentiality agreement needed regarding Lexis agreement) (.10). Analyze J. Teel's mandate decision and developing strategy for addressing same (.50). Analyze process on Court of Appeals and develop timeline on same (.50). | 2.60 |
| P. J. Potter | 07/21/05 | CHG. Analyze and draft objection to motion to alter scheduling order, including tracking down exhibits. | 1.20 |
| P. J. Potter | 07/21/05 | CHG. Begin pulling testimony materials together - based on 10/21 hearings. | 0.40 |
| P. J. Potter | 07/21/05 | CHG. Analyzing rules (especially FRAP 6) governing bankruptcy appeals to USCA; analyzing whether there are any local or internal operating procedures at court of appeals leve for bankruptcies. Analyze 30-day stay issue under operating procedures. | 0.60 |
| P. J. Potter | 07/21/05 | CHG. Analyzing time records in initial preparation for August 1 Trial. | 0.70 |
| P. J. Potter | 07/21/05 | CHG. Analyze status/strategy with A. Love and regarding docket/filing issues. | 0.20 |
| A. J. Love | 07/21/05 | Finalize, revise and file exhibit and witness list and discuss same with P. Potter (.6); prepare confidentiality agreement in connection with production of Lexis contract as requested by CHG (.7); shepherdize Richards case and review Collier cite to same (.2 ); revise opposition to motion for more time by CHG and draft order regarding same (.7); discuss and analyze R. 8017 issues with P. Potter (.1 ); begin review of documents for trial binders and identifying same for secretary (.2). | 2.30 |
| P. J. Potter | 07/25/05 | CHG/Appeal to DC Cir. Calls to clerks office regarding no notice received yet, and checking on-line at District Court and Circuit Court levels, and (once received by ECF) developing strategy for expedited appeal. | 0.50 |
| P. J. Potter | 07/25/05 | CHG/Trial on September-May. Preparing for trial by initial draft of direct testimony. | 3.50 |
| A. J. Love | 07/25/05 | Review and revise hearing binders that secretary created for fee hearing (.6); review appellate rules re filing of notices of appeal based upon 7/22/05 deadline to file notices of appeal (.1); revise DACA complaint and factual section regarding same (4.6); in connection with preparation for 8/1 hearing, begin chart/analysis of all research projects (1.4); review notices of appeal filed in 97 and 98 (.1). | 6.80 |

**Pillsbury Winthrop Shaw Pittman** LLP

Client No. 523954
Matter No. 0000026
P. J.Potter

Invoice No. 7141610
Page 4

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| P. J. Potter | 07/26/05 | CHG.  Analyze, review and comment on trial binders (add documents). | 0.20 |
| P. J. Potter | 07/26/05 | CHG.  Prepare materials (orders and chart) to assist L. Ebersohl in preparing for trial. | 0.80 |
| P. J. Potter | 07/26/05 | CHG.  Analyze procedural and substantive issues for August 1 fee trial, including Rule 54 and procedural posture issues: review orders, other documents of record anticipating CHG arguments, and develop resposnes. | 1.00 |
| P. J. Potter | 07/26/05 | CHG.  Analysis of USCA Rules and draft 2 Record Designations and supervise filing.  Brief call with A. Love about filing issues. | 0.90 |
| P. J. Potter | 07/26/05 | CHG.  Call from clerk regarding order entered.  Analyze order entered today and impact of same on Trial. | 0.20 |
| P. J. Potter | 07/26/05 | CHG.  Analysis of appellate stay strategy in order to obtain payment; including call with A. Love and review of stay motion to assess request and whether moot; draft letter to Judge Lamberth regarding motions of CHG being denied as moot. | 1.00 |
| A. J. Love | 07/26/05 | Begin review of District Court's prior opinions in preparation for fee hearing (.8); review and revise trial notebooks (.3); analyze Rule 54 issues with P. Potter (.1); continue draft of research chart for fee hearing (.3); Begin drafting direct testimony for fee hearing (.5); review appellate rules regarding filing of record, calls with ECF clerk and clerk's office regarding same, revise and file designations of record in 97 and 98 (1.0) | 3.70 |
| P. J. Potter | 07/27/05 | CHG.  Draft application for hearing on the Rule 54 issue. | 1.00 |
| P. J. Potter | 07/27/05 | CHG.  Extended analysis of documents and record in order to draft (and actually draft and edit) the Reply on Rule 54, as well as draft proposed order. | 5.50 |
| P. J. Potter | 07/27/05 | CHG.  Trial preparation: teleconference with L. Ebersohl regarding status and trial issues (.30); compile materials and send several e-mails with materials and explanations to L. Ebersohl (.70). | 1.00 |
| P. J. Potter | 07/27/05 | CHG.  Trial preparation.  Additional drafting of PJP testimony, review draft of A. Love's tesimony and research chart. | 0.70 |
| P. J. Potter | 07/27/05 | CHG.  Review several correspondence from J. Burns, analyze and respond to same (.10).  Review/analyze CHG's Surreply on the Rule 54 issue (.20). | 0.30 |
| A. J. Love | 07/27/05 | Review and revise emergency motion for hearing on CHG Rule 54 issue raised in its opposition file 7/26 and draft proposed order regarding same (.4); telephone calls to courtroom deputy and judge's clerk regarding same (.2); research regarding Rule 54(d)(2) (it's applicability to this dispute, whether it is a procedural rule or a substantive rule, as stated by CHG, and for cases where an original Rule 54 | 7.10 |

# Pillsbury Winthrop Shaw Pittman LLP

Client No. 523954
Matter No. 0000026
P. J.Potter



Invoice No. 7141610
Page 5

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| | | motion was filed and supplements were later filed and prepare inserts for reply brief regarding same) (4.7); review and revise substantive reply brief on Rule 54 issues (1.3); revise direct testimony of A. Love (.2); calls from and to J. Burns' secretary regarding consenting to postponing hearing on Rule 54 until Friday 7/29 (.1); review CHG surreply and re-review Shaw Pittman's reply in light of issues raised (.1); revise exhibit and witness list (.1). | |
| P. J. Potter | 07/28/05 | CHG/Rule 54. Review surreply and request cases from J. Burns pleading be pulled (.10); legal analysis and reading of treatises on Rule 54 (.50); reading cases pulled by SP (.50); analyzing additional exhibits and incorporate into supplement to Reply for filing (1.40). [Note: work with A. Love for approximately 1 hour where we did not stop analyzing and developing trial/appellate strategy (no time/charge for this).] | 2.50 |
| P. J. Potter | 07/28/05 | CHG. Review several e-mails from J. Burns. Consider his comments and requests. Draft, edit and send my responses. | 0.20 |
| P. J. Potter | 07/28/05 | CHG. Trial preparation - revising revised testimony and analyzing research chart. | 0.30 |
| P. J. Potter | 07/28/05 | CHG/AppealsUSCA. Review website to see in case docketed and call with clerk about docketing and appeal/briefing process. | 0.20 |
| P. J. Potter | 07/28/05 | CHG/Rule 54. Outline argument for Friday hearing (obviously, before knowing hearing was canceled). | 0.30 |
| P. J. Potter | 07/28/05 | CHG/Rule 54. Read CHG cases and distinguish/allign (.50); analyze Gonzales decision (.30); call with A. Love on status/strategy (.20). This was before Order on no hearing. | 1.00 |
| P. J. Potter | 07/28/05 | CHG/August 1 Trial. Being drafting Reply to the rest of the objections of CHG (i.e. the non rule 54 objections). | 1.40 |
| A. J. Love | 07/28/05 | Review security agreement in connection with waiver of rights clause as additional response to CHG's Rule 54 motion (.1b); revise exhibit and witness lists (.2); review and revise supplement to reply to Rule 54 motion (.2); working lunch with P. Potter discussing Rule 54 issues and appeals (1.0) [1.0 not billed]. | 0.50 |
| P. J. Potter | 07/29/05 | CHG/August 1 Trial. Teleconferences and correspondence with L. Ebersohl on trial status/strategy. | 0.40 |
| P. J. Potter | 07/29/05 | CHG/August 1 Trial. Analyze voice mail from J. Burns about postponing trial and giving CHG another opporunity to file objections; draft letter in response. | 1.00 |
| P. J. Potter | 07/29/05 | CHG/August 1 Trial. Drafting, editing and finalizing the Reply to the non Rule 54 objections. | 2.70 |
| P. J. Potter | 07/29/05 | CHG. Analyze J. Burns additional e-mail on putting off trial; analyze court order; draft and send response; circulate to team; provide instructions to A. Love to draft motion to strike if CHG files more objections. | 0.30 |

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 523954
Matter No. 0000026
P. J.Potter

Invoice No. 7141610
Page 6

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| A. J. Love | 07/29/05 | Revise DACA complaint (1.4); preparation for hearing (draft proposed order, ensure we have copies of exhibits, revise additional research matters exhibit, review time entries, revise exhibit list [.5 hrs. not billed]) (2.1); draft motion to strike and proposed order (.4). | 3.90 |
| P. J. Potter | 07/30/05 | CHG.  Review and edit testimony for August 1 Trial. | 0.50 |
| P. J. Potter | 07/31/05 | CHG.  Teleconference with L. Ebersohl preparing for August 1 Trial. | 1.00 |

|  |  | Total Hours: | 70.00 |
|---|---|---|---|
|  |  | **Total Fees:** | **$29,442.00** |

**Timekeeper Summary**

| Timekeeper | Hours | Rate | Value Billed |
|---|---|---|---|
| A. J. Love | 29.60 | $360.00 | $10,656.00 |
| P. J. Potter | 40.40 | 465.00 | 18,786.00 |
| **Total:** | **70.00** |  | **$29,442.00** |

**Disbursement Summary**

| Type | Amount |
|---|---|
| Computer Research | 112.75 |
| Reproductions | 40.09 |
| **Total:** | **$152.84** |

**Total Due For Matter 0000026:**    $29,594.84



**Pillsbury
Winthrop
Shaw
Pittman** LLP



Tax ID No. 94-1311126

Invoice No. 7141610
Client No. 523954
Matter No. 0000026
P. J. Potter
(202) 663-8000

## Remittance Advice

Please Remit to:  **Pillsbury Winthrop Shaw Pittman LLP**
**P.O. Box 601240**
**Charlotte**
**NC 28260-1240**
**Tax No. 94-1311126**

**Please enclose this remittance advice with your payment to ensure proper credit.**

| Matter Number | Services | Disbursements | Balance Due |
|---|---|---|---|
| 0000026 | $29,442.00 | $152.84 | $29,594.84 |
| **Total This Invoice:** | **$29,442.00** | **$152.84** | **$29,594.84** |

*Payable in U.S. Dollars upon receipt.*
*You may wire transfer your remittance to Wachovia Bank, ABA# 053000219 (S.W.I.F.T. Code*
*PNBPUS33) for credit to Pillsbury Winthrop Shaw Pittman LLP, Account Number 2000028308009*
*Please include our client, matter and invoice number(s) for proper identification.*
*Additional remittance information may also be forwarded to "accountsreceivable@pillsburylaw.com"*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2005 copies of the following

- Statement of Fees and Expenses – June 2005

- Statement of Fees and Expenses – July 2005

were served by pdf (e-mail) **and by first class mail** on the following:

Donald Hartman
700 Constitution Ave., N.E.
Washington, D.C. 20002

John Douglas Burns
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770

/s/ Andrew J. Love
Andrew J. Love

# SUB-EXHIBIT 16

The order below is hereby signed.

    Signed: September 13, 2005.



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: | ) |
|  | ) |
| **CAPITOL HILL GROUP,** | )    **CASE NO. 02-0359** |
|  | )    **Chapter 11** |
| Debtor. | ) |

### STIPULATED JUDGMENT (Third) PURSUANT TO THE AUGUST 17, 2004 REMAND OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

In connection with the fees and expenses of Shaw Pittman[1] as set forth in the filings with the Court on August 4, 2005 [Docket Entries ("**DE**") 895 and 896 (collectively, the "**Shaw Pittman Statements**"), and finding good cause for awarding fees and expenses to Shaw Pittman in connection with the Shaw Pittman Statements (subject to a $3,000 discount agreed to by Shaw Pittman), it is

---

[1]      Now known as Pillsbury Winthrop Shaw Pittman LLP ("**Shaw Pittman**").

ORDERED and ADJUDGED that Shaw Pittman recover of the debtor Capitol Hill Group

$45,411.52, with post judgment interest on the total judgment award as provided by 28 U.S.C. §

1961.

[Signed and dated above.]

Stipulated and Agreed To:

For Capitol Hill Group:

____/s/____Donald R. Hartman____
Donald R. Hartman  (Bar No. 291625)
700  Constitution Ave.,  N.E.
Washington, D.C. 20002
(202) 546-5700


For Shaw Pittman:

____/s/____Patrick J. Potter____
Patrick J. Potter (No. 426514)
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000


Copes to:

Office of the U.S. Trustee
115 South Union Street, Suite 210
Alexandria, Virginia  22314

Patrick Potter
2300 N Street, N.W.
Washington, D.C. 20037

Donald Hartman
700 Constitution Avenue, N.E.
Washington, D.C. 20002

John Burns
6303 Ivy Lane, Suite 102
Greenbelt, Maryland 20770
Document #: 1498022 v.1

2

The order below is hereby signed.

    Signed: September 13, 2005.



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge


## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:             ) | |
|             ) | |
| CAPITOL HILL GROUP,   ) | **CASE NO. 02-0359** |
|             ) | **Chapter 11** |
|       Debtor.     ) | |

### STIPULATED JUDGMENT (Third) PURSUANT TO THE AUGUST 17, 2004 REMAND OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

In connection with the fees and expenses of Shaw Pittman[1] as set forth in the filings with the Court on August 4, 2005 [Docket Entries ("**DE**") 895 and 896 (collectively, the "**Shaw Pittman Statements**"), and finding good cause for awarding fees and expenses to Shaw Pittman in connection with the Shaw Pittman Statements (subject to a $3,000 discount agreed to by Shaw Pittman), it is

---

[1]     Now known as Pillsbury Winthrop Shaw Pittman LLP ("**Shaw Pittman**").

ORDERED and ADJUDGED that Shaw Pittman recover of the debtor Capitol Hill Group

$45,411.52, with post judgment interest on the total judgment award as provided by 28 U.S.C. §

1961.

[Signed and dated above.]

Stipulated and Agreed To:

For Capitol Hill Group:

_____/s/____Donald R. Hartman_____
Donald R. Hartman  (Bar No. 291625)
700  Constitution Ave.,  N.E.
Washington, D.C. 20002
(202) 546-5700

For Shaw Pittman:

_____/s/_____Patrick J. Potter_____
Patrick J. Potter (No. 426514)
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

Copes to:

Office of the U.S. Trustee
115 South Union Street, Suite 210
Alexandria, Virginia  22314

Patrick Potter
2300 N Street, N.W.
Washington, D.C. 20037

Donald Hartman
700 Constitution Avenue, N.E.
Washington, D.C. 20002

John Burns
6303 Ivy Lane, Suite 102
Greenbelt, Maryland 20770
Document #: 1498022 v.1

SUB-EXHIBIT 17

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

MOTION TO STAY, PENDING APPEAL, THE JUDGMENT
OF THE COURT REGARDING ATTORNEYS' FEES AND COSTS
AWARDED TO SHAW PITTMAN
AND
OPPOSITION TO SHAW PITTMAN'S APPLICATION FOR
IMMEDIATE RELEASE OF FUNDS TO SATISFY THE AUGUST 1, 2005
<u>JUDGMENT ENTERED BY THE COURT</u>

Capitol Hill Group ("CHG") "), pursuant to Rule 62 of the Federal Rules of Civil

Procedure and as these Rules are made applicable to this Court, respectfully submits this

Motion to Stay, Pending Appeal, the Judgment of the Court Regarding Attorneys' Fees

and Costs Awarded to Shaw Pittman ("Motion to Stay") regarding the Judgment entered

by the Court on August 1, 2005 awarding certain fees and expenses incurred by Shaw

Pittman LLP ("Shaw Pittman") and this concurrent Opposition to Shaw Pittman's

Application for Immediate Release of Funds to Satisfy the August 1, 2005 Judgment

Entered by The Court ("Opposition").

**Background**

1.     On August 1, 2005, the Court entered a Judgment granting Shaw

Pittman's Motion for Attorneys' Fees and Costs (the "Judgment").

2.    On August 2, 2005, Shaw Pittman filed an Application for Immediate Release of Funds to Satisfy the August 1, 2005 Judgment Entered by the Court ("Application"). Such funds are the result of a cash bond CHG previously placed with the registry of the Court (see paragraph 4, below).

3.    On August 10, 2005, CHG filed a Notice of Appeal with the Court regarding the August 1, 2005 Judgment.

4.    In January 2005, CHG posted a cash bond with this Court in the amount of approximately $332,000 regarding its appeals to the U.S. District Court of other judgments and orders of this Court.

### Relief Requested

5.    CHG respectfully requests that the Court stay the August 1, 2005 Judgment until such time as the appropriate appellate court makes a final determination regarding the appeal to be filed by CHG in this matter. In the event that this Court grants the Motion to Stay the Judgment, this will effectively moot Shaw Pittman's Application to release any funds to satisfy this Judgment.

6.    Even if this Court were to deny the Motion to Stay, the fund from which Shaw Pittman is seeking to satisfy the August 1, 2005 Judgment is a cash bond posted with the Court regarding other judgments and orders of this Court, and these funds should not be made available to satisfy the August 1, 2005 Judgment.

### Basis for Relief

7.    The Motion to Stay filed by CHG seeks to postpone the date set by law allowing Shaw Pittman to execute on the Judgment until such time as CHG's appeals are ruled on by the appropriate court. In the event that CHG is successful, the amount of the

2

Judgment could be either eliminated entirely or significantly reduced from the amounts determined to be owed at the hearing on August 1, 2005.

8.    Contemporaneously with the filing of this Motion, CHG has filed another motion with the Court seeking approval of a cash bond in the amount of the August 1, 2005 Judgment as surety for the payment of the amount of the Judgment in the event that CHG's appeal is unsuccessful. Since the judgment will be fully bonded, Shaw Pittman is adequately protected against any financial peril that may befall CHG during the pendency of the appeal.

9.    CHG anticipates that its appeal of the Judgment will focus on two distinct issues. These are: (i) whether the Court's overruling of CHG's objection regarding the applicability of Rule 54 was erroneous; and (ii) whether the Lodestar test was applied correctly by the Court particularly in the context of Rule 54. With regard to the first issue, CHG contends, notwithstanding the Bankruptcy Court's determination to the contrary, that Rule 54 is indeed applicable to the current litigation. With regard to the second issue, CHG maintains that the lodestar test was misapplied by the Court because, among other things, none of Shaw Pittman's billing records adequately substitute for a formal fee application because discrete tasks were not readily identifiable and/or organized in a manner that permitted the Court to isolate on the problems, that Shaw Pittman billed numerous expenses to CHG that had been marked up by Shaw Pittman in such a manner as to provide a substantial profit to Shaw Pittman rather than being passed through to CHG at Shaw Pittman's costs, all in contravention of prevailing law, and that Shaw Pittman did not decline, nor was Shaw Pittman otherwise prevented, from undertaking any other representation in order to handle this matter..

10.    The fund from which Shaw Pittman is seeking to satisfy the August 1, 2005 Judgment is in the form of a cash bond posted with the Court regarding other judgments and orders of this Court, and these funds should not be made available to satisfy the August 1, 2005 Judgment.

WHEREFORE, CHG respectfully requests that the Court grant this Motion to Stay Pending Appeal as well as any other relief that the Court deems appropriate.

Dated:  August 11, 2005                    Respectfully submitted;


                                           _____/s/_____
                                           Donald R. Hartman  #291625
                                           700 Constitution Avenue, N.E.
                                           Washington, D.C.  20002
                                           (202) 546-5700

                                           *Counsel for Capitol Hill Group*

4

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

**ORDER ON CAPITOL HILL GROUP'S MOTION TO STAY, PENDING**
**APPEAL, THE JUDGMENT OF THE COURT REGARDING ATTORNEYS' TO**
**FEES AND COSTS AWARDED TO SHAW PITTMAN**
**AND**
**CAPITOL HILL GROUP'S OPPOSITION TO SHAW PITTMAN'S**
**APPLICATION FOR IMMEDIATE RELEASE OF FUNDS TO SATISFY**
**THE AUGUST 1, 2005 JUDGMENT ENTERED BY THE COURT**

This matter came before the Court on Capitol Hill Group's Motion to Stay,

Pending Appeal, the Judgment of the Court Regarding Attorneys' Fees and Costs

Awarded to Shaw Pittman ("Motion to Stay") regarding the Judgment entered by the

Court on August 1, 2005 awarding certain fees and expenses incurred by Shaw Pittman

LLP ("Shaw Pittman") and the concurrent Opposition to Shaw Pittman's Application for

Immediate Release of Funds to Satisfy the August 1, 2005 Judgment Entered by The

Court ("Opposition").  For the reasons set forth in the Motion,

IT SHALL BE AND HEREBY IS:

**ORDERED,** that the Motion of Capitol Hill Group to Stay, Pending Appeal, the

Judgment of the Court Regarding Attorneys' Fees and Costs Awarded to  Shaw Pittman

("Motion to Stay") regarding the Judgment entered by the Court on August 1, 2005

awarding certain fees and expenses incurred by Shaw Pittman LLP is granted on the

condition that CHG posts a cash bond with the registry of the Court in the amount of the

Judgment; and it is further

**ORDERED**, that Shaw Pittman's Application for Immediate Release of Funds to

Satisfy the August 1, 2005 Judgment Entered by the Court is dismissed without prejudice.


cc: Donald R. Hartman, Esq.
    Patrick Potter, Esq.
    United States Trustee

# SUB-EXHIBIT 18

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re | : |
|  | : |
| **CAPITOL HILL GROUP** | :     **Case No. 02-0359** |
|  | :     **(Chapter 11)** |
| Debtor. | : |
|  | : |

## MOTION TO APPROVE VOLUNTARILY DISMISSAL OF NOTICE OF APPEAL

Capitol Hill Group ("CHG"), by and through counsel, respectfully moves for approval of CHG's voluntary dismissal of its Notice of Appeal previously filed with the Court on August 11, 2005, regarding the Judgment (Second) Pursuant to the August 17, 2004 Remand of the United States District Court for the District of Columbia entered in this contested matter on August 1, 2005 including the Order entered by this Court overruling CHG's Rule 54 objection entered by this Court on July 28, 2005.

In support of this Motion, CHG states:

### Background

1.    On August 1, 2005, the Court entered Judgment granting Shaw Pittman LLP's application for attorneys' fees and costs.

2.    On August 11, 2005, CHG filed a Notice of Appeal with the Court.

### Relief Requested

3.    CHG requests an Order approving the voluntary dismissal of the Notice of Appeal.

WHEREFORE, CHG respectfully requests entry of an Order approving the voluntary dismissal of the Notice of Appeal previously filed with the Court.

Dated:   September 20, 2005                    Respectfully submitted,


                                               /s/ Donald R. Hartman
                                               Donald R. Hartman (Bar No. 291625)
                                               700 Constitution Ave., N.E.
                                               Washington, D.C. 20002
                                               (202) 546-5700

                                               *Counsel for Capitol Hill Group*

## *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that, on this 20th day of September, 2005, I duly served a copy of

the Motion of Capitol Hill Group for Approval of Voluntary Dismissal of Notice of Appeal, by facsimile

and by electronic mail, upon Patrick Potter, Esq., Shaw Pittman LLP, 2300 N Street, N.W.,

Washington, D.C.  20037.


s/s Donald R. Hartman
Donald Hartman, Esq.
D.C. Bar No. 291625
700 Constitution Avenue, N.E.
Washington, D.C. 20002
(202) 546-5700
*Counsel for Capitol Hill Group*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CAPITOL HILL GROUP,** | ) | **CASE NO. 02-0359** |
| | ) | **CHAPTER 11** |
| **Debtor.** | ) | |
| | ) | |

**ORDER GRANTING CAPITOL HILL GROUP'S MOTION SEEKING**
**APPROVAL OF ITS VOLUNTARY DISMISSAL OF ITS NOTICE OF APPEAL**

This matter came before the Court on Capitol Hill Group's ("CHG") Motion

Seeking Approval of CHG's Voluntary Dismissal of its Notice of Appeal previously filed

with the Court on August 11, 2005. For the reasons set forth in CHG's Motion,

IT SHALL BE AND HEREBY IS:

**ORDERED,** that the Motion is granted.

[Signed and Dated above.]

cc: Donald R. Hartman, Esq.
    Patrick Potter, Esq.
    United States Trustee

The order below is hereby signed.

    Signed: September 21, 2005.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge


# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CAPITOL HILL GROUP,** | ) | **CASE NO. 02-0359** |
| | ) | **CHAPTER 11** |
| Debtor. | ) | |
| | ) | |

## ORDER GRANTING CAPITOL HILL GROUP'S MOTION SEEKING APPROVAL OF ITS VOLUNTARY DISMISSAL OF ITS NOTICE OF APPEAL

This matter came before the Court on Capitol Hill Group's ("CHG") Motion

Seeking Approval of CHG's Voluntary Dismissal of its Notice of Appeal previously filed

with the Court on August 11, 2005. For the reasons set forth in CHG's Motion,

    IT SHALL BE AND HEREBY IS:

**ORDERED,** that the Motion is granted.

[Signed and Dated above.]

cc:  Donald R. Hartman, Esq.
     Patrick Potter, Esq.
     United States Trustee

# SUB-EXHIBIT 19

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |

### STATEMENT OF FEES AND EXPENSES – AUGUST 1, 2005 – SEPTEMBER 15, 2005

1.    This may (and hopefully will) be Shaw Pittman's[1] final Fee/Expense Statement in the case.  The decision in this regard is largely Capitol Hill Group's ("**CHG**"), in that it has demonstrated both its ability to extensively litigate and, more recently (with the September 12th Stipulated Judgment), its ability to take more rational actions.

2.    Shaw Pittman seeks to recover for less than 1 hour of time spent on this matter since September 9, 2005, after CHG filed pleadings announcing that it possessed resources to pay Shaw Pittman and intended to do so (that is, from September 12, 2005 through September 15, 2005).  While additional time from and including September 12, 2005 has been required (totaling $5,952 through September 15, 2005), including time spent analyzing legal issues relating to CHG's potential refusal to follow through with the positions contained in its September 9, 2005 pleading, Shaw Pittman does not seek to recover these amounts.

3.    The undersigned respectfully submits this Statement of Fees and Expenses for August 1, 2005 through September 15, 2005.  The attached does not include charges for a transcript ordered by Shaw Pittman because the invoice has not been received (the "**Transcript Cost**").  Notwithstanding anything to the contrary contained herein, Shaw Pittman intends to include the cost of the transcript in its recovery.

---

[1]    Now known as Pillsbury Winthrop Shaw Pittman LLP ("**Shaw Pittman**").

4.    As the attached reflects, during this month Shaw Pittman was engaged in (i) defending/prosecuting issues in connection with the then-pending District Court appeals (Case Nos. 05-97 & 05-98), especially attempting to obtain an order that would prevent additional frivolous appeals; (ii) litigating the trial on the August 1, 2005 judgment; (iii) initial defense/prosecution of CHG's appeal of the Court's Rule 54 Order and the Court's August 1, 2005 judgment (e.g., stay, appeal record, district court disclosure and timeliness issues); (iv) seeking payment from the Bankruptcy Court on the December 1, 2004 judgment (including addressing the mandate issues) and the August 1, 2005 judgment (including the application of funds issues); (v) addressing damages claims evidenced by post May 2005 fees and expenses (culminating in the September 12th Stipulated Judgment); (vi) initial defense/prosecution of the appeals taken by Capitol Hill Group to the United States Court of Appeals for the District of Columbia Circuit; (vii) prosecution of Shaw Pittman's rights under the Security Agreement to obtain execution of the so-called DACA agreement; and (viii) efforts to obtain global settlement (although no such agreement was reached). Except as described below, all rights are reserved to supplement this statement with additional fees and expenses that post after the date hereof.

5.    The undersigned seeks, as contract damages, a recovery of the attached fees and expenses pursuant to (among other things) the August 17, 2004 remand of the United States District Court. Provided, however, that:

a.    Shaw Pittman will not (under any circumstances), seek to recover the $5,952 in time entries designated "N/C"; and

b.    In addition, if CHG promptly enters into a Stipulated Judgment (without the necessity of scheduling a hearing on this matter), Shaw Pittman (as it indicated it would) will reduce the amount it seeks by $3,000; and, it will not include fees and expenses incurred on September 16, 2006 (this filing) and thereafter to conclude the matter.

6.     Thus, the total sought is either: (A) $44,152.48 (plus the Transcript Cost and post 9/15/05 litigation costs) if CHG chooses to litigate this matter or (B) $41,152.48 (plus the Transcript Cost) bringing this matter to a final conclusion.

7.     This matter (together with additional fees and expenses incurred after September 15, 2005 (only if CHG engages in further litigation), until this matter is finally concluded) will be heard pursuant to further hearings scheduled and noticed by the Court and/or the undersigned.


Dated:  September 16, 2005                    /s/ Patrick J. Potter
                                             Patrick J. Potter (426514)
                                             Andrew J. Love (456227)
                                             2300 N Street, N.W.
                                             Washington, D.C.  20037
                                             Tel: (202) 663-8000



Pillsbury
Winthrop
Shaw
Pittman LLP

Tax ID No. 94-1311126

Invoice No. 7156201
Client No. 523954
Matter No. 0000026
P. J. Potter
(202) 663-8000

**For Professional Services Rendered And Disbursements Incurred Through September 15, 2005**

| Matter Name | Services | Disbursements | Balance Due |
|---|---|---|---|
| Post Withdrawal Collection Efforts | $48,504.00 | $1,600.48 | $50,104.48 |
| **Total This Invoice:** | **$48,504.00** | **$1,600.48** | **$50,104.48** |



*Current charges only.  Time and disbursements not yet recorded will be included in future invoices.*

50,104.48
(5,952.00)
44,152.48

2300 N Street, NW • Washington, DC • 20037-1128

**Remittance Address**
Pillsbury Winthrop Shaw Pittman LLP • P.O. Box 601240 • Charlotte, NC 28260-1240

## Pillsbury Winthrop Shaw Pittman LLP

Client No. 523954
Matter No. 0000026                                                Invoice No. 7156201
P. J. Potter                                                                  Page 2

**Post Withdrawal Collection Efforts**
For Professional Services Rendered And Disbursements Incurred Through September 15, 2005

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| P. J. Potter | 08/01/05 | CHG.  Prepare for, travel to/from and participate in trial on August 1, 2005 judgment and post trial strategy with L. Ebersohol. | 8.50 |
| A. J. Love | 08/01/05 | Attend hearing on September 2004–May 2005 fees and expenses (4.0) and travel to and from same (.5) | 4.50 |
| P. J. Potter | 08/02/05 | CHG.  Analyze Rule 54 issues relative to expected appeal. | 0.40 |
| P. J. Potter | 08/02/05 | CHG.  Teleconference with J. Burns on possible settlement. | 0.20 |
| P. J. Potter | 08/02/05 | CHG/DACA Complaint.  Drafting revisions to DACA complaint. | 2.00 |
| A. J. Love | 08/02/05 | Review rules regarding adversary proceeding fees and payment of same in light of ECF, certification of judgment (.2); review revised DACA complaint, draft judgment in connection with same (1.3). | 1.50 |
| P. J. Potter | 08/03/05 | CHG. Drafting of application to release funds to pay August 1st Judgment. | 0.80 |
| P. J. Potter | 08/03/05 | CHG.  Drafting frivolous appeal (Rule 8020) motions to file in 05-97 & 05-98.  Objective:  enjoin appeals. | 1.40 |
| P. J. Potter | 08/03/05 | CHG.  Draft protective fee statement filing (supplement to April 2004 motion). | 0.40 |
| P. J. Potter | 08/03/05 | CHG.  Edit proposed judgment for DACA adversary proceedings. | 0.20 |
| P. J. Potter | 08/03/05 | CHG.  Analyze and prepare PWSP June and July draft statements to file shortly. | 0.30 |
| P. J. Potter | 08/03/05 | CHG.  Developing case strategy; review USCA docket for docketing of appeals; correspond with L. Ebersohl on her statements. | 0.20 |
| A. J. Love | 08/03/05 | Discuss process of obtaining certified copy of judgment and recording lien with legal assistant (.1); review and revise application for immediate release of funds from court registry (.3 );  review, revise and file four DACA complaints (1.4 ); review and revise rule 8020 motions for filing in district court in 05-97 and 05-98 (.4 ). | 2.20 |
| H. G. Skinner | 08/03/05 | Obtain a certified copy of a judgment and file it with the Recorder of Deeds Office for A. Love. | 3.10 |
| P. J. Potter | 08/04/05 | CHG (June July).  Analyze categories of services performed and draft filings. | 0.40 |
| A. J. Love | 08/04/05 | Review, revise and file June and July 2005 statements (.8); draft and file withdrawal for L. Ebersohl (.1). | 0.90 |
| P. J. Potter | 08/05/05 | J. Burns.  Review and figure out how to respond to first e-mail; draft and send. | 0.20 |
| P. J. Potter | 08/05/05 | J. Burns.  Review and figure out how to respond to additional e-mails and finally tell him to stop e-mailing as it is unnecessarily distracting and is not productive to anything. | 0.20 |

## Pillsbury Winthrop Shaw Pittman ʟʟᴘ

Client No. 523954
Matter No. 0000026
P. J.Potter

Invoice No. 7156201
Page 3

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| P. J. Potter | 08/05/05 | CHG. Developing appeal strategy. | 0.40 |
| A. J. Love | 08/05/05 | Revise rule 8020 motions in 05-97 and 05-98, draft orders regarding same and file same (.6); telephone call from and to S. Myers regarding scheduling, summonses (.1); draft notice of scheduling conference and revise proposed order regarding same and file same (all in connection with June and July fees) (.7); review summary judgment rules and file regarding 20 days from complaint (.2). | 1.60 |
| P. J. Potter | 08/08/05 | CHG. Review, analyze and respond to 2 rounds of correspondence from D. Hartman on scheduling of status conference. | 0.20 |
| P. J. Potter | 08/08/05 | CHG. Teleconference with J. Burns asking why we didn't foreclose and report on financing. | 0.10 |
| P. J. Potter | 08/08/05 | CHG. Extended additional analysis on the Mandate issue and why our funds should be released. Time comprised of reading treatise and cases on applicable rules (1.50) and begin drafting letter to J. Teel (.50). | 2.00 |
| A. J. Love | 08/08/05 | Review 4 summonses in connection with DACA complaints, review rules regarding service of same, prepare same for service by secretary. | 0.60 |
| A. J. Love | 08/09/05 | Review and file certificates of service regarding summonses in four DACA cases (.2); review rules regarding bill of costs, revise same (.3); review rules regarding certification of district court judgments in connection with "mandate" issue (.1) | 0.60 |
| P. J. Potter | 08/10/05 | CHG. Correspond to transcript company and review transript files (.10) and begin review of 11/2/04 transcript (.20). | 0.30 |
| P. J. Potter | 08/10/05 | CHG. Analyze 11/2/04 transcript on DACA (.50). Legal analysis of summary judgment issues, especially whether injunctive relief can be obtained under Rule 54, and conference with J. McKay and review treatises on same (1.10). | 1.60 |
| A. J. Love | 08/10/05 | Discuss rule 56 issues with P. Potter in connection with DACA complaints and bringing matter to prompt resolution (.2). | 0.20 |
| S. E. Mack | 08/10/05 | Request certified copies of court order. | 0.30 |
| P. J. Potter | 08/11/05 | CHG/Appeal. Developing strategy. | 0.20 |
| P. J. Potter | 08/11/05 | CHG/Rule 54. Analyze timeliness (tardy) of CHG's appeal, and what might be done to cure and strategy. | 0.20 |
| P. J. Potter | 08/11/05 | CHG. Receive notice of appeal and related papers and briefly review. | 0.20 |
| P. J. Potter | 08/11/05 | CHG. Analyze stay pending appeal issues (.60); call with transcipt company (.10); e-mails to D. Hartman (N/C). | 0.70 |
| P. J. Potter | 08/11/05 | CHG. Begin drafting opposition to stay motion. | 0.40 |
| P. J. Potter | 08/12/05 | CHG/Stay Pending Appeal. Drafting opposition (which required analyzing transcripts and CHG appeal pleadings to | 4.90 |

**Pillsbury Winthrop Shaw Pittman** ᴸᴾ

Client No. 523954
Matter No. 0000026
P. J.Potter

Invoice No. 7156201
Page 4

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| | | get at misleading statements to District Court, etc.) and 2 versions of stay orders. | |
| A. J. Love | 08/12/05 | Review and revise opposition to stay and discuss strategy regarding same with P. Potter. | 0.40 |
| A. J. Love | 08/15/05 | Review motion for stay, motion to post cash bond, notice of appeal and motion for more time to file response to rule 8020 motions [the first three motions appear to have been filed on Friday and previously reviewed, but skimmed through motions quickly to determine that they were identical to Friday's pleadings filed by CHG] | 0.10 |
| A. J. Love | 08/16/05 | Revise, finalize and file bill of costs (.4); revise opposition to stay pending appeal (.2); review response to 8020 motion filed by CHG (.1) [discussion with P. Potter regarding opposition to 8020, general strategy--.2 hrs not billed]. | 0.70 |
| P. J. Potter | 08/17/05 | CHG/8020/05-98. Drafting reply to opposition to 8020 motion. | 2.90 |
| P. J. Potter | 08/17/05 | CHG. Prepare filing on mandate issues (convert letter to praecipe). | 1.30 |
| P. J. Potter | 08/17/05 | CHG. Initial draft of letter to D. Hartman on next trial. | 0.50 |
| P. J. Potter | 08/17/05 | Edits to letter to D. Hartman (hold until response to scheduling order). | 0.30 |
| P. J. Potter | 08/17/05 | Rule 54. Compiling additional materials from the record to establish frivolity of argument, including transcripts, D. Court order, and 12/15/04 Bill of Costs. | 0.40 |
| P. J. Potter | 08/17/05 | CHG. Review and markup the scheduling order for June/July fees and attach with correspondence to D. Hartman. | 0.30 |
| A. J. Love | 08/17/05 | Brief research regarding whether the plain meaning rule applies to rules as well as statutes in connection with praecipe to J. Teel regarding mandate (.4); review praecipe regarding mandate (.2); research regarding rule 11 as tool to enjoin continued suits (.6) | 1.20 |
| P. J. Potter | 08/18/05 | CHG. Correspondence from/to D. Hartman. | 0.10 |
| P. J. Potter | 08/18/05 | CHG. Frist draft of Reply to CHG opposition to SP application to pay 8/1 judgment from funds posted in January (.70); finish draft by adding example of prior draw (.20). | 0.90 |
| P. J. Potter | 08/18/05 | Hartman letter: Edit in light of ongoing e-mails with him. | 0.20 |
| P. J. Potter | 08/18/05 | CHG. Correspondence from and to D. Hartman regarding scheduling problems. | 0.20 |
| P. J. Potter | 08/18/05 | CHG. 8020 Motion (05-98). Draft and add langauge to Reply. | 0.50 |
| P. J. Potter | 08/18/05 | CHG. Additional edits to letter to D. Hartman. | 0.10 |
| P. J. Potter | 08/18/05 | CHG/DACA. Draft first draft of summary judgment motion. | 1.00 |
| P. J. Potter | 08/18/05 | CHG. Teleconference with Reporter regarding transcripts required (8/1/05 and 3/8/04). | 0.10 |
| P. J. Potter | 08/18/05 | CHG. 8020 Motion (05-98). Analyze December transcripts | 0.30 |

## Pillsbury Winthrop Shaw Pittman ᴸᴸᴾ

Client No. 523954
Matter No. 0000026
P. J.Potter

Invoice No. 7156201
Page 5

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| | | for additional support. | |
| P. J. Potter | 08/18/05 | CHG. Final edits to D. Hartman letter. | 0.10 |
| P. J. Potter | 08/18/05 | CHG. Review and respond to D. Hartman e-mail (not duplicative entry). | 0.10 |
| P. J. Potter | 08/18/05 | CHG. Draft procedures motion for hearings every other month to save fees (.50); and conference with A. Love on strategy regarding same (.10). | 0.60 |
| P. J. Potter | 08/18/05 | CHG. Start designation of record (.20); start Notice of Appeal Response (.30). | 0.50 |
| A. J. Love | 08/18/05 | Research regarding docket in circuit court on appeals case (.1); research regarding whether a party who intentionally breaches its contract and continues to do so, increasing damages, can get subsequent court to reduce such damages (.6); review and revise reply to CHG's opposition to immediate release of funds (.2); draft motion to dispense with 8/24 scheduling conference due to D. Hartman's alleged unavailability, orders regarding same (1.7); review and revise motion to set procedures for future fee statements and order regarding same (.8 ) | 3.40 |
| P. J. Potter | 08/19/05 | Additional drafting and editing to 8020 brief in 05-98. | 0.50 |
| P. J. Potter | 08/19/05 | Drafting District Court Disclosure Document. | 0.30 |
| P. J. Potter | 08/19/05 | Drafting record designation on appeal from August 1 decision. | 0.50 |
| P. J. Potter | 08/19/05 | Developing CHG appeal strategy regarding stay issues regarding standards, including treatise reading and revising opposition to stay motion to provide for complete opposition. | 2.50 |
| A. J. Love | 08/19/05 | Review, revise, and file 8020 reply, praecipe with attachments regarding mandate, motion to establish procedures in case for future fee hearings, and motion to enter scheduling order on June/July 2005 fees and expenses (1.8); discuss appeal and bond issues with P. Potter (.2 hrs); review and revise motions for summary judgment in connection with DACA complaints (.3); begin preparing record designation (documents) for latest CHG appeal (.5 ) [discussions with P. Potter regarding case strategy, .4 hrs-- not billed] | 2.80 |
| A. J. Love | 08/22/05 | Compile items for designation of record ( .8 ); revise and file opposition to stay (.6); telephone call with P. Potter regarding status of 8/24 hearing, offer from CHG (.2); revise letter to CHG regarding settlement procedure (.2) | 1.80 |
| A. J. Love | 08/23/05 | Telephone call with courtroom deputy regarding status of scheduling conference, notice regarding praecipe and update P. Potter regarding same | 0.20 |
| P. J. Potter | 08/24/05 | CHG/June & July Fees. Prepare for and participate in hearing. | 0.50 |
| A. J. Love | 08/24/05 | Attention to/calendar dates for June/July hearing, respond to | 0.10 |

## Pillsbury Winthrop Shaw Pittman ᴸᴸᴾ

Client No. 523954
Matter No. 0000026                                                    Invoice No. 7156201
P. J.Potter                                                                      Page 6

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| | | P. Potter request regarding June and July fees for settlement purposes. | |
| A. J. Love | 08/25/05 | Review order and opinion on mandate issue and email P. Potter regarding same (.5); revise and file summary judgment motions in 4 DACA adversary proceedings, draft notices regarding same (1.5 ); finalize designation of record, file same, and letter to clerk regarding same (.7.) | 2.70 |
| A. J. Love | 08/26/05 | Telephone call with law clerk regarding praecipe and most economical way to present order directing clerk to release funds (.1); file amended notices in DACA proceedings (.3); review 8020 response by CHG (.1) | 0.50 |
| P. J. Potter | 08/29/05 | CHG/8020 Reply/05-97. Reading treatises on rules applicable to 8020 motions in light of arguments made by CHG in its 8/26 Response. Purpose is to see if we can enjoin further appeals to save time and money and reduce damages. | 1.70 |
| P. J. Potter | 08/29/05 | CHG/8020 Reply/05-97. Drafting Reply. Purpose is to see if we can enjoin further appeals to save time and money and reduce damages. | 2.70 |
| P. J. Potter | 08/29/05 | CHG/Settlement. Analysis of settlement position and begin drafting settlement letter. | 0.50 |
| P. J. Potter | 08/29/05 | CHG/8020 Reply/05-97. Reading cases on rules applicable to 8020 motions in light of arguments made by CHG in its Response. Purpose is to see if we can enjoin further appeals to save time and money and reduce damages. | 0.80 |
| P. J. Potter | 08/30/05 | December 1 Judgment. Teleconferences (x2) to Chambers (.10) and letter to finance deputy and follow-up voice mail with Court's release of funds letter (.20). | 0.30 |
| P. J. Potter | 08/30/05 | CHG/05-97. Analyze cases relating to timing and jurisdiction issues raised in J. Burns pleading. Purpose is to see if we can enjoin further appeals to save time and money and reduce damages. | 1.10 |
| P. J. Potter | 08/30/05 | CHG. Attention to appeal docket and disclosure of related cases filing. Settlement exchanges with CHG. | 0.20 |
| P. J. Potter | 08/31/05 | CHG/8020 Motion in 05-97. Analyzing cases relative to the procedural issues raised by J. Burns in his 8/26 pleading on timing to file a 8020 motion (2.0); finishing first draft of Reply incorporating the research and analysis (2.10). Purpose is to see if we can enjoin further appeals to save time and money and reduce damages. | 4.10 |
| P. J. Potter | 09/01/05 | CHG Appeals (CA 7103/7104). Analyzing DC Court's Practice and Internal Procedures focusing on emergency motions, stay motions and summary affirmance motions (.80). Begin developing strategy on summary affirmance (.20). | 1.00 |
| P. J. Potter | 09/01/05 | CHG Appeal 05-97. Finish Reply on 8020 Motion. Objective is to obtain an order preventing more appeals, thus preventing more fees and damags. Note: Spent 1 hour on | 1.20 |

## Pillsbury Winthrop Shaw Pittman ᴸᴸᴾ

Client No. 523954
Matter No. 0000026                                                    Invoice No. 7156201
P. J. Potter                                                                        Page 7

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| | | edits last night and not billing for it. | |
| P. J. Potter | 09/01/05 | CHG/Bankruptcy Level. Analyze J. Teel's memorandum decision and order, outlining issues and developing strategies for addressing payment issues. | 1.00 |
| P. J. Potter | 09/01/05 | CHG/5th Appeal (Rule 54 Ruling). Analyzing law on whether this was a final judgment that had to be appealed within 10 days. | 0.80 |
| P. J. Potter | 09/02/05 | To/from D. Court for check and deposit. ID required/timing/potential for stay. | 1.70 |
| P. J. Potter | 09/02/05 | DACA correspondence to/from regarding continuance requested by CHG and other defendants. | 0.20 |
| P. J. Potter | 09/02/05 | Draft order on release of funds to pay 8/1 judgment in light of B. Court's ruling yesterday that some could be paid from funds (.80); draft praecipe (.10); correspond with D. Hartman regarding settlement (.10). | 1.00 |
| P. J. Potter | 09/02/05 | Revising settlement structure proposal letter; edit; send. | 0.40 |
| P. J. Potter | 09/06/05 | CHG/Settlement. Attention to settlement: review correspondence from D. Hartman regarding willing to sign my 9/2/05 letter and asking for extensions. Analyze and respond to same. Review D. Hartman's draft stipulations and edit and return for finalizing and filing by D. Hartman. Drafting settlement. Discuss form of 9/2/05 settlement with R. Donaldson. Correspond to D. Hartman regarding payment timing. | 3.40 |
| A. J. Love | 09/06/05 | Review notices from court, revise and file proposed orders in DACA actions/summary judgment motions. | 0.50 |
| P. J. Potter | 09/07/05 | CHG/Settlement. Correspondence with D. Hartman on settlement and CHG's efforts to renegotiate economic terms of our 9/2/05 letter. Analyze, edit and send settlement agreement. In light of CHG's renegotiation effort, provide CHG limited time to accept. | 1.60 |
| P. J. Potter | 09/08/05 | CHG/September 15th Trial. Begin outlining presentation of case, e.g. by identifying major areas of work and estimating amounts allocable to same. | 1.30 |
| A. J. Love | 09/08/05 | Revise and file praecipe with proposed order regarding anticipated failure by CHG to file bond and release of funds. | 0.30 |
| P. J. Potter | 09/09/05 | CHG. Drafting opposition/reply on motion to postpone 9/15 trial.; correspondence with D. Hartman. | 1.50 |
| A. J. Love | 09/09/05 | File witness/exhibit list and serve same, telephone call to clerk's office regarding posting of bond or other filing (early afternoon prior to CHG pleading stating it did not object to release of funds from registry); voicemail to law clerk regarding order and voicemail to S. Myers regarding DACA dates for summary judgment motion (.3); review CHG pleadings (in DACA action and main case) requesting additional time (.2); telephone call with P. Potter regarding CHG filing and analysis of same and strategy and draft | 1.90 |

# Pillsbury Winthrop Shaw Pittman LLP

Client No. 523954
Matter No. 0000026
P. J.Potter

Invoice No. 7156201
Page 8

| Timekeeper | Date | Service | Hours |
|---|---|---|---|
| P. J. Potter | 09/12/05 | response (1.3); file response and serve same (.1). CHG. ▓▓▓▓▓▓ Do not bill ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 4.70 N/C |
| P. J. Potter | 09/12/05 | CHG. Correspond with D. Hartman (from/to) on how to deal with trial currently set; analysis regarding same; drafting proposed judgment (consent); respond to inquiries from D. Hartman (e.g. L. Ebersohl's bills etc.). | 0.30 |
| P. J. Potter | 09/12/05 | Finalizing consent judgment and supervise filing and calls to/with chambers regarding potential removal of trial from docket. Review Notice of hearing on SP motion for procedures. | 0.20 |
| P. J. Potter | 09/12/05 | CHG. Review e-mail from D. Hartman regarding postponing response on DACA; analyze request to determine downsides and negotiation issues; draft responses (x2) regarding probably extend, but depends on payment of recent judgment. | 0.10 |
| P. J. Potter | 09/13/05 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Do not bill]. | 3.00 N/C |
| P. J. Potter | 09/14/05 | CHG. Correspond to D. Hartman inquiring about stipulated order in DACA cases, and review his first draft order, which was incorrect and outlined points (.10); analyze, edit and return second order with redlining (.10). | 0.20 |
| P. J. Potter | 09/14/05 | CHG. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Do not bill.] | 2.80 N/C |
| P. J. Potter | 09/15/05 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ▓▓▓▓▓▓▓▓▓▓ Do not bill]. | 2.30 N/C |

|  | | | |
|---|---|---|---|
|  | | Total Hours: | 113.30 |
|  | | **Total Fees:** | **$48,504.00** |

## Timekeeper Summary

| Timekeeper | Hours | Rate | Value Billed |
|---|---|---|---|
| A. J. Love | 28.70 | $360.00 | $10,332.00 |
| S. E. Mack | 0.30 | 140.00 | 42.00 |
| P. J. Potter | 81.20 | 465.00 | 37,758.00 |

## Pillsbury Winthrop Shaw Pittman ᴸᴸᴾ

Client No. 523954
Matter No. 0000026
P. J.Potter

Invoice No. 7156201
Page 9

| Timekeeper | Hours | Rate | Value Billed |
|------------|-------|------|--------------|
| H. G. Skinner | 3.10 | 120.00 | 372.00 |
| **Total:** | **113.30** | | **$48,504.00** |

### Disbursement Summary

| Type | Amount |
|------|--------|
| Certification Fees | 48.40 |
| Computer Research | 538.60 |
| Deposition/Transcript | 38.60 |
| Express Courier Service | 78.18 |
| Filing Fee | 626.50 |
| Reproductions | 186.20 |
| Travel and Local Transportation | 84.00 |
| **Total:** | **$1,600.48** |

**Total Due For Matter 0000026:**     **$50,104.48**

DRAFT

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAPITOL HILL GROUP, | ) | CASE NO. 02-0359 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

### Certificate of Service

I hereby certify that on September 16, 2005, a copy of the foregoing statement of fees and expenses (with attached invoice) was served by electronic mail (pdf) on the following parties:

Donald Hartman
700 Constitution Ave., N.E.
Washington, D.C. 20002

John Douglas Burns
The Burns Law Firm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770

/s/ Andrew J. Love
Andrew J. Love

SUB-EXHIBIT 20

The order below is hereby signed.

    Signed: October 04, 2005.



                          _S. Martin Teel Jr._
                    S. Martin Teel, Jr.
                    United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE:** ) | |
| ) | |
| **CAPITOL HILL GROUP,** ) | **CASE NO. 02-0359** |
| ) | **Chapter 11** |
| **Debtor.** ) | |
| ) | |

### STIPULATED JUDGMENT (Fourth) PURSUANT TO THE AUGUST 17, 2004 REMAND OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

On September 16, 2005, Shaw Pittman[1] filed that certain "Statement of Fees and Expenses – August 1, 2005 – September 15, 2004" [Docket Entry 948] (the "Statement"). The parties hereby stipulating that a payment of $40,000 will satisfy the Statement in full, and further stipulating that this payment shall be made on or before November 15, 2005, it is

---

[1]    Now known as Pillsbury Winthrop Shaw Pittman LLP ("**Shaw Pittman**").

ORDERED and ADJUDGED that with respect to the Statement, Shaw Pittman recover of the debtor Capitol Hill Group $40,000 on or before November 15, 2005, with post judgment interest on the total judgment award as provided by 28 U.S.C. § 1961.

[Signed and dated above.]

**Stipulated and Agreed To September 27, 2005:**

For Capitol Hill Group:

_/s/ Donald R. Hartman_
Donald R. Hartman (No. 291625)
700 Constitution Ave., N.E.
Washington, D.C. 20002
(202) 546-5700

For Shaw Pittman:

_/s/     Patrick J. Potter_
Patrick J. Potter (No. 426514)
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

Copes to:

Office of the U.S. Trustee
115 South Union Street, Suite 210
Alexandria, Virginia  22314

Patrick Potter
2300 N Street, N.W.
Washington, D.C. 20037

Donald Hartman
700 Constitution Avenue, N.E.
Washington, D.C. 20002

EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITOL HILL GROUP,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff　　　　)　　　Civil Action No. 07-1936 (RCL)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
PILLSBURY WINTHROP　　　　　　)
SHAW PITTMAN LLP, *et al.*　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)

## AFFIDAVIT OF PETER C. SHIN

I, Peter C. Shin, hereby declare under penalty of perjury as follows:

1.　　　I am over 21 years of age and competent to testify as to the matters set forth herein.  This Affidavit is based upon my personal knowledge.

2.　　　I am the President, Chairman of the Board, and sole member of Capitol Hill Group ("CHG"), a not-for-profit corporation authorized to transact business in the District of Columbia.

3.　　　Between 1992 and the present, CHG has been the fee simple owner of certain real property located at 700 Constitution Avenue, NE, Washington, DC (the "Property").

4.　　　At a community meeting held in mid-March 2005 at the St. James Episcopal Church (which is adjacent to the Property) to discuss the prospective development of a portion of the Property, an individual associated with the Stanton Park Neighborhood Association informed me that an order dated September 9, 2004 (the "BZA Order") had been issued by the District of Columbia Board of Zoning Adjustment (the "BZA") which granted, in pertinent part, Appeal No.

17043 (the "Appeal"). Prior to this conversation, I was not aware that the BZA Order had been issued by the BZA, nor was I aware, from any source, that the BZA had taken any other action to grant the Appeal. The Order effectively obligated CHG to provide a 1:1 parking space/bed parking requirement for the Property.

5.      In late-March, 2005, I brought the BZA Order to the attention of Cynthia Giordano, a partner at the law firm of Arnold & Porter LLP, who was representing CHG at the time regarding several matters including the potential down-zoning of the Property. Ms. Giordano informed me that, since the BZA Order had been issued in September 2004, the time period for seeking appellate relief from this Order had expired.

6.      Shortly thereafter, Ms. Giordano arranged for a meeting with Mr. Toye Bello, who at the time was the Zoning Administrator of the District of Columbia Department of Consumer and Regulatory Affairs, the regulatory agency charged with enforcement of mandates such as the BZA Order.

7.      Ms. Giordano, Mr. Donald Hartman ( also counsel for CHG), and I met with Mr. Bello on March 31, 2005 to discuss CHG's compliance with, and the implications of, the BZA Order and to determine whether any administrative relief from this Order might be available.

8.      On February 27, 2006, CHG retained the law firm of Holland & Knight, LLP ("Holland & Knight") to represent its interests regarding the proposed down-zoning of the Property. The Holland & Knight partner responsible for this representation was Norman M. Glasgow, Jr. who works in Holland & Knight's D.C. office.

9.      During the Spring of 2006, I met with Mr. Glasgow at his office. Mr. Hartman also attended this meeting. During this meeting, Mr. Glasgow informed me that in light of a previous historic designation of a portion of the building on the Property by the D.C. Historic

2

Preservation Review Board, the D.C. Code of Municipal Regulations (the "DCMR"), as they had been historically interpreted, would have relieved CHG of the BZA Order's requirement to provide a 1:1 parking space/bed parking requirement for the Property, had the relevant regulations regarding the Property's historic designation been asserted before the D.C. Zoning Administrator or the BZA. Mr. Glasgow also informed me during this meeting that CHG would no longer be able to rely upon the DCMR to avoid the parking implications of the BZA Order because the D.C. Zoning Commission was then considering amendments to the DCMR which would significantly curtail the then-existing parking exception as it would have applied to the Property at that time.

10.     Prior to my Spring, 2006 conversation with Mr. Glasgow, I was unaware that an exception existed within the DCMR which could have potentially relieved CHG from the obligation under the September 9 Order to provide a 1:1 parking space/bed parking requirement for the Property.

11.     As a result of the issuance of the BZA Order, CHG is severely limited from either utilizing the Non-Leased Premises (as that term is defined in CHG's Opposition to Defendants' Motion for Summary Judgment (the "Opposition")) for itself, or leasing the Non-Leased Premises to others.

12.     The fee dispute which comprised the so-called "Fee Dispute Unit No. 1," (as that term is defined in CHG's Opposition) was not engendered by CHG's dissatisfaction with the quality of the work performed by Shaw Pittman, but rather from the amount of fees charged by Shaw Pittman, which CHG claimed was unreasonable.

13.     As stated in its Complaint, CHG's requests for relief in this case are limited to requests for monetary damages. CHG is not seeking disgorgement of fees already paid to

3

Defendants by virtue of prior orders of the United States Bankruptcy Court for the District of Columbia.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _24_ day of July, 2008.

Peter C. Shin

EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAPITOL HILL GROUP, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 07-1936 (RCL) |
| v. | ) | |
| | ) | |
| PILLSBURY, WINTHROP, | ) | |
| SHAW, PITTMAN, LLP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF DAVID N. WEBSTER

1.    David N. Webster makes this his Declaration based upon personal knowledge knowing that it will be filed by the plaintiff with the Court in the above-captioned case as a part of the plaintiff's opposition to the Motion for Summary Judgment heretofore filed by the Defendants.

2.    Based upon my experience with the D.C. Rules of Professional Conduct and the predecessors of those Rules and upon my research and consideration of them, I am personally familiar with the matters included in this Declaration and I am competent to testify concerning the issues treated in this Declaration.  My resume, which is attached as an exhibit to this Declaration, is an accurate summary of my career and experience as a lawyer and my functioning in the ethics field.

3.    I have read the portion of the defendant's memorandum in support of its motion for summary judgment in which the Defendant argues that the relationship of attorney-client previously existing between it and the Plaintiff had ended and therefore it owed no further fiduciary obligations to the Plaintiff.  I disagree with this position and make this Declaration to explain why I do so.

4.      A legal malpractice claim involves questions both of law and fact.  Whether there is a duty a lawyer owes to a client is usually considered a legal question, but if the existence of a duty depends on factual circumstances the existence of malpractice becomes a question of fact for the jury.  So also, the question of whether any duties survive a termination of the attorney-client relationship may have both legal and factual components.  Was the purported withdrawal valid under the Rules?  If it was valid, what duties, if any, resulted from the facts and circumstances found to be present by the jury?  If there were duties remaining, were they complied with by the attorney?

5.      Rule 1.16(b) of the D.C. Rules of Professional Conduct provides that ". . . a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client."  Here the factual question is presented whether the lawyer "accomplished" a valid withdrawal and protected the client from a potential "material adverse effect" such as the loss of the client's appellate rights.

In my opinion, the attempted withdrawal was not effective for the reasons that counsel did not notify the tribunal that counsel was no longer authorized to receive notice for his client and therefore the attempted withdrawal had the capacity for a material adverse effect on the interests of the client, and eventually did.  Further, in my opinion, notifying the tribunal of the withdrawal was both practicable and a reasonable thing to do to protect the client's interests.  Thus, the obligation to act in the client's best interests continued after the failed attempted withdrawal.

6.      Even if the purported withdrawal was "accomplished" properly, it is not so, as Defendant argues, that no fiduciary duties survived the termination.  After a valid termination, a lawyer is bound by the Rules to protect material covered by the attorney-client privilege, not to use confidential information for personal gain at the client's expense or for the benefit of a third person, not to engage in a prohibited conflict of interest, allowing time to employ new counsel,

2

surrendering papers to which the client is entitled, and refunding any advance fee which has not been earned.

7.   The Restatement of the Law, Third, The Law Governing Lawyers § 33 requires the withdrawing lawyer to take those steps if "reasonably practicable" which "protect the client's interests." That would include notifying the tribunal that the lawyer is withdrawing and all future communications should be sent directly to the client or if there be a follow-on lawyer to that lawyer's attention. Such notice to the tribunal is a practicable and reasonable thing for a withdrawing lawyer to do, and it will serve to protect the client's interests in pursuing an appeal from an adverse outcome.

8.   The same § 33 of the Restatement also provides that after an effective termination a withdrawing lawyer must "take reasonable steps to convey to the former client any material communication the lawyer receives relating to the matter involved in the representation," § 33(2)(c), and "give reasonable notice, to those who might otherwise be misled, that the lawyer lacks authority to act for the client." Here simple notice to the tribunal, a "practicable" thing to do, would have alerted the tribunal to notify the client directly about the new decision, thereby protecting the client's appellate rights. Not giving notice to the tribunal of the withdrawal by counsel apparently misled the tribunal to think that counsel remained engaged by the client to receive notices from the tribunal.

Further Declarant Sayeth Not.

_____
David N. Webster

3

I hereby declare that this Declaration is made under the penalties of perjury.

_____
David N. Webster

# DAVID N. WEBSTER

Mr. Webster is a partner in the law firm of Caplin & Drysdale, Chartered, Washington, D.C. He received an A.B. (1955) from Providence College where he recently served two four-year terms on its Board of Trustees and a J.D. (1958) from Georgetown University Law Center (first in the class) where he was awarded the Alumni Achievement Award in 1976 by the Alumni Club of Washington, D.C. He was admitted to the District of Columbia Bar in 1958 and the Maryland Bar in 1998. In 1959, he joined the law firm of Hogan & Hartson where he remained until 1967. He was a founding partner in the law firm of Williams & Connolly until 1981 when he joined Nussbaum, Owen & Webster. In 1989 he joined Caplin & Drysdale, Chartered, where he remains in practice.

Mr. Webster is a member of the Bar Association of the District of Columbia, and has served as: Chairman of its Legal Ethics Committee, Member of its Board of Directors, and President. Mr. Webster is a member of the Section of Litigation, American Bar Association, and its Professional Liability Litigation Committee. He is a Fellow of the American College of Trial Lawyers, a Fellow of the American Bar Foundation, a member of the American Judicature Society, The Barristers (Past President), and The Counsellors.

Mr. Webster has been Adjunct Professor of Criminal Law at Georgetown University Law Center, an instructor in Trial Practice at Catholic University Law School and taught a semester course in ethics at the University of Virginia Law School. He has appeared and lectured at the Harvard Law School, the University of Michigan Law School, the University of Florida Law School, Emory University Law School, and the University of Baltimore School of Law. He has been a faculty member of the National Institute of Trial Advocacy, and has appeared on programs sponsored by the Practicing Law Institute; D.C. Bar; ABA Section of Litigation; Georgetown University Law Center; Young Lawyers Section of the Bar Association; the Women's Bar Association of the District of Columbia; the Law Journal Seminars-Press; the Legal Times; the Virginia Trial Lawyers' Association; State Bar of Georgia; the West Virginia Bar; Close-Up Foundation; the Environmental Protection Agency; the Federal Trade Commission; and the Consumer Federation of America.

An active trial lawyer, Mr. Webster has conducted a broad range of civil and criminal trials in 16 states and the District of Columbia. His trials have included cases involving business fraud, securities fraud, contract actions, both for injunctions and damages, real estate matters, insurance coverage, employment litigation, both individual cases and class actions, aircraft and helicopter crashes, medical malpractice, products liability cases involving automobiles, pharmaceuticals and medical devices, toxic torts, the defense of legal malpractice cases for lawyers and law firms, and libel. He has served as an arbitrator and as arbitration counsel in matters under the AAA Commercial Arbitration and the NASD Rules. He has been listed in the Best Lawyers in America since its first edition in 1983. His current listings are in the areas of Commercial Litigation, Legal Malpractice, Personal Injury, Products Liability, and White Collar Criminal Defense.

He has also been retained and testified in actions in federal courts in which he qualified as an expert in complex civil litigation involving parallel grand jury proceedings, administrative debarment and simultaneous civil litigation and in matters involving the reasonableness of legal fees.

EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITOL HILL GROUP,    ) | |
| ) | |
| Plaintiff    ) | Civil Action No. 07-1936 (RCL) |
| ) | |
| ) | |
| v.    ) | |
| ) | |
| PILLSBURY WINTHROP    ) | |
| SHAW PITTMAN LLP, *et al.*    ) | |
| ) | |
| Defendants.    ) | |
| ) | |
| ) | |

## AFFIDAVIT OF MICHAEL B. MCGOVERN

I, Michael B. McGovern, hereby declare under penalty of perjury as follows:

1.      I am over 21 years of age and competent to testify as to the matters set forth herein.  This Affidavit is based upon my personal knowledge.

2.      I am an attorney admitted to practice in Maryland and the District of Columbia.  I am a partner at the law firm of Hanson & Molloy.  For the past 35 years, I have specialized in legal issues in the District of Columbia related to estates and trusts and real estate law, including issues relating to zoning and land use law, before the District of Columbia Board of Zoning Adjustment (the "BZA").  I am therefore familiar with BZA rules and its practice and procedure.

3.      I am aware that it is the Defendants' contention in this case that as of January 7, 2004, it was not practicable for Defendants to have informed the BZA that they no longer represented Plaintiff Capitol Hill Group in BZA Appeal No. 17043.  However, based upon my experience , including matters before the BZA, I am unaware of any provision in the District of Columbia Code or the District of Columbia Code of Municipal Regulations which precludes an

attorney who has entered his appearance for a party in a BZA matter from withdrawing that appearance for that party and substituting that party in its place.  I am also unaware of any informal practice of the BZA which purports to preclude such withdrawal by notifying the BZA in writing. .

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of July, 2008.

Michael B. McGovern

EXHIBIT G

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**CAPITOL HILL GROUP,**    )
)
    **Plaintiff**    )      **Civil Action No. 07-1936 (RCL)**
)
    **v.**    )
)
**PILLSBURY WINTHROP**    )
**SHAW PITTMAN LLP,** *et al.*    )
)
    **Defendants.**    )
)

## AFFIDAVIT OF EMIL HIRSCH

Now comes the Affiant, Emil Hirsch and upon being duly sworn on oath states as follow:

1)    This Affidavit is offered in support of the Plaintiff's invocation of Rule 56(f), Fed. R. Civ. P.  I have been counsel for the Plaintiff since the filing of this action.  Except as otherwise indicated herein regarding information derived from documents and pleadings, I have personal knowledge of the facts set forth in this Affidavit and I am competent to testify as to such facts.

2)    The discovery process in this case has not commenced.  On October 29, 2007, the Defendants filed their Motion for Summary Judgment ("SJ Motion").

3)    Simultaneously with the filing of this Affidavit, Plaintiff has filed its Memorandum of Points and Authorities In Opposition To Defendants' Motion along with papers in support of such opposition ("Opposition").

4)    As counsel for Plaintiff, I have been able to secure only four (4) substantive affidavits in order to raise genuine disputes of material facts as to the matters raised in the SJ

1

Motion. The only other source of information and facts available to me to support Plaintiffs' Opposition to the SJ Motion are certain documents which are in my possession. I do not have the benefit of any interrogatory answers by Defendants, any deposition testimony of Defendants, or any non-party witnesses, documents which Plaintiff would otherwise obtain under Rule 34, Fed. R. Civ. P., or responses to requests for admission of facts in order to support Plaintiff's Opposition.

5)      There exist certain aspects of the merits of this action, as they relate to the SJ Motion, where Plaintiff is without access to any admissible evidence which would enable Plaintiff to present a more complete and thorough Opposition to Defendants' SJ Motion. What follows below is a non-exclusive listing of the areas and types of evidence where discovery is necessary in order to further support the Plaintiff's Opposition:

a)      When did Defendants receive a copy of the BZA Order entered on September 9, 2004?

b)      Did any of the individual Defendants actually read the said BZA Order?

c)      Why did the Defendants not forward the BZA Order to CHG immediately upon its receipt by Defendants?

d)      What basis, if any, did the Defendants actually have on January 6, 2004 or thereafter for believing that it was not practical or feasible for them to notify the BZA in writing of their withdrawal as CHG's counsel and requesting the substitution of CHG as the party to be notified by the BZA of any developments including any BZA notices and order?

e)      Whether any claim of lack of practicality in notifying the BZA of such withdrawal by Defendants, as set forth above is in fact pretextual?

f)      Were the Defendants otherwise notified of the issuance of the BZA Order at any point prior to March, 2005?

g)      Were the Defendants aware of the existence of the so-called Historic Contribution Exemption and if so, when did they first become aware of i?

h)    What work, if any, did the Defendants perform for the purpose of determining whether the Historic Contribution Exemption had any applicability to CHG's Property?

i)    The reasons for Defendants' silence or failure to advise CHG of the existence of the Historic Contribution Exemption and its potential or actual applicability to CHG's Property.

6)    Plaintiff needs the benefit of depositions, documents and written discovery to enable it to further support its bases for rebutting the Defendants' statute of limitations and *res judicata* affirmative defenses.

7)    In conclusion, additional affidavits and other facts to supplement Plaintiff's current Opposition are unavailable due to the absence of any discovery in this action.

I hereby affirm under penalties of perjury that the contents of this Affidavit are true and correct based upon my personal knowledge, except as otherwise specifically indicated therein.

Dated:  July 25, 2006

143294_5.DOC

Emil Hirsch