UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CAPITOL HILL GROUP                  )
                                    )
    Plaintiff,                      )
                                    )
    v.                              )    Civil Action No. 07-1936 (RCL)
                                    )
PILLSBURY WINTHROP                  )
SHAW PITTMAN, LLP, et al.           )
                                    )
    Defendants.                     )
_____ )


**MEMORANDUM OPINION**

Now before the Court comes defendant Shaw Pittman's Motion for Summary Judgment. Upon consideration of the motion [4], plaintiff Capitol Hill Group's opposition [34], defendant Shaw Pittman's reply [37], the entire record herein, and applicable law, the Court will GRANT Shaw Pittman's Motion for Summary Judgment for the reasons set forth below.

**I.   BACKGROUND**

Plaintiff Capitol Hill Group ("CHG") filed suit against defendants Pillsbury Winthrop Shaw Pittman, LLP (collectively "Shaw Pittman"), in addition to their employees Paul A. Tummonds, Jr. and Patrick J. Potter, alleging a number of claims stemming from Shaw Pittman's representation of CHG in a bankruptcy proceeding. Since the plaintiff is asserting claims of legal malpractice, breach of contract, and breach of fiduciary duty arising out of Shaw Pittman's representation of CHG, and Shaw Pittman is defending on the ground that these claims are barred

by res judicata, two sets of facts are relevant to this Motion. First, the events that occurred during Shaw Pittman's representation of CHG and in the months after the termination of the representation. Second, the earlier litigation between Shaw Pittman and CHG that occurred in bankruptcy court.

      A.      <u>**Shaw Pittman's Representation of CHG**</u>

The material facts underlying this suit are not in dispute. CHG retained Shaw Pittman to represent it before the United States Bankruptcy Court for the District of Columbia in a case under Chapter 11 of the federal Bankruptcy Code in 2002. During the bankruptcy proceedings, the D.C. Department of Consumer and Regulatory Affairs issued a citation requiring CHG to provide off-street parking for a hospital and nursing center owned by CHG. (Pl.'s Opp'n 2.) As a result, Shaw Pittman began representing CHG in its dealings with the Board of Zoning Adjustment ("BZA") and Zoning Administrator regarding the amount of parking spaces that would be required with respect to its property holdings in June 2002. (*Id.*)

Although the Department of Consumer and Regulatory Affairs initially issued a citation requiring CHG to provide 225 parking spaces, the Zoning Administrator dismissed the citation and issued CHG certificates of occupancy stating that CHG was in compliance with applicable zoning regulations in March of 2003. *Id*. Subsequently, neighbors of the CHG appealed to the BZA the Zoning Administrator's decision to issue the certificates of occupancy. *Id*. On January 6, 2004, the BZA orally affirmed the Zoning Administrator's issuance of the certificates of occupancy to CHG, while Shaw Pittman was still representing CHG. (Def.'s Mem. 6.) Six days earlier, Shaw Pittman had filed a motion seeking to terminate its engagement with CHG based upon financial and other reasons. (Def.'s Mem. 9.)

On January 7, 2004, the day after the BZA orally affirmed the Zoning Administrator's issuance of certificates of occupancy, the bankruptcy court approved Shaw Pittman's request to terminate its representation of CHG on all matters. (Potter Aff. ¶ 15.) Shaw Pittman provided no further legal services to CHG after January 7, 2004. (*Id.* ¶ 15.) Following the termination of the representation, Donald Hartman, in-house counsel for CHG, requested that Shaw Pittman turn over all BZA files in order for CHG to retain substitute zoning counsel. On January 15, 2004, Shaw Pittman transferred the BZA files to CHG. (Tummonds Aff. Ex. 10.)

While at the BZA on an unrelated matter on February 10, 2004, an associate with Shaw Pittman learned that the BZA would reconsider its January 6, 2004 decision affirming the Zoning Administrator's decision to grant certificates of occupancy to CHG, and the associate relayed this information to defendant Tummonds. (Tummonds Aff. ¶ 19.) On February 11, 2004, defendant Tummonds sent a letter to CHG's in-house counsel, Mr. Hartman, advising him that the BZA would take the matter up at a special public meeting on February 24, 2004, at 9:00 A.M., and CHG received this letter. *Id.* In the letter, Mr. Tummonds provided Mr. Hartman with the name and number of specific personnel at the BZA whom he could contact. However, Shaw Pittman did not notify the BZA that it had withdrawn from the representation of CHG. (Def.'s Mem. 10.)

Although Mr. Hartman and CHG were aware of the reconsideration hearing, apparently neither Mr. Hartman nor any other representative of CHG attended the hearing. (Def.'s Mem. 10.). At the hearing, the BZA decided by a vote of 5-0 to reverse its earlier decision and require CHG to provide one parking space for each bed in the hospital and nursing center—CHG would now be required to provide 177 parking spaces. (Pl.'s Opp'n 3.) On September 9, 2004, the BZA issued a written decision reflecting its oral ruling on February 24, 2004, and sent the order to Mr.

Tummonds at Shaw Pittman. (Hartman Aff. Ex. 1.) However, Shaw Pittman had not represented CHG as of January 7, 2004, and never forwarded the order to CHG. (Pl.'s Opp'n 4) CHG did not learn of the written order until March of 2005, after the time to appeal the order had lapsed. (*Id*.)

### B.      CHG and Shaw Pittman's Fee Disputes in Bankruptcy Court

After CHG and Shaw Pittman's relationship ended, they were involved in a number of fee disputes before the bankruptcy court. The first fee dispute was a result of CHG refusing to pay Shaw Pittman for services rendered during the zoning proceedings because of its belief that the fees were unreasonable. (Potter Aff. Ex. 14; *Id*. Ex. 15; *Id*. Ex. 16.) In preparation for the fee dispute hearing at bankruptcy court in April, CHG conducted discovery on Shaw Pittman and deposed one of Shaw Pittman's employees (Potter Aff. ¶ 19.) The bankruptcy court held two contested hearings on the first fee application in April 2004. (Potter Aff. Ex. 17–18.) The bankruptcy judge granted Shaw Pittman's Motion for Summary Judgment and awarded the firm fees based primarily on its conclusion that CHG had agreed not to contest the amount of the fees. The bankruptcy judge also made oral findings that Shaw Pittman's services were professional and that Shaw Pittman deserved to be compensated for those services. (Potter Aff. Ex. 18 at 23–25.) This Court affirmed the decision of the bankruptcy court, *In re Capitol Hill Group*, 313 B.R. 344 (D.D.C. 2004).

Shaw Pittman then filed a fee application for costs incurred in representing itself during the first fee dispute. The bankruptcy court conducted a trial on October 21, 2004, and on October 22, 2004, the bankruptcy judge made extensive oral findings stating that CHG was responsible for paying all fees and expenses that were reasonably foreseeable as a result of engaging in litigation with Shaw Pittman. (Potter Aff. 6.) Nevertheless, the cycle of CHG refusing to pay

4

Shaw Pittman fees, the bankruptcy court holding a hearing, and the bankruptcy court awarding fees to Shaw Pittman continued. The bankruptcy court held a one-day trial on the third fee application on August 1, 2005, and subsequently approved Shaw Pittman's third fee application. The bankruptcy court later entered the fourth and fifth fee judgments with the consent of CHG. Finally, the parties found themselves before the bankruptcy court one final time on April 12, 2006, on Shaw Pittman's motion to compel because it feared that CHG was withholding further claims. (Potter Aff. Ex. 32 at 2–3.) At that hearing, the bankruptcy judge asked CHG if it had any further claims against Shaw Pittman. (*Id*. at 3.) CHG generally responded that it had concerns about Shaw Pittman's representation but had not filed anything (Potter Aff. Ex. 32 at 5), and that it had no outstanding claims against Shaw Pittman arising out of the bankruptcy proceedings (Potter Aff. Ex. 32 at 3). The bankruptcy court noted that CHG could have pursued claims against Shaw Pittman regarding the adequacy of its representation (in addition to claims that CHG was making about the excessiveness of Shaw Pittman's fees) at the bankruptcy fee hearings but that it failed to do so and would therefore be barred from later asserting claims based on Shaw Pittman's representation by the doctrine of res judicata. (*Id*. at 8–9.)

    C.    <u>**CHG Files Suit**</u>

CHG filed the instant suit on September 7, 2007 in the Superior Court for the District of Columbia. CHG's complaint asserts legal malpractice, breach of fiduciary duty, and breach of contract claims. (Comp. 6–9) CHG asserts that these claims arise out of Shaw Pittman's deficient representation of CHG in two respects: (1) Shaw Pittman failed to assert an argument during the zoning proceedings that one of CHG's buildings was a "historic designation" site and therefore would not be subject to parking restrictions, and (2) Shaw Pittman failed to take

reasonable steps to notify the BZA that it had withdrawn from representing CHG and failed to forward CHG a written order that the BZA sent to Shaw Pittman. Shaw Pittman subsequently removed the case to this Court on October 26, 2007, pursuant to 28 U.S.C. § 1334, and filed the present Motion for Summary Judgment contending that CHG's claims are barred by the doctrine of res judicata, the statute of limitations, and the lack of a cognizable duty on the part of Shaw Pittman. Because this Court concludes that CHG's claims are barred by the doctrine of res judicata, it is unnecessary to resolve Shaw Pittman's other arguments.

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment when the evidence in the record demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp., v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the evidence, when viewed in a light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to make the initial showing of the absence of a genuine issue of material fact in dispute. *Celotex*, 477 U.S. at 323. The moving party is then entitled to summary judgment if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's, and on which that party will bear the burden of proof at trial. *Id*. at 322. At the summary judgment stage, a judge may not make credibility determinations, as that is the function of a jury. *George v.*

*Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005).

    **B.**     <u>**Res Judicata**</u>

    The common law doctrine of res judicata—also known as "claim preclusion"—states that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153 (1979). Res judicata is designed to "preclude parties from contesting matters that they have had a full and fair opportunity to litigate." *Id*. at 153–54. As a result, res judicata applies not only to questions directly put in issue in a prior proceeding but also to any "ground[s] for relief which [the parties] already have had an opportunity to litigate even if they chose not to exploit that opportunity whether the initial judgment was erroneous or not." *Coleman v. Potomac Elec. Power Co.*, 422 F. Supp. 2d 209, 215 (D.D.C. 2006). *See also Mervin v. F.T.C.*, 591 F.2d 821, 830 (D.C. Cir 1978) ("Principles of res judicata prevent relitigation not only on the grounds or theories actually advanced, but also on those which could have been advanced in the prior litigation.").

    The four res judicata elements traditionally applied by this Court are: (1) an identity of parties; (2) a judgment from a court of competent jurisdiction; 3) a final judgment on the merits; and 4) an identity of the cause of action. *Tembec, Inc., v. United States*, No. 07-1905, 2008 WL 3486376, at *3 (D.D.C. 2008). The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts. *Katchen v. Landy*, 382 U.S. 323, 334 (1966). *See also Allied Pilots Ass'n v. Pension Benefit Guar. Corp.*, 334 F.3d 93, 97 (D.C. Cir. 2003) (treating a bankruptcy court's final judgment on the merits as res judicata in later district court proceedings). As a result, if the elements of res judicata are met and CHG could have raised its claims in the

prior bankruptcy proceedings, CHG's claims are barred, and summary judgment for Shaw Pittman is proper.

III. **ANALYSIS**

The fact that the first three elements of res judicata are present in this case is not in dispute. As for the first element, the parties in this case are identical to the parties in the bankruptcy fee disputes. The second element of res judicata is the requirement that there was a judgment from a court of competent jurisdiction. The bankruptcy court's jurisdiction over the fee disputes between CHG and Shaw Pittman is not in dispute and as noted above the principles of res judicata apply to decisions of bankruptcy courts. *Katchen*, 383 U.S. at 334; *In re Iannochino*, 242 F.3d 36, 41 (1st Cir. 2001). As for the third element, the bankruptcy court issued numerous final judgments on the merits that were later affirmed by this Court. (*See, e.g.*, Potter Aff. Ex. 19, Bankruptcy Order, April 20, 2004).

The fourth element of res judicata, the requirement that the new claim and the previous claim share an "identity," is the only element as to which the plaintiff has presented serious argument. In assessing whether claims meet this element of res judicata, courts in this circuit do not require literally identical claims for res judicata to apply; instead, there is an identity of the causes of action when the cases are based on the "same nucleus of facts," because "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). In pursuing this inquiry, the court will consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc., v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (citing *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)).

In this case, all three counts of the plaintiff's complaint (legal malpractice, breach of contract, and breach of fiduciary duty), arose from the same nucleus of facts as the fee application disputes that were previously decided in bankruptcy court. Both disputes involve the services of Shaw Pittman while representing CHG during the zoning disputes. Both rely on the same documents, and both would require the same type of discovery and analysis. CHG asserts that the present dispute does not arise from the same nucleus of operative facts because the bankruptcy judge awarded Shaw Pittman fees based on a contractual no contest provision, not on the basis of the quality of Shaw Pittman's services. There are several problems with this argument.

First, in contrast to CHG's claim that the bankruptcy judge awarded fees based *solely* on the no-contest provision (Pl.'s Opp'n 6), the bankruptcy court did make a finding that Shaw Pittman was entitled to the fees in part because the representation it provided was competent and professional:

> I've read the proffer presented by the Debtor, Debtor's counsel, and I'm satisfied that the fees in this case were reasonable. This case presented several hard-fought issues. . . . I'm satisfied that the work was performed in a professional way and that it was for the benefit of the estate. . . . I'm satisfied that the work was necessary and reasonable and ought to be compensated in the circumstances.

(Potter Aff. Ex. 18 at 23-25). (*See also* Potter Aff. Ex. 28 at 147) (bankruptcy court stating that Shaw Pittman's representation of itself in the bankruptcy court fee disputes was "reflective of the same level of advocacy that Shaw Pittman extended to Capitol Hill Group during the case . . .

9

."); (Potter Aff. Ex. 17 at 59) (bankruptcy court stating that the court and the United States Trustee has an independent duty to scrutinize fee applications).

    Second, even assuming that the bankruptcy court did not inquire into the adequacy of Shaw Pittman's representation during the fee disputes, judicial analysis of an argument is not a prerequisite for the application of res judicata. Res judicata is not only intended to prevent relitigation of claims that were actually raised in prior litigation, but also to "prevent litigation of matters that *should have been* raised in an earlier suit." *Natural Res. Def. Council v. E.P.A.*, 513 F.3d 257, 261 (D.C. Cir. 2008) (citing *S.B.C. Commc'ns, Inc. v. FCC,* 407 F.3d 1223, 1229 (D.C. Cir. 2005)). Here, because CHG's claim for legal malpractice arises from the same facts as Shaw Pittman's claim for fees, CHG should have raised these claims during the bankruptcy fee disputes. CHG's current claims for malpractice, breach of fiduciary duty, and breach of contract arising out of Shaw Pittman's representation of CHG were related in time, space, and origin to the previously litigated claim that Shaw Pittman was not entitled to collect its fees. In addition, both parties would have had a similar motivation in asserting and defending these claims, and asserting the claims at that time would have conformed to the parties' expectations and preserved judicial resources. *See Law Offices of Jerris Leonard, P.C. v. Mideast Systems,* 111 F.R.D. 359, 361 (D.D.C. 1986) ("[I]t is hard to imagine a clearer compulsory counterclaim to a complaint for failure to pay legal fees than a legal malpractice claim stemming from the handling of the litigation for which fees are sought.").

    CHG asserts that res judicata cannot apply in this case because CHG was not aware of the relevant facts constituting malpractice at the time of the bankruptcy fee dispute hearings. (Pl.'s Opp'n 26.) CHG cites *In re R&C Petroleum*, 236 B.R. 355, 359–360 (Bankr. E.D. Texas 1999), for the proposition that a malpractice claim is not barred by res judicata when the underlying

malpractice is "not discoverable until after the conclusion of the underlying fee allowance litigation." (Pl.'s Opp'n 26.) However, in contrast to that case, in this case there is no question that CHG's claims were discoverable. In addition, CHG was in fact aware of the general nature of its claims during the bankruptcy proceedings.

Specifically, CHG states that it was not aware of the "historic designation" argument that Shaw Pittman failed to raise during the zoning proceedings until the Spring of 2006. Since the last bankruptcy fee hearing occurred in April of 2006, CHG asserts that it could not have raised this argument. (Pl.'s Opp'n at 17.) While CHG may not have been aware of the precise historical designation argument until the Spring of 2006, it was aware of the general nature of its claims well before the final bankruptcy hearing. (*See* Potter Aff. Ex. 15 (CHG's objections to Shaw Pittman's fees on the basis that the services were unnecessary and the fees unreasonable, filed January 30, 2004)); *See also In re Capitol Hill Group*, 313 B.R. 344, 349–50 (D.D.C. 2004) (CHG asserting on appeal of the first fee judgment that Shaw Pittman "should not be permitted to reap the fruits of their ill-gained bounty by virtue of their breach of numerous Rules and thus a breach of their fiduciary duty to CHG."). This general awareness of its claims against Shaw Pittman for excessive fees for services rendered and breach of fiduciary duty is sufficient to bar relitigation of its claims under the doctrine of res judicata. *See In re Iannochino*, 242 F.3d 36, 48 (1st Cir. 2001) ("[R]ather than considering whether the [plaintiffs] knew of the precise legal contours of their malpractice claim at the time of the fee application, we must instead determine whether they knew of the factual basis of that claim."). The purposes of res judicata would be thwarted if a plaintiff could search for legal malpractice arguments in perpetuity and re-file a

lawsuit every time a new argument were discovered.[1] *See Natural Res. Def. Council v. E.P.A.*, 513 F.3d 257, 261 (D.C. Cir. 2008) ("[C]laim preclusion precludes the relitigation of *claims*, not just *arguments*.").

Even if CHG were required to possess knowledge of the precise argument that Shaw Pittman should have raised a historic designation defense, plaintiff did have constructive knowledge of this argument well in time to assert it at the bankruptcy hearings. An argument derived from municipal regulations (Pl.'s Opp'n at 5) is easily ascertainable and was certainly discoverable by a plaintiff. At the time of the final bankruptcy hearing on April 12, 2006, it had been over two years since Shaw Pittman withdrew from the representation of CHG and over a year since CHG learned that the BZA's parking decision had been reconsidered and reversed. The plaintiff had three days of discovery, representation from counsel, and almost 2 years of hearings in which to assert its claim[2]—with due diligence it would have discovered and researched the historical designation argument in time to assert it in the previous litigation arising out of the same facts. Mere failure to discover viable arguments in support of a claim during

---

[1] Plaintiff's strategy of presenting claims and withholding associated claims until its original claims are rejected is not new. During the fee dispute litigation, the bankruptcy court noted: "Capitol Hill Group has itself to blame for the fact that a substantial amount of time was required to be expended in this Court and in the District Court addressing Capitol Hill Group's contentions... this case was like peeling an onion. Shaw Pittman would try to dispose of the matter quickly, without the necessity of hearings, without the necessity of factual investigation, only to have Capitol Hill Group continuously raise obstacles. You'd get to one hearing and there was one set of issues, and at that hearing a second set of issues would —after you peeled back that set of issues, another issue would appear...It was Capitol Hill Group that kept raising defenses, many of them non-meritorious..." (Potter Aff. Ex. 22-B at 8–9.) Indeed, the purpose of res judicata is to prevent cases from being like onions. Instead, res judicata is supposed to ensure that cases are more like apples, and a plaintiff gets one bite—one chance to assert a claim against a defendant arising out of a particular core of facts.

[2] *Supra* 4–5.

previous litigation does not preclude the application of res judicata. *Cf. Byers v. Burleson*, 713 F.2d 856, 860 n.7 (D.C. Cir. 1983) ("The premise of [the] constructive knowledge rule is that the client should be charged with the actual knowledge which could be obtained by due diligence and through the use of means available.") (discussing when a plaintiff is charged with constructive knowledge of a legal malpractice claim in the statute of limitations context).

As far as the claim that Shaw Pittman committed breach of contract, malpractice, and breach of fiduciary duty by failing to forward a written order to its former client CHG, this claim is also barred by res judicata. CHG learned that the BZA had issued a written order and that the time for appealing the order had passed in March of 2005. (Def.'s Ex. D at 2.) CHG engaged in a series of e-mail exchanges with Shaw Pittman and learned that the written order was never forwarded by Shaw Pittman in April of 2005. (*See* Potter Aff. Ex. 26 at 1–2.) Yet CHG failed to make a claim based on this omission in a subsequent fee application hearing in the bankruptcy court on August 1, 2005. CHG also did not disclose this claim to the bankruptcy court when the court asked CHG to disclose any claims that it might have against Shaw Pittman on April 12, 2006. (Potter Aff. Ex. 32.) Instead, CHG vaguely stated that "there are concerns that CHG has about the representation that Shaw Pittman provided during its representation of Capitol Hill Group that began in 1999 or whatever. But nothing's been filed."[3] If Capitol Hill had concerns

---

[3] CHG also stated at this hearing that it had no further claims that "relate[] to these bankruptcy proceedings." (Potter Aff. Ex. 32 at 3.) As noted above, however, claims of malpractice, breach of contract, and breach of fiduciary duty for services rendered arise out of the same core of operative facts as a bankruptcy fee application hearing regarding those services. *Supra* at 10. Therefore, the present lawsuit appears to contradict CHG's representation to the bankruptcy court. It also appears to contradict CHG's May 14, 2007 filing in the bankruptcy court, in which CHG urged the bankruptcy court to close the case because Shaw Pittman had an "unsupported notion that CHG, like the proverbial Phoenix, might one day arise from the ashes and somehow wreak havoc upon Shaw Pittman." (Potter Aff. Ex. 35.) May 14, 2007, is well after CHG acknowledges that it learned of the factual basis of its claims against Shaw Pittman.

about Shaw Pittman's representation, the time to research them and assert them was during the numerous hearings regarding the appropriateness of Shaw Pittman's fees, as noted by the bankruptcy court. *See id*. at 9. Allowing CHG to withhold their claims and then pursue them later in another court would skirt the very purposes of res judicata.

    CHG also argues that the bankruptcy fee litigation would have been an inappropriate place to raise the malpractice, breach of contract, and breach of fiduciary duty claims. Specifically, CHG argues that each fee application hearing should be analyzed as a separate "litigation unit." As for CHG's claims based on Shaw Pittman's failure to argue that the buildings were historic, these claims are barred even if the hearings are analyzed separately. The historic designation argument was based on a municipal regulations, and therefore was discoverable with due diligence, and could have been asserted as a defense against Shaw Pittman's first fee application in the first hearing.

    Of course, CHG could not have asserted the claims that Shaw Pittman had failed to forward the BZA's final written order at the first fee application hearings because at the time of the April 2004 hearings on the first fee application, this omission had not yet occurred. Nevertheless, CHG learned of Shaw Pittman's failure to forward the written order in April 2005, and therefore could have asserted this argument in the hearings on August 1, 2005, and April 12, 2006. CHG argues that these later fee hearings were focused solely on the costs incurred by Shaw Pittman in defending itself in the first fee application, and therefore other claims CHG had against Shaw Pittman would have been jurisdictionally and procedurally barred. (Pl.'s Opp'n 33–34.)

---

Yet in this filing with the bankruptcy court it insinuated that it had no further claims to pursue.

This argument is unpersuasive. All of the fee disputes arose from the same core of operative facts. It does not matter that the fees for Shaw Pittman's services may already have been awarded by the time of a later malpractice judgment because Federal Rules of Civil Procedure 59 and 60 are applicable in bankruptcy, which gives bankruptcy courts broad authority to reconsider judgments. *Iannochino*, 242 F.3d at 42. Therefore, had CHG brought claims of malpractice in the later hearings, the bankruptcy court could have reconsidered its earlier judgment and disgorged the fees it had previously awarded Shaw Pittman. It also could have stayed the later fee hearings and permitted time for discovery and development of the malpractice claims. *Id*. at 42–43; *In re Intelogic Trace, Inc.*, 200 F.3d 382, 390 (5th Cir. 2000). The suggestion that the bankruptcy court was unwilling or unable to consider the claims in later hearings is also contrary to the record. In the April 12, 2006 hearing, the bankruptcy court asked CHG if it was "aware of any claims other than what was a pre-petition claim which by now has been discharged." (Potter Aff. Ex. 32 at 4.) CHG failed to disclose the delivery omission claim to the bankruptcy court at that time even though it had learned of the delivery omission approximately a year earlier. (*Id.*); *supra* at 12.

Not only are the formal elements of res judicata met in this case, but application of res judicata ensures that the rationales of the doctrine—preventing repetitive and vexatious litigation—are fulfilled. CHG has already conducted discovery on Shaw Pittman to dispute the reasonableness of their fees. *Supra* at 4. The bankruptcy court held a hearing, made a finding that Shaw Pittman was entitled to the fees, and that decision was affirmed by this Court. *In re Capitol Hill Group*, 313 B.R. 344 (D.D.C. 2004). The bankruptcy court later held at least two additional hearings related to costs Shaw Pittman incurred in defending itself in the first fee application proceeding, and an additional hearing solely to inquire whether CHG had any

outstanding claims against Shaw Pittman. *Supra* at 4–5. The Court is satisfied that CHG had a full and fair opportunity to litigate its claims against Shaw Pittman and that any additional claims arising out of this core of facts are barred by res judicata.

Barring the plaintiff's claims in this case conforms with the approach of other federal courts when presented with a plaintiff who failed to assert claims against one who provided professional services during the bankruptcy fee application hearings. *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (affirming the district court's grant of summary judgment for defendant attorneys on res judicata grounds after plaintiff failed to assert claims of legal malpractice in bankruptcy court when fees were approved) ; *In re Iannochino*, 242 F.3d 36, 41 (1st Cir. 2001) (same); *In re Intelogic Trace*, 200 F.3d 382, 385–86 (5th Cir. 2000) (affirming the district court's grant of summary judgment for the defendant accounting firm on res judicata grounds after the plaintiff failed to assert claims for professional negligence and breach of contract during fee application hearing in bankruptcy court). The plaintiff has pointed to no case in this Circuit that has reached a contrary result, nor are the plaintiff's attempts to distinguish the cases in other circuits persuasive. The plaintiff argues that those cases are different because in this case CHG was not aware of its claims against Shaw Pittman at the time of the bankruptcy fee dispute hearings. As noted above, however, this argument is contrary to the record. *See supra* pages 10–12. The plaintiff also argues that in contrast to those cases, in this case the new claims could not have been asserted because the award of fees to Shaw Pittman in the bankruptcy hearings was based solely on a contractual no-contest provision. (Pl.'s Opp'n 33.) In fact, the original fee award was not based solely on the contractual provision between the parties, *supra* 9, and the bankruptcy court made clear to CHG that if it had arguments concerning Shaw Pittman's malpractice, they could have and should have been presented. *Supra* 13.

**IV.     CONCLUSION**

For the reasons set forth in this Opinion, the Court finds that plaintiff CHG had a full and fair opportunity to litigate all of its claims arising out of Shaw Pittman's representation of CHG at the prior hearings and trials in bankruptcy court.  Accordingly, CHG is barred from relitigating these claims as a matter of law.  Defendant Shaw Pittman's motion for summary judgment will be GRANTED.

A separate order shall issue this date.

SO ORDERED.


Signed by Royce C. Lamberth, Chief Judge, on September 5, 2008.